IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

JAMES-BRENT: ALVAREZ,                              Case No. 6:19-cv-01071-AA
                                                   **OPINION AND ORDER**
      Plaintiff,

  vs.

UNIVERSITY OF OREGON, et al.,

      Defendants.

_____

AIKEN, District Judge:

     Plaintiff James-Brent: Alvarez, proceeding pro se, filed this action against defendants University of Oregon, University of Oregon Police Department ("UOPD"), Luke Sitts, Geri Brooks, Scott Geeting, Stephen Barrett, Matthew Carmichael, and Michael H. Schill. Plaintiff's claims arise from a traffic stop that led to his arrest and from defendants' response to complaints plaintiff made to UOPD after his arrest. Before the Court are defendants' motions to dismiss (docs. 18, 20) and plaintiff's motions for leave to amend (docs. 26, 29, 36).

# BACKGROUND

The Amended Complaint is written in a combination of what plaintiff calls "plain language" and "CORRECT-SENTENCE-STRUCTURE-COMMUNICATIONS-PARSE-SYNTAX-GRAMMAR," or "C.-S.-S.-C.-P.-S.-G.-P." for short. First Amend. Compl. 3.[1] Both employ unusual syntax and use of punctuation, which makes the complaint difficult to comprehend. For example, the facts section, which is written in plain language, alleges:

> ~ 41 [: ~3-February-2019, claimant writes an unilateral-contract-claim-complaint (ORS 352.121[1]-3), of acceptance to settle the UOPD-contract-document-offers, with the conditions of the UOPD-performance of stopping and correcting their documents (TITLE~42: USC ~ 1986), for fraudulent and mis-leading statements (TITLE~18: USC ~ 1001) using fictitious-conveyance language with the syntax-grammar errors, and with the boxing-errors (Black Law Dictionary 5th Edition-P591), and with the fictitious name or address (TITLE~18: USC ~1342), and otherwise as marked on their claims-contract-offers-documents. For the closure (FRCP ~26-e) of the definition for the words of the UOPD-documents, as well as which dictionary or styles-manual is being used by the UOPD. Furthermore, complete-validation of the claim-charge-debt made, with the sworn evidence they (the accused) are acting with their official-capacity, and with the proof of their mandate and bond, the oaths and titles of the parties, and with the statutes written in the C.-S.-S.-C.-P.-S.-G.-P. is asked for by the claimant. A fee-schedule for having to deal with this matter is instituted by the Claimant, and accused are given twenty-one days to respond. Sent USPS by registered mail No. **RA535207168US** to the accused:].

*Id.* at 8 (boldface in original).[2] The claims for relief, which appear to be written in C.-S.-S.-C.-P.-S.-G.-P., include allegations like:

---

[1] Plaintiff's "Addendum for definitions" explains that text found between "[: :] & ( )" are in "plain language," "not C.-S.-S.-C.-P.-S.-G.-P." and that text without "use of boxing" is in C.-S.-S.-C.-P.-S.-G.-P. Amend. Compl. 3.

[2] The superscript in "ORS 352.121[1]-3" was not accompanied by a footnote.

~53: FOR THE CHANGING-FACTS INTO THE VERBS, PRONOUNS AND ADJECTIVES ARE WITH THEE DAMAGE-CLAIM OF THE FICTIONAL-SYNTAX-MODIFICATIONS, CORRUPT-AUTHORITIES, AND FRADULANT-SYNTAX OF THE GRAMMAR-LANGUAGE-CLAIMS WITH THE STEALING, THEFT, TORT, BEZZLEMENT AND RAPE OF THE EQUITY, FREEDOMS AND COMMUNICATION-LANGUAGE-CLAIMS OF THE CLAIMANT.

*Id.* at 10.

The following facts are taken from the Amended Complaint, which the Court has construed in plaintiff's favor as best it can.

