IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

JAMES-BRENT: ALVAREZ,

        Plaintiff,

vs.

LUKE SITTS, *an individual*; *et al.*,

        Defendants.

Case No. 6:19-cv-01071-AA
**OPINION AND ORDER**

AIKEN, District Judge:

Plaintiff James-Brent: Alvarez, proceeding pro se, alleges that defendants, various University of Oregon employees and officials, violated his rights under federal law. His claims arise out of a traffic stop by University of Oregon Police Department ("UOPD") officers, which culminated with UOPD officers tasing plaintiff and concluded with plaintiff's arrest. The claims also relate to defendants' failure to respond to complaints that plaintiff submitted to the University and UOPD, which concerned the traffic stop incident. Before the Court are defendants' Motion to

Dismiss Plaintiff's Second Amended Complaint (doc. 41) and plaintiff's Motion for Leave to File a Third Amended Complaint (doc. 45). For the reasons set forth below, defendants' motion is granted, and plaintiff's motion is denied.

## BACKGROUND

The factual background of this case is well known to the parties and will not be reproduced here.

Plaintiff filed this action in July 2019. When defendants moved to dismiss the Complaint (doc. 1), plaintiff filed an Amended Complaint (doc. 19). Defendants then moved to dismiss the Amended Complaint, and plaintiff responded with a Motion for Leave to File a Second Amended Complaint (doc. 26) and, later, a Motion for Leave to File an Updated Second Amended Complaint (doc. 29).

The Amended Complaint asserted claims for violations of plaintiff's constitutional rights under 42 U.S.C. § 1983, conspiracy to deprive plaintiff of rights under 42 U.S.C. § 1985 and § 1986, and violation of the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2331, et seq. Plaintiff alleged these claims against the University of Oregon; UOPD; UOPD Officers Luke Sitts, Geri Brooks, Scott Geeting, and Stephen Barrett; UOPD Chief Matthew Carmichael; and University President Michael H. Schill.

In January 2020, the Court issued an Opinion and Order (doc. 37) that granted in part and denied in part both defendants' and plaintiff's motions. Specifically, the Court dismissed all claims against the University and UOPD with prejudice, the ATA claims without leave to amend, and all remaining claims against the individual

defendants except for plaintiff's § 1983 claim against the UOPD officers for excessive force in violation of the Fourth Amendment.  The Court then granted plaintiff leave to amend his § 1983, § 1985, and § 1986 claims and assert any additional facts or claims against the individual defendants.

Plaintiff filed his Second Amended Complaint  ("SAC") (doc. 38), which is written in the same combination of what plaintiff calls "plain language" and "CORRECT-SENTENCE-STRUCTURE-COMMUNICATIONS-PARSE-SYNTAX-GRAMMAR," or "C.-S.-S.-C.-P.-S.-G.-P.,"  as the earlier complaints.[1]  The SAC alleges the same general facts as the earlier complaints and reasserts claims under § 1983, § 1985, and § 1986.  The amendments incorporated into the SAC include the addition of UOPD Command Officer Don Morris as a defendant, a clearer articulation of the federal rights that defendants allegedly violated for purposes of the § 1983 claim, and supplemental facts supporting each claim.[2]

In March 2020, defendants filed a Motion to Dismiss the Second Amended Complaint (doc. 41).  Plaintiff then filed a Motion for Leave to File a Third Amended Complaint (doc. 45) which included his Proposed Complaint.

---

[1]  The Court notes that plaintiff filed his SAC after the deadline set by the Court's earlier Opinion.  Although the Court could dismiss this action for plaintiff's failure to follow that order, because of plaintiff's  pro se status and because the filing was only one day late, the Court will excuse that delay and address the merits of defendants' Motion to Dismiss.

[2]  In his Response, plaintiff asserts, for the first time, "a claim" against "the unknown Sergeant in charge of the University's Professional Standards Unit." Response (doc. 51) at 2, 8. However, neither the SAC nor the Response contains factual allegations concerning this defendant.  Additionally, the proper vehicle for adding a defendant  is through a motion to amend.

Page 3 – OPINION AND ORDER

## STANDARD OF REVIEW

Defendants ask the Court to dismiss the SAC and order plaintiff to file a final amended complaint asserting only a claim of excessive force against the UOPD officers.  Plaintiff asks the Court for leave to file a third amended complaint.  The Court will address the standards that apply to each motion in turn.

## I.    *Motions to Dismiss under Rule 12(b)(6)*

When ruling on a motion to dismiss, the court construes a complaint in favor of the nonmoving party, along with taking all factual allegations as true. *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007).  The court considers whether the "non-conclusory 'factual content,' and reasonable inferences from that content" plausibly suggest a claim which entitles the plaintiff to relief.  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Simply reciting the elements of a cause of action and asserting "naked" allegations without "further factual enhancement" are insufficient to state a plausible claim.  *Iqbal*, 556 U.S. at 678.  Dismissal of the kind brought by defendants is proper "only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013).

If a plaintiff is *pro se*, and particularly in civil rights cases, the court construes the pleadings "liberally" and affords the plaintiff the "benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  When giving liberal construction to a *pro se* civil rights complaint, however, the court "'may not supply essential elements of the

claim that were not initially pled.'" *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)).

