**Naomi Levelle Haslitt**, OSB No. 075857
naomi.haslitt@millernash.com
**Iván Resendiz Gutierrez**, OSB No. 154617
ivan.resendiz@millernash.com
MILLER NASH GRAHAM & DUNN LLP
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon  97204
Phone:  503.224.5858
Fax:  503.224.0155

*Attorneys for Defendants*


UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION


| | |
|---|---|
| JAMES-BRENT: ALVAREZ, | Case No. 6:19-cv-01071-AA |
| Plaintiff, | |
| v. | DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| LUKE SITTS, an individual; GERI BROOKS, an individual; SCOTT GEETING, an individual; STEVEN BARRETT, an individual; DON MORRIS, an individual; MATTHEW CARMICHAEL, an individual; and MICHAEL H. SCHILL, an individual, | **REQUEST FOR ORAL ARGUMENT** |
| Defendants. | |


Page i -    Defendants' Motion for Summary Judgment

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

## TABLE OF CONTENTS

Page

LOCAL RULE 7-1 CERTIFICATION.................................................................1

LOCAL RULE 7-2 CERTIFICATION .................................................................1

MOTION...................................................................................................1

MEMORANDUM ........................................................................................2

I.      INTRODUCTION ............................................................................2

II.     STATEMENT OF UNDISPUTED FACTS .............................................3

        A.      The parties........................................................................3

                1.      Plaintiff.................................................................3

                2.      UOPD ...................................................................3

        B.      Factual background............................................................5

                1.      Officer Sitts pulls over a heavily tinted sport performance vehicle traveling on a public street near the University of Oregon with no rear license plates displayed...................................5

                2.      Officer Sitts asks plaintiff for standard driver documentation, and plaintiff refuses to provide it ......................................................6

                3.      Officer Sitts identifies plaintiff's name, discovers that plaintiff has a caution flag, and observes plaintiff making furtive movements ..........................................................7

                4.      Additional UOPD Officers arrive at the scene to assist Officers Sitts; Sergeant Geeting attempts to persuade plaintiff to provide the necessary documents and becomes concerned that plaintiff may be concealing a weapon; and Corporal Barrett becomes concerned about officer safety based on plaintiff's furtive movements, refusals to comply, and overall behavior..........................................................8

                5.      Plaintiff's repeated refusals to provide the necessary documents and the location of the vehicle leads Officer Sitts to determine that plaintiff must be removed from the vehicle and the vehicle must be towed.........................................................11

                6.      Plaintiff is ordered to exit the vehicle and actively resists arrest ...................................................................11

                7.      Plaintiff is placed under arrest and issued several traffic citations ......................................................... 13

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

III.   ARGUMENT..............................................................................................14

A.     Summary judgment standard ...................................................14

B.     No reasonable factfinder could conclude that the UOPD Officers
       used excessive force in apprehending plaintiff............................15

       1.     Standards for a claim of excessive force ..........................15

       2.     The UOPD Officers did not use excessive force; they used
              reasonable and appropriate force to gain compliance from a
              combative expert mixed-martial artist ...........................17

C.     Plaintiff's Section 1983 claim against the UOPD Officers is barred
       by Eleventh Amendment Immunity .........................................19

       1.     Overview of traffic stops and Miranda ...........................20

       2.     Elements of a Section 1983 claim ...................................21

       3.     Plaintiff's Section 1983 claim is barred, in its entirety, by the
              Eleventh Amendment because the UOPD Officers were
              acting in their official capacity......................................22

       4.     Plaintiff's Section 1983 claim is barred, in its entirety, by the
              Eleventh Amendment because the UOPD Officers were
              acting in their official capacity and plaintiff does not seek
              prospective injunctive relief..........................................22

D.     Even if plaintiff's Section 1983 claim is not barred by the
       Eleventh Amendment, the UOPD Officers are entitled to qualified
       immunity ..............................................................................23

       1.     Qualified immunity ........................................................23

       2.     Constitutional right.......................................................25

              a.     Standards for a claim of excessive force.............25

              b.     Alleged excessive force used against plaintiff ....26

                     (1)    Type and amount of force inflicted .........27

                     (2)    Severity of crime ....................................28

                     (3)    Immediate threat of safety.....................28

                     (4)    Actively resisting arrest ........................30

       3.     Clearly established ........................................................32

IV.    CONCLUSION..........................................................................35

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

# TABLE OF AUTHORITIES

## Cases

*Alvarez v. Univ. of Oregon*,
No. 6:19-CV-01071-AA, 2020 WL 61036 (D. Or. Jan. 6, 2020) ........................... 21, 22

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................................................ 14

*Anderson v. Warner*,
451 F.3d 1063 (9th Cir. 2006) ................................................................................ 23

*Arizona v. Johnson*,
555 U.S. 323 (2009) ..................................................................................... 20, 29, 31

*Ashcroft v. Al-Kidd*,
563 U.S. 731 (2011) ......................................................................................... 24, 34

*Barrett v. Williams*,
No. 6:11-cv-06358, 2013 WL 6055247 (D. Or. Nov. 14, 2013) ................................. 24

*Beaver v. City of Federal Way*,
507 F.Supp.2d 1137 (W.D. Wash. 2007),
*aff'd*, 301 F. App'x 704 (9th Cir. 2008) .............................................................. 29, 34

*Blankenhorn v. City of Orange*,
485 F.3d 463 (9th Cir. 2007) .................................................................................. 33

*Bogle v. Clackamas Cty.*,
No. 3:15-cv-0013-SI, 2017 WL 5490870 (D. Or. Nov. 15, 2017),
*aff'd sub nom. Bogle v. Roberts*, 745 F. App'x 31 (9th Cir. 2018) .............................. 26

*Celotex Corp. v. Catrett*,
477 U.S. 317 .......................................................................................................... 14

*Chew v. Gates*,
27 F.3d 1432 (9th Cir. 1994) ............................................................................ 27, 28

*Clicks Billiards Inc. v. Sixshooters Inc.*,
251 F.3d 1252 (9th Cir. 2001) ................................................................................ 14

*Conn v. Gabbert*,
526 U.S. 286 (1999) ............................................................................................... 23

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

*Deorle v. Rutherford*,
　272 F.3d 1272 (9th Cir. 2001) ................................................................. 29

*Draper v. Reynolds*,
　369 F.3d 1270 (11th Cir. 2004) ............................................................... 34

*Elifritz v. Fender*,
　No. 3:18-CV-00903-HZ, 2020 WL 2475877 (D. Or. May 13, 2020) ......................... 26

*Forrester v. City of San Diego*,
　25 F.3d 804 (9th Cir. 1994) .................................................................. 30

*Goldsmith v. Snohomish County*,
　558 F. Supp. 2d 1140 (W.D. Wash. 2008) ...................................................... 34

*Graham v. Connor*,
　490 U.S. 386 (1989) ...................................................................... *passim*

*Hafer v. Melo*,
　502 U.S. 21 (1991) ........................................................................... 23

*Hunter v. Bryant*,
　502 U.S. 224 (1991) (per curiam) ............................................................ 25

*Jakeman v. Berry*,
　No. 6:14-cv-273-AC, 2015 WL 2062344 (D. Or. Apr. 6, 2015) ................................. 14

*Kaady v. City of Sandy*,
　No. CV. 06-1269-PK, 2008 WL 5111101 (D. Or. Nov. 26, 2008) ...................... *passim*

*Knox v. Sw. Airlines*,
　124 F.3d 1103 (9th Cir. 1997) ............................................................... 24

*Lowry v. City of San Diego*,
　858 F.3d 1248 (9th Cir. 2017) ......................................................... *passim*

*Maryland v. Wilson*,
　519 U.S. 408 (1997) ..................................................................... 20, 21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
　475 U.S. 574 (1986) .......................................................................... 14

*Michigan v. Summers*,
　452 U.S. 692 (1981) .......................................................................... 20

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

*Miller v. Clark Cty.*,
   340 F.3d 959 (9th Cir. 2003) ............................................................... 29

*Morales v. Fry*,
   873 F.3d 817 (9th Cir. 2017) ............................................................... 25

*Mullenix v. Luna*,
   577 U.S. 7 (2015) ................................................................................. 33

*Pearson v. Callahan*,
   555 U.S. 223 (2009) ...................................................................... 23, 24

*Pena v. Gardner*,
   976 F.2d 469 (9th Cir. 1992) ............................................................... 23

*Pennsylvania v. Mimms*,
   434 U.S. 106 (1977) ............................................................................. 20

*Price v. Hawaii*,
   939 F.2d 702 (9th Cir. 1991 ................................................................ 23

*Saman v. Robbins*,
   173 F.3d 1150 (9th Cir.1999) .............................................................. 29

*Sanders v. City of Fresno*,
   551 F. Supp. 2d 1149 (E.D. Cal. 2008) ............................................... 27

*Saucier v. Katz*,
   533 U.S. 194 (2001), *abrogated on other grounds*
   *by Pearson v. Callahan*, 555 U.S. 223 (2009) ....................... 25, 27, 32, 33

*Scott v. Harris*,
   550 U.S. 372 (2007) ....................................................................... 15, 25

*Shafer v. County of Santa Barbara*,
   868 F.3d 1110 (9th Cir. 2017) ....................................................... 32, 33

*Shulgan v. Noetzel*,
   No. CV-07-051-JLQ, 2008 WL 1730091
   (E.D. Wash. Apr. 10, 2008) .................................................................. 34

*Smith v. City of Hemet*,
   394 F.3d 689 (9th Cir. 2005) ............................................................... 15

*Smith v. City of Stockton*,
   818 F. App'x 697 (9th Cir. 2020) ........................................................ 24

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

*Sorrels v. McKee*,
   290 F.3d 965 (9th Cir. 2002) ............................................................... 24

*Terry v. Ohio*,
   392 U.S. 1 (1968) ...................................................................... 20, 21

*United States v. Arango*,
   912 F.2d 441 (10th Cir. 1990),
   *cert denied*, 499 U.S. 924 (1991) ....................................................... 21, 28

*United States v. Berber-Tinoco*,
   510 F.3d 1083 (9th Cir. 2007) ................................................................21

*United States v. Craighead*,
   539 F.3d 1073 (9th Cir. 2008) ................................................................21