Plaintiff was traveling in his car when he was stopped by UOPD Officer Sitts for operating the car without a license plate. Officer Sitts began to question plaintiff, and plaintiff invoked his *Miranda* rights. Shortly after that, UOPD Officers Geeting, Brooks, and Barrett arrived to provide back up. Officer Geeting began to question plaintiff. Plaintiff handed the officers a document that he alleges was a contract. Then Officer Barrett began questioning plaintiff. Plaintiff then asserted his right to counsel, right to remain silent, and "right to be free of the un-warranted search and seizure." *Id.* at 6.

Officer Sitts then warned plaintiff that his car would be towed unless plaintiff provided his driver's license, registration, and proof of insurance. When plaintiff refused, Officer Sitts informed plaintiff that he would issue plaintiff traffic citations and that plaintiff's car would be towed. Then, "[w]ith the showing of deadly weapons," Officer Sitts ordered plaintiff out of the car. *Id.* at 7.

When plaintiff complied with that order, Officers Sits, Geeting, Barrett, and Brooks "attempt[ed] to seize [plaintiff] with physical force," "[w]ithout placing [him]

under arrest, without communication, without cause to use excessive-force [*sic*], and without warning." *Id.* Plaintiff began to resist because he did not understand what was happening. Plaintiff "applied" "years of combat-training [*sic*] . . . without awareness, hesitation, or thought." *Id.* As soon as plaintiff realized what he was doing, he immediately stopped resisting.

But, by the time plaintiff stopped, Officers Brooks, Barrett, and Sitts had tased plaintiff.[3] Plaintiff signaled for and asked the officers to stop and used "body language to show he [was] surrendering," but the officers continued to tase him "while he [was] still being physically assaulted." *Id.* Specifically, the officers "slam[ed] him to the ground" to handcuff him, "still shooting him with electricity." *Id.* The officers then told plaintiff that he was under arrest, read him his *Miranda* rights, and searched the car.

Plaintiff was hospitalized, issued five traffic tickets, and charged with three offenses—interference with a peace officer, resisting arrest, and assault of police officers. Upon his release from the hospital, plaintiff was transferred to Lane County Jail, where he was held overnight and released the next day.

A couple of weeks later, plaintiff sent a "unilateral-contract-claim-complaint (ORS 352.121-3)" to UOPD.[4] *Id.* at 8. Plaintiff sent a copy of the complaint to the Lane County District Attorney and tried to file a certified copy of his "contract-claim,"

---

[3] Plaintiff alleges that he was "shot multiple times with electricity" by the officers.

[4] ORS 352.121(3) provides: "When a university establishes a police department and commissions one or more employees as police officers, the president of the university, in cooperation with the chief of the police department, shall establish a process by which the university will receive and respond to complaints involving the policies of the department and the conduct of the police officers."

but the court clerks refused, "[c]laiming nothing had been docketed in the matter at this time." *Id.*

Over the next couple of days, plaintiff appeared at Lane County Circuit Court and then at the Eugene Municipal Court, to comply with the instructions on his traffic citations, but his citations were not on the docket at either court.

About a month later, plaintiff had received no response to the complaint he lodged with UOPD, so he sent a **"NOTICE OF DEFAULT"** to University of Oregon President Michael Schill, UOPD Chief of Police Matthew Carmichael, and Officer Sitts. *Id.* (boldface in original). Plaintiff later sent these defendants a **"2nd NOTICE OF DEFAULT,"** **"FINAL DEFAULT NOTICE,"** and finally a **"NOTICE OF ESTOPPEL."** Defendants did not respond to any of the documents.

Plaintiff then filed this suit alleging that defendants had violated his constitutional rights and federal law. When defendants moved to dismiss the Complaint, plaintiff responded by filing an Amended Complaint (doc. 19). Defendants then moved to dismiss the Amended Complaint, and plaintiff responded with a Motion for Leave to File a Second Amended Complaint (doc. 26). Later, plaintiff filed a Motion for Leave to File an Updated Second Amended Complaint (doc. 29) and a Memorandum in Support (doc. 36), which provides a proposed Revised Second Amended Complaint (doc. 36 Ex 1).