## II.    *Motions for Leave to Amend*

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend a pleading] when justice so requires." A district court should apply the rule's "policy of favoring amendments . . . with extreme liberality." *Price v. Kramer*, 200 F.3d 1237, 1250 (9th Cir. 2000) (internal quotation marks omitted). The district court has particularly broad discretion in deciding whether to grant leave to amend when a plaintiff has previously been permitted leave to amend. *Chodos v. West Publishing Co.*, 292 F.3d 992, 1003 (9th Cir. 2002). In determining whether to grant leave to amend, the district court considers the presence of any of the following four factors: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, and (4) futility. *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001). Futility of amendment, however, "can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). A proposed amendment is futile if it would not withstand a motion to dismiss. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) ("Leave to amend need not be given if a complaint, as amended, is subject to dismissal.").

However, "[u]nless it is absolutely clear that no amendment can cure the defect …, a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d

245, 248 (9th Cir. 1995) (per curiam). "While [the] statement of deficiencies need not provide great detail or require district courts to act as legal advisors to pro se plaintiffs, district courts must at least draft a few sentences explaining the [complaint's] deficiencies." *Eldridge v. Block*, 832 F.2d 1132, 1136 (9th Cir. 1987).

## DISCUSSION

Defendants move to dismiss the SAC, and plaintiff seeks leave to amend his complaint.

## I.    *Defendants' Motion to Dismiss*

The SAC alleges claims under 42 U.S.C. § 1983, § 1985, and § 1986. Defendants assert that all claims fail to state a claim and ask the Court to dismiss all but the § 1983 excessive force claim against the individual UOPD officers.[3] Defendants further request that the Court order plaintiff to file a third and final amended complaint asserting the single claim for excessive force against the individual UOPD officers.

### A.    *Section 1983 Claim*

To prevail on a § 1983 claim against a state official, a plaintiff must establish that the state official "acting under the color of state law, caused the deprivation of a federal right." *Suever v. Connell*, 579 F.3d 1047, 1060 (9th Cir. 2009) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Plaintiff alleges that defendants violated a variety of his federal rights while acting under the color of state law. Defendants assert that they did not violate any of plaintiff's federal rights and, therefore, the entirety of the

---

[3] The Court notes that defendants do not concede that plaintiff has a viable excessive force claim under § 1983, and that defendants reserve the right to raise affirmative defenses to that claim.

§ 1983 claim, excluding the excessive force claim against the UOPD officers, must be dismissed.

Defendants argue that the § 1983 claims against the individual defendants are barred by the Eleventh Amendment. To overcome defendants' Eleventh Amendment immunity and adequately state a § 1983 claim against them, plaintiff must show both that defendants were acting in their official capacities and deprived him of a federal right. There is no dispute that the UOPD officers were acting in their official capacities. However, plaintiff must still allege facts that show that defendants violated his rights.

Defendants further argue that plaintiff's claims are similarly barred by qualified immunity because plaintiff has not pleaded sufficient facts to show that his rights were violated. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Aschroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

Because defendants' Eleventh Amendment and qualified immunity arguments both depend on whether the SAC adequately alleges violations of plaintiff's rights, the Court will move forward to discuss plaintiff's factual allegations.

1.  ***Section 1983 Claims Against Defendants Officer Morris, Chief Carmichael, and President Schill***

To the extent that plaintiff asserts § 1983 claims against Officer Morris, Chief Carmichael, and President Schill, defendants argue that these claims must be dismissed because plaintiff does not allege that any of them were personally involved

in the events that occurred during the traffic stop, or that he suffered any particular harm because of their actions. To hold an individual liable under § 1983, a plaintiff must allege that the individual personally participated in the alleged deprivation of the plaintiff's rights. *Avalos v. Baca*, 596 F.3d 583, 587 (9th Cir. 2010). "[T]he plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008). "A supervisor is only liable for the constitutional violations of… subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§] 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted).

Each of plaintiff's § 1983 alleged rights violations arise from the events that occurred during and just after the traffic stop. There is no allegation that President Schill or Chief Carmichael were even on the scene, much less participated in the alleged rights violations or directed the UOPD officers to act. Plaintiff has not alleged sufficient facts to support a § 1983 claim against Chief Carmichael and President Schill, and these claims must be dismissed for failure to state a claim.

Concerning Officer Morris, although the SAC alleges that Officer Morris was on scene during the traffic stop, arriving just before plaintiff was ordered out of the vehicle, there is no allegation that he personally participated in any of the events giving rise to plaintiff's claims. However, the SAC does allege that Officer Morris directed the UOPD officers to act and did not prevent the officers from taking the actions alleged to have violated plaintiff's rights. Accordingly, the claims against

Officer Morris are not dismissed on these grounds, but plaintiff must still establish that the officers violated his federal rights.

### 2. *Title 18 of the United States Code*

The SAC next alleges that defendants violated a number of sections contained in Title 18 of the United States Code, including §§ 4 (Misprision of Felony), 113 (Assault and Battery), 241 (Conspiracy), 242 (Deprivation of Rights Under Color of Law), 249 (Racial Profiling), 1001 (False Claims), 1962 (c) and (d) (Racketeering and Unlawful Debt), and 2236 (Warrantless Search).

For a statutory provision to be privately enforceable, it must create an individual right. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). Section 1983 can be used as a mechanism for enforcing the rights guaranteed by a particular federal statute only if (1) the statute creates enforceable rights and (2) Congress has not foreclosed the possibility of a § 1983 remedy for violations of the statute in question. *Id.* at 340–41. "Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." *Alexander v. Sandoval*, 532 U.S. 275, 289 (2001) (internal quotations and citations omitted).