*United States v. Crain*,
   No. 10-428-HA, 2011 WL 2036480 (D. Or. May 23, 2011) ................................. 20, 21

*United States v. Davis*,
   636 F.3d 1281 (10th Cir. 2011)................................................................21

*United States v. Diaz-Castaneda*,
   494 F.3d 1146 (9th Cir. 2007) ................................................................20

*United States v. Garcia-Rosales*,
   No. CR-05-402-MO, 2006 WL 468320 (D. Or. Feb. 27, 2006) ..............................20

*United States v. Gygi*,
   No. 6:15-cr-00305-AA, 2019 WL 3024652
   (D. Or. July 9, 2019) (Aiken, J.) ............................................................. 3

*United States v. Mitchell*,
   405 F. Supp. 2d 602 (D. Md. 2005) ........................................................... 3

*United States v. Moore*,
   No. 3:16-CR-00171-JO, 2016 WL 7422650
   (D. Or. Dec. 21, 2016), *aff'd*, 726 F. App'x 620 (9th Cir. 2018) ..............................20

*United States v. Stepp*,
   680 F.3d 651 (6th Cir. 2012) ............................................................ 21, 28

*Westwood v. City of Hermiston*,
   787 F. Supp. 2d 1174 (D. Or. 2011),
   *aff'd*, 496 F. App'x 728 (9th Cir. 2012).......................................................24

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

*White v. Pauly*,
    137 S. Ct. 548, 196 L. Ed. 2d 463 (2017) ............................................................... 32

*Zackery v. Stockton Police Dep't*,
    No. 05-2315, 2008 WL 53224 (E.D. Cal. Jan. 2, 2008) ............................................ 34

*Ziglar v. Abbasi*,
    137 S.Ct. 1843, 198 L.Ed.2d 290 (2017) ........................................................... 32, 33

**Statutes**

ORS 352.121 ................................................................................................................... 4

ORS 803.540 ................................................................................................................. 13

ORS 807.010 ................................................................................................................. 13

ORS 807.570 ................................................................................................................. 13

42 U.S.C. § 1983 .................................................................................................. *passim*

**Other Authorities**

Fourth Amendment to the U.S. Constitution .......................................................... *passim*

Eleventh Amendment to the U.S. Constitution ...................................................... *passim*

BMW, *BMW Brochures PDF, M3*, https://www.leithbmw.com/bmw-
    brochures-pdf.html ..................................................................................................... 5

Fed. R. Civ. P. 56(a) ..................................................................................................... 14

Fed R. Civ. P. 56(c)(1)(A) ............................................................................................ 15

Police Department, *About UOPD*, https://police.uoregon.edu/about-
    UOPD  (last accessed Jan. 28, 2021) ........................................................................ 4

Police Department, *UOPD Mission*, https://police.uoregon.edu/  (last
    accessed Jan. 28, 2021) ............................................................................................... 3

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

## LOCAL RULE 7-1 CERTIFICATION

In compliance with Local Rule 7-1, counsel for Defendants, Luke Sitts, Geri Brooks, Scott Geeting, Steven Barrett, and Don Morris (collectively, "Defendants" or the "UOPD Officers"), certifies that counsel have conferred with plaintiff, James Brent Alvarez, by phone regarding the issues described in this motion, but the parties were not able to agree. (Declaration of Iván Resendiz Gutierrez ("IRG Decl.") ¶ 2.)

## LOCAL RULE 7-2 CERTIFICATION

This brief complies with the applicable page limitation under LR 7-2(b).

## MOTION

On August 25, 2020, this Court issued an Opinion and Order granting Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 41) (the "Third Motion to Dismiss") and denying plaintiff James-Brent Alvarez's Motion for Leave to File a Third Amended Complaint (ECF No. 45). (ECF No. 64 (the "Order").) The Order provides instructions on the operative complaint and the sole remaining claim in that complaint: "This case will proceed on one claim: plaintiff's § 1983 claim for excessive force against UOPD Officers Sitts, Barrett, Geeting, and Brooks as alleged in the Second Amended Complaint. Plaintiff does not need to file a Third Amended Complaint." (Order at 32.) Thus, the operative complaint is the Second Amended Complaint (titled "FOR THE SECOND-AMENDED INFORMATIONS IN THE NATURE OF A QUO-WARRANTO-BILL OF THE COMPLAINT") filed on February 6, 2020 (the "Second Amended Complaint"; "SAC" in citations) and the sole remaining claim is a claim against Defendants Sitts, Brooks, Geeting, Barrett, and Morris for excessive use of force under 42 U.S.C. Section 1983 ("Section 1983").[1]

---

[1] *See* Minute Order dated December 11, 2021. (ECF No. 71.)

Page 1 -    Defendants' Motion for Summary Judgment

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

The UOPD Officers now respectfully seek summary judgment on the sole remaining claim in the Second Amended Complaint. The Court should dismiss the claim because the Second Amended Complaint does not, as a matter of law, plead any actions by the UOPD Officers that are sufficient to support a claim for excessive force against them. The undisputed facts show that the UOPD Officers did not use excessive force to apprehend plaintiff during the charged traffic stop; the Eleventh Amendment bars the claim; and even if the claim is not barred by the Eleventh Amendment, the UOPD Officers are entitled to qualified immunity.

This motion is supported by the memorandum of law below, the Declarations of Iván Resendiz Gutierrez ("IRG Decl."), Jason Wade ("Wade Decl."), Luke Sitts ("Sitts Decl."), Geri Brooks ("Brooks Decl."), Scott Geeting ("Geeting Decl."), and Steven Barrett ("Barrett Decl."), and the pleadings and records filed with the Court.

## MEMORANDUM

### I.      INTRODUCTION

This action arises from the claims by a "Non-Citizen U.S.-National" against police officers of the University of Oregon Police Department ("UOPD") arising from what would have been a routine traffic stop. (SAC ¶¶ 1, 4-10.) Plaintiff's furtive movements inside his heavily tinted vehicle; failure to provide standard driving documents; failure to confirm the presence of weapons inside his heavily tinted vehicle; failure to comply with the UOPD Officers' clear commands to "stop resisting"; and active resistance to arrest during the traffic stop—a situation fraught with danger—however, necessitated UOPD's use of a non-lethal conductive electrical device or "Taser" to gain compliance from plaintiff. UOPD's Taser deployment was brief, appropriately aligned to plaintiff's conduct, and reasonably proportionate and necessary to gain compliance from an uncooperative, shifty expert mixed-martial artist engaged in actual physical struggle and threatening behavior towards the UOPD Officers and unresponsive to clear, reasonable commands before Corporal Barrett deployed his Taser.

Page 2 -    Defendants' Motion for Summary Judgment

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Plaintiff now asserts that UOPD's necessary use of force was excessive.  As explained below, that claim fails as a matter of law.  As employees of a public institution (the University of Oregon ("Oregon")) charged with the efficient and responsible stewardship of public funds, the UOPD Officers seek through this motion to limit the expenditure of unnecessary public resources to address a claim that is not legally viable.

## II.    STATEMENT OF UNDISPUTED FACTS

### A.    The parties

#### 1.    Plaintiff

Plaintiff was pulled over by Officer Sitts in mid-January 2019 for failing to display a rear license plate on his heavily tinted vehicle, arrested, and cited for failing to carry and present a driver's license, proof of registration, and proof of insurance.  Plaintiff objected to the traffic stop, his arrest, and the traffic citations on several grounds typically raised by sovereign citizens.[2]

#### 2.    UOPD

UOPD is "committed to excellence in campus law enforcement."  Police Department, *UOPD Mission*, https://police.uoregon.edu/ (last accessed January 28, 2021).

---

[2] Notably, plaintiff's "motion for the third leave to amend the complaint" filed on March 24, 2020 (Doc. 45 (the "Third Motion for Leave to Amend")), includes the following description of "sovereign citizens":

> "The Federal Bureau of Investigations (FBI) classifies some sovereign citizens ('sovereign citizen extremists') as domestic terrorists.  In 2010 the Southern Poverty Law Center (SPLC) estimated that approximately 100,000 Americans were 'hardcore sovereign believers', with *another 200,000 'just starting out by testing sovereign techniques for resisting everything from speeding tickets* to drug charges.'"

Third Motion for Leave to Amend at 29 (citation omitted) (emphasis added).  A 2005 decision from the District Court for the District of Maryland provides a helpful overview of the sovereign citizen belief system.  *United States v. Mitchell*, 405 F. Supp. 2d 602, 605-06 (D. Md. 2005); *see also United States v. Gygi*, No. 6:15-cr-00305-AA, 2019 WL 3024652, at *1 (D. Or. July 9, 2019) (Aiken, J.) (citing *Mitchell*, 405 F. Supp. 2d 602, for its description of the sovereign citizen belief system).

Page 3 -    Defendants' Motion for Summary Judgment

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

UOPD "Officers patrol the campus on foot, by bicycle and vehicle, and are responsible for campus safety, crime prevention, and law enforcement."  Police Department, *About UOPD*, https://police.uoregon.edu/about-UOPD (last accessed January 28, 2021).

UOPD is separate from the Eugene Police Department, and any other local law enforcement agencies, covering all campus properties as its jurisdiction.  *Id.*  UOPD serves the University of Oregon campus with sworn police officers.  *Id.*  UOPD receives its police powers under the Oregon Revised Statutes.  Under ORS 352.121,[3] sworn UOPD police officers may enforce the law anywhere in the state, as with all other state-certified law enforcement officers.

UOPD trains its officers on, among other things, the use of firearms, defensive tactics, and Tasers and other less-lethal devices and munitions.  (Barrett Decl. ¶ 2; Wade Decl. ¶ 2, Exs. 1 (UOPD Policy Manual), 2 (Department Training Plan, at 13).)  Per UOPD policy, UOPD officers received more than 16 hours of training on the use of less-lethal devices. (Wade Decl. ¶ 2, Ex. 1 (Department Training Plan, at 18).)  The "TASER Conducted Energy Weapon" policy, which is a part of the UOPD Policy, incorporates the requirements of *Graham v. Connor*, 490 U.S. 386, 396 (1989), and allows officers to use Tasers in certain circumstances. The policy explains:

309.5.1 APPLICATION OF THE TASER DEVICE

The TASER device may be used in any of the following circumstances, when the circumstances perceived by the officer at the time indicate that such application is reasonably necessary to control a person:

(a)    The subject is violent or is actively resisting.  Active resistance is a refusal to comply with instructions accompanied by physical action that is intended to injure, thwart a lawful arrest to interfere or overcome an attempt by an officer to lawfully subdue the resisting individual or another person.