## STANDARDS

When considering a motion to dismiss, a court construes a complaint in favor of the plaintiff and takes all factual allegations as true. *Odom v. Microsoft Corp.*, 486

F.3d 541, 545 (9th Cir. 2007). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A "formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement" and not sufficient to state a plausible claim. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013).

When a plaintiff appears *pro se*, the court must carefully construe the pleadings and afford the plaintiff any benefit of the doubt. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). This rule of liberal construction is "particularly important" in civil rights cases. *Hendon v. Ramsey*, 528 F. Supp. 2d 1058, 1073 (S.D. Cal. 2007) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) ); *see also Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (stating that because "*Iqbal* incorporated the *Twombly* pleading standard and *Twombly* did not alter the courts' treatment of *pro se* filings" the court must continue to construe *pro se* filings liberally"). When giving liberal construction to a *pro se* civil rights complaint, however, the court "'may not supply essential elements of the claim

that were not initially pled.'" *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982) ); *Calhoun v. Portland Police Bureau*, Case No. 3:17-cv-01020-MO, 2018 WL 1413969, at *1 (D. Or. Mar. 21, 2018).

"'Unless it is absolutely clear that no amendment can cure the defect, ... a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action.'" *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (alteration in original); *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003); *Karim-Panahi v. Los Angeles Police Dep't.*, 839 F.2d 621, 623-24 (9th Cir. 1988); *Ferdik*, 963 F.2d at 1261.

## DISCUSSION

Defendants move to dismiss the complaint, and plaintiff seeks the Court's leave to file a second amended complaint. I will address each set of motions in turn.

## I.    Defendants' Motions to Dismiss

The Amended Complaint asserts claims for violation of plaintiff's constitutional rights under 42 U.S.C. § 1983 (claim one) and conspiracy to deprive plaintiff of rights under 42 U.S.C. §§ 1985 and 1986 (claims two and three) and a claim under the Anti-Terrorism Act 18 U.S.C. § 2331, et seq. (claim four). Defendants assert[5] that each claim fails to state a claim, that plaintiff's § 1983 claim is barred by state sovereign immunity, and that, to the extent that plaintiff alleges a claim against

---

[5] As noted, defendants have filed two motions to dismiss. Because the second motion incorporates arguments from the first, the Court will consider the relevant arguments from both motions.

individual defendants in their individual capacity, they are entitled to qualified immunity. Defendants ask the Court to dismiss this case with prejudice.

## A.    Section 1983 Claim

Plaintiff appears to assert a claim against all defendants for constitutional violations under 42 U.S.C. § 1983.

### 1.    § 1983 Claim against University of Oregon and UOPD

Defendants assert that the § 1983 claims against University of Oregon, and UOPD, and any university officials acting in their official capacity are barred by the Eleventh Amendment. The Eleventh Amendment provides that a state is immune from suit in federal court unless Congress has abrogated the state's immunity by appropriate federal legislation or unless the state has waived its immunity. *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011). This grant of immunity covers not the just state itself, but also state entities that are considered an "arm" of the state. *P. R. Aqueduct & Sewer Auth. v. Metcalf*, 506 U.S. 139, 144 (1993).

The University of Oregon "is an arm of the State of Oregon for Eleventh Amendment immunity purposes." *Rounds v. Oregon State Bd. of Higher Educ.*, 166 F.3d 1032, 1035 (9th Cir. 1999). UOPD, a department of the university, is also an arm of the state. Neither defendant has waived its Eleventh Amendment immunity. Nor has Congress abrogated Oregon's Eleventh Amendment immunity. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989) ("Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment Immunity.").

Because University of Oregon and UOPD are not subject to suit under § 1983, the § 1983 claim against the university and UOPD must be dismissed without leave to amend.

## 2. § 1983 Claim against Individual Defendants

Defendants also argue that the § 1983 claim against the individual defendants—Officers Sitts, Brooks, Geeting, and Barrett; Chief Carmichael; and President Schill—are barred, in their entirety, by the Eleventh Amendment because defendants were acting in their official capacity.