All of the provisions of Title 18 cited by plaintiff are criminal statutes that tell regulated persons what they may not do. For example, § 113 begins with "[w]hoever… is guilty of an assault shall be punished as follows," § 241 with "[i]f two or more persons conspire to injure…. They shall be fined…" and § 249 with

"[w]hoever… willfully causes bodily injury…" These statutes are focused on the regulated persons, not the individuals intended to be protected.[4]

Therefore, plaintiff may not bring civil actions under any of these sections, and the sections do not create enforceable rights that can be vindicated through a § 1983 claim. Thus, these claims are dismissed.

### 3. *Fourth Amendment Violations*

The Fourth Amendment of the United States Constitution protects citizens' rights to be free from unreasonable search and seizure of their persons or possessions without a warrant or probable cause. Plaintiff alleges that defendants deprived him of these rights under color of law during and after the traffic stop.

The SAC alleges that the UOPD officers violated plaintiff's Fourth Amendment rights to be free from unlawful search and seizure by stopping his vehicle, asking for his license and registration and ordering him out of the vehicle, arresting him, and searching and seizing his vehicle, all without a warrant. Sec. Am. Compl. ¶ 104. Defendants respond that their actions before, during, and after the traffic stop did not violate plaintiff's Fourth Amendment rights.

The SAC alleges that Officer Sitts violated plaintiff's right to be free from unlawful seizure without a warrant when he stopped plaintiff's vehicle. Police officers need only reasonable suspicion to stop a vehicle. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). If an officer witnesses a violation of traffic laws, that officer may lawfully

---

[4] *Compare* 18 U.S.C. § 1030(g), which provides: "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." The code sections plaintiff identifies contain no equivalent provision.

stop the violating vehicle. *Whren v. United States*, 517 U.S. 806, 809–10 (1996). "The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009).

Officer Sitts stopped plaintiff's vehicle because it did not have a rear license plate. Plaintiff's alleged failure to display a license plate on his vehicle violated ORS 803.540.[5] Because Officer Sitts witnessed a violation of ORS 803.540, he was lawfully permitted to stop plaintiff's vehicle, the initial traffic stop did not violate plaintiff's Fourth Amendment rights, and this claim must be dismissed.

The SAC also alleges that the UOPD officers violated plaintiff's Fourth Amendment rights against unlawful search and seizure when they asked plaintiff to provide his license and registration several times and when Officer Sitts ordered plaintiff out of his vehicle. Although generally a traffic stop remains reasonable only for the duration required to address the observed traffic violation, the officer may

---

[5] ORS 803.540 provides:

(1) A person commits the offense of failure to display registration plates if the person operates, on the highways of this state, any vehicle or camper that has been assigned registration plates by this state and the registration plates assigned to the vehicle or camper are displayed in a manner that violates any of the following:

(a) The plate must be displayed on the rear of the vehicle, if only one plate is required.

(b) Plates must be displayed on the front and rear of the vehicle if two plates are required.

(c) The plates must be in plain view and so as to be read easily by the public.

(d) The plate must not be any plate that does not entitle the holder thereof to operate the vehicle upon the highways.

ORS 803.540(1).

conduct "ordinary inquiries incident to [the traffic] stop." *Rodriguez v. United States*, 575 U.S. 348, 355 (2015). These inquiries typically involve "checking the driver's license… and inspecting the automobile's registration and proof of insurance," and do not violate the driver's Fourth Amendment rights. *Id.* "These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Id.* at 349. In Oregon, failure to carry or refusal to provide a valid driver's license to a police officer, when lawfully stopped while driving a vehicle, is a Class C misdemeanor. ORS 807.570.[6] Additionally, once the vehicle has been lawfully stopped for a traffic violation, officers may order the driver out of the vehicle. *Maryland v. Wilson*, 519 U.S. 408, 412 (1997).

As discussed, Officer Sitts lawfully stopped plaintiff's vehicle due to the missing rear license plate. The UOPD officers asked plaintiff repeatedly for his license and registration, and plaintiff refused each time. Officer Sitts then ordered plaintiff out of the vehicle. Because the officers requesting plaintiff's license and registration, and ordering plaintiff out of the vehicle, were within the legal bounds of

---

[6] ORS 807.570 provides:

(1) A person commits the offense of failure to carry a license or to present a license to a police officer if the person either:

    (a) Drives any motor vehicle upon a highway in this state without a license, driver permit or out-of-state license in the person's possession; or

    (b) Does not present and deliver such license or permit to a police officer when requested by the police officer under any of the following circumstances:

        (A) Upon being lawfully stopped or detained when driving a vehicle.

ORS 807.570(1).

their authority, they did not violate plaintiff's Fourth Amendment rights through these actions, and this claim must be dismissed.

The SAC next alleges that defendants violated plaintiff's Fourth Amendment rights by arresting him without a warrant.  The Fourth Amendment generally prohibits arrests without a warrant, but an officer may arrest a person without a warrant if the officer has probable cause to make the arrest.  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011).  Arresting officers have probable cause if, at the time of arrest, the facts and circumstances within their knowledge and of which they have reasonably trustworthy information, were sufficient to warrant a prudent person in believing that the arrested person had committed or was committing an offense. *Conner v. Heiman*, 672 F3d 1126, 1132 (9th Cir. 2012).