(b)    The subject has demonstrated, by words or action, an intention to be violent or to actively resist, and reasonably appears to present the potential to harm officers, him/ herself or others.

---

[3] *See* ORS 352.121(1)-(2).

Page 4 -    Defendants' Motion for Summary Judgment

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

(Wade Decl. ¶ 2, Ex. 1 (UOPD Policy Manual at 48-49; *see also id.* at 47 ("The TASER device is intended to control a violent or potentially violent individual, while minimizing the risk of serious injury.  The appropriate use of such a device should result in fewer serious injuries to officers and suspects.")).)

The TASER Conducted Energy Weapon policy also provides guidance on actions following Taser deployment:

> 309.5.5 ACTIONS FOLLOWING DEPLOYMENTS
>
> Officers shall notify a supervisor of all TASER device discharges.  AFID Confetti tags should be collected and the expended cartridge, along with both probes and wire, should be submitted into evidence.  The cartridge serial number should be noted and documented on the evidence paperwork. The evidence packaging should be marked "Biohazard" if the probes penetrated the subject's skin.

(Wade Decl. ¶ 2, Ex. 1 (UOPD Policy Manual at 50).)

**B.    Factual background**

1.    <u>Officer Sitts pulls over a heavily tinted sport performance vehicle traveling on a public street near the University of Oregon with no rear license plates displayed</u>

In mid-January 2019, while on duty and in a full department-issued uniform with a prominently displaced badge, Officer Sitts was driving a marked patrol vehicle equipped with an in-car camera and mobile audio video system in the area near 13th Avenue and Alder Street in Eugene, Oregon.  Around noon, Officers Sitts observed a black BMW M3—a "street legal" enhanced-performance race vehicle—traveling on 13th Avenue near Kincaid Street with no rear license plate.[4]  (SAC ¶¶ 11, 20-21; Wade Decl. ¶¶ 3, 7, 8, Exs. 2, 6, 7; Sitts Decl. ¶2.)[5]  Officer

---

[4] *See* BMW, *BMW Brochures PDF, M3*, https://www.leithbmw.com/bmw-brochures-pdf.html (describing BMW's "M Series" as ideal vehicles for "the drivers who need an extra shot of adrenaline in their everyday driving").

[5] Portions of the audio in Exhibit 5, Exhibit 6, Exhibit 7, and Exhibit 8 to the Declaration of Jason Wade have been modified to remove the sound.  The modified sections contain information that we believe plaintiff would not want to have publicly available.  Defendants have produced the videos to plaintiff without the modified portions.  (IRG Decl. ¶ 3.)  In addition, portions of Exhibit 2 to the Wade Declaration have been redacted to remove confidential or

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Sitts followed the vehicle, noting that it had extremely dark tint obscuring the interior of the vehicle.  (Wade Decl. ¶¶ 3, 8A, Exs. 2, 7A; Sitts Decl. ¶2.)

Because of this traffic violation, Officer Sitts pulled the vehicle over; plaintiff was the driver.  (Wade Decl. ¶¶ 3, 8B, Exs. 2, 7B; Sitts Decl. ¶ 2.)  As Officer Sitts approached the vehicle, he was able to see that there was no temporary registration tag in the rear window. Officer Sitts was not able to verify this before approaching the vehicle on foot because of the vehicle's dark window tint.

When Officer Sits arrived at the driver's side window, plaintiff opened it about one to two inches and did not lower it further at any point during the traffic stop.  (Wade Decl. ¶¶ 3, 8C, Exs. 2, 7C; Sitts Decl. ¶2.)  Plaintiff immediately asked Officer Sitts whether Officer Sitts had checked to make sure that his recording equipment was working properly before he started his shift.  (SAC ¶¶ 13-15.)  Officer Sitts replied "yes."  (SAC ¶ 15.)  Plaintiff also asked Officer Sitts for his name, badge number, and reason for the traffic stop.  (Wade Decl. ¶ 3, Ex. 2; Sitts Decl. ¶ 2.)

        2.    <u>Officer Sitts asks plaintiff for standard driver documentation, and plaintiff refuses to provide it</u>

After answering plaintiff's questions, Officer Sitts informed plaintiff that he had pulled him over "for not having a rear plate on the automobile."  (SAC ¶¶ 18-19, 21, 24; Wade Decl. ¶ 3, Ex. 2; Sitts Decl. ¶ 2.)  As is common in a routine traffic stop, Officer Sitts then asked plaintiff for his driver's license, proof of registration, and proof of insurance.  Plaintiff responded by invoking his *Miranda* rights and then refusing to answer questions and to provide a copy of the requested documents.  Officer Sitts repeated his request, but plaintiff continued to remain silent, except to repeatedly ask Officer Sitts for his name, badge number, and the reason for stopping him.  (SAC ¶¶ 23, 27-28; Wade Decl. ¶ 3, Ex. 2; Sitts Decl. ¶ 2.)

personal information or to remove information that we believe plaintiff would not want to have publicly available.

Page 6 -    Defendants' Motion for Summary Judgment

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

As Officer Sitts attempted to provide plaintiff with the information plaintiff requested, plaintiff began talking over Officer Sitts, asking if he had a warrant for his arrest and to search the vehicle and making several other demands about what court orders Officer Sitts relied on to stop or detain plaintiff or his vehicle.  At this point, Officer Sitts requested assistance from a supervisor.  (Wade Decl. ¶ 3, Ex. 2; Sitts Decl. ¶ 2.)

Each time Officer Sitts approached the driver's side window, plaintiff asked if he was free to go, and every time, Officer Sitts told him that he was being detained and he was not free to go.  As Officer Sitts attempted to complete the traffic stop, plaintiff began reading from a prepared list, making statements that he was not operating his vehicle in a "commercial manner." (Wade Decl. ¶ 3, Ex. 2; Sitts Decl. ¶ 2.)

Plaintiff also exhibited other suspicious behavior; at least once, Officer Sitts observed plaintiff reaching across the front of his vehicle, but Officer Sitts could not see what exactly plaintiff was doing or what was in plaintiff's hands due to the dark window tint and the two-inch window opening.  (Wade Decl. ¶ 3, Ex. 2; Sitts Decl. ¶ 2.)

3.    <u>Officer Sitts identifies plaintiff's name, discovers that plaintiff has a caution flag, and observes plaintiff making furtive movements</u>

As Officer Sitts waited for his supervisor, Sergeant Geeting, to respond, Officer Brooks, who like Officer Sitts was on duty wearing a body-worn camera and a department-issued uniform displaying a badge, arrived on the scene.  (Wade Decl. ¶ 3, Ex. 2; Brooks Decl. ¶ 2.)  Officer Sitts again attempted to obtain standard driving documents, but plaintiff refused to provide them, repeatedly stating he would not answer questions.  During Officer Sitts's interactions with plaintiff, he observed plaintiff making furtive movements towards the center console, door pockets, and dash area of his vehicle.  Officer Sitts recognized from his training and experience that the area under the driver's seat and in the door pockets can

Page 7 -    Defendants' Motion for Summary Judgment

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

easily conceal weapons.  Officer Sitts determined that plaintiff was behaving in a concerning manner.  (Wade Decl. ¶ 3, Ex. 2; Sitts Decl. ¶ 2.)

Officer Sitts was not alone in his observations or concerns.  From the passenger side of the vehicle, Officer Brooks also observed plaintiff repeatedly reaching under his driver's seat.  (Wade Decl. ¶ 3, Ex. 2; Brooks Decl. ¶ 2.)  Officer Brooks also caught plaintiff making "jerky quick movements with his hands" and repeatedly saw plaintiff reaching down between his legs.  At one point, Officer Brooks spotted plaintiff opening the glovebox and shuffle through items inside of the glove box.  Similar to Officer Sitts, she was unable to see what exactly plaintiff was doing due to the dark window tint.  Officer Brooks "was greatly concerned for the safety of the Officers on the stop the longer the stop continued."  (Wade Decl. ¶¶ 3, 9A-9C, Exs. 2, 8A-8C; Brooks Decl. ¶ 2.)

Eventually, plaintiff provided a multi-page document, which suggested to Officer Sitts that plaintiff harbored sovereign citizen beliefs.  One of the documents contained plaintiff's name.  Plaintiff also provided his birthdate and home address, which confirmed his identity and that he had an identification card, but no driver's license.  Based on that information, dispatch then relayed that plaintiff had a Law Enforcement Data System ("LEDS")[6] caution code as being an expert martial artist.  (Wade Decl. ¶ 3, Ex. 2; Barrett Decl. ¶ 2; Geeting Decl. ¶ 2; SAC ¶ 2.)

4.    <u>Additional UOPD Officers arrive at the scene to assist Officers Sitts; Sergeant Geeting attempts to persuade plaintiff to provide the necessary documents and becomes concerned that plaintiff may be concealing a weapon; and Corporal Barrett becomes concerned about officer safety based on plaintiff's furtive movements, refusals to comply, and overall behavior</u>

Sergeant Geeting and Corporal Barrett, who were both on duty wearing department-issued uniforms and displaying badges, arrived on the scene to assist Officers Sitts and Brooks.  (SAC ¶ 31; Wade Decl. ¶ 3, Ex. 2; Barrett Decl. ¶ 2; Geeting Decl. ¶ 2.)  After

---

[6] LEDS is a database created for law enforcement records such as warrants, protection orders, stolen property, criminal histories, and other vital investigative files.  (Sitts Decl. ¶ 3.)

Page 8 -    Defendants' Motion for Summary Judgment

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

talking with Sergeant Geeting, Corporal Barrett approached Officer Sitts near plaintiff's vehicle. As Corporal Barrett approached the vehicle, he observed the vehicle's heavily tinted windows. Based on his training and experience, Corporal Barrett determined that the windows were tinted illegally.  (Wade Decl. ¶ 3, Ex. 2; Barrett Decl. ¶ 2.)