Although state officers acting in their official capacity are entitled to Eleventh Amendment Immunity, the Eleventh Amendment does not bar a federal court from granting prospective injunctive relief against an officer of the state who acts outside the bounds of their authority. *Ex Parte Young*, 209 U.S. 123 (1908). Thus, the Court may hear plaintiff's civil rights claims against the individual defendants if he asks for prospective injunctive relief from these defendants in their official capacities.[6]

The Court may also hear plaintiff's claims for monetary damages brought against the individual defendants in their individual capacities. *See Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir. 1992) ("[T]he eleventh amendment does not bar a suit seeking damages against a state official personally."). A plaintiff can "bring an action under section 1983 against state officials in their individual capacities, even if those

---

[6] The Amended Complaint does not appear to seek this kind of relief. The only prospective injunctive relief sought are court orders (1) that a portion of plaintiff's monetary damages "be placed in a trust overseen by the Union State Oregon and its Attorney General . . ., and to be used for the education and training of all law enforcement on the Federal and State laws" and (2) that the Lane County District Attorney's Office remove "all pending charges against claimant in any related matters" and that "the incident [be removed] off all public platforms[.]" Amend. Compl. 12.

officials were performing their governmental duties when they committed the alleged wrongs." *Price v. State of Hawaii*, 939 F.2d 702, 706 (9th Cir. 1991). "[T]he phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." *Hafer v. Melo*, 502 U.S. 21, 26 (1991). To state a § 1983 claim against a state official seeking to impose personal liability on that official, "a plaintiff must show only that 'the official, acting under the color of state law, caused the deprivation of a federal right.'" *Suever v. Connell*, 579 F.3d 1047, 1060 (9th Cir. 2009) (quoting *Hafer*, 502 U.S. at 25). In such cases, liability does not "turn on whether the state official acted within his or her authority or outside of it; the only issue is whether the conduct was undertaken under color of state law." *Id.* at 1060-61.

Thus, the Court will turn to whether the Amended Complaint states a claim under § 1983. Defendants argue that it does not because the amended complaint does not allege "which constitutional rights were violated, when they were violated, how they were violated, or who violated them." Mot. to. Dismiss P's First Am. Compl. at 7. They also argue that any individual capacity claims against the individual defendants are barred by qualified immunity for the same reason.

Section 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). To maintain a claim under § 1983, "a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law,

and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

Although the allegations under the header for plaintiff's § 1983 claim are sparse,[7] liberally construed, the fact section appears to assert that the individual UOPD officers violated plaintiff's rights under the Fourth Amendment by arresting plaintiff without a warrant or probable cause, using excessive force during plaintiff's arrest, and seizing and searching plaintiff's car after his arrest.

Whether a warrantless arrest is constitutionally valid turns on whether, at the time of arrest, the officer had probable cause to make the arrest. *Fayer v. Vaughn,* 649 F3d 1061, 1064 (9th Cir. 2011). The Fourth Amendment requires a standard of reasonableness, not certainty, and a sufficient probability is the touchstone of reasonableness. *Hill v. California,* 401 U.S. 797, 804 (1971). Arresting officers have probable cause if, at the time of arrest, the facts and circumstances within their knowledge and of which they have reasonably trustworthy information, were sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense. *Conner v. Heiman,* 672 F3d 1126, 1132 (9th

---

[7] The claim consists of a single allegation under a joint header for the first and second claims for relief:

> FOR THE DEPRIVING OF THE CLAIMANTS-CONSTITUTIONAL-RIGHTS, AND WITH THE COLORING OF THE LAW WITH THE USE OF THE FRAUDULANT-OREGON-STATUTES, AND WITH THE CONSPIRACY WITH THE FALSE AND MIS-LEADING STATEMENTS AND WITH THE DEPRIVING THE CLAIMANT OF THE EVIDENCE AND A WITNESS BY THE U.O.-UOPD-OFFICERS: FOR THE CIVIL REMEDY IS $50,010,000.00 USSD.