After plaintiff was lawfully stopped for not having a rear license plate, he repeatedly refused to provide his license and registration, violating ORS 807.570. As mentioned, a violation of this statute is a Class C misdemeanor which is punishable by a maximum of 30 days imprisonment, ORS 161.615(3), and a $1,250 fine, ORS 161.635(1)(c).  ORS 133.310(1)(b)[7] authorizes peace officers to arrest a person without a warrant if they have probable cause to believe that the person has committed a

---

[7] ORS 133.310 provides:

> (1) A peace officer may arrest a person without a warrant if the officer has probable cause to believe that the person has committed any of the following:

>> (a) A felony.

>> (b) A misdemeanor.

ORS 133.310(1).

Page 13 – OPINION AND ORDER

misdemeanor. Plaintiff does not dispute that he refused to provide the officers with his license and registration. Because the officers witnessed plaintiff refusing to present his license and registration in violation of ORS 807.570, the officers reasonably believed that plaintiff was committing the offense of failure to present a license to a police officer.

Additionally, interfering with a police officer is prohibited by ORS 162.247, which states that a person commits this offense if the person "refuses to obey a lawful order by" police officers when the person knows that they are police officers. Plaintiff does not dispute that he knew the UOPD officers were police officers, nor that he refused to provide his license and registration to the officers which has already been established to be a lawful order. Therefore, the UOPD officers had probable cause to arrest plaintiff, and plaintiff's claim of unlawful arrest in violation of the Fourth Amendment must be dismissed.

Finally, the SAC alleges that the UOPD officers violated plaintiff's Fourth Amendment rights against warrantless search and seizure of his property by searching and towing his vehicle. Although the Fourth Amendment generally prohibits warrantless search and seizure of property, there are exceptions, particularly with vehicles. *See, e.g.*, *South Dakota v. Opperman*, 428 U.S. 364 (1976) (inventory search of impounded vehicle); *Arizona v. Gant*, 556 U.S. 332 (2009) (search of automobile incident to arrest). Additionally, officers are authorized to tow a vehicle under the community caretaking doctrine if "the driver's violation of a vehicle regulation prevents the driver from lawfully operating the vehicle and also if it is

necessary to remove the vehicle from an exposed or public location." *Miranda v. City of Cornelius*, 429 F.3d 858, 865 (9th Cir. 2005).

To support this claim, plaintiff alleges that prior to being ordered out of his vehicle, Officer Barrett searched his vehicle "on the outside." Sec. Amend. Compl. ¶ 40. However, "[t]he exterior of a car, of course, is thrust into the public eye, and thus to examine it does not constitute a search." *New York v. Class*, 475 U.S. 106, 114 (1986) (internal citations and quotations omitted). Other than this specific allegation, plaintiff provides no further factual allegations to explain exactly what the officers did or when they did it, and instead repeatedly asserts that the officers unlawfully searched and seized his vehicle with no further details. Sec. Amend. Compl. ¶ 42; ¶ 43; ¶ 44; ¶ 58; ¶72; ¶ 104. To the extent that plaintiff is arguing that defendants unlawfully seized his vehicle by towing it after his arrest, towing the vehicle was permitted by the community caretaking doctrine and, therefore, did not violate plaintiff's Fourth Amendment rights. For these reasons, plaintiff has not alleged sufficient facts to support his claim of unlawful search and seizure of his vehicle in violation of the Fourth Amendment, and this claim must be dismissed.

In sum, plaintiff has failed to sufficiently state a claim that his Fourth Amendment rights were violated by any of defendants' actions, and these claims must be dismissed.

### 4.    *The United States Constitution Article I, Section 10, Clause 1, Contracts Clause and Bills of Attainder*

The SAC also alleges that the traffic stop and subsequent traffic citations violated both the contracts clause and bills of attainder provisions contained in

Article I, Section 10, Clause 1 of the United States Constitution.  Article I, Section 10, Clause 1 states, in relevant part, "No State shall… pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts."

Plaintiff appears to allege that the UOPD Officers violated the contracts clause by stopping his vehicle.  However, to come within the contracts clause, the contractual obligation must have been impaired, and "it must have been impaired by a law of the State.  The prohibition is aimed at the legislative power of the State, and not at the… acts of administrative or executive boards or officers, or the doings of corporations or individuals." *New Orleans Waterworks Co. v. Louisiana Sugar Refining Co.*, 125 U.S. 18, 30 (1888).[8]  Because plaintiff does not challenge a law, but rather individual actions by the UOPD officers, this claim is untenable and must be dismissed.

Plaintiff also appears to assert that by issuing traffic citations, Officer Sitts violated the Constitution's prohibition of "bills of attainder."  SAC ¶ 101.  Plaintiff quotes Black's Law Dictionary, which defines bills of attainder as "such special *acts of the legislature* as inflict capital punishments upon persons supposed to be guilty of high offenses, such as treason and felony, without any conviction in the ordinary course of judicial proceedings."  Sec. Amend. Compl. ¶ 101 (emphasis added).  Additionally, since 1867 the Supreme Court has defined a bill of attainder as "*a legislative act* which inflicts punishment without a judicial trial." *Cummings v. Mo.*, 71 U.S. 277, 323 (1867) (emphasis added).  These definitions show that the bills of attainder provision in the Constitution, similarly to the contracts clause, is only

---

[8] This is both the first and last time the Supreme Court has addressed this issue.

applicable in challenging a legislative action, not an individual person's conduct, even if taken under color of law.