Officer Sitts then repeated his request for the standard driving documentation a third time, but plaintiff stood his ground.  (SAC ¶ 32.)  Hoping a change in personnel would help garner plaintiff's cooperation, Sergeant Geeting began to question plaintiff.  (SAC ¶ 33; Wade Decl. ¶ 3, Ex. 2; Geeting Decl. ¶ 2.)  This, too, proved unsuccessful.  Rather than providing answers to standard traffic stop questions, plaintiff provided an "Affidavit of Truth"— a document that plaintiff alleges constitutes a contract—and a seventeen-page document of "U.S.-Supreme-Court-Case-Law for the traveling without the license-plates."  (SAC ¶ 34; Wade Decl. ¶ 3, Ex. 2; Geeting Decl. ¶ 2; Sitts Decl. ¶ 2.)  The Affidavit of Truth alerted the UOPD Officers of plaintiff's willingness to defend himself:

> . . . I will, under protest, be compliant and not resist any command you may issue *unless I find it necessary to act in defense of my health and safety or the health and safety of others present as is allowed by law.  I am competent to determine when acts of self-defense are, and are not necessary and justified.  Unless you unjustly and/or unlawfully assault or commit battery upon me I pose no threat or danger to you or your associates*:].

(SAC ¶ 36 (emphasis added).)

After reviewing the document, Sergeant Geeting passed it to Officer Sitts. Around this time, Sergeant Geeting saw plaintiff making furtive movements in the vehicle, but the rear and floorboards of his vehicle were hard to see due to the dark tint.  Based on plaintiff's shifty movements and odd behavior, Sergeant Geeting became concerned that plaintiff could be concealing a weapon.  (Wade Decl. ¶ 3, Ex. 2; Geeting Decl. ¶ 2.)

Around this time, Captain Morris, who was on duty wearing department-issued uniforms and driving a marked patrol vehicle, arrived to assist the UOPD Officers.  (SAC ¶ 42; Wade Decl. ¶ 6, Ex. 5.)  Sergeant Geeting and Corporal Barret explained to Captain Morris that

Page 9 -   Defendants' Motion for Summary Judgment

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

the "officer safety" issue was that plaintiff "is a martial arts expert" and the UOPD Officers formulated a plan to confirm plaintiff's identity and safely remove plaintiff from the vehicle in order to tow the illegally parked vehicle. (Wade Decl. ¶ 6, Ex. 5.)

As a last resort, Corporal Barrett also attempted to get plaintiff to cooperate. From the driver's side window, Corporal Barrett asked plaintiff to open his window all the way down, so he could see inside the vehicle. Corporal Barrett made this request because he was concerned, based on plaintiff's furtive movements and dark window tinting, that if plaintiff reached for a weapon, Corporal Barrett would not be able to see it. Plaintiff refused to roll the window down more than an inch or two. (Wade Decl. ¶ 3, Ex. 2; Barrett Decl. ¶ 2.)

At one point during the interaction, Corporal Barrett told plaintiff to put his hand on the steering wheel. Plaintiff initially complied but then lowered his hands under the dash area and in his lap waist area. (Wade Decl. ¶ 3, Ex. 2; Barrett Decl. ¶ 2.) Corporal Barrett then asked plaintiff if there were any weapons in the vehicle. Plaintiff refused to answer him. Plaintiff did, however, ask if he was free to go, and Corporal Barrett advised him that he was not free to leave.

Based on plaintiff's "furtive movements, refusal to comply, and overall odd behavior," Corporal Barrett "was very concerned about weapons and officer safety." Corporal Barrett communicated this concern to plaintiff, telling plaintiff that he was concerned because of plaintiff's hand movements and the window tinting preventing Corporal Barrett and the other officers from being able to safely see inside of plaintiff's vehicle. Plaintiff continued to be uncooperative. (Wade Decl. ¶ 3, Ex. 2; Barrett Decl. ¶ 2.)

After a few minutes, Corporal Barrett moved in front of the vehicle, so he could see plaintiff through the front window. As he was watching plaintiff through the front window, Corporal Barrett observed that the vehicle's Vehicle Identification Number was covered with a piece of paper. (Wade Decl. ¶¶ 3, 6, Exs. 2, 5A; Barrett Decl. ¶ 2.)

Page 10 -  Defendants' Motion for Summary Judgment

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

5.    <u>Plaintiff's repeated refusals to provide the necessary documents and the location of the vehicle leads Officer Sitts to determine that plaintiff must be removed from the vehicle and the vehicle must be towed</u>

After plaintiff's failure to comply with multiple requests to provide the necessary documents, Officer Sitts determined that a vehicle with no proof of insurance, registration, or a valid driver parked in a red curb fire lane in the lane of travel was creating a traffic hazard. Officer Sitts decided that it was best to remove plaintiff from the vehicle, conduct a "pat down" for any weapons that could be used against the UOPD Officers, and facilitate the vehicle being towed for the above-referenced traffic violations.  (Wade Decl. ¶ 3, Ex. 2; Sitts Decl. ¶ 2.)

6.    <u>Plaintiff is ordered to exit the vehicle and actively resists arrest</u>

After consulting with Sergeant Geeting and the other officers, Officer Sitts approached plaintiff's vehicle with Sergeant Geeting.  Corporal Barrett stood in front of the vehicle, and Officer Brooks provided cover from the passenger side.  Officer Sitts informed plaintiff that his vehicle was being towed for several traffic infractions, ordered plaintiff to step out of the vehicle, and told plaintiff that he was not free to go.  Plaintiff stated for his recording that he did not consent and *was being kidnapped*, and then said he would comply with the order to exit the vehicle.  But rather than immediately exiting the vehicle, plaintiff rolled his window back up and reached around the interior of his vehicle.  (Wade Decl., ¶¶ 3, 7, Exs. 2, 6A; Sitts Decl. ¶ 2.)

As plaintiff opened the driver's side door and stepped out, Officer Sitts grabbed his left arm and told him to put his hands behind his back and that he was being detained. (SAC ¶¶ 48-50; (Wade Decl. ¶¶ 3, 6, 7, Exs. 2, 5B, 6A; Sitts Decl. ¶ 2; Barrett Decl. ¶ 2).)  As Sergeant Geeting and Officer Sitts attempted to control plaintiff's arms to place him under arrest, plaintiff resisted arrest, yelling, pulling away violently from Officer Sitts towards Officer Geeting, and abiding by the document he had to the UOPD officers, which threatened that he would defend himself is he deemed it "necessary and justified."  (SAC ¶ 36(9); Wade Decl. ¶¶ 3, 6, 8, Exs. 2, 5B, 7D; Barrett Decl. ¶ 2; Geeting Decl. ¶ 2; Sitts Decl. ¶ 2.)

Page 11 -   **Defendants' Motion for Summary Judgment**

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Plaintiff actively resisted arrest.  (SAC ¶ 49.)  According to Sergeant Geeting, plaintiff "was very strong and [Sergeant Geeting] had difficulty holding his arm despite [Sergeant Geeting's] own regular routine of weight lifting."  (Wade Decl., ¶¶ 3, 7, 8, 9, Exs. 2, 6A, 7D, 8D; Geeting Decl., ¶ 2; Sitts Decl. ¶ 2; Brooks Decl. ¶ 2.)  Through his violent movements, plaintiff managed to grab Sergeant Geeting's face, cutting the gum on the lower left side of Sergeant Geeting's jaw.  (Wade Decl. ¶ 3, Ex. 2; Sitts Decl. ¶ 2; Brooks Decl. ¶ 2; Geeting Decl. ¶ 2.)  Officer Sitts attempted to regain control of plaintiff's arm.  (Wade Decl. ¶ 3, Ex. 2; Sitts Decl. ¶ 2.)  Officer Sitts told plaintiff to stop resisting, but plaintiff continued to fight and yelled, "Get your fucking hands off me."  (Wade Decl. ¶¶ 3, 7, Exs. 2, 6A; Sitts Decl. ¶ 2; Barrett Decl. ¶ 2; Geeting Decl. ¶ 2.)  Corporal Barrett then observed plaintiff grab onto Sergeant Geeting and swing him around violently.  (Wade Decl. ¶¶ 3, 6, Exs. 2, 5B; Barrett Decl. ¶ 2; Geeting Decl. ¶ 2.)  Sergeant Geeting and plaintiff were being pulled by plaintiff's momentum towards the busy street and potentially into traffic.  (Wade Decl. ¶¶ 8, 9, Ex. 7D, 8D; Sitts Decl. ¶ 2; Brooks Decl. ¶ 2.)

At this point, Corporal Barrett drew his Taser and advised plaintiff "stop or you're going to be tased."  (Wade Decl. ¶¶ 3, 7, Exs. 2, 6A; Barrett Decl. ¶ 2; Brooks Decl. ¶ 2; Geeting Decl. ¶ 2; Sitts Decl. ¶ 2.)  Corporal Barrett then deployed his Taser in probe mode.  (SAC ¶¶ 49-54; Wade Decl. ¶7, Ex. 6B; Sitts Decl. ¶ 2.)  Corporal Barrett observed one dart hit plaintiff's left leg, but it appeared that the second dart did not have a good contact.  Corporal Barrett believed that the Taser was not functioning as intended with the first cartridge deployment, and he saw plaintiff reach down with his hand, appearing to attempt to pull the dart out of his leg.  So following UOPD Taser policy, Corporal Barrett quickly deployed a second Taser cartridge.  Corporal Barrett then saw plaintiff fall to the ground.  (Wade Decl. ¶ 3, Ex. 2; Barrett Decl. ¶ 2; Brooks Decl. ¶ 2; Sitts Decl. ¶ 2.)  Plaintiff was not slammed or thrown to the ground, as alleged in the Second Amended Complaint.  (Wade Decl. ¶¶ 6, 7, Exs. 5B, 6A; Sitts Decl. ¶ 2; Barrett

**Page 12 -   Defendants' Motion for Summary Judgment**

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

Decl. ¶ 2.)  The Pulse Log Graph shows that the Taser was only deployed for about 5 seconds. (Wade Decl. ¶ 5, Ex. 4; Barrett Decl. ¶ 2; Sitts Decl. ¶ 2.)