Amend. Compl. p. 9-10.

Cir. 2012). The court will consider all the facts known to the officers and consider all the inferences that could be drawn by them before arrest. *See id.* at 1131.

In excessive force cases, courts consider whether officers' actions were "objectively reasonable" under the totality of the circumstances. *Graham v. Conner,* 490 U.S. 386, 388 (1989). The reasonableness of the force used to effect a particular seizure is determined by "careful[ly] balancing ... 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner,* 471 U.S. 1, 8 (1985)). Courts consider the governmental interests at stake by looking at the following nonexclusive factors: "(1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Mattos v. Agarano,* 661 F.3d 433, 441 (9th Cir. 2011). The second of the three is the "most important" factor, and "there must be objective factors to justify" an officer's concern that the suspect posed an "immediate threat." *Id.* at 441-42.

Whether officers used excessive force is ordinarily a question of fact and therefore reserved for the jury. *Santos v. Gates,* 283 F.3d 846, 853 (9th Cir. 2002); *Chew v. Gates,* 27 F.3d 1432, 1440 (9th Cir. 1994). Thus, excessive force cases are rarely suited for summary judgment, let alone dismissal under Rule 12(b)(6).

Plaintiff alleges that he was stopped by UOPD for failing to have a license plate on his car and that he handed the officers a document and asserted his right to counsel, right to silence, and right to be free of unwarranted searches and seizures.

Officer Sitts ordered plaintiff to provide his driver's license, insurance, and registration and eventually ordered plaintiff out of the car. When plaintiff complied, the officers "attempt[ed] to seize [plaintiff] with physical force" and he fought back, applying "years of combat-training" but stopped almost immediately. Amend. Compl. 7. The officers then responded by tasing plaintiff and slamming him to the ground, even after plaintiff showed his compliance physically and verbally, and by finally arresting him. Plaintiff was charged with interference with a peace officer, resisting arrest, and assault of police officers.

When liberally construed, the Complaint states sufficient facts to support a claim of excessive force against the officers. The same cannot be said for plaintiff's Fourth Amendment challenge to his arrest. By the time officers arrested him, he had refused to provide documentation to the officers and had used force against the officers. Plaintiff's allegations, thus, show that the officers had probable cause to arrest him. Plaintiff's claim of unlawful arrest must be dismissed.

Plaintiff also alleges that the officers searched his car without a warrant and asserts that the search violated the Fourth Amendment and towed his car without authorization. Those allegations are too conclusory to state a claim for a violation of plaintiff's Fourth Amendment rights. There are many exceptions to the warrant requirement for searches of cars and the Amended Complaint does not state when or under what circumstances the allegedly unlawful search of his car occurred. *See, e.g., South Dakota v. Opperman*, 428 U.S. 364 (1976) (inventory search of impounded vehicle); *Arizona v. Gant*, 556 U.S. 332, 343-44 (2009) (search of automobile incident

to arrest); *Collins v. Virginia*, __ U.S. __, __, 138 S. Ct. 1663, 1669-70 (2018) (automobile exception). And officers may tow a car under the community caretaking doctrine if, as here, "the driver's violation of a vehicle regulation prevents the driver from lawfully operating the vehicle and also if it is necessary to remove the vehicle from an exposed or public location." *Miranda v. City of Cornelius*, 429 F.3d 858, 865 (9th Cir. 2005). Thus, these claims must be dismissed for failure to state a claim.

To the extent that plaintiff seeks to assert § 1983 claims against Chief Carmichael and President Schill in their individual capacities, those claims are also dismissed for failure to state a claim. The Amended Complaint does not allege that either defendant was personally involved in the officer's alleged use of excessive force. Nor does it present a link between any particular harm that plaintiff suffered and an action taken by Carmichael or Schill.