Additionally, the Ninth Circuit has explained that officers may issue a citation during a traffic stop without exceeding the scope of the traffic stop, *United States v. Diaz-Castaneda*, 494 F.3d 1146, 1152 (9th Cir. 2007), and ORS 810.410(2)(a) authorizes police officers to "issue a citation to a person for a traffic violation" when "the traffic violation is committed in the police officer's presence." Plaintiff does not seem to dispute that he committed the acts giving rise to the citations, such as driving without a driver's license and a rear license plate, and instead argues that while committing those acts he was not breaking the law. Plaintiff does not point to any valid legal authority to support his position. Therefore, the UOPD officers did not violate either the contracts clause or the bills of attainder provision contained in Article I, Section 10, Clause 1 of the Constitution by issuing plaintiff traffic citations, and these claims must be dismissed.

### 5.    *Right to Travel*

Next, the SAC alleges that the UOPD officers violated plaintiff's constitutionally protected "right to travel." Sec. Amend. Compl. ¶ 105. The Supreme Court has recognized a fundamental right to interstate travel. *Attorney General of New York v. Soto-Lopez*, 476 U.S. 898, 903 (1986) (Brennan, J., plurality opinion). However, "[a] burden on a single mode of transportation does not implicate the constitutional right to interstate travel. There is no fundamental right to drive. Nor

is there a fundamental right to a driver's license." *Mendoza v. Garrett*, 358 F. Supp. 3d 1145, 1173 (D. Or. 2018) (internal citations omitted).

The SAC alleges that plaintiff's right to travel was violated, but it fails to explain how. It states "[f]or the violation of the due-process-clause for the XIV-Amendment is by the taking of the Plaintiff's-secured-liberty for the right to travel and turning it into a licensed-privilege by the UOPD-Officers-Luke Sitts, Geri Brooks, Scott Geeting, and Steven Barrett under the color of the law." Sec. Amend. Compl. ¶ 106. It is unclear from this allegation whether plaintiff is asserting this violation in relation to the UOPD officers stopping his vehicle or enforcing the laws which require a driver's license. Regardless, as already explained, the UOPD officers acted within the legal bounds of their authority by stopping plaintiff's vehicle, and a burden on plaintiff's ability to legally drive in the form of requiring a driver's license does not violate his right to travel.

Therefore, plaintiff's assertion that the UOPD officers violated his constitutional right to travel fails to state a claim and must be dismissed.

### 6.    *Fifth Amendment and* Miranda *Violations*

The SAC alleges that the UOPD officers violated plaintiff's Fifth Amendment rights by failing to provide *Miranda* warnings before questioning him during the traffic stop and by continuing to question him after he had asserted his rights to silence and counsel. Defendants argue that *Miranda* warnings are not required during a traffic stop because an ordinary traffic stop is not custodial.

The Fifth Amendment to the United States Constitution provides a right to be free from compelled self-incrimination.  To help protect this right, the Supreme Court held in *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), that statements made by individuals during a "custodial interrogation" are inadmissible in a criminal trial if the individual is not informed of a variety of rights such as the right to remain silent and have an attorney present prior to questioning, commonly known as *Miranda* warnings.  "Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  *Id.*  Although a traffic stop restricts an individual's freedom to an extent, *Miranda* warnings are not required during an ordinary traffic stop because an individual detained temporarily during the stop is not "'in custody' for the purposes of *Miranda*."  *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984).

Additionally, "a violation of the constitutional *right* against self-incrimination [under the Fifth Amendment] occurs only if one has been compelled to be a witness against himself in a criminal case."  *Chavez v. Martinez*, 538 U.S. 760, 770 (2003) (emphasis in original).  Accordingly, "failure to read *Miranda* warnings" to an individual does not violate the individual's Fifth Amendment constitutional rights unless and until the statements made are used against the individual in a criminal case.  *Id.* at 772–73.

Plaintiff claims that his Fifth Amendment rights were violated when the UOPD officers did not provide him with *Miranda* warnings and continued

questioning him after he had asserted his right to silence and counsel, but before he was arrested.[9]  Because an ordinary traffic stop is not custodial, the UOPD officers were not required to provide plaintiff with *Miranda* warnings.  Further, the SAC does not allege that any statements made by plaintiff during his encounter with the officers have been used against him in a criminal case.  Accordingly, the SAC does not allege facts showing that the UOPD officers violated plaintiff's Fifth Amendment right against self-incrimination, and this claim must be dismissed.