Plaintiff's stopped resisting once he fell to the ground.  Sergeant Geeting, Officer Sitts, and Officer Brooks quickly took physical control of plaintiff—placing him in handcuffs and into custody.  (Wade Decl. ¶¶3, 6, 9, Exs. 2, 5C, 8E; Barrett Decl. ¶ 2; Brooks Decl. ¶ 2.)

7.    <u>Plaintiff is placed under arrest and issued several traffic citations</u>

The UOPD officers then told plaintiff that he was under arrest, read him his *Miranda* rights, and searched him.  (SAC ¶¶ 56, 58.)  After plaintiff was searched for weapons, the Taser cartridges, wires, probes, and Anti-Felon Identification Disks were collected for evidence.  The UOPD Officer discovered that only one of the four Taser darts was attached to plaintiff.  Corporal Barrett removed the dart from plaintiff's left quadricep per his training.  In addition to cleaning the dart site, Corporal Barrett asked plaintiff if he had any other injuries. Plaintiff did not advise him of any other injuries.  (Wade Decl. ¶¶ 3, 6, Exs. 2, 5D; Barrett Decl. ¶ 2.)  The UOPD Officers also requested medical assistance and medical staff to medically evaluate plaintiff.  Plaintiff did not report any medical complaints, and the medical staff advised that plaintiff that he was medically cleared.  (Wade Decl. ¶¶ 3, 6, Exs. 2, 5E; Barrett Decl. ¶ 2.) Later, while plaintiff was in the back of Officer Sitts's patrol vehicle, Corporal Barrett again asked plaintiff if he had any injuries.  Plaintiff responded that the handcuffs were uncomfortable, so Officer Sitts adjusted them and confirmed that they were on properly.  (Wade Decl. ¶¶ 3, 6, Exs. 2, 5F; Barrett Decl. ¶ 2.)

The time between Officer Sitts pulling plaintiff over and the UOPD Officers seizing plaintiff was approximately 30 minutes.  (Wade Decl., ¶ 7, Ex. 6; Sitts Decl. ¶ 2.) Plaintiff was issued Oregon Uniform Citations and Complaints for his failure to display registration plates; ORS 803.540, failure to carry a license or to present a license to a police officer; ORS 807.570, and operating a vehicle without driving privileges, ORS 807.010, and

Page 13 -   Defendants' Motion for Summary Judgment

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

charged with three offenses—interference with a peace officer, resisting arrest, and assault of police officers.  (SAC ¶¶ 65, 68; Wade Decl. ¶ 3, Ex. 2.)

   As explained below, these undisputed facts show a routine traffic stop that escalated solely because of plaintiff's resistance and plaintiff's Section 1983 claim fails as a matter of law.

## III.    ARGUMENT

### A.    Summary judgment standard

   Summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23.  Courts view the evidence in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor.  *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001).  The "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986).  "A party asserting that a fact cannot be true or is genuinely disputed must support the assertion with admissible evidence."  *Jakeman v. Berry*, No. 6:14-cv-273-AC, 2015 WL 2062344, at *3 (D. Or. Apr. 6, 2015).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted and citation omitted).

   While the moving party bears the initial burden of identifying the absence of a genuine issue of material fact, *Celotex*, 477 U.S. at 323, it is the responsibility of the non-moving party to set forth specific facts showing that there is a genuine issue for trial.  *Matsushita*, 475 U.S. at 587.  In order for a party to avoid summary judgment, such facts must be supported by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions,

Page 14 -   Defendants' Motion for Summary Judgment

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

interrogatory answers, or other materials." Fed R. Civ. P. 56(c)(1)(A).

The UOPD Officers recognize that the Ninth Circuit has "held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (internal quotation mark and citation omitted). But notwithstanding, if there are "no genuine issues of material fact and 'the relevant set of facts' has been determined, the reasonableness of the use of force is 'a pure question of law.'" *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017) (quoting *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007)).

**B.    No reasonable factfinder could conclude that the UOPD Officers used excessive force in apprehending plaintiff**

Plaintiff's Section 1983 claim is grounded in his belief that the UOPD Officers used excessive force during the traffic stop. But that claim is just not tenable.

1.    Standards for a claim of excessive force

A "claim of excessive force in the course of making a seizure of the person is properly analyzed under the Fourth Amendment's objective reasonableness standard." *Scott*, 550 U.S. at 381 (quoting *Graham*, 490 U.S. at 388) (internal quotation marks and corrections omitted). To determine the reasonableness of a seizure, a court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." 550 U.S. at 383 (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)).

The Ninth Circuit has outlined a three-step process for analyzing a claim of excessive force under the Fourth Amendment. "The first step of the excessive force inquiry requires [the court] to assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted." *Lowry*, 858 F.3d at 1256 (internal quotation marks and citation omitted). The second step is "to evaluate the government's interest

Page 15 -   Defendants' Motion for Summary Judgment

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

in the use of force." 858 F.3d at 1257 (internal quotation marks and citation omitted). The government's interest is measured by three main factors (referred to as the *Graham* factors): "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Miller v. Clark Cty.*, 340 F.3d 959, 964 (9th Cir. 2003)). These factors are "not exclusive," however, and courts should "examine the totality of the circumstances, considering other factors when appropriate." *Lowry*, 858 F.3d at 1257. Such other factors include, for example, "whether proper warnings were given and the availability of less intrusive alternatives to the force employed." 858 F.3d at 1259 (internal quotation marks and citation omitted). The third and final step requires courts to "balance the gravity of the intrusion on [the individual's] Fourth Amendment rights against the [government's] need for that intrusion." 858 F.3d at 1260 (citation omitted).

The objective reasonableness test is necessarily fact-dependent. The relevant factors "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," because "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97; *see also Kaady v. City of Sandy*, No. CV. 06-1269-PK, 2008 WL 5111101, at *15 (D. Or. Nov. 26, 2008). As the Supreme Court has recognized, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," and thus "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (internal quotation marks and citations omitted). If there are "no genuine issues of material fact and 'the relevant set of facts' has been determined, the reasonableness of the use of force is 'a pure question of law.'" *Lowry*, 858 F.3d at 1256 (quoting *Scott*, 550 U.S. at 381 n.8).

**Page 16 -   Defendants' Motion for Summary Judgment**

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

2.    The UOPD Officers did not use *excessive* force; they used reasonable and appropriate force to gain compliance from a combative expert mixed-martial artist

In this case, even if the UOPD Officers are not cloaked with Eleventh Amendment immunity, the UOPD Officers are immune from individual liability because they did not use excessive force to gain compliance from a combative, shifty expert mixed-martial artist who actively resisted arrest, as explained in further detail in Section III.D.2.b.  The UOPD Officers' testimony and the video recording of the traffic stop show that:

- Officer Sitts pulled plaintiff over on a public street near the University of Oregon because plaintiff was driving a heavily tinted vehicle without displaying license plates;

- plaintiff refused to lower his heavily tinted windows more than two inches, thereby obstructing UOPD Officers' views;

- plaintiff warned the UOPD Officers that he may resist and defend himself if he deemed it necessary and justified and threatened that he may pose a threat or danger to them—this fact is undisputed;[7]

- dispatch relayed that plaintiff has a caution code in LEDS based on plaintiff's mixed martial arts experience;

- the UOPD Officers developed reasonable concerns about officer safety based on plaintiff's furtive movements inside of a heavily tinted vehicle, non-compliance with the UOPD Officers' reasonable requests for standard driver documentation, and overall odd behavior;

- Sergeant Geeting could see plaintiff making furtive movements in the vehicle, but the rear and floorboards of his vehicle were hard to see due to heavy tinting.  Plaintiff's

---

[7] (SAC ¶ 36(9); Wade Decl. ¶¶ 3, 6, Exs. 2, 5B; Barrett Decl. ¶ 2; Geeting Decl. ¶ 2.)

**Page 17 -    Defendants' Motion for Summary Judgment**

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

movements and odd behavior made Sergeant Geeting concerned that plaintiff could be concealing a weapon;

- Corporal Barrett asked plaintiff if there were any weapons in the vehicle. Plaintiff refused to answer him. Corporal Barrett explained to plaintiff his concern about weapons, safety, plaintiff's hands, and the window tinting preventing Corporal Barrett from being able to safely see in plaintiff's vehicle. Plaintiff continued to be uncooperative;

- plaintiff did not immediately exit the vehicle despite Officer Sitts' clear orders;

- rather than immediately exiting the vehicle, plaintiff rolled his window back up and began making secretive movement inside of his vehicle.

- as Sergeant Geeting and Officer Sitts attempted to control plaintiff's arms to place him under arrest, plaintiff resisted arrest, yelling and violently pulling away from Officer Sitts towards Sergeant Geeting. Through his violent movements, plaintiff managed to grab Sergeant Geeting's face, cutting the gum on the lower left side of Sergeant Geeting's jaw;

- Officer Sitts told plaintiff to stop resisting, but plaintiff continued to fight and yelled, "Get your fucking hands off me";

- Corporal Barrett observed plaintiff grab onto Sergeant Geeting and swing him around violently. Sergeant Geeting and plaintiff were being pulled by plaintiff's momentum towards the busy street and potentially into traffic;

- Corporal Barrett drew his Taser and, in accordance with the UOPD Policy Manual, advised plaintiff "stop or you're going to be tased." Corporal Barrett then deployed the Taser in probe mode;

- Corporal Barrett observed that the Taser was not functioning as intended with the first cartridge deployment. One dart hit plaintiff's left leg, but it appeared that the second

Page 18 -  **Defendants' Motion for Summary Judgment**

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

dart did not have a good contact. Corporal Barrett saw plaintiff reach down with his hand, appearing to attempt to pull the dart out of his leg, so following Taser protocol, Corporal Barrett quickly deployed the second Taser cartridge;

- when the second cartridge was deployed, Corporal Barrett observed plaintiff fall to the ground. Plaintiff was not slammed or thrown to the ground;

- after plaintiff was subdued, Corporal Barrett stopped using the Taser and plaintiff was arrested and the UOPD Officers provided medical assistance;

- after a dart was removed from plaintiff's left quadricep, Corporal Barrett provided care for the Taser dart wound and asked plaintiff if he had any other injuries. Plaintiff did not advise him or Sergeant Geeting of any other injuries; and

- while plaintiff was in the back of the patrol vehicle, Corporal Barrett again asked plaintiff if he had any injuries. Plaintiff responded that the handcuffs were uncomfortable, so Officer Sitts adjusted the handcuffs and confirmed that they were on properly.