In sum, the Amended Complaint adequately states an excessive force claim against Officers Sitts, Brooks, Geeting, and Barrett, for which they may be held individually liable under § 1983. Plaintiff's § 1983 claims against Chief Carmichael and President Schill and § 1983 claims for any other constitutional violations that plaintiff sought to assert against the individual UOPD officers are dismissed for failure to state a claim and on the basis of qualified immunity.[8]

---

[8] "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Aschroft v. al-Kidd*, 563 U.S. 731, 735 (2011). As mentioned, defendants argue that the individual defendants are entitled to qualified immunity from plaintiff's § 1983 claim based on plaintiff's failure to allege facts demonstrating that any violation of a constitutional right occurred. They did not directly address plaintiff's excessive force claim and did not address the second, "clearly established" prong of the qualified immunity analysis.

### 3. Leave to Amend

Because plaintiff could allege other violations of his rights and cure the deficiencies discussed above by alleging additional facts, he shall have leave to amend his § 1983 claim. When amending his claim, plaintiff should be careful to explain what rights he believes were violated and, for each right, the defendants who violated that right and the specific actions they took to violate that right.

### B. Conspiracy Claims

Plaintiff appears to allege that the individual UOPD officers conspired to violate his rights and that University of Oregon, UOPD, President Schill, and Chief Carmichael knew about this conspiracy because of the complaint he submitted.

### 1. § 1985 Claims

Plaintiff asserts claims under 42 U.S.C. § 1985, which prohibits conspiracies to interfere with certain civil rights. Under the broadest reading of the Amended Complaint, the allegations appear to relate to the second clause of subsection (2), which concerns conspiracies to obstruct the course of justice in state courts, and the first clause of subsection (3), which concerns conspiracies to prevent state authorities from securing a person's equal protection of the laws. *Kush v. Rutledge*, 460 U.S. 719, 725 (1983).

To state a claim under these clauses a plaintiff must allege, among other things, "specific facts to support the existence of the claimed conspiracy," racial or class-based discriminatory intent, and underlying violation of federal rights. *See Burns v. Cnty. of King*, 886 F.3d 819, 821 (9th Cir. 1989) (conspiracy must be alleged

with specificity); *Bretz v. Kelman*, 773 F.2d 1026, 1030 (9th Cir. 1985) (emphasizing that the phrase "equal protection" used in the second clause of § 1985(2) and first clause of § 1985(3) "require[s] an allegation of class-based animus for the statement of a claim under that clause").

Plaintiff has not alleged facts to support the existence of any agreement between defendants to violate plaintiff's rights. And the amended complaint lacks any allegations of racial or class-based animus, or racial or class-based discrimination. Finally, plaintiff fails to allege an underlying violation of his rights under either clause. The second clause of § 1985(2) applies to conspiracies

> for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws[.]

The first clause of § 1985(3) applies to conspiracies

> for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws[.]

Liberally construing the amended complaint, these claims may relate to plaintiff's allegations about the notices he sent to UOPD, President Schill, and the Lane County District Attorney or his allegations about his visits to the Lane County Circuit Court and Eugene Municipal Court. But the amended complaint does not specify what defendants did to "impede, hinder, obstruct, or defeat . . . the due course

of justice" in state Court or to prevent state authorities from securing plaintiff's equal protection of the laws.

Because plaintiff has failed to plead the existence of a conspiracy, racial or class-based discrimination, and an underlying violation of his civil rights, plaintiff's § 1985 claim must be dismissed.

### 2.    § 1986 Claims

A plaintiff's failure to state a viable claim under § 1985 defeats the plaintiff's claim under § 1986 as well. *Karim-Panahi*, 839 F.2d at 626 ("A claim can be stated under section 1986 only if the complaint contains a valid claim under section 1985."). Because plaintiff failed to state a claim against the UOPD officers under § 1985, his § 1986 claim against University of Oregon, UOPD, President Schill, and Chief Carmichael must also be dismissed.