### 7.    *Fourteenth Amendment Equal Protection Clause*

Finally, the SAC alleges that the UOPD officers racially profiled plaintiff as a white sovereign citizen.    Claims asserting racial motives behind selective enforcement of the law are properly brought under the Equal Protection Clause of the Fourteenth Amendment. *Whren*, 517 U.S. at 813.  To sufficiently plead a claim for class-based racial profiling, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based on membership in a protected class." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166–67 (9th Cir. 2005).  Alternatively, if a plaintiff does not claim class-based discrimination, the plaintiff may claim that he "has been irrationally singled out as a 'class of one.'" *Gerhart v. Lake Cty., Mont.*, 637 F.3d 1013, 1021 (9th Cir. 2011) (citing *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008)).  "To succeed on a 'class of one' claim, a plaintiff must show that he was: (1) intentionally (2) treated differently than other

---

[9] Plaintiff does not allege any facts to show that the UOPD officers attempted to converse with him after he was put under arrest.  In fact, plaintiff notes that while at the hospital he asked Officer Sitts about the reason for his arrest, to which Officer Sitts "reminds the Plaintiff he exercised the right to remain silent, and they are no-longer able to communicate." Sec. Amend. Compl. ¶ 62.

similarly situated individuals, (3) without a rational basis." *Stone v. Van Wormer*, 2019 WL 4197206, *8 (D. Or. Sept. 4, 2019) (internal citations omitted).

The SAC alleges two interactions between plaintiff and Officer Sitts that plaintiff asserts support his racial profiling claim. First, the SAC alleges that during the traffic stop Officer Sitts "accuse[d] the Plaintiff of not agreeing with the laws for the inference of the Plaintiff-being a Sovereign-Citizen." Sec. Amend. Compl. ¶ 38. Second, the SAC alleges that, after plaintiff's arrest, Officer Sitts spoke with plaintiff's wife on the phone and stated "'[s]ituations like what happened don't work out well for the people like that,' with the inference of the husband being a Sovereign-Citizen." Sec. Amend. Compl. ¶ 70. Taken as true, these allegations still fail to adequately support plaintiff's claim that he was racially profiled by the UOPD officers.

Plaintiff has provided no legal authority to show that "white sovereign citizen" is a protected class, and therefore may not claim class-based discrimination. If plaintiff intended to assert a 'class of one' claim, and assuming *arguendo* he can sufficiently prove that the UOPD officers intentionally singled him out for disparate treatment, he has failed to identify any similarly situated individuals who received different treatment. Accordingly, plaintiff's claim that the UOPD officers racially profiled him in violation of the Equal Protection Clause of the Fourteenth Amendment must be dismissed.

**B.    Section 1985 Claim**

42 U.S.C. § 1985 prohibits conspiracies to interfere with certain civil rights. As in the First Amended Complaint, the SAC's "allegations appear to relate to the second clause of subsection (2), which concerns conspiracies to obstruct the course of justice in state courts, and the first clause of subsection (3), which concerns conspiracies to prevent state authorities from securing a person's equal protection of the laws." Opinion at 15. A plaintiff must allege three things to state a claim under these clauses: (1) "specific facts to support the existence of the claimed conspiracy"; (2) racial or class-based discriminatory intent; and (3) an underlying violation of his federal rights. *Burns v. Cnty. of King*, 886 F.3d 819, 821 (9th Cir. 1989). "A claim under this section must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988); *see also Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1039 (9th Cir. 1991)

The SAC alleges that the UOPD officers participated in several conspiracy "meetings of their minds" when they stepped away from plaintiff's vehicle during the traffic stop to converse. Sec. Amend. Compl. ¶¶ 31, 32, 37, 40. It also alleges that Officer Morris participated in the conspiracy by not stopping the other officers' behavior during the traffic stop. Sec. Amend. Compl. ¶ 59. The SAC further alleges that Chief Carmichael is an accessory to the officers' conspiracy because he knew about the conspiracy due to plaintiff sending four complaints, did not report the officers, and failed to follow UOPD policies by not sending the complaints to the

review committee.  Sec. Amend. Compl. ¶ 115.  It also alleges that President Schill is an accessory to the officers' conspiracy because he similarly knew about the conspiracy from plaintiff's complaints, did not report the officers or Chief Carmichael, and did not enforce UOPD policies.  Sec. Amend. Compl. ¶ 116.  These conclusory allegations that several defendants "conspired" against plaintiff are not the kind of specific facts needed to allege the existence of a conspiracy.  Plaintiff has not alleged any facts to show defendants agreed, even tacitly, to violate any of plaintiff's rights.

The SAC also fails to allege facts regarding any race-based animus.  Sovereign citizen beliefs do not constitute a race.  And, generally in the Ninth Circuit, § 1985(3)'s protections may extend beyond race "only when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their civil rights."  *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (internal quotation marks and citations omitted).  More specifically, a plaintiff must allege discrimination for membership in a class that has been designated "a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection."  *Id*.

Here, plaintiff has provided no authority that designates 'white sovereign citizens' as a suspect or quasi-suspect class, nor legislation indicating that 'white sovereign citizens' require special protection.  Because plaintiff has failed to plead facts demonstrating the existence of a conspiracy or a race or class-based motivation, plaintiff's § 1985 claim must be dismissed.

### C.    Section 1986 Claim

Like § 1985, § 1986 concerns conspiracies to violate rights, specifically an individual's failure to prevent a conspiracy. However, "[a] claim can be stated under section 1986 only if the complaint contains a valid claim under section 1985." *Karim-Panahi*, 839 F.2d at 626. Because plaintiff's § 1985 claim fails, this claim under § 1986 fails as well and must be dismissed.