On that evidence, no reasonable fact-finder could conclude that the force exerted on plaintiff was used excessive. *See Lowry*, 858 F.3d at 1256 (quoting *Scott*, 550 U.S. at 381 n.8); *Kaady*, 2008 WL 5111101, at *17-19. The UOPD Officers used an intermediate amount of force to gain compliance from a combative, suspicious expert mixed martial artist admittedly refusing to obey the UOPD Officers' direct orders. Plaintiff can prove no damages on his excessive use of force claim, because the UOPD Officers simply carried out their duties in accordance with UOPD policy.

### C.    Plaintiff's Section 1983 claim against the UOPD Officers is barred by Eleventh Amendment Immunity

Plaintiff appears to contend that he was deprived of his constitutional rights during a traffic stop and that that the UOPD Officers' conduct violated Section 1983.

Page 19 -   Defendants' Motion for Summary Judgment

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

1.    <u>Overview of traffic stops and *Miranda*</u>

The following background on traffic stops and *Miranda* rights will provide useful context for the Court.

It is well established that police officers need only to have reasonable suspicion for a traffic stop. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). A police officer who observes a violation of state traffic laws may lawfully stop the car committing the violation. *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (expired license tags); *United States v. Crain*, No. 10-428-HA, 2011 WL 2036480, at *2 (D. Or. May 23, 2011) ("A traffic stop following an observed traffic violation is considered reasonable under the Fourth Amendment.") (citing *Whren v. United States*, 517 U.S. 806, 809-10 (1996) (holding that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred")). Once the traffic stop is made, the temporary seizure of the driver remains reasonable for the duration of the traffic stop. *See Arizona v. Johnson*, 555 U.S. 323, 333 (2009).

While conducting the traffic stop, the police officer may exercise unquestioned command over the situation for officer safety purposes, including exercising command over a car and its passengers. *Michigan v. Summers*, 452 U.S. 692, 702-03 (1981); *Maryland v. Wilson*, 519 U.S. 408, 414 (1997). During the course of a traffic stop, the officer may request the driver's license and registration, run a computer check on the papers, and issue a citation, without exceeding the scope of the traffic stop. *United States v. Diaz-Castaneda*, 494 F.3d 1146, 1152 (9th Cir. 2007); *United States v. Moore*, No. 3:16-CR-00171-JO, 2016 WL 7422650, at *3 (D. Or. Dec. 21, 2016), *aff'd*, 726 F. App'x 620 (9th Cir. 2018) ("When making a routine traffic stop, the permissible scope of inquiry by law enforcement officers includes determining whether to issue a traffic ticket, checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the vehicle registration and proof of insurance."). Because "ordinary traffic stops are not custodial," *United States v. Garcia-Rosales*, No. CR-05-402-MO, 2006 WL 468320, at *9 (D. Or. Feb. 27, 2006), *Miranda* warnings are not required.

**Page 20 -  Defendants' Motion for Summary Judgment**

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

*United States v. Craighead*, 539 F.3d 1073, 1083 (9th Cir. 2008) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 438-39 (1984)).

      If further detention occurs, the principles of *Terry* apply, allowing a police officer to detain a person or property for investigative purposes if the officer has a reasonable suspicion, based on articulable facts, that criminal activity is taking place.  Extension of a traffic stop for investigatory purposes is reasonable when the driver cannot produce proof of ownership or authorization to operate a car, giving rise to reasonable suspicion that the car may be stolen or used for improper activity.  *United States v. Arango*, 912 F.2d 441, 447 (10th Cir. 1990), *cert denied*, 499 U.S. 924 (1991).  Indeed, drug couriers often use other people's cars known as "third-party rentals."  *United States v. Stepp*, 680 F.3d 651, 666 (6th Cir. 2012).  Nervousness, in combination with other factors, can form the basis for reasonable suspicion.  *United States v. Davis*, 636 F.3d 1281, 1291 (10th Cir. 2011).

      The police officer may, as part of the traffic stop, order the driver out of the vehicle.  *Maryland*, 519 U.S. at 414-15; *Crain*, 2011 WL 2036480, at *3 (same).  And if, during the course of a traffic stop, an event happens or information is obtained that gives the officer reasonable and articulable suspicion that criminal activity is afoot, the officer can further detain the driver and passengers beyond the reasonable duration for a detention incident to a simple traffic stop.  *United States v. Berber-Tinoco*, 510 F.3d 1083, 1087-88 (9th Cir. 2007).

      2.    Elements of a Section 1983 claim

      Section 1983 "'provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights.'"  *Alvarez v. Univ. of Oregon*, No. 6:19-CV-01071-AA, 2020 WL 61036, at *5 (D. Or. Jan. 6, 2020) (quoting *Conn v. Gabbert*, 526 US 286, 290 (1999)).  "To maintain a claim under § 1983, 'a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

the deprivation was committed by a person acting under color of state law.'" *Id.* (quoting *Anderson v. Warner*, 451 F3d 1063, 1067 (9th Cir 2006)).

In this case, plaintiff does not allege which constitutional rights were violated, when they were violated, how they were violated, or who violated them.  The UOPD Officers are thus left to guess the contours of plaintiff's claim.  But the following things are certain:  (1) to the extent that plaintiff is asserting the Section 1983 claim against the UOPD Officers in their *official* capacity, that claim is barred by the Eleventh Amendment; and (2) to the extent that plaintiff is alleging that the UOPD Officers deprived him of his constitutional rights, they are cloaked with qualified immunity, and therefore his claim fails.

3.    Plaintiff's Section 1983 claim is barred, in its entirety, by the Eleventh Amendment because the UOPD Officers were acting in their official capacity

"[S]tate officers acting in their official capacity are entitled to Eleventh Amendment Immunity." *Alvarez*, 2020 WL 61036, at *5.  In this case, because the UOPD Officers were acting in their official capacities, they are entitled to Eleventh Amendment Immunity.  The Court should dismiss the Section 1983 claim on this basis alone.

4.    Plaintiff's Section 1983 claim is barred, in its entirety, by the Eleventh Amendment because the UOPD Officers were acting in their official capacity and plaintiff does not seek prospective injunctive relief

Defendants acknowledge that the Eleventh Amendment does not bar a federal court from granting *prospective* injunctive relief against an officer of the state who acts outside the bounds of their authority.  *See Alvarez*, 2020 WL 61036, at *5.  Thus, the Court may hear plaintiff's Section 1983 claim against the UOPD Officers if he asks for prospective injunctive relief from these defendants in their official capacities.  *Id.* (citation omitted).  The Second Amended Complaint, however, does not appear to seek this kind of relief; therefore, dismissal is warranted.

Page 22 -   Defendants' Motion for Summary Judgment

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

**D.      Even if plaintiff's Section 1983 claim is not barred by the Eleventh Amendment, the UOPD Officers are entitled to qualified immunity**

The Court may also hear a plaintiff's claims for monetary damages brought against the UOPD Officers in their *individual* capacities.  *See Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir. 1992); *Price v. Hawaii*, 939 F.2d 702, 706 (9th Cir. 1991) (A plaintiff can "bring [an] action under section 1983 against . . . state officials in their individual capacities, even if those officials were performing their governmental duties when they committed the alleged wrongs.").  "[T]he phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury."  *Hafer v. Melo*, 502 U.S. 21, 26 (1991).

1.      Qualified immunity

Section 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights."  *Conn v. Gabbert*, 526 U.S. 286, 290 (1999).  To maintain a claim under Section 1983, "a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law."  *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

"An official sued in his personal capacity, although deprived of eleventh amendment immunity, may assert a defense of qualified immunity."  *Pena*, 976 F.2d at 473 (citing *Hafer*, 502 U.S. at 25).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

"An officer sued under § 1983 is entitled to immunity from suit unless the officer's conduct (1) violated a constitutional right, and (2) that constitutional right was clearly established at the time of the officer's actions.  A right is not clearly established unless existing

Page 23 -   Defendants' Motion for Summary Judgment

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

precedent squarely governs the specific facts at issue." *Smith v. City of Stockton*, 818 F. App'x 697, 699 (9th Cir. 2020) (internal quotation marks and citations omitted); *Barrett v. Williams*, No. 6:11-cv-06358, 2013 WL 6055247, at *7 (D. Or. Nov. 14, 2013) (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011)) (same).

An officer's "conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Barrett*, 2013 WL 6055247, at *7 (internal quotation marks and citation omitted). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Al-Kidd*, 563 U.S. at 741. There must be a "robust 'consensus of cases of persuasive authority'" on the contours of the right for a party to meet the arduous "beyond debate" standard. 563 U.S. at 742 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). Qualified immunity also "shields a government official from suit when he or she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted." *Westwood v. City of Hermiston*, 787 F. Supp. 2d 1174, 1207 (D. Or. 2011), *aff'd*, 496 F. App'x 728 (9th Cir. 2012) (internal punctuation and citations omitted); *see also Knox v. Sw. Airlines*, 124 F.3d 1103, 1107 (9th Cir. 1997) (noting that qualified-immunity test "allows ample room for reasonable error on the part of the police officer"). Plaintiffs "bear[] the burden of showing that the right at issue was clearly established." *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

Qualified immunity is "'an immunity from suit rather than a mere defense to liability.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1986)). Recently, the Ninth Circuit explained the origins of the doctrine and the trend of "resolving qualified immunity as a legal issue before trial whenever possible":

> The upshot is that qualified immunity was conceived as a summary judgment vehicle, and the trend of the Court's qualified immunity jurisprudence has been toward resolving qualified immunity as a legal issue before trial whenever possible. This approach presents a dilemma when, as here, a qualified

**Page 24 -   Defendants' Motion for Summary Judgment**

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

> immunity case goes to trial because disputed factual issues remain. Qualified immunity is then transformed from a doctrine providing immunity from suit to one providing a defense at trial.