### 3.    Leave to Amend

Plaintiff's § 1985 and § 1986 claims against University of Oregon and UOPD are barred by Eleventh Amendment immunity and must be dismissed with prejudice. *Cerrato v. San Francisco Cmty. Coll. Dist.*, 26 F.3d 968, 972, 975 (9th Cir. 1994) (the Eleventh Amendment bars §§ 1983, 1985, and 1986 claims against states) But because plaintiff could cure the defects in his § 1985 and §1986 claims against the individual UOPD officers, President Schill, and Chief Carmichael by amendment, he shall have leave to amend those claims.

C.    Anti-Terrorism Act Claim

Plaintiff alleges that, by discriminating against him and using "excessive and harmful force of life," defendants "violated" the Anti-Terrorism Act's civil remedies provision, codified at 18 U.S.C. § 2333(a). Compl. at 11. Section 2333(a) provides recovery of treble damages and attorney fees by United States nationals for injuries sustained "by reason of an act of international terrorism." 18 U.S.C. § 2333(a). International terrorism is defined as activities that, among other things:

> (C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear to intend to intimidate or coerce, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum.

*Id.* at § 2331(1).

Plaintiff does not allege that defendants' actions occurred outside Eugene, Oregon, let alone outside the United States. Nor does plaintiff allege that facts to demonstrate that defendants' actions "transcend national boundaries" in any way.

Because plaintiff fails to plead an act of international terrorism, his Anti-Terrorism Act claim must be dismissed. And because it is clear to the Court that plaintiff could not plausibly allege that the events giving rise to this claim took place primarily outside the United States or that defendants' actions had a trans-national dimension, plaintiff is not entitled to amend this claim.

II.    Plaintiff's Motions to Amend

Plaintiff seeks leave to amend the Amended Complaint and has submitted a proposed Second Amended Complaint (doc. 26 Ex 1), a proposed Corrected Second

Amended Complaint (doc. 29 Ex 1), and a proposed Revised Second Amended Complaint (doc. 36 Ex 1). Although, as discussed above, plaintiff shall have leave to amend his complaint, his proposed second amended complaints do not correct the all the deficiencies that warrant dismissal of the claims in his Amended Complaint.

The proposed Revised Second Amended Complaint seeks to add a defendant, Don Morris, a UOPD Captain who was present at the traffic stop and supervised the actions of the other UOPD officers at that stop. The Revised Second Amended Complaint asserts four claims: (1) violations of plaintiff's rights under § 1983; (2) conspiracy to deprive plaintiff of rights under § 1985; (3) conspiracy under § 1986; and (4) claim for attorney fees under 42 U.S.C. § 1988. Plaintiff does not seek to re-assert his Anti-Terrorism Act claim.

First, the Court will not permit plaintiff to proceed on his § 1988 claim or any of the claims against UOPD and University of Oregon. Section 1988 does not provide a cause of action but, rather, provides for the award of attorney fees once a federal claim has been adjudicated. And, as explained above, UOPD and University of Oregon must be dismissed from this action because they are entitled to Eleventh Amendment immunity.

Turning to plaintiff's conspiracy claims under § 1985 and § 1986, the proposed Revised Second Amended Complaint seeks to assert § 1985 and § 1986 claims against President Schill and Chief Carmichael for failing to respond to plaintiff's complaints. Plaintiff alleges that, by ignoring his complaints, these defendants sought to cover up the wrong-doings of the UOPD officers and deprived plaintiff of due process, which

plaintiff alleges is "conspiracy to [in]terfere with the Plaintiff's civil-rights by the neglecting of their public-duties[.]" Doc. 36 Ex 1 at 14-15, 17-18. The proposed Revised Second Amended Complaint also seeks to assert § 1985 and § 1986 claims against the individual UOPD officers for neglecting their oath of office by violating plaintiff's constitutional rights, and, specifically, by attempting a malicious prosecution and fabricating evidence against plaintiff, and for conspiring to do so. Doc. 36 Ex 1 at 14-15, 17-18.