## II.    Plaintiff's Motion for Leave to Amend

Plaintiff's Proposed Third Amended Complaint (doc. 45) ("Proposed Complaint") realleges plaintiff's § 1983 claim, except for the Title 18 of the United States Code sections, and plaintiff's § 1985 and § 1986 claims. The Proposed Complaint also adds new § 1983 claims for violations of plaintiff's First Amendment rights to assemble and freedom of religion, the Thirteenth Amendment, and the Fourteenth Amendment by fabricating evidence. The Proposed Complaint further alleges violations of § 1985 and § 1986 due to Chief Carmichael and President Schill failing to enforce UOPD Policy 1020. Defendants oppose the requested amendments, arguing that the amendments would be futile.

### A.    Section 1983 Claim

As already discussed, the SAC fails to allege facts showing violations of plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments, or the contracts clause and bills of attainder provisions in Article I, Section 10, Clause 1 of the United States Constitution, or of his right to travel. The Proposed Complaint provides some clarity concerning plaintiff's allegations, such as explaining that the

unknown sergeant in the UOPD Professional Standards Unit violated plaintiff's rights by not contacting him to let him "know that the complaint ha[d] been documented and assigned for review." Proposed Compl. ¶ 47. However, none of the new or different information contained in the Proposed Complaint corrects the deficiencies with the claims asserted in the SAC. Because plaintiff has not alleged anything new in the Proposed Complaint concerning these claims, amendment would be futile. Accordingly, the Court will now examine the new claims raised in the Proposed Complaint.

### 1.    *First Amendment Rights to Assemble and Religion*

The Proposed Complaint appears to allege that the UOPD officers violated plaintiff's First Amendment of the United States Constitution rights to assemble and freedom of religion. The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

Concerning plaintiff's constitutional right to assemble, the Proposed Complaint does not explain what assembly he was denied the right to participate in. In fact, at no point has plaintiff alleged or provided facts to show that he was engaging in "peaceful assembly" at the time of the traffic stop. Similarly, concerning plaintiff's right to freedom of religion, the Proposed Complaint does not explain how the UOPD officers denied him that right.

The Proposed Complaint also seems to allege that the UOPD officers retaliated against him for exercising his constitutional rights. Government officials are prohibited from retaliating against individuals for exercising their constitutional rights. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). To state a First Amendment retaliation claim, a plaintiff must allege three things: "(1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016). A plaintiff must also establish a causal connection between the defendant's retaliatory animus and the plaintiff's injury. *Bartlett*, 139 S. Ct. at 1722. To establish causation, a plaintiff must show "that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id*. at 1725.

When alleging a retaliatory arrest claim under the First Amendment, a plaintiff must generally plead and prove the absence of probable cause for that arrest. *Id*. If the plaintiff cannot prove the officers did not have probable cause, the claim fails, unless the plaintiff fits into a "narrow qualification . . . for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id*. at 1727. Therefore, a plaintiff may overcome the probable cause requirement if the "plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected [activity] had not been." *Id*.

Here, even if plaintiff were engaging in a constitutionally protected activity, the UOPD officers had probable cause to arrest him. Plaintiff has not provided any evidence to suggest that similarly situated individuals were treated differently than him, so he does not fit into the narrow qualification described above. Therefore, this amendment is futile.

### 2. *Thirteenth Amendment*

The Proposed Complaint also alleges that the UOPD officers violated plaintiff's Thirteenth Amendment of the United States Constitution rights by asking for his license and registration. The Thirteenth Amendment provides "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." The Thirteenth Amendment does not prohibit the UOPD officers' conduct. Instead, it prohibits "slavery" and "involuntary servitude, except as a punishment for a crime" of which the party has been convicted. The Court cannot imagine any way in which questions from law enforcement to obtain a driver's license and registration could be equated with slavery or involuntary servitude. Additionally, as has been discussed, the UOPD officers acted within the legal bounds of their authority by asking for plaintiff's license and registration. Therefore, this amendment is futile.

### 3. *Fourteenth Amendment Fabrication of Evidence*

The Proposed Complaint also alleges that the UOPD officers fabricated evidence in violation of plaintiff's Fourteenth Amendment rights, also known as a

*Devereaux* claim in this Circuit.  "A *Devereaux* claim is a claim that the government violated the plaintiff's due process rights by subjecting the plaintiff to criminal charges based on deliberately-fabricated evidence."  *Bradford v. Scherschligt*, 803 F.3d 382, 386 (9th Cir. 2015) (citing *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001)).  *Devereaux* states that "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government."  *Devereaux*, 263 F.3d at 1074. To prevail on a *Devereaux* claim, "the plaintiff must first point to evidence he contends the government deliberately fabricated."  *Scherschligt*, 803 F.3d at 386.  Next, "a plaintiff must [show] that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017) (citation omitted).  However, even if a plaintiff does not present direct evidence that the government's actions were deliberate, the plaintiff may use one of two "circumstantial methods" to show that the falsification was deliberate. *Scherschligt*, 803 F.3d at 386.  A plaintiff must, "at a minimum," allege facts showing that either "(1) Defendants continued their investigation of [the plaintiff] despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." *Devereaux*, 263 F.3d at 1076.