*Morales v. Fry*, 873 F.3d 817, 823 (9th Cir. 2017). For this reason, the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

2.    Constitutional right

As previously discussed, plaintiff has not demonstrated that a genuine issue of material fact exists regarding whether the use of a Taser under the circumstances constituted excessive force. Thus, a reasonable jury could not conclude that the UOPD Officers violated plaintiff's Fourth Amendment rights. Put another way, plaintiff cannot meet the first step of the *Saucier* test. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001), *abrogated on other grounds by Pearson*, 555 U.S. at 242 (describing two-part test for determining the applicability of the qualified immunity doctrine).

a.    *Standards for a claim of excessive force*

As noted in Section III.B.1 above, a claim of excessive force in the course of making a seizure of the person is properly analyzed under the Fourth Amendment's fact-dependent objective reasonableness standard. *Scott*, 550 U.S. 381 (citing *Graham*, 490 U.S. at 388) (internal quotation marks and corrections omitted). To determine reasonableness, a court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." 550 U.S. at 383 (quoting *Place*, 462 U.S. at 703).

Courts in this circuit use a three-step process for analyzing a claim of excessive force under the Fourth Amendment: (1) assessing the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted, *Lowry*, 858 F.3d at 1256; (2) evaluating the government's interest in the use of force, 858 F.3d at 1257; and

**Page 25 -   Defendants' Motion for Summary Judgment**

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

(3) balancing the gravity of the intrusion on the individual's Fourth Amendment rights against the government's need for that intrusion, 858 F.3d at 1260.  *See also Bogle v. Clackamas Cty.*, No. 3:15-cv-0013-SI, 2017 WL 5490870, at *4 (D. Or. Nov. 15, 2017), *aff'd sub nom. Bogle v. Roberts*, 745 F. App'x 31 (9th Cir. 2018).  The second step, the government's interest, is measured by the three nonexclusive *Graham* factors:  (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Lowry*, 858 F.3d at 1257-60 (citing *Graham*, 490 U.S. at 396).  "The most important *Graham* factor is whether the suspect posed an immediate threat to anyone's safety."  *Elifritz v. Fender*, No. 3:18-CV-00903-HZ, 2020 WL 2475877, at *9 (D. Or. May 13, 2020).  The *Graham* factors "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," because "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Graham*, 490 U.S. at 396-97; 490 U.S. at 396 ("the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," and thus "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.") (internal quotation marks and citations omitted).

As noted, if there are "no genuine issues of material fact and 'the relevant set of facts' has been determined, the reasonableness of the use of force is 'a pure question of law.'" *Lowry*, 858 F.3d at 1256 (quoting *Scott*, 550 U.S. at 381 n.8).

b.    *Alleged excessive force used against plaintiff*

The Second Amended Complaint alleges that plaintiff was subjected to excessive use of force during the traffic stop.  Based on plaintiff's confusing complaint, the UOPD Officers

**Page 26 -  Defendants' Motion for Summary Judgment**

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

construe the Second Amended Complaint as complaining about the use of a Taser to gain compliance from plaintiff.

The undisputed facts show that only Corporal Barrett deployed his Taser, so therefore, the other UOPD Officers (Officer Sitts, Officer Brooks, Sergeant Geeting, and Captain Morris) could not have used excessive force and they must be dismissed for this reason alone.  As for Corporal Barrett, as explained below, plaintiff does not present a genuine issue of fact that the force used against him during the traffic stop was excessive.  Moreover, even if the Court were to find that Corporal Barrett's Taser use amounted to excessive force, Corporal Barrett is entitled to qualified immunity because plaintiff cannot meet the second step of the *Saucier* analysis.

(1)    Type and amount of force inflicted

The Court's excessive force inquiry begins with an assessment of the type and amount of force inflicted.  *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994).  In this case, the UOPD Officers used a nonlethal or less-than lethal force device, a Taser, to gain compliance from plaintiff until plaintiff began to obey their commands or otherwise indicated that he intended to surrender.  "[C]ase law indicates that Tasers are generally considered non-lethal or less lethal force."  *Sanders v. City of Fresno*, 551 F. Supp. 2d 1149, 1168 (E.D. Cal. 2008) (citing cases).  "The Taser sends an electrical pulse through the body that disrupts the target's neuromuscular system and causes involuntary muscle contraction."  *Kaady*, 2008 WL 5111101, at *16 (citing *Sanders*, 551 F.Supp.2d at 1168).  In this case, the UOPD Officers acknowledge that "use of a Taser constitutes an intermediate level of force and a significant intrusion on a victim's Fourth Amendment rights," *Kaady*, 2008 WL 5111101, at *16.

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

(2)    Severity of crime

The Court must balance that intrusion against the government interest that justified it.  *Graham*, 490 U.S. at 396.  Under the first of the *Graham* factors, the Court considers the severity of the crimes at issue.

In this case, plaintiff failed to produce proof of ownership or authorization to operate a car, which under established precedent, allowed the officers to reasonably suspect that the BMW M3 may have been stolen or used for improper activity.  *See Arango*, 912 F.2d at 447.  Indeed, drug couriers often use other people's cars known as "third-party rentals."  *Stepp*, 680 F.3d at 666.  In addition, the UOPD Officers understood from LEDS that plaintiff was a martial arts expert.  Thus, the UOPD Officers had information that plaintiff posed a risk to themselves or the public, including the University of Oregon's student body.  The significance of that potential threat was heightened by the fact plaintiff remained in his heavily tinted sport performance vehicle, keys in hand, and ready to take off at any moment's notice near the University of Oregon and its students.  *See Chew*, 27 F.3d at 1443 (significance of the plaintiff's alleged crimes lessened by the fact that he "was completely surrounded by the police, and that the prospects for his imminent capture were far greater than are those of the many fleeing suspects who are fleeter than the police officers chasing them").  Accordingly, this factor weighs heavily in Corporal Barrett's favor.

(3)    Immediate threat of safety

Under the second *Graham* factor, the Court considers whether plaintiff posed an immediate threat to the safety of the UOPD Officers or others.  This is "the most important single element" of the *Graham* excessive force analysis.  490 U.S. at 1441.  "[A] simple

**Page 28 -  Defendants' Motion for Summary Judgment**

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

statement by an officer that he fears for his safety or the safety of others is not enough; there

must be objective factors to justify such a concern." *Deorle v. Rutherford*, 272 F.3d 1272, 1281

(9th Cir. 2001).  "Thus, the possibility that an individual has a gun is cause for concern, where

objective factors suggest that the potential weapon poses a threat." *Kaady*, 2008 WL 5111101, at

*17; *see also Miller v. Clark County*, 340 F.3d 959, 964-65 (9th Cir. 2003) (officers had reason

to fear suspect was armed when he possessed a large knife moments earlier, ignored officers'

commands to halt, and was hiding in dense woods where he could ambush officers); *Saman v.

Robbins*, 173 F.3d 1150, 1156 (9th Cir.1999) (officer encountered the suspect at the scene of a

police shooting, did not know if the suspect was armed, and the suspect began to comply with

commands to get down on the ground but then suddenly jumped to his feet); *Beaver v. City of

Federal Way*, 507 F.Supp.2d 1137, 1146 n. 8 (W.D. Wash. 2007), *aff'd*, 301 F. App'x 704

(9th Cir. 2008) (finding no immediate threat based on possibility that the suspect had a weapon

hidden in his waistband where the officers never saw the suspect reach toward his waistband).

   In this case, the UOPD Officers, including Corporal Barrett, shared a reasonable

concern about officer safety because of plaintiff's furtive movements, including reaching under

his seat and the glovebox, inside a heavily tinted vehicle, which obstructed their view, in the

context of a traffic stop—a situation "especially fraught with danger," *Arizona*, 555 U.S. at 330

(quoting *Michigan v. Long*, 463 U.S. 1032, 1047 (1983)).  In addition, plaintiff warned the

UOPD Officers that he may resist and defend himself if he deemed it necessary and justified and

threatened that he may pose a threat or danger to them.  Moreover, plaintiff refused to answer

Corporal Barrett's question whether there were weapons inside the vehicle and disobeyed

commands to keep his hands on the steering wheel.  Furthermore, when plaintiff exited the

Page 29 -  Defendants' Motion for Summary Judgment

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

vehicle, he immediately began resisting arrest, including grabbing Sergeant Geeting's face,

cutting the gum on the lower left side of Sergeant Geeting's jaw, forcing the officers to face an

unpredictable, dynamic situation near a street with heavy traffic.  This situation demanded

immediate action by the officers.  *See Kaady*, 2008 WL 5111101, at *17.  The Fourth

Amendment did not require the UOPD Officers to retreat, try to use something even less lethal

than a less-lethal Taser, or use any of the other methods.  *See Forrester v. City of San Diego*,

25 F.3d 804, 807 (9th Cir. 1994) (officers are not "required to use the least intrusive degree of

force possible.");  *Graham*, 490 U.S. at 396-97 (the analysis must consider that officers are forced

to make decisions in "tense, uncertain, and rapidly evolving" situations).

Accordingly, plaintiff posed an immediate threat to the safety of the UOPD

Officers and others, including university students.  Therefore, the second *Graham* factor weighs

heavily in Corporal Barrett's favor.

(4)    Actively resisting arrest

Under the third and final *Graham* factor, the Court must consider whether the

plaintiff actively resisted arrest.  In this case, it is undisputed that plaintiff actively resisted arrest.

As Sergeant Geeting and Officer Sitts attempted to control plaintiff's arms to place him under

arrest, plaintiff resisted arrest, yelling, violently pulling away from Officer Sitts towards

Officer Geeting, and abiding by the document he had given one of the UOPD Officers, which

threatened that he would defend himself and may pose a threat or danger to the UOPD Officers.

(SAC ¶ 36(9); Wade Decl. ¶¶ 3, 6, 8, Exs. 2, 5B, 7D; Barrett Decl. ¶ 2; Geeting Decl. ¶ 2;

Sitts Decl. ¶ 2.)  Plaintiff resisted arrest "with the intentions of the preserving of his life."