Once again, plaintiff has failed to allege facts sufficient to state claims under § 1985 and § 1986. In particular, the proposed Revised Second Amended Complaint has not alleged facts to support the existence of any agreement between defendants to violate plaintiff's rights. For example, the fact that President Schill and Chief Carmichael both received copies of plaintiff's complaint and are officials at the same institution does not demonstrate that these defendants communicated with each other about the complaint, let alone agreed to ignore it. And, like the amended complaint, the proposed Revised Second Amended Complaint lacks allegations of racial or class-based animus, or racial or class-based discrimination.

Finally, as discussed in section I above, the fundamental flaw in plaintiff's § 1983 claim against the individual defendants was that the Amended Complaint did not allege which constitutional rights were violated, when they were violated, how they were violated, or who violated them. The proposed Revised Second Amended Complaint provides that information for plaintiff's claims against the individual UOPD officers by alleging the following violations of plaintiff's rights:

- Article I, Section 10 of the United States Constitution by Officer Sitts for stopping plaintiff and issuing traffic citations to plaintiff;

- Fifth Amendment right to silence by all UOPD officers for ignoring plaintiff's request to remain silent;

- Sixth Amendment right to counsel by all UOPD officers for ignoring plaintiff's request to have counsel present before answering questions;

- Fourth Amendment right to be free from unreasonable searches and seizures by all UOPD officers for searching plaintiff's car, seizing plaintiff when he exited his car, arresting plaintiff, and in using excessive force during his seizure and arrest;

- Fourteenth Amendment right to due process by all UOPD officers by "the [de]liberate-fabrication of the evidence, . . . the [is]suing of the false-civil & criminal-charges [against] the Plaintiff," and the "[ar]rest[] and [un]lawful[]-imprison[ment]" of plaintiff. Doc. 36 Ex 1 at 16 (brackets at the beginning of words in original).

Doc. 36 Ex 1 at 16-17.

The proposed Revised Second Amended Complaint also references other constitutional rights, including the Ninth Amendment, when discussing the UOPD officers' conduct in the "LEGAL-ARGUMENT" section and several constitutional and statutory provisions that President Schill and Chief Carmichael allegedly violated in the "CONCLUSION" section. However, the Court cannot determine whether plaintiff seeks to allege § 1983 claims against the officers, President Schill, and Chief Carmichael for these alleged violations.

Because the proposed amended complaint does not correct all the deficiencies identified in this opinion, plaintiff's motions for leave to amend are granted in part and denied in part.

Plaintiff shall have leave to file a second amended complaint that amends his § 1985 and § 1986 claims against the individual defendants and asserts any additional § 1983 claims that plaintiff seeks to assert against the individual defendants. In amending his complaint, plaintiff should keep in mind the issues discussed in this opinion. Plaintiff shall file a second amended complaint within 30 days from the date of this Order.

Plaintiff should note that, if he does not file a new second amended complaint, then the case will proceed on his proposed Revised Second Amended Complaint (doc. Ex 1), and plaintiff will be able only to pursue his § 1983 claims against the individual UOPD officers for violating his rights under Article I, section 10 of the United States Constitution and the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

## CONCLUSION

Defendants' motions to dismiss (docs. 18, 20) are GRANTED in part and DENIED in part. Plaintiff's claims are dismissed, with the exception of plaintiff's § 1983 claim against the individual police officers Sitts, Geeting, and Brooks for violating his Fourth Amendment rights. Plaintiff's fourth claim for a violation of 18 U.S.C. § 2333(a) and his § 1983 and § 1986 claims against University of Oregon and the UOPD are dismissed without leave to amend, and University of Oregon and the UOPD are dismissed from this action. All other claims are dismissed with leave to amend.

Plaintiff's motions for leave to amend (docs. 26, 29, 36) are GRANTED in part and DENIED in part. Plaintiff shall have leave to amend his § 1983, § 1985, and § 1986 claims against the individual defendants and shall have 30 days from the date of this Order to file a second amended complaint.

IT IS SO ORDERED.

Dated this _6th_ day of January 2020.

_____
Ann Aiken
United States District Judge