The Proposed Complaint alleges that the UOPD officers fabricated evidence that "the plaintiff was engaged in traffic, and further, by claiming the plaintiff was

under arrest, with the plaintiff resisting that arrest." Proposed Compl. at 32. To the extent that plaintiff is claiming that the UOPD officers deliberately fabricated evidence that he broke traffic laws because he was not engaged in an activity which requires license plates and a driver's license, which he refers to as "traffic," this claim is futile. Plaintiff seems to believe that he was not breaking any laws when he was pulled over because laws requiring a driver's license and license plates to operate a private automobile are inherently unconstitutional. However, it has long been established that "[t]he use of the public highways by motor vehicles, with its consequent dangers, renders the reasonableness and necessity of regulation apparent. The universal practice is to register ownership of automobiles and to license their drivers." *Reitz v. Mealey*, 314 U.S. 33, 36 (1941), overruled in part on other grounds by *Perez v. Campbell*, 402 U.S. 637, 652–54 (1971). Accordingly, "[a]ny appropriate means adopted by the states to insure competence and care on the part of its licensees and to protect others using the highway is consonant with due process." *Id.*

Because plaintiff admits that he was driving without license plates and a driver's license, and those activities are validly regulated, he cannot demonstrate that the UOPD officers deliberately fabricated evidence of him violating the law through these actions because his admission necessarily shows that the evidence was not fabricated. Therefore, plaintiff's claim that the UOPD officers fabricated evidence of him engaging in an activity that may be regulated by the state is futile.

Concerning plaintiff's arrest and subsequent criminal charges, plaintiff alleges that he was "[falsely] arrested for [allegedly] resisting arrest, [allegedly] interfering with a police officers, and [alleged] assault of police officers." Proposed Compl. ¶ 31 (alterations in original). According to plaintiff, this is a fabrication of evidence because he "could not have resisted arrest, because it was never ordered that he is under arrest, therefore, the plaintiff cannot resist something that didn't exist due to the fact there is no arrestable crime committed by the plaintiff." *Id*. This does not tell the Court specifically what evidence the UOPD officers allegedly deliberately fabricated to support the criminal charges. However, because it is likely that plaintiff intended to allege that the UOPD officers deliberately fabricated evidence in their arrest reports, the Court will proceed under this assumption.

Even assuming that plaintiff intends to claim that the UOPD officers deliberately fabricated evidence in their arrest reports that plaintiff was under arrest at the time he was ordered out of his vehicle, this amendment is futile. The Proposed Complaint does not allege what evidence was provided to whom that led to deprivation of his liberty other than that Chief Carmichael and President Schill received the allegedly fabricated evidence and that they "failed to remain independent and objective when dealing with the plaintiff's complaint, and thereby, based upon the fabricated evidence of the UOPD officers alleged claims, did support the racial profiling of the plaintiff as a sovereign citizen." Proposed Compl. at 38. As discussed, to prevail on a *Devereaux* claim plaintiffs must allege facts to show that the fabricated evidence caused the deprivation of their liberty. Plaintiff has not

Page 30 – OPINION AND ORDER

alleged that Chief Carmichael and President Schill were involved in his arrest, detention, or subsequent charges and, therefore, cannot show that the allegedly fabricated evidence presented to them caused the arrest, detention, or subsequent charges. Additionally, even if plaintiff is arguing that the fabricated evidence led to the alleged conspiracy under § 1985 and § 1986, this amendment is still futile for the reasons set forth below.

Therefore, this amendment alleging a violation of plaintiff's Fourteenth Amendment rights by fabrication of evidence would be futile.

### B.    *Section 1985 and 1986 Claims*

The Proposed Complaint realleges plaintiff's § 1985 and § 1986 claims against all defendants, but it fails to provide additional factual support than what was alleged in the SAC. Because these claims have already been shown to be inadequately pleaded, amendment would be futile.

The Proposed Complaint also alleges that Chief Carmichael and President Schill conspired to violate plaintiff's rights by failing to enforce UOPD Policy 1020.[10] However, the policy manual in which this policy is contained states, at the very beginning, that "[v]iolations of any provision of any policy contained within this manual shall only form the basis for departmental administrative action, training or discipline." UOPD Policy Manual 106.1.1. Thus, plaintiff may not sue for a violation of this policy, and this amendment would be futile.

---

[10] The Proposed Complaint also makes this allegation against an unknown Seargent of the UOPD Professional Standards Unit. The Court will not discuss this proposed defendant because this claim is also futile for the reasons documented below.

C.    *Summary*

The Proposed Complaint does not correct any of the deficiencies in the claims alleged in the SAC.  And, although it alleges new claims and theories of liability, the Proposed Complaint does not allege facts sufficient to show that plaintiff is entitled to relief on any of those claims or theories.  Thus, the Court concludes that plaintiff's proposed amendments would be futile.  Because the proposed amendments are futile, and plaintiff has already had an opportunity to amend his claims after receiving notice from the Court about the deficiencies in the First Amended Complaint and proposed SAC, the Court concludes that, at this point, it is clear that no amendment could remedy these defects.  This case will proceed on one claim:  plaintiff's § 1983 claim for excessive force against UOPD Officers Sitts, Barrett, Geeting, and Brooks as alleged in the Second Amended Complaint.  Plaintiff does not need to file a Third Amended Complaint.  Plaintiff's Motion for Leave to File a Third Amended Complaint is, therefore, denied.

## CONCLUSION

Defendants' Motion to Dismiss the Second Amended Complaint (doc. 41) is GRANTED.  Plaintiff's Motion for Leave to File a Third Amended Complaint (doc. 45) is DENIED.

IT IS SO ORDERED.

Dated this  25th  day of August 2020.

/s/Ann Aiken
Ann Aiken
United States District Judge