(SAC ¶ 49.)  Plaintiff "was very strong and [Sergeant Geeting] had difficulty holding his arm

despite [Sergeant Geeting's] own regular routine of weight lifting."  (Wade Decl., ¶¶ 3, 7, 8, 9,

Exs. 2, 6A, 7D, 8D; Geeting Decl., ¶ 2; Sitts Decl. ¶ 2; Brooks Decl. ¶ 2.)  Through his violent

Page 30 -  Defendants' Motion for Summary Judgment

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

movements, plaintiff managed to grab Sergeant Geeting's face, cutting the gum on the lower left side of Sergeant Geeting's jaw. (Wade Decl. ¶ 3, Ex. 2; Sitts Decl. ¶ 2; Brooks Decl. ¶ 2; Geeting Decl. ¶ 2.) Officer Sitts told plaintiff to stop resisting, but plaintiff continued to fight and yelled, "Get your fucking hands off me." (Wade Decl. ¶¶ 3, 7, Exs. 2, 6A; Sitts Decl. ¶ 2; Barrett Decl. ¶ 2; Geeting Decl. ¶ 2.) Corporal Barrett then observed plaintiff grab onto Sergeant Geeting and swing him around violently. (Wade Decl. ¶¶ 3, 6, Exs. 2, 5B; Barrett Decl. ¶ 2; Geeting Decl. ¶ 2.) Sergeant Geeting and plaintiff were being pulled by plaintiff's momentum towards the busy street and potentially into traffic. (Wade Decl. ¶¶ 8, 9, Ex. 7D, 8D; Sitts Decl. ¶2; Brooks Decl. ¶ 2.) At this point, Corporal Barrett drew his Taser and in accordance with UOPD Policy, advised plaintiff "stop or you're going to be tased." (Wade Decl. ¶¶ 3, 7, Exs. 2, 6A; Barrett Decl. ¶ 2; Brooks Decl. ¶ 2; Geeting Decl. ¶ 2; Sitts Decl. ¶ 2.) Corporal Barrett then deployed the Taser in probe mode. Accordingly, it is undisputed that plaintiff's behavior, even if he believed, based on his beliefs, that it was justified, constituted active resistance to lawful arrest.

In short, Corporal Barrett's use of the Taser was not constitutionally excessive. The testimony shows that Corporal Barrett used nonlethal force in the context of a traffic stop—a situation "especially fraught with danger," *Arizona*, 555 U.S. at 330—with an individual, who (1) had a caution flag based on his expert martial-arts experience; (2) made furtive movements in an obscured sports performance vehicle; (3) had not been searched for weapons; (4) had been uncooperative with the UOPD Officers for almost half an hour; (5) used a combative tone with the UOPD Officers; (6) had expressed that he—in his sole discretion—would decide when he would use force in self-defense; (7) refused to surrender or obey the police officers' reasonable and polite instructions; and (8) actively resisted arrest.

The UOPD Officer's reports, body cameras, and vehicle dash cameras beg the question: under the circumstances and in the context of a traffic stop near a university, what was

Page 31 -   Defendants' Motion for Summary Judgment

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

excessive about a single police officer deploying a single five-second Taser electrical charge (using two cartridges) to gain compliance from a combative, expert mixed martial artist actively resisting arrest? The answer is "nothing." And there is significant amount of authority from this circuit supporting that position. *See, e.g.*, *Kaady*, 2008 WL 5111101, at *21 (because the officer used his Taser after the plaintiff posed a threat, the court found that the officer was entitled to qualified immunity). Accordingly, this Court should conclude that Corporal Barrett's Taser use did not constitute excessive force.

3.   Clearly established

Even if the Court were to find that Corporal Barrett's Taser use amounted to excessive force, Corporal Barrett would be entitled to qualified immunity because plaintiff cannot meet the second *Saucier* step.

To determine whether a government official's conduct violates clearly established law, "a court must ask whether it would have been clear to a reasonable officer that the alleged conduct 'was unlawful in the situation he confronted.'" *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1867, 198 L.Ed.2d 290 (2017) (quoting *Saucier*, 533 U.S. at 202). To find a violation of clearly established law, the Court must "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." *White v. Pauly*, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017). Plaintiff "bears the burden of showing that the rights allegedly violated were clearly established." *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017).

To be clearly established, "[i]t is not necessary . . . that the very action in question has previously been held unlawful. That is, an officer might lose qualified immunity even if there is no reported case directly on point. But in the light of pre-existing law, the unlawfulness of the officer's conduct must be apparent." *Ziglar*, 137 S. Ct. at 1866-67 (internal quotation marks and citations omitted). Courts should not "define clearly established law at a high level of

Page 32 -   Defendants' Motion for Summary Judgment

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotation mark and citation omitted). Rather, a court must look at "whether the violative nature of *particular* conduct is clearly established"—an analysis that is "undertaken in light of the specific context of the case." *Id.* (emphasis in original) (citations omitted). This high level of specificity is in fact "especially important in the Fourth Amendment context, where . . . it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Id.* (internal quotation marks, citation and correction omitted).

       And even if a right was violated, and that right was clearly established at the time, where an officer's mistake as to the law's requirements was reasonable, "the officer is entitled to the immunity defense." *Blankenhorn v. City of Orange*, 485 F.3d 463, 471 (9th Cir. 2007); *see also Saucier*, 533 U.S. at 202. In effect, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law." *Ziglar*, 137 S. Ct. at 1867 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). As the Ninth Circuit recently reaffirmed, courts "begin [their] inquiry into whether this constitutional violation was clearly established by defining the law at issue in a concrete, particularized manner." *Shafer*, 868 F.3d at 1117.

       "Defined at an appropriate level of specificity," *see id.*, the question in this case is whether a police officer violates clearly established law when the officer deploys a Taser to subdue an individual until that individual begins to obey their commands or otherwise indicates he intends to surrender when that individual has a caution flag for expert martial arts, made furtive movements in an obscured sports performance vehicle, has not been searched for weapons, has been uncooperative with the police officers for more than half an hour, has threatened the officers and indicated that he would defend himself, and is not surrendering or obeying the officers' instructions in the context of a traffic stop. On these facts—confirmed by video footage from different officers—the UOPD officers did not violate clearly established law.

Page 33 -  Defendants' Motion for Summary Judgment

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

There are several cases where courts have found that Taser use did not constitute excessive force.  Like in this case, in those cases the suspect engaged in actual physical struggle or threatening behavior before the officer deployed the Taser.  *See, e.g.*, *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004) (observing that "being struck by a taser gun is an unpleasant experience" but concluding that "a single use of the taser gun causing a one-time shocking . . . was reasonably proportionate to the need for force and did not inflict any serious injury" in a case involving an unrestrained, uncooperative, and belligerent tractor trailer driver involved in a traffic stop); *Goldsmith v. Snohomish County*, 558 F. Supp. 2d 1140, 1147, 1150-51 (W.D. Wash. 2008) (Taser reasonable to subdue emotionally disturbed man struggling with officers in a confined space); *Shulgan v. Noetzel*, No. CV-07-051-JLQ, 2008 WL 1730091, at *11 (E.D. Wash. Apr. 10, 2008) (granting summary judgement in the defendants' favor and finding that the officer's use of a Taser was objectively reasonable because the suspect advanced toward the officer with hands in his pockets despite commands to stop); *Zackery v. Stockton Police Dep't*, No. 05-2315, 2008 WL 53224, at *11-12 (E.D. Cal. Jan. 2, 2008) (suspect on the ground, on his stomach, "struggling with officer" and refused to place his hands behind his back); *Beaver*, 507 F. Supp. 2d at 1145-47 (initial *three uses of Taser* found to be reasonable because the suspect attempted to flee, but later uses were found not reasonable because the suspect was on the ground and backup had arrived to assist with his detention).

These cases show that Corporal Barrett had reason to believe he could deploy his Taser when he saw that plaintiff "was on his feet, agitated and unresponsive to commands." *Kaady*, 2008 WL 5111101, at *20.  And even if Corporal Barret was mistaken about the reasonableness of his actions, his actions were not "plainly incompetent" or a "knowing" violation of the law that is unprotected by the qualified immunity doctrine.  The existing case law regarding use of Taser does not provide enough clarity to conclude that *every* reasonable officer would have understood "beyond debate" that their actions violated the law.  *Al-Kidd*, 563

**Page 34 -  Defendants' Motion for Summary Judgment**

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204

U.S. at 741. Because Corporal Barrett used his Taser after plaintiff posed a serious threat, this Court should find that Corporal Barrett is entitled to qualified immunity and grant summary judgment on plaintiff's sole remaining Section 1983 claim.

## IV.    CONCLUSION

For the reasons stated above, plaintiff's lawsuit does not—and cannot—assert a viable Section 1983 claim against the UOPD Officers. This Court should dismiss plaintiff's sole remaining claim on summary judgment.

DATED: January 29, 2021.

MILLER NASH GRAHAM & DUNN LLP

*s/ Ivan Resendiz Gutierrez*

Naomi Levelle Haslitt, OSB No. 075857
naomi.haslitt@millernash.com
Iván Resendiz Gutierrez, OSB No. 154617
ivan.resendiz@millernash.com
3400 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, Oregon 97204
Phone: 503.224.5858
Fax: 503.224.0155

*Attorneys for Defendants*

Page 35 -   Defendants' Motion for Summary Judgment

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON 97204

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served the foregoing Defendants' Motion for Summary

Judgment on:

      James-Brent: Alvarez
      c/o 30924 Kenady Lane
      Cottage Grove, Oregon  97424
      brentalvarez78@gmail.com

      *Plaintiff Pro Se*

by the following indicated method or methods on the date set forth below:

☐     **CM/ECF system transmission.**

☐     **E-mail.**  As required by Local Rule 5.9, any interrogatories, requests for production, or requests for admission were e-mailed in Word or WordPerfect format, not in PDF, unless otherwise agreed to by the parties.

☒     **E-mail** (per agreement to service by e-mail).

☐     **Facsimile communication device.**

☐     **First-class mail, postage prepaid.**

☐     **Hand-delivery.**

☐     **Overnight courier, delivery prepaid.**

    DATED this 29th day of January, 2021.

            *s/ Iván Resendiz Gutierrez*
            Iván Resendiz Gutierrez, OSB No. 154617

            *Of Attorneys for Defendants*

4816-4256-3034.1

**Page 1 -**     **Certificate of Service**

MILLER NASH GRAHAM & DUNN LLP
ATTORNEYS AT LAW
TELEPHONE: 503.224.5858
3400 U.S. BANCORP TOWER
111 S.W. FIFTH AVENUE
PORTLAND, OREGON  97204