# University of Oregon Police Department
University of Oregon Police Department Policy Manual

**PREFACE AND APPLICABILITY**

Some of the policies in this manual, or portions of them, apply only to police officers who are authorized to be carrying firearms on duty (for example, Policy 310 - Officer-Involved Shootings). Employees with questions or concerns as to a policy's application, should contact their immediate supervisor, or if not available and the need for clarification is urgent, may contact any command officer.

The policies contained in this manual control University of Oregon Police Department operations to the extent that the policies are not inconsistent with applicable federal law, state law, Oregon Administrative Rules pertaining to the Oregon University System and the University of Oregon and relevant collective bargaining agreements.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department
PREFACE AND APPLICABILITY - 1

UO_Alvarez000011

**Exhibit 1**
**Page 1 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

**CRIMINAL JUSTICE CODE OF ETHICS**

As a criminal justice officer, my fundamental duty is to serve humankind; to safeguard lives and property; to protect all persons against deception, the weak against oppression or intimidation, and the peaceful against violence or disorder; and to respect the Constitutional rights of all people to liberty, equality and justice.

I will keep my private life unsullied as an example to all; maintain courageous calm in the face of danger, scorn, or ridicule; develop self-restraint; and be constantly mindful of the welfare of others. Honest in thought and deed in both my personal and official life, I will be exemplary in obeying the laws of the land and the regulations of my department. Whatever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty.

I will never act officiously or permit personal feelings, prejudices, animosities or friendships to influence my decisions. Without compromise and with relentlessness, I will uphold the laws affecting the duties of my profession courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence, and never accepting gratuities.

I recognize my position as a symbol of public faith, and I accept it, as a public trust to be held so long as I am true to the ethics of The Criminal Justice System. I will constantly strive to achieve these objectives and ideals, dedicating myself before God to my chosen profession.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

**UOPD MISSION STATEMENT**

The University of Oregon Police Department is committed to excellence in campus law enforcement and is dedicated to the people, culture, traditions and diversity of our community. In order to protect life and property, preserve the peace, prevent crime and reduce the fear of crime, the department provides community-oriented and trust-based services with compassion and understanding, performing campus law enforcement with accountability, integrity and vision.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## Table of Contents

PREFACE AND APPLICABILITY .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  1

CRIMINAL JUSTICE CODE OF ETHICS .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  2

UOPD MISSION STATEMENT .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  3

**Chapter 1 - Law Enforcement Role and Authority** .  .  .  .  .  .  .  .  .  **8**
   100 - Law Enforcement Authority .  .  .  .  .  .  .  .  .  .  .  .  .  9
   102 - Public Safety Certification .  .  .  .  .  .  .  .  .  .  .  .  11
   104 - Oath of Office .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  12
   106 - Policy Manual .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  13
   107 - Chief Executive Officer .  .  .  .  .  .  .  .  .  .  .  .  17

**Chapter 2 - Organization and Administration** .  .  .  .  .  .  .  .  .  .  **18**
   200 - Organizational Structure and Responsibility .  .  .  .  .  .  .  19
   204 - Special Orders .  .  .  .  .  .  .  .  .  .  .  .  .  .  21
   206 - Emergency Operations Plan .  .  .  .  .  .  .  .  .  .  .  22
   212 - Electronic Mail .  .  .  .  .  .  .  .  .  .  .  .  .  .  23
   214 - Administrative Communications .  .  .  .  .  .  .  .  .  .  24
   216 - Staffing Levels .  .  .  .  .  .  .  .  .  .  .  .  .  .  25
   221 - Training .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  26

**Chapter 3 - General Operations** .  .  .  .  .  .  .  .  .  .  .  .  .  **29**
   300 - Use of Force .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  30
   302 - Use of Force Review Boards .  .  .  .  .  .  .  .  .  .  .  37
   306 - Handcuffing and Restraints .  .  .  .  .  .  .  .  .  .  .  40
   308 - Control Devices and Techniques .  .  .  .  .  .  .  .  .  .  44
   309 - TASER Conducted Energy Weapon .  .  .  .  .  .  .  .  .  47
   311 - Officer-Involved Shootings and Deaths .  .  .  .  .  .  .  .  55
   313 - Firearms .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  64
   315 - Vehicle Pursuits .  .  .  .  .  .  .  .  .  .  .  .  .  .  76
   317 - Officer Response to Calls .  .  .  .  .  .  .  .  .  .  .  89
   318 - Medical Transports and Services .  .  .  .  .  .  .  .  .  .  92
   321 - Domestic Violence .  .  .  .  .  .  .  .  .  .  .  .  .  94
   323 - Search and Seizure .  .  .  .  .  .  .  .  .  .  .  .  .  100
   325 - Temporary Custody of Juveniles .  .  .  .  .  .  .  .  .  103
   327 - Adult Abuse .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  112
   329 - Discriminatory Harassment .  .  .  .  .  .  .  .  .  .  .  118
   331 - Child Abuse .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  123
   333 - Missing Persons .  .  .  .  .  .  .  .  .  .  .  .  .  .  130
   335 - Amber Alerts .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  138
   337 - Victim and Witness Assistance .  .  .  .  .  .  .  .  .  .  141
   339 - Hate (Bias) Crimes .  .  .  .  .  .  .  .  .  .  .  .  .  144
   341 - Disciplinary Policy .  .  .  .  .  .  .  .  .  .  .  .  .  147

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000014

**Exhibit 1**
**Page 4 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

343 - Information Technology Use . . . . . . . . . . 151
345 - Report Preparation . . . . . . . . . . . 155
347 - News Media Relations . . . . . . . . . . 159
349 - Subpoenas and Court Appearances . . . . . . . . 164
351 - Reserve Officers . . . . . . . . . . . 167
352 - Outside Agency Assistance . . . . . . . . . 173
356 - Registered Offender Information . . . . . . . . 175
357 - Civil Disturbances and Demonstrations . . . . . . . 177
358 - Major Incident Notification . . . . . . . . . 181
359 - Clery Act - Notifications of Significant Emergencies and Dangerous Situations . 184
360 - Death Investigation . . . . . . . . . . 186
362 - Identity Theft . . . . . . . . . . . 189
364 - Private Persons Arrests . . . . . . . . . 190
370 - Communications with Persons with Disabilities . . . . . . 192
376 - Stalking . . . . . . . . . . . . 200
379 - Child and Dependent Adult Safety . . . . . . . . 202
381 - Service Animals . . . . . . . . . . . 206
383 - Public Safety Camera System . . . . . . . . 209
387 - Off-Duty Law Enforcement Actions . . . . . . . 212
388 - Rape Aggression Defense (RAD) System Program . . . . . 214

**Chapter 4 - Patrol Operations** . . . . . . . . **217**
400 - Patrol Function . . . . . . . . . . . 218
402 - Racial- or Bias-Based Profiling . . . . . . . . 221
404 - Briefing Training . . . . . . . . . . . 223
406 - Crime and Disaster Scene Integrity . . . . . . . 224
410 - Ride-Along Policy . . . . . . . . . . 226
412 - Hazardous Material Response . . . . . . . . 230
414 - Hostage and Barricade Incidents . . . . . . . 232
416 - Response to Bomb Calls . . . . . . . . . 237
418 - Mental Illness Commitments . . . . . . . . 241
419 - Letters of Trespass . . . . . . . . . . 244
420 - Citation Releases . . . . . . . . . . 246
421 - Municipal Citation Authority . . . . . . . . 248
422 - Arrest or Detention of Foreign Nationals . . . . . . 251
424 - Rapid Response And Deployment Policy . . . . . . 258
428 - Immigration Violations . . . . . . . . . 260
434 - Aircraft Accidents . . . . . . . . . . 264
436 - Field Training and Evaluation Program . . . . . . 267
440 - Detentions And Photographing Detainees . . . . . . 273
442 - Criminal Street Gangs . . . . . . . . . 278
446 - Mobile Audio Video . . . . . . . . . . 284
447 - Portable Audio/Video Recorders . . . . . . . 292
449 - Mobile Data Terminal Use . . . . . . . . 298
452 - Medical Marijuana . . . . . . . . . . 300
458 - Foot/Bicycle Pursuits . . . . . . . . . 305
460 - Bicycle Patrol . . . . . . . . . . . 310

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000015

**Exhibit 1**
**Page 5 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

464 - Homeless Persons . . . . . . . . . . . . . . . . . 314

**Chapter 5 - Traffic Operations** . . . . . . . . . . . . **318**
500 - Traffic Function and Responsibility . . . . . . . . . 319
502 - Traffic Collision Reporting . . . . . . . . . . . . 322
510 - Vehicle Towing . . . . . . . . . . . . . . . . . 324
512 - Vehicle Impound Hearings . . . . . . . . . . . . 330
514 - Impaired Driving . . . . . . . . . . . . . . . . 332
515 - Speeding Violations and Speed Measuring Devices . . . 338
516 - Traffic Citations . . . . . . . . . . . . . . . . 340
520 - Disabled Vehicles . . . . . . . . . . . . . . . 342
524 - 72-Hour Parking Violations . . . . . . . . . . . . 343

**Chapter 6 - Investigation Operations** . . . . . . . . . **345**
600 - Investigation and Prosecution . . . . . . . . . . . 346
608 - Confidential Informants . . . . . . . . . . . . . 348
610 - Eyewitness Identification . . . . . . . . . . . . . 353
612 - Brady Material Disclosure . . . . . . . . . . . . 357

**Chapter 7 - Equipment and Facilities** . . . . . . . . . **360**
700 - Department Owned and Personal Property . . . . . . . 361
701 - Facilities, Security and Access . . . . . . . . . . 364
702 - Personal Communication Devices . . . . . . . . . 367
703 - Department Assigned Lockers . . . . . . . . . . . 371
704 - Vehicle Maintenance . . . . . . . . . . . . . . 372
706 - Vehicle Use . . . . . . . . . . . . . . . . . 375
707 - Operation of Off-Highway Vehicles (OHV) . . . . . . 380

**Chapter 8 - Support Services** . . . . . . . . . . . . **382**
800 - Crime Analysis . . . . . . . . . . . . . . . . 383
802 - Communications and Emergency Response Center (CERC) . . 385
804 - Property Control . . . . . . . . . . . . . . . . 396
805 - Evidence Control . . . . . . . . . . . . . . . 402
806 - Law Enforcement Records Unit . . . . . . . . . . 410
808 - Restoration of Firearm Serial Numbers . . . . . . . 413
809 - Access to Law Enforcement Databases . . . . . . . 415
810 - Records Release . . . . . . . . . . . . . . . 417
812 - Computerized Criminal Offender Information/Computerized Criminal History (CCH)
. . . . . . . . . . . . . . . . . . . . . . 421
814 - Computers and Digital Evidence . . . . . . . . . . 425
820 - Animal Control . . . . . . . . . . . . . . . . 429
822 - Jeanne Clery Campus Security Act . . . . . . . . . 432

**Chapter 9 - Custody** . . . . . . . . . . . . . . . **437**
900 - Custody Searches . . . . . . . . . . . . . . . 438

**Chapter 10 - Personnel** . . . . . . . . . . . . . . **444**

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000016

**Exhibit 1**
**Page 6 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

1002 - Evaluation of Employees .    .    .    .    .    .    .    .    .    .    .    .    445
1004 - Promotional and Transfer Policy .    .    .    .    .    .    .    .    .    .    448
1010 - Reporting of Employee Convictions .    .    .    .    .    .    .    .    .    451
1011 - Conduct .    .    .    .    .    .    .    .    .    .    .    .    .    .    453
1012 - Drug- and Alcohol-Free Workplace .    .    .    .    .    .    .    .    .    458
1014 - Sick Leave Reporting .    .    .    .    .    .    .    .    .    .    .    461
1016 - Communicable Diseases .    .    .    .    .    .    .    .    .    .    .    463
1018 - Smoking and Tobacco Use .    .    .    .    .    .    .    .    .    .    471
1020 - Personnel Complaints .    .    .    .    .    .    .    .    .    .    .    472
1022 - Seat Belts .    .    .    .    .    .    .    .    .    .    .    .    .    481
1024 - Body Armor .    .    .    .    .    .    .    .    .    .    .    .    .    482
1026 - Personnel Files .    .    .    .    .    .    .    .    .    .    .    .    485
1028 - Request for Change of Assignment .    .    .    .    .    .    .    .    .    490
1029 - Request for Outside Training .    .    .    .    .    .    .    .    .    .    491
1030 - Employee Commendations .    .    .    .    .    .    .    .    .    .    493
1032 - Fitness for Duty .    .    .    .    .    .    .    .    .    .    .    .    494
1034 - Meal Periods and Breaks .    .    .    .    .    .    .    .    .    .    497
1035 - Lactation Break Policy .    .    .    .    .    .    .    .    .    .    .    498
1036 - Payroll Record Procedures .    .    .    .    .    .    .    .    .    .    500
1038 - Overtime Payment Requests .    .    .    .    .    .    .    .    .    .    501
1040 - Outside Employment .    .    .    .    .    .    .    .    .    .    .    503
1042 - On Duty Injuries .    .    .    .    .    .    .    .    .    .    .    .    508
1044 - Personal Appearance Standards .    .    .    .    .    .    .    .    .    511
1046 - Uniform Regulations .    .    .    .    .    .    .    .    .    .    .    514
1050 - Nepotism and Conflicting Relationships .    .    .    .    .    .    .    .    520
1052 - Employee Involved Domestic Violence .    .    .    .    .    .    .    .    523
1054 - Department Badges .    .    .    .    .    .    .    .    .    .    .    527
1056 - Modified Duty Assignments .    .    .    .    .    .    .    .    .    .    529
1058 - Performance History Audits .    .    .    .    .    .    .    .    .    .    532
1060 - Employee Speech, Expression and Social Networking .    .    .    .    .    .    535

**Attachments** .    .    .    .    .    .    .    .    .    .    .    .    .    .    **540**
Uniform and Equipment Inventory at time of hire.pdf .    .    .    .    .    .    .    541

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Chapter 1 - Law Enforcement Role and Authority

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000018
**Exhibit 1**
**Page 8 of 550**



Policy
**100**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Law Enforcement Authority

## 100.1   PURPOSE AND SCOPE
The purpose of this policy is to affirm the authority of the members of the University of Oregon Police Department to perform their functions based on established legal authority.

## 100.2   PEACE OFFICER POWERS
Peace officers are granted authority by Oregon Revised Statutes to prevent and deter crime; arrest offenders; issue citations in lieu of custody; take custody of evidence of a crime, contraband or recovered stolen property; control the flow of traffic and preserve the peace and safety of the public.

Sworn members of this Department are peace officers pursuant to ORS 161.015. Peace officer authority extends to any place in the State of Oregon.

### 100.2.1   AUTHORITY TO ARREST
Pursuant to ORS 133.235:

(a)   A peace officer may arrest a person for a crime at any hour of any day or night.

(b)   A peace officer may arrest a person for a crime, pursuant to ORS 133.310(1), whether or not such crime was committed within the geographical area of such peace officer's employment, and the peace officer may make such arrest within the state, regardless of the situs of the offense.

(c)   The peace officer shall inform the person to be arrested of the peace officer's authority and reason for the arrest, and, if the arrest is under a warrant, shall show the warrant, unless the peace officer encounters physical resistance, flight or other factors rendering this procedure impracticable, in which case the arresting peace officer shall inform the arrested person and show the warrant, if any, as soon as practicable.

(d)   In order to make an arrest, a peace officer may use physical force as justifiable under ORS 161.235, ORS 161.239 and ORS 161.245.

(e)   In order to make an arrest, a peace officer may enter premises in which the peace officer has probable cause to believe the person to be arrested to be present.

(f)   If after giving notice of the peace officer's identity, authority and purpose, the peace officer is not admitted, the peace officer may enter the premises, and by a breaking, if necessary.

(g)   A person may not be arrested for a violation except as provided by ORS 153.039 and ORS 810.410.

## 100.3   CONSTITUTIONAL REQUIREMENTS
All employees shall observe and comply with every person's clearly established rights under the United States and Oregon Constitutions.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000019

**Exhibit 1**
**Page 9 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Law Enforcement Authority*

### 100.4  POLICY
It is the policy of the University of Oregon Police Department to limit its members to only exercise the authority granted to them by law.

While this department recognizes the power of peace officers to make arrests and take other enforcement action, officers are encouraged to use sound discretion in the enforcement of the law. This department does not tolerate abuse of law enforcement authority.

### 100.5  INTERSTATE PEACE OFFICER POWERS
Peace officer powers may be extended to other states:

(a)  As applicable under interstate compacts, memorandums of understanding or mutual aid agreements in compliance with the laws of each state.

(b)  When an officer enters California, Idaho or Nevada in fresh pursuit of a person who the officer has probable cause to believe has committed a felony (Penal Code § 852.2 (California); Idaho Code 19-701 (Idaho); NRS 171.158 (Nevada)).

(c)  When an officer enters Washington while in pursuit of a person the pursuing officer has probable cause to believe has committed a felony; or violation related to driving while intoxicated, driving while under the influence of drugs or alcohol, driving while impaired or reckless driving (RCW 10.89.010).

Whenever an officer makes an arrest in California, Idaho, Nevada or Washington, the officer shall take the offender to a magistrate or judge in the county where the arrest occurred as soon as practicable (Penal Code § 852.3; Idaho Code 19-702; NRS 171.158; RCW 10.89.020).

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000020

**Exhibit 1**
**Page 10 of 550**



**Policy**
**102**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Public Safety Certification

### 102.1  PURPOSE AND SCOPE
This policy outlines certain state certification and training requirements for Department members.

### 102.2  BASIC CERTIFICATION
The Department of Public Safety Standards and Training requires that all sworn law enforcement officers employed within the State of Oregon receive certification within 18 months of appointment. (OAR 259-008-0060).

### 102.3  SUPERVISORS AND MANAGERS
In addition to basic certification, supervisors and mid-level managers are required to complete the supervision course or middle management course, respectively, within 12 months of appointment unless a time extension is granted by DPSST (OAR 259-008-0025). Supervisors and managers should also seek the appropriate level of certification (OAR 259-008-0060).

### 102.4  MAINTENANCE OF CERTIFICATION
In order to maintain certification, all active law enforcement officers are required to meet on-going training requirements as specified in OAR 259-008-0064 or OAR 259-008-0065.

Active police officers who hold Supervisory, Management or Executive certification must complete at least 24 hours of department-approved Leadership/Professional training every three years, as part of the on-going training required for all peace officers (OAR 259-008-0065).

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department



**Policy**
**104**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Oath of Office

### 104.1  PURPOSE AND SCOPE
The purpose of this policy is to ensure that oaths, when appropriate, are administered to department members.

### 104.2  OATH OF OFFICE
All department members, when appropriate, shall take and subscribe to the oaths or affirmations applicable to their positions. The form of oath should be as follows:

"I, (state name), do solemnly swear that I will support the Constitution of the United States, and the Constitution of the State of Oregon, and the laws therefore and rules and regulations of the University of Oregon Police Department, and I will faithfully, honestly and impartially discharge the duties of (position about to assume) during my continuance therein, to the best of my ability, so help me God."

If a member is opposed to taking an oath, he/she shall be permitted to substitute the word "affirm" for the word "swear," and the words "so help me God" may be omitted.

#### 104.2.1  CRIMINAL JUSTICE CODE OF ETHICS
All members of the University of Oregon Police Department are required to subscribe and adhere to the Criminal Justice Code of Ethics as presented in the introduction to this Policy Manual.

#### 104.2.2  MAINTENANCE OF RECORDS
The oath of office shall be filed in accordance with the established records retention schedule.

### 104.3  POLICY
It is the policy of the University of Oregon Police Department that, when appropriate, department members affirm the oath of their office as an expression of commitment to the constitutional rights of those served by the Department and the dedication of its members to their duties.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000022

**Exhibit 1**
**Page 12 of 550**



**Policy**
**106**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Policy Manual

### 106.1  PURPOSE AND SCOPE
The manual of the University of Oregon Police Department is hereby established and shall be referred to as the Policy Manual or the manual. The manual is a statement of the current policies, rules and guidelines of this department. All members are to conform to the provisions of this manual.

All prior and existing manuals, orders and regulations that are in conflict with this manual are rescinded, except to the extent that portions of existing manuals, procedures, orders and other regulations that have not been included herein shall remain in effect, provided that they do not conflict with the provisions of this manual.

#### 106.1.1  DISCLAIMER
The provisions contained in this Policy Manual are not intended to create an employment contract, nor any employment rights or entitlements. The policies contained within this manual are for the internal use of the University of Oregon Police Department and shall not be construed to create a higher standard or duty of care for civil or criminal liability against the University, its officials or employees. Violations of any provision of any policy contained within this manual shall only form the basis for departmental administrative action, training or discipline. The University of Oregon Police Department reserves the right to revise any policy content, in whole or in part.

### 106.2  POLICY
Except where otherwise expressly stated, the provisions of this manual shall be considered as guidelines. It is recognized that the work of law enforcement is not always predictable and circumstances may arise which warrant departure from these guidelines. It is the intent of this manual to be viewed from an objective standard, taking into consideration the sound discretion entrusted to members of this department under the circumstances reasonably available at the time of any incident.

#### 106.2.1  DISCLAIMER
The provisions contained in the Policy Manual are not intended to create an employment contract nor any employment rights or entitlements. The policies contained within this manual are for the internal use of the University of Oregon Police Department and shall not be construed to create a higher standard or duty of care for civil or criminal liability against the University, its officials or members. Violations of any provision of any policy contained within this manual shall only form the basis for department administrative action, training or discipline. The University of Oregon Police Department reserves the right to revise any policy content, in whole or in part.

### 106.3  AUTHORITY
The Chief of Police shall be considered the ultimate authority for the content and adoption of the provisions of this manual and shall ensure compliance with all applicable federal, state and local laws. The Chief of Police or the authorized designee is authorized to issue Special Orders, which

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000023

**Exhibit 1**
**Page 13 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Policy Manual*

shall modify those provisions of the manual to which they pertain. Special Orders shall remain in effect until such time as they may be permanently incorporated into the manual.

106.3.1  DISTRIBUTION OF MANUAL
The Policy Manual will be made available to all employees on the department network. The electronic version will be limited to the viewing and printing of specific sections. No changes shall be made to the electronic version without authorization.

**106.4  DEFINITIONS**
The following words and terms shall have these assigned meanings throughout the Policy Manual, unless it is apparent from the content that they have a different meaning:

**Adult** - Any person 18 years of age or older.

**CFR** - Code of Federal Regulations.

**University** - The University of University of Oregon.

**Non-sworn** - Employees and volunteers who are not sworn peace officers.

**Department/UOPD** - The University of Oregon Police Department.

**DHS** - Department of Human Services.

**DMV -** The Department of Motor Vehicles.

**Employee/personnel** - Any person employed by the Department.

**Manual** - The University of Oregon Police Department Policy Manual.

**May** - Indicates a permissive, discretionary or conditional action.

**Member** - Any person employed or appointed by the University of Oregon Police Department, including:

- Full- and part-time employees
- Sworn peace officers
- Reserve, auxiliary officers
- Non-sworn employees
- Volunteers

**OAR** - Oregon Administrative Rules (Example: OAR 259-008-0060).

**ORS** - Oregon Revised Statutes (Example: ORS 153.039).

**OSP** - The Oregon State Police.

**Officer/sworn** - Those employees, regardless of rank, who are sworn peace officers employees of the University of Oregon Police Department.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000024

**Exhibit 1**
**Page 14 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Policy Manual*

**On-duty** - A member's status during the period when he/she is actually engaged in the performance of his/her assigned duties.

**Order** - A written or verbal instruction issued by a superior.

**Rank** - The title of the classification held by an officer.

**Shall or will** - Indicates a mandatory action.

**Should** - Indicates a generally required or expected action, absent a rational basis for failing to conform.

**Supervisor** - A person in a position of authority that may include responsibility for hiring, transfer, suspension, promotion, discharge, assignment, reward or discipline of other department members, directing the work of other members or having the authority to adjust grievances. The supervisory exercise of authority may not be merely routine or clerical in nature but requires the use of independent judgment.

The term "supervisor" may also include any person (e.g., officer-in-charge, lead or senior worker) given responsibility for the direction of the work of others without regard to a formal job title, rank or compensation.

When there is only one department member on-duty, that person may also be the supervisor, except when circumstances reasonably require the notification or involvement of the member's off-duty supervisor or an on-call supervisor.

**USC** - United States Code.

## 106.5   ISSUING THE POLICY MANUAL
An electronic version of the Policy Manual will be made available to all members on the department network for viewing and printing. No changes shall be made to the manual without authorization from the Chief of Police or the authorized designee.

Each member shall acknowledge that he/she has been provided access to, and has had the opportunity to review the Policy Manual and Special Orders. Members shall seek clarification as needed from an appropriate supervisor for any provisions that they do not fully understand.

## 106.6   PERIODIC REVIEW OF THE POLICY MANUAL
The Chief of Police will ensure that the Policy Manual is periodically reviewed and updated as necessary.

## 106.7   REVISIONS TO POLICIES
All revisions to the Policy Manual will be provided to each member on or before the date the policy becomes effective. Each member will be required to acknowledge that he/she has reviewed the revisions and shall seek clarification from an appropriate supervisor as needed.

Members are responsible for keeping abreast of all Policy Manual revisions.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000025

**Exhibit 1**
**Page 15 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

## Policy Manual

Each Division Commander will ensure that members under his/her command are aware of any Policy Manual revision.

All department members suggesting revision of the contents of the Policy Manual shall forward their written suggestions to their Division Commanders, who will consider the recommendations and forward them to the command staff as appropriate.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000026

**Exhibit 1**
**Page 16 of 550**



**Policy**
**107**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Chief Executive Officer

### 107.1  PURPOSE AND SCOPE
All law enforcement Chief Executive Officers employed within the State of Oregon are required to meet specific requirements for appointment. This policy provides guidelines for the appointment of the Chief Executive Officer of the University of Oregon Police Department, who is required to exercise the powers and duties of the office as prescribed by state law (OAR 259-008-0060).

### 107.2  POLICY
It is the policy of the University of Oregon Police Department that the Chief of Police meets the minimum standards for exercising his/her authority granted by law.

### 107.3  CHIEF OF POLICE REQUIREMENTS
The Chief of Police of this department, as a condition of employment, should have, within two years of appointment, successfully obtained Executive certification through the Department of Public Safety Standards and Training (DPSST) and be licensed by DPSST.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000027

**Exhibit 1**
**Page 17 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Chapter 2 - Organization and Administration

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000028
**Exhibit 1**
**Page 18 of 550**



**Policy**
**200**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Organizational Structure and Responsibility

**200.1   SECTION TITLE**

**200.2   PURPOSE AND SCOPE**
The organizational structure of this department is designed to create an efficient means to accomplish our mission and goals and to provide for the best possible service to the public.

**200.3   DIVISIONS**
The Chief of Police is responsible for administering and managing the University of Oregon Police Department. There are three divisions in the Police Department as follows:

- Administrative Division
- Operations Division
- Security and Special Events Division

**200.3.1   ADMINISTRATION DIVISION**
The Administrative Division is commanded by a Captain, whose primary responsibility is to provide general management direction and control for the Administrative Division and the Communications and Emergency Response Center.

**200.3.2   POLICE OPERATIONS**
The Office of Police Operations is commanded by a Captain whose primary responsibility is to provide general management direction and control for this office.

**200.3.3   SECURITY AND SPECIAL EVENTS DIVISION**
The Office of Security and Special Events is commanded by the Director of Security whose primary responsibility is to provide general management direction and control for this office.

**200.4   COMMAND PROTOCOL**

**200.4.1   SUCCESSION OF COMMAND**
The Chief of Police exercises command over all personnel in the Department. During planned absences the Chief of Police will designate a Division Commander to serve as the acting Chief of Police.

Except when designated as above, the order of command authority in the absence or unavailability of the Chief of Police is as follows:

a. Operations Captain

b. Administrative Captain

c. Watch Commander

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000029

**Exhibit 1**
**Page 19 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Organizational Structure and Responsibility*

### 200.4.2   UNITY OF COMMAND
The principles of unity of command ensure efficient supervision and control within the Department. Generally, each employee shall be accountable to one supervisor at any time for a given assignment or responsibility. Except where specifically delegated authority may exist by policy or special assignment (e.g. K-9, SWAT), any supervisor may temporarily direct any subordinate if an operational necessity exists.

### 200.4.3   ORDERS
Members shall respond to and make a good faith and reasonable effort to comply with the lawful order of superior officers and other proper authority.

### 200.4.4   UNLAWFUL AND CONFLICTING ORDERS
No member is required to obey any order which outwardly appears to be in direct conflict with any federal or state law, or local ordinance. If the legality of an order is in doubt the affected member shall ask the issuing supervisor to clarify the order or confer with a higher authority. Responsibility for refusal to obey rests with the member, who shall subsequently be required to justify the refusal.

Unless it would jeopardize the safety of any individual, members who are presented with an order that is in conflict with a previous order, department policy, or other directive, shall respectfully inform the issuing supervisor of the conflict. The issuing supervisor is responsible for either resolving the conflict or clarifying that the order is intended to countermand the previous order or directive, in which case the member is obliged to comply. Members who are compelled to follow a conflicting order after having given the issuing supervisor the opportunity to correct the conflict are not held accountable for disobedience of the order or directive that was initially issued.

The person issuing the countermanded order shall be notified in writing by the person issuing the second command of the action taken and the reason therefore.

## 200.5  ACCOUNTABILITY
Supervisors and managers shall be accountable for the performance of the members under their immediate control.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000030

**Exhibit 1**
**Page 20 of 550**



**Policy**
**204**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Special Orders

### 204.1   PURPOSE AND SCOPE
Special Orders establish an interdepartmental communication that may be used by the Chief of Police to make immediate changes to policy and procedure. Special Orders will immediately modify or change and supersede sections of this manual to which they pertain.

#### 204.1.1   SPECIAL ORDER PROTOCOL
Special Orders will be incorporated into the manual as required upon approval of Staff. Special Orders will modify existing policies or create a new policy as appropriate. A Special Order will be rescinded once it has been incorporated into the manual.

All existing Special Orders have now been incorporated in the updated Policy Manual as of the below revision date.

Special Orders issued after publication of the manual shall be numbered consecutively starting with the last two digits of the year. For example, 08-01 signifies the first Special Order for the year 2008.

### 204.2   RESPONSIBILITIES

#### 204.2.1   STAFF
The staff shall review and approve revisions of the Policy Manual, which will incorporate changes originally made by a Special Order.

#### 204.2.2   CHIEF OF POLICE
The Chief of Police or the authorized designee shall issue all Special Orders.

### 204.3   ACCEPTANCE OF SPECIAL ORDERS
All employees are required to read and obtain any necessary clarification of all Special Orders. All employees are required to acknowledge in writing the receipt and review of any new Special Order. Signed acknowledgement forms and/or e-mail receipts showing an employee's acknowledgement will be maintained by the Captain of Administration.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000031

**Exhibit 1**
**Page 21 of 550**



**Policy**
**206**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Emergency Operations Plan

### 206.1  PURPOSE AND SCOPE
The University has prepared an Emergency Operations Plan Manual for use by all employees in the event of a major disaster or other emergency event. The manual provides for a strategic response by all employees and assigns specific responsibilities in the event the plan is activated (ORS 401.305).

All employees shall receive annual refresher training on the details of the University of Oregon Emergency Operations Plan.

### 206.2  ACTIVATING THE EMERGENCY PLAN
The Emergency Operations Plan can be activated in a number of ways. For this department, the Chief of Police or the highest ranking official on duty may activate the Emergency Operations Plan in response to a major emergency.

### 206.3  BUILDING EVACUATION PLAN
In the event of a disaster or emergency which requires evacuation of the police building, all employees shall follow implemented evacuation plans and posted exit routes (OAR 437-002-0041). The posted exit routes shall include any special directions for physically impaired employees.

### 206.4  INCLEMENT WEATHER - UNIVERSITY CLOSURE
The University of Oregon Emergency Management Center (UOEMC) is responsible for monitoring weather for potential impacts on University operations, including the decision to close the University due to weather.

UOEMC publishes the weather monitoring protocol which is part of the overall Emergency Plan.

UOPD Executive Coordinators are responsible for informing the UO Weather Group, which is charged with making recommendations for closure or delayed opening. UO-EMC will call the Executive Coordinator for updates in situations where they are monitoring potential severe weather. If a situation arises that was not anticipated, the Executive Coordinator is responsible for notifying UO-EMC via established protocol no later than 0430 hrs., if possible .

UOPD Chief of Police or designee participates as a member of the UO Weather Group.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000032

**Exhibit 1**
**Page 22 of 550**



**Policy**
**212**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Electronic Mail

### 212.1  PURPOSE AND SCOPE
The purpose of this policy is to establish guidelines for the proper use and application of the department's electronic mail (email) system by employees of this department. Email is a communication tool available to department employees to enhance the efficiency in the performance of job duties and is to be used in accordance with generally accepted business practices and current law, such as the Oregon Public Records Law set forth in Oregon Revised Statutes 192.420. Messages transmitted over the email system must only be those that involve University business activities or contain information essential to University employees for the accomplishment of business-related tasks, and/or communication directly related to University business, administration or practices.

### 212.2  EMAIL RIGHT OF PRIVACY
All email messages, including any attachments, that are transmitted over department networks are considered department records and therefore department property. The Department reserves the right to access, audit or disclose, for any lawful reason, any message including any attachment that is transmitted over its email system or that is stored on any department system. Likewise, employees are prohibited from receiving, sending or storing email messages in personal files. The Department reserves the right to access any personal folders to assure compliance with this policy.

The email system is not a confidential system and therefore is not appropriate for confidential communications. If a communication must be confidential, an alternative method to communicate the message should be used. Employees using the department email system shall have no expectation of privacy concerning communications transmitted over the system.

Employees should not use personal accounts to exchange email or other information that is related to the official business of the Department.

### 212.3  PROHIBITED USE OF EMAIL
Sending derogatory, defamatory, obscene, disrespectful, sexually suggestive and harassing, or any other inappropriate messages on the email system is prohibited and may result in discipline.

Email messages addressed to the entire department are only to be used for official business related items that are of particular interest to all users and must be approved by the Chief of Police or a Division Commander. Personal advertisements are not acceptable.

It is a violation of this policy to transmit a message under another user's name. Users are strongly encouraged to log off the network when their computer is unattended. This added security measure would minimize the misuse of an individual's email, name and/or password by others.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000033

**Exhibit 1**
**Page 23 of 550**



**Policy**
**214**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Administrative Communications

### 214.1  PURPOSE AND SCOPE
The purpose of this policy is to provide members with the protocols and forms to be used for internal administrative communications. Administrative communications of this department are governed by the following policies.

### 214.2  DEPARTMENT E-MAIL
Department E-mail may be issued periodically by the Chief of Police or his/her designated representative to announce and document all promotions, transfers, hiring of new personnel, separations, personnel and group commendations, or other changes in status.

### 214.3  CORRESPONDENCE
In order to ensure that the letterhead and name of the Department are not misused, all external correspondence shall be on Department letterhead. Personnel should use Department letterhead only for official business and with approval of their supervisor.

### 214.4  INFORMATIONAL MEMOS
The Chief of Police may issue memoranda to department personnel from time to time for the purpose of disseminating information to the members.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000034

**Exhibit 1**
**Page 24 of 550**



**Policy**
**216**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

---

# Staffing Levels

### 216.1  PURPOSE AND SCOPE
The purpose of this policy is to ensure that proper staffing is available for all shifts. The Department intends to balance the employee's needs against the need to have flexibility and discretion in using personnel to meet operational needs. While balance is desirable, the paramount concern is the Department's need to meet operational requirements.

### 216.2  MINIMUM STAFFING LEVELS

Minimum staffing levels should result in the scheduling of at least two officers, and two dispatchers on duty whenever possible. Only supervisors may approve time-off requests that bring the staffing below this level. Unforeseen circumstances, such as employees who call in sick, will generally result in staffing the watch with hold-over or call-in.

Supervisors will generally not be included for computing staffing levels.

Watch Commanders will ensure that at least one field supervisor is deployed during each watch.

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000035

**Exhibit 1**
**Page 25 of 550**



**Policy**
**221**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Training

### 221.1  SECTION TITLE

### 221.2  PURPOSE AND SCOPE
It is the policy of UOPD to administer a training program that will provide for the professional growth and continued development of its personnel. By doing so, UOPD will ensure its personnel possess the knowledge and skills necessary to provide a professional level of service that meets the needs of the community.

### 221.3  PHILOSOPHY
The Department seeks to provide ongoing training and encourages all personnel to participate in advanced training and formal education on a continual basis. Training is provided within the confines of funding, requirements of a given assignment, staffing levels and legal mandates. Whenever possible, the Department will use courses certified by the Oregon Department of Public Safety Standards and Training (DPSST).

### 221.4  OBJECTIVES
The objectives of the Training Program are to:

    (a)   Enhance the level of law enforcement service to the public.

    (b)   Increase the technical expertise and overall effectiveness of our personnel.

    (c)   Provide for continued professional development of department personnel.

    (d)   Enhance the safety of officers and the community.

### 221.5  TRAINING PLAN
A training plan will be developed and maintained by the Captain of Administration. It is the responsibility of the Captain of Administration to maintain, review, and update the training plan on an annual basis. The plan will address the following areas:

- Legislative changes and changes in case law
- State-mandated training
- Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act
- High-liability issues training
- Training on UOPD policies and procedures

### 221.6  TRAINING NEEDS ASSESSMENT
The Administrative Division will conduct an annual training-needs assessment of the department. The needs assessment will be reviewed by staff. Upon approval by the staff, the needs assessment will form the basis for the training plan for the fiscal year.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000036

**Exhibit 1**
**Page 26 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Training*

### 221.7   TRAINING PROCEDURES

(a)   All employees assigned to attend training shall attend unless previously excused by their immediate supervisor. Excused absences from mandatory training should be limited to:

1.   Court appearances.

2.   First choice vacation.

3.   Sick leave.

4.   Physical limitations preventing the employee's participation.

5.   Emergency situations.

(b)   When an employee is unable to attend mandatory training, that employee shall:

1.   Notify his/her supervisor as soon as possible, but no later than at least one hour prior to the start of training.

2.   Document his/her absence in a memorandum to his/her supervisor.

3.   Make arrangements through his/her supervisor and the Captain of Administration to attend an alternate date.

### 221.8   TRAINING COSTS

It is the responsibility of the Captain of Administration to determine when the University of Oregon Police Department may be entitled for training reimbursements when an officer has completed any portion of basic training in the last 36 months and voluntarily leaves employment and is subsequently employed by a different law enforcement agency in a position that requires the same training. Reimbursement requests shall be requested as provided in ORS 181A.620.

### 221.9   DAILY TRAINING BULLETINS

The Lexipol Daily Training Bulletins (DTBs) are contained in a Web-accessed system that provides training on the University of Oregon Police Department policy manual and other important topics. Generally, one training bulletin is available for each day of the month. However, the number of DTBs may be adjusted by the Watch Commander.

Personnel assigned to participate in DTBs shall only use login credentials assigned to them by the Watch Commander. Personnel should not share their password with others and should frequently change their password to protect the security of the system. After each session, employees should log off the system to prevent unauthorized access. The content of the DTBs is copyrighted material and shall not be shared with others outside of this agency.

Employees who are assigned to participate in the DTB program should complete each DTB at the beginning of their shift or as otherwise directed by their supervisor. Employees should not allow uncompleted DTBs to build up over time. Personnel may be required to complete DTBs missed

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000037

**Exhibit 1**
**Page 27 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Training*

during extended absences (e.g., vacation, medical leave) upon returning to duty. Although the DTB system can be accessed from any internet active computer, employees shall only take DTBs as part of their on-duty assignment unless directed otherwise by a supervisor.

Supervisors will be responsible for monitoring the progress of personnel under their command to ensure compliance with this policy.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000038

**Exhibit 1**
**Page 28 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Chapter 3 - General Operations

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000039

**Exhibit 1**
**Page 29 of 550**



**Policy**
**300**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Use of Force

### 300.1  PURPOSE AND SCOPE
This policy provides guidelines on the reasonable use of force. While there is no way to specify the exact amount or type of reasonable force to be applied in any situation, every member of this department is expected to use these guidelines to make such decisions in a professional, impartial and reasonable manner.

### 300.1.1  DEFINITIONS
Definitions related to this policy include:

**Deadly force** - Force reasonably anticipated and intended to create a substantial likelihood of causing death or serious physical injury.

**Force** - The application of physical techniques or tactics, chemical agents, or weapons to another person. It is not a use of force when a person allows him/herself to be searched, escorted, handcuffed or restrained, unless the application is reportable to a supervisor under section 300.5.1.

### 300.1.2  USE OF FORCE
Except as provided in ORS 161.239 (Use of deadly physical force in making an arrest or in preventing an escape), a peace officer is justified in using physical force upon another person only when and to the extent that the peace officer reasonably believes it necessary:

(1)To make an arrest or to prevent the escape from custody of an arrested person unless the peace officer knows that the arrest is unlawful; or

(2)For self-defense or to defend a third person from what the peace officer reasonably believes to be the use or imminent use of physical force while making or attempting to make an arrest or while preventing or attempting to prevent an escape.

### 300.2  POLICY
The use of force by law enforcement personnel is a matter of critical concern, both to the public and to the law enforcement community. Officers are involved on a daily basis in numerous and varied interactions and, when warranted, may use reasonable force consistent with UOPD Policy 300.1.2

Officers must have an understanding of, and true appreciation for, their authority and limitations. It is our desire to always try to work collaboratively with members of the university community to ensure a safe and secure environment. This is especially true with respect to overcoming resistance while engaged in the performance of law enforcement duties.

The Department recognizes and respects the value of all human life and dignity without prejudice to anyone. Vesting officers with the authority to use reasonable force and to protect the public welfare requires monitoring, evaluation and a careful balancing of all interests.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000040

**Exhibit 1**
**Page 30 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Use of Force*

---

300.2.1  DUTY TO INTERCEDE
Any officer present and observing another officer using force that is clearly beyond that which is objectively reasonable under the circumstances shall, when in a position to do so, intercede to prevent the use of unreasonable force. An officer who observes another employee use force that exceeds the degree of force permitted by law should promptly report these observations to a supervisor.

**300.3  USE OF FORCE**
Officers shall use only that amount of force for the duration which reasonably appears necessary given the facts and circumstances perceived by the officer at the time of the event to accomplish a legitimate law enforcement purpose.

The reasonableness of force will be judged from the perspective of a reasonable officer on the scene at the time of the incident. Any evaluation of reasonableness must allow for the fact that officers are often forced to make split-second decisions about the amount of force that reasonably appears necessary in a particular situation, with limited information and in circumstances that are tense, uncertain and rapidly evolving.

Given that no policy can realistically predict every possible situation an officer might encounter, officers are entrusted to use well-reasoned discretion in determining the appropriate use of force in each incident.

It is also recognized that circumstances may arise in which officers reasonably believe that it would be impractical or ineffective to use any of the tools, weapons or methods provided by the Department. Officers may find it more effective or reasonable to improvise their response to rapidly unfolding conditions that they are confronting. In such circumstances, the use of any improvised device or method must nonetheless be reasonable and utilized only to the degree that reasonably appears necessary to accomplish a legitimate law enforcement purpose.

While the ultimate objective of every law enforcement encounter is to avoid or minimize injury, nothing in this policy requires an officer to retreat or be exposed to possible physical injury before applying reasonable force.

300.3.1  FACTORS USED TO DETERMINE THE REASONABLENESS OF FORCE
When determining whether to apply force and evaluating whether an officer has used reasonable force, a number of factors should be taken into consideration, as time and circumstances permit. These factors include, but are not limited to:

    (a)    Immediacy and severity of the threat to officers or others.

    (b)    The conduct of the individual being confronted, as reasonably perceived by the officer at the time.

    (c)    Officer/subject factors (age, size, relative strength, skill level, injuries sustained, level of exhaustion or fatigue, the number of officers available vs. subjects).

    (d)    The effects of drugs or alcohol.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000041

**Exhibit 1**
**Page 31 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Use of Force*

    (e)    Subject's mental state or capacity.

    (f)    Proximity of weapons or dangerous improvised devices.

    (g)    The degree to which the subject has been effectively restrained and his/her ability to resist despite being restrained.

    (h)    The availability of other options and their possible effectiveness.

    (i)    Seriousness of the suspected offense or reason for contact with the individual.

    (j)    Training and experience of the officer.

    (k)    Potential for injury to officers, suspects and others.

    (l)    Whether the person appears to be resisting, attempting to evade arrest by flight or is attacking the officer.

    (m)    The risk and reasonably foreseeable consequences of escape.

    (n)    The apparent need for immediate control of the subject or a prompt resolution of the situation.

    (o)    Whether the conduct of the individual being confronted no longer reasonably appears to pose an imminent threat to the officer or others.

    (p)    Prior contacts with the subject or awareness of any propensity for violence.

    (q)    Any other exigent circumstances.

## 300.3.2  PAIN COMPLIANCE TECHNIQUES
Pain compliance techniques may be effective in controlling a physically or actively resisting individual. Officers may only apply those pain compliance techniques for which they have successfully completed department-approved training. Officers utilizing any pain compliance technique should consider:

    (a)    The degree to which the application of the technique may be controlled given the level of resistance.

    (b)    Whether the person can comply with the direction or orders of the officer.

    (c)    Whether the person has been given sufficient opportunity to comply.

The application of any pain compliance technique shall be discontinued once the officer determines that compliance has been achieved.

## 300.3.3  CAROTID CONTROL HOLD
UOPD does not approve the use of the Carotid Control Hold.

## 300.4  DEADLY FORCE APPLICATIONS
Use of deadly force is justified in the following circumstances:

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000042

**Exhibit 1**
**Page 32 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Use of Force*

(a) An officer may use deadly force to protect him/herself or others from what he/she reasonably believes would be an imminent threat of death or serious bodily injury.

(b) An officer may use deadly force to stop a fleeing subject when the officer has probable cause to believe that the person has committed, or intends to commit, a felony involving the infliction or threatened infliction of serious bodily injury or death, and the officer reasonably believes that there is an imminent risk of serious bodily injury or death to any other person if the subject is not immediately apprehended. Under such circumstances, a verbal warning should precede the use of deadly force, where feasible.

Imminent does not mean immediate or instantaneous. An imminent danger may exist even if the suspect is not at that very moment pointing a weapon at someone. For example, an imminent danger may exist if an officer reasonably believes any of the following:

1. The person has a weapon or is attempting to access one and it is reasonable to believe the person intends to use it against the officer or another.

2. The person is capable of causing serious bodily injury or death without a weapon and it is reasonable to believe the person intends to do so.

## 300.4.1  SHOOTING AT OR FROM MOVING VEHICLES
Shots fired at or from a moving vehicle are rarely effective. If possible, officers should move out of the path of an approaching vehicle instead of discharging their firearm at the vehicle or any of its occupants. An officer should only discharge a firearm at a moving vehicle or its occupants when the officer reasonably believes there are no other reasonable means available to avert the threat of the vehicle, or if deadly force other than the vehicle is directed at the officer or others. Officers should keep in mind that shooting the driver of a moving vehicle may relegate the vehicle to be moving in an uncontrolled fashion and becoming more of a danger.

Officers should not shoot at any part of a vehicle in an attempt to disable the vehicle.

## 300.5  REPORTING THE USE OF FORCE
Any use of force by a member of this department shall be documented promptly, completely and accurately in an appropriate report, depending on the nature of the incident. The officer should articulate the factors perceived and why he/she believed the use of force was reasonable under the circumstances.

To collect data for purposes of training, resource allocation, analysis and related purposes, the Department also requires the completion of additional report forms, as specified in department policy, procedure or law.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000043

**Exhibit 1**
**Page 33 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Use of Force*

300.5.1  NOTIFICATION TO SUPERVISORS
Supervisory notification shall be made as soon as practicable following the application of force in any of the following circumstances:

    (a)    The application caused an injury.

    (b)    The application would lead a reasonable officer to conclude that the individual may have experienced more than momentary discomfort.

    (c)    The individual subjected to the force complained of injury or continuing pain.

    (d)    The individual indicates intent to pursue litigation.

    (e)    Any application of a restraint device other than handcuffs, shackles or belly chains.

    (f)    Any application of a TASER or control device.

    (g)    The individual subjected to the force was rendered unconscious.

    (h)    An individual was struck or kicked.

    (i)    An individual alleges any of the above has occurred.

## 300.6  MEDICAL CONSIDERATION
Prior to booking or release, medical assistance shall be obtained for any person who exhibits signs of physical distress, who has sustained visible injury, expresses a complaint of injury or continuing pain, or who was rendered unconscious. Any individual exhibiting signs of physical distress after an encounter should be continuously monitored until he/she can be medically assessed.

Based upon the officer's initial assessment of the nature and extent of the subject's injuries, medical assistance may consist of examination by fire personnel, paramedics, hospital staff or medical staff at the jail. If any such individual refuses medical attention, such a refusal shall be fully documented in related reports and, whenever practicable, should be witnessed by another officer and/or medical personnel. If a recording is made of the contact or an interview with the individual, any refusal should be included in the recording, if possible.

The on-scene supervisor or, if the on-scene supervisor is not available, the primary handling officer shall ensure that any person providing medical care or receiving custody of a person following any use of force is informed that the person was subjected to force. This notification shall include a description of the force used and any other circumstances the officer reasonably believes would be potential safety or medical risks to the subject (e.g., prolonged struggle, extreme agitation, impaired respiration).

Persons who exhibit extreme agitation, violent irrational behavior accompanied by profuse sweating, extraordinary strength beyond their physical characteristics and imperviousness to pain (sometimes called "excited delirium"), or who require a protracted physical encounter with multiple officers to be brought under control, may be at an increased risk of sudden death. Calls involving these persons should be considered medical emergencies. Officers who reasonably suspect a

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000044

**Exhibit 1**
**Page 34 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Use of Force*

medical emergency should request medical assistance as soon as practicable and have medical personnel stage away if appropriate.

If any individual refuses medical attention, such a refusal shall be fully documented in related reports and a supervisor should be notified. Whenever practicable, the refusal should be witnessed by another officer and/or medical personnel. If an audio recording is made of the contact or interview with the individual, any refusal should be included, if possible.

## 300.7   MEDICAL FACTORS CONTRIBUTING TO USE OF FORCE
It is important for officers to bear in mind that there are many reasons a suspect may be resisting arrest or may be unresponsive. The person in question may not be capable of understanding the gravity of the situation. The person's reasoning ability may be dramatically affected by a number of factors, including but not limited to a medical condition, mental impairment, developmental disability, physical limitation, language, drug interaction, or emotional crisis. Therefore, it is possible that a person's mental state may prevent a proper understanding of an officer's commands or actions. In such circumstances, the person's lack of compliance may not be a deliberate attempt to resist the officer. An officer's awareness of these possibilities, when time and circumstances reasonably permit, should then be balanced against the facts of the incident facing the officer when deciding which tactical options are the most appropriate to bring the situation to a safe resolution.

## 300.8   WATCH COMMANDER RESPONSIBILITY
When a supervisor is able to respond to an incident in which there has been a reported application of force, the supervisor is expected to:

(a)   Obtain the basic facts from the involved officers. Absent an allegation of misconduct or excessive force, this will be considered a routine contact in the normal course of duties.

(b)   Ensure that any injured parties are examined and treated.

(c)   When possible, separately obtain a recorded interview with the subject upon whom force was applied. If this interview is conducted without the person having voluntarily waived his/her *Miranda* rights, the following shall apply:

   1.   The content of the interview should not be summarized or included in any related criminal charges.

   2.   The fact that a recorded interview was conducted should be documented in a property or other report.

   3.   The recording of the interview should be distinctly marked for retention until all potential for civil litigation has expired.

(d)   Once any initial medical assessment has been completed or first aid has been rendered, ensure that photographs have been taken of any areas involving visible

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000045

**Exhibit 1**
**Page 35 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Use of Force*

injury or complaint of pain, as well as overall photographs of uninjured areas. These photographs should be retained until all potential for civil litigation has expired.

(e)    Identify any witnesses not already included in related reports.

(f)    Review and approve all related reports.

(g)    Determine if there is any indication that the subject may pursue civil litigation.

    1.    If there is an indication of potential civil litigation, the supervisor should complete and route a notification of a potential claim through the appropriate channels.

(h)    Evaluate the circumstances surrounding the incident and initiate an administrative investigation if there is a question of policy non-compliance or if for any reason further investigation may be appropriate.

In the event that a supervisor is unable to respond to the scene of an incident involving the reported application of force, the supervisor is still expected to complete as many of the above items as circumstances permit.

## 300.8.1    DIVISION COMMANDER RESPONSIBILITY
The Division Commander shall review each use of force by any personnel within his/her command to ensure compliance with this policy and to address any training issues. All use of force reports will be forwarded via the chain of command to the Professional Standards Unit.

## 300.9    TRAINING
Officers will receive periodic training on this policy and demonstrate their knowledge and understanding.

## 300.10    USE OF FORCE ANALYSIS
At least annually, the Professional Standards Unit should prepare an analysis report on use of force incidents. The report should be submitted to the Chief of Police. The report should not contain the names of officers, suspects or case numbers, and should include:

(a)    The identification of any trends in the use of force by members.

(b)    Identify the type of force used, was it within policy, and was the force effective.

(c)    Compare the individual demograhpics of the subject the force was used upon versus the demographics of the community.

(d)    Types of calls for service preceeding the use of force.

(e)    Training needs recommendations.

(f)    Equipment needs recommendations.

(g)    Policy revision recommendations.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000046

**Exhibit 1**
**Page 36 of 550**



**Policy**
**302**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Use of Force Review Boards

### 302.1   PURPOSE AND SCOPE
This policy establishes a process for the University of Oregon Police Department to review the use of force by its employees.

This review process shall be in addition to any other review or investigation that may be conducted by any outside or multi-agency entity having jurisdiction over the investigation or evaluation of the use of deadly force.

### 302.2   POLICY
The University of Oregon Police Department will objectively evaluate the use of force by its members to ensure that their authority is used lawfully, appropriately and is consistent with training and policy.

### 302.3   REMOVAL FROM LINE DUTY ASSIGNMENT
Generally, whenever an employee's actions or use of force in an official capacity, or while using department equipment, results in death or serious physical injury to another, that employee will be placed in a temporary administrative assignment pending an administrative review. The Chief of Police may exercise discretion and choose not to place an employee in an administrative assignment or leave in any case unless mandated by law.

### 302.4   REVIEW BOARD
The Use of Force Review Board will be convened when the use of force by a member results in serious physical injury or death to another.

The Use of Force Review Board will also investigate and review the circumstances surrounding every discharge of a department owned firearm, whether the employee was on- or off-duty, excluding training.

The Chief of Police may request the Use of Force Review Board to investigate the circumstances surrounding any use of force incident.

The Chief will convene the Use of Force Review Board as necessary. The Administrative Captain will ensure that all relevant reports, documents and materials are available for consideration and review by the board.

#### 302.4.1   COMPOSITION OF THE BOARD
The Chief will generally select five

- Commanding officer in the involved member's chain of command

- Captain or Administrative Sergeant from Professional Standards and Training

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Use of Force Review Boards*

- Representative of each division

- A peer officer

- A sworn peace officer of similar rank from an outside law enforcement agency

Department instructor(s) for the type of weapon, device or technique used and other officers may participate in the board deliberations as resources for the board based upon their expertise or assignment. However, they will not be voting members.

The senior ranking command representative who is not in the same division as the involved employee will serve as chairperson.

### 302.4.2  RESPONSIBILITIES OF THE BOARD
The Use of Force Review Board is empowered to conduct an administrative review and inquiry into the circumstances of an incident.

The board members may request further investigation, request reports be submitted for the board's review, call persons to present information and request the involved employee to appear. The involved employee will be notified of the meeting of the board and may choose to have a representative through all phases of the review process.

The board does not have the authority to recommend discipline.

The Chief of Police will determine whether the board should delay its review until after completion of any criminal investigation, review by any prosecutorial body, the decision regarding criminal charges or any other action. The board should be provided all relevant available material from these proceedings for its consideration.

The review shall be based upon those facts which were reasonably believed or known by the officer at the time of the incident, applying any legal requirements, department policies, procedures and approved training to those facts. Facts later discovered but unknown to the officer at the time shall neither justify nor call into question an officer's decision regarding the use of force.

Any questioning of the involved employee conducted by the board will be in accordance with the department's disciplinary procedures, the Personnel Complaints Policy, the applicable collective bargaining agreement, if any, and any applicable state or federal law.

The board shall make one of the following recommended findings:

(a)    The employee's actions were within department policy and procedure.

(b)    The employee's actions were in violation of department policy and procedure.

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000048

**Exhibit 1**
**Page 38 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Use of Force Review Boards*

A recommended finding requires a majority vote of the board. The board may also recommend additional investigations or reviews, such as disciplinary investigations, training reviews to consider whether training should be developed or revised, and policy reviews, as may be appropriate. Board members may include a minority report if there are substantive issues they feel need to be considered by the Chief of Police. The board chairperson will prepare and submit the written recommendation to the Chief of Police.

The Chief of Police shall review the recommendation, make a final determination as to whether the employee's actions were within policy and procedure and will determine whether any additional actions, investigations or reviews are appropriate. The Chief of Police's final findings will be forwarded to the involved employee's Captain for review and appropriate action. If the Chief of Police concludes that discipline should be considered, a disciplinary process will be initiated.

At the conclusion of any additional reviews, copies of all relevant reports and information will be filed with the Captian Professional Standards and Training.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

# Handcuffing and Restraints

## 306.1 PURPOSE AND SCOPE

This policy provides guidelines for the use of handcuffs and other restraints during detentions and arrests.

## 306.2 POLICY

The University of Oregon Police Department authorizes the use of restraint devices in accordance with this policy, the Use of Force Policy and department training. Restraint devices shall not be used to punish, to display authority or as a show of force.

## 306.3 USE OF RESTRAINTS

Only members who have successfully completed University of Oregon Police Department-approved training on the use of restraint devices described in this policy are authorized to use these devices.

When deciding whether to use any restraint, officers should carefully balance officer safety concerns with factors that include, but are not limited to:

- The circumstances or crime leading to the arrest.
- The demeanor and behavior of the arrested person.
- The age and health of the person.
- Whether the person is known to be pregnant.
- Whether the person has a hearing or speaking disability. In such cases, consideration should be given, safety permitting, to handcuffing to the front in order to allow the person to sign or write notes.
- Whether the person has any other apparent disability.

Normally, arrestees will be transported in the back seat of a patrol vehicle that is equipped with a cage and their hands cuffed behind their back.

### 306.3.1 RESTRAINT OF DETAINEES

Situations may arise where it may be reasonable to restrain an individual who may, after brief investigation, be released without arrest. Unless arrested, the use of restraints on detainees should continue only for as long as is reasonably necessary to assure the safety of officers and others. When deciding whether to remove restraints from a detainee, officers should continuously weigh the safety interests at hand against the continuing intrusion upon the detainee.

### 306.3.2 RESTRAINT OF PREGNANT PERSONS

Persons who are known to be pregnant should be restrained in the least restrictive manner that is effective for officer safety and in no event shall these persons be restrained by the use of leg irons, waist chains or handcuffs behind the body.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Handcuffing and Restraints*

No person who is in labor shall be handcuffed or restrained except in extraordinary circumstances and only when a supervisor makes an individualized determination that such restraints are necessary to prevent escape or injury.

### 306.3.3  RESTRAINT OF JUVENILES
A juvenile under 14 years of age should not be restrained unless he/she is suspected of a dangerous felony or when the officer has a reasonable suspicion that the juvenile may resist, attempt escape, injure him/herself, injure the officer or damage property.

### 306.3.4  NOTIFICATIONS
Whenever an officer transports a person with the use of restraints other than handcuffs, the officer shall inform the jail staff upon arrival at the jail that restraints were used. This notification should include information regarding any other circumstances the officer reasonably believes would be potential safety concerns or medical risks to the subject (e.g., prolonged struggle, extreme agitation, impaired respiration) that may have occurred prior to, or during transportation to the jail.

### 306.4  APPLICATION OF HANDCUFFS OR PLASTIC CUFFS
Handcuffs, including temporary nylon or plastic cuffs, may be used only to restrain a person's hands to ensure officer safety.

Although recommended for most arrest situations, handcuffing is discretionary and not an absolute requirement of the Department. Officers should consider handcuffing any person they reasonably believe warrants that degree of restraint. However, officers should not conclude that in order to avoid risk every person should be handcuffed, regardless of the circumstances.

In most situations handcuffs should be applied with the hands behind the person's back. When feasible, handcuffs should be double-locked to prevent tightening, which may cause undue discomfort or injury to the hands or wrists.

In situations where one pair of handcuffs does not appear sufficient to restrain the individual or may cause unreasonable discomfort due to the person's size, officers should consider alternatives, such as using an additional set of handcuffs or multiple plastic cuffs.

Handcuffs should be removed as soon as it is reasonable or after the person has been searched and is safely confined within a detention facility.

### 306.5  APPLICATION OF SPIT HOODS/MASKS/SOCKS
Spit hoods/masks/socks are temporary protective devices designed to prevent the wearer from biting and/or transferring or transmitting fluids (saliva and mucous) to others.

Spit hoods may be placed upon persons in custody when the officer reasonably believes the person will bite or spit, either on a person or in an inappropriate place. They are generally used during application of a physical restraint, while the person is restrained, or during or after transport.

Officers utilizing spit hoods should ensure that the spit hood is fastened properly to allow for adequate ventilation and that the restrained person can breathe normally. Officers should provide

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000051

**Exhibit 1**
**Page 41 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Handcuffing and Restraints*

assistance during the movement of restrained individuals due to the potential for impaired or distorted vision on the part of the individual. Officers should avoid comingling individuals wearing spit hoods with other detainees.

Spit hoods should not be used in situations where the restrained person is bleeding profusely from the area around the mouth or nose, or if there are indications that the person has a medical condition, such as difficulty breathing or vomiting. In such cases, prompt medical care should be obtained. If the person vomits while wearing a spit hood, the spit hood should be promptly removed and discarded. Persons who have been sprayed with oleoresin capsicum (OC) spray should be thoroughly decontaminated including hair, head and clothing prior to application of a spit hood.

Those who have been placed in a spit hood should be continually monitored and shall not be left unattended until the spit hood is removed. Spit hoods shall be discarded after each use.

## 306.6   APPLICATION OF AUXILIARY RESTRAINT DEVICES
Auxiliary restraint devices include transport belts, waist or belly chains, transportation chains, leg irons and other similar devices. Auxiliary restraint devices are intended for use during long-term restraint or transportation. They provide additional security and safety without impeding breathing, while permitting adequate movement, comfort and mobility.

Only department-authorized devices may be used. Any person in auxiliary restraints should be monitored as reasonably appears necessary.

## 306.7   APPLICATION OF LEG RESTRAINT DEVICES
Leg restraints may be used to restrain the legs of a violent or potentially violent person when it is reasonable to do so during the course of detention, arrest or transportation. Only restraint devices approved by the department shall be used.

In determining whether to use the leg restraint, officers should consider:

    (a)   Whether the officer or others could be exposed to injury due to the assaultive or resistant behavior of a suspect.

    (b)   Whether it is reasonably necessary to protect the suspect from his/her own actions (e.g., hitting his/her head against the interior of the patrol unit, running away from the arresting officer while handcuffed, kicking at objects or officers).

    (c)   Whether it is reasonably necessary to avoid damage to property (e.g., kicking at windows of the patrol unit).

### 306.7.1   GUIDELINES FOR USE OF LEG RESTRAINTS
When applying leg restraints the following guidelines should be followed:

    (a)   If practicable, officers should notify a supervisor of the intent to apply the leg restraint device. In all cases, a supervisor shall be notified as soon as practicable after the application of the leg restraint device.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000052

**Exhibit 1**
**Page 42 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Handcuffing and Restraints*

    (b)    Once applied, absent a medical or other emergency, restraints should remain in place until the officer arrives at the jail or other facility or the person no longer reasonably appears to pose a threat.

    (c)    Once secured, the person should be placed in a seated or upright position, secured with a seat belt, and shall not be placed on his/her stomach for an extended period, as this could reduce the person's ability to breathe.

    (d)    The restrained person should be continually monitored by an officer while in the leg restraint. The officer should ensure that the person does not roll onto and remain on his/her stomach.

    (e)    The officer should look for signs of labored breathing and take appropriate steps to relieve and minimize any obvious factors contributing to this condition.

    (f)    When transported by ambulance/paramedic unit, the restrained person should be accompanied by an officer when requested by medical personnel. The transporting officer should describe to medical personnel any unusual behaviors or other circumstances the officer reasonably believes would be potential safety or medical risks to the subject (e.g., prolonged struggle, extreme agitation, impaired respiration).

## 306.8  REQUIRED DOCUMENTATION
If an individual is restrained and released without an arrest, the officer shall document the details of the detention and the need for handcuffs or other restraints.

If an individual is arrested, the use of restraints other than handcuffs shall be documented in the related report. The officer should include, as appropriate:

    (a)    The amount of time the suspect was restrained.

    (b)    How the suspect was transported and the position of the suspect.

    (c)    Observations of the suspect's behavior and any signs of physiological problems.

    (d)    Any known or suspected drug use or other medical problems.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department



**Policy**
**308**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Control Devices and Techniques

### 308.1  PURPOSE AND SCOPE
This policy provides guidelines for the use and maintenance of control devices that are described in this policy.

### 308.2  POLICY
In order to control subjects who are violent or who demonstrate the intent to be violent, the University of Oregon Police Department authorizes officers to use control devices in accordance with the guidelines in this policy and the Use of Force Policy.

Separate policy may be developed for specific devices or techniques.

### 308.3  ISSUING, CARRYING AND USING CONTROL DEVICES
Control devices described in this policy may be carried and used by members of this department only if the device has been issued by the Department or approved by the Chief of Police or the authorized designee.

Only officers who have successfully completed department-approved training in the use of any control device are authorized to carry and use the device.

Control devices may be used when a decision has been made to control, restrain or arrest a subject who is violent or who demonstrates the intent to be violent, and the use of the device appears reasonable under the circumstances. When reasonable, a verbal warning and opportunity to comply should precede the use of these devices.

When using control devices, officers should carefully consider potential impact areas in order to minimize injuries and unintentional targets.

### 308.4  RESPONSIBILITIES

#### 308.4.1  WATCH COMMANDER RESPONSIBILITIES
The Watch Commander may authorize the use of a control device by selected personnel or members of specialized units who have successfully completed the required training.

#### 308.4.2  RANGEMASTER RESPONSIBILITIES
The Rangemaster or Quartermaster shall control the inventory and issuance of all control devices and shall ensure that all damaged, inoperative, outdated or expended control devices or munitions are properly disposed of, repaired or replaced.

Every control device will be periodically inspected by the Rangemaster, Quartermaster or the designated instructor for a particular control device. The inspection shall be documented.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000054

**Exhibit 1**
**Page 44 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Control Devices and Techniques*

308.4.3   USER RESPONSIBILITIES
All normal maintenance, charging or cleaning shall remain the responsibility of personnel using the various devices.

Any damaged, inoperative, outdated or expended control devices or munitions, along with documentation explaining the cause of the damage, shall be returned to the Rangemaster or Quartermaster for disposition. Written documentation shall also be prepared and forwarded through the chain of command, when appropriate, explaining the cause of damage.

**308.5   BATON GUIDELINES**
The need to immediately control a suspect must be weighed against the risk of causing serious injury. The head, neck, throat, spine, heart, kidneys and groin should not be intentionally targeted except when the officer reasonably believes the suspect poses an imminent threat of serious bodily injury or death to the officer or others.

When carrying a baton, uniformed personnel shall carry the baton in its authorized holder on the equipment belt. Plainclothes and non-field personnel may carry the baton as authorized and in accordance with the needs of their assignment or at the direction of their supervisor.

**308.6   OLEORESIN CAPSICUM (OC) GUIDELINES**

308.6.1   OC SPRAY
Uniformed personnel carrying OC spray shall carry the device in its holster on the equipment belt. Plainclothes and non-field personnel may carry OC spray as authorized, in accordance with the needs of their assignment or at the direction of their supervisor.

308.6.3   TREATMENT FOR OC SPRAY EXPOSURE
Persons who have been sprayed with or otherwise affected by the use of OC should be promptly provided with clean water to cleanse the affected areas. Those persons who complain of further severe effects shall be examined by appropriate medical personnel.

**308.7   POST-APPLICATION NOTICE**
Whenever chemical irritants or agents have been introduced into a residence, building interior, vehicle or other enclosed area, officers should provide the owners or available occupants with notice of the possible presence of residue that could result in irritation or injury if the area is not properly cleaned. In the situation where University property is affected, EH&S shall be notified and will coordinate the cleanup. If private property is involved, such notice should include advisement that clean up will be at the owner's expense. Information regarding the method of notice and the individuals notified should be included in related reports.

As with any damage associated with UOPD actions, if there is property damage in excess of $100, UO Office of Risk Management shall be notified .

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000055

**Exhibit 1**
**Page 45 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Control Devices and Techniques*

### 308.8   TRAINING FOR CONTROL DEVICES
The Captain of Administration shall ensure that all personnel who are authorized to carry a control device have been properly trained to carry the specific control device and are retrained as necessary.

(a)    Proficiency training shall be monitored and documented by a certified, control-device weapons or tactics instructor.

(b)    All training and proficiency for control devices will be documented in the officer's training file.

(c)    Officers who fail to demonstrate proficiency with the control device or knowledge of this agency's Use of Force Policy will be provided remedial training. If an officer cannot demonstrate proficiency with a control device or knowledge of this agency's Use of Force Policy after remedial training, the officer will be restricted from carrying the control device and may be subject to discipline.

### 308.9   REPORTING USE OF CONTROL DEVICES AND TECHNIQUES
Any application of a control device or technique listed in this policy shall be documented in the related incident report and reported pursuant to the Use of Force Policy.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000056

**Exhibit 1**
**Page 46 of 550**



**Policy**
**309**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# TASER Conducted Energy Weapon

### 309.1  PURPOSE AND SCOPE
This policy provides guidelines for the issuance and use of TASER® devices.

### 309.1.1  DEFINITIONS

(a)  AFID (Anti-Felony Identification Device): Small confetti-like ID tags that are ejected every time a Taser cartridge is fired that contain the serial number of the cartridge.

(b)  Discharge: Any release of the Taser's electrical energy by firing it at an animal or human being even if the probes miss the intended target, or by using it in the drive stun mode.

(c)  Drive stun: A secondary function of the Taser designed to stun a subject by making direct contact with the body after the air cartridge has been expended or removed. Drive stun can be used to complete a two-point immediate action or a three-point contact.

(d)  Display: To display or present an un-holstered Taser in a manner intended to inform an individual that the Taser may be discharged against him or her.

(e)  Use: When referring to the Taser, may refer to either display of the Taser, discharge of the Taser, or both.

### 309.2  POLICY
The TASER device is intended to control a violent or potentially violent individual, while minimizing the risk of serious injury. The appropriate use of such a device should result in fewer serious injuries to officers and suspects.

### 309.3  ISSUANCE AND CARRYING TASER DEVICES
Only members who have successfully completed department-approved training may be issued and carry the TASER device.

TASER devices are issued for use during a member's current assignment. Those leaving a particular assignment may be required to return the device to the department's inventory.

Officers shall only use the TASER device and cartridges that have been issued by the Department. Uniformed officers who have been issued the TASER device shall wear the device in an approved holster on their person. Non-uniformed officers may secure the TASER device in the driver's compartment of their vehicle.

Members carrying the TASER device should perform a spark test on the unit prior to every shift.

When carried while in uniform, officers shall carry the TASER device in a holster on the side opposite the duty weapon.

(a)  All TASER devices shall be clearly and distinctly marked to differentiate them from the duty weapon and any other device.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000057

**Exhibit 1**
**Page 47 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## TASER Conducted Energy Weapon

    (b)   Whenever practicable, officers should carry two or more cartridges on their person when carrying the TASER device.

    (c)   Officers shall be responsible for ensuring that their issued TASER device is properly maintained and in good working order.

    (d)   Officers should not hold both a firearm and the TASER device at the same time.

### 309.4  VERBAL AND VISUAL WARNINGS
A verbal warning of the intended use of the TASER device should precede its application, unless it would otherwise endanger the safety of officers or when it is not practicable due to the circumstances. The purpose of the warning is to:

    (a)   Provide the individual with a reasonable opportunity to voluntarily comply.

    (b)   Provide other officers and individuals with a warning that the TASER device may be deployed.

If, after a verbal warning, an individual is unwilling to voluntarily comply with an officer's lawful orders and it appears both reasonable and feasible under the circumstances, the officer may, but is not required to, display the electrical arc (provided that a cartridge has not been loaded into the device), or the laser in a further attempt to gain compliance prior to the application of the TASER device. The aiming laser should never be intentionally directed into the eyes of another as it may permanently impair his/her vision.

The fact that a verbal or other warning was given or the reasons it was not given shall be documented by the officer deploying the TASER device in the related report.

### 309.5  USE OF THE TASER DEVICE
The TASER device has limitations and restrictions requiring consideration before its use. The TASER device should only be used when its operator can safely approach the subject within the operational range of the device. Although the TASER device is generally effective in controlling most individuals, officers should be aware that the device may not achieve the intended results and be prepared with other options.

### 309.5.1  APPLICATION OF THE TASER DEVICE
The TASER device may be used in any of the following circumstances, when the circumstances perceived by the officer at the time indicate that such application is reasonably necessary to control a person:

    (a)   The subject is violent or is actively resisting. Active resistance is a refusal to comply with instructions accompanied by physical action that is intended to injure, thwart a lawful arrest to interfere or overcome an attempt by a officer to lawfully subdue the resisting individual or another person.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000058

**Exhibit 1**
**Page 48 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*TASER Conducted Energy Weapon*

    (b)    The subject has demonstrated, by words or action, an intention to be violent or to actively resist, and reasonably appears to present the potential to harm officers, him/ herself or others.

Mere flight from a pursuing officer, without other known circumstances or factors, is not good cause for the use of the TASER device to apprehend an individual.

## 309.5.2   SPECIAL DEPLOYMENT CONSIDERATIONS
The use of the TASER device on certain individuals should generally be avoided unless the totality of the circumstances indicates that other available options reasonably appear ineffective or would present a greater danger to the officer, the subject or others, and the officer reasonably believes that the need to control the individual outweighs the risk of using the device. This includes:

    (a)    Individuals who are known to be pregnant.

    (b)    Elderly individuals or obvious juveniles.

    (c)    Individuals with obviously low body mass.

    (d)    Individuals who are handcuffed or otherwise restrained.

    (e)    Individuals who have been recently sprayed with a flammable chemical agent or who are otherwise in close proximity to any known combustible vapor or flammable material, including alcohol-based oleoresin capsicum (OC) spray.

    (f)    Individuals whose position or activity may result in collateral injury (e.g., falls from height, operating vehicles).

Because the application of the TASER device in the drive-stun mode (i.e., direct contact without probes) relies primarily on pain compliance, the use of the drive-stun mode generally should be limited to supplementing the probe-mode to complete the circuit, or as a distraction technique to gain separation between officers and the subject, thereby giving officers time and distance to consider other force options or actions.

The TASER device shall not be used to psychologically torment, elicit statements or to punish any individual.

## 309.5.3   TARGETING CONSIDERATIONS
Reasonable efforts should be made to target lower center mass and avoid the head, neck, chest and groin. If the dynamics of a situation or officer safety do not permit the officer to limit the application of the TASER device probes to a precise target area, officers should monitor the condition of the subject if one or more probes strikes the head, neck, chest or groin until the subject is examined by paramedics or other medical personnel.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000059

**Exhibit 1**
**Page 49 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*TASER Conducted Energy Weapon*

### 309.5.4   MULTIPLE APPLICATIONS OF THE TASER DEVICE
Officers should apply the TASER device for only one standard cycle and then evaluate the situation before applying any subsequent cycles. Multiple applications of the TASER device against a single individual are generally not recommended and should be avoided unless the officer reasonably believes that the need to control the individual outweighs the potentially increased risk posed by multiple applications.

If the first application of the TASER device appears to be ineffective in gaining control of an individual, the officer should consider certain factors before additional applications of the TASER device, including:

(a)   Whether the probes are making proper contact.

(b)   Whether the individual has the ability and has been given a reasonable opportunity to comply.

(c)   Whether verbal commands, other options or tactics may be more effective.

Officers should generally not intentionally apply more than one TASER device at a time against a single subject.

### 309.5.5   ACTIONS FOLLOWING DEPLOYMENTS
Officers shall notify a supervisor of all TASER device discharges. AFID Confetti tags should be collected and the expended cartridge, along with both probes and wire, should be submitted into evidence. The cartridge serial number should be noted and documented on the evidence paperwork. The evidence packaging should be marked "Biohazard" if the probes penetrated the subject's skin.

### 309.5.6   DANGEROUS ANIMALS
The TASER device may be deployed against an animal as part of a plan to deal with a potentially dangerous animal, such as a dog, if the animal reasonably appears to pose an imminent threat to human safety and alternative methods are not reasonably available or would likely be ineffective.

### 309.5.7   TASER® CAM™
The TASER CAM (if equipped) is activated any time the safety is in the off position. The safety should be in the safe position unless the officer intends to use the device. Because the TASER CAM memory is limited, the video and audio data should be downloaded frequently and retained as required by the department records retention schedule.

### 309.5.8   OFF-DUTY CONSIDERATIONS
Officers are not authorized to carry department TASER devices while off-duty.

Officers shall ensure that TASER devices are secured while in their homes, vehicles or any other area under their control, in a manner that will keep the device inaccessible to others.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000060

**Exhibit 1**
**Page 50 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*TASER Conducted Energy Weapon*

### 309.6  DOCUMENTATION
Officers shall document all TASER device discharges and drive-stuns in the related arrest/crime report and the TASER device report form. Notification shall also be made to a supervisor in compliance with the Use of Force Policy. Unintentional discharges, pointing the device at a person, laser activation and arcing the device will also be documented on the report form.

309.6.1  TASER DEVICE FORM
Items that shall be included in the TASER device report form are:

(a)    The type and brand of TASER device and cartridge and cartridge serial number.

(b)    Date, time and location of the incident.

(c)    Whether any display, laser or arc deterred a subject and gained compliance.

(d)    The number of TASER device activations, the duration of each cycle, the duration between activations, and (as best as can be determined) the duration that the subject received applications.

(e)    The range at which the TASER device was used.

(f)    The type of mode used (probe or drive-stun).

(g)    Location of any probe impact.

(h)    Location of contact in drive-stun mode.

(i)    Description of where missed probes went.

(j)    Whether medical care was provided to the subject.

(k)    Whether the subject sustained any injuries.

(l)    Whether any officers sustained any injuries.

The Captain of Administration should periodically analyze the report forms to identify trends, including deterrence and effectiveness. The Captain of Administration should also conduct audits of data downloads and reconcile TASER device report forms with recorded activations. TASER device information and statistics, with identifying information removed, should periodically be made available to the public.

309.6.2  REPORTS
The officer should include the following in the arrest/crime report:

(a)    Identification of all personnel firing TASER devices

(b)    Identification of all witnesses

(c)    Medical care provided to the subject

(d)    Observations of the subject's physical and physiological actions

(e)    Any known or suspected drug use, intoxication or other medical problems

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000061

**Exhibit 1**
**Page 51 of 550**

# University of Oregon Police Department
### University of Oregon Police Department Policy Manual

*TASER Conducted Energy Weapon*

**309.7   MEDICAL TREATMENT**

Absent extenuating circumstances, only trained and qualified, personnel should remove TASER device probes from a person's body. Used TASER device probes shall be treated as a sharps biohazard, similar to a used hypodermic needle, and handled appropriately. Universal precautions should be taken. (Officers shall receive training annually on removal of TASER probes as part of use-of-force recertification.)

All persons who have been struck by TASER device probes or who have been subjected to the electric discharge of the device shall be medically assessed prior to booking. Additionally, any such individual who falls under any of the following categories should, as soon as practicable, be examined by qualified medical personnel:

    (a)    The person is suspected of being under the influence of controlled substances and/or alcohol.

    (b)    The person may be pregnant.

    (c)    The person reasonably appears to be in need of medical attention.

    (d)    The TASER device probes are lodged in a sensitive area (e.g., groin, female breast, head, face, neck).

    (e)    The person requests medical treatment.

Persons who exhibit extreme agitation, violent irrational behavior accompanied by profuse sweating, extraordinary strength beyond their physical characteristics, imperviousness to pain (sometimes called "excited delirium"), or who require a protracted physical encounter with multiple officers to be brought under control, may be at an increased risk of sudden death and should be examined by qualified medical personnel as soon as practicable. Any individual exhibiting signs of distress after such an encounter shall be medically cleared prior to booking.

Any individual exhibiting signs of distress or who is exposed to multiple or prolonged applications (i.e., more than 15 seconds) shall be transported to a medical facility for examination or medically evaluated prior to booking. If any individual refuses medical attention, such a refusal should be witnessed by another officer and/or medical personnel and shall be fully documented in related reports. If an audio recording is made of the contact or an interview with the individual, any refusal should be included, if possible.

The transporting officer shall inform any person providing medical care or receiving custody that the individual has been subjected to the application of the TASER device.

It should be recommended to the suspect to check personal medical records an update tetanus immunizations when appropriate to do so.

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000062

**Exhibit 1**
**Page 52 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*TASER Conducted Energy Weapon*

### 309.8   SUPERVISOR RESPONSIBILITIES
When possible, supervisors should respond to calls when they reasonably believe there is a likelihood the TASER device may be used. A supervisor should respond to all incidents where the TASER device was activated.

A supervisor should review each incident where a person has been exposed to an activation of the TASER device. The device's onboard memory should be downloaded through the data port Rangemaster or designee and saved with the related arrest/crime report. Photographs of probe sites should be taken and witnesses interviewed.

### 309.9   TRAINING
Personnel who are authorized to carry the TASER device shall be permitted to do so only after successfully completing the initial department-approved training. Any personnel who have not carried the TASER device as a part of their assignment for a period of six months or more shall be recertified by a department-approved TASER device instructor prior to again carrying or using the device.

Proficiency training for personnel who have been issued TASER devices should occur every year. A reassessment of an officer's knowledge and/or practical skill may be required at any time if deemed appropriate by the Captain of Administration. All training and proficiency for TASER devices will be documented in the officer's training file.

Command staff, supervisors and investigators should receive TASER device training as appropriate for the investigations they conduct and review.

Officers who do not carry TASER devices should receive training that is sufficient to familiarize them with the device and with working with officers who use the device.

The Captain of Administration is responsible for ensuring that all members who carry TASER devices have received initial and annual proficiency training. Periodic audits should be used for verification.

Application of TASER devices during training could result in injury to personnel and should not be mandatory for certification.

The Captain of Administration should ensure that all training includes:

(a)   A review of this policy.

(b)   A review of the Use of Force Policy.

(c)   Performing weak-hand draws or cross-draws to reduce the possibility of unintentionally drawing and firing a firearm.

(d)   Target area considerations, to include techniques or options to reduce the unintentional application of probes near the head, neck, chest and groin.

(e)   Handcuffing a subject during the application of the TASER device and transitioning to other force options.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000063

**Exhibit 1**
**Page 53 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*TASER Conducted Energy Weapon*

    (f)    De-escalation techniques.

    (g)    Restraint techniques that do not impair respiration following the application of the TASER device.

### 309.9.1  ANNUAL INSPECTIONS
The Administrative Captain or their designee shall conduct a complete inspection and inventory of all Department TASER's annually and report to the Chief of Police via chain of command. Such inventory may be conducted during monthly Department training. During this inspection:

(a) Conduct necessary service and maintenance;
(b) Download the computerized history on each TASER; and
(c) Re-set the internal time clock.

Service and maintenance may be conducted during regularly scheduled Department training.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000064

**Exhibit 1**
**Page 54 of 550**



**Policy**
**311**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Officer-Involved Shootings and Deaths

### 311.1  PURPOSE AND SCOPE

The purpose of this policy is to establish policy and procedures for the investigation of an incident in which a person is injured or dies as the result of an officer-involved shooting. The intent of this policy is to ensure that such incidents be investigated in a fair and impartial manner. Certain elements of this policy are dictated by ORS and/or the Lane County Interagency Deadly Force Memorandum of Understanding.

### 311.2  TYPES OF INVESTIGATIONS

Officer-involved shootings involve several separate investigations. The investigations may include:

(a)  A criminal investigation of the incident (not the shooting) by the agency having jurisdiction where the incident occurred. This department may relinquish its criminal investigation to an outside agency or interagency team with the approval of the Chief of Police or designee.

(b)  A criminal investigation of the involved officers conducted by the Lane County Interagency Deadly Force Investigation Team (IDFIT).

(c)  A civil investigation to determine potential liability conducted by the involved officer's agency.

(d)  An administrative investigation conducted by the involved officer's agency, to determine if there were any violations of department policy.

### 311.3  CONTROL OF INVESTIGATIONS

Investigators from surrounding agencies may be assigned to work on the criminal investigation of officer-involved shootings and deaths. This may include at least one investigator from the agency that employs the involved officer.

Jurisdiction is determined by the location of the shooting or death and the agency employing the involved officer. The following scenarios outline the jurisdictional responsibilities for investigating officer-involved shootings and deaths.

#### 311.3.1  INVESTIGATION RESPONSIBILITY MATRIX

The following table identifies the possible scenarios and responsibilities for the investigation of officer-involved shootings:

| Criminal Investigation of Suspect(s) | Criminal Investigation of Officer(s) | Civil Investigation | Administrative Investigation |
| --- | --- | --- | --- |

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000065

**Exhibit 1**
**Page 55 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Officer-Involved Shootings and Deaths*

| University of Oregon Police Department Officer in this Jurisdiction | University of Oregon Police Department | IDFIT | University of Oregon Police Department | University of Oregon Police Department Professional Standards Unit |
|---|---|---|---|---|
| **Allied Agency's Officer in this Jurisdiction** | University of Oregon Police Department | IDFIT | Involved Officer's Department | Involved Officer's Department |
| **An officer From this department in Another Jurisdiction** | Agency where incident occurred | OIS protocol dictated by county where incident occurred | University of Oregon Police Department | University of Oregon Police Department Professional Standards Unit |

**311.4  THE INVESTIGATION PROCESS**
The following procedures are guidelines used in the investigation of an officer-involved shooting or death.

311.4.1  UNINVOLVED OFFICER RESPONSIBILITIES
Upon arrival at the scene of an officer-involved shooting or death, the first uninvolved UOPD officer will be the officer-in-charge and will assume the responsibilities of a supervisor until properly relieved. This officer should, as appropriate:

    (a)    Secure the scene and identify and eliminate hazards for all those involved.

    (b)    Take reasonable steps to obtain emergency medical attention for injured individuals.

    (c)    Request additional resources from the Department or other agencies.

    (d)    Coordinate a perimeter or pursuit of suspects.

    (e)    Check for injured persons and evacuate as needed.

    (f)    Brief the supervisor upon arrival.

311.4.2  SUPERVISORS RESPONSIBILITIES

Upon arrival at the scene, the first uninvolved UOPD supervisor should ensure completion of the duties as outlined above, plus:

    (a)    Attempt to obtain a brief overview of the situation from any uninvolved officers.

        (a)    In the event that there are no uninvolved officers who can supply adequate overview, the supervisor should attempt to obtain a brief voluntary overview from one involved officer.

    (b)    If necessary, the supervisor may administratively order any UOPD officer to immediately provide public safety information necessary to secure the scene, identify injured parties and pursue suspects.

        (a)    Public safety information shall be limited to such things as outstanding suspect information, number and direction of any shots fired, perimeter of the incident

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000066

**Exhibit 1**
**Page 56 of 550**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Officer-Involved Shootings and Deaths*

    scene, identity of known or potential witnesses and any other pertinent information.

(b) The initial on-scene supervisor should not attempt to order any involved officer to provide any information other than public safety information.

(c) Provide all available information to the Watch Commander and Communications and Emergency Response Center. If feasible, sensitive information should be communicated over secure networks.

(d) Take command of and secure the incident scene with additional UOPD members until properly relieved by another supervisor or other assigned personnel or investigator.

(e) As soon as practicable, ensure that involved officers are transported (separately, if feasible) to a suitable location for further direction.

(a) Each involved UOPD officer should be given an administrative order not to discuss the incident with other involved officers or UOPD members pending further direction from a supervisor.

(b) When an involved officer's weapon is taken or left at the scene for other than officer-safety reasons (e.g., evidence), ensure that he/she is provided with a comparable replacement weapon or transported by other officers.

The following person(s) shall be notified as soon as practical:

- Chief of Police

- District Attorney

- IDFIT

- Police Operations Captain

- Professional Standards and Training Unit Captain

- Psychological/Peer support personnel

- Officer representative (if requested)

- UO-Incident Management Team through established procedures in the UO Internal Incident Notification Policy.

### 311.4.3   MEDIA RELATIONS
Press releases and other required information releases, such as Clery Act, shall be prepared with input and concurrence from the supervisor and agency representative responsible for each phase of the investigation in consultation with the UO Media Relations Office. Releases will be available to the Executive Coordinator, Command Staff and Public Information Officer in the event of inquiries from the media.

It is the policy of this department to not release the identities of involved officers absent their consent or as required by law. Moreover, no involved officer shall be subjected to contact from

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000067

**Exhibit 1**
**Page 57 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Officer-Involved Shootings and Deaths*

the media and no involved officer shall make any comments to the press unless authorized by the Chief of Police or designee.

Law enforcement officials receiving inquiries regarding incidents occurring in other agency jurisdictions shall refrain from public comment and will direct those inquiries to the agency having jurisdiction and primary responsibility for the investigation.

311.4.4   INVOLVED OFFICERS
The following shall be considered for the involved officer:

(a)   Any request for legal representation will be accommodated.

    1.   Involved UOPD officers shall not be permitted to meet collectively or in a group with an attorney or any representative prior to providing a formal interview or report.

    2.   Requests from involved non-UOPD officers should be referred to their employing agency.

(b)   Discussions with licensed attorneys will be considered privileged as attorney-client communications.

(c)   Discussions with agency representatives/employee groups will be privileged only as to the discussion of non-criminal information.

(d)   A mental health professional shall be provided by the Department to each involved UOPD officer (ORS 181A.790). An involved officer shall attend at least one session. A mental health professional may also be provided to any other affected UOPD members, upon request.

    1.   Interviews with a mental health professional will be considered privileged.

    2.   An interview or session with a mental health professional may take place prior to the member providing a formal interview or report. However, involved members shall not be permitted to consult or meet collectively or in a group with a mental health professional prior to providing a formal interview or report.

    3.   The Department shall pay the costs of at least two sessions with a mental health professional and the sessions must take place within six months after the incident.

    4.   A separate fitness-for-duty exam may also be required (see the Fitness for Duty Policy).

(e)   Communications with peer counselors are confidential (except threats of suicide or admissions of criminal conduct) and may not be disclosed by any person participating in the peer support counseling session (ORS 181A.835). To be considered confidential communications under the statute, the peer counselor must:

    1.   Have been designated by UOPD or employee assistance program to act as a peer counselor, and;

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000068

**Exhibit 1**
**Page 58 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Officer-Involved Shootings and Deaths*

2.  Have received training in counseling and in providing emotional and moral support to public safety personnel or emergency services personnel who have been involved in emotionally traumatic incidents by reason of their employment.

Care should be taken to preserve the integrity of any physical evidence present on the involved officer's equipment or clothing, such as blood or fingerprints, until investigators or lab personnel can properly retrieve it.

Each involved officer shall be given reasonable paid administrative leave following an officer-involved shooting. An officer who uses deadly force that results in the death of a person shall not be returned to a duty assignment that might place him/her in a situation in which he/she has to use deadly force until at least 72 hours immediately following the incident (ORS 181A.790). It shall be the responsibility of the Watch Commander to make schedule adjustments to accommodate such leave.

Formal Interviews of involved officers will be conducted by IDFIT investigators and take place no sooner than 48 hours after the incident (consideration is made for the physical and emotional needs of the officers.)

The Lane County District Attorney's Office has determined that the involved officers will not be allowed to review video tapes of, or relating to, the incident prior to making a formal statement.

## 311.5   CRIMINAL INVESTIGATION
The District Attorney's Office is responsible for the criminal investigation into the circumstances of any officer-involved shooting or death.

If available, investigative personnel from this department may be assigned to partner with investigators from outside agencies or the District Attorney's Office to avoid duplicating efforts in related criminal investigations.

Once public safety issues have been addressed, criminal investigators should be given the opportunity to obtain a voluntary statement from involved officers and to complete their interviews. The following shall be considered for the involved officer:

(a)  UOPD supervisors and Professional Standards Unit personnel should not participate directly in any voluntary interview of UOPD officers. This will not prohibit such personnel from monitoring interviews or providing the criminal investigators with topics for inquiry.

(b)  If requested, any involved officer will be afforded the opportunity to consult individually with a representative of his/her choosing or an attorney prior to speaking with criminal investigators. However, in order to maintain the integrity of each involved officer's statement, involved officers shall not consult or meet with a representative or an attorney collectively or in groups prior to being interviewed.

(c)  If any involved officer is physically, emotionally or otherwise not in a position to provide a voluntary statement when interviewed by criminal investigators, consideration should be given to allowing a reasonable period for the officer to schedule an alternate time for the interview.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000069

**Exhibit 1**
**Page 59 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Officer-Involved Shootings and Deaths*

(d) Any voluntary statement provided by an involved officer will be made available for inclusion in any related investigation, including administrative investigations. However, no administratively coerced statement will be provided to any criminal investigators unless the officer consents.

### 311.5.1  REPORTS BY INVOLVED UOPD OFFICERS
In the event that suspects remain outstanding or subject to prosecution for related offenses, this department shall retain the authority to require involved UOPD officers to provide sufficient information for related criminal reports to facilitate the apprehension and prosecution of those individuals.

While the involved UOPD officer may write the report, it is generally recommended that such reports be completed by assigned investigators, who should interview all involved officers as victims/witnesses. Since the purpose of these reports will be to facilitate criminal prosecution, statements of involved officers should focus on evidence to establish the elements of criminal activities by suspects. Care should be taken not to duplicate information provided by involved officers in other reports.

Nothing in this section shall be construed to deprive an involved UOPD officer of the right to consult with legal counsel prior to completing any such criminal report.

Reports related to the prosecution of criminal suspects will be processed according to normal procedures but should also be included for reference in the investigation of the officer-involved shooting or death.

### 311.5.2  WITNESS IDENTIFICATION AND INTERVIEWS
Because potential witnesses to an officer-involved shooting or death may become unavailable or the integrity of their statements compromised with the passage of time, a supervisor should take reasonable steps to promptly coordinate with criminal investigators to utilize available law enforcement personnel for the following:

(a) Identification of all persons present at the scene and in the immediate area.

    1. When feasible, a recorded statement should be obtained from those persons who claim not to have witnessed the incident but who were present at the time it occurred.

    2. Any potential witness who is unwilling or unable to remain available for a formal interview should not be detained absent reasonable suspicion to detain or probable cause to arrest. Without detaining the individual for the sole purpose of identification, attempts to identify the witness prior to his/her departure should be made whenever feasible.

(b) Witnesses who are willing to provide a formal interview should be asked to meet at a suitable location where criminal investigators may obtain a recorded statement. Such witnesses, if willing, may be transported by a member of the Department.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Officer-Involved Shootings and Deaths*

> 1. A written, verbal or recorded statement of consent should be obtained prior to transporting a witness. When the witness is a minor, consent should be obtained from the parent or guardian, if available, prior to transportation.

(c) Promptly contacting the suspect's known family and associates to obtain any available and untainted background information about the suspect's activities and state of mind prior to the incident.

### 311.5.3 INVESTIGATIVE PERSONNEL
Once notified of an officer-involved shooting or death, it shall be the responsibility of the designated Investigation Unit supervisor to assign appropriate investigative personnel to handle the investigation of related crimes. Department investigators will be assigned to work with investigators from the District Attorney's Office and may be assigned to separately handle the investigation of any related crimes not being investigated by the District Attorney's Office.

All related department reports, except administrative and/or privileged reports, will be forwarded to the designated Investigation Unit supervisor for approval. Privileged reports shall be maintained exclusively by members who are authorized such access. Administrative reports will be forwarded to the appropriate Division Commander.

### 311.6 ADMINISTRATIVE INVESTIGATION
In addition to all other investigations associated with an officer-involved shooting or death, this department will conduct an internal administrative investigation of involved UOPD officers to determine conformance with department policy. This investigation will be conducted under the supervision of the Professional Standards Unit and will be considered a confidential officer personnel file.

Interviews of members shall be subject to department policies and applicable laws.

(a) Any officer involved in a shooting or death may be requested or administratively compelled to provide a blood sample for alcohol/drug screening. Absent consent from the officer, such compelled samples and the results of any such testing shall not be disclosed to any criminal investigative agency.

(b) If any officer has voluntarily elected to provide a statement to criminal investigators, the assigned administrative investigator should review that statement before proceeding with any further interview of that involved officer.

> 1. If a further interview of the officer is deemed necessary to determine policy compliance, care should be taken to limit the inquiry to new areas with minimal, if any, duplication of questions addressed in the voluntary statement. The involved officer shall be provided with a copy of his/ her prior statement before proceeding with any subsequent interviews.

(c) In the event that an involved officer has elected not to provide criminal investigators with a voluntary statement, the assigned administrative investigator shall conduct an administrative interview to determine all relevant information.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000071

**Exhibit 1**
**Page 61 of 550**

## University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Officer-Involved Shootings and Deaths*

1. Although this interview should not be unreasonably delayed, care should be taken to ensure that the officer's physical and psychological needs have been addressed before commencing the interview.

2. If requested, the officer shall have the opportunity to select an uninvolved representative to be present during the interview. However, in order to maintain the integrity of each individual officer's statement, involved officers shall not consult or meet with a representative or attorney collectively or in groups prior to being interviewed.

3. Administrative interviews should be recorded by the investigator. The officer may also record the interview.

4. The officer shall be informed of the nature of the investigation. If an officer refuses to answer questions, he/she should be given his/her *Garrity* rights and ordered to provide full and truthful answers to all questions. The officer shall be informed that the interview will be for administrative purposes only and that the statement cannot be used criminally.

5. The Professional Standards Unit shall compile all relevant information and reports necessary for the Department to determine compliance with applicable policies.

6. Regardless of whether the use of force is an issue in the case, the completed administrative investigation shall be submitted to the Use of Force Review Board, which will restrict its findings as to whether there was compliance with the  Use of Force Policy.

7. Any other indications of potential policy violations shall be determined in accordance with standard disciplinary procedures.

**311.7  AUDIO AND VIDEO RECORDINGS**

Any officer involved in a shooting or death may be permitted to review available Mobile Audio/ Video (MAV), body-worn video, or other video or audio recordings prior to providing a recorded statement or completing reports.

Upon request, non-law enforcement witnesses who are able to verify their presence and their ability to contemporaneously perceive events at the scene of an incident may also be permitted to review available MAV, body-worn video, or other video or audio recordings with the approval of assigned investigators or a supervisor.

Any MAV, body-worn and other known video or audio recordings of an incident should not be publicly released during an ongoing investigation without consulting the prosecuting attorney or General Counsel's Office, as appropriate.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000072

**Exhibit 1**
**Page 62 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Officer-Involved Shootings and Deaths*

**311.8   DEBRIEFING**
Following an officer-involved shooting or death, the University of Oregon Police Department should conduct both a critical incident/stress debriefing and a tactical debriefing.

311.8.1   CRITICAL INCIDENT/STRESS DEBRIEFING
A critical incident/stress debriefing should occur as soon as practicable. The Administrative Division is responsible for organizing the debriefing. Notes and recorded statements should not be taken because the sole purpose of the debriefing is to help mitigate the stress-related effects of a traumatic event.

The debriefing is not part of any investigative process. Care should be taken not to release or repeat any communication made during a debriefing unless otherwise authorized by policy, law or a valid court order.

Attendance at the debriefing shall only include those members of the Department directly involved in the incident, which can include support personnel (e.g., communications officer, other non-sworn). Family or other support personnel may attend with the concurrence of those involved in the incident. The debriefing shall be closed to the public and should be closed to all other members of the Department, including supervisory and personnel assigned to either the criminal or administrative investigation.

311.8.2   TACTICAL DEBRIEFING
A tactical debriefing should take place to identify any training or areas of policy that need improvement. The Chief of Police should identify the appropriate participants. This debriefing should not be conducted until all involved members have provided recorded or formal statements to criminal and/or administrative investigators.

**311.9   MEDIA RELATIONS**
Any media release shall be prepared with input and concurrence from the supervisor and department representative responsible for each phase of the investigation. Releases will be available to the Watch Commander, Investigation Division Commander and Public Information Officer in the event of inquiries from the media.

No involved UOPD officershall make any comment to the media unless he/she is authorized by the Chief of Police or a Division Commander.

Department members receiving inquiries regarding officer-involved shootings or deaths occurring in other jurisdictions shall refrain from public comment and will direct those inquiries to the agency having jurisdiction and primary responsibility for the investigation.

**311.10   REPORTING**
If the death of an individual resulted from an officer use of deadly force and occurred in the University of Oregon Police Department jurisdiction, the Operations Captain will ensure that the Professional Standards Unit is provided with enough information to meet the reporting requirements to the Department of Justice (ORS 181A.790).

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000073

**Exhibit 1**
**Page 63 of 550**



**Policy**
**313**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Firearms

### 313.1  PURPOSE AND SCOPE
This policy provides guidelines for issuing firearms, the safe and legal carrying of firearms, firearms maintenance and firearms training.

This policy does not apply to issues related to the use of firearms that are addressed in the Use of Force or Officer-Involved Shootings and Deaths policies.

This policy only applies to those members who are authorized to carry firearms.

### 313.2  POLICY
The University of Oregon Police Department will equip its members with firearms to address the risks posed to the public and department members by violent and sometimes well-armed persons. The Department will ensure firearms are appropriate and in good working order and that relevant training is provided as resources allow.

### 313.2.1  ALCOHOL AND DRUGS
Weapons shall not be carried by any officer who has consumed an amount of an alcoholic beverage or taken a drug that would tend to adversely afect the officer's senses or judgement. If an off-duty officer cannot report for duty under the prohibitions of Policy 1012, they are not allowed to carry firearms off-duty under the authority of the department. Refer to Policy 1012.

### 313.3  SAFE HANDLING OF FIREARMS
The intent of this policy is to promote proper firearm safety on and off duty. Employees shall maintain the highest level of safety when handling firearms and shall consider the following:

  (a)  Officers shall not unnecessarily display or handle any firearm.

  (b)  Officers shall be governed by all rules and regulations pertaining to the use of the range and shall obey all orders issued by the Rangemaster. Officers shall not dry fire or practice quick draws except under Rangemaster supervision.

  (c)  Officers wishing to clean their firearm at work shall first unload the weapon utilizing a clearing barrel. Once weapons are cleaned, they shall be reloaded utilizing a clearing barrel.

  (d)  Shotguns or rifles removed from vehicles, or the equipment storage room, shall be loaded and unloaded in the parking lot and outside of the vehicle.

  (e)  Shotguns or patrol rifles returned to the patrol vehicle shall be secured and locked in their respective racks.

  (f)  Police officers shall not place or store any firearm or other weapon on Department premises except in a locked gun locker or their locked personal assigned locker. No one shall carry firearms into the jail section or any part thereof when securing or processing a prisoner, but shall place all firearms in a secured location. It shall be the responsibility of the releasing officer to make sure that persons from outside agencies do not enter the jail section with any firearm. Police officers shall not use any automatic

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000074

**Exhibit 1**
**Page 64 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Firearms*

weapon, heavy caliber rifle, gas or other type of chemical weapon from the armory, except with approval of a supervisor.

(g) When an officer determines that any department authorized weapon (for on or off-duty use) is malfunctioning or requires service, that weapon shall not be carried. It shall be promptly presented to the department Rangemaster or designee for inspection. Any weapon determined to be in need of service or repair during an inspection by the department Rangemaster or designee, will be immediately removed from service. If the weapon, a replacement weapon will be issued to the officer by the watch commander until the duty weapon is serviceable.

(h) The discharge of any firearm shall be goverened by either the Department's Deadly Force Policy or sections contained within this policy.

## 313.3.1   HANDGUNS

The authorized departmental issued handgun for on-duty use is a double action/single action semiautomatic pistol. The University of Oregon Police Department issues Glock 17 and 21 semiautomatic pistols and a Safariland double or triple threat retention holster to its police officers.

Officers wishing to carry a different weapon than the issued firearm must carry a semiautomatic pistol that conforms to the following specifications:

• Calibers may be: 9mm or .45 ACP.

• Double action/single action (DA/SA) or double action only (DAO) semiautomatic pistols, weapons may be blued or like appearance.

• Barrel length a minimum 3.5 inches

• Grips shall be a plain design.

The following brands of weapons are approved for on-duty use:

| Brand | Model |
|---|---|
| Baretta | 92 or 96 Series |
| Heckler & Koch | USP Series |
| Sig Sauer | P Series |
| Smith and Wesson | M & P Series |
| Springfield Armory | XD Series |
| Glock | 17 or 21 |

(a) The Range Master or his/her designee must inspect and approve issued or personally owned weapons before officers can carry them.

1. An optional pistol mounted light system (PMLS) for the Glock 17 or 21 or personally owned duty weapon has been authorized for employees who wish to carry the weapon mounted light at their expense. Officers carrying other authorized duty weapons may carry an optional pistol mounted light once it has

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000075

**Exhibit 1**
**Page 65 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Firearms*

 been inspected and approved by the Rangemaster. An authorized level three holster will be required and must be purchased at the employee's expense.

   2. Officers electing to carry the PMLS light must qualify with the PMLS light installed on their duty weapon.

(b) Officers carrying personally owned weapons may make NO modifications without written approval from the Range Master or his/her designee

   1. Personally owned firearms shall be maintained by a certified professional at the officer's expense and documentation shall be provided to the department.

   2. Officers choosing to carry a personally owned firearm must supply and use their own approved holster. The holster shall be of a same model as the department issued double or triple threat retention holsters issued and shall be inspected and approved by the Range Master or his/her designee prior to use.

(c) Police officers must complete the firearms qualification course for any weapon carried on duty.

   1. The annual successful completion of an approved firearm qualification course may serve as proof of the training process.

   2. The authorized weapon make, caliber and serial number will be entered in the officer's training file.

## 313.3.2  AUTHORIZED SECONDARY FIREARMS
Officers desiring to carry a secondary firearm or back-up are subject to the following restrictions:

(a) All backup firearms must be of a standard caliber (.357, .380, 9mm, .40, .45).

(b) All backup firearms are subject to approval by the Chief of Police or designee and the Rangemaster. Backup firearms and ammunition, unless previously approved, will not be supplied by the department. Individual officers must purchase and maintain their own firearm and provide their own ammunition.

(c) Any officer that chooses to carry a backup firearm must carry it in a concealed manner. The backup firearm should not draw undue attention, but should be easily accessible by the officer. The holster should be of a design that retains the firearm through strenuous activity. The hoslter should be secured to the body in a similar manner.

(d) Only one secondary firearm maybe carried at a time and shall be either a double action/single action (DA/SA) or double action only (DAO) semiautomatic pistol or revolver.

(e) Weapons shall be blued or like appearance.

(f) Grips shall be a plain design.

(g) Officers carrying personally owned weapons may make NO modifications without written approval from the Rangemaster or his/her designee

(h) Personally owned firearms shall be maintained by a certified professional at the officer's expense and documentation shall be provided to the department.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000076

**Exhibit 1**
**Page 66 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Firearms*

(i)     Officers shall provide written notice of the make, model, color, serial number, and caliber of the second firearm to the Rangemaster so that it can be entered into the employee's file.

### 313.3.3   AUTHORIZED OFF-DUTY FIREARM
The carrying of firearms by sworn officers while off-duty is permitted by the Chief of Police but may be rescinded should circumstances dictate (e.g., administrative leave). Sworn officers who choose to carry a firearm while off-duty, based on their authority as a peace officer, will be required to meet the following guidelines:

(a)     The double action/single action or double action only (DAO) semiautomatic may be one of the brand chosen by the officer. These weapons must conform to the following guidelines:

  1.    Blued Stainless, or like appearance

  2.    Plain design Grips

  3.    Calibers 9mm, .380 ACP, .40 or 45 caliber.

(b)     The double action/single action or double action only (DAO) revolver weapons must conform to the following guidelines:

  1.    1. Blue steel, stainless or like appearance

  2.    2. Plain design grips

  3.    Calibers 38 Special, or 357 Magnum

(c)     The firearm shall be of good quality and workmanship and approved by the Department.

(d)     The purchase of the firearm and ammunition shall be the responsibility of the police officer.

(e)     The firearm shall be carried concealed at all times and in such a manner as to prevent accidental cocking, discharge, or loss of physical control.

(f)     It will be the responsibility of the officer to submit the firearm to the Rangemaster for inspection prior to being carried. Thereafter the firearm shall be subject to periodic inspection by the Rangemaster.

(g)     Prior to carrying any off-duty firearm, the officer shall demonstrate to the Rangemaster that he/she is proficient in handling and firing the firearm and that it will be carried in a safe manner.

(h)     The police officer will successfully qualify with the firearm prior to it being carried and thereafter once per year. The range qualification dates will be specified by the Rangemaster.

(i)     A complete description of the firearm shall be contained on the qualification record approved by the Rangemaster.

(j)     If any member desires to use more than one firearm while off-duty, he/she may do so, as long as the police officer meets all the requirements set forth in this policy for each firearm used.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000077

**Exhibit 1**
**Page 67 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Firearms*

    (k)   whether on or off-duty, police officers shall carry their badge and department identification.

313.3.4  SHOTGUNS
The authorized department-issued shotgun is the Remmington 870 Shotgun.

When not deployed, the shotgun shall be properly secured consistent with department training in a locking weapons rack in the patrol vehicle.

a. No personally owned shotguns will be authorized for police use.

b. All shotguns carried in patrol vehicles will be placed into the shotgun racks or storage unit provided and secured at all times with the chamber void of any ammunition.

c. Shotguns will be unloaded immediately when removed from vehicles for cleaning and inspection. Shotguns will be unloaded prior to storage, with the safety in the "ON" position and the action (slide) open after each use.

d. Shotguns will be cleaned only by a the Rangemaster or the designated Armorer who has been trained in the proper cleaning procedures. Shotguns will be cleaned and inspected yearly by the Department Armorer annually. Records shall be retained by the armorer.

e. Officers who receive the annual re-certification on use of the shotgun are mandated to have the shotgun shotgun readily available for use when on duty and when the weapon is available. Officers must be able to justify the use and/or display of a shotgun.

f. Supervisors should not routinely deploy a Shotgun unless exigent circumstances exist (active shooter, ongoing gun-battle, etc.). It is vital to the success of the department that they maintain their supervisory role and not tie themselves up as a long-gun operator.

g. Shotguns should be utilized anytime it provides officers a tactical edge and can include but is not limited to the following situations:

    (1) Armed robbery in progress.

    (2) Burglary in progress where buildings must be searched.

    (3) Serving high risk search or arrest warrants.

    (4) High-risk stops.

    (5) Active searches for felony suspects.

    (6) Active shooting incidents.

h. No sworn personnel shall be authorized to carry or utilize a shotgun without being trained and authorized by the Department Rangemaster..

i. The University of Oregon Police Department shotguns will be equipped with an adjustable sling at all times to be used during deployment of the weapon.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000078

**Exhibit 1**
**Page 68 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Firearms*

### 313.3.5   PATROL RIFLE
Patrol Rifle: is an authorized weapon which is owned by the Department or personally owned by a sworn member of the Department and which is made available to properly trained and qualified officers as a supplemental resource to their handgun. No personally owned rifles may be carried for patrol duty unless pre-approved in writing by the Chief of Police.

a. Authorized patrol rifles issued by the Department shall be the AR-15 Carbines chambered in 5.56/.223 caliber.

b. Officers may deploy the patrol rifle in any circumstance where the officer can articulate a reasonable expectation that the rifle may be needed. Examples of some general guidelines for deploying the patrol rifle may include, but are not limited to:

    1. Situations where the officer reasonably anticipates an armed encounter;

    2. When an officer is faced with a situation that may require the delivery of accurate and effective fire at long range;

    3. Situations where an officer reasonably expects the need to meet or exceed a suspect's firepower;

    4. When an officer reasonably believes that there may be a need to deliver fire on a barricaded suspect or a suspect with a hostage;

    5. When an officer reasonably believes that a suspect may be wearing body armor;

    6. When authorized or requested by a supervisor

c. Any qualified officer carrying a patrol rifle in the field shall maintain the weapon in the "patrol ready" until deployed. A rifle is considered "patrol ready" when it has been inspected by the assigned officer and meets the following conditions:

    1. The chamber is empty;

    2. The rifle bolt is forward with the hammer down;

    3. The rifle safety is on;

    4. There is a fully loaded magazine in the rifle;

    5. The dust cover is closed;

    6. The rifle is stored in the locked patrol vehicles trunk or locked in the weapon storage rack in the passenger compartment of the vehicle.

### 313.3.6   REPAIRS OR MODIFICATIONS
Each member shall be responsible for promptly reporting any damage or malfunction of an assigned firearm to a supervisor or the Rangemaster.

Firearms that are the property of the Department or personally owned firearms that are approved for department use may be repaired or modified only by a person who is department-approved

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000079

**Exhibit 1**
**Page 69 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Firearms*

and certified as an armorer or gunsmith in the repair of the specific firearm. Such modification or repair must be authorized in advance by the Rangemaster.

Any repairs or modifications to the member's personally owned firearm shall be done at his/her expense and must be approved by the Rangemaster prior to being deployed.

### 313.3.7  AMMUNITION

Officers shall carry only department-authorized ammunition. Replacements for unserviceable or depleted ammunition issued by the department shall be dispensed by the Rangemaster or designee when needed in accordance with established practice. Officers carrying personally owned authorized firearms of a caliber differing from department issued firearms shall be responsible for obtaining fresh duty ammunition at their own expense.

### 313.4  SAFE HANDLING, INSPECTION AND STORAGE

Members shall maintain the highest level of safety when handling firearms and shall consider the following:

(a) Members shall not unnecessarily display or handle any firearm.

(b) Members shall be governed by all rules and regulations pertaining to the use of the range and shall obey all orders issued by the Rangemaster. Members shall not dry fire or practice quick draws except as instructed by the Rangemaster or other firearms training staff.

(c) Members shall not clean, repair, load or unload a firearm anywhere in the Department, except where clearing barrels are present.

(d) Shotguns or rifles removed from vehicles or the equipment storage room shall be loaded and unloaded in the parking lot and outside of the vehicle, using clearing barrels.

(e) Members shall not place or store any firearm or other weapon on department premises except where the place of storage is locked. No one shall carry firearms into the jail section or any part thereof when securing or processing an arrestee, but shall place all firearms in a secured location. Members providing access to the jail section to persons from outside agencies are responsible for ensuring firearms are not brought into the jail section.

(f) No rifle or shotgun shall be left in a vehicle, secured or unsecured, while the keys to the vehicle are in the ignition and the vehicle is running, if the officer is not in the immediate area performing job related tasks.

(g) Any firearm authorized by the Department to be carried on- or off-duty that is determined by a member to be malfunctioning or in need of service or repair shall not be carried. If the firearm is owned by UOPD it shall be promptly presented to the Department or a Rangemaster approved by the Department for inspection and repair. Any firearm deemed in need of repair or service by the Rangemaster will be immediately removed from service. If the firearm is the member's primary duty firearm, a replacement firearm will be issued to the member until the duty firearm

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000080

**Exhibit 1
Page 70 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Firearms*

is serviceable. If the firearm is personally owned then the department member is responsible for the inspection and repair of the firearm at their own expense.

### 313.4.1   STORAGE OF FIREARMS AT HOME
Officers shall ensure that all department firearms and ammunition are locked and secured while in their homes, vehicles or any other area under their control in a manner that will keep them inaccessible to children and non-certified law enforcement personnel.

### 313.5   DESTRUCTION OF ANIMALS
Officers are authorized to use firearms to stop an animal in circumstances where the animal reasonably appears to pose an imminent threat to human safety and alternative methods are not reasonably available or would likely be ineffective.

In circumstances in which officers have sufficient advance notice that a potentially dangerous animal may be encountered, officers should develop reasonable contingency plans for dealing with the animal (e.g., fire extinguisher, oleoresin capsicum (OC) spray, animal control officer). Nothing in this policy shall prohibit any officer from shooting a dangerous animal if circumstances reasonably dictate that a contingency plan has failed or becomes impractical.

Officers will contact UO Facilities for disposal of the animal. If the animal is licensed or appears to be a pet or service animal, Eugene Animal Control officers will be notified for possible identification of the owner.

### 313.5.1   INJURED ANIMALS
With the approval of a supervisor, an officer may euthanize an animal that is so badly injured that human compassion requires its removal from further suffering and where other dispositions are impractical.

Officers will contact UO Facilities for disposal of the animal. If the situation dictates, the City of Eugene Street Maintenance Division may be contacted through Central Lane Communications.

If the animal is licensed or appears to be a pet or service animal, Eugene Animal Control officers will be notified for possible identification of the owner.

### 313.6   FIREARMS TRAINING AND QUALIFICATIONS
All members who carry a firearm while on-duty are required to successfully complete training quarterly with their duty firearms. In addition to quarterly training, all members will qualify at least bi-annually with their duty firearms, with a three month seperation between qualifications. Members will qualify with off-duty and secondary firearms at least twice a year. Training and qualifications must be on an approved range course.

At least annually, all members carrying a firearm should receive practical training designed to simulate field situations including low-light shooting.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000081

**Exhibit 1**
**Page 71 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Firearms*

### 313.6.1   NON-CERTIFICATION OR NON-QUALIFICATION
If any member fails to meet minimum standards for firearms training or qualification for any reason, including injury, illness, duty status or scheduling conflict, that member shall submit a memorandum to his/her immediate supervisor prior to the end of the required training or qualification period.

Those who fail to meet minimum standards or qualify on their first shooting attempt shall be provided remedial training and will be subject to the following requirements:

    (a)   Additional range assignments may be scheduled to assist the member in demonstrating consistent firearm proficiency.

    (b)   Members shall be given credit for a range training or qualification when obtaining a qualifying score or meeting standards after remedial training.

    (c)   No range credit will be given for the following:

        1.   Unauthorized range make-up

        2.   Failure to meet minimum standards or qualify after remedial training

Members who repeatedly fail to meet minimum standards will be removed from field assignment and may be subject to disciplinary action.

### 313.6.2   RIFLE/SHOTGUN QUALIFICATION AND TRAINING
Officers shall not carry or utilize the patrol rifle or the shotgun unless they have successfully completed that training which is mandated by the successfully completing the department rifle certification course for an initial patrol rifle user or the shotgun certification course.

Officers shall thereafter be required to successfully complete bi-annual training and qualification by a certified patrol rifle or shotgun instructor, that includes a minimum of a three month seperation between qualifications. Any officer who fails to qualify or who fails to successfully complete the Department's training /qualification sessions within a calendar year will no longer be authorized to carry the patrol rifle or the shotgun without successfully retaking the initial patrol user's course and qualification.

## 313.7   FIREARM DISCHARGE
Except during training or recreational use, any member who discharges a firearm intentionally or unintentionally, on- or off-duty, shall make a verbal report to his/her supervisor as soon as circumstances permit. If the discharge results in injury or death to another person, additional statements and reports shall be made in accordance with the Officer-Involved Shootings and Deaths Policy. If a firearm was discharged as a use of force, the involved member shall adhere to the additional reporting requirements set forth in the Use of Force Policy.

In all other cases, written reports shall be made as follows:

    (a)   If on-duty at the time of the incident, the member shall file a written report with his/her Division Commander or provide a recorded statement to investigators prior to the end of shift, unless otherwise directed.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000082

**Exhibit 1**
**Page 72 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Firearms*

(b)  If off-duty at the time of the incident, a written report shall be submitted or recorded statement provided no later than the end of the next regularly scheduled shift, unless otherwise directed by a supervisor.

## 313.8  RANGEMASTER DUTIES
The range will be under the exclusive control of the Rangemaster. All members attending will follow the directions of the Rangemaster. The Rangemaster will maintain a roster of all members attending the range and will submit the roster to the Captain of Administration after each range date. Failure of any member to sign in and out with the Rangemaster may result in non-participation or non-qualification.

The range shall remain operational and accessible to department members during hours established by the Department.

The Rangemaster has the responsibility of making periodic inspection, at least once a year, of all duty firearms carried by members of this department to verify proper operation. The Rangemaster has the authority to deem any department-issued or personally owned firearm unfit for service. The member will be responsible for all repairs to his/her personally owned firearm; it will not be returned to service until it has been inspected and approved by the Rangemaster.

The Rangemaster has the responsibility for ensuring each member meets the minimum requirements during training shoots and, on at least a yearly basis, can demonstrate proficiency in the care, cleaning and safety of all firearms the member is authorized to carry.

The Rangemaster shall complete and submit to the Captain of Administration documentation of the training courses provided. Documentation shall include the qualifications of each instructor who provides the training, a description of the training provided and, on a form that has been approved by the Department, a list of each member who completes the training. The Rangemaster should keep accurate records of all training shoots, qualifications, repairs, maintenance or other records as directed by the Captain of Administration.

## 313.9  FLYING WHILE ARMED
The Transportation Security Administration (TSA) has imposed rules governing law enforcement officers flying armed on commercial aircraft. The following requirements apply to officers who intend to be armed while flying on a commercial air carrier or flights where screening is conducted (49 CFR 1544.219):

(a)  Officers wishing to fly while armed must be flying in an official capacity, not for vacation or pleasure, and must have a need to have the firearm accessible, as determined by the Department based on the law and published TSA rules.

(b)  Officers must carry their University of Oregon Police Department identification card, bearing the officer's name, a full-face photograph, identification number, the officer's signature and the signature of the Chief of Police or the official seal of the Department and must present this identification to airline officials when requested.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000083

**Exhibit 1**
**Page 73 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Firearms*

The officer should also carry the standard photo identification needed for passenger screening by airline and TSA officials (e.g., driver license, passport).

(c)   The University of Oregon Police Department must submit a National Law Enforcement Telecommunications System (NLETS) message prior to the Officer's travel. If approved, TSA will send the University of Oregon Police Department an NLETS message containing a unique alphanumeric identifier. The officer must present the message on the day of travel to airport personnel as authorization to travel while armed.

(d)   An official letter signed by the Chief of Police authorizing armed travel may also accompany the officer. The letter should outline the officer's need to fly armed, detail his/her itinerary, and include that the officer has completed the mandatory TSA training for a law enforcement officer flying while armed.

(e)   Officers must have completed the mandated TSA security training covering officers flying while armed. The training shall be given by the department-appointed instructor.

(f)   It is the officer's responsibility to notify the air carrier in advance of the intended armed travel. This notification should be accomplished by early check-in at the carrier's check-in counter.

(g)   Any officer flying while armed should discreetly contact the flight crew prior to take-off and notify them of his/her assigned seat.

(h)   Discretion must be used to avoid alarming passengers or crew by displaying a firearm. The officer must keep the firearm concealed on his/her person at all times. Firearms are not permitted in carry-on luggage and may not be stored in an overhead compartment.

(i)   Officers should try to resolve any problems associated with flying armed through the flight captain, ground security manager, TSA representative or other management representative of the air carrier.

(j)   Officers shall not consume alcoholic beverages while aboard an aircraft, or within eight hours prior to boarding an aircraft.

## 313.10  CARRYING FIREARMS OUT OF STATE
Qualified, active, full-time officers of this department are authorized to carry a concealed firearm in all other states subject to the following conditions (18 USC § 926B):

(a)   The officer shall carry his/her University of Oregon Police Department identification card whenever carrying such firearm.

(b)   The officer is not the subject of any current disciplinary action.

(c)   The officer may not be under the influence of alcohol or any other intoxicating or hallucinatory drug.

(d)   The officer will remain subject to this and all other department policies (including qualifying and training).

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000084

**Exhibit 1**
**Page 74 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

## *Firearms*

Officers are cautioned that individual states may enact local regulations that permit private persons or entities to prohibit or restrict the possession of concealed firearms on their property, or that prohibit or restrict the possession of firearms on any state or local government property, installation, building, base or park. Federal authority may not shield an officer from arrest and prosecution in such locally restricted areas.

Active law enforcement officers from other states are subject to all requirements set forth in 18 USC § 926B.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000085

**Exhibit 1**
**Page 75 of 550**



**Policy**
**315**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Vehicle Pursuits

### 315.1  PURPOSE AND SCOPE
This policy provides guidelines for vehicle pursuits in order to protect the safety of involved officers, the public and fleeing suspects.

### 315.1.1  DEFINITIONS
Definitions related to this policy include:

**Blocking or vehicle intercept** - A slow-speed coordinated maneuver where two or more pursuing vehicles simultaneously intercept and block the movement of a suspect vehicle, the driver of which may be unaware of the impending enforcement stop. The goal is containment and preventing a pursuit. Blocking is not a moving or stationary road block.

**Boxing-in** - A tactic designed to stop a suspect's vehicle by surrounding it with law enforcement vehicles and then slowing all vehicles to a stop.

**Pursuit Intervention Technique (PIT)** - A low-speed maneuver designed to cause the suspect vehicle to spin out, stall and come to a stop.

**Ramming** - The deliberate act of contacting a suspect's vehicle with another law enforcement vehicle to functionally damage or otherwise force the suspect's vehicle to stop.

**Roadblocks** - A tactic designed to stop a suspect's vehicle by intentionally placing a law enforcement vehicle or other immovable object in the path of the suspect's vehicle.

**Terminate** - To discontinue a pursuit or stop chasing fleeing vehicles.

**Tire deflation device** - A device designed to puncture the tires of the pursued vehicle.

**Trail** - Following the path of the pursuit at a safe speed while obeying all traffic laws and without activating emergency equipment. If the pursuit is at a slow rate of speed, the trailing vehicle will maintain sufficient distance from the pursuit vehicles so as to clearly indicate an absence of participation in the pursuit.

**Vehicle pursuit** - An event involving one or more law enforcement officers attempting to apprehend a suspect, who is attempting to avoid arrest while operating a vehicle by using high-speed driving or other evasive tactics, such as driving off a highway, turning suddenly or driving in a legal manner but willfully failing to yield to [an officer/a deputy]'s emergency signal to stop.

### 315.2  OFFICER RESPONSIBILITIES
Vehicle pursuits shall only be conducted using authorized police department emergency vehicles that are equipped with and displaying emergency lighting and sirens as required by law (ORS 801.260).

Officers shall drive with due regard for the safety of all persons and property. However, officers may, when in pursuit of a suspect and provided there is no unreasonable risk to persons and property (ORS 820.300; ORS 820.320):

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000086

**Exhibit 1**
**Page 76 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Vehicle Pursuits*

    (a)    Proceed past a red or stop signal or stop sign but only after slowing down as may be necessary for safe operation.

    (b)    Exceed the speed limit.

    (c)    Disregard regulations governing direction of movement or turning in specified directions.

## 315.2.1   WHEN TO INITIATE A PURSUIT
Officers are authorized to initiate a pursuit when it is reasonable to believe that a suspect, who has been given an appropriate signal to stop by a law enforcement officer, is attempting to evade arrest or detention by fleeing in a vehicle.

Factors that should be considered, both individually and collectively, when deciding to initiate or continue a pursuit include, but are not limited to:

    (a)    The seriousness of the known or reasonably suspected crime and its relationship to community safety.

    (b)    The importance of protecting the public and balancing the known or reasonably suspected offense and the apparent need for immediate capture against the risks to officers, innocent motorists and others.

    (c)    Apparent nature of the fleeing suspects (e.g., whether the suspects represent a serious threat to public safety).

    (d)    The safety of the public in the area of the pursuit, including the type of area, time of day, the amount of vehicular and pedestrian traffic (e.g., school zones) and the speed of the pursuit relative to these factors.

    (e)    The pursuing officers' familiarity with the area of the pursuit, the quality of radio communications between the pursuing vehicles and the /supervisor and the driving capabilities of the pursuing officers under the conditions of the pursuit.

    (f)    Weather, traffic and road conditions can increase the danger of the pursuit and should be weighed against the risks resulting from the suspect's escape.

    (g)    The performance capabilities of the vehicles used in the pursuit in relation to the speeds and other conditions of the pursuit.

    (h)    Emergency lighting and siren limitations on unmarked police department vehicles that may reduce visibility of the vehicle, such as visor or dash-mounted lights, concealable or temporary emergency lighting equipment and concealed or obstructed siren positioning.

    (i)    Vehicle speeds.

    (j)    Other persons in or on the pursued vehicle (e.g., passengers, co-offenders and hostages).

    (k)    The availability of other resources such as helicopter assistance.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000087

**Exhibit 1**
**Page 77 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Vehicle Pursuits*

(l)    Whether the pursuing vehicle is carrying passengers other than on-duty police officers. Pursuits should not be undertaken with an arrestee in the pursuit vehicle unless exigent circumstances exist, and then only after the need to apprehend the suspect is weighed against the safety of the arrestee in transport. A vehicle containing more than a single arrestee should not be involved in a pursuit.

### 315.2.2   WHEN TO TERMINATE A PURSUIT
Pursuits should be terminated whenever the totality of objective circumstances known or which reasonably ought to be known to the officer or supervisor during the pursuit indicates that the present risks of continuing the pursuit reasonably appear to outweigh the risks resulting from the suspects' escape.

When a supervisor directs the pursuit to be terminated, officers will immediately terminate the pursuit.

The factors listed in this policy on when to initiate a pursuit will apply equally to the decision to terminate a pursuit. Officers and supervisors must objectively and continuously weigh the seriousness of the offense against the potential danger to innocent motorists, themselves and the public when electing to continue a pursuit.

In addition to the factors that govern when to initiate a pursuit, other factors should also be considered in deciding whether to terminate a pursuit, including:

(a)    The distance between the pursuing vehicle and the fleeing vehicle is so great that further pursuit would be futile or require the pursuit to continue for an unreasonable time or distance.

(b)    Pursued vehicle's location is no longer definitely known.

(c)    The pursuing vehicle sustains damage or a mechanical failure that renders it unsafe to drive.

(d)    The pursuing vehicle's emergency lighting equipment or siren becomes partially or completely inoperable.

(e)    Hazards to uninvolved bystanders or motorists.

(f)    The danger that the continued pursuit poses to the public, the officers or the suspect, balanced against the risk of allowing the suspect to remain at large.

(g)    The identity of the suspect is known and it does not reasonably appear that the need for immediate capture outweighs the risks associated with continuing the pursuit.

Extended pursuits of violators for misdemeanors not involving violence or weapons (independent of the pursuit) are generally discouraged.

### 315.3   PURSUIT VEHICLES
When involved in a pursuit, unmarked police department emergency vehicles should be replaced by marked emergency vehicles whenever practicable.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000088

**Exhibit 1**
**Page 78 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Vehicle Pursuits*

Vehicle pursuits should be limited to three police department emergency vehicles (two pursuit vehicles and the supervisor vehicle). However, the number of vehicles involved will vary with the circumstances.

An officer or supervisor may request additional vehicles to join a pursuit if, after assessing the factors outlined above, it appears that the number of officers involved would be insufficient to safely arrest the number of suspects. All other officers shall stay out of the pursuit but should remain alert to its progress and location. Any officer who drops out of a pursuit may then, if necessary, proceed to the pursuit termination point at legal speeds, following the appropriate rules of the road.

UOPD Off-road four-wheel-drive vehicles, motorcycles, and police vehicles not equipped with emergency lights and siren will not particpate in a pursuit.

## 315.3.1   VEHICLES WITHOUT EMERGENCY EQUIPMENT
Officers operating vehicles not equipped with emergency lights and siren are prohibited from initiating or joining in any pursuit. Officers in such vehicles may provide support to pursuing vehicles as long as the vehicle is operated in compliance with all traffic laws. Those officers should discontinue such support immediately upon arrival of a sufficient number of authorized emergency police department vehicles or any air support.

## 315.3.2   PRIMARY PURSUIT VEHICLE RESPONSIBILITIES
The initial pursuing officer will be designated as the primary pursuit vehicle and will be responsible for the conduct of the pursuit unless he/she is unable to remain reasonably close to the suspect's vehicle. The primary responsibility of the officer initiating the pursuit is the apprehension of the suspect without unreasonable danger to him/herself or others.

The primary pursuing officer will notify the communications officer, commencing with a request for priority radio traffic, that a vehicle pursuit has been initiated, and as soon as practicable provide information including, but not limited to:

    (a)    The location, direction of travel and estimated speed of the suspect's vehicle.

    (b)    The description of the suspect's vehicle including the license plate number, if known.

    (c)    The reason for the pursuit.

    (d)    The use of firearms, threat of force, violence, injuries, hostages or other unusual hazards.

    (e)    The number of occupants and identity or description.

    (f)    The weather, road and traffic conditions.

    (g)    The need for any additional resources or equipment.

    (h)    The identity of other law enforcement agencies involved in the pursuit.

Until relieved by a supervisor or a secondary pursuing officer, the officer in the primary pursuit vehicle shall be responsible for broadcasting the progress of the pursuit. Unless circumstances reasonably indicate otherwise, the primary pursuing officer should, as soon as practicable,

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000089

**Exhibit 1**
**Page 79 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Vehicle Pursuits*

relinquish the responsibility of broadcasting the progress of the pursuit to an officer in a secondary pursuit vehicle or to air support joining the pursuit to minimize distractions and allow the primary pursuing officer to concentrate foremost on safe pursuit tactics.

### 315.3.3   SECONDARY PURSUIT VEHICLE RESPONSIBILITIES
The second officer in the pursuit will be designated as the secondary pursuit vehicle and is responsible for:

(a)    Immediately notifying the communications officer of his/her entry into the pursuit.

(b)    Remaining a safe distance behind the primary pursuit vehicle unless directed to assume the role of primary pursuit vehicle, or if the primary pursuit vehicle is unable to continue the pursuit.

(c)    Broadcasting information that the primary pursuing officer is unable to provide.

(d)    Broadcasting the progress of the pursuit, updating known or critical information and providing changes in the pursuit, unless the situation indicates otherwise.

(e)    Identifying the need for additional resources or equipment as appropriate.

(f)    Serving as backup to the primary pursuing officer once the suspect has been stopped.

### 315.4   SUPERVISORY CONTROL AND RESPONSIBILITY
It is the policy of this department that available supervisory and management control will be exercised over all vehicle pursuits involving officers from this department.

The field supervisor of the officer initiating the pursuit, or if unavailable, the nearest field supervisor will be responsible for the following:

(a)    Upon becoming aware of a pursuit, immediately ascertaining all reasonably available information to continuously assess the situation and risk factors associated with the pursuit. This is in order to ensure that the pursuit is conducted within established department guidelines.

(b)    Engaging in the pursuit, when appropriate, to provide on-scene supervision.

(c)    Exercising management and control of the pursuit even if not engaged in it.

(d)    Ensuring that no more than the required law enforcement vehicles are involved in the pursuit under the guidelines set forth in this policy.

(e)    Directing that the pursuit be terminated if, in his/her judgment, it is not justified to continue the pursuit under the guidelines of this policy.

(f)    Ensuring that assistance from air support, canines or additional resources is requested, if available and appropriate.

(g)    Ensuring that the proper radio channel is being used.

(h)    Ensuring that the Watch Commander is notified of the pursuit, as soon as practicable.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000090

**Exhibit 1**
**Page 80 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Vehicle Pursuits*

> (i)  Ensuring the notification and/or coordination of outside agencies if the pursuit either leaves or is likely to leave the jurisdiction of this department.
>
> (j)  Controlling and managing University of Oregon Police Department officers when a pursuit enters another jurisdiction.
>
> (k)  Preparing a post-pursuit review and documentation of the pursuit as required.

### 315.4.1  WATCH COMMANDER RESPONSIBILITIES
Upon becoming aware that a pursuit has been initiated, the Watch Commander should monitor and continually assess the situation and ensure the pursuit is conducted within the guidelines and requirements of this policy. The Watch Commander has the final responsibility for the coordination, control and termination of a vehicle pursuit and shall be in overall command.

The Watch Commander shall review all pertinent reports for content and forward to the Division Commander.

## 315.5  COMMUNICATIONS AND EMERGENCY RESPONSE CENTER
If the pursuit is confined within the University limits, radio communications will be conducted on the primary channel unless instructed otherwise by a supervisor or communications officer. If the pursuit leaves the jurisdiction of this department or such is imminent, involved officers should, whenever available, switch radio communications to a tactical or emergency channel most accessible by participating agencies.

### 315.5.1  COMMUNICATION CENTER RESPONSIBILITIES
Upon notification or becoming aware that a pursuit has been initiated,communications officer is responsible for:

> (a)  Clearing the radio channel of nonemergency traffic.
>
> (b)  Coordinating pursuit communications of the involved officers.
>
> (c)  Broadcasting pursuit updates as well as other pertinent information as necessary.
>
> (d)  Ensuring that a field supervisor is notified of the pursuit.
>
> (e)  Notifying and coordinating with other involved or affected agencies as practicable.
>
> (f)  Notify the Watch Commander as soon as practicable.
>
> (g)  Assigning an incident number and logging all pursuit activities.

## 315.6  INTERJURISDICTIONAL CONSIDERATIONS
When a pursuit enters another agency's jurisdiction, the primary pursuing officer or supervisor, taking into consideration distance traveled, unfamiliarity with the area, and other pertinent facts, should determine whether or not to request the other agency to assume the pursuit. Unless entry into another jurisdiction is expected to be brief, it is generally recommended that the primary pursuing officer or supervisor ensure that notification is provided to each outside jurisdiction

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000091

**Exhibit 1**
**Page 81 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Vehicle Pursuits*

into which the pursuit is reasonably expected to enter, regardless of whether the jurisdiction is expected to assist.

### 315.6.1   ASSUMPTION OF PURSUIT BY ANOTHER AGENCY
Officers will relinquish control of the pursuit when another agency has assumed the pursuit, unless the continued assistance of the University of Oregon Police Department is requested by the agency assuming the pursuit. Upon relinquishing control of the pursuit, the involved officers may proceed, with supervisory approval, to the termination point of the pursuit to assist in the investigation. The supervisor should coordinate such assistance with the assuming agency and obtain any information that is necessary for any reports.

The role and responsibilities of officers at the termination point of a pursuit initiated by this department shall be coordinated with appropriate consideration of the needs of the agency assuming the pursuit.

Notification of a pursuit in progress should not be construed as a request to join the pursuit. Requests to or from another agency to assume a pursuit should be specific. Because of communication limitations between local law enforcement agencies, a request for another agency's assistance will mean that its personnel will assume responsibility for the pursuit. For the same reasons, when a pursuit leaves another jurisdiction and a request for assistance is made to this department, the other agency should relinquish control.

### 315.6.2   PURSUITS EXTENDING INTO THIS JURISDICTION
The agency that initiates a pursuit shall be responsible for conducting the pursuit. Officers from this department should not join a pursuit unless specifically requested to do so by the pursuing agency and with approval from a supervisor. The exception to this is when a single vehicle from the initiating agency is in pursuit. Under this circumstance, an officer from this department may, with supervisor approval, immediately join the pursuit until sufficient vehicles from the initiating agency join the pursuit or until additional information is provided allowing withdrawal from the pursuit.

When a request is made for this department to assist or take over a pursuit that has entered the jurisdiction of the University of Oregon Police Department, the supervisor should consider:

    (a)    The public's safety within this jurisdiction.

    (b)    The safety of the pursuing officers.

    (c)    Whether the circumstances are serious enough to continue the pursuit.

    (d)    Whether there is adequate staffing to continue the pursuit.

    (e)    The ability to maintain the pursuit.

As soon as practical, a supervisor or the Watch Commander should review a request for assistance from another agency. The Watch Commander or supervisor, after consideration of the above factors, may decline to assist in, or assume the other agency's pursuit.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000092

**Exhibit 1**
**Page 82 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Vehicle Pursuits*

Assistance to a pursuing agency by officers of this department will conclude at the University limits, provided that the pursuing agency has sufficient assistance from other sources. Ongoing participation from this department may continue only until sufficient assistance is present.

In the event that the termination point of a pursuit from another agency is within this jurisdiction, officers shall provide appropriate assistance, including, but not limited to, scene control, coordination and completion of supplemental reports and any other assistance requested or needed.

## 315.7  PURSUIT INTERVENTION
Pursuit intervention is an attempt to stop the suspect's ability to continue to flee in a vehicle through tactical application of technology, tire deflation devices, blocking or vehicle intercept, boxing-in, the PIT, ramming or roadblock procedures.

### 315.7.1  WHEN USE IS AUTHORIZED
Whenever practicable, an officer shall seek approval from a supervisor before employing any intervention to stop the pursued vehicle. In deciding whether to use intervention tactics, officers/ supervisors should balance the risk of allowing the pursuit to continue with the potential hazards arising from the use of each tactic to the public, the officers and persons in or on the pursued vehicle. With this in mind, the decision to use any intervention tactic should be reasonable in light of the circumstances apparent to the officer at the time of the decision.

It is imperative that officers act within the bounds of legality, good judgment and accepted practices.

### 315.7.2  USE OF FIREARMS
The use of firearms to disable a pursued vehicle is not generally an effective tactic and involves all the dangers associated with discharging firearms. Officers should not utilize firearms during an ongoing pursuit unless the conditions and circumstances meet the requirements authorizing the use of deadly force. Nothing in this section shall be construed to prohibit any officer from using a firearm to stop a suspect from using a vehicle as a deadly weapon.

### 315.7.3  INTERVENTION STANDARDS
Any intervention tactic, depending upon the conditions and circumstances under which it is used, may present dangers to the officers, the public or anyone in or on the vehicle being pursued. Certain applications of intervention tactics may be construed to be a use of force, including deadly force, and are subject to the policies guiding such use. Officers hall consider these facts and requirements prior to deciding how, when, where, and if an intervention tactic should be employed. Only properly trained personnel shall employ an intervention tactic.

    (a)    Blocking or vehicle intercept should only be considered in cases involving felony suspects or impaired drivers who pose a threat to public safety, and when officers reasonably believe that attempting a conventional enforcement stop will likely result in the driver attempting to flee in the vehicle. Because of the potential risks involved

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000093

**Exhibit 1**
**Page 83 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Vehicle Pursuits*

this intervention tactic should only be employed by properly trained officers and after giving consideration to:

1. The need to immediately stop the suspect vehicle or prevent it from leaving substantially outweighs the risk of injury or death to occupants of the suspect vehicle, officers, or others.

2. All other reasonable intervention tactics have failed or reasonably appear ineffective.

3. Employing the blocking or vehicle intercept maneuver does not unreasonably increase the risk of danger to those involved or the public.

4. The suspect vehicle is stopped or traveling at a low speed.

5. Only law enforcement vehicles should be used in this tactic.

(b) The PIT is limited to use by properly trained officers with the approval of a supervisor and upon assessment of the circumstances and conditions presented at the time, including the potential for risk of injury to officers, the public and occupants of the pursued vehicle.

(c) Ramming a fleeing vehicle should be done only after other reasonable tactical means at the officer's disposal have been exhausted or would not be effective, and immediate control is necessary. Ramming should be reserved for situations where there does not appear to be another reasonable alternative method. If there does not reasonably appear to be a present or immediately foreseeable serious threat to the public, the use of ramming is not authorized. When ramming is used as a means to stop a fleeing vehicle, the following factors should be present:

1. The suspect is an actual or suspected felon, who reasonably appears to represent a serious threat to the public if not apprehended.

2. The suspect is driving with willful or wanton disregard for the safety of other persons or is driving in a reckless and life-endangering manner or using the vehicle as a weapon.

(d) Boxing-in a suspect vehicle should only be attempted upon approval of a supervisor. The use of such a tactic must be carefully coordinated with all involved officers, taking into consideration the circumstances and conditions apparent at the time as well as the potential risk of injury to officers, the public and occupants of the pursued vehicle. Officers and supervisors should weigh the potential consequences against the need to immediately stop the vehicle.

(e) Tire deflation devices should be deployed only after notification of pursuing officers and the supervisor of the intent and location of the deployment, and in a manner that:

1. Should reasonably only affect the pursued vehicle.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000094

**Exhibit 1**
**Page 84 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Vehicle Pursuits*

2.   Provides the deploying officer adequate cover and escape from intentional or unintentional exposure to the approaching vehicle.

3.   Takes into account the limitations of such devices as well as the potential risk to officers, the public and occupants of the pursued vehicle.

4.   Takes into account whether the pursued vehicle is a motorcycle, a vehicle transporting hazardous materials or a school bus transporting children.

(f)   Because roadblocks involve a potential for serious injury or death to occupants of the pursued vehicle if the suspect does not stop, the intentional placement of roadblocks in the direct path of a pursued vehicle is generally discouraged and should not be deployed without prior approval of a supervisor. If roadblocks are deployed, it should only be done under extraordinary conditions when all other reasonable intervention tactics have failed or reasonably appear ineffective and the need to immediately stop the pursued vehicle substantially outweighs the risks of injury or death to occupants of the pursued vehicle, officers or the public.

## 315.8   REPORTING REQUIREMENTS
All appropriate reports shall be completed to comply with appropriate laws and policies or procedures:

(a)   The primary pursuing officer shall complete appropriate crime/arrest reports

(b)   The primary pursuing officer or supervisor shall complete the appropriate pursuit report.

(c)   After first obtaining the available information, the involved, or if unavailable, on-duty field supervisor shall promptly complete a supervisor's log or interoffice memorandum, briefly summarizing the pursuit to the Chief of Police or the authorized designee. This log or memorandum should include, at a minimum:

1.   Date and time of pursuit.

2.   Initial reason and circumstances surrounding the pursuit.

3.   Length of pursuit in distance and time, including the starting and termination points.

4.   Involved vehicles and officers.

5.   Alleged offenses.

6.   Whether a suspect was apprehended, as well as the means and methods used.

(a)   Any use of force shall be reported and documented in compliance with the Use of Force Policy.

7.   Arrestee information, if applicable.

8.   Any injuries and/or medical treatment.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000095

**Exhibit 1**
**Page 85 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Vehicle Pursuits*

9.  Any property or equipment damage.

10. Name of supervisor at the scene or who handled the incident.

11. A preliminary determination that the pursuit appears to be in compliance with this policy or that additional review and/or follow-up is warranted.

12. After receiving copies of reports, logs and other pertinent information, the Chief of Police or the authorized designee shall conduct or assign the completion of a post-pursuit review, as appropriate.

13. Annually, the Chief of Police should direct a documented review and analysis of department vehicle pursuits to minimally include policy suitability, policy compliance and training needs.

## 315.9  PURSUIT DRIVING

The decision to use specific driving tactics requires the same assessment of the factors officer considered when determining whether to initiate and/or terminate a pursuit. The following are tactics for officers who are involved in the pursuit:

(a) Officers, considering their driving skills and vehicle performance capabilities, will space themselves from other involved vehicles so that they are able to see and avoid hazards or react safely to unusual maneuvers by the fleeing vehicle.

(b) Because intersections can present increased risks, the following tactics should be considered:

1.  Available officers not directly involved in the pursuit may proceed safely to controlled intersections ahead of the pursuit in an effort to warn cross traffic.

2.  Pursuing officers should exercise due caution and slow down as may be necessary when proceeding through controlled intersections.

(c) As a general rule, officers should not pursue a vehicle driving the wrong way on a roadway, highway or freeway. In the event the pursued vehicle does so, the following tactics should be considered:

1.  Request assistance from available air support.

2.  Maintain visual contact with the pursued vehicle by paralleling the vehicle on the correct side of the roadway.

3.  Request other officers to observe exits available to the suspect.

4.  Notifying the Oregon State Police (OSP) or other law enforcement agency when it appears that the pursuit may enter its jurisdiction.

(d) Officers involved in a pursuit should not attempt to pass other pursuing vehicles unless the situation indicates otherwise or they are requested to do so by the

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000096

**Exhibit 1**
**Page 86 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Vehicle Pursuits*

pursuing officer and with a clear understanding of the maneuver process between the involved officers.

### 315.9.1  PURSUIT TRAILING
In the event that initial pursuing officers relinquish control of the pursuit to another agency, the initial officers may, with the permission of a supervisor, trail the pursuit to the termination point in order to provide information and assistance for the arrest of the suspect and reporting the incident.

### 315.9.2  AIR SUPPORT ASSISTANCE
When available, air support assistance should be requested. Once the air support crew has established visual contact with the pursued vehicle, they should assume communication control over the pursuit. The primary and secondary ground pursuit vehicles, or involved supervisor, will maintain operational control but should consider whether the participation of air support warrants their continued close proximity and/or involvement in the pursuit.

The air support crew should coordinate the activities of resources on the ground, report progress of the pursuit, and provide officers and supervisors with details of upcoming traffic congestion, road hazards or other pertinent information to evaluate whether to continue the pursuit. If officers on the ground are not within visual contact of the pursued vehicle and the air support crew determines that it is unsafe to continue the pursuit, the air support crew should recommend terminating the pursuit.

### 315.9.3  OFFICERS NOT INVOLVED IN THE PURSUIT
Officers who are not involved in the pursuit should remain in their assigned area, should not parallel the pursuit route and should not become involved with the pursuit unless directed by a supervisor. Uninvolved officers are authorized to use emergency equipment at intersections along the pursuit path to clear intersections of vehicular and pedestrian traffic to protect the public. Those officers should attempt to place their vehicles in locations that provide some safety or an escape route in the event of an unintended collision or if the suspect intentionally tries to ram the police department vehicle.

Non-pursuing members needed at the pursuit termination point should respond in a nonemergency manner, observing the rules of the road.

The primary pursuit vehicle, secondary pursuit vehicle and supervisor vehicle should be the only vehicles operating under emergency conditions (emergency lights and siren) unless other officers are assigned to the pursuit.

### 315.10  POLICY
It is the policy of this department to weigh the importance of apprehending suspects who unlawfully flee from law enforcement against the risks associated with vehicle pursuits.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department
Vehicle Pursuits - 87

UO_Alvarez000097

**Exhibit 1**
**Page 87 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Vehicle Pursuits*

### 315.11  LOSS OF PURSUED VEHICLE
When the pursued vehicle is lost, the involved officers should broadcast pertinent information to assist other officers in locating the vehicle. The primary pursuing officer will be responsible for coordinating any further search for either the pursued vehicle or suspects fleeing on foot.

### 315.12  CAPTURE OF SUSPECTS
Proper self-discipline and sound professional judgment are the keys to a successful conclusion of a pursuit and apprehension of evading suspects. Officers shall use only that amount of force that reasonably appears necessary given the facts and circumstances perceived by the officer at the time of the event to accomplish a legitimate law enforcement purpose.

Unless relieved by a supervisor, the primary pursuing officer should coordinate efforts to apprehend the suspect following the pursuit. Officers should consider the safety of the public and the involved officers when formulating plans for setting up perimeters or for containing and capturing the suspect.

### 315.13  PURSUIT TRAINING
In addition to initial and supplementary training on pursuits, all officers will participate no less than annually, in regular and periodic training addressing this policy and the importance of vehicle safety and protecting the public. Training will include recognition of the need to balance the known offense and the need for immediate capture against the risks to officers and others.

### 315.14  POLICY REVIEW
Officers of this department shall certify in writing that they have received, read and understand this policy initially, upon any amendments and whenever training on the policy is provided.

### 315.15  ANNUAL REVIEW
During the first calendar quarter of each year, the Operations Division Commander will ensure that an annual review of all vehicle pursuit incidents for the previous calendar year is conducted. The analysis will focus on the effectiveness and trends in the use of vehicle pursuits that might suggest training or equipment needs, or policy modification. Specific detail including items such as officer names, case numbers, location of occurrence are not needed for this purpose and therefore will not be part of this process.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000098

**Exhibit 1**
**Page 88 of 550**



**Policy**
**317**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Officer Response to Calls

### 317.1  PURPOSE AND SCOPE
This policy provides for the safe and appropriate response to emergency and non-emergency situations whether dispatched or self-initiated.

### 317.2  RESPONSE TO CALLS
Officers shall proceed immediately to calls that are of an emergency nature. A code 3 response should be considered when available information reasonably indicates that a person is threatened with injury or death, a felony property crime is in progress, or serious property damage is imminent and a more immediate law enforcement response is needed to mitigate injury, property loss, or to apprehend the suspect(s).

Officers responding Code 3 shall operate emergency lights and siren as is reasonably necessary pursuant to ORS 820.300 and ORS 820.320. Officers shall only use the wail and yelp function of the siren as an emergency sound. The hi-lo function of the siren is not considered an emergency sound pursuant to OAR 735-110-0000(8) and OAR 735-110-0010(1-3).

Responding with emergency light(s) and siren does not relieve the officer of the duty to continue to drive with due regard for the safety of all persons.

ORS 820.320(2) allows officers to omit the use of emergency lights and siren if it reasonably appears that the use of either or both would prevent or hamper the apprehension or detection of a violator. Except as stated in the previous sentence, Officers who fail to use appropriate warning equipment, are not exempt from following the rules of the road (ORS 820.300).

Officers responding to non-emergency calls shall observe all traffic laws and proceed without the use of emergency lights and siren.

### 317.3  REQUESTING EMERGENCY ASSISTANCE
Requests for emergency assistance should be limited to those situations where the involved personnel reasonably believe that there is an immediate threat to the safety of officers, or assistance is needed to prevent imminent serious harm to a citizen. In any event, where a situation has stabilized and emergency response is not required, the requesting officer shall immediately notify Communications and Emergency Response Center.

If circumstances permit, the requesting officer should give the following information:

- The unit number
- The location
- The reason for the request and type of emergency
- The number of units required

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000099

**Exhibit 1**
**Page 89 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Officer Response to Calls*

### 317.3.1   NUMBER OF UNITS ASSIGNED
Watch Commanders and field supervisors will manage the number of units responding Code 3 to a call.

### 317.4   INITIATING CODE 3 RESPONSE
If an officer believes a Code-3 response to any call is appropriate, the officer shall immediately notify Communications and Emergency Response Center and state the location where they are responding from. Other officers who believe a Code-3 response is appropriate, shall announce their Code 3 response and location on the radio. The Watch Commander or field supervisor will make a determination as to how many units driving Code-3 is appropriate.

### 317.5   RESPONSIBILITIES OF RESPONDING OFFICER(S)
Officers shall exercise sound judgment and care with due regard for life and property when responding to an emergency call. Officers shall reduce speed at all street intersections as may be necessary for safe operation.

The decision to continue a Code-3 response is at the discretion of the officer. If, in the officer's judgment, the roadway conditions or traffic congestion does not permit such a response without unreasonable risk, the officer may elect to respond to the call without the use of emergency lights and siren at the legal speed limit. In such an event, the officer should immediately notify Communications and Emergency Response Center. An officer shall also discontinue the Code-3 response when directed by a supervisor.

If a Code-3 response is appropriate, an officer shall immediately give the location from which he/she is responding.

If an officer is advised by the Watch Commander or field supervisor not to respond Code 3, they will immediately turn off all emergency equipment and will conform to all traffic regulations.

### 317.6   COMMUNICATIONS RESPONSIBILITIES
When Officers announce they are responding Code 3 to a call, the dispatcher shall:

    (a)   Confirm the location from which the unit is responding

    (b)   Notify and coordinate allied emergency services (e.g., fire and ambulance)

    (c)   Continue to obtain and broadcast information as necessary concerning the response and monitor the situation until it is stabilized or terminated

    (d)   Control all radio communications during the emergency and coordinate assistance under the direction of the Watch Commander or field supervisor

### 317.7   SUPERVISORY RESPONSIBILITIES
Upon being notified that a Code-3 response has been initiated, the Watch Commander or the field supervisor shall verify the following:

    (a)   The proper response has been initiated

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000100

**Exhibit 1**
**Page 90 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Officer Response to Calls*

    (b)    No more than those units reasonably necessary under the circumstances are involved in the response

    (c)    Affected outside jurisdictions are being notified as practical

The field supervisor shall monitor the response until it has been stabilized or terminated and assert control by directing units into or out of the response if necessary. If, in the supervisor's judgment, the circumstances require additional units to be assigned a Code-3 response, the supervisor may do so.

It is the supervisor's responsibility to terminate a Code-3 response that, in his/her judgment, is inappropriate due to the circumstances.

When making the decision to authorize a Code-3 response, the Watch Commander or the field supervisor should consider the following:

- The type of call
- The necessity of a timely response
- Traffic and roadway conditions
- The location of the responding units

## 317.8   FAILURE OF EMERGENCY EQUIPMENT
If the emergency equipment on the vehicle should fail to operate, the officer must terminate the Code-3 response and respond accordingly. In all cases, the officer shall notify the Watch Commander, field supervisor, or Communications and Emergency Response Center of the equipment failure so that another unit may be assigned to the emergency response.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000101

**Exhibit 1**
**Page 91 of 550**



**Policy**
**318**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Medical Transports and Services

### 318.1 PURPOSE AND SCOPE
The purpose of this policy is to establish a procedure for requesting medical transportation for persons seeking or requiring medical treatment with non-life threatening or serious medical conditions.

### 318.2 POLICY
It is the policy of the University of Oregon Police Department (UOPD) to refer persons who are in need of medical treatment for non-life threatening conditions to obtain transport services through alternative transportation services. In life-threatening or serious medical conditions, emergency ambulatory transportation will be summoned.

### 318.3 PROCEDURE
A. UOPD dispatcher receiving a call for medical assistance will evaluate the caller's information and upon determination the caller's condition is not life threatening or a serious medical condition, direct to the scene First Aid/AED trained UOPD officers.

B. UOPD officers who respond to the location of an injured or ill person will make a preliminary assessment of the individual's condition and determine whether immediate medical assistance is required.

1. Persons determined to have a serious or life threatening medical condition, the officer will advise the dispatcher to immediately notify the 911 Center and request paramedics. The ill or injured person will be transported to an appropriate medical facility by emergency ambulance services.

2. Persons with non-life threatening conditions or injuries will be referred to alternative transportation services. For first aid assistance, UOPD may contact a local non-emergency medical unit for on-site treatment or transport to a medical facility.

C. Alternative Transportation Services

1. MedExpress: The University has contracted with MedExpress, a first aid and non-emergency transportation service. For University employees, the service is available for work-related injuries or conditions. Students on campus are eligible for this service at any time. MedExpress units are staffed with Emergency Medical Technicians and Paramedics who are trained to assess and treat injuries requiring first aid. If an injury requires evaluation and/or treatment by a physician, MedExpress will transport the employee to Cascade Health Solutions Occupational Medicine Clinic or another medical facility.

a. An employee, who needs non-emergency evaluation or treatment for an injury or condition unrelated to work, should contact a family member or friend if transportation assistance is necessary while at work.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000102

**Exhibit 1**
**Page 92 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Medical Transports and Services*

b. Student employees and GTF's can use MedExpress. However, student employees and GTF's are usually eligible for treatment at the University Health Center and MedExpress services may not be necessary.

2. Private Taxi Service: This service is available to students, staff or faculty who are deemed to be in need of basic transportation to a local medical facility or office to access medical services.

3. CAHOOTS: CAHOOTS is a mobile crisis intervention team integrated into the City of Eugene's Public Safety system. Free response is available for a broad range of non-criminal crises including intoxication, disorientation, substance abuse and mental illness problems, dispute resolution and street facilitation. The CAHOOTS van can be dispatched through the City's 911 department. Transport to treatment is also provided. The service is confidential and voluntary. It is staffed and managed by White Bird Clinic.

4. UOPD: This service is only available upon a case-by case basis and must be pre-approved by the Executive Coordinator on duty at the time of the incident. This mode of transportation is discouraged due to the liability and risk in transporting ill or injured persons whose medical condition can worsen during the transport.

D. UOPD will notify EHS and U of O Risk Management within 2 hours if any University employee is transported to medical facilities for treatment. EHS will make OR-OSHA notifications if necessary and begin appropriate investigation of the situation.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000103

**Exhibit 1**
**Page 93 of 550**



**Policy**
**321**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Domestic Violence

### 321.1  PURPOSE AND SCOPE
The purpose of this policy is to provide the guidelines necessary to deter, prevent and reduce domestic violence through vigorous enforcement and to address domestic violence as a serious crime against society. The policy specifically addresses the commitment of this department to take enforcement action when appropriate, to provide assistance to victims and to guide officers in the investigation of domestic violence.

#### 321.1.1  DEFINITIONS
Definitions related to this policy include:

**Court order** - All forms of orders related to domestic violence, that have been issued by a court of this state or another, whether civil or criminal, regardless of whether service has been made.

### 321.2  POLICY
The University of Oregon Police Department's response to incidents of domestic violence and violations of related court orders shall stress enforcement of the law to protect the victim and shall communicate the philosophy that domestic violence is criminal behavior. It is also the policy of this department to facilitate victims' and offenders' access to appropriate civil remedies and community resources whenever feasible.

### 321.3  OFFICER SAFETY
The investigation of domestic violence cases often places officers in emotionally charged and sometimes highly dangerous environments. No provision of this policy is intended to supersede the responsibility of all officers to exercise due caution and reasonable care in providing for the safety of any officers and parties involved.

### 321.4  INVESTIGATIONS
The following guidelines should be followed by officers when investigating domestic violence cases:

(a) Calls of reported, threatened, imminent or ongoing domestic violence, and the violation of any court order are of extreme importance and should be considered among the highest response priorities. This includes incomplete 9-1-1 calls.

(b) When practicable, officers should obtain and document statements from the victim, the suspect and any witnesses, including children, in or around the household or location of occurrence.

(c) Officers should list the full name and date of birth (and school if available) of each child who was present in the household at the time of the offense. The names of other children who may not have been in the house at that particular time should also be obtained for follow-up.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000104

**Exhibit 1**
**Page 94 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Domestic Violence*

(d) When practicable and legally permitted, video or audio record all significant statements and observations.

(e) All injuries should be photographed, regardless of severity, taking care to preserve the victim's personal privacy. Where practicable, photographs should be taken by a person of the same sex. Victims whose injuries are not visible at the time of the incident should be asked to contact the Investigation Unit in the event that the injuries later become visible.

(f) Officers should request that the victim complete and sign an authorization for release of medical records related to the incident when applicable.

(g) If the suspect is no longer at the scene, officers should make reasonable efforts to locate the suspect to further the investigation, provide the suspect with an opportunity to make a statement and make an arrest or seek an arrest warrant if appropriate.

(h) Seize any firearms or other dangerous weapons in the home, if appropriate and legally permitted, for safekeeping or as evidence.

(i) When completing an incident or arrest report for violation of a court order, officers should include specific information that establishes that the offender has been served, including the date the offender was served, the name of the agency that served the order and the provision of the order that the subject is alleged to have violated. When reasonably available, the arresting officer should attach a copy of the order to the incident or arrest report.

(j) Officers should take appropriate enforcement action when there is probable cause to believe an offense has occurred. Factors that should not be used as sole justification for declining to take enforcement action include:

1. Marital status of suspect and victim.

2. Whether the suspect lives on the premises with the victim.

3. Claims by the suspect that the victim provoked or perpetuated the violence.

4. The potential financial or child custody consequences of arrest.

5. The physical or emotional state of either party.

6. Use of drugs or alcohol by either party.

7. Denial that the abuse occurred where evidence indicates otherwise.

8. A request by the victim not to arrest the suspect.

9. Location of the incident (public/private).

10. Speculation that the complainant may not follow through with the prosecution.

11. The racial, cultural, social, professional position or sexual orientation of the victim or suspect.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000105

**Exhibit 1**
**Page 95 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Domestic Violence*

### 321.4.1   IF A SUSPECT IS ARRESTED
If a suspect is arrested, officers should:

    (a)    Advise the victim that there is no guarantee the suspect will remain in custody.

    (b)    Refer the victim to the Lane County Jail website in order to register on the Victim Information and Notification Everyday (VINE) website for notification of suspect release. If VINE is down or the victim does not have access to VINE, notify the jail staff so they can put release notation information in the suspect's computer file.

    (c)    Advise the victim whether any type of court order will be in effect when the suspect is released from jail.

### 321.4.2   IF NO ARREST IS MADE
If no arrest is made, the officer should:

    (a)    Advise the parties of any options, including but not limited to:

        1.    Voluntary separation of the parties.

        2.    Appropriate resource referrals (e.g., counselors, friends, relatives, shelter homes, victim witness unit).

    (b)    Document the resolution in a report.

## 321.5   VICTIM ASSISTANCE
Victims may be traumatized or confused. Officers should:

    (a)    Recognize that a victim's behavior and actions may be affected.

    (b)    Provide the victim with the department's domestic violence information handout, even if the incident may not rise to the level of a crime.

    (c)    Alert the victim to any available victim advocates, shelters and community resources.

    (d)    Stand by for a reasonable amount of time when an involved person requests law enforcement assistance while removing essential items of personal property.

    (e)    Seek medical assistance as soon as practicable for the victim if he/she has sustained injury or complains of pain.

    (f)    Ask the victim whether he/she has a safe place to stay. Assist in arranging to transport the victim to an alternate shelter if the victim expresses a concern for his/her safety or if the officer determines that a need exists.

    (g)    Make reasonable efforts to ensure that children or dependent adults who are under the supervision of the suspect or victim are being properly cared for.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000106

**Exhibit 1**
**Page 96 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Domestic Violence*

    (h)    Seek or assist the victim in obtaining an emergency order if appropriate.

An officer who has probable cause to believe there are circumstances for a mandatory arrest or that a victim is in immediate danger of abuse may apply for an emergency protective order with the consent or permission of the victim (2015 Oregon Laws, c.252, § 1).

## 321.6   DISPATCH ASSISTANCE
All calls of domestic violence, including incomplete 9-1-1 calls, should be dispatched as soon as practicable.

Dispatchers are not required to verify the validity of a court order before responding to a request for assistance. Officers should request that dispatchers check whether any of the involved persons are subject to the terms of a court order.

## 321.7   FOREIGN COURT ORDERS
Various types of orders may be issued in domestic violence cases. Any foreign court order properly issued by a court of another state, Indian tribe or territory shall be enforced by officers as if it were the order of a court in this state. An order should be considered properly issued when it reasonably appears that the issuing court has jurisdiction over the parties and reasonable notice and opportunity to respond was given to the party against whom the order was issued (18 USC § 2265). An otherwise valid out-of-state court order shall be enforced, regardless of whether the order has been properly registered with this state.

## 321.8   VERIFICATION OF COURT ORDERS
Determining the validity of a court order, particularly an order from another jurisdiction, can be challenging. Therefore, in determining whether there is probable cause to make an arrest for a violation of any court order, officers should carefully review the actual order when available, and, where appropriate and practicable:

    (a)    Ask the subject of the order about his/her notice or receipt of the order, his/her knowledge of its terms and efforts to respond to the order.

    (b)    Check available records or databases that may show the status or conditions of the order.

    (c)    Contact the issuing court to verify the validity of the order.

    (d)    Contact a law enforcement official from the jurisdiction where the order was issued to verify information.

Officers should document in an appropriate report their efforts to verify the validity of an order, regardless of whether an arrest is made. Officers should contact a supervisor for clarification when needed.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000107

**Exhibit 1**
**Page 97 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Domestic Violence*

### 321.8.1 SERVICE OF COURT ORDERS
Officers should, if requested and practicable, serve any unserved restraining order when called to the scene of a disturbance. Any officer serving such a restraining order shall ensure that a copy of proof of service is returned to the Sheriff for entry into the Law Enforcement Data System (LEDS) and the National Crime Information Center (NCIC) system (ORS 107.720).

### 321.8.2 SERVICE OF EMERGENCY PROTECTIVE ORDERS
An officer who obtains an emergency protective order for a victim shall provide the victim with a certified copy and ensure that a certified copy of the order and the supporting declaration for the order is filed with the court (ORS 133.035).

The officer who obtained the emergency protective order shall serve the respondent personally. Upon completion of the service, the officer shall file a proof of service with the court and ensure that the order is entered into LEDS. If service cannot be completed within one day of the order's entry, the officer shall notify the court (ORS 133.035).

If an officer receives a termination order from the court, the officer shall ensure that the order is promptly removed from LEDS (ORS 133.035).

### 321.9 STANDARDS FOR ARREST

(a) Officers who respond to an incident of domestic disturbance and have probable cause to believe an assault has occurred between family or household members as defined in ORS 107.705, or who believe that one such person has created in the other a fear of imminent serious physical injury, shall arrest and take into custody the alleged assailant or potential assailant (ORS 133.055).

(b) Dual arrests are not required (ORS 133.055). Officers shall make reasonable efforts to identify and arrest the primary assailant in any incident. In identifying the primary assailant, an officer shall consider:

   1. The comparative extent of the injuries inflicted or the seriousness of threats creating a fear of physical injury.

   2. If reasonably ascertainable, the history of domestic violence between the persons involved.

   3. Whether any alleged crime was committed in self-defense.

   4. The potential for future assaults.

(c) Once a suspect has been arrested under the provisions of ORS 133.055, the suspect shall be taken to jail. Officers have no authority to release the arrested person.

(d) Officers shall arrest and take a suspect into custody when the officer has probable cause to believe that a restraining order or emergency protective order has been issued, a copy of the order and proof of service on the suspect have been filed, and the suspect has violated the terms of the order (ORS 133.310).

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000108

**Exhibit 1**
**Page 98 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Domestic Violence*

---

**321.10  REPORTS AND NOTIFICATIONS**
Officers should document in their report that they provided each domestic violence victim with a copy of the department's domestic violence victim information handout (ORS 133.055).

Reporting officers should also provide the victim with the case number of the report. The case number may be placed in the space provided on the domestic violence victim information handout. If the case number is not immediately available, an explanation should be given about how the victim can obtain the information at a later time.

321.10.1  EMERGENCY PROTECTIVE ORDERS
The Captain of Administration shall ensure that a system is in place that provides officers at the scene of an alleged violation of an emergency protective order of the terms and existence of the protective order (ORS 133.035).

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000109

**Exhibit 1**
**Page 99 of 550**



**Policy**
**323**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Search and Seizure

### 323.1  PURPOSE AND SCOPE
Both the federal and state Constitutions provide every individual with the right to be free from unreasonable searches and seizures. This policy provides general guidelines for University of Oregon Police Department personnel to consider when dealing with search and seizure issues.

### 323.2  POLICY
It is the policy of the University of Oregon Police Department to respect the fundamental privacy rights of individuals. Members of this department will conduct searches in strict observance of the constitutional rights of persons being searched. All seizures by this department will comply with relevant federal and state law governing the seizure of persons and property.

The Department will provide relevant and current training to officers as guidance for the application of current law, local community standards and prosecutorial considerations regarding specific search and seizure situations, as appropriate.

### 323.3  SEARCHES
The U.S. Constitution generally provides that a valid warrant is required in order for a search to be valid. There are, however, several exceptions that permit a warrantless search.

Examples of law enforcement activities that are exceptions to the general warrant requirement include, but are not limited to, searches pursuant to the following:

- Valid consent
- Incident to a lawful arrest
- Legitimate community caretaking interests
- Vehicle searches under certain circumstances
- Exigent circumstances

Certain other activities are recognized by federal and state courts and by certain statutes as legitimate law enforcement activities that also do not require a warrant. Such activities may include seizure and examination of abandoned property, and observations of activities and property located on open public areas.

Because case law regarding search and seizure is constantly changing and subject to interpretation by the courts, each member of this department is expected to act in each situation according to current training and his/her familiarity with clearly established rights as determined by case law.

Whenever practicable, officers are encouraged to contact a supervisor to resolve questions regarding search and seizure issues prior to electing a course of action.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000110

**Exhibit 1**
**Page 100 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Search and Seizure*

---

### 323.4   SEARCH PROTOCOL

Although conditions will vary and officer safety and other exigencies must be considered in every search situation; the following guidelines should be followed whenever circumstances permit:

(a)   Members of this department will strive to conduct searches with dignity and courtesy.

(b)   Officers should explain to the person being searched the reason for the search and how the search will be conducted.

(c)   Searches should be carried out with due regard and respect for private property interests and in a manner that minimizes damage. Property should be left in a condition as close as reasonably possible to its pre-search condition.

(d)   In order to minimize the need for forcible entry, an attempt should be made to obtain keys, combinations or access codes when a search of locked property is anticipated.

(e)   When the person to be searched is of the opposite sex as the searching officer, a reasonable effort should be made to summon an officer of the same sex as the subject to conduct the search. When it is not practicable to summon an officer of the same sex as the subject, the following guidelines should be followed:

   1.   Another officer or a supervisor should witness the search.

   2.   The officer should not search areas of the body covered by tight-fitting clothing, sheer clothing or clothing that could not reasonably conceal a weapon.

(f)   Officers should not search persons, vehicles or rooms without a cover officer present unless they reasonably determine that a delay in the search would present a greater safety risk. The cover officer should not be involved in the search, and will maintain a position where they can act as the safety officer during the search.

(g)   Officers often are required to transport witnesses in a police vehicle (for example, to a location of a stop in order to identify a criminal suspect). Generally, the witness is transported in the front seat of the officer's car. Officers may request to search a witness if, in their assessment, a search is reasonable. Such a search will only be done if the witnesses consents. Officers will consider the following when deciding whether to request to search a witness:

   1.   Nature of the crime

   2.   Involvement of the witness in the crime

   3.   Other factors of the immediate situation

### 323.5   DOCUMENTATION

Officers are responsible to document any search and to ensure that any required reports are sufficient including, at minimum, documentation of the following:

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000111

**Exhibit 1**
**Page 101 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Search and Seizure*

- Reason for the search

- Any efforts used to minimize the intrusiveness of any search (e.g., asking for consent or keys)

- What, if any, injuries or damage occurred

- All steps taken to secure property

- The results of the search, including a description of any property or contraband seized

- If the person searched is the opposite sex, any efforts to summon an officer of the same sex as the person being searched and the identification of any witness officer

Documentation will take place in a police report, FI card or CAD entry. If a police report is already being written, documentation shall be in that report. If a police report is not normally written, an officer may document the search on an "Information Report", FI card or CAD entry, whichever provides the best record. Supervisors shall review reports and other documentation to ensure that the reports are accurate, that actions are properly documented and that current legal requirements and department policy have been met.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000112

**Exhibit 1**
**Page 102 of 550**



**Policy**
**325**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Temporary Custody of Juveniles

### 325.1  PURPOSE AND SCOPE
This policy provides guidelines consistent with the Juvenile Justice and Delinquency Prevention Act for juveniles taken into temporary custody by members of the University of Oregon Police Department (34 USC § 11133).

Guidance regarding contacting juveniles at schools or those who may be victims is provided in the Child Abuse Policy.

### 325.1.1  DEFINITIONS
Definitions related to this policy include:

**Juvenile non-offender** - An abused, neglected, dependent or alien juvenile who may be legally held for his/her own safety or welfare. This includes a juvenile taken into protective custody when conditions or surroundings reasonably appear to jeopardize the juvenile's welfare or when it reasonably appears that the child has run away from home (ORS 419B.150). This also includes any juvenile who may have initially been contacted for an offense that would not subject an adult to arrest (e.g., fine-only offense) but was taken into custody for his/her protection or for purposes of reuniting the juvenile with a parent, guardian or other responsible person.

**Juvenile offender** - A juvenile under 18 years of age who is alleged to have committed an offense that would subject an adult to arrest (a non-status offense). It also includes a juvenile who possesses a handgun in violation of ORS 166.250 (28 CFR 31.303).

**Non-secure custody** - When a juvenile is held in the presence of an officer or other custody employee at all times and is not placed in a locked room, cell or behind any locked doors. Juveniles in non-secure custody may be handcuffed but not to a stationary or secure object. Personal supervision, through direct visual monitoring and audio two-way communication is maintained. Monitoring through electronic devices, such as video, does not replace direct visual observation.

**Secure custody** - When a juvenile offender is held in a locked room, a set of rooms or a cell. Secure custody also includes being physically secured to a stationary object.

Examples of secure custody include:

(a)  A juvenile left alone in an unlocked room within the secure perimeter of the adult temporary holding area.

(b)  A juvenile handcuffed to a rail.

(c)  A juvenile placed in a room that contains doors with delayed egress devices that have a delay of more than 30 seconds.

(d)  A juvenile being processed in a secure booking area when an unsecure booking area is available.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000113

**Exhibit 1**
**Page 103 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Temporary Custody of Juveniles*

(e)    A juvenile left alone in a secure booking area after being photographed and fingerprinted.

(f)    A juvenile placed in a cell within the adult temporary holding area, whether or not the cell door is locked.

**Sight and sound separation** - Located or arranged to prevent physical, visual or auditory contact.

**Status offender** - A juvenile suspected of committing a criminal violation of the law that would not be a criminal violation but for the age of the offender. Examples may include running away, underage possession of tobacco, curfew violation or truancy. A juvenile in custody on a court order or warrant based upon a status offense is also a status offender.

## 325.2  POLICY
The University of Oregon Police Department is committed to releasing juveniles from temporary custody as soon as reasonably practicable and keeping juveniles safe while they are in temporary custody at the University of Oregon Police Department. Juveniles should be held in temporary custody only for as long as reasonably necessary for processing, transfer or release.

## 325.3  JUVENILES WHO SHOULD NOT BE HELD
Juveniles who exhibit any of the following conditions should not be held at the University of Oregon Police Department:

(a)    Unconscious

(b)    Seriously injured

(c)    A known suicide risk or obviously severely emotionally disturbed

(d)    Significantly intoxicated

(e)    Extremely violent or continuously violent

Officers taking custody of a juvenile who exhibits any of the above conditions should take reasonable steps to provide medical attention or mental health assistance and notify a supervisor of the situation.

These juveniles should not be held at the University of Oregon Police Department unless they have been evaluated by a qualified medical and/or mental health professional.

If the officer taking custody of the juvenile believes the juvenile may be a suicide risk, the juvenile shall be under continuous direct supervision until evaluation, release or a transfer is completed.

## 325.4  CUSTODY OF JUVENILES
Officers should take custody of a juvenile and temporarily hold the juvenile at the University of Oregon Police Department when there is no other lawful and practicable alternative to temporary custody. Refer to the Child Abuse Policy for additional information regarding detaining a juvenile that is suspected of being a victim.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000114

**Exhibit 1**
**Page 104 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Temporary Custody of Juveniles*

No juvenile should be held in temporary custody at the University of Oregon Police Department without authorization of the arresting officer's supervisor or the Watch Commander.

Any juvenile taken into custody shall be released to the care of the juvenile's parent or other responsible adult or transferred to a juvenile custody facility or to other authority as soon as practicable and in no event shall a juvenile be held beyond five hours from the time of his/her entry into the University of Oregon Police Department (ORS 419B.160; ORS 419C.130).

### 325.4.1   CUSTODY OF JUVENILE NON-OFFENDERS
Non-offenders taken into protective custody in compliance with the Child Abuse Policy should generally not be held at the University of Oregon Police Department. Custodial arrangements should be made for non-offenders as soon as reasonably possible. Juvenile non-offenders may not be held in secure custody (34 USC § 11133).

### 325.4.2   CUSTODY OF JUVENILE STATUS OFFENDERS
Status offenders should generally be released by citation or with a warning rather than taken into temporary custody. However, officers may take custody of a status offender if requested to do so by a parent or legal guardian in order to facilitate reunification (e.g., transported home or to the station to await a parent). Juvenile status offenders may not be held in secure custody (34 USC § 11133).

### 325.4.3   CUSTODY OF JUVENILE OFFENDERS
Generally, a juvenile offender may be taken into custody:

(a)   When it reasonably appears that the juvenile is a fugitive from another state (ORS 419C.145).

(b)   When there is a court order endorsed as provided in ORS 419C.306 and directing that the juvenile be taken into custody (ORS 419C.080).

(c)   When, if the juvenile were an adult, he/she could be arrested without a warrant (ORS 419C.080).

An officer shall take a juvenile into custody when the officer has probable cause to believe the juvenile, while in a public building or court facility within the last 120 days, unlawfully possessed a firearm or a destructive device (ORS 419C.080).

Generally, an officer may issue a citation in lieu of taking the juvenile into custody if a citation may be issued for the same offense and under the same circumstances to an adult. If a citation in lieu of custody is issued, a copy of the citation shall be sent to the District Attorney (ORS 419C.085).

Juvenile offenders should be held in non-secure custody while at the University of Oregon Police Department unless another form of custody is authorized by this policy or is necessary due to exigent circumstances.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000115

**Exhibit 1**
**Page 105 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Temporary Custody of Juveniles*

### 325.4.4  EXCEPTIONS TO RELEASE OF JUVENILE OFFENDERS
A juvenile offender shall be released to the custody of the juvenile's parent, guardian or other responsible person, except in any of the following circumstances (ORS 419C.100):

(a)  The court has issued a warrant of arrest for the juvenile.

(b)  The officer has probable cause to believe that release of the juvenile may endanger the welfare of the juvenile, the victim or others.

(c)  When the officer has probable cause to believe that the juvenile, while in a public building or court facility within the last 120 days, unlawfully possessed a firearm or destructive device.

If a juvenile offender is not released to the parent, guardian or other responsible person, or to a person identified by the juvenile court, the officer shall take the juvenile to the county juvenile detention facility or appropriate shelter (ORS 419C.103).

### 325.5  NOTIFICATION TO PARENT OR GUARDIAN
As soon as practicable after a juvenile is taken into custody, the officer taking the juvenile into custody shall notify the juvenile's parent, guardian or other person responsible for the juvenile of the following (ORS 419B.160; ORS 419C.097):

(a)  Reason the juvenile was taken into custody

(b)  Location where the juvenile is being temporarily detained

(c)  Intended disposition

(d)  Time and place of any hearing

### 325.5.1  COLLEGE OR UNIVERSITY RECORDS
If the juvenile is enrolled at any college or university at the time of the temporary custody, disclosure of his/her educational records are subject to the regulations set forth in the Family Educational Rights and Privacy Act of 1974 (FERPA).

### 325.6  NO-CONTACT REQUIREMENTS
Sight and sound separation shall be maintained between all juveniles and adults while in custody at the Department (34 USC § 11133). There should also be sight and sound separation between non-offenders and juvenile and status offenders.

In situations where brief or accidental contact may occur (e.g., during the brief time a juvenile is being fingerprinted and/or photographed in booking), a member of the University of Oregon Police Department shall maintain a constant, immediate presence with the juvenile or the adult to minimize any contact. If inadvertent or accidental contact does occur, reasonable efforts shall be taken to end the contact.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000116
**Exhibit 1**
**Page 106 of 550**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Temporary Custody of Juveniles*

### 325.7   TEMPORARY CUSTODY REQUIREMENTS

Members and supervisors assigned to monitor or process any juvenile at the University of Oregon Police Department shall ensure the following:

(a) The Watch Commander should be notified if it is anticipated that a juvenile may need to remain at the University of Oregon Police Department more than four hours. This will enable the Watch Commander to ensure no juvenile is held at the University of Oregon Police Department more than five hours.

(b) A staff member of the same sex shall supervise personal hygiene activities and care, such as changing clothing or using the restroom, without direct observation to allow for privacy.

(c) Personal visual checks and significant incidents/activities shall be noted on the log.

(d) There shall be no viewing devices, such as peep holes or mirrors, of which the juvenile is not aware. Therefore, an employee should inform a juvenile under his/her care that the juvenile will be monitored at all times, unless he/she is using the toilet. This does not apply to surreptitious and legally obtained recorded interrogations.

(e) Juveniles shall have reasonable access to toilets and wash basins.

(f) Food should be provided if a juvenile has not eaten within the past four hours or is otherwise in need of nourishment, including any special diet required for the health of the juvenile.

(g) Juveniles shall have reasonable access to a drinking fountain or water.

(h) Juveniles shall have reasonable opportunities to stand and stretch, particularly if handcuffed or restrained in any way.

(i) Juveniles should have privacy during family, guardian and/or lawyer visits.

(j) Juveniles should be permitted to remain in their personal clothing unless the clothing is taken as evidence or is otherwise unsuitable or inadequate for continued wear while in custody.

(k) Blankets should be provided as reasonably necessary.

(l) Adequate shelter, heat, light and ventilation should be provided without compromising security or enabling escape.

(m) Juveniles shall have adequate furnishings, including suitable chairs or benches.

(n) Juveniles shall have the right to the same number of telephone calls as an adult in custody.

(o) No discipline may be administered to any juvenile, nor may juveniles be subjected to corporal or unusual punishment, humiliation or mental abuse.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000117

**Exhibit 1**
**Page 107 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Temporary Custody of Juveniles*

325.7.1   JUVENILE CONTACTS AT SCHOOL FACILITIES
Absent exigent circumstances, officers shall notify responsible school officials prior to contacting a student on campus while school is in session.

(a)   Reasonable efforts should be taken to coordinate with school officials to minimize disruption of school functions and maintain a low profile police presence when contacting a student.

(b)   Whenever circumstances warrant the temporary detention or formal interview of a juvenile student on campus, the officer should:

1.   When practical and when it would not unreasonably interfere with the investigation, take reasonable steps to notify a parent, guardian, or responsible adult, including those phone numbers listed on any contact card on file with the school or provided by the student. All efforts to make contact with parents and/ or reasons contact was not attempted should be documented.

2.   If efforts to contact a parent, guardian, or responsible adult are unsuccessful or not attempted, a formal interview with the juvenile may proceed without them. Upon the request of the juvenile, a school official may be present during the interview in lieu of a parent.

3.   If contacted, the selected parent, other responsible adult, or school official may be permitted to be present during any interview.

(a)   An adult suspected of child abuse or other criminal activity involving the juvenile, or an adult, who in the opinion of the officer appears to be under the influence or otherwise unable or incompetent to exercise parental rights on behalf of the juvenile, will not be permitted to be present.

(b)   If the officer reasonably believes that exigent circumstances exist which would materially interfere with the officer's ability to immediately interview the juvenile, the interview may proceed without the parent or other responsible adult. In such circumstances, the exigent circumstances should be set forth in a related report.

(c)   Any juvenile student who is a suspected victim of child abuse shall be afforded the option of being interviewed in private or selecting any qualified available adult member of school staff to be present. The purpose of the staff member's presence is to provide comfort and support and such staff member shall not participate in the interview. The selection of a staff member should be such that it does not burden the school with costs or hardship.

Absent exigent circumstances or authority of a court order, officers should not involuntarily detain a juvenile who is suspected of being a victim of child abuse solely for the purpose of an interview or physical exam without the consent of a parent or guardian. In all such cases officers should adhere to guidelines and requirements set forth in Policy 330 Child Abuse Reporting.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000118

**Exhibit 1**
**Page 108 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Temporary Custody of Juveniles*

325.7.2  GENERAL GUIDELINES

(a)   Create an interview plan. Develop strategies for establishing rapport. Consider age-appropriate questions; juvenile's prior experience with police; maturity and sophistication; and seriousness of the offense in question.

(b)   Determine the appropriate location and setting for the interview or interrogation based on the foregoing factors and other circumstances surrounding the case.

(c)   Where possible, audiotape and videotape the interview.

(d)   Limit the number of persons present at the interview to as few as possible. Designate one person to serve as the primary interviewer/interrogator.

325.7.3  NON-CUSTODIAL INTERVIEWS

(a)   When reasonably possible, the juvenile's parent or legal guardian should be contacted. Officers should wait a reasonable amount of time before continuing with the interview without a parent or legal guardian.

(b)   The interview should be limited in time and reasonable breaks provided before subsequent questioning.

325.7.4  CUSTODIAL INTERVIEWS

In order for statements or confessions obtained during an interrogation to be admissible, they must be made knowingly, intelligently, and voluntarily as determined by examining the totality of the circumstances. When dealing with juveniles, the totality-of-the-circumstances test takes into account the methods employed in obtaining the statement; the suspect's mental and physical condition; the length of time over which the questioning took place; and the suspect's age, education, and any previous experience with law enforcement.

(a)   Miranda warnings are required and shall be administered prior to custodial interviews. Where information suggests that the juvenile suspect may not understand Miranda warnings, age-appropriate clarifications should be used . Examples of clarification includes, but are not limited to:

   o   You have the right to remain silent. That means you do not have to say anything.

   o   Anything you say can be used against you in court.

   o   You have the right to get help from a lawyer right now.

   o   If you cannot pay a lawyer, the court will get you one for free.

   o   Do you want to have a lawyer with you while you talk to me?

   o   (If required by local or state law) You have the right to have one or both of your parents here.

   o   (If required by local or state law or departmental policy) Do you want your mother, father, or the person who takes care of you here while you talk to me?

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Temporary Custody of Juveniles*

     ◦  You have the right to stop this interview at any time.

     ◦  Do you want to talk to me?

 (b) To ensure that the Miranda warnings are understood, consider asking the juvenile to explain each warning in his or her own words.

## 325.8  USE OF RESTRAINT DEVICES

Juvenile offenders may be handcuffed in accordance with the Handcuffing and Restraints Policy. A juvenile offender may be handcuffed at the University of Oregon Police Department when the juvenile presents a heightened risk. However, non-offenders and status offenders should not be handcuffed unless they are combative or threatening.

Other restraints shall only be used after less restrictive measures have failed and with the approval of the Watch Commander. Restraints shall only be used so long as it reasonably appears necessary for the juvenile's protection or the protection of others.

Juveniles in restraints shall be kept away from other unrestrained juveniles or monitored in such a way as to protect the juvenile from abuse.

## 325.9  PERSONAL PROPERTY

The officer taking custody of a juvenile offender or status offender at the University of Oregon Police Department shall ensure a thorough search of the juvenile's property is made and all property is removed from the juvenile, especially those items that could compromise safety, such as pens, pencils and belts.

The personal property of a juvenile should be placed in a property bag. The property should be inventoried in the juvenile's presence and sealed into the bag. The property should be kept in a monitored or secure location until the juvenile is released from the custody of the University of Oregon Police Department.

## 325.10  SUICIDE ATTEMPT, DEATH OR SERIOUS INJURY OF A JUVENILE

The Watch Commander will ensure procedures are in place to address the suicide attempt, death or serious injury of any juvenile held at the University of Oregon Police Department. The procedures will address:

 (a) Immediate notification of the on-duty supervisor, Chief of Police and Investigation Unit supervisor.

 (b) Notification of the parent, guardian or person standing in loco parentis, of the juvenile.

 (c) Notification of the appropriate prosecutor.

 (d) Notification of the General Counsel.

 (e) Evidence preservation.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000120

**Exhibit 1**
**Page 110 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Temporary Custody of Juveniles*

**325.11  INTERVIEWING OR INTERROGATING JUVENILE SUSPECTS**
No interview or interrogation of a juvenile should occur unless the juvenile has the apparent capacity to consent, and does consent to an interview or interrogation. (See the Investigation and Prosecution Policy.)

**325.12  RESTRICTION ON FINGERPRINTING AND PHOTOGRAPHING**
A juvenile taken into custody under ORS 419C.080 shall be photographed and fingerprinted (ORS 419A.250(2)).

Other juveniles taken into custody may only be fingerprinted or photographed (ORS 419A.250(1)):

    (a)    Pursuant to a search warrant.

    (b)    According to laws concerning adults if the juvenile has been transferred to criminal court for prosecution.

    (c)    Upon consent of both the juvenile and the juvenile's parent after being advised that they are not required to give such consent.

    (d)    By order of the juvenile court.

Fingerprints and photographs of juveniles must be kept separate from those of adults. Fingerprints and photographs of juvenile offenders shall be sent to the central state depository in the same manner as fingerprint and photograph files or records of adults. Fingerprints and photographs of other juveniles should not be sent to any central state or federal depository (ORS 419A.250).

**325.13  RECORDS**
Fingerprint and photograph files or records of juveniles must be kept separate from those of adults (ORS 419A.250).

Reports and other material relating to juveniles is generally considered privileged and may not be disclosed directly or indirectly except as provided in the Records Maintenance and Release Policy.

325.13.1  COLLEGE OR UNIVERSITY RECORDS
If the juvenile is enrolled at any college or university at the time of the temporary custody, disclosure of his/her educational records are subject to the regulations set forth in the Family Educational Rights and Privacy Act of 1974 (FERPA).

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000121

Exhibit 1
Page 111 of 550



**Policy**
**327**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Adult Abuse

### 327.1  PURPOSE AND SCOPE
The purpose of this policy is to provide guidelines for the investigation and reporting of suspected abuse of certain adults who may be more vulnerable than others. This policy also addresses mandatory notification for University of Oregon Police Department members as required by law.

#### 327.1.1  DEFINITIONS
Definitions related to this policy include:

**Adult abuse** - Any offense or attempted offense involving violence or neglect of an adult victim when committed by a person responsible for the adult's care, or any other act that would mandate reporting or notification to a social service agency or law enforcement.

### 327.2  POLICY
The University of Oregon Police Department will investigate all reported incidents of alleged adult abuse and ensure proper reporting and notification as required by law.

### 327.3  MANDATORY NOTIFICATION
Members of the University of Oregon Police Department shall notify the Department of Human Services (DHS) when there is reasonable cause to believe that an elderly adult (age 65 years or older), dependent adult or resident of a long-term care facility with whom the member comes in contact has suffered abuse, or when a person with whom the member comes in contact has abused an elderly adult, dependent adult or resident of a long-term care facility (ORS 124.060; ORS 430.743; ORS 441.640).

For purposes of notification, abuse includes physical injury, neglect, abandonment, verbal abuse, financial exploitation, sexual abuse, sexual offenses, involuntary seclusion and wrongful use of physical or chemical restraints as provided in ORS 124.050, ORS 430.735 and ORS 441.630.

Dependent adult means a person 18 years or older with (ORS 430.735):

(a)  A developmental disability who is currently receiving services from a community program or facility or was previously determined eligible to receive such services as an adult.

(b)  A mental illness who is receiving services from a community program or facility.

#### 327.3.1  NOTIFICATION PROCEDURE
Notification should occur as follows (ORS 124.065; ORS 430.743; ORS 441.645):

(a)  All notifications to DHS shall be made as soon as practicable by telephone.

(b)  Information provided to DHS shall include, if known:

1.  Name, age and address of the person abused

2.  Present location of the adult

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000122

**Exhibit 1**
**Page 112 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Adult Abuse*

3. Name and address of the person responsible for the adult

4. Identity of the perpetrator

5. Nature and extent of the abuse and any evidence of previous abuse

6. Any explanation given for the abuse

7. Date of the incident

8. Any other information that may be helpful in establishing the cause of the abuse

(c) In cases where DHS has notified the Department of a possible crime relating to elder or dependent adult abuse, confirmation of receipt of notification shall be made to DHS.

(d) DHS shall also be notified whether (ORS 124.070(3); ORS 430.745(7)):

1. There will be no criminal investigation and the explanation of why there will be no such investigation.

2. The investigative findings have been forwarded to the District Attorney for review.

3. A criminal investigation will take place.

(e) In investigations that substantiate elderly abuse or abuse of a resident in a long-term care facility, DHS shall be notified in writing (ORS 124.070(2); ORS 441.650(2)).

(f) Upon completion of investigations for dependent adult abuse, DHS shall be provided a written report of the findings and supporting evidence (ORS 430.745(4)).

## 327.4  QUALIFIED INVESTIGATORS
Qualified investigators should be available to investigate cases of adult abuse. These investigators should:

(a) Conduct interviews in appropriate interview facilities.

(b) Be familiar with forensic interview techniques specific to adult abuse investigations.

(c) Present all cases of alleged adult abuse to the prosecutor for review.

(d) Coordinate with other enforcement agencies, social service agencies and facility administrators as needed.

(e) Provide referrals to therapy services, victim advocates, guardians and support for the victim and family as appropriate.

(f) Participate in or coordinate with multidisciplinary investigative teams as applicable (ORS 430.739).

## 327.5  INVESTIGATIONS AND REPORTING
All reported or suspected cases of adult abuse require investigation and a report, even if the allegations appear unfounded or unsubstantiated. The Department must begin investigations of abuse in a long-term care facility (ORS 441.650):

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000123

**Exhibit 1**
**Page 113 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Adult Abuse*

- Within two hours where a resident's health or safety is in imminent danger or the resident recently died, was hospitalized or was treated in an emergency room.

- Prior to the end of the next working day if circumstances exist that could result in abuse and place the resident's health or safety in imminent danger.

Investigations and reports related to suspected cases of adult abuse should address, as applicable:

(a) The overall basis for the contact. This should be done by the investigating officer in all circumstances where a suspected adult abuse victim is contacted.

(b) Any relevant statements the victim may have made and to whom he/she made the statements.

(c) If a person is taken into protective custody, the reasons, the name and title of the person making the decision, and why other alternatives were not appropriate.

(d) Documentation of any visible injuries or any injuries identified by the victim. This should include photographs of such injuries, if practicable.

(e) Whether the victim was transported for medical treatment or a medical examination.

(f) Whether the victim identified a household member as the alleged perpetrator, and a list of the names of any other potential victims or witnesses who may reside in the residence.

(g) Identification of any prior related reports or allegations of abuse, including other jurisdictions, as reasonably known.

(h) Previous addresses of the victim and suspect.

(i) Other potential witnesses who have not yet been interviewed, such as relatives or others close to the victim's environment.

All investigations into suspected cases of adult abuse shall include a personal visit to the elderly person suspected of being abused (ORS 124.070).

Any unexplained death of an adult who was in the care of a guardian or caretaker should be considered as potential adult abuse and investigated similarly.


## 327.6  PROTECTIVE CUSTODY

Before taking an adult abuse victim into protective custody when facts indicate the adult may not be able to care for him/herself, the officer should make reasonable attempts to contact DHS. Generally, removal of an adult abuse victim from his/her family, guardian or other responsible adult should be left to the welfare authorities when they are present or have become involved in an investigation.

Generally, members of this department should remove an adult abuse victim from his/her family or guardian without a court order only when no other effective alternative is reasonably available and immediate action reasonably appears necessary to protect the victim. Prior to taking an adult abuse victim into protective custody, the officer should take reasonable steps to deliver the adult

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000124

**Exhibit 1**
**Page 114 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Adult Abuse*

to another qualified legal guardian, unless it reasonably appears that the release would endanger the victim or result in abduction. If this is not a reasonable option, the officer shall ensure that the adult is delivered to DHS.

Whenever practicable, the officer should inform a supervisor of the circumstances prior to taking an adult abuse victim into protective custody. If prior notification is not practicable, officers should contact a supervisor promptly after taking the adult into protective custody.

When adult abuse victims are under state control, have a state-appointed guardian or there are other legal holdings for guardianship, it may be necessary or reasonable to seek a court order on behalf of the adult victim to either remove the adult from a dangerous environment (protective custody) or restrain a person from contact with the adult.

## 327.6.1   DHS ASSISTANCE
An officer shall cooperate with DHS when assistance is requested by written notice to gain access to an abused person and the officer believes that there is reasonable cause that a crime has been committed and an emergency exists which requires access to the person to ensure his/her safety (ORS 124.065; ORS 430.743; OAR 411-020-0085).

## 327.7   INTERVIEWS

### 327.7.1   PRELIMINARY INTERVIEWS
Absent extenuating circumstances or impracticality, officers should audio record the preliminary interview with a suspected adult abuse victim. Officers should avoid multiple interviews with the victim and should attempt to gather only the information necessary to begin an investigation. When practicable, investigating officers should defer interviews until a person who is specially trained in such interviews is available.

### 327.7.2   DETAINING VICTIMS FOR INTERVIEWS
An officer should not detain an adult involuntarily who is suspected of being a victim of abuse solely for the purpose of an interview or physical exam without his/her consent or the consent of a guardian unless one of the following applies:

    (a)   Exigent circumstances exist, such as:

        1.   A reasonable belief that medical issues of the adult need to be addressed immediately.

        2.   A reasonable belief that the adult is or will be in danger of harm if the interview or physical exam is not immediately completed.

        3.   The alleged offender is a family member or guardian and there is reason to believe the adult may be in continued danger.

    (b)   A court order or warrant has been issued.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000125

**Exhibit 1**
**Page 115 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Adult Abuse*

### 327.8  MEDICAL EXAMINATIONS
When an adult abuse investigation requires a medical examination, the investigating officer should obtain consent for such examination from the victim, guardian, agency or entity having legal custody of the adult. The officer should also arrange for the adult's transportation to the appropriate medical facility.

In cases where the alleged offender is a family member, guardian, agency or entity having legal custody and is refusing to give consent for the medical examination, officers should notify a supervisor before proceeding. If exigent circumstances do not exist or if state law does not provide for officers to take the adult for a medical examination, the supervisor should consider other government agencies or services that may obtain a court order for such an examination.

### 327.9  DRUG-ENDANGERED VICTIMS
A coordinated response by law enforcement and social services agencies is appropriate to meet the immediate and longer-term medical and safety needs of an adult abuse victim who has been exposed to the manufacturing, trafficking or use of narcotics.

### 327.9.1  SUPERVISOR RESPONSIBILITIES
The Investigation Unit supervisor should:

    (a)   Work with professionals from the appropriate agencies, including DHS, other law enforcement agencies, medical service providers and local prosecutors, to develop community-specific procedures for responding to situations where there are adult abuse victims endangered by exposure to methamphetamine labs or the manufacture and trafficking of other drugs.

    (b)   Activate any available interagency response when an officer notifies the Investigation Unit supervisor that he/she has responded to a drug lab or other narcotics crime scene where an adult abuse victim is present or where evidence indicates that an adult abuse victim lives.

    (c)   Develop a report format or checklist for use when officers respond to drug labs or other narcotics crime scenes. The checklist will help officers document the environmental, medical, social and other conditions that may affect the adult.

### 327.9.2  OFFICER RESPONSIBILITIES
responding to a drug lab or other narcotics crime scene where an adult abuse victim is present or where there is evidence that an adult abuse victim lives should:

    (a)   Document the environmental, medical, social and other conditions of the adult, using photography as appropriate and the checklist or form developed for this purpose.

    (b)   Notify the Investigation Unit supervisor so an interagency response can begin.

### 327.10  STATE MANDATES AND OTHER RELEVANT LAWS
Oregon requires or permits the following:

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000126

**Exhibit 1**
**Page 116 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Adult Abuse*

---

327.10.1   RECORDS SECTION RESPONSIBILITIES

The Records Section is responsible for:

    (a)   Providing a copy of the adult abuse report to DHS as required by law.

    (b)   Retaining the original adult abuse report with the initial case file.

327.10.2   RELEASE OF REPORTS

Information related to incidents of adult abuse or suspected adult abuse shall be confidential and may only be disclosed pursuant to state law and the Records Maintenance and Release Policy (ORS 124.090; ORS 430.763; ORS 441.671).

## 327.11   TRAINING

The Department should provide training on best practices in adult abuse investigations to members tasked with investigating these cases. The training should include:

    (a)   Participating in multidisciplinary investigations, as appropriate.

    (b)   Conducting interviews.

    (c)   Availability of therapy services for adults and families.

    (d)   Availability of specialized forensic medical exams.

    (e)   Cultural competence (including interpretive services) related to adult abuse investigations.

    (f)   Availability of victim advocates or other support.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department



**Policy**
**329**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Discriminatory Harassment

## 329.1  PURPOSE AND SCOPE
This policy is intended to prevent department members from being subjected to discrimination or sexual harassment. Nothing in this policy is intended to create a legal or employment right or duty that is not created by law.

## 329.2  POLICY
The University of Oregon Police Department is an equal opportunity employer and is committed to creating and maintaining a work environment that is free of all forms of discriminatory harassment, including sexual harassment and retaliation. The Department will not tolerate discrimination against members in hiring, promotion, discharge, compensation, fringe benefits and other privileges of employment. The  will take preventive, corrective and disciplinary action to address any behavior that violates this policy or the rights it is designed to protect.

The non-discrimination policies of the Department may be more comprehensive than state or federal law. Conduct that violates this policy may not violate state or federal law but still could subject a member to discipline.

## 329.3  DISCRIMINATION PROHIBITED

### 329.3.1  DISCRIMINATION
The Department prohibits all forms of discrimination, including any employment-related action by a member that adversely affects an applicant or member and is based on race, color, religion, sex, age, national origin or ancestry, genetic information, disability, military service, sexual orientation and other classifications protected by law.

Discriminatory harassment, including sexual harassment, is verbal or physical conduct that demeans or shows hostility or aversion toward an individual based upon that individual's protected class. It has the effect of interfering with an individual's work performance or creating a hostile or abusive work environment.

Conduct that may, under certain circumstances, constitute discriminatory harassment, can include making derogatory comments, crude and offensive statements or remarks, making slurs or off-color jokes, stereotyping, engaging in threatening acts, making indecent gestures, pictures, cartoons, posters or material, making inappropriate physical contact, or using written material or department equipment and/or systems to transmit or receive offensive material, statements or pictures. Such conduct is contrary to department policy and to the department commitment to a discrimination free work environment.

### 329.3.2  SEXUAL HARASSMENT
The Department prohibits all forms of discrimination and discriminatory harassment, including sexual harassment. It is unlawful to harass an applicant or a member because of that person's sex.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000128

**Exhibit 1**
**Page 118 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Discriminatory Harassment*

### 329.3.3   ADDITIONAL CONSIDERATIONS
Discrimination and discriminatory harassment do not include actions that are in accordance with established rules, principles or standards, including:

(a)   Acts or omission of acts based solely upon bona fide occupational qualifications under Equal Employment Opportunity Commission (EEOC) and the Oregon Bureau of Labor and Industries' Civil Rights Division.

(b)   Bona fide requests or demands by a supervisor that a member improve his/her work quality or output, that the member report to the job site on time, that the member comply with University or department rules or regulations, or any other appropriate work-related communication between supervisor and the member.

### 329.3.4   RETALIATION
Retaliation is treating a person differently or engaging in acts of reprisal or intimidation against the person because he/she has engaged in protected activity, filed a charge of discrimination, participated in an investigation or opposed a discriminatory practice. Retaliation will not be tolerated.

### 329.4   RESPONSIBILITIES
This policy applies to all department personnel. All members shall follow the intent of these guidelines in a manner that reflects department policy, professional law enforcement standards and the best interest of the Department and its mission.

Members are encouraged to promptly report any discriminatory, retaliatory or harassing conduct or known violations of this policy to a supervisor. Any member who is not comfortable with reporting violations of this policy to his/her immediate supervisor may bypass the chain of command and make the report to a higher ranking supervisor or manager. Complaints may also be filed with the Chief of Police, Associate Vice President of Human Resources or the Associate Vice President for Safety and Risk Services.

Any member who believes, in good faith, that he/she has been discriminated against, harassed, subjected to retaliation, or who has observed harassment or discrimination, is encouraged to promptly report such conduct in accordance with the procedures set forth in this policy.

Supervisors and managers receiving information regarding alleged violations of this policy shall determine if there is any basis for the allegation and shall proceed with resolution as stated below.

### 329.4.1   SUPERVISOR RESPONSIBILITY
Each supervisor and manager shall:

(a)   Continually monitor the work environment and strive to ensure that it is free from all types of unlawful discrimination, including sexual harassment or retaliation.

(b)   Take prompt, appropriate action within their work units to avoid and minimize the incidence of any form of discrimination, harassment or retaliation.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000129

**Exhibit 1**
**Page 119 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Discriminatory Harassment*

    (c)    Ensure their subordinates understand their responsibilities under this policy.

    (d)    Ensure that members who make complaints or who oppose any unlawful employment practices are protected from retaliation and that such matters are kept confidential to the extent possible.

    (e)    Notify the Chief of Police or Associate Vice President of Human Resources in writing of the circumstances surrounding any reported allegations or observed acts of discrimination, harassment or retaliation no later than the next business day.

## 329.4.2  SUPERVISOR'S ROLE
Because of differences in individual values, supervisors and managers may find it difficult to recognize that their behavior or the behavior of others is discriminatory, harassing or retaliatory. Supervisors and managers shall be aware of the following considerations:

    (a)    Behavior of supervisors and managers should represent the values of the Department and professional law enforcement standards.

    (b)    False or mistaken accusations of discrimination, harassment or retaliation can have negative effects on the careers of innocent members.

    (c)    Supervisors and managers must act promptly and responsibly in the resolution of such situations.

    (d)    Supervisors and managers shall make a timely determination regarding the substance of any allegations based upon all available facts.

Nothing in this section shall be construed to prevent supervisors or managers from discharging supervisory or management responsibilities, such as determining duty assignments, evaluating or counseling members or issuing discipline, in a manner that is consistent with established procedures.

## 329.5  INVESTIGATION OF COMPLAINTS
Various methods of resolution exist. During the pendency of any such investigation, the supervisor of the involved members should take prompt and reasonable steps to mitigate or eliminate any continuing abusive or hostile work environment. It is the policy of the Department that all complaints of discrimination or harassment shall be fully documented and promptly and thoroughly investigated. The participating or opposing member should be protected against retaliation, and the complaint and related investigation should be kept confidential to the extent possible.

## 329.5.1  SUPERVISORY RESOLUTION
Members who believe they are experiencing discrimination, harassment or retaliation should be encouraged to inform the individual that his/her behavior is unwelcome, offensive, unprofessional or inappropriate. However, if the member feels uncomfortable, threatened or has difficulty expressing his/her concern, or if this does not solve the concern, assistance should be sought from a supervisor or manager who is a rank higher than the alleged transgressor.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Discriminatory Harassment*

### 329.5.2  FORMAL INVESTIGATION

If the complaint cannot be satisfactorily resolved through the process described above, a formal investigation will be conducted.

The person assigned to investigate the complaint will have full authority to investigate all aspects of the complaint. Investigative authority includes access to records and the cooperation of any members involved. No influence will be used to suppress any complaint and no member will be subject to retaliation or reprisal for filing a complaint, encouraging others to file a complaint or for offering testimony or evidence in any investigation (ORS 659A.199).

Formal investigation of the complaint will be confidential to the extent possible and will include, but not be limited to, details of the specific incident, frequency and dates of occurrences and names of any witnesses. Witnesses will be advised regarding the prohibition against retaliation, and that a disciplinary process, up to and including termination, may result if retaliation occurs.

Members who believe they have been discriminated against, harassed or retaliated against because of their protected status are encouraged to follow the chain of command but may also file a complaint directly with the Chief of Police, Associate Vice President of Human Resources or the Associate Vice President for Safety and Risk Services.

### 329.5.3  ALTERNATIVE COMPLAINT PROCESS

No provision of this policy shall be construed to prevent any member from seeking legal redress outside the Department. Members who believe that they have been harassed or discriminated or retaliated against are entitled to bring complaints of employment discrimination to federal, state and/or local agencies responsible for investigating such allegations. Specific time limitations apply to the filing of such charges. Members are advised that proceeding with complaints under the provisions of this policy does not in any way affect those filing requirements.

## 329.6  NOTIFICATION OF DISPOSITION

The complainant and/or victim will be notified in writing of the disposition of the investigation and the action taken to remedy or address the circumstances giving rise to the complaint.

## 329.7  DOCUMENTATION OF COMPLAINTS

All complaints or allegations shall be thoroughly documented on forms and in a manner designated by the Chief of Police. The outcome of all reports shall be:

- Approved by the Chief of Police or the Associate Vice President for Safety and Risk Services or the Associate Vice President of Human Resources if more appropriate.

- Maintained for the period established in the department's records retention schedule.

## 329.8  TRAINING

All new members shall be provided with a copy of this policy as part of their orientation. The policy shall be reviewed with each new member. The member shall certify by signing the prescribed form

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000131

**Exhibit 1**
**Page 121 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Discriminatory Harassment*

that he/she has been advised of this policy, is aware of and understands its contents and agrees to abide by its provisions during his/her term of employment.

All members shall receive annual training on the requirements of this policy and shall certify by signing the prescribed form that they have reviewed the policy, understand its contents and agree that they will continue to abide by its provisions.

### 329.8.1   QUESTIONS OR CLARIFICATION
Members with questions regarding what constitutes discrimination, sexual harassment or retaliation are encouraged to contact a supervisor, manager, the Chief of Police, Associate Vice President of Human Resources or the Associate Vice President for Safety and Risk Services for further information, direction or clarification.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000132

**Exhibit 1**
**Page 122 of 550**



Policy
**331**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Child Abuse

### 331.1  PURPOSE AND SCOPE
The purpose of this policy is to provide guidelines for the investigation of suspected child abuse. This policy also addresses when University of Oregon Police Department members are required to notify the Department of Human Services (DHS) of suspected child abuse.

### 331.1.1  DEFINITIONS
Definitions related to this policy include:

**Child** - Unless otherwise specified by a cited statute, a child is any person under the age of 18 years.

**Child abuse** - Any offense or attempted offense involving violence or neglect with a child victim when committed by a person responsible for the child's care or any other act that would mandate notification to a social service agency (ORS 419B.010).

### 331.2  POLICY
The University of Oregon Police Department will investigate all reported incidents of alleged criminal child abuse and ensure that DHS is notified as required by law.

### 331.3  MANDATORY NOTIFICATION
Members of the University of Oregon Police Department shall notify DHS when a report of child abuse is received or when there is reasonable cause to believe that a child has suffered abuse (ORS 419B.010).

For purposes of notification, a child is an unmarried person under 18 years of age (ORS 419B.005(2)).

For purposes of notification, abuse of a child includes, but is not limited to, assault or physical injury of a non-accidental nature, rape, sexual abuse or sexual exploitation including contributing to the sexual delinquency of a minor, threatened harm, negligent treatment or maltreatment, buying or selling a child, unlawful exposure to a controlled substance or to the unlawful manufacturing of a cannabinoid extract, permitting a child to enter or remain in or upon premises where methamphetamines are manufactured, or any other act described in ORS 419B.005(1)(a).

### 331.3.1  NOTIFICATION PROCEDURE
Notification should occur as follows (OAR 413-015-0305):

(a)  Verbal notification to DHS shall be made immediately when the officer determines that the report of alleged abuse or neglect requires an immediate joint response.

(b)  Verbal, electronic transmission or hand-delivered notification to DHS of all other reports of child abuse or neglect shall be made by the end of the next business day.

(c)  Notification, when possible, should include:

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Child Abuse*

1.  The name and contact information of the confidential reporter.

2.  The name, address and age of the child.

3.  The name and address of the child's parents or other person who is responsible for care of the child.

4.  The nature and extent of the abuse or neglect, including any evidence of previous abuse or neglect.

5.  The explanation given for the abuse or neglect.

6.  Where the abuse or neglect occurred.

7.  Identity and whereabouts of the alleged perpetrator.

8.  Any other information that the person making the report believes might be helpful in establishing the cause of the abuse or neglect and the identity and whereabouts of the perpetrator.

9.  The name and contact information for the assigned DHS worker and officer.

When the abuse occurs at a facility or by a person from a facility that requires a state license from the Oregon Employment Department, Child Care Division (e.g., child care facility), notification shall also be made to that agency (ORS 419B.020).

## 331.4  QUALIFIED INVESTIGATORS
Qualified investigators should be available for child abuse investigations. These investigators should:

(a)  Conduct interviews in child-appropriate interview facilities.

(b)  Be familiar with forensic interview techniques specific to child abuse investigations.

(c)  Present all cases of alleged child abuse to the prosecutor for review.

(d)  Coordinate with other enforcement agencies, social service agencies and school administrators as needed.

(e)  Provide referrals to therapy services, victim advocates, guardians and support for the child and family as appropriate.

(f)  Participate in or coordinate with multidisciplinary investigative teams as applicable (ORS 418.747).

## 331.5  INVESTIGATIONS AND REPORTING
In all reported or suspected cases of child abuse, a report will be written. Officers shall write a report even if the allegations appear unfounded or unsubstantiated.

Investigations and reports related to suspected cases of child abuse should address, as applicable:

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000134

**Exhibit 1**
**Page 124 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Child Abuse*

---

    (a)    The overall basis for the contact. This should be done by the investigating officer in all circumstances where a suspected child abuse victim was contacted.

    (b)    The exigent circumstances that existed if officers interviewed the child victim without the presence of a parent or guardian.

    (c)    Any relevant statements the child may have made and to whom he/she made the statements.

    (d)    If a child was taken into protective custody, the reasons, the name and title of the person making the decision, and why other alternatives were not appropriate.

    (e)    Documentation of any visible injuries or any injuries identified by the child. This should include photographs of such injuries, if practicable.

    (f)    Whether the child victim was transported for medical treatment or a medical examination.

    (g)    Whether the victim identified a household member as the alleged perpetrator, and a list of the names of any other children who may reside in the residence.

    (h)    Identification of any prior related reports or allegations of child abuse, including other jurisdictions, as reasonably known.

    (i)    Previous addresses of the victim and suspect.

    (j)    Other potential witnesses who have not yet been interviewed, such as relatives or others close to the victim's environment.

All cases of the unexplained death of a child should be investigated as thoroughly as if it had been a case of suspected child abuse (e.g., a sudden or unexplained death of an infant).

## 331.5.1   KARLY'S LAW

In all cases of suspicious physical injury to a child, the investigating officer shall, in accordance with any relevant county multidisciplinary team protocols (ORS 419B.023):

    (a)    Immediately photograph or cause to be photographed any visible injuries or any injuries identified by the child if practicable, and in the manner described in ORS 419B.028.

    (b)    Ensure that photographs of the injuries are distributed to the designated medical professional and placed in any relevant files by the end of the next regular business day or within 48 hours, whichever occurs later (ORS 419B.028(2)).

    (c)    Ensure that a designated medical professional conducts a medical assessment of the child within 48 hours or sooner, according to the child's medical needs. If a designated medical professional is unavailable for the assessment, the investigating officer must ensure that the child is evaluated by an available physician.

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000135

**Exhibit 1**
**Page 125 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Child Abuse*

331.5.2  INVESTIGATIONS ON SCHOOL PREMISES
When an investigation of child abuse is conducted on school premises, the investigating officer shall first notify the school administrator of the investigation, unless the school administrator is a subject of the investigation. The investigator is not required to reveal information about the investigation to the school as a condition of conducting the investigation. At the investigator's discretion, the school administrator or a school staff member designated by the school administrator may be present to facilitate the investigation. Prior to any interview with the affected child, the investigating officer shall be advised of the child's disabling conditions, if any. These provisions apply to an investigation that involves an interview with the suspected victim of abuse or witnesses and not to investigations or interviews of a person suspected of having committed the abuse (ORS 419B.045).

**331.6  PROTECTIVE CUSTODY**
Before taking any child into protective custody, the officer should make reasonable attempts to contact DHS. Generally, removal of a child from his/her family, guardian or other responsible adult should be left to the child welfare authorities when they are present or have become involved in an investigation.

Generally, members of this department should remove a child from his/her parent or guardian without a court order only when no other effective alternative is reasonably available and immediate action reasonably appears necessary to protect the child. Prior to taking a child into protective custody, the officer should take reasonable steps to deliver the child to another qualified parent or legal guardian, unless it reasonably appears that the release would endanger the child or result in abduction. If this is not a reasonable option, the officer shall ensure that the child is delivered to DHS.

Whenever practicable, the officer should inform a supervisor of the circumstances prior to taking a child into protective custody. If prior notification is not practicable, officers should contact a supervisor promptly after taking a child into protective custody.

Children may only be removed from a parent or guardian in the following situations (ORS 419B.150):

(a)  When the child's condition or surroundings reasonably appear to jeopardize the child's welfare

(b)  When the juvenile court has issued a valid order that the child is to be taken into protective custody

(c)  When it reasonably appears that the child has run away from home

331.6.1  NOTICE TO PARENTS
When an officer takes a child into protective custody, if possible, the officer shall:

(a)  Make reasonable efforts to immediately notify the child's parents or guardian, regardless of the time of day.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000136

**Exhibit 1**
**Page 126 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Child Abuse*

---

    (b)   Advise the reason the child has been taken into custody.

    (c)   Provide general information about the child's placement and the telephone number of the local DHS office, including any after-hours telephone numbers (ORS 419B.020).

### 331.6.2  SAFE HAVEN PROVISION
A parent may leave an infant who is not more than 30 days old at an authorized facility, including this department, as long as the child has no evidence of abuse (ORS 418.017).

When an infant is surrendered to this department, members of University of Oregon Police Department shall follow the provisions set forth in ORS 418.017.

### 331.7  INTERVIEWS

### 331.7.1  PRELIMINARY INTERVIEWS
Absent extenuating circumstances or impracticality, officers should record the preliminary interview with suspected child abuse victims. Officers should avoid multiple interviews with a child victim and should attempt to gather only the information necessary to begin an investigation. When practicable, investigating officers should defer interviews until a person who is specially trained in such interviews is available. Generally, child victims should not be interviewed in the home or location where the alleged abuse occurred.

### 331.7.2  DETAINING SUSPECTED CHILD ABUSE VICTIMS FOR AN INTERVIEW
An officer should not involuntarily detain a child who is suspected of being a victim of child abuse solely for the purpose of an interview or physical exam without the consent of a parent or guardian unless one of the following applies:

    (a)   Exigent circumstances exist, such as:

        1.   A reasonable belief that medical issues of the child need to be addressed immediately.

        2.   A reasonable belief that the child is or will be in danger of harm if the interview or physical exam is not immediately completed.

        3.   The alleged offender is the custodial parent or guardian and there is reason to believe the child may be in continued danger.

    (b)   A court order or warrant has been issued.

### 331.8  MEDICAL EXAMINATIONS
If the child has been the victim of abuse that requires a medical examination, the investigating officer should obtain consent for such examination from the appropriate parent, guardian or agency having legal custody of the child. The officer should also arrange for the child's transportation to the appropriate medical facility.

In cases where the alleged offender is the custodial parent or guardian and is refusing consent for the medical examination, officers should notify a supervisor before proceeding. If exigent

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000137

**Exhibit 1**
**Page 127 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Child Abuse*

circumstances do not exist or if state law does not provide for officers to take the child for a medical examination, the notified supervisor should consider obtaining a court order for such an examination.

### 331.8.1 COURT ORDERS FOR PRESERVATION OF EVIDENCE
When an officer is taking a child into protective custody and has reasonable cause to believe that the child has been affected by sexual abuse and rape, and that physical evidence of the abuse exists and is likely to disappear, the court may authorize a physical examination for the purpose of preserving evidence, if such examination is in the best interest of the child (ORS 419B.020).

### 331.9 DRUG-ENDANGERED CHILDREN
A coordinated response by law enforcement and social services agencies is appropriate to meet the immediate and longer-term medical and safety needs of children exposed to the manufacturing, trafficking or use of narcotics.

### 331.9.1 SUPERVISOR RESPONSIBILITIES
The Investigation Unit supervisor should:

(a) Work with professionals from the appropriate agencies, including DHS, other law enforcement agencies, medical service providers and local prosecutors to develop community-specific procedures for responding to situations where there are children endangered by exposure to methamphetamine labs or the manufacture and trafficking of other drugs.

(b) Activate any available interagency response when an officer notifies the Investigation Unit Supervisor that the officer has responded to a drug lab or other narcotics crime scene where a child is present or where evidence indicates that a child lives there.

(c) Develop a report format or checklist for use when officers respond to drug labs or other narcotics crime scenes. The checklist will help officers document the environmental, medical, social and other conditions that may affect the child.

### 331.9.2 OFFICER RESPONSIBILITIES
Officers responding to a drug lab or other narcotics crime scene where a child is present or where there is evidence that a child lives should:

(a) Document the environmental, medical, social and other conditions of the child using photography as appropriate and the checklist or form developed for this purpose.

(b) Notify the Investigation Unit supervisor so an interagency response can begin.

### 331.10 STATE MANDATES AND OTHER RELEVANT LAWS
Oregon requires or permits the following:

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000138

**Exhibit 1**
**Page 128 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Child Abuse*

---

**331.10.1   RELEASE OF REPORTS**
Information related to incidents of child abuse or suspected child abuse shall be confidential and may only be disclosed pursuant to state law and the Records Maintenance and Release Policy (ORS 419B.035).

**331.10.2   COUNTY MULTIDISCIPLINARY CHILD ABUSE TEAM AND PROTOCOL**
The Investigation Unit supervisor should ensure that current written protocols and procedures for child abuse investigations developed by the multidisciplinary child abuse team are available to all department members (ORS 418.747).

**331.10.3   CHILD FATALITY REVIEW TEAMS**
This department should cooperate with any child fatality review team and investigation (ORS 418.785).

**331.10.4   DISPOSITION OF INVESTIGATION**
Each investigation of child abuse shall be concluded with one of the following dispositions (2017 SB 942):

- Founded
- Unfounded
- Undetermined

**331.11   TRAINING**
The Department should provide training on best practices in child abuse investigations to members tasked with investigating these cases. The training should include:

(a)   Participating in multidisciplinary investigations, as appropriate.

(b)   Conducting forensic interviews.

(c)   Availability of therapy services for children and families.

(d)   Availability of specialized forensic medical exams.

(e)   Cultural competence (including interpretive services) related to child abuse investigations.

(f)   Availability of victim advocate or guardian ad litem support.

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department



**Policy**
**333**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Missing Persons

### 333.1  PURPOSE AND SCOPE
This policy provides guidance for handling missing person investigations.  In cases involving missing students who reside in on-campus student housing, additional requirements are contained in 34 CFR 668.46(b)(14).

### 333.1.1  DEFINITIONS
Definitions related to this policy include:

**At risk** - This includes persons who:

    (a)    Are 13 years of age or younger.

    (b)    Regardless of age, are believed or determined to be experiencing one or more of the following circumstances:

        1.    Out of the zone of safety for his/her chronological age and developmental stage.

        2.    Mentally or behaviorally disabled.

        3.    Drug dependent, including prescribed medication and/or illegal substances, and the dependency is potentially life-threatening.

        4.    Absent from home for more than 24 hours before being reported to law enforcement as missing.

        5.    In a life-threatening situation.

        6.    In the company of others who could endanger his/her welfare.

        7.    Absent in a way that is inconsistent with established patterns of behavior and cannot be readily explained. Most children have an established and reasonably predictable routine.

        8.    Involved in a situation that would cause a reasonable person to conclude the person should be considered at risk.

        9.    Intellectual or developmental disability, or an impaired mental condition such as dementia or brain injury (ORS 181A.320).

        10.    A victim of first- or second-degree custodial interference or kidnapping (ORS 181A.310).

**Missing person** - Any person who is reported missing to law enforcement when that person's location is unknown.

**Missing person networks** - Databases or computer networks that are available to law enforcement and are suitable for obtaining information related to missing person investigations. This includes the National Crime Information Center (NCIC), the Oregon Law Enforcement Data System (LEDS) and the Oregon State Police Missing Children Clearinghouse.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000140

**Exhibit 1**
**Page 130 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Missing Persons*

---

### 333.2  POLICY
The University of Oregon Police Department does not consider any report of a missing person to be routine and assumes that the missing person is in need of immediate assistance until an investigation reveals otherwise. The University of Oregon Police Department gives missing person cases priority over property-related cases and does not require a specific amount of time to have passed before beginning a missing person investigation.

### 333.3  REQUIRED FORMS AND BIOLOGICAL SAMPLE COLLECTION KITS
The Investigation Unit Supervisor shall ensure the following forms and kits are developed and available:

- Missing person report form

- Missing person investigation checklist that provides investigation guidelines and resources that could be helpful in the early hours of a missing person investigation

- Missing person school notification form

- Medical records release form

- Biological sample collection kits

### 333.4  ACCEPTANCE OF REPORTS
Any member encountering a person who wishes to report a missing person or runaway shall render assistance without delay. This can be accomplished by accepting the report via telephone or in-person and initiating the investigation. Those members who do not take such reports or who are unable to give immediate assistance shall promptly dispatch or alert a member who can take the report.

A report shall be accepted in all cases and regardless of where the person was last seen, where the person resides or any question of jurisdiction.

### 333.5  INITIAL INVESTIGATION
Officers or other members conducting the initial investigation of a missing person should take the following investigative actions, as applicable:

(a)  Respond to a dispatched call as soon as practicable.

(b)  Interview the reporting party and any witnesses to determine whether the person qualifies as a missing person and, if so, whether the person may be at risk.

(c)  Notify a supervisor immediately if there is evidence that a missing person is either at risk or may qualify for a public alert, or both (see the Public Alerts Policy).

(d)  Broadcast a "Be on the Look-Out" (BOLO) bulletin if the person is under 16 years of age or there is evidence that the missing person is at risk. The BOLO should be

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000141

**Exhibit 1**
**Page 131 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Missing Persons*

broadcast as soon as practicable but in no event more than one hour after determining the missing person is under 16 years of age or may be at risk.

(e) Ensure that entries are made into the appropriate missing person networks, as follows:

1. Immediately, when the missing person is at risk.

2. In all other cases, as soon as practicable, but not later than two hours from the time of the initial report.

(f) Complete the appropriate report forms accurately and completely and initiate a search as applicable under the facts.

(g) Collect and/or review:

1. A photograph and fingerprint card of the missing person, if available.

2. A voluntarily provided biological sample of the missing person, if available (e.g., toothbrush, hairbrush).

3. Any documents that may assist in the investigation, such as court orders regarding custody.

4. Any other evidence that may assist in the investigation, including personal electronic devices (e.g., cell phones, computers).

(h) When circumstances permit and if appropriate, attempt to determine the missing person's location through his/her telecommunications carrier.

(i) Contact the appropriate agency if the report relates to a missing person report previously made to another agency and that agency is actively investigating the report. When this is not practicable, the information should be documented in an appropriate report for transmission to the appropriate agency. If the information relates to an at-risk missing person, the member should notify a supervisor and proceed with reasonable steps to locate the missing person.

In cases where the missing person resides in on-campus housing, the following steps will be taken as soon as it is practical to do so once the person is determined to be missing, and in no case later than 24 hours after the student is reported to have been missing:

(a) An officer will obtain information from the student's confidential contact card, located in the student's residential hall, regarding Emergency Contacts and Contacts in Case of Missing Person

(b) Contact/Notify each of the listed contacts as soon as possible

(c) Document any unsuccessful attempts at making such contact

(d) Notify the Eugene Police Department of the particulars of the case

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000142

**Exhibit 1**
**Page 132 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Missing Persons*

(e) If the missing student is under 18 years of age, and not known to be emancipated, notify the student's custodial parent/legal guardian and other designated contact person

(f) Notifications to the following persons will be made:

1. Chain of Command up to and including the Chief of Police, immediately

2. UO-Incident Management Team (UO-IMT) via the Internal Incident Notification Policy (UO-IIN)

3. Additional notifications other than the UO-IMT may be made at the discretion of the Chief where circumstances warrant

In cases involving a student who does not reside on campus, the above notifications should be made when it is reasonable.

## 333.6  REPORT PROCEDURES AND ROUTING

Members should complete all missing person reports and forms promptly and advise the appropriate supervisor as soon as a missing person report is ready for review.

### 333.6.1  SUPERVISOR RESPONSIBILITIES

The supervisor shall review and approve missing person reports upon receipt and ensure resources are deployed as appropriate, initiating a command post as needed. The reports should be promptly sent to the Records Section.

The supervisor shall also ensure applicable notifications and public alerts are made, including media and public alerts, and documented and that records have been entered into the appropriate missing person networks. The on-duty watch commander shall ensure proper guidelines are followed to notify media when appropriate, including all cases of missing vulnerable adults.

The supervisor should also take reasonable steps to identify and address any jurisdictional issues to ensure cooperation among agencies. If the case falls within the jurisdiction of another agency, the supervisor should facilitate transfer of the case to the agency of jurisdiction.

### 333.6.2  LAW ENFORCEMENT RECORDS/DISPATCH UNIT RESPONSIBILITIES

The receiving member shall:

(a) As soon as reasonable under the circumstances, notify and forward a copy of the report to the agency of jurisdiction for the missing person's residence in cases where the missing person is a resident of another jurisdiction.

(b) Ensure that all appropriate entries are made into the appropriate missing persons networks.

(c) If the initial investigating officer has probable cause to believe that custodial interference in the first or second degree or kidnapping in the first or second degree and involves a child

1. HB 2601 requires that the agency notify the Missing Children Clearinghouse within 24 hours

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000143

**Exhibit 1**
**Page 133 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Missing Persons*

2. When CERC makes entry into LEDS in these circumstances, all missing person entries will be posted to the Oregon State Police website within 24 hours and will contain the following information:

   (a) Name

   (b) Age when missing

   (c) Current age

   (d) Height

   (e) Weight

   (f) Hair color

   (g) Eye color

   (h) County that the report was made

3. If the investigating officer does not want this information made public for the integrity of the investigation, contact with the Oregon State Police should be made immediately.

4. All missing persons entries into LEDS are received by the Missing Children Clearinghouse, fulfilling the mandatory notification requirement.

(d) Notify and forward a copy of the report to the agency of jurisdiction where the missing person was last seen.

(e) Notify and forward a copy of the report to the agency of jurisdiction for the missing person's intended or possible destination, if known.

(f) Forward a copy of the report to the Investigation Unit.

## 333.7   INVESTIGATION UNIT FOLLOW-UP
In addition to completing or continuing any actions listed above, the investigator assigned to a missing person investigation:

(a) Should ensure that the missing person's school is notified within 10 days if the missing person is a juvenile.

1. The notice shall be in writing and should also include a photograph.

2. The investigator should meet with school officials as appropriate to stress the importance of including the notice in the juvenile's student file, along with the investigator's contact information, if the school receives a call requesting the transfer of the missing child's files to another school.

(b) Should re-contact the reporting person and/or other witnesses within 30 days of the initial report and within 30 days thereafter to determine if any additional information has become available.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000144

**Exhibit 1**
**Page 134 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Missing Persons*

---

(c)     Shall, if the person has not been located within 30 days, ensure that a biological sample, if available, is forwarded to the Oregon State Police (ORS 146.187).

(d)     Should consider contacting other agencies involved in the case to determine if any additional information is available.

(e)     Shall verify and update the Oregon LEDS, the Oregon State Police Missing Children Clearinghouse, NCIC and any other applicable missing person networks within 30 days of the original entry into the networks and every 30 days thereafter until the missing person is located (42 USC § 5780).

(f)     Should continue to make reasonable efforts to locate the missing person and document these efforts at least every 30 days.

(g)     Shall maintain a close liaison with state and local child welfare systems and the National Center for Missing and Exploited Children (NCMEC) if the missing person is under the age of 21 and shall promptly notify NCMEC when the person is missing from a foster care family home or childcare institution (42 USC § 5780).

(h)     Should make appropriate inquiry with the Medical Examiner.

(i)     Should obtain and forward medical and dental records, photos, X-rays and biological samples, as applicable.

(j)     Shall attempt to obtain the most recent photograph for persons under 18 years of age if it has not been obtained previously and forward the photograph to Oregon State Police and enter the photograph into applicable missing person networks (42 USC § 5780).

(k)     Should consider making appropriate entries and searches in the National Missing and Unidentified Persons System (NamUs).

(l)     In the case of an at-risk missing person or a person who has been missing for an extended time, should consult with a supervisor regarding seeking federal assistance from the FBI and the U.S. Marshals Service (28 USC § 566).

In cases involving missing students, the case will be assigned for follow-up, whether UOPD has jurisdiction, or not. If UOPD does not have jurisdiction, the assigned investigator will be the lead contact for the agency having jurisdiction in order to assist in the investigation. If the case involves a student that resides in on-campus housing, the assigned investigator will ensure that all notifications listed in this policy have been made and will be responsible for updating those individuals of the case progress, as appropriate.  The case of of an at-risk missing person or a person who has been missing for an extended time, should consult with a supervisor regarding seeking federal assistance from the FBI and the U.S. Marshals Service (28 USC § 566).

## 333.8   WHEN A MISSING PERSON IS FOUND
When any person reported missing is found, the assigned investigator shall document the location of the missing person in the appropriate report, notify the relatives and/or reporting party and other involved agencies and refer the case for additional investigation if warranted.

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000145

**Exhibit 1**
**Page 135 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Missing Persons*

The Captain of Administration shall ensure that, upon receipt of information that a missing person has been located, the following occurs:

(a) Notification is made to the Oregon State Police.

(b) A missing child's school is notified.

(c) Entries are made in the applicable missing person networks.

(d) When a person is at risk, the fact that the person has been found should be reported within 24 hours to the Oregon State Police.

(e) Notification shall be made to any other law enforcement agency that took the initial report or participated in the investigation.

(f) All information and materials obtained for the purpose of identifying the missing person are destroyed if the person is found, or sealed if the person is found to be no longer living (ORS 146.189(2)).

333.8.1  UNIDENTIFIED PERSONS
Department members investigating a case of an unidentified person who is deceased or a living person who cannot assist in identifying him/herself should:

(a) Obtain a complete description of the person.

(b) Enter the unidentified person's description into the NCIC Unidentified Person File.

(c) Use available resources, such as those related to missing persons, to identify the person.

**333.9  CASE CLOSURE**
The Investigation Unit Supervisor may authorize the closure of a missing person case after considering the following:

(a) Closure is appropriate when the missing person is confirmed returned or evidence matches an unidentified person or body.

(b) If the missing person is a resident of University of Oregon or this department is the lead agency, the case should be kept under active investigation for as long as the person may still be alive. Exhaustion of leads in the investigation should not be a reason for closing a case.

(c) If this department is not the lead agency, the case can be made inactive if all investigative leads have been exhausted, the lead agency has been notified and entries are made in the applicable missing person networks, as appropriate.

(d) A missing person case should not be closed or reclassified because the person would have reached a certain age or adulthood or because the person is now the subject of a criminal or civil warrant.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000146

**Exhibit 1**
**Page 136 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Missing Persons*

**333.10  TRAINING**

Subject to available resources, the Captain of Administration should ensure that members of this department whose duties include missing person investigations and reports receive training that includes:

(a)  The initial investigation:

　　1.  Assessments and interviews

　　2.  Use of current resources, such as Mobile Audio Video (MAV)

　　3.  Confirming missing status and custody status of minors

　　4.  Evaluating the need for a heightened response

　　5.  Identifying the zone of safety based on chronological age and developmental stage

(b)  Briefing of department members at the scene.

(c)  Identifying NCIC Missing Person File categories (e.g., disability, endangered, involuntary, juvenile and catastrophe).

(d)  Verifying the accuracy of all descriptive information.

(e)  Initiating a neighborhood investigation.

(f)  Investigating any relevant recent family dynamics.

(g)  Addressing conflicting information.

(h)  Key investigative and coordination steps.

(i)  Managing a missing person case.

(j)  Additional resources and specialized services.

(k)  Update procedures for case information and descriptions.

(l)  Preserving scenes.

(m)  Internet and technology issues (e.g., Internet use, cell phone use).

(n)  Media relations.

(o)  Interacting with individuals with cognitive impairment, including dementia, intellectual and developmental disabilities, and brain injuries (ORS 181A.320).

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000147

**Exhibit 1**
**Page 137 of 550**



**Policy**
# 335

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Amber Alerts

### 335.1  PURPOSE AND SCOPE
The purpose of this policy is to provide guidelines for alerting the public to important information and soliciting public aid when it appears that a child has been abducted.

### 335.2  RESPONSIBILITIES

#### 335.2.1  EMPLOYEE RESPONSIBILITIES
Employees of the University of Oregon Police Department should notify their supervisor, Executive Coordinator or Investigations Unit Supervisor as soon as practicable upon learning of a situation where a child appears to have been abducted under circumstances listed below. Public notification in the form of an Amber Alert can elicit the help of the media and public to assist in locating the missing child, apprehending the suspect and gathering information.

#### 335.2.2  SUPERVISOR RESPONSIBILITIES
A Executive Coordinator apprised of the need for a public alert is responsible to make the appropriate notifications based upon the circumstances of each situation. The Executive Coordinator shall promptly notify the Chief of Police, the Police Operations Captain and the Public Information Officer when any public alert is generated.

The supervisor in charge of the investigation to which the alert relates is responsible for the following:

    (a)   Updating alerts

    (b)   Cancelling alerts

    (c)   Ensuring all appropriate reports are completed

    (d)   Preparing an after-action evaluation of the investigation to be forwarded to the Chief

### 335.3  AMBER ALERTS
The Oregon AMBER Alert is a voluntary partnership between law enforcement agencies and local broadcasters to rapidly disseminate an emergency alert to the public when a child is abducted under emergency circumstances and the child may be in danger of serious bodily harm or death.

#### 335.3.1  CRITERIA
All of the following criteria must exist before an AMBER Alert will be issued:

    (a)   There is confirmation that a child abduction has occurred.

    (b)   The child is under 18 years of age.

    (c)   The child may be in danger of serious bodily harm or death.

    (d)   There is sufficient descriptive information about the child, abductor and/or the suspect's vehicle to believe that an immediate broadcast alert will help.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000148

**Exhibit 1**
**Page 138 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Amber Alerts*

    (e)    The child's name and other critical data elements, including the child abduction (CA) and AMBER Alert (AA) flags, either have been or will be entered into the National Crime Information Center (NCIC) system.

An AMBER Alert should not be used if the child is a runaway or has been abducted as a result of a child custody situation, unless the child may be in danger of serious bodily harm or death.

## 335.3.2   PROCEDURE
The AMBER Alert Web Portal is used to post the appropriate alert information.

Prior to posting the AMBER Alert message, consideration should be given to ensuring adequate staffing for the tip line, 9-1-1 lines and any media line. AMBER Alerts generate significant public and media interest. It is likely that a high volume of calls from the public and media will be received. Reassigning personnel from other units or requesting mutual aid from other agencies should be considered.

    (a)    The Public Information Officer, Executive Coordinator or Investigations Sergeant should consider whether to prepare a press release that includes all available information that might aid in locating the child, such as:

        1.    The child's identity, age, physical and clothing description, including any distinguishing characteristics.

        2.    Photograph, if available.

        3.    The location where the abduction occurred or where the child was last seen.

        4.    The suspect's identity, age, physical and clothing description, if known.

        5.    Pertinent vehicle license number and description, if known.

        6.    Detail regarding direction of travel and potential destinations, if known.

        7.    Contact information for the Public Information Officer or other authorized individual to handle media liaison.

        8.    A telephone number for the public to call with leads or information.

    (b)    Information on the abducted child, suspect vehicle and suspect should be entered into the Law Enforcement Data System (LEDS) and NCIC as soon as feasible. The suspect's name, if known, should be entered in the "AKA" moniker field. The child's name and other critical data elements, including the child abduction (CA) and AMBER Alert (AA) flags, must be entered into the NCIC system in order to trigger the resources of the National Center for Missing and Exploited Children (NCMEC) and the FBI.

    (c)    The Records Section will send a statewide Administrative Message (AM) via LEDS with the information. The text of the message will begin with the words, "Oregon AMBER Alert."

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Amber Alerts*

(d)  The information in the press release should also be forwarded to the dispatch center so that general broadcasts can be made to local law enforcement agencies.

(e)  Consideration should be given to whether to utilize the following resources:

1.  Federal Bureau of Investigation (FBI Local Office)

2.  National Center for Missing and Exploited Children 800-843-5678

The FBI and NCMEC will have received notification of the AMBER Alert via the NCIC computer entries. If needed, the Oregon State Police Missing Children Clearinghouse is available to assist agencies with any additional notifications or to serve as the liaison with NCMEC.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

Amber Alerts - 140

UO_Alvarez000150

**Exhibit 1
Page 140 of 550**



**Policy**
**337**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Victim and Witness Assistance

## 337.1  PURPOSE AND SCOPE
The purpose of this policy is to ensure that crime victims and witnesses receive appropriate assistance, that they are provided with information from government and private resources, and that the agency meets all related legal mandates.

## 337.2  POLICY
The University of Oregon Police Department is committed to providing guidance and assistance to the victims and witnesses of crime. The employees of the University of Oregon Police Department will show compassion and understanding for victims and witnesses and will make reasonable efforts to provide the support and information identified in this policy.

## 337.3  CRIME VICTIM LIAISON
The Chief of Police may appoint a member of the Department to serve as the crime victim liaison. The crime victim liaison will be the point of contact for individuals requiring further assistance or information from the University of Oregon Police Department regarding benefits from crime victim resources. This person shall also be responsible for maintaining compliance with all legal mandates related to crime victims and/or witnesses.

### 337.3.1  CRIME VICTIM LIAISON DUTIES
The crime victim liaison is specifically tasked with the following:

(a) Providing oral or written notice to crime victims of the Oregon Crime Victim Bill of Rights. This may be accomplished by providing the information in victim handouts or providing the notice electronically (ORS 147.417).

(b) Sexual assault investigations (2016 Oregon Laws, c.89, § 4):

    1. Receiving and responding to all inquiries concerning sexual assault kits.

    2. Providing any information the victim requests concerning sexual assault kits in a manner of communication designated by the victim, as soon as possible and within 30 days of the inquiry unless doing so would interfere with the investigation. This information includes the location, testing date and testing results of a kit, whether a DNA sample was obtained from the kit, whether or not there are matches to DNA profiles in state or federal databases and the estimated destruction date for the kit.

    3. Acting as liaison with the Oregon State Police (OSP) regarding submitted kits.

    4. Allowing a sexual assault victim to provide written authorization for a designee to access information on the victim's behalf.

    5. Upon request of the victim, an untested nonanonymous kit may be reclassified as an anonymous kit or an untested anonymous kit be reclassified as a nonanonymous kit.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000151

**Exhibit 1**
**Page 141 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Victim and Witness Assistance*

       (a)   Notifying the OSP if a sexual assault kit is reclassified.

## 337.4   CRIME VICTIMS
Officers should provide all victims with the applicable victim information handouts.

Officers should never guarantee a victim's safety from future harm but may make practical safety suggestions to victims who express fear of future harm or retaliation. Officers should never guarantee that a person qualifies as a victim for the purpose of compensation or restitution but may direct him/her to the proper written department material or available victim resources.

### 337.4.1   VICTIM PERSONAL REPRESENTATIVE
Victims of a person crime, as defined in ORS 147.425, have the right to select a person, 18 years of age or older, to be the victim's personal representative to accompany the victim during phases of an investigation, including medical examinations. The personal representative may only be excluded if there is a belief that the representative would compromise the process (ORS 147.425).

## 337.5   VICTIM INFORMATION
The Administration Supervisor shall ensure that victim information handouts are available and current. These should include as appropriate:

       (a)   Shelters and other community resources for victims including domestic violence and sexual assault victims.

       (b)   Assurance that sexual assault victims will not incur out-of-pocket expenses for forensic medical exams, and information about evidence collection, storage and preservation in sexual assault cases (42 USC § 3796gg-4; 42 USC § 10603f).

       (c)   An advisement that a person who was arrested may be released on bond or some other form of release and that the victim should not rely upon an arrest as a guarantee of safety.

       (d)   A clear explanation of relevant court orders and how they can be obtained.

       (e)   Information regarding available compensation for qualifying victims of crime.

       (f)   VINE® information (Victim Information and Notification Everyday), including the telephone number and whether this free service is available to allow victims to check on an offender's custody status and to register for automatic notification when a person is released from jail.

       (g)   Notice regarding U-Visa and T-Visa application processes.

       (h)   Resources available for victims of identity theft.

       (i)   A place for the officer's name, badge number and any applicable case or incident number.

       (j)   A statement of legal rights and remedies available to victims of abuse, as required by ORS 133.055.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000152

**Exhibit 1**
**Page 142 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Victim and Witness Assistance*

(k)    Information about the Address Confidentiality Program. This program is from the Oregon Department of Justice, Crime Victims' Services Division for victims of domestic violence, sexual offenses, stalking or human trafficking (ORS 192.826).

(l)    Oregon Crime Victim Bill of Rights (ORS 147.417).

(m)    Information for victims of sexual assault that includes, but is not limited to (2016 Oregon Laws, c.89, § 4).

   1.    Contact information for the crime victim liaison for victims of sexual assault.

   2.    Notice that victims may request and receive information concerning sexual assault kits if providing the information would not interfere with the investigation.

## 337.6  WITNESSES

Officers should never guarantee a witness' safety from future harm or that his/her identity will always remain confidential. Officers may make practical safety suggestions to witnesses who express fear of future harm or retaliation.

Officers should investigate allegations of witness intimidation and take enforcement action when lawful and reasonable.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000153

**Exhibit 1**
**Page 143 of 550**



**Policy**
**339**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Hate (Bias) Crimes

## 339.1  PURPOSE AND SCOPE
This department recognizes and places a high priority on the rights of all individuals guaranteed under the Constitution and the laws of this state. When such rights are infringed upon by violence, threats or other harassment, this department will utilize all available resources to see that justice is served under the law. This policy provides members of this department with guidelines for identifying and investigating incidents and crimes that may be motivated by hatred or other bias.

## 339.2  DEFINITIONS
**Hate Crimes** - consist of any act of intimidation, harassment, physical force or threat of physical force directed against any person, group, family, community organization or property motivated in whole or in part by hostility toward real or perceived race, ethnic background, national origin, religious belief, gender, age, disability, sexual orientation or political affiliation with the intent of causing fear, injury, intimidation or to deter the free exercise and enjoyment of any right secured by the Constitution or the law.

## 339.3  CRIMINAL STATUTES
    (a)   Harassment (ORS 166.065)

    (b)   Intimidation in the Second Degree (ORS 166.155)

    (c)   Intimidation in the First Degree (ORS 166.165)

    (d)   Menacing (ORS 163.190)

    (e)   Any degree of Assault (ORS 163.160 to ORS 163.185)

    (f)   Recklessly Endangering (ORS 163.195)

    (g)   Hazing (ORS 163.197)

    (h)   Unlawful use of a stun gun, tear gas or mace (ORS 163.212 and ORS 163.213)

    (i)   Kidnapping (ORS 163.215 to ORS 163.235)

    (j)   Coercion (ORS 163.275)

    (k)   Any sex offense (ORS 163.355 to ORS 163.427)

    (l)   Stalking (ORS 163.732)

    (m)   Any degree of Robbery (ORS 164.395 to ORS 164.415)

Federal law also prohibits discrimination-based acts and may be considered in addition to or in lieu of state law, depending on circumstances (18 USC § 245).

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000154

**Exhibit 1**
**Page 144 of 550**

# University of Oregon Police Department
#### University of Oregon Police Department Policy Manual

*Hate (Bias) Crimes*

---

### 339.4  PREVENTING AND PREPARING FOR LIKELY HATE CRIMES
While it is recognized that not all crime can be prevented, this department is committed to taking a proactive approach to preventing and preparing for likely hate crimes by among other things:

(a)  Officers should make an affirmative effort to establish contact with persons and groups within the community who are likely targets of hate crimes to form and cooperate with prevention and response networks

(b)  Providing victim assistance and follow-up as outlined below, including community follow-up

### 339.5  PROCEDURE FOR INVESTIGATING HATE CRIMES
Whenever any member of this department receives a report of a suspected hate crime or other activity that reasonably appears to involve a potential hate crime, the following should occur:

(a)  Officer(s) will be promptly assigned to contact the victim, witness, or reporting party to investigate the matter further as circumstances may dictate

(b)  A supervisor should be notified of the circumstances as soon as practical

(c)  Once immediate priority aspects of any such situation have been addressed (e.g., treatment of victims, apprehension of present suspects, etc.), the assigned officer(s) will take all reasonable steps to preserve available evidence that may tend to establish that a hate crime was involved

(d)  The assigned officer(s) will interview available witnesses, victims and others to determine what circumstances, if any, indicate that the situation may involve a hate crime

(e)  Depending on the situation, the assigned officer(s) or supervisor may request additional assistance from detectives or other resources to further the investigation

(f)  The assigned officer(s) will include all available evidence indicating the likelihood of a hate crime in the relevant report(s). All related reports will be clearly marked as "Hate Crimes" and, absent prior approval of a supervisor, will be completed and submitted by the assigned officer(s) before the end of the shift

(g)  The assigned officer(s) will provide the victim(s) of any suspected hate crime with a brochure on hate crimes. Such brochures will also be available to members of the general public upon request. The assigned officer(s) should also make reasonable efforts to assist the victim(s) by providing available information on local assistance programs and organizations

(h)  The assigned officer(s) and supervisor should take reasonable steps to ensure that any such situation does not escalate further

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Hate (Bias) Crimes*

339.5.1   INVESTIGATION UNIT RESPONSIBILITY

If a case is assigned to the Investigations Unit, the assigned detective will be responsible for following up on the reported hate crime as follows:

(a)   Coordinate further investigation with the District Attorney and other law enforcement agencies, as appropriate

(b)   Maintain contact with the victim(s) and other involved individuals as needed

(c)   Provide non-sensitive incident information to the Bias Response Team, Office of Student Affairs, in a reasonably timely manner

(d)   Provide assistance to the Crime Analysis Unit for statistical data collection on suspected hate crimes and tracking as indicated

**339.6   TRAINING**

All members of this Department will receive periodic Department of Public Safety Standards and Training approved training on hate crime recognition and investigation.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000156

**Exhibit 1**
**Page 146 of 550**



**Policy 341**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Disciplinary Policy

### 341.1  PURPOSE AND SCOPE
To provide employees of this department with guidelines for the handling of disciplinary processes.

Where a collective bargaining agreement, Oregon Administrative Rules pertaining to the Oregon University System or the University of Oregon, or other University of Oregon policy differs from this policy, they prevail.

### 341.2  DISCIPLINE POLICY
The University of Oregon Police Department will establish fair and consistent practices for the investigation of conduct and policy violations and the administration of discipline to its employees.

#### 341.2.1  DUE PROCESS
No disciplinary action shall be taken against an employee without just cause.

Prior to taking disciplinary action against an employee a supervisor or manager shall:

(a) Notify the employee in writing of the charges and the proposed disciplinary action; and

(b) Provide the employee with an opportunity to respond to the charges at an informal hearing which may be recorded with the person or persons having authority to impose the proposed disciplinary action.

#### 341.2.2  PROGRESSIVE DISCIPLINE
The administration of discipline is generally expected to be progressive in nature, with relatively minor violations of rules resulting in minor disciplinary action for first offenders. Repetitive similar violations, or more serious violations, would generally result in progressively more serious forms of discipline being administered.

Nothing in this policy is intended to preclude the administration of more serious forms of discipline, including termination, for a first offense if the seriousness of the offense warrants it.

### 341.3  INVESTIGATION OF DISCIPLINARY ALLEGATIONS
Regardless of the source of an allegation of misconduct, all such matters will be investigated in accordance with Personnel Complaint Procedure Policy Manual § 1020.

### 341.4  POST INVESTIGATION PROCEDURES

#### 341.4.1  DIRECTOR RESPONSIBILITIES
Upon receipt of any completed personnel investigation, the Division Commander of the involved employee shall review the entire investigative file, the employee's personnel file and any other relevant materials.

The Division Commander may make recommendations regarding the disposition of any allegations and the amount of discipline, if any, to be imposed.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000157

**Exhibit 1**
**Page 147 of 550**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Disciplinary Policy*

(a) Prior to forwarding recommendations to the Chief of Police, the Division Commander may return the entire investigation to the assigned supervisor for further investigation or action.

(b) When forwarding any written recommendation to the Chief of Police, the Division Commander shall include all relevant materials supporting the recommendation. Actual copies of an employee's existing personnel file need not be provided and may be incorporated by reference.

### 341.4.2    RESPONSIBILITIES OF THE CHIEF OF POLICE
Upon receipt of any written recommendation for disciplinary action, the Chief of Police shall review the recommendation and all accompanying materials.

The Chief of Police may modify any recommendations and/or may return the file to the Division Commander for further investigation or action.

Once the Chief of Police is satisfied that no further investigation or action is required by staff, the Chief of Police shall make a recommendation to the appropriate University appointing authority regarding the amount of discipline, if any, to be imposed.

In the event disciplinary action is recommended, the Chief of Police shall provide the employee with written notice of the following information:

(a) Specific charges set forth in separate counts, describing the conduct underlying each count.

(b) A separate recommendation of proposed discipline for each charge.

(c) A statement that the employee has been provided with or given access to all of the materials considered by the Chief of Police in recommending the proposed discipline.

(d) An opportunity to respond orally or in writing to the Chief of Police within five days of receiving the notice.

    1. Upon a showing of good cause by the employee, the Chief of Police may grant a reasonable extension of time for the employee to respond.

    2. If the employee elects to respond orally, the presentation shall be recorded by the Department. Upon request, the employee shall be provided with a copy of the recording.

### 341.5    EMPLOYEE RESPONSE
The pre-discipline process is intended to provide the accused employee with an opportunity to present a written or oral response to the Chief of Police after having had an opportunity to review the supporting materials and prior to imposition of any recommended discipline. The employee shall consider the following:

(a) This response is not intended to be an adversarial or formal hearing.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000158

**Exhibit 1**
**Page 148 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Disciplinary Policy*

    (b)    Although the employee may be represented by an uninvolved representative or legal counsel, the response is not designed to accommodate the presentation of testimony or witnesses.

    (c)    The employee may suggest that further investigation could be conducted or the employee may offer any additional information or mitigating factors for the Chief of Police to consider.

    (d)    In the event that the Chief of Police elects to cause further investigation to be conducted, the employee shall be provided with the results of such subsequent investigation prior to the imposition of any discipline.

    (e)    The employee may thereafter have the opportunity to further respond orally or in writing to the Chief of Police on the limited issue(s) of information raised in any subsequent materials.

    (f)    Once the employee has completed his/her response or, if the employee has elected to waive any such response, the Chief of Police shall consider all information received in regard to the recommended discipline. The Chief of Police shall thereafter render a timely written decision to the employee imposing, modifying or rejecting the recommended discipline. In the event of a termination, the final notice of discipline shall also inform the employee of the reason(s) for termination and the process to receive all remaining fringe and retirement benefits.

    (g)    Once the Chief of Police has issued a written decision, the discipline shall become effective.

## 341.6   RESIGNATIONS/RETIREMENTS PRIOR TO DISCIPLINE
In the event that an employee tenders a written retirement or resignation prior to the imposition of discipline, it shall be noted in the file.

The tender of a retirement or resignation by itself shall not serve as grounds for the termination of pending discipline.

## 341.7   POST RESPONSE PROCEDURE
In situations resulting in the imposition of a reprimand, pay sanction, or termination of a non-probationary employee, the employee shall have the right to an evidentiary appeal of the imposition of discipline by the Chief of Police pursuant to the operative Collective Bargaining Agreement and personnel rules.

## 341.8   DISCIPLINARY ACTION AGAINST PROBATIONARY EMPLOYEES
In the event that a trial-service employee is terminated solely for unsatisfactory performance or the failure to meet department standards, the employee shall have no right to appeal and the following shall be considered:

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000159

**Exhibit 1**
**Page 149 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Disciplinary Policy*

(a) Termination of a trial-service employee for such failure to pass trial service shall be so reflected in the employee's personnel file.

(b) At all times during any investigation of allegations of misconduct involving a trial-service employee, such employee shall be afforded all procedural rights set forth in Department policies.

(c) A trial-service employee's appeal of disciplinary action shall be limited to an opportunity for the employee to attempt to establish that the underlying allegations should not be sustained. Nothing in this policy or procedure, however, should be construed to establish any sort of property interest in or right to the employee's continuation of employment.

(d) The burden of proof for any trial-service employee's appeal of disciplinary action shall rest with the employee and will require proof by a preponderance of the evidence.

(e) In the event that a trial-service employee meets his or her burden of proof in such a disciplinary appeal, the Department shall remove all reference to the underlying allegations of misconduct from the employee's personnel file.

(f) In the event that a trial-service employee fails to meet his or her burden of proof in such a disciplinary appeal, the employee shall have no further right to appeal.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department



**Policy**
**343**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Information Technology Use

### 343.1  PURPOSE AND SCOPE
This policy describes the use of department computers, software and systems.

Pursuant to the University of Oregon Acceptable Use of Computing Resources Policy and the corresponding Addendum(s), all computers, software and systems supplied by the UOPD are for administrative and law enforcement purposes only, and their use is strictly limited to the conduct of Department business. Members shall sign a Computer User Agreement prior to being given access to Department computers or systems.

### 343.1.1  DEFINITIONS
Definitions related to this policy include:

**Computer system** - All computers (on-site and portable), electronic devices, hardware, software, and resources owned, leased, rented or licensed by the University of Oregon Police Department that are provided for official use by its members. This includes all access to, and use of, Internet Service Providers (ISP) or other service providers provided by or through the Department or department funding.

**Hardware** - Includes, but is not limited to, computers, computer terminals, network equipment, electronic devices, telephones, including cellular and satellite, pagers, modems or any other tangible computer device generally understood to comprise hardware.

**Software** - Includes, but is not limited to, all computer programs, systems and applications, including shareware. This does not include files created by the individual user.

**Temporary file, permanent file or file** - Any electronic document, information or data residing or located, in whole or in part, on the system including, but not limited to, spreadsheets, calendar entries, appointments, tasks, notes, letters, reports, messages, photographs or videos.

### 343.2  POLICY
It is the policy of the University of Oregon Police Department that members shall use information technology resources, including computers, software and systems, that are issued or maintained by the Department in a professional manner and in accordance with this policy.

### 343.3  PRIVACY EXPECTATION
Members forfeit any expectation of privacy with regard to emails, texts or anything published, shared, transmitted or maintained through file-sharing software or any Internet site that is accessed, transmitted, received or reviewed on any department computer system.

The Department reserves the right to access, audit and disclose, for whatever reason, any message, including attachments, and any information accessed, transmitted, received or reviewed over any technology that is issued or maintained by the Department, including the department email system, computer network and/or any information placed into storage on any department

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000161

**Exhibit 1**
**Page 151 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Information Technology Use*

 system or device. This includes records of all keystrokes or Web-browsing history made at any department computer or over any department network. The fact that access to a database, service or website requires a username or password will not create an expectation of privacy if it is accessed through department computers, electronic devices or networks.

Employees may not be asked for or required to provide their username, password or other means of authentication that provides access to their personal social media accounts unless otherwise allowed under ORS 659A.330.

### 343.4   RESTRICTED USE
Members shall not access computers, devices, software or systems for which they have not received prior authorization or the required training. Members shall immediately report unauthorized access or use of computers, devices, software or systems by another member to their supervisors or Watch Commanders.

Members shall not use another person's access passwords, logon information and other individual security data, protocols and procedures unless directed to do so by a supervisor.

#### 343.4.1   OFF-DUTY USE
Members shall only use technology resources provided by the Department while on-duty or in conjunction with specific on-call assignments unless specifically authorized by a supervisor. This includes the use of telephones, cell phones, texting, email or any other "off the clock" work-related activities. This also applies to personally owned devices that are used to access department resources.

Refer to the Personal Communication Devices Policy for guidelines regarding off-duty use of personally owned technology.

#### 343.4.2   INTERNET USE
Internet access provided by or through the Department shall be strictly limited to department-related activities. Internet sites containing information that is not appropriate or applicable to department use and which shall not be intentionally accessed include, but are not limited to, adult forums, pornography, gambling, chat rooms and similar or related Internet sites. Certain exceptions may be permitted with the express approval of a supervisor as a function of a member's assignment.

Downloaded information shall be limited to messages, mail and data files.

#### 343.4.3   HARDWARE
Access to technology resources provided by or through the Department shall be strictly limited to department-related activities. Data stored on or available through department computer systems shall only be accessed by authorized members who are engaged in an active investigation or assisting in an active investigation or who otherwise have a legitimate law enforcement or department-related purpose to access such data. Any exceptions to this policy must be approved by a supervisor.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000162

**Exhibit 1**
**Page 152 of 550**

# University of Oregon Police Department
### University of Oregon Police Department Policy Manual

*Information Technology Use*

343.4.4  SOFTWARE

Members shall not copy or duplicate any copyrighted or licensed software except for a single copy for backup purposes in accordance with the software company's copyright and license agreement.

To reduce the risk of a computer virus or malicious software, members shall not install any unlicensed or unauthorized software on any department computer. Members shall not install personal copies of any software onto any department computer.

When related to criminal investigations, software program files may be downloaded only with the approval of the information systems technology (IT) staff and with the authorization of the Chief of Police or the authorized designee.

No member shall knowingly make, acquire or use unauthorized copies of computer software that is not licensed to the Department while on department premises, computer systems or electronic devices. Such unauthorized use of software exposes the Department and involved members to severe civil and criminal penalties.

Introduction of software by members should only occur as part of the automated maintenance or update process of department- or University-approved or installed programs by the original manufacturer, producer or developer of the software.

Any other introduction of software requires prior authorization from IT staff and a full scan for malicious attachments.

**343.5  PROTECTION OF AGENCY SYSTEMS AND FILES**

All members have a duty to protect the computer system and related systems and devices from physical and environmental damage and are responsible for the correct use, operation, care and maintenance of the computer system.

Members shall ensure department computers and access terminals are not viewable by persons who are not authorized users. Computers and terminals should be secured, users logged off and password protections enabled whenever the user is not present. Access passwords, logon information and other individual security data, protocols and procedures are confidential information and are not to be shared. Password length, format, structure and content shall meet the prescribed standards required by the computer system or as directed by a supervisor and shall be changed at intervals as directed by IT staff or a supervisor.

It is prohibited for a member to allow an unauthorized user to access the computer system at any time or for any reason. Members shall promptly report any unauthorized access to the computer system or suspected intrusion from outside sources (including the Internet) to a supervisor.

**343.6  INSPECTION OR REVIEW**

A supervisor or the authorized designee has the express authority to inspect or review the computer system, all temporary or permanent files, related electronic systems or devices, and any contents thereof, whether such inspection or review is in the ordinary course of his/her supervisory duties or based on cause.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000163

**Exhibit 1**
**Page 153 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

## *Information Technology Use*

Reasons for inspection or review may include, but are not limited to, computer system malfunctions, problems or general computer system failure, a lawsuit against the Department involving one of its members or a member's duties, an alleged or suspected violation of any department policy, a request for disclosure of data, or a need to perform or provide a service.

The IT staff may extract, download or otherwise obtain any and all temporary or permanent files residing or located in or on the department computer system when requested by a supervisor or during the course of regular duties that require such information.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000164

**Exhibit 1**
**Page 154 of 550**



**Policy**
**345**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Report Preparation

## 345.1  PURPOSE AND SCOPE
Report preparation is a major part of each officer's job. The purpose of reports is to document sufficient information to refresh the officer's memory and to provide sufficient information for follow-up investigation and successful prosecution. Report writing is the subject of substantial formalized training and on-the-job training.

### 345.1.1  REPORT PREPARATION
Employees should ensure that reports are sufficiently detailed for their purpose and free from errors prior to submission. It is the responsibility of the assigned employee to complete and submit all reports taken during the shift before going off-duty unless permission to hold the report has been approved by a supervisor. Generally, reports requiring prompt follow-up action on active leads, or arrest reports where the suspect remains in custody should not be held.

Handwritten reports must be prepared legibly. If the report is not legible, the submitting employee will be required by the reviewing supervisor to promptly make corrections and resubmit the report. Employees who generate reports on computers are subject to all requirements of this policy.

All reports shall accurately reflect the identity of the persons involved, all pertinent information seen, heard or assimilated by any other sense, and any actions taken. Employees shall not suppress, conceal or distort the facts of any reported incident, nor shall any employee make a false report orally or in writing. Generally, the reporting employee's opinions should not be included in reports unless specifically identified as such.

## 345.2  REQUIRED REPORTING
Written reports are required in all of the following situations on the appropriate department approved form unless otherwise approved by a supervisor.

### 345.2.1  CRIMINAL ACTIVITY REPORTING

When an employee responds to a call for service, or as a result of self-initiated activity becomes aware of any activity where a crime has occurred, the employee is required to document the activity. The fact that a victim is not desirous of prosecution is not an exception to documenting a report. The following are examples of required documentation:

    (a)    In every instance where a felony has occurred, the documentation shall take the form of a written crime report.

    (b)    In every instance where a misdemeanor crime has occurred and the victim desires a report, the documentation shall take the form of a written crime report. If the victim does not desire a report, the incident will be recorded in CAD.

    (c)    In every case where any force is used against any person by police personnel.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Report Preparation*

    (d)    All incidents involving domestic violence, child abuse or endangerment, elder abuse or other situation where department employees are mandatory reporters.

    (e)    All arrests.

    (f)    Non-felony incidents involving threats or stalking behavior

    (g)    Situations covered by seperate policy

### 345.2.2 NON-CRIMINAL ACTIVITY
The following incidents shall be documented using the appropriate approved report:

    (a)    Any time an officer points a firearm at any person

    (b)    Any use of force against any person by a member of this department (see the Use of Force Policy)

    (c)    Any firearm discharge (see the Firearms and Qualification Policy)

    (d)    Any time a person is reported missing, regardless of jurisdiction (see the Missing Persons Reporting Policy)

    (e)    Any found property or found evidence

    (f)    Any traffic collisions above the minimum reporting level (see the Traffic Collision Reporting Policy)

    (g)    Suspicious incidents that may indicate a potential for crimes against children or that a child's safety is in jeopardy

    (h)    All protective custody detentions

    (i)    Suspicious incidents that may place the public or others at risk

    (j)    Whenever the employee believes the circumstances should be documented or at the direction of a supervisor

    (k)    The University may require reports for other incidents in order to facilitate effective information exchange and service delivery

### 345.2.3 DEATH CASES
Death investigations require specific investigation methods depending on circumstances and should be handled in accordance with Policy § 360. An officer handling a death investigation should notify and apprise a supervisor of the circumstances surrounding the incident and a determination will be made on how to proceed. The following cases shall be appropriately investigated and documented using the approved report:

    (a)    Sudden or accidental deaths.

    (b)    Suicides

    (c)    Homicide or suspected homicide.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000166

**Exhibit 1**
**Page 156 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Report Preparation*

(d) Unattended deaths (No physician or qualified hospice care during the period immediately preceding death).

(e) Found dead bodies or body parts.

### 345.2.4  INJURY OR DAMAGE BY UNIVERSITY PERSONNEL
Reports shall be taken if an injury occurs that is a result of an act of a University employee. Additionally, reports shall be taken involving damage to University property or University equipment.

### 345.2.5  MISCELLANEOUS INJURIES
Any injury that is reported to this department shall require a report when:

(a) The injury is a result of drug overdose.

(b) Attempted suicide.

(c) The injury is major/serious, whereas death could result.

(d) The circumstances surrounding the incident are suspicious in nature and it is desirable to record the event.

The above reporting requirements are not intended to be all-inclusive. The University may require, or a supervisor may direct an employee to document any incident or type of incident.

### 345.2.6  ALTERNATE REPORTING FOR VICTIMS
Reports that may be submitted by the public via online or other self-completed reporting processes include:

(a) Lost property.

(b) Misdemeanor thefts of property, other than firearms or materials that threaten public safety, when there is no suspect information, serial number or ability to trace the item.

    1. Misdemeanor thefts of cellular telephones may be reported even though they have a serial number.

(c) Misdemeanor vandalism with no suspect information and no hate crime implications.

(d) Vehicle burglaries with no suspect information or evidence.

(e) Stolen vehicle attempts with no suspect information or evidence.

(f) Annoying telephone calls with no suspect information.

(g) Identity theft without an identifiable suspect.

(h) Online or email fraud solicitations without an identifiable suspect and if the financial loss classifies the crime as a misdemeanor.

(i) Hit-and-run vehicle collisions with no suspect or suspect vehicle.

(j) Supplemental property lists.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000167

**Exhibit 1**
**Page 157 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Report Preparation*

Members at the scene of one of the above incidents should not refer the reporting party to an alternate means of reporting without authorization from a supervisor. Members may refer victims to online victim assistance programs (e.g., Federal Communications Commission (FCC) website for identity theft, Internet Crime Complaint Center (IC3) website for computer crimes).

## 345.3   GENERAL POLICY OF EXPEDITIOUS REPORTING

In general, all officers and supervisors shall act with promptness and efficiency in the preparation and processing of all reports. An incomplete report, unorganized reports or reports delayed without supervisory approval are not acceptable. Reports shall be processed according to established priorities or according to special priority necessary under exceptional circumstances.

The following reports must be submitted before the reporting officer goes off duty:

- Hate (Bias) Crimes

- Crimes or incidents where a media release has been issued

- Custody report where the suspect is incarcerated, or, in the case of a citation in lieu of custody, will be arraigned before the officers next scheduled shift

- Crimes where immediate follow-up is necessary

- Crimes requiring immediate data entry (for example, Unauthorized Use of Motor Vehicle)

- Any report prior to officers regular days off or any other period of multiple days off

- Any situation when a supervisor deems it necessary

## 345.4   REPORT CORRECTIONS

Supervisors shall review reports for content and accuracy. If a correction is necessary, and the officer is available to fix the report immediately, the supervisor shall facilitate the corrections. In cases where the officer is not available to make the changes until later, the reviewing supervisor should send an email to the officer and the Report Dropbox stating the particular items needing correction. This notification will serve as the official directive to the officer to correct the report, and notice to the Police Records staff that:

(a)   The original report submission will be delayed, and

(b)   The submitted report contains errors and should be considered a "draft" version.

## 345.5   REPORT CHANGES OR ALTERATIONS

Reports that have been approved by a supervisor and submitted to the Records Section for filing and distribution shall not be modified or altered except by way of a supplemental report. Reviewed reports that have not yet been submitted to the Records Section may be corrected or modified by the authoring employee only with the knowledge and authorization of the reviewing supervisor.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000168

**Exhibit 1**
**Page 158 of 550**



## University of Oregon Police Department
University of Oregon Police Department Policy Manual

**Policy**
**347**

# News Media Relations

## 347.1  PURPOSE AND SCOPE
This policy provides guidelines for media releases and media access to scenes of disasters, criminal investigations, emergencies and other law enforcement activities.

## 347.2  RESPONSIBILITIES
The ultimate authority and responsibility for the release of information to the media rests with the University of Oregon President, or designee. In situations not warranting immediate notice to the Chief of Police and in situations where the Chief of Police has given prior approval, Captains, Division Commanders, Watch Commanders and designated Public Information Officer(s) may prepare and release information to the media in accordance with this policy and the applicable law. In all cases, the University of Oregon Media Relations office will be consulted unless prior arrangements or agreements have been made (for example, traffic advisories ).

### 347.2.1  MEDIA REQUEST
Any media request for information or access to a law enforcement situation shall be referred to the Public Information Officer, or if unavailable, to an available supervisor. Prior to releasing any information to the media, employees shall consider the following:

(a)   At no time shall any employee of this department make any comment or release any official information to the media without prior approval from a supervisor or the designated department media representative.

(b)   In situations involving multiple law enforcement agencies, every reasonable effort should be made to coordinate media releases with the authorized representative of each involved agency prior to the release of any information by this department.

(c)   Under no circumstance should any member of this department make any comment(s) to the media regarding any law enforcement incident not involving this department without prior approval of the Chief of Police.

## 347.3  MEDIA ACCESS
Media access to scenes of disasters, criminal investigations, emergencies and other law enforcement activities are subject to the following conditions:

(a)   Oregon has no standards for media credentials, therefore, credential should not be relied upon for the determination of access to scenes. Consequently, media will not have access beyond public access.

(b)   Media representatives will not be allowed to enter the inner perimeter of any crime scene.

(c)   Media representatives will not be allowed to accompany officers on to private property, or property where the occupants have a legal expectation of privacy. For example,

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000169

**Exhibit 1**
**Page 159 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*News Media Relations*

they may not accompany officers on or in to private property during the execution of a search warrant.

(d) Media representatives may be prevented from interfering with emergency operations and criminal investigations.

    1. Reasonable effort should be made to provide a safe staging area for the media that is near the incident and that will not interfere with emergency or criminal investigation operations. All information released to the media should be coordinated through the department Public Information Officer or other designated spokesperson.

    2. Whenever the presence of media aircraft poses a threat to public or officer safety or significantly hampers incident operations, the field supervisor should consider requesting a Temporary Flight Restriction (TFR). All requests for TFRs should be routed through the Executive Coordinator. The TFR should include specific information regarding the perimeter and altitude necessary for the incident and should be requested through the appropriate control tower. If the control tower is not known, the Federal Aviation Administration should be contacted (14 CFR § 91.137).

(e) No member of this department who is under investigation shall be subjected to media visits or interviews without the consent of the involved employee.

(f) Media interviews with individuals who are in custody shall not be permitted.

(g) Tactical operations should be handled in the same manner as a crime scene, except that the news media may be permitted within the outer perimeter of the scene, subject to any restrictions as set forth by the supervisor in charge.

    1. Department members shall not jeopardize a tactical operation in order to accommodate the news media.

    2. Media representatives that are not compliant with restrictions established by the supervisor in charge, may not interfere with police operations (subject to arrest).

    3. Media representatives who proceed to areas where they are not unlawfully interfering with police operations, should be warned about their own safety being in danger (if such warning can be delivered in a safe and reasonable manner), and may proceed at their own risk.

## 347.3.1 PROVIDING ADVANCE INFORMATION
To protect the safety and rights of officers and other persons, advance information about planned actions by law enforcement personnel, such as movement of persons in custody or the execution of an arrest or search warrant, should not be disclosed to the news media, nor should media representatives be invited to be present at such actions except with the prior approval of the Chief of Police.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000170

**Exhibit 1**
**Page 160 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*News Media Relations*

Any exceptions to the above should only be considered for the furtherance of legitimate law enforcement purposes. Prior to approving any exception the Chief of Police will consider, at minimum, whether the release of information or presence of the media would unreasonably endanger any individual, prejudice the rights of any person or is otherwise prohibited by law.

**347.4   INFORMATION SUBJECT TO RELEASE**
The Department will maintain a daily information log of significant law enforcement activities that shall be made available, upon request, to media representatives through the Watch Commander. This log will generally contain the following information:

(a)    The date, time, location, case number, type of crime, extent of injury or loss, and names of individuals (except confidential informants) involved in crimes occurring within this jurisdiction unless the release of such information would endanger the safety of any individual or jeopardize the successful completion of any ongoing investigation.

(b)    The date, time, location, case number, name, birth date and charges for each person arrested by this department unless the release of such information would endanger the safety of any individual or jeopardize the successful completion of any ongoing investigation.

(c)    The time and location of other significant law enforcement activities or requests for service with a brief summary of the incident subject to the restrictions of this policy and applicable law.

Information pertaining to a juvenile arrestee, victim, or witness shall only be released as articulated in Policy Manual § 810.43.

Identifying information concerning victims of sex crimes shall not be included in the log.

Identifying information concerning deceased individuals shall not be released to the media until notification of next of kin or otherwise cleared through the Medical Examiner's Office.

Any requests for copies of related reports or additional information not contained in this log shall be referred to the designated department media representative, the custodian of records, or if unavailable, to the Watch Commander. Such requests will generally be processed in accordance with the provisions of this policy.

347.4.1   SCOPE OF INFORMATION SUBJECT TO RELEASE
The release and inspection of public records is controlled by Policy Manual § 810 and Oregon Revised Statutes 192.410 through 192.505.

The record of an arrest or the report of a crime shall be disclosed unless there is a clear need to delay disclosure in the course of a specific investigation, including the need to protect the complaining party or the victim. Once the clear need to delay release is no longer present, the following information must be released.

For purposes of this subsection, the record of an arrest or the report of a crime includes:

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000171

**Exhibit 1**
**Page 161 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*News Media Relations*

    (a)    The arrested person's name, age, residence, employment, marital status and similar biographical information.

    (b)    The offense with which the arrested person is charged.

    (c)    The conditions of release.

    (d)    The identity and biographical information concerning both the complaining party and the victim.

    (e)    The identity of the investigating and arresting agency and the length of the investigation.

    (f)    The circumstances of the arrest including time, place, resistance, pursuit and weapons used.

    (g)    Such information as may be necessary to enlist public assistance in apprehending fugitives from justice.

## 347.4.2   RESTRICTED INFORMATION
It shall be the responsibility of the authorized employee dealing with media requests to ensure that restricted information is not inappropriately released to the media by this department. When in doubt, authorized and available legal counsel should be obtained. Examples of such restricted information include, but are not limited to:

    (a)    Restricted information is outlined in detail in <u>Policy Manual</u> § 810.

    (b)    Any specific operational or contingency plans in connection with an anticipated threat to individual or public safety for deployment and use of personnel and equipment prepared or used by a public body, if public disclosure of the plans would endanger an individual's life or physical safety or jeopardize a law enforcement activity. <u>Oregon Revised Statutes</u> 192.501(18).

    (c)    Criminal history information.

    (d)    Information pertaining to pending litigation involving this department.

    (e)    Information obtained in confidence.

    (f)    Any information that is otherwise privileged or restricted under state or federal law.

    (g)    Confidential peace officer personnel information (See <u>Policy Manual</u> § 1026).

        1.    The identities of officers involved in shootings or other major incidents may only be released to the media pursuant to consent of the involved officer or upon a formal request filed and processed in accordance with the Public Records Act (<u>Oregon Revised Statutes</u> 192.502).

    (h)    Information that would tend to endanger the safety of any individual or jeopardize the successful completion of any ongoing investigation.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000172

**Exhibit 1**
**Page 162 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

## *News Media Relations*

(i)  Investigative information other than as listed above, without the expressed authorization of the Detective Supervisor in charge of an investigation.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000173

**Exhibit 1**
**Page 163 of 550**



**Policy**
**349**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Subpoenas and Court Appearances

### 349.1  PURPOSE AND SCOPE
This policy establishes the guidelines for department members who must appear in court. It will allow the University of Oregon Police Department to cover any related work absences and keep the Department informed about relevant legal matters.

### 349.2  POLICY
University of Oregon Police Department members will respond appropriately to all subpoenas and any other court-ordered appearances.

### 349.3  SUBPOENAS
Only department members authorized to receive a subpoena on behalf of this department or any of its members may do so.

A subpoena may be served upon a member by one of the following (ORS 136.595; ORCP 55):

    (a)   Personal service.

    (b)   Accepted by an authorized member on behalf of a currently employed officer who is within the state at the time of service and is delivered at least 10 days prior to the hearing date specified on the subpoena.

        1.   Attendance at trial is related to the officer's work performed in the course of employment as a peace officer.

        2.   The subpoena clerk shall make a good faith effort to notify the subpoenaed officer of the date, time and location of the court appearance. If the officer cannot be notified, the subpoena clerk will promptly notify the court of the inability to contact the officer.

    (c)   By mail (civil subpoena only), if the service conditions of ORCP 55(D)(3) are met.

A civil subpoena being served upon a member as an expert witness may be personally served upon the member or member's immediate supervisor (ORS 44.552).

Subpoenas shall not be accepted unless accompanied by the appropriate witness fees as allowed by law (ORS 44.415; ORS 44.554; ORCP 55 (D)(1)).

### 349.3.1  SPECIAL NOTIFICATION REQUIREMENTS
Any member who is subpoenaed to testify, agrees to testify or provides information on behalf of or at the request of any party other than the General Counsel or the prosecutor shall notify his/her immediate supervisor without delay regarding:

    (a)   Any civil case where the University or one of its members, as a result of his/her official capacity, is a party.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000174

**Exhibit 1**
**Page 164 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Subpoenas and Court Appearances*

(b)     Any civil case where any other city, county, state or federal unit of government or a member of any such unit of government, as a result of his/her official capacity, is a party.

(c)     Any criminal proceeding where the member is called to testify or provide information on behalf of the defense.

(d)     Any civil action stemming from the member's on-duty activity or because of his/her association with the University of Oregon Police Department.

(e)     Any personnel or disciplinary matter when called to testify or to provide information by a government entity other than the University of Oregon Police Department.

The supervisor will then notify the Chief of Police and the appropriate prosecuting attorney as may be indicated by the case. The Chief of Police should determine if additional legal support is necessary.

No member shall be retaliated against for testifying in any matter.

## 349.3.2   CIVIL SUBPOENA
The Department will compensate members who appear in their official capacities on civil matters arising out of their official duties, as directed by the current memorandum of understanding or collective bargaining agreement.

The Department should seek reimbursement for the member's compensation through the civil attorney of record who subpoenaed the member.

## 349.3.3   OFF-DUTY RELATED SUBPOENAS
Members receiving valid subpoenas for off-duty actions not related to their employment or appointment will not be compensated for their appearance. Arrangements for time off shall be coordinated through their immediate supervisors.

## 349.4   FAILURE TO APPEAR
Any member who fails to comply with the terms of any properly served subpoena or court-ordered appearance may be subject to discipline. This includes properly served orders to appear that were issued by a state administrative agency.

## 349.5   STANDBY
To facilitate standby agreements, members are required to provide and maintain current information on their addresses and contact telephone numbers with the Department.

If a member on standby changes his/her location during the day, the member shall notify the designated department member of how he/she can be reached. Members are required to remain on standby until released by the court or the party that issued the subpoena.

## 349.6   COURTROOM PROTOCOL
When appearing in court, members shall:

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000175

**Exhibit 1**
**Page 165 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

## *Subpoenas and Court Appearances*

    (a)   Be punctual and prepared to proceed immediately with the case for which they are scheduled to appear.

    (b)   Dress in the department uniform or business attire.

    (c)   Observe all rules of the court in which they are appearing and remain alert to changes in the assigned courtroom where their matter is to be heard.

### 349.6.1   TESTIMONY
Before the date of testifying, the subpoenaed member shall request a copy of relevant reports and become familiar with the content in order to be prepared for court.

### 349.7   OVERTIME APPEARANCES
When a member appears in court on his/her off-duty time, he/she will be compensated in accordance with the current memorandum of understanding or collective bargaining agreement.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department



**Policy**
**351**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Reserve Officers

### 351.1  PURPOSE AND SCOPE
The University of Oregon Police Department Reserve Unit was established to supplement and assist regular sworn police officers in their duties. This unit provides professional, sworn volunteer reserve officers who can augment regular staffing levels.

### 351.2  SELECTION AND APPOINTMENT OF POLICE RESERVE OFFICERS
The University of Oregon Police Department shall endeavor to recruit and appoint to the Reserve Unit only those applicants who meet the high ethical, moral and professional standards set forth by this department. The minimum criteria for selection and appointment of reserve officers shall be the same as is required of regular full-time officers.

#### 351.2.1  PROCEDURE
All applicants shall be required to meet and pass the same pre-employment procedures as regular police officers before appointment.

Upon appointment to the Police Reserve Unit, an applicant must have completed, or be in the process of completing, a basic reserve academy within 18 months of the date of appointment, be eligible to be certified, or be eligible to complete a DPSST Police Career Officer Development (PCOD) course based on previous law enforcemet experience.

#### 351.2.2  APPOINTMENT
Applicants who are selected for appointment to the Police Reserve Unit shall, on the recommendation of the Chief of Police, be sworn in by the Chief of Police and take an oath to observe and obey all of the laws of the land and to carry out their duties to the best of their ability.

#### 351.2.3  COMPENSATION FOR POLICE RESERVE OFFICERS_DEPUTIES
Normally, there is no monetary compensation for reserve officers, however, at the discretion of the Chief, Reserve Officers may be paid for special events or assignments. All property issued to the reserve officer shall be returned to the Department upon termination or resignation.

#### 351.2.4  EMPLOYEES WORKING AS RESERVE OFFICERS
Qualified employees of this department, when authorized, may also serve as reserve officers. However, the Department must not utilize the services of a reserve or volunteer in such a way that it would violate employment laws or labor agreements (e.g. a security officer working as a reserve officer for reduced or no pay). Therefore, the Reserve Coordinator should consult the UO Office of Human Resources prior to an employee serving in a reserve or volunteer capacity (29 CFR 553.30).

### 351.3  DUTIES OF RESERVE OFFICERS
Reserve officers assist regular officers in the enforcement of laws and in maintaining peace and order within the community. Assignments of reserve officers will usually be to augment the

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Reserve Officers*

Operations Division. Reserve officers may be assigned to other areas within the Department as needed. Reserve officers are required to work a minimum of 20 hours per month.

### 351.3.1 POLICY COMPLIANCE
Police reserve officers shall be required to adhere to all departmental policies and procedures. A copy of the policies and procedures will be made available to each reserve officer upon appointment and he/she shall become thoroughly familiar with these policies.

Whenever a rule, regulation, or guideline in this manual refers to a sworn regular full-time officer, it shall also apply to a sworn reserve officer unless by its nature it is inapplicable.

### 351.3.2 RESERVE OFFICER ASSIGNMENTS
All reserve officers will be assigned to duties by the Reserve Coordinator or his/her designee.

### 351.3.3 RESERVE COORDINATOR
The Chief of Police shall delegate the responsibility for administering the Reserve Officer Program to a Reserve Coordinator.

The Reserve Coordinator shall have the responsibility of, but not be limited to the following:

(a)    Assignment of reserve personnel.

(b)    Conducting reserve meetings.

(c)    Establishing and maintaining a reserve call-out roster.

(d)    Maintaining and ensuring performance evaluations are completed.

(e)    Monitoring individual reserve officer performance.

(f)    Monitoring overall Reserve Program.

(g)    Maintaining liaison with other agency Reserve Coordinators.

### 351.3.4 RESERVE LEVELS
Reserve officers become eligible to perform at different levels in the organization based on their training and experience. The training and experience required for each level and the types of duties each is eligible to perform are listed below: Level I - Recruit Reserve Officer. Level I Reserves are newly appointed and are beginning their training. They do not wear a police uniform and are not permitted to carry weapons. Level I Reserves may ride with regular officers on patrol wearing civilian clothes. They perform no law enforcement functions Level II - Reserve Officer. Level II Reserves have successfully completed the Reserve Academy including qualification with duty weapons, defensive tactics, use of force, criminal law and traffic code. Level II reserves may perform their duties in uniform, carry weapons and perform law enforcement functions under the direct supervision of a Training Officer. Level III - Reserve Officer. Level III Reserves have successfully completed the Reserve Academy, all three phases of the Reserve Field Training Program for a total of 484 hours of Field Training. Level III Reserves are authorized to perform law enforcement functions without direct supervision of a training officer and to operate in a solo patrol

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000178

**Exhibit 1**
**Page 168 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Reserve Officers*

assignment. Level III Reserve Officer requirements can be satisfactorily met if the Level III Reserve Officer is eligible to complete a DPSST Police Career Officer Development (PCOD) course based on previous law enforcement experience and the Reserve Officer successfully completes a DPSST Field Training and Evaluation Program (FTEP) manual or completes an FTEP waiver process.

**351.4  FIELD TRAINING**
The field training program shall consist of the completion of three training phases to be completed under the supervision of a Primary Training Officer, with the assistance of other training officers, as assigned by the department. During the field training period the reserve officer must complete the standard DPSST Field Training Manual as described in Policy Manual § 350.4.3.

351.4.1  TRAINING OFFICERS
Officers of this department, who demonstrate a desire and ability to train reserve officers, may train the reserves during Phase II, subject to Watch Commander approval.

351.4.2  PRIMARY TRAINING OFFICER
Upon completion of the Academy, reserve officers will be assigned to a primary training officer. The primary training officer will be selected from members of the Field Training Officer (FTO) cadre. The reserve officer will be assigned to work with his/her primary training officer during the first 160 hours of training. This time shall be known as Phase I Training.

351.4.3  FIELD TRAINING MANUAL
Each new reserve officer will be issued a Field Training Manual at the beginning of Phase I Training. This manual is an outline of the subject matter and/or skills necessary to properly function as an officer with the University of Oregon Police Department. Each section of the manual must be signed-off by both the Primary Training Officer and any other officer observing the performance. The completed manual will be submitted to the department Captain of Administration and it shall become part of the reserve officer's training file. The reserve officer shall become knowledgeable of the subject matter as outlined and proficient with those skills as set forth in the manual.

351.4.4  COMPLETION OF THE PRIMARY TRAINING PHASE
At the completion of Phase I Training the primary training officer will meet with the Reserve Coordinator. The purpose of this meeting is to discuss the progress of the reserve officer in training.

If the reserve officer has progressed satisfactorily, he/she will then proceed to Phase II of the training. If he/she has not progressed satisfactorily, the Reserve Coordinator will determine the appropriate action to be taken.

351.4.5  SECONDARY TRAINING PHASE
Phase II Training shall consist of 100 hours of additional on-duty training. The reserve officer will no longer be required to ride with his/her primary training officer. The reserve officer may now ride with any officer designated by the Watch Commander.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000179

**Exhibit 1**
**Page 169 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Reserve Officers*

During Phase II of training, as with Phase I, the reserve officer's performance will be closely monitored. In addition, rapid progress should continue towards the completion of the Officer's Field Training Manual. At the completion of Phase II of training, the reserve officer will return to his/her primary training officer for Phase III of the training.

### 351.4.6   THIRD TRAINING PHASE

Phase III Training shall consist of 24 hours of additional on-duty training. For this training phase, the reserve officer will return to his/her original primary training officer. During this phase, the training officer will evaluate the reserve officer for suitability to graduate from the formal training program.

At the completion of Phase III Training, the primary training officer will meet with the Reserve Coordinator. Based upon the reserve officer's evaluations, plus input from the primary training officer, the Reserve Coordinator shall decide if the reserve officer has satisfactorily completed his/her formal training. If the reserve officer has progressed satisfactorily, he/she will then graduate from the formal training process. If his/her progress is not satisfactory, the Reserve Coordinator will decide upon the appropriate action to be taken.

### 351.4.7   COMPLETION OF THE FORMAL TRAINING PROCESS

When a reserve officer has satisfactorily completed all three phases of formal training, he/she will have had a minimum of 284 hours of on-duty training. He/she will no longer be required to ride with a reserve training officer. The reserve officer may now be assigned to ride with any officer for the remaining 200-hour requirement for a total of 484 hours before being considered for relief of immediate supervision. Level III Reserves who meet the aforementioned PCOD course and FTEP manual completion or FTEP waiver process are exempt from the 484 hour requirement.

### 351.5   SUPERVISION OF RESERVE OFFICERS

Level II reserve officers should be under the immediate supervision of a regular sworn officer. Although a reserve officer may have attained the status of a Level II reserve officer, these provisions shall continue to apply unless special authorization is received which relieves the immediate supervision requirement.

### 351.5.1   SPECIAL AUTHORIZATION REQUIREMENTS

Reserve officers certified as Level II may, with prior authorization of the Reserve Coordinator and on approval of the Division Commander, be relieved of the "immediate supervision" requirement. Level II reserve officers may function under this authorization only for the duration of the assignment or purpose for which the authorization was granted.

In the absence of the Reserve Coordinator and the Division Commander, the Watch Commander may assign a certified Level II reserve officer to function as above for specific purposes and duration.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000180

**Exhibit 1**
**Page 170 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Reserve Officers*

### 351.5.2   RESERVE OFFICER MEETINGS
All reserve officer meetings will be scheduled and conducted by the Reserve Coordinator. All reserve officers are required to attend scheduled meetings. Any absences must be satisfactorily explained to the Reserve Coordinator.

### 351.5.3   IDENTIFICATION OF RESERVE OFFICERS
All reserve officers will be issued a uniform badge and a Department identification card. The uniform badge shall be the same as that worn by a regular full-time officer. The identification card will be the standard identification card with the exception that "Reserve" will be indicated on the card.

### 351.5.4   UNIFORM
Reserve officers shall conform to all uniform regulation and appearance standards of this department.

### 351.5.5   INVESTIGATIONS AND COMPLAINTS
If a reserve officer has a complaint made against him/her or becomes involved in an internal investigation, that complaint or internal investigation may be investigated by the Reserve Coordinator in coordination with the Lieutenant - Professional Standards and Training, at the discretion of the Operations Division Commander.

Reserve officers are considered at-will employees.

### 351.5.6   RESERVE OFFICER EVALUATIONS
While in training reserve officers will be continuously evaluated using standardized daily and weekly observation reports. The reserve will be considered a trainee until all of the training phases have been completed. Reserves having completed their field training will be evaluated annually using performance dimensions applicable to the duties and authorities granted to that reserve officer.

### 351.6   FIREARMS REQUIREMENTS
Reserve officers have peace officer powers during their assigned tour of duty.

### 351.6.1   CARRYING WEAPON ON DUTY
It is the policy of this department to allow level II or III reserve officers to carry firearms only while on duty or to and from duty.

### 351.6.2   IN-SERVICE TRAINING
Reserve officers are encouraged to attend all in-service training offered to regular officers. Reserve officers are required to attend classes designated as mandatory either at one of the regular in-service sessions or one scheduled specifically for reserves.

### 351.6.3   CONCEALED FIREARMS PROHIBITED
No reserve officer will be permitted to carry a concealed firearm while in an off-duty capacity, other than to and from work, except those reserve officers who possess a valid CCW permit or meet

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000181

**Exhibit 1**
**Page 171 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Reserve Officers*

concealed firearms carry requirements by qulified law enforcement officers as noted in 18 US Code 926C. An instance may arise where a reserve officer is assigned to a plainclothes detail for his/her assigned tour of duty. Under these circumstances, the reserve officer may be permitted to carry a weapon more suited to the assignment with the knowledge and approval of the supervisor in charge of the detail.

Any reserve officer who is permitted to carry a firearm other than the assigned duty weapon may do so only after verifying that the weapon conforms to departmental standards. The weapon must be registered by the reserve officer and be inspected and certified as fit for service by a departmental armorer.

Before being allowed to carry any optional firearm during an assigned tour of duty, the reserve officer shall have demonstrated his/her proficiency with said weapon.

351.6.4  RESERVE OFFICER FIREARM TRAINING
All reserve officers are required to maintain proficiency with firearms used in the course of their assignments. Reserve officers shall comply with all areas of the firearms training consistent with the same standards that apply to full-time sworn UOPD Police Officer personnel as noted in Policy 312.

**351.7  EMERGENCY CALL-OUT FOR RESERVE PERSONNEL**
The Reserve Coordinator shall develop a plan outlining an emergency call-out procedure for reserve personnel.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000182

**Exhibit 1**
**Page 172 of 550**



**Policy**
**352**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Outside Agency Assistance

### 352.1  PURPOSE AND SCOPE
The purpose of this policy is to provide guidance to members when requesting or responding to a request for mutual aid or when assisting another law enforcement agency.

### 352.2  POLICY
It is the policy of the University of Oregon Police Department to promptly respond to requests for assistance by other law enforcement agencies, subject to available resources and consistent with the applicable laws and policies of this department.

### 352.3  ASSISTING OUTSIDE AGENCIES
Generally, requests for any type of assistance from another agency should be routed to the Watch Commander's office for approval. In some instances, a memorandum of understanding or other established protocol may exist that eliminates the need for approval of individual requests.

When another law enforcement agency requests assistance from this department, the Watch Commander may authorize, if available, an appropriate number of personnel to assist. Members are reminded that their actions when rendering assistance must conform with applicable laws and be consistent with the policies of this department.

Officers may respond to a request for emergency assistance, however, they shall notify a supervisor of their activity as soon as practicable.

Arrestees may be temporarily detained by this department until arrangements for transportation are made by the outside agency. Probation violators who are temporarily detained by this department will not ordinarily be booked at this department. Only in exceptional circumstances, and subject to supervisor approval, will this department provide transportation of arrestees to other facilities on behalf of another agency.

When transportation assistance is rendered, a report shall be prepared and submitted by the handling member unless otherwise directed by a supervisor.

#### 352.3.1  INITIATED ACTIVITY
Any on-duty officer who engages in law enforcement activities of any type that are not part of a mutual aid request and take place outside the jurisdiction of the University of Oregon Police Department shall notify his/her supervisor or the Watch Commander and Communications and Emergency Response Center as soon as practicable. This requirement does not apply to special enforcement details or multi-agency units that regularly work in multiple jurisdictions.

### 352.4  REQUESTING OUTSIDE ASSISTANCE
If assistance is needed from another agency, the member requesting assistance should, if practicable, first notify a supervisor. The handling member or supervisor should direct assisting personnel to where they are needed and to whom they should report when they arrive.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000183

**Exhibit 1**
**Page 173 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Outside Agency Assistance*

The requesting member should arrange for appropriate radio communication capabilities, if necessary and available, so that communication can be coordinated between assisting personnel.

## 352.5  REPORTING REQUIREMENTS
Incidents of outside assistance or law enforcement activities that are not documented in a crime report shall be documented in a general case report or as directed by the Watch Commander.

## 352.6  MANDATORY SHARING
Equipment and supplies purchased with federal funds or grants that require such equipment and supplies be shared with other agencies should be documented and updated as necessary by the Administration Division Commander or the authorized designee.

The documentation should include:

    (a)   The conditions relative to sharing.

    (b)   The training requirements for:

        1.   The use of the supplies and equipment.

        2.   The members trained in the use of the supplies and equipment.

    (c)   Any other requirements for use of the equipment and supplies.

Copies of the documentation should be provided to Communications and Emergency Response Center and the Watch Commander to ensure use of the equipment and supplies is in compliance with the applicable sharing agreements.

The Captain of Administration should maintain documentation that the appropriate members have received the required training.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department



**Policy**
**356**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Registered Offender Information

### 356.1  PURPOSE AND SCOPE
This policy establishes guidelines by which the University of Oregon Police Department will address issues associated with certain offenders who are residing in the jurisdiction and how the Department will disseminate information and respond to public inquiries for information about registered sex offenders.

### 356.2  POLICY
It is the policy of the University of Oregon Police Department to identify and monitor registered offenders living within this jurisdiction and to take reasonable steps to address the risks those persons may pose.

### 356.3  REGISTRATION
The Investigation Unit Supervisor shall establish a process to reasonably accommodate registration of certain offenders. The process should rebut any allegation on the part of the offender that the registration process was too confusing, burdensome or difficult for compliance. If it is reasonable to do so, an investigator assigned to related investigations should conduct the registration in order to best evaluate any threat the person may pose to the community. Employees assigned to register offenders should receive appropriate training regarding the registration process (OAR 257-070-0100).

Upon conclusion of the registration process, the investigator shall ensure that the registration information is provided to the Oregon State Police in accordance with ORS 163A.035 and OAR 257-070-0100.

The refusal of a registrant to provide any of the required information or complete the process should initiate a criminal investigation for failure to report.

### 356.3.1  CONTENTS OF REGISTRATION
Registrants shall (ORS 163A.010; OAR 257-070-0110):

(a)  Provide the information to complete the sex offender registration form and sign it.

(b)  Submit to photographs, including photographs of scars, marks or tattoos, when initially reporting and each time the registrant reports annually.

(c)  Submit to fingerprinting, if required.

### 356.4  MONITORING OF REGISTERED OFFENDERS
The Investigation Unit supervisor should establish a system to periodically, and at least once annually, verify that a registrant remains in compliance with his/her registration requirements after the initial registration. This verification should include:

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000185

**Exhibit 1**
**Page 175 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Registered Offender Information*

    (a)    Efforts to confirm residence using an unobtrusive method, such as an Internet search or drive-by of the declared residence.

    (b)    Review of information on the State of Oregon Sex Offender Inquiry System.

    (c)    Contact with a registrant's parole or probation officer.

Any discrepancies should be reported to Oregon State Police.

The Investigation Unit supervisor should also establish a procedure to routinely disseminate information regarding registered offenders to University of Oregon Police Department personnel, including timely updates regarding new or relocated registrants.

**356.5  DISSEMINATION OF PUBLIC INFORMATION**
Employees will not unilaterally make a public notification advising the community of a particular registrant's presence in the community. Employees who identify a significant risk or other public safety issue associated with a registrant should promptly advise their supervisor. The supervisor should evaluate the request and forward the information to the Chief of Police if warranted. A determination will be made by the Chief of Police, with the assistance of legal counsel as necessary, whether such a public alert should be made.

Members of the public requesting information on registrants should be provided the Sex Offender Inquiry System (http://sexoffenders.oregon.gov/), or the University of Oregon Police Department's website.

The Captain of Administration shall release local registered offender information to residents in accordance with state law and in compliance with Oregon Public Records Law requests (ORS 163A.215; ORS 163A.225; ORS 192.410 to ORS 192.505).

356.5.1  RELEASE NOTIFICATIONS
Registrant information that is released should include notification that:

    (a)    The offender registry includes only those persons who have been required by law to register, who are in compliance with the offender registration laws and who the law permits to be included.

    (b)    The information is provided as a public service and may not be current or accurate.

    (c)    Persons should not rely solely on the offender registry as a safeguard against offenses in their communities.

    (d)    The information on this website may not reflect the entire criminal history of a registered offender.

    (e)    Anyone who uses information contained in the registry to harass or discriminate against registrants or commit any crime may be subject to criminal prosecution and/or civil action.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department



**Policy
357**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Civil Disturbances and Demonstrations

### 357.1  PURPOSE AND SCOPE
As an institution of higher education, the University of Oregon fosters an atmosphere that encourages the expression of thoughts and opinions and the exercising of constitutionally granted rights to address grievances.

Proper handling of large public demonstrations and events is important to reduce the possibility of escalation into a situation that involves criminal activity or threatens public safety. The University will respond in a tiered approach in an effort to address any issues that might arise at the lowest engagement possible. Whether there is a police presence, and the profile of any police presence will be determined through an assessment of factors such as the nature of the event and the need to ensure public safety, protect persons and property, and maintain order.

Many strategies may be appropriately employed during demonstrations or large public events that do not include police actions. This policy provides guidelines for UOPD employees when they are involved in dealing with these incidents. The ultimate goal in the management of any event is to mitigate impact on the affected areas and persons, and eventually restore the affected area to the conditions that prevailed before the incident occurred.

### 357.1.1  DEFINITIONS
**Civil Disturbance:** Public gatherings that involves riots, personal or property damage, threatening individuals or assemblies that have become significantly disruptive, or involve criminal activity.

**Demonstrations:** Visible actions designed to advocate a position on a particular issue or issues. They may include actions that cause inconvenience to the campus community.

### 357.2  GENERAL GUIDELINES
It is crucial that UOPD personnel remain neutral and impartial in performing their duties. Duties generally include:

- Protect life and prevent personal injury

- Protect the statutory and constitutional rights of all parties

- Protect personal and public property

Effective communication is essential for successful operations. This includes communications with:

- people involved in the incident

- people affected by the incident

- Officers and other employees of UOPD and the University

- UOPD Command personnel, UO Incident Management Team (UO-IMT) and other University administrators involved in the response to such incidents.

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000187

**Exhibit 1
Page 177 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Civil Disturbances and Demonstrations*

Participant behavior during a demonstration or other public event may span varying levels including lawful, constitutionally protected actions and speech, civil disobedience (typically involving minor criminal acts) and rioting. All of these behaviors may be present during the same event, therefore, it is imperative that police actions are measured and appropriate for the behaviors encountered. This is particularly critical if force is being used. Adaptability of strategies and tactics is essential.

## 357.3   COMMAND AND COORDINATION
The University's response to these events will be organized in a manner consistent with the National Incident Management System (NIMS), the Incident Command System (ICS) and the University of Oregon Emergency Operations Plan (EOP).

Management of the University response will be handled through activation of the UO-IMT which includes Unified Command involving the UOPD Chief, or designee. The PIO function also becomes part of the PIO Group (See the UO EOP for further details).

If the incident is likely to involve a location outside the campus jurisdiction, or mutual aid is anticipated, representatives of the Eugene Police Department or other involved law enforcement agencies should be part of a Unified Command structure.

When responding to unanticipated events, the Executive Coordinator, or designee, generally will be the initial Incident Commander in the ICS structure until such time as the EOP is activated and the Executive Coordinator is relieved. The Executive Coordinator is initially responsible for:

- establishing a field command post/location and communicating the location to the dispatcher

- establishing an effective communication link to the UOPD representative in the Unified Command

- establishing the necessary mechanism to adequately monitor the situation, including the documentation of unlawful behavior

- updating the Incident Command group in a timely fashion regarding changes in behavior or other information critical to the successful management of the incident

## 357.4   INITIAL ASSESSMENT
The Department will utilize administrators (such as Student Affairs, University Relations and Finance and Administration) to work with groups first and will also be able to utilize the following resources: Office of Strategic Communications, Neutral Observers program (Student Affairs), and the Bias Response Team (Student Affairs).

UOPD officers will be deployed there is a reasonable expectation of unlawful or disruptive behavior. UOPD personnel may be the first University officials on a scene of an unanticipated event. The initial response should be focused on making an assessment of the situation. This assessment includes, but is not limited to:

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000188

**Exhibit 1**
**Page 178 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Civil Disturbances and Demonstrations*

- location(s)

- number of participants

- purpose of the event

- leadership (whether it is apparent and/or whether it is effective)

- any initial indicators of unlawful or disruptive activity

- indicators that lawful use of University facilities, streets or walkways will be impacted

- ability and/or need to continue monitoring the incident

Initial assessment information should be communicated through the Chain of Command to Incident Command.

### 357.5  ENFORCEMENT ACTIONS
Enforcement of laws generally will only be done when authorized by the Incident Commander, or designee, or when enforcement actions are likely to prevent death or serious bodily injury. Enforcement actions, if deemed appropriate, generally follow adequate warnings and advisements communicated to the participants of the event.

Warnings and advisements may be communicated through established communications links with leaders and/or participants (such as through the Neutral Observer Program), or communicated to the group, en masse. Effectively communicating warnings and advisements to a large group, en masse, is often very difficult and UOPD staff who are designated to issue such communications should use whatever reasonable methods are available to ensure that the messages are clear in content and are heard by the participants.

Often, no leaders are identifiable, or if they are identifiable refuse to self-identify as leaders or act as leaders in working with authorities. This presents challenges in communicating adequately and effectively with participants.

Warnings and advisements should be recorded, if practical, and documentation of evidence that they are heard can be effective in support of enforcement actions, if they become necessary or advisable.

The content of warnings and advisements are sometimes provided by the prosecutor's office in order to form a legal foundation for addressing some behaviors, such as trespassing. Generally, however, they should include:

- police concerns, including identifying what laws are being broken

- what actions people can take to render their behavior legal

- generally, what police actions will take place if the illegal behavior continues

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Civil Disturbances and Demonstrations*

### 357.6   USE OF FORCE
The use of force in crowd situations should be authorized prior to application, and accomplished in a deliberate, methodical and calculated manner so that the force is applied within departmental guidelines and training, and only on those person's where the force is justified.

Commanders authorizing the use of force should take into consideration that the use of force can result in an escalation of anti-police sentiments and increased unlawful behavior by people involved in mass demonstrations.

### 357.7   VIDEO RECORDING
This policy does not cover public safety video cameras that are installed for routine surveillance of public spaces for public safety concerns.

Video recording, when appropriate, is a good tool to record situations and events that involve, or may lead to, the need for police action. These recordings support criminal prosecutions, assist in evaluating department performance and better respond to allegations of improper police actions or legal action taken against the department and/or its employees.

Video recording by department personnel will be done in compliance with applicable laws. They will not be made, or retained, for the purpose of collecting or maintaining information about the political, religious, or social views, associations, or activities of any individual, group, association, organization, corporation, business, or partnership unless such information directly relates to an investigation of criminal activities, and there is reasonable suspicion that the subject of the information is involved in criminal conduct.

### 357.7.1   HANDLING AND RETENTION OF VIDEO RECORDINGS
Video recording media will be submitted as evidence, if it is known to contain evidence of criminal conduct. Otherwise, it will be submitted as property.

A copy of the Property or Evidence Report will be forwarded to Law Enforcement Records Specialist, who will be responsible for managing the retention and authorizing the disposition of video recordings made under this policy.

Video recordings submitted as evidence will be retained in accordance with policies and procedures for the retention of criminal evidence.

Video recordings submitted as property will be retained for 30 days if no police action was taken during the event. During that time all internal reviews will be conducted. If police action was taken during the event, the recordings will be retained for 180 days (this corresponds to the time frame in which civil allegations must be formally reported to the department).

If recordings are determined to contain criminal or civil evidence they will be retained in their entirety at the direction of the prosecutor or general counsel. Once legal action is finished, and at the direction of the attorney, the recordings will be erased or destroyed.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000190

**Exhibit 1**
**Page 180 of 550**



**Policy**
**358**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Major Incident Notification

### 358.1  PURPOSE AND SCOPE
The purpose of this policy is to provide guidance to members of this department in determining when, how and to whom notification of major incidents should be made.

### 358.2  POLICY
The University of Oregon Police Department recognizes that certain incidents should be brought to the attention of supervisors or managers of this Department as well as University Administration to facilitate the coordination of activities and ensure that inquiries from the media and the public may be properly addressed. When major events occur that:

(a)   Will likely result in further inquiry from either internal or external sources, or

(b)   Have the potential to result in a significant financial cost or liability to the University.


An immediate verbal notification to the Administrator on Duty or his/her designee shall be made with the occurrence of any such event.  In turn, the Administrator on Duty will notify the Chief of Police as soon as practical.

### 358.3  MINIMUM CRITERIA FOR NOTIFICATION
Most situations where the media show a strong interest are also of interest to the Chief of Police, the affected Division Commander, and the President/Associate Vice President, and other UO staff via the Internal Incident Notification Policy (IIN). The following list of incident types is provided as a guide for notification and is not intended to be all inclusive:

(a)   Campus Demonstrations.

(b)   Homicides.

(c)   Traffic  accidents  with fatalities.

(d)   Officer involved shooting - on or off duty (see Officer-Involved Shooting Policy for special notifications.

(e)   Significant injury or death to employee - on or off duty.

(f)   Death of a prominent University of Oregon official.

(g)   Arrest of a department employee or prominent University of Oregon official.

(h)   International Incident affecting an affiliate of University of Oregon (student, faculty, or staff member studying or travelling abroad) caught up in a crisis within the country visited.

(i)   International student studying at the University of Oregon involved in an incident that could have reputational impact on the University.

(j)   Aircraft crash with major damage and/or injury or death.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000191

**Exhibit 1**
**Page 181 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Major Incident Notification*

    (k)    In-custody deaths.

    (l)    Student deaths - Pursuant to University of Oregon Policy and Procedures Manual. The notification will include the cause of death using one of the following categories:

        1.    Accident

        2.    Medical condition

        3.    Crime

        4.    Undetermined

    (m)    Outside investigation of a neighboring agency.

    (n)    Any complaints of a serious nature against employees.

## 358.4   WATCH COMMANDER RESPONSIBILITY
The Watch Commander is responsible for notifying the AOD who will make the appropriate notifications. The Watch Commander shall make reasonable attempts to obtain as much information on the incident as possible before notification. The Watch Commander shall attempt to make the notifications as soon as practicable. Notification should be made during off-duty hours by calling the home telephone number first and then by cellular telephone.

The Watch Commander should then follow protocols established in the Internal Incident Notification Policy (IIN), section 5.

### 358.4.1   STAFF NOTIFICATION
In the event an incident occurs described in Policy Manual § 358.2, the Chief of Police shall be notified along with the affected Division Commander.

### 358.4.2   DETECTIVE NOTIFICATION
If the incident requires that an investigator respond from home, the Watch Commander shall be contacted who will then contact the appropriate investigator.

### 358.4.3   PUBLIC INFORMATION OFFICER (PIO)
The Public Information Officer shall be called after members of staff have been notified.

## 358.5   ASSOCIATE VICE PRESIDENT OF SAFETY AND RISK SERVICES NOTIFICATION
Significant events occurring on campus are of interest to media organizations, students, faculty and employees of the University. It is imperative that we promptly notify university senior leadership and keep them fully informed of our response so that they will have factual information about the event or occurrence.

**Immediate Verbal Report** - During the early stages of an event, the Chief of Police or his/her designee will as soon as practical provide the Associate Vice President with a verbal report.

**First Written Report** - Within 72 hours of the completion of the event, the Police Chief or his designee will complete a full written report about the incident for the Associate Vice President, containing:

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000192

**Exhibit 1**
**Page 182 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Major Incident Notification*

    (a)   Background and context leading up to the event, (Sensitive information, or information that could compromise the investigation will not be included in this document).

    (b)   A complete and thorough accounting of the incident itself including the police department's role

    (c)   An outline of the issues highlighted by the event that require resolution

    (d)   Proposed steps and a timeline to implement the proposed actions to prevent a subsequent event from occurring.

**Follow-Up Report** - One month following the close of the event a Follow-Up report will be submitted to the Associate Vice President containing:

    (a)   An update on the action items along with a revised timeline for those items still requiring completion

    (b)   Any new information or insights about the event given passage of time

    (c)   When applicable, recommendations and a proposed plan to permanently address the underlying issues that contributed to the occurrence or event

**Closing Report** - When additional action items remain outstanding at the time of the Follow-Up report, a Closing Report shall be submitted containing:

    (a)   A summarization of the initial event

    (b)   A complete accounting of all actions taken to respond to it including any mutual aid forces summoned and utilized to bring the event under control.

## 358.6  COMMUNICATIONS AND EMERGENCY RESPONSE CENTER DUTIES
Major Incidents that result in calls for service or that fall under Policy Manual § 359.2 may be received directly by the Communications and Emergency Response Center (CERC) or transferred from Central Lane Communications.

CERC upon receipt of information concerning a major incident will verify that the watch commander is aware of the incident, and based upon jurisdictional boundaries, will assign appropriate units to the incident per standard procedures. The information concerning the incident, notification to the watch commander, and assignment of the call for service to officers will be documented via Computer Aided Dispatch (CAD.)

CERC will assist the Watch Commander in gathering any relevant information and assisting in the notification of the incident to the appropriate individuals based upon the direction of the Watch Commander.  All notifications made will be documented via CAD.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000193

**Exhibit 1**
**Page 183 of 550**

Policy
**359**

University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Clery Act - Notifications of Significant Emergencies and Dangerous Situations

## 359.1 PURPOSE AND SCOPE

The purpose of this policy is to ensure the Department fulfills its obligations to the campus community as outlined in 34CFR 668.46(e),the Jeanne Clery Disclosure of Campus Security Policy (referred to as the Clery Act) and Campus Crime Statistics Act.

The Clery Act and Campus Crime Statistics Act (Clery Act), require that colleges and universities provide timely and relevant information about campus crimes and emergency situations to campus residents and stakeholders, such as students and employees. Moreover, in complying with the Clery Act, it is important that campus police and public safety agencies maintain accurate documents demonstrating the agency's inclusive efforts to inform all appropriate constituencies, actual and potential, of the availability of crime data and reports.

Refer also to Policy 822 - Jeanne Clery Campus Security Act for Departmental and programmatic responsibilities.

## 359.2 POLICY

It is the policy of the UOPD to comply with the Clery Act and to contribute to the university's fulfillment of Clery Act requirements in regard to two types of alerts that may keep the campus informed about safety and security threats: "emergency notifications" and "timely warnings."

At the UO, "emergency notifications" are known and disseminated as "UO Alerts," as per the UO Emergency Operations Plan. Certain UOPD supervisors and administrators are trained to launch "UO Alerts" when necessary, to immediately notify campus stakeholders by various means of imminent threats to safety.

At the UO, "timely warnings" are known as "Campus Crime Alerts," and are the responsibility of UOPD. "Campus Crime Alerts" are usually created and disseminated when Clery-reportable crimes (such as Criminal Homicide, Sexual Assault, Robbery, Aggravated Assault, Burglary, Motor Vehicle Theft, Arson and Hate Crimes; see Policy 822.4(a),(b)) are reported on UO-owned and ,"controlled properties. The list of crimes is not inclusive and "Campus Crime Alerts" may be issued for any serious or continuing threat to person, property or campus safety.

## 359.3 PROCEDURE

UOPD staff will follow the UO Emergency Operations Plan in assessing, creating and disseminating "UO Alerts."

UOPD staff will follow the Department's "Clery Campus Crime Alert Protocol" document to promptly and efficiently analyze incidents, and create and distribute "Campus Crime Alerts" when warranted. Each incident is considered on a case-by-case basis, depending on the facts of the case and the information known by UOPD.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Clery Act - Notifications of Significant Emergencies and Dangerous Situations*

### 359.3.1   ADMINISTERING ALERTS
The Administrator on Duty is responsible for approving the content and timing of alerts (in some situations, this responsibility is delegated either by the Administrator on Duty or by the Chief of Police). In addition, the Administrator on Duty must determine whether an alert hinders either a criminal investigation or emergency operation.

- (a) An alert is determined to hinder a criminal investigation when there is **clear and convincing evidence** that the release of such information would jeopardize an ongoing criminal investigation, jeopardize the safety of an individual, cause a suspect to flee or evade detection, or result in the destruction of evidence.

  1. If posting an alert **will not** hinder the investigation, the alert will be issued in the manner described above.

  2. If after consulting with appropriate staff it is determined that posting an alert **will** hinder the investigation, such information will be withheld until that damage is no longer likely to occur from the release of information.

     - (a) Consideration should be given to notifying crime victims before alerts are issued to the campus community.

### 359.3.2   ALERT CONTENT AND DISTRIBUTION
Alerts shall contain information on the nature, location and time of incidents that may affect the safety and security of campus constituents. Alerts will also contain instructions or suggestions that may enhance the safety and security of recipients. Care should be taken so that the content or timing of Alerts will not interfere with an emergency response or a criminal investigation, or put the personal safety any civilian or responder at risk.

When necessary, UOPD will work with other local agencies to gather relevant information for alert content, including when incidents occur off of UO-owned or ,"controlled property.

As a general rule, alerts will be distributed as soon as possible within the guidelines for each type of alert ("UO Alerts" as governed by the UO Emergency Operations Plan and "Campus Crime Alerts" as governed by the "Clery Campus Crime Alert Protocol"). Alerts need not wait until all information has been confirmed.

### 359.3.3   MAINTENANCE OF CRIME ALERTS

- (a) All records pertaining to Timely Warnings (crime reports or other notification documents, e-mail correspondence and warnings) are maintained by the Clery Coordinator in electronic and paper format. Timely Warnings are archived on the UOPD website.

- (b) Copies or other documentation of the Alert will be forwarded to the Chief of Police, Police Operations Captain, Administrative Captain, Investigations Sergeant and Crime Analyst.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000195

**Exhibit 1**
**Page 185 of 550**



**Policy**
**360**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Death Investigation

### 360.1  PURPOSE AND SCOPE
The investigations of cases involving death include those ranging from natural cause to homicide. Some causes of death may not be readily apparent and some cases differ substantially from what they appeared to be initially. The thoroughness of death investigations cannot be emphasized enough.

### 360.2  INVESTIGATION CONSIDERATIONS
Death investigation cases require certain actions be taken. Paramedics shall be called in all suspected death cases unless the death is obvious (decapitated, decomposed, etc.). Officers are not authorized to pronounce death. A supervisor shall be notified in all death investigations.

360.2.1  MEDICAL EXAMINER NOTIFICATION
Oregon Revised Statutes 146.090 requires that a medical examiner must be notified in the following circumstances. Any death:

(a) Apparently homicidal, suicidal or occurring under suspicious or unknown circumstances

(b) Resulting from the unlawful use of controlled substances or the use or abuse of chemicals or toxic agents

(c) Occurring while incarcerated in any jail, correction facility, or in police custody

(d) Apparently accidental or following an injury

(e) By disease, injury or toxic agent during or arising from employment

(f) While not under the care of a physician during the period immediately previous to death

(g) Related to disease which might constitute a threat to the public health

(h) In which a human body apparently has been disposed of in a manner that is offensive to the generally accepted standards of the community

The body, effects of the deceased, and any instruments or weapons related to the death shall not be disturbed or moved from the position or place of death without permission of the Medical Examiner or Deputy Medical Examiner, and the District Attorney.

A Medical Examiner, Deputy Medical Examiner, or District Attorney, in conjunction with the University of Oregon Police Department and/or the county Major Crime Team, shall take custody of, or exercise control over the body, the effects of the deceased and any weapons, instruments, vehicles, buildings or premises which the medical examiner has reason to believe were involved in the death, in order to preserve evidence related to the cause and manner of death.

The members of the University of Oregon Police Department will work cooperatively with both the Medical Examiner's Office and the District Attorney in all death investigations.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000196

**Exhibit 1**
**Page 186 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Death Investigation*

---

360.2.2   SEARCHING DEAD BODIES
Whenever possible, a witness, preferably a relative to the deceased or a member of the household, should be requested to remain at the scene with the officer pending the arrival of the Medical Examiner. The name and address of this person shall be included in the narrative of the death report. Whenever personal effects are removed from the body of the deceased, a receipt shall be obtained. This receipt shall be attached to the death report.

Officers must make a reasonable search of an individual who reasonably appears to be dead or near death for a document of gift or other information identifying the individual as a donor or as an individual who made a donor refusal. If a document of gift or a refusal to make an anatomical gift is located and the individual or deceased individual is taken to a hospital, the officer must alert the hospital staff to the documentation and forward it to the hospital (ORS 97.970). Officers must consider the integrity of the scene and evidence collection issues when deciding whether a search is reasonable.

360.2.3   DEATH NOTIFICATION
When practical, and if not handled by the Medical Examiner's Office, notification to the next-of-kin of the deceased person shall be made, in person, by the officer assigned to the incident. The notification should be made in the following order:

- spouse or significant other
- parents
- brother or sister
- children
- other

If the next-of-kin lives in another jurisdiction, a law enforcement official from that jurisdiction shall be requested to make the personal notification. If the relatives live outside this county, the Medical Examiner may be requested to make the notification. The Medical Examiner needs to know if notification has been made. Assigned detectives may need to talk to the next-of-kin.

Upon identifying the body, investigators shall attempt to locate the next of kin or responsible friends to obtain the designation of a funeral home to which the deceased is to be taken.

In the event that other agencies request the assistance of UOPD in delivering a death notification, the following guidelines should be followed:

(a)   Deliver the notification in person, if possible.

(b)   Obtain the identity and contact information of officials in the other jurisdiction who will have information for the family.

(c)   Obtain the full identity of the deceased, including date of birth and identifying features.

(d)   Obtain as much information about the details of the death that the other agency is willing to share. It is generally the responsibility of the investigating agency, or involved

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000197

**Exhibit 1**
**Page 187 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Death Investigation*

          Medical Examiner, to provide the family with details of the death. Information beyond the scope of the details provided should be released by the agency only.

(e)    Notify the other agency once the notification has been made (or if there is a significant delay in notification). Give them specific information about who was contacted and how they, themselves, may contact that person in the future.

## 360.2.4   UNIDENTIFIED DEAD BODIES
If the identity of a dead body cannot be established after the Medical Examiner arrives, the Medical Examiner's office will issue a "John Doe" or "Jane Doe" number for the report.

## 360.2.5   DEATH INVESTIGATION REPORTING
All incidents involving a death shall be documented on the appropriate form.

## 360.2.6   SUSPECTED HOMICIDE
If the initially assigned officer suspects that the death involves a homicide or other suspicious circumstances, the Investigations Division shall be notified to determine the possible need for a detective to respond to the scene for further immediate investigation.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000198

**Exhibit 1**
**Page 188 of 550**



Policy
**362**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Identity Theft

## 362.1  PURPOSE AND SCOPE
Identity theft is a growing trend that frequently involves related crimes in multiple jurisdictions. A person commits the crime of identity theft if the person, with the intent to deceive or to defraud, obtains, possesses, transfers, creates, utters or converts to the person own use the personal identification of another person (Oregon Revised Statutes 165.800). This policy is intended to provide guidelines for the reporting and investigation of such crimes.

## 362.2  REPORTING
(a) In an effort to maintain uniformity in reporting, officers presented with the crime of "identity theft" shall initiate a report for victims residing within the jurisdiction of this department. For incidents of identity theft occurring outside this jurisdiction, officers should observe the following:

1. For any victim not residing within this jurisdiction, the officer may either take a courtesy report to be forwarded to the victim's residence agency or the victim should be encouraged to promptly report the identity theft to the law enforcement agency where he or she resides.

(b) While the crime of identity theft should be reported to the law enforcement agency where the victim resides, officers of this department should investigate and report crimes occurring within this jurisdiction which have resulted from the original identity theft (e.g., the identity theft occurred elsewhere, but the credit card fraud occurred and is reported in this jurisdiction).

(c) Officers should include all known incidents of fraudulent activity (e.g., credit card number applied for in victim's name when the victim has never made such an application).

(d) Officers should also cross-reference all known reports made by the victim (e.g., U.S. Secret Service, credit reporting bureaus, U.S. Postal Service and DMV) with all known report numbers.

(e) Following supervisory review and departmental processing, the initial report should be forwarded to the appropriate detective for follow up investigation, coordination with other agencies and prosecution as circumstances dictate.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000199

**Exhibit 1**
**Page 189 of 550**



**Policy**
**364**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Private Persons Arrests

## 364.1  PURPOSE AND SCOPE
The purpose of this policy is to provide guidance for the handling of private person's arrests made pursuant to ORS 133.220(5).

## 364.2  ADVISING PRIVATE PERSONS OF THE ARREST PROCESS
Officers should use sound discretion in determining whether or not to advise an individual of the arrest process.

    (a)    When advising any individual regarding the right to make a private person's arrest, officers should refrain from encouraging or dissuading any individual from making such an arrest and should instead limit advice to the legal requirements for such an arrest as listed below.

    (b)    Private individuals should be discouraged from using force to effect a private person's arrest, and absent immediate threat to their own safety or the safety of others, private individuals should be encouraged to refer matters to law enforcement officials for further investigation or arrest.

## 364.3  ARRESTS BY PRIVATE PERSONS
A private person may arrest another person for any crime committed in the presence of the private person if the private person has probable cause to believe the arrested person committed the crime. A person making such an arrest shall, without unnecessary delay, take the arrested person before a magistrate or deliver the arrested person to a peace officer (ORS 133.225).

In making an arrest, a private person may use the amount of force they reasonable believe is necessary to make the arrest or to prevent the arrested person's escape.

## 364.4  OFFICER RESPONSIBILITIES
Any officer presented with a private person wishing to make an arrest must determine whether or not there is probable cause to believe that such an arrest would be lawful.

    (a)    Should any officer determine that there is no probable cause to believe that a private person's arrest is lawful, the officer should take no action to further detain or restrain the individual beyond that which reasonably appears necessary to investigate the matter, determine the lawfulness of the arrest and protect the public safety.

        1.    Any officer who determines that a private person's arrest appears to be unlawful should promptly release the arrested individual. The officer must include the basis of such a determination in a related report.

        2.    Absent probable cause to support a private person's arrest or other lawful grounds to support an independent arrest by the officer, the officer should

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000200

**Exhibit 1**
**Page 190 of 550**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Private Persons Arrests*

advise the parties that no arrest will be made and that the circumstances will be documented in a related report.

(b)    Whenever an officer determines that there is probable cause to believe that a private person's arrest is lawful, the officer may exercise any of the following options:

1.    Take the individual into physical custody for booking.

2.    Release the individual subsequent to the issuance of a citation for the individual to appear in the appropriate court.

**364.5  REPORTING REQUIREMENTS**
In all circumstances in which a private person is claiming to have made an arrest, the individual must complete and sign the department Private Person's Arrest form.

In addition to the Private Person's Arrest Form (and any other related documents such as citations, booking forms, etc.), officers shall complete a narrative report regarding the circumstances and disposition of the incident.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000201

**Exhibit 1**
**Page 191 of 550**



**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Communications with Persons with Disabilities

### 370.1  PURPOSE AND SCOPE
This policy provides guidance to members when communicating with individuals with disabilities, including those who are deaf or hard of hearing, have impaired speech or vision, or are blind.

### 370.1.1  DEFINITIONS
Definitions related to this policy include:

**Auxiliary aids** - Tools used to communicate with people who have a disability or impairment. They include, but are not limited to, the use of gestures or visual aids to supplement oral communication; a notepad and pen or pencil to exchange written notes; a computer or typewriter; an assistive listening system or device to amplify sound; a teletypewriter (TTY) or videophones (video relay service or VRS); taped text; qualified readers or a qualified interpreter.

**Disability or impairment** - A physical or mental impairment that substantially limits a major life activity, including hearing or seeing, regardless of whether the disabled person uses assistive or adaptive devices or auxiliary aids. Individuals who wear ordinary eyeglasses or contact lenses are not considered to have a disability (42 USC § 12102).

**Qualified interpreter** - A person who is able to interpret effectively, accurately and impartially, both receptively and expressively, using any necessary specialized vocabulary. Qualified interpreters include oral interpreters, transliterators, sign language interpreters and intermediary interpreters.

### 370.2  POLICY
It is the policy of the University of Oregon Police Department to reasonably ensure that people with disabilities, including victims, witnesses, suspects and arrestees have equal access to law enforcement services, programs and activities. Members must make efforts to communicate effectively with individuals with disabilities.

The Department will not discriminate against or deny any individual access to services, rights or programs based upon disabilities.

### 370.3  AMERICANS WITH DISABILITIES (ADA) COORDINATOR
ADA coordination is handled through the UO Office of Affirmative Action and Equal Opportunity (UO AAEO). The Chief of Police may additionally delegate certain responsibilities to an ADA Coordinator (28 CFR 35.107) in the department. The ADA Coordinator shall be appointed by, and directly responsible, to the Operations Division Commander or the authorized designee.

The responsibilities of the ADA Coordinator, if one is appointed, shall include, but not be limited to:

(a) Working with the University ADA coordinator regarding the University of Oregon Police Department's efforts to ensure equal access to services, programs and activities.

(b) Developing reports, new procedures, or recommending modifications to this policy.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Communications with Persons with Disabilities*

(c)    Acting as a liaison with local disability advocacy groups or other disability groups regarding access to department services, programs and activities.

(d)    Ensuring that a list of qualified interpreter services is maintained and available to each Watch Commander and Communications and Emergency Response Manager. The list should include information regarding the following:

    1.    Contact information

    2.    Availability

(e)    Developing procedures that will enable members to access auxiliary aids or services, including qualified interpreters, and ensure the procedures are available to all members.

(f)    Ensuring signage is posted in appropriate areas, indicating that auxiliary aids are available free of charge to people with disabilities.

(g)    Ensuring appropriate processes are in place to provide for the prompt and equitable resolution of complaints and inquiries regarding discrimination in access to department services, programs and activities.

## 370.4  FACTORS TO CONSIDER
Because the nature of any law enforcement contact may vary substantially from one situation to the next, members of this department should consider all information reasonably available to them when determining how to communicate with an individual with a disability. Members should carefully balance all known factors in an effort to reasonably ensure people who are disabled have equal access to services, programs and activities. These factors may include, but are not limited to:

(a)    Members should not always assume that effective communication is being achieved. The fact that an individual appears to be nodding in agreement does not always mean he/she completely understands the message. When there is any doubt, members should ask the individual to communicate back or otherwise demonstrate their understanding.

(b)    The nature of the disability (e.g., deafness or blindness vs. hard of hearing or low vision).

(c)    The nature of the law enforcement contact (e.g., emergency vs. non-emergency, custodial vs. consensual contact).

(d)    The availability of auxiliary aids. The fact that a particular aid is not available does not eliminate the obligation to reasonably ensure access. However, in an emergency, availability may factor into the type of aid used.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000203

**Exhibit 1**
**Page 193 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Communications with Persons with Disabilities*

## 370.5  INITIAL AND IMMEDIATE CONSIDERATIONS

Recognizing that various law enforcement encounters may be potentially volatile and/or emotionally charged, members should remain alert to the possibility of communication problems.

Members should exercise special care in the use of all gestures, and verbal and written communication to minimize initial confusion and misunderstanding when dealing with any individual with known or suspected disabilities.

In a non-emergency situation, when a member knows or suspects an individual requires assistance to effectively communicate, the member shall identify the individual's choice of auxiliary aid or service.

The individual's preferred communication method must be honored unless another effective method of communication exists under the circumstances (28 CFR 35.160).

Factors to consider when determining whether an alternative method is effective include:

(a)    The methods of communication usually used by the individual.

(b)    The nature, length and complexity of the communication involved.

(c)    The context of the communication.

In emergency situations involving an imminent threat to the safety or welfare of any person, members may use whatever auxiliary aids and services that reasonably appear effective under the circumstances. This may include, for example, exchanging written notes or using the services of a person who knows sign language but is not a qualified interpreter, even if the person who is deaf or hard of hearing would prefer a qualified sign language interpreter or another appropriate auxiliary aid or service. Once the emergency has ended, the continued method of communication should be reconsidered. The member should inquire as to the individual's preference and give primary consideration to that preference.

If an individual who is deaf, hard of hearing or has impaired speech must be handcuffed while in the custody of the University of Oregon Police Department, consideration should be given, safety permitting, to placing the handcuffs in the front of the body to facilitate communication using sign language or writing.

## 370.6  TYPES OF ASSISTANCE AVAILABLE

University of Oregon Police Department members shall never refuse to assist an individual with disabilities who is requesting assistance. The Department will not charge anyone to receive auxiliary aids, nor shall they require anyone to furnish their own auxiliary aid or service as a condition for receiving assistance. The Department will make every reasonable effort to provide equal access and timely assistance to individuals who are disabled through a variety of services.

A person who is disabled may choose to accept department-provided auxiliary aids or services or they may choose to provide their own.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000204

**Exhibit 1**
**Page 194 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Communications with Persons with Disabilities*

Department-provided auxiliary aids or services may include, but are not limited to, the assistance methods described in this policy.

## 370.7  AUDIO RECORDINGS AND ENLARGED PRINT
The Department may develop audio recordings to assist people who are blind or have a visual impairment with accessing important information. If such a recording is not available, members may read aloud from the appropriate form, for example a personnel complaint form, or provide forms with enlarged print.

## 370.8  QUALIFIED INTERPRETERS
A qualified interpreter may be needed in lengthy or complex transactions (e.g., interviewing a victim, witness, suspect or arrestee), if the individual to be interviewed normally relies on sign language or speechreading (lip-reading) to understand what others are saying. The qualified interpreter should not be a person with an interest in the case or the investigation. A person providing interpretation services may be required to establish the accuracy and trustworthiness of the interpretation in a court proceeding.

Qualified interpreters should be:

(a)  Available within a reasonable amount of time but in no event longer than one hour if requested.

(b)  Experienced in providing interpretation services related to law enforcement matters.

(c)  Familiar with the use of VRS and/or video remote interpreting services.

(d)  Certified in either American Sign Language (ASL) or Signed English (SE).

(e)  Able to understand and adhere to the interpreter role without deviating into other roles, such as counselor or legal adviser.

(f)  Knowledgeable of the ethical issues involved when providing interpreter services.

Members should use department-approved procedures to request a qualified interpreter at the earliest reasonable opportunity, and generally not more than 15 minutes after a request for an interpreter has been made or it is reasonably apparent that an interpreter is needed. No individual who is disabled shall be required to provide his/her own interpreter (28 CFR 35.160).

## 370.9  TTY AND RELAY SERVICES
In situations where an individual without a disability would have access to a telephone (e.g., booking or attorney contacts), members must also provide those who are deaf, hard of hearing or have impaired speech the opportunity to place calls using an available TTY (also known as a telecommunications device for deaf people, or TDD). Members shall provide additional time, as needed, for effective communication due to the slower nature of TTY and TDD communications.

The Department will accept all TTY or TDD calls placed by those who are deaf or hard of hearing and received via a telecommunications relay service (28 CFR 35.162).

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000205

**Exhibit 1**
**Page 195 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Communications with Persons with Disabilities*

Note that relay services translate verbatim, so the conversation must be conducted as if speaking directly to the caller.

## 370.10  COMMUNITY VOLUNTEERS

Interpreter services may be available from community volunteers who have demonstrated competence in communication services, such as ASL or SE, and have been approved by the Department to provide interpreter services.

Where qualified interpreters are unavailable to assist, approved community volunteers who have demonstrated competence may be called upon when appropriate. However, department members must carefully consider the nature of the contact and the relationship between the individual with the disability and the volunteer to ensure that the volunteer can provide neutral and unbiased assistance.

## 370.11  FAMILY AND FRIENDS

While family or friends may offer to assist with interpretation, members should carefully consider the circumstances before relying on such individuals. The nature of the contact and relationship between the individual with the disability and the person offering services must be carefully considered (e.g., victim/suspect).

Children shall not be relied upon except in emergency or critical situations when there is no qualified interpreter reasonably available.

Adults may be relied upon when (28 CFR 35.160):

(a)  There is an emergency or critical situation and there is no qualified interpreter reasonably available.

(b)  The person with the disability requests that the adult interpret or facilitate communication and the adult agrees to provide such assistance, and reliance on that adult for such assistance is reasonable under the circumstances.

## 370.12  REPORTING

Whenever any member of this department is required to complete a report or other documentation, and communication assistance has been provided, such services should be noted in the related report. Members should document the type of communication services utilized and whether the individual elected to use services provided by the Department or some other identified source. If the individual's express preference is not honored, the member must document why another method of communication was used.

All written communications exchanged in a criminal case shall be attached to the report or placed into evidence.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000206

**Exhibit 1**
**Page 196 of 550**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Communications with Persons with Disabilities*

**370.13  FIELD ENFORCEMENT**
Field enforcement will generally include such contacts as traffic stops, pedestrian stops, serving warrants and restraining orders, crowd/traffic control and other routine field contacts that may involve individuals with disabilities. The scope and nature of these activities and contacts will inevitably vary.

The Department recognizes that it would be virtually impossible to provide immediate access to complete communication services to every member of this department. Members and/or supervisors must assess each situation and consider the length, complexity and importance of the communication, as well as the individual's preferred method of communication, when determining the type of resources to use and whether a qualified interpreter is needed.

Although not every situation can be addressed in this policy, it is important that members are able to effectively communicate the reason for a contact, the need for information and the meaning or consequences of any enforcement action. For example, it would be meaningless to verbally request consent to search if the officer is unable to effectively communicate with an individual who is deaf or hard of hearing and requires communications assistance.

If available, officers should obtain the assistance of a qualified interpreter before placing an individual with a disability under arrest. Individuals who are arrested and are assisted by service animals should be permitted to make arrangements for the care of such animals prior to transport.

370.13.1  FIELD RESOURCES
Examples of methods that may be sufficient for transactions, such as checking a license or giving directions to a location or for urgent situations such as responding to a violent crime in progress, may, depending on the circumstances, include such simple things as:

(a)  Hand gestures or visual aids with an individual who is deaf, hard of hearing or has impaired speech.

(b)  Exchange of written notes or communications.

(c)  Verbal communication with an individual who can speechread by facing the individual and speaking slowly and clearly.

(d)  Use of computer, word processing, personal communication device or similar device to exchange texts or notes.

(e)  Slowly and clearly speaking or reading simple terms to individuals who have a visual or mental impairment.

Members should be aware that these techniques may not provide effective communication as required by law and this policy depending on the circumstances.

**370.14  CUSTODIAL INTERROGATIONS**
In an effort to ensure that the rights of individuals who are deaf, hard of hearing or have speech impairment are protected during a custodial interrogation, this department will provide interpreter services before beginning an interrogation, unless exigent circumstances exist or the individual

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Communications with Persons with Disabilities*

has made a clear indication that he/she understands the process and desires to proceed without an interpreter. The use of a video remote interpreting service should be considered, where appropriate, if a live interpreter is not available. *Miranda* warnings shall be provided to suspects who are deaf or hard of hearing by a qualified interpreter or by providing a written *Miranda* warning card.

In order to ensure that communications during custodial investigations are accurately documented and are admissible as evidence, interrogations should be recorded whenever reasonably possible. See guidance on recording custodial interrogations in the Investigation and Prosecution Policy.

370.14.1  INTERPRETER REQUIRED IN ARRESTS
An officer who arrests a person who is deaf, has a physical hearing impairment or physical speaking impairment shall, prior to any interrogation or the taking of a statement, make available a qualified interpreter to assist throughout the interrogation or taking of the statement. Fees and expenses of the interpreter will be paid as specified by Oregon law (ORS 133.515).

**370.15  ARRESTS AND BOOKINGS**
If an individual with speech or hearing disabilities is arrested, the arresting officer shall use department-approved procedures to provide a qualified interpreter at the place of arrest or booking as soon as reasonably practicable, unless the individual indicates that he/she prefers a different auxiliary aid or service or the officer reasonably determines another effective method of communication exists under the circumstances.

When gathering information during the booking process, members should remain alert to the impediments that often exist when communicating with those who are deaf, hard of hearing, who have impaired speech or vision, are blind, or have other disabilities. In the interest of the arrestee's health and welfare, the safety and security of the facility and to protect individual rights, it is important that accurate medical screening and booking information be obtained. If necessary, members should seek the assistance of a qualified interpreter whenever there is concern that accurate information cannot be obtained or that booking instructions may not be properly understood by the individual.

Individuals who require and possess personally owned communication aids (e.g., hearing aids, cochlear processors) should be permitted to retain them while in custody.

**370.16  COMPLAINTS**
The Department shall ensure that individuals with disabilities who wish to file a complaint regarding members of this department are able to do so. The Department may provide a qualified interpreter or forms in enlarged print, as appropriate. Complaints will be referred to the department UO AAEO or, if one is appointed, the ADA Coordinator.

Investigations into such complaints shall be handled in accordance with the Personnel Complaints Policy. Qualified interpreters used during the investigation of a complaint should not be members of this Department.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Communications with Persons with Disabilities*

### 370.17   COMMUNITY OUTREACH
Community outreach programs and other such services offered by this department are important to the ultimate success of more traditional law enforcement duties. This department will continue to work with community groups, local businesses and neighborhoods to provide equal access to such programs and services.

### 370.18   TRAINING
To ensure that all members who may have contact with individuals who are disabled are properly trained, the Department will provide periodic training that should include:

(a)   Awareness and understanding of this policy and related procedures, related forms and available resources.

(b)   Procedures for accessing qualified interpreters and other available resources.

(c)   Working with in-person and telephone interpreters and related equipment.

The Captain of Administration shall be responsible for ensuring new members receive training related to interacting with individuals who have disabilities, including individuals who are deaf, hard of hearing, who have impaired speech or vision, or are blind. Those who may have contact with such individuals should receive refresher training at least once every two years thereafter. The Captain of Administration shall maintain records of all training provided, and will retain a copy in each member's training file in accordance with established records retention schedules.

### 370.18.1   CALL-TAKER TRAINING
Emergency call-takers shall be trained in the use of TTY equipment protocols for communicating with individuals who are deaf, hard of hearing or who have speech impairments. Such training and information should include:

(a)   The requirements of the ADA and Section 504 of the Rehabilitation Act for telephone emergency service providers.

(b)   ASL syntax and accepted abbreviations.

(c)   Practical instruction on identifying and processing TTY or TDD calls, including the importance of recognizing silent TTY or TDD calls, using proper syntax, abbreviations and protocol when responding to TTY or TDD calls.

(d)   Hands-on experience in TTY and TDD communications, including identification of TTY or TDD tones.

Training should be mandatory for all Communications and Emergency Response Center members who may have contact with individuals from the public who are deaf, hard of hearing or have impaired speech. Refresher training should occur every six months.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department



| Policy | University of Oregon Police Department |
| **376** | University of Oregon Police Department Policy Manual |

# Stalking

**376.1  PURPOSE AND SCOPE**
This policy establishes procedures for the investigation and enforcement of stalking complaints (Oregon Revised Statutes 163.730 to 163.755).

376.1.1  POLICY
Stalking behavior frequently results in serious injury and emotional trauma to victims and it is the policy of the University of Oregon Police Department to ensure that complaints of stalking will be given high priority and that every formal stalking complaint will be thoroughly investigated and forwarded to the District Attorney's Office.

**376.2  UNIFORM STALKING COMPLAINT**
The Department will make available an Oregon Uniform Stalking Complaint form to any person desiring to file a stalking complaint regardless of where the violation is alleged to have occurred. Officers will provide reasonable assistance as necessary to petitioners to properly complete and sign the form.

Upon receipt of a Uniform Stalking Complaint, officers will review and sign the form and complete a thorough investigation. All stalking incident reports shall be forwarded to the District Attorney's Office, regardless of whether any civil or criminal action was taken, within three days (ORS 163.738(7)).

**376.3  UNIFORM STALKING CITATION**
The bottom half of the Uniform Stalking Complaint is a Uniform Stalking Citation. The citation is a civil summons for the respondent to appear at a hearing to determine if a Stalking Protective Order will be issued against the respondent. Officers will complete and attempt to serve a Uniform Stalking Citation, with a court date set for three judicial days (business days excluding holidays) from the date the citation was served, on the respondent in every case where:

    (a)    The officer has received a completed Uniform Stalking Complaint, and

    (b)    The officer has probable cause to believe that the elements of Oregon Revised Statutes 163.732(1), (Stalking) have occurred.

376.3.1  SERVICE OF STALKING CITATIONS

    (a)    If the citation is served, the officer is required to advise the respondent of the court date and time and location of appearance. Officers should advise the respondent of the following:

           1.    Engaging in behavior that alarms or coerces the petitioner may result in their arrest; and

           2.    The contents of the citation and the state and federal law restrictions contained on the front and back of the respondent's copy of the citation; and

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000210

**Exhibit 1**
**Page 200 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Stalking*

   3.   If they fail to appear at the hearing a warrant will be issued for their arrest, as well as a Stalking Protective Order.

(b)   If a Uniform Stalking Citation is issued, attach the top three copies to the case report. Provide the pink copy to the petitioner (pink) and goldenrod copy to the respondent.

(c)   If there is probable cause to issue a citation, but the citation is not served, officers should document attempts to serve the respondent.

(d)   If the citation is served on the respondent, the DA's office will initiate the hearing process.

(e)   If the citation is served on the respondent, the petitioner should be advised that they must also appear at the hearing or the complaint will be dismissed and the Stalking Protective Order will not be issued.

## 376.4  ARREST
Officers may arrest or cite a suspect for any criminal offense committed (including stalking) if the statutory elements have been met, as well as issue a (civil) Uniform Stalking Citation; the two actions are not mutually exclusive.

### 376.4.1  STALKING PROTECTIVE ORDERS
Once the court issues a Stalking Protective Order and it is served on the Respondent, officers may arrest the respondent for violating the terms of the order (Oregon Revised Statutes 163.750).

## 376.5  RESTRAINING ORDERS
Court stalking orders and restraining orders are different and are not mutually exclusive. Stalking reports may be appropriate even if a valid restraining order is in place.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

Stalking - 201

UO_Alvarez000211

**Exhibit 1
Page 201 of 550**



**Policy**
**379**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Child and Dependent Adult Safety

### 379.1  PURPOSE AND SCOPE
This policy provides guidelines to ensure that children and dependent adults are not left without appropriate care in the event their caregiver or guardian is arrested or otherwise prevented from providing care due to actions taken by members of this department.

This policy does not address the actions to be taken during the course of a child abuse or dependent adult investigation. These are covered in the Child Abuse Policy and the Adult Abuse Policy.

### 379.2  POLICY
It is the policy of this department to mitigate, to the extent reasonably possible, the stressful experience individuals may have when their parent or caregiver is arrested. The University of Oregon Police Department will endeavor to create a strong, cooperative relationship with local, state and community-based social services to ensure an effective, collaborative response that addresses the needs of those affected, including call-out availability and follow-up responsibilities.

### 379.3  PROCEDURES DURING AN ARREST
When encountering an arrest or prolonged detention situation officers should make reasonable attempts to determine if the arrestee is responsible for children or dependent adults. In some cases this may be obvious, such as when children or dependent adults are present. However, officers should inquire if the arrestee has caregiver responsibilities for any children or dependent adults who are without appropriate supervision. The following steps should be taken:

    (a)    Inquire about and confirm the location of any children or dependent adults.

    (b)    Look for evidence of children and dependent adults. Officers should be mindful that some arrestees may conceal the fact that they have a dependent for fear the individual may be taken from them.

    (c)    Consider inquiring of witnesses, neighbors, friends and relatives of the arrestee as to whether the person is responsible for a child or dependent adult.

Whenever reasonably possible, officers should take reasonable steps to accomplish the arrest of a parent, guardian or caregiver out of the presence of his/her child or dependent adult. Removing children or dependent adults from the scene in advance of the arrest will generally ensure the best outcome for the individual.

Whenever it is safe to do so, officers should allow the parent or caregiver to assure children or dependent adults that they will be provided care. If this is not safe or if the demeanor of the parent or caregiver suggests this conversation would be non-productive, the officer at the scene should explain the reason for the arrest in age-appropriate language and offer reassurance to the child or dependent adult that he/she will receive appropriate care.

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Child and Dependent Adult Safety*

### 379.3.1   AFTER AN ARREST
Whenever an arrest is made, the officer should take all reasonable steps to ensure the safety of the arrestee's disclosed or discovered children or dependent adults.

Officers should allow the arrestee reasonable time to arrange for care of children and dependent adults. Temporary placement with family or friends may be appropriate. However, any decision should give priority to a care solution that is in the best interest of the child or dependent adult. In such cases the following guidelines should be followed:

(a)   Allow the person reasonable time to arrange for the care of children and dependent adults with a responsible party, as appropriate.

1.   Officers should consider allowing the person to use his/her cell phone to facilitate arrangements through access to contact phone numbers, and to lessen the likelihood of call screening by the recipients due to calls from unknown sources.

(b)   Unless there is evidence to the contrary (e.g., signs of abuse, drug use, unsafe environment), officers should respect the parent or caregiver's judgment regarding arrangements for care. It is generally best if the child or dependent adult remains with relatives or family friends that he/she knows and trusts because familiarity with surroundings and consideration for comfort, emotional state and safety are important.

1.   Except when a court order exists limiting contact, the officer should attempt to locate and place children or dependent adults with the non-arrested parent, guardian or caregiver.

(c)   Provide for the immediate supervision of children or dependent adults until an appropriate caregiver arrives.

(d)   Notify Child Protective Services, if appropriate.

(e)   Notify the field supervisor or Watch Commander of the disposition of children or dependent adults.

If children or dependent adults are at school or another known location outside the household at the time of arrest, the arresting officer should attempt to contact the school or other known location and inform the principal or appropriate responsible adult of the caregiver's arrest and of the arrangements being made for the care of the arrestee's dependent. The result of such actions should be documented in the associated report.

### 379.3.2   DURING THE BOOKING PROCESS
During the booking process, the arrestee shall be allowed to make additional telephone calls to relatives or other responsible individuals as is reasonably necessary to arrange for the care of any child or dependent adult. These telephone calls should be given as soon as practicable and are in addition to any other telephone calls allowed by law.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Child and Dependent Adult Safety*

If an arrestee is unable to resolve the care of any child or dependent adult through this process, a supervisor should be contacted to determine the appropriate steps to arrange for care. These steps may include additional telephone calls or contacting a local, county or state services agency.

### 379.3.3   REPORTING

(a) For all arrests where children are present or living in the household, the reporting member will document the following information:

1. Name
2. Sex
3. Age
4. Special needs (e.g., medical, mental health)
5. How, where and with whom or which agency the child was placed
6. Identities and contact information for other potential caregivers
7. Notifications made to other adults (e.g., schools, relatives)

(b) For all arrests where dependent adults are present or living in the household, the reporting member will document the following information:

1. Name
2. Sex
3. Age
4. Whether he/she reasonably appears able to care for him/herself
5. Disposition or placement information if he/she is unable to care for him/herself

### 379.3.4   SUPPORT AND COUNSELING REFERRAL

If, in the judgment of the handling officers, the child or dependent adult would benefit from additional assistance, such as counseling services, contact with a victim advocate or a crisis telephone number, the appropriate referral information may be provided.

### 379.4   DEPENDENT WELFARE SERVICES

Whenever an arrestee is unwilling or incapable of arranging for the appropriate care of any child or dependent adult, the handling officer should contact the appropriate welfare service or other department-approved social service to determine whether protective custody is appropriate.

Only when other reasonable options are exhausted should a child or dependent adult be transported to the police facility, transported in a marked law enforcement vehicle or taken into formal protective custody.

Under no circumstances should a child or dependent adult be left unattended or without appropriate care.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000214

**Exhibit 1**
**Page 204 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Child and Dependent Adult Safety*

**379.5  TRAINING**

The Captain of Administration is responsible to ensure that all members of this department who may be involved in arrests affecting children or dependent adults receive approved training on effective safety measures when a parent, guardian or caregiver is arrested.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department



**Policy**
**381**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Service Animals

## 381.1  PURPOSE AND SCOPE
Service animals play an important role in helping to overcome the limitations often faced by people with disabilities. The University of Oregon Police Department recognizes this need and is committed to making reasonable modifications to its policies, practices and procedures in accordance with Title II of the Americans with Disabilities Act of 1990 (ADA) to permit the use of service animals that are individually trained to assist a person with a disability.

## 381.2  SERVICE ANIMALS
The ADA defines a service animal as any dog or miniature horse that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual or mental disability. The work or tasks performed by a service animal must be directly related to the owner's disability (28 CFR 35.104).

### 381.2.1  STATE LAW
Oregon law expands the definition of a service or assistance animal to include any animal that is trained to assist a person with a physical impairment in one or more daily life activities (ORS 346.680).

### 381.2.2  USE OF SERVICE ANIMALS
Some service animals may be readily identifiable. However, many do not have a distinctive symbol, harness or collar. Service animals are not pets and may be trained by an individual or organization to assist people with disabilities.

The following examples are some of the ways service animals may be used to provide assistance:

- Guiding people who are blind or have low vision.

- Alerting people who are deaf or hard of hearing.

- Retrieving or picking up items, opening doors or flipping switches for people who have limited use of their hands, arms or legs.

- Pulling wheelchairs.

- Providing physical support and assisting people with stability and balance.

- Doing work or performing tasks for persons with traumatic brain injury, intellectual disabilities or psychiatric disabilities, such as reminding a person with depression to take medication.

- Alerting a person with anxiety to the onset of panic attacks, providing tactile stimulation to calm a person with post-traumatic stress disorder, assisting people with schizophrenia to distinguish between hallucinations and reality, and helping people with traumatic brain injury to locate misplaced items or follow daily routines.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000216

**Exhibit 1**
**Page 206 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Service Animals*

### 381.3  MEMBER RESPONSIBILITIES
Service animals that are assisting individuals with disabilities are permitted in all public facilities and areas where the general public is allowed. Department members are expected to treat individuals with service animals with the same courtesy and respect that the University of Oregon Police Department affords to all members of the public.

If an animal exhibits vicious behavior, poses a direct threat to the health of others or unreasonably disrupts or interferes with normal business operations an officer may direct the owner to remove the animal from the premises. Barking alone is not a threat nor does a direct threat exist if the person takes prompt, effective action to control the animal. Each incident must be considered individually and past incidents alone are not cause for excluding a service animal. Removal of a service animal may not be used as a reason to refuse service to an individual with disabilities. Members of this department are expected to provide all services as are reasonably available to an individual with a disability.

If it is apparent or if an officer is aware the animal is a service animal, the owner should not be asked any questions as to the status of the animal. If it is unclear whether an animal meets the definition of a service animal, the officer should ask the individual only the following questions:

- Is the animal required because of a disability?
- What task or service has the service animal been trained to perform?

If the individual explains that the animal is required because of a disability and has been trained to work or perform at least one task the animal meets the definition of a service animal and no further question as to the animal's status should be asked. The person should not be questioned about his/her disabilities nor should the person be asked to provide any license, certification or identification card for the service animal.

Service animals are not pets. Department members should not interfere with the important work performed by a service animal by talking to, petting or otherwise initiating contact with a service animal.

When handling calls of a complaint regarding a service animal, members of this department should remain neutral and should be prepared to explain the ADA requirements concerning service animals to the concerned parties. Businesses are required to allow service animals to accompany their owner into all areas that other customers or members of the public are allowed.

Absent a violation of law independent of the ADA, officers should take no enforcement action beyond keeping the peace. Individuals who believe they have been discriminated against as the result of a disability should be referred to the Civil Rights Division of the U.S. Department of Justice.

### 381.3.1  SERVICE ANIMALS BELONGING TO ARRESTEES
If the owner of a service animal is arrested, reasonable efforts shall be made to accommodate the owner and the animal. These situations may require creative solutions. Some of the options to consider are:

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000217

**Exhibit 1**
**Page 207 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Service Animals*

- Consult with the Lane County Jail as to whether they can accomdate the service animal

- Ask the arrestee if they have a preferred option

- Consult with Eugene Animal Control

- Shelter the service animal, ensuring that the shelter staff are notified that the animal is a service animal and who owns the animal for eventual release (make sure the jail staff know where the animal is sheltered)

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000218

**Exhibit 1**
**Page 208 of 550**



**Policy**
**383**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Public Safety Camera System

### 383.1   PURPOSE AND SCOPE
The University of Oregon operates a public safety camera system for the purpose of creating a safer environment for all those who live, work, and visit the University. This policy provides guidelines for the operation of the cameras, the purpose of their use and the storage of captured images.

### 383.2   POLICY
Cameras are strategically placed throughout the jurisdiction at the direction or with the approval of the University for the purpose of assisting the University of Oregon Police Department to detect and deter crime, to safeguard against potential threats to Homeland Security, to manage emergency response situations to natural and man-made disasters, and to assist other University officials to aid in the enhancement of services provided to the community.

Public safety cameras are a building management and crime prevention tool that can assist with scene reconstruction and evidence gathering. Public safety cameras are also a key resource to assist in securing vulnerable sites by providing real time monitoring and early detection of unusual or criminal activity allowing for a more efficient and timely response by law enforcement and emergency response personnel.

The cameras only record images and do not record sound. Recordings may be used for a variety of purposes including criminal investigations and monitoring of activity. In addition, the public safety camera system helps to provide the following benefits:

    (a)   Assists in identifying, apprehending and prosecuting offenders.

    (b)   Assists in gathering evidence for criminal and civil court actions.

    (c)   Assists emergency services personnel maintain good public order.

    (d)   Assists in monitoring pedestrian and vehicle traffic activity.

    (e)   Helps improve the general environment on the public streets.

    (f)   Assists in providing effective public services.

### 383.3   PROCEDURE
The following procedures have been established for the effective operation of the public safety camera system.

### 383.3.1   MONITORING
Video images from the cameras are transmitted to monitors installed in the Communications and Emergency Response Center. When activity warranting further investigation is reported or detected at any camera location the dispatcher may selectively view the appropriate camera and relay any available information to responding units. The Communications and Emergency

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000219

**Exhibit 1**
**Page 209 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Public Safety Camera System*

Response Center personnel are authorized to make some adjustments the cameras in order to more effectively view a particular area for any legitimate public safety purpose.

The video feed from cameras may be accessed by other University employees for official business only.

### 383.3.2   TRAINING
Personnel involved in video monitoring will be appropriately trained and supervised.

### 383.3.3   PROHIBITED ACTIVITY
Video monitoring will be conducted in a professional, ethical and legal manner. The public safety camera system will not be used to invade the privacy of individuals, or to look into private areas or areas where the reasonable expectation of privacy exists. All reasonable efforts will be taken to protect these privacy rights. Video monitoring shall not be used to harass, intimidate or discriminate against any individual or group.

### 383.4   MEDIA STORAGE
All media will be stored in a secure area with access restricted to authorized persons only. The system will store the images from every camera which are recorded throughout the twenty-four hour period of every day of the week (recording options are "24 hours" and "Motion Activated"). All of the images from every recording device for a particular 24-hour period, beginning at 12:00 a.m. and ending at 11:59:59 p.m. will be referred to as the "Daily Recording".

The Daily Recording will be stored for a period of not less than 30 days and thereafter may be erased if not otherwise required for any related investigation, claim or other official need (Oregon Administrative Rules 166-200-0100 (68)). The system will be configured to automatically purge and write over any Daily Recordings more than 30 days old.

### 383.5   RETRIEVAL OF RECORDED INFORMATION
Authorization for UOPD members to research and retrieve recorded information must be received from the Chief of Police or his/her designee.

University staff who have a business need to review any video recordings must submit their request to the UO Office of Public Records.

### 383.5.1   PUBLIC AND OTHER AGENCY REQUESTS
Requests for recorded video images from other governmental agencies or through the submission of a court order or subpoena will be promptly submitted to the General Counsel. Upon the receipt of any such request, it will also be promptly submitted to the Communications and Emergency Response Manager who will promptly research the request and submit the results of such search through the Chief of Police to the General Counsel's office for further handling. Every reasonable effort should be made to preserve the data requested until the request has been finally processed by the General Counsel's office.

UO_Alvarez000220

**Exhibit 1**
**Page 210 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Public Safety Camera System*

Public and media requests for video images captured by public safety cameras will be made available only to the extent required by law. As provided by Oregon public records law, video footage that is evidence in an ongoing police investigation will generally not be disclosed to the public where a disposition has not been reached, absent such disclosure being compelled by a court or other governmental entity of competent jurisdiction.

**383.6  ANNUAL REVIEW OF THE PUBLIC SAFETY CAMERA SYSTEM**
The Chief of Police or his/her designee will conduct an annual review the agency's use of the public safety camera system. The annual review will include an inventory of video monitoring installations, date of installation, summary of their purpose, adherence to this policy and any proposed policy changes. The results of each review will be documented and maintained by the Chief of Police or his/her designee and other applicable advisory bodies. Any concerns or deviations from this policy will be addressed promptly and effectively.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000221

**Exhibit 1**
**Page 211 of 550**



**Policy**
**387**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Off-Duty Law Enforcement Actions

### 387.1  PURPOSE AND SCOPE
The decision to become involved in a law enforcement action when off-duty can place an officer, as well as others, at great risk and must be done with careful consideration. This policy is intended to provide guidelines for officers of the University of Oregon Police Department with respect to taking law enforcement action while off-duty.

### 387.2  POLICY
Initiating law enforcement action while off-duty is generally discouraged. Officers should not attempt to initiate enforcement action when witnessing minor crimes, such as suspected intoxicated drivers, reckless driving or minor property crimes. Such incidents should be promptly reported to the appropriate law enforcement agency.

Officers are not expected to place themselves in unreasonable peril. However, any sworn member of this department who becomes aware of an incident or circumstance that he/she reasonably believes poses an imminent threat of serious bodily injury or death, or significant property damage may take reasonable action to minimize the threat.

When public safety or the prevention of major property damage requires immediate action, officers should first consider reporting and monitoring the activity and only take direct action as a last resort.

### 387.3  FIREARMS
Officers of this department may carry firearms while off-duty in accordance with federal regulations and department policy. All firearms and ammunition must meet guidelines as described in the department Firearms and Qualification Policy. When carrying firearms while off-duty officers shall also carry their department-issued badge and identification.

Officers should refrain from carrying firearms when the consumption of alcohol is likely or when the need to carry a firearm is outweighed by safety considerations. Firearms shall not be carried by any officer who has consumed an amount of an alcoholic beverage or taken any drugs that would tend to adversely affect the officer's senses or judgment.

### 387.4  DECISION TO INTERVENE
There is no legal requirement for off-duty officers to take law enforcement action. However, should officers decide to intervene, they must evaluate whether the action is necessary or desirable, and should take into consideration the following:

(a)  The tactical disadvantage of being alone and the fact there may be multiple or hidden suspects.

(b)  The inability to communicate with responding units.

(c)  The lack of equipment, such as handcuffs, OC or baton.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Off-Duty Law Enforcement Actions*

___

(d)    The lack of cover.

(e)    The potential for increased risk to bystanders if the off-duty officer were to intervene.

(f)    Unfamiliarity with the surroundings.

(g)    The potential for the off-duty officer to be misidentified by other peace officers or members of the public.

Officers should consider waiting for on-duty uniformed officers to arrive, and gather as much accurate intelligence as possible instead of immediately intervening.

### 387.4.1    INTERVENTION PROCEDURE
If involvement is reasonably necessary the officer should attempt to call or have someone else call 9-1-1 to request immediate assistance. The operator should be informed that an off-duty officer is on-scene and should be provided a description of the officer if possible.

Whenever practicable, the officer should loudly and repeatedly identify him/herself as an police officer until acknowledged. Official identification should also be displayed.

### 387.4.2    INCIDENTS OF PERSONAL INTEREST
Officers should refrain from handling incidents of personal interest, (e.g., family or neighbor disputes) and should remain neutral. In such circumstances officers should call the responsible agency to handle the matter.

### 387.4.3    NON-SWORN RESPONSIBILITIES
Non-sworn personnel should not become involved in any law enforcement actions while off-duty except to notify the local law enforcement authority and remain at the scene, if safe and practicable.

### 387.4.4    OTHER CONSIDERATIONS
When encountering a non-uniformed officer in public, uniformed officers should wait for acknowledgment by the non-uniformed officer in case he/she needs to maintain an undercover capability.

### 387.5    REPORTING
Any off-duty officer who engages in any law enforcement activity, regardless of jurisdiction, shall notify the Watch Commander as soon as practicable. The Watch Commander shall determine whether a report should be filed by the employee.

Officers should cooperate fully with the agency having jurisdiction in providing statements or reports as requested or as appropriate.

___

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000223

**Exhibit 1**
**Page 213 of 550**



Policy
**388**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Rape Aggression Defense (RAD) System Program

### 388.1  PURPOSE AND SCOPE
To establish policy, responsibilities, and procedures for implementing the Rape Aggression Defense System program (RAD).

RAD is a program of self-defense tactics and techniques for women. The RAD Systems is a comprehensive course that teaches situational awareness, personal safety and risk reduction. RAD is not a martial arts program.

RAD trained and certified officers and/or non-sworn University of Oregon Police Department (UOPD) staff teach a formal curriculum to female students in a classroom setting. The objective is to develop and enhance the self-defense skills for women within the campus community.

The RAD System is a copyright protected program. Any use of the RAD name, logo, curriculum and/or other copyrighted materials must be authorized by RAD.

### 388.2  SELECTION PROCESS
Instructors will be selected based on the following requirements:

    (a)   Desire to be an instructor.

    (b)   Excellent communication and organization skills.

    (c)   Demonstrated ability as a positive role model.

    (d)   Satisfactory or above rating on the most recent annual performance evaluation.

    (e)   Final approval by the Chief, Assistant Chief and Police Operations Captain.

    (f)   Ability to pass a criminal history check.

### 388.3  TRAINING
An officer or UOPD staff member selected as a RAD instructor shall successfully complete an approved Rape Aggression Defense Systems instructor course, prior to being assigned as a RAD instructor.

Instructor training will be coordinated through the Captain of Administration

### 388.4  RAD COORDINATOR
The RAD coordinator will be selected by the Chief or his/her designee. For all matters related to RAD, the RAD coordinator will report to and receive direction from the Police Operations Captain, or designee.

The responsibilities of the RAD coordinator include the following:

a. Scheduling of instructors for classes.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Rape Aggression Defense (RAD) System Program*

b. Coordinate with appropriate non-sworn agencies, departments and persons on issues affecting overall program goals and objectives.

c. Ensure criteria for instructor's certifications are met.

d. Maintain and update equipment and course as needed.

e. Monitor individual instructor performance.

f. Monitor overall program to ensure that it is within compliance with RAD standards.

g. Maintain liaison with RAD instructors of other agencies.

h. Coordinate with Office of Communications and the Office of Dean of Students to publicize upcoming course information.

**388.5  CLASS PRESENTATIONS**
The RAD course is designed to be delivered by a RAD certified instructor. In no event shall the program be delivered by a non-certified instructor.

Every attempt will be made to offer the class once a term. Scheduling is dependent upon campus interest and staff availability.

**388.6  RAD ADMINISTRATION**
Administrative and clerical duties associated with the RAD program will be completed with the assistance of the Division Commander - Administrative Services and his/her designee.

Duties of the Division Commander - Administrative Services include the following:

a. Manage funds/accounts generated by program or assigned to program.

b. Distributing funds as needed in compliance with grant or university/department rules and regulations.

c. Equipment replacement and procurement.

388.6.1  DOCUMENTATION
All documentation of the RAD program will be maintained by the Police Operations Captain or designee. Documentation may consist of the following:

a. Class rosters.

b. A class wait list.

c. List of certified instructors.

Police Operations personnel will assist in overseeing promotion efforts as needed, to ensure the longevity of the program. Promotion may include web site design and maintenance, promotional brochures, and advertising.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000225

Exhibit 1
Page 215 of 550

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

## *Rape Aggression Defense (RAD) System Program*

### 388.6.2   COMPENSATION

No additional compensation is available for this position. Classified employees may be eligible for overtime as per union contract.

### 388.6.3   MINIMUM COMMITMENT

A minimum of a three (3) year commitment with continuous satisfactory annual performance evaluations. Additional tenure is subject to approval by the Chief or his/her designee.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000226

**Exhibit 1**
**Page 216 of 550**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Chapter 4 - Patrol Operations

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department
Patrol Operations - 217

UO_Alvarez000227
**Exhibit 1**
**Page 217 of 550**



Policy
**400**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Patrol Function

### 400.1  PURPOSE AND SCOPE
The purpose of this policy is to define the functions of the patrol unit of the Department to ensure intra-department cooperation and information sharing.

### 400.1.1  FUNCTION
Officers will generally patrol in clearly marked vehicles, patrol assigned jurisdictional areas of University of Oregon Police Department, respond to citizen calls for assistance, act as a deterrent to crime, enforce local ordinances as well as state laws, and respond to emergencies 24 hours per day seven days per week.

Patrol Supervisors and Executive Coordinators are expected to ensure adequate staffing and use various sources of information (crime analysis, criminal intelligence, calls-for-service, traffic accident reports, officer and public observations) in order to determine campus community needs, and communicate with patrol officers and communications officers to maximize problem solving.

Patrol will generally provide the following services within the limits of available resources:

    (a)    Patrol that is directed at the prevention of criminal acts, traffic violations and collisions, the maintenance of public order, and the discovery of hazardous situations or conditions

            1.    Strategies include, but are not limited to:

                    (a)    Fixed Beat - officers are responsible for the entire range of law enforcement activity in a set geographical area

                    (b)    Focused Beat - focused beats are generally designed around a smaller area where similar problems need to be addressed and are assigned by the Executive Coordinator

                    (c)    Special Assignment - a directed patrol to address a specific problem. Generally, officers on Special Assignment are not dispatched to calls for service, except where imminent life or property safety are jeopardized

    (b)    Crime prevention activities such as residential inspections, business inspections, community presentations, etc.

    (c)    Calls for service, both routine and emergency in nature

    (d)    Investigation of criminal acts

    (e)    Investigation of situations that indicate a threat to public safety, health and welfare

    (f)    The apprehension of criminal offenders

    (g)    Community Oriented Policing and Problem Oriented Policing activities such as citizen assists and individual citizen contacts of a positive nature

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000228

**Exhibit 1**
**Page 218 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Patrol Function*

(h)   The sharing of information between the Patrol and other divisions within the Department, as well as other outside governmental agencies

(i)   The application of resources to specific problems or situations within the community, which may be improved or resolved by Community Oriented Policing and Problem Oriented Policing strategies

(j)   Traffic direction and control

400.1.2  TERRORISM
It is the goal of the University of Oregon Police Department to make every reasonable effort to accurately and appropriately gather and report any information that may relate to either foreign or domestic terrorism. Officers should advise a supervisor as soon as practicable of any activity believed to be terrorism related and should document such incidents with a written report or Field Interview (FI). The supervisor should ensure that all terrorism related reports and FIs are forwarded to the Investigations Sergeant and Crime Analyst in a timely fashion.

**400.2  PATROL INFORMATION SHARING PROCEDURES**
The following guidelines are intended to develop and maintain intra-department cooperation and information flow between the various divisions of the University of Oregon Police Department.

400.2.1  CRIME ANALYSIS UNIT
The Crime Analysis Unit (CAU) will be the central unit for information exchange. Criminal information and intelligence reports can be distributed to all divisions within the Department through daily and special bulletins.

400.2.2  CRIME REPORTS
A crime report may be completed by any patrol officer who receives criminal information. The report will be processed and forwarded to the appropriate division for retention or follow-up investigation.

400.2.3  PATROL BRIEFINGS
Patrol supervisors, detective sergeants, and special unit sergeants are encouraged to share information as much as possible. All supervisors and/or officers will be provided an opportunity to share information at the daily patrol briefings as time permits.

400.2.4  BRIEFING INFORMATION
Patrol briefing information will be kept in the briefing room and will include crime bulletins, patrol checks, logs, memos and directives that may be reviewed by all Department employees. The Crime Analyst and Investigations Sergeant will supply specific bulletins for briefing, including intelligence reports and photographs. Copies of Department Directives will be included in briefing information.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000229
**Exhibit 1**
**Page 219 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Patrol Function*

### 400.3   CROWDS, EVENTS AND GATHERINGS
Officers may encounter gatherings of people, including but not limited to, civic, social and business events, public displays, parades and sporting events. Officers should monitor such events as time permits in an effort to keep the peace and protect the safety and rights of those present. A patrol supervisor should be notified when it becomes reasonably foreseeable that such an event may require increased monitoring, contact or intervention.

Officers responding to an event or gathering that warrants law enforcement involvement should carefully balance the speech and association rights of those present with applicable public safety concerns before taking enforcement action. Officers are encouraged to contact organizers or responsible persons to seek voluntary compliance that may address relevant public safety/order concerns.

Officers should consider enforcement of applicable state and local laws, when the activity blocks the entrance or egress of a facility or location and when voluntary compliance with the law is not achieved.

See also Policy 357 - Civil Disturbances and Demonstrations

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department



**Policy**
**402**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Racial- or Bias-Based Profiling

### 402.1  PURPOSE AND SCOPE
This policy provides guidance to department members and establishes appropriate controls to ensure that employees of the University of Oregon Police Department do not engage in racial- or bias-based profiling or violate any related laws while serving the community.

#### 402.1.1  DEFINITIONS
Definitions related to this policy include:

**Racial or bias-based profiling** - An inappropriate reliance on factors such as race, ethnicity, color, national origin, language, religion, sex, sexual orientation, gender identity, economic status, homelessness, age, cultural group, disability political affiliation or affiliation with any other similar identifiable group as a factor in deciding whether to take law enforcement action or to provide service (2015 Oregon Laws c 681 § 2).

### 402.2  POLICY
The University of Oregon Police Department is committed to providing law enforcement services to the community with due regard for the racial, cultural or other differences of those served. It is the policy of this department to provide law enforcement services and to enforce the law equally, fairly and without discrimination toward any individual or group.

Race, color, ethnicity or nationality, religion, sex, sexual orientation, gender identity, economic status, homelessness, age, cultural group, disability, political affiliation or affiliation with any other similar identifiable group shall not be used as the basis for providing differing levels of law enforcement service or the enforcement of the law.

### 402.3  RACIAL OR BIAS-BASED PROFILING PROHIBITED
Racial or bias-based profiling is strictly prohibited. However, nothing in this policy is intended to prohibit an officer from considering factors such as race or ethnicity in combination with other legitimate factors to establish reasonable suspicion or probable cause (e.g., suspect description is limited to a specific race or group).

### 402.4  MEMBER RESPONSIBILITY
Every member of this department shall perform his/her duties in a fair and objective manner and is responsible for promptly reporting any known instances of racial or bias-based profiling to a supervisor.

#### 402.4.1  REASON FOR DETENTION
Officers detaining a person shall be prepared to articulate sufficient reasonable suspicion to justify a detention, independent of the individual's membership in a protected class.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000231

**Exhibit 1**
**Page 221 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Racial- or Bias-Based Profiling*

To the extent that written documentation would otherwise be completed (e.g., arrest report, Field Interview (FI) card), the involved officer should include those facts giving rise to the officer's reasonable suspicion or probable cause for the detention, as applicable.

Nothing in this policy shall require any officer to document a contact that would not otherwise require reporting.

## 402.5   SUPERVISOR RESPONSIBILITY
Supervisors shall monitor those individuals under their command for any behavior that may conflict with the purpose of this policy and shall handle any alleged or observed violation of this policy in accordance with the Personnel Complaints Policy.

(a)   Supervisors should discuss any issues with the involved officer and his/her supervisor in a timely manner.

(b)   Supervisors should periodically review MAV recordings, MDT data and any other available resource used to document contact between officers and the public to ensure compliance with this policy.

1.   Supervisors should document these periodic reviews.

2.   Recordings that capture a potential instance of racial- or bias-based profiling should be appropriately retained for administrative investigation purposes.

(c)   Supervisors shall initiate investigations of any actual or alleged violations of this policy.

(d)   Supervisors should ensure that no retaliatory action is taken against any member of this department who discloses information concerning racial- or bias-based profiling.

## 402.6   ADMINISTRATION
The University of Oregon Police Department will investigate all complaints of alleged biased policing or profiling complaints against its members. Upon receipt of a complaint, the Office of Affirmative Action and Equal Opportunity and the Bias Response Team will be notified. Employees found to be in violation of this policy are subject to discipline in accordance with this department's disciplinary policy.

## 402.7   TRAINING
Training on racial or bias-based profiling and review of this policy should be conducted as directed by the Captain of Administration.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000232

Exhibit 1
Page 222 of 550



**Policy**
**404**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Briefing Training

## 404.1  PURPOSE AND SCOPE

Briefing training is generally conducted before a patrol officer's assigned shift. Briefing training provides an opportunity for important exchange between employees and supervisors. A supervisor generally conducts Briefing training; however officers may conduct Briefing for training purposes with supervisor approval.

Briefing should accomplish, at a minimum, the following basic tasks:

(a)  Briefing officers with information regarding daily patrol activity, with particular attention given to unusual situations and changes in the status of wanted persons, stolen vehicles, and major investigations

(b)  Notifying officers of changes in schedules and assignments

(c)  Notifying officers of new Special Order or changes in Special Order

(d)  Reviewing recent incidents for training purposes

(e)  Providing training on a variety of subjects

## 404.2  PREPARATION OF MATERIALS

The supervisor conducting Briefing training is responsible for preparation of the materials necessary for a constructive briefing. Supervisors may delegate this responsibility to a subordinate officer in his or her absence or for training purposes.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000233

**Exhibit 1**
**Page 223 of 550**



**Policy**
**406**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Crime and Disaster Scene Integrity

### 406.1  PURPOSE AND SCOPE
The protection and integrity of a crime scene is of the utmost importance for the successful apprehension of criminals and successful prosecution. The integrity of a disaster scene is equally as critical for the protection of life and property and investigation by proper authorities.

### 406.2  CRIME SCENE RESPONSIBILITY
The first officer at the scene of a crime or major incident generally is responsible for the preservation of the scene. Officers shall also consider officer safety and public safety issues, including rendering medical aid to any injured parties. Once an officer has assumed or been assigned to maintain the integrity of the crime/disaster scene the officer shall continue until relieved by a supervisor.

#### 406.2.1  FIRST RESPONDER CONSIDERATIONS
The following list generally describes the first responder's function at a crime or disaster scene. This list is not intended to be all-inclusive, is not necessarily in order and may be altered according to the demands of each situation:

(a)  Ensure that no suspects are still within the area.

(b)  Broadcast emergency information, including all requests for additional assistance.

(c)  Provide first aid to injured parties if it can be done safely.

(d)  Secure the inner perimeter with crime scene tape.

(e)  Protect items of apparent evidentiary value.

(f)  Start a chronological log, noting critical times and personnel allowed access.

#### 406.2.2  MEDIA ACCESS
Media shall be provided access to scenes of disasters, criminal investigations, emergencies and other law enforcement activities within the provisions set forth in Policy 346.

#### 406.2.3  EXECUTION OF HEALTH ORDERS
Any sworn member of this department is authorized to execute and enforce lawful orders of the local health officer issued for the purpose of preventing the spread of any contagious, infectious or communicable disease.

### 406.3  SEARCHES AT CRIME OR DISASTER SCENES
Officers arriving at crime or disaster scenes are often faced with the immediate need to search for and render aid to victims and determine if suspects are present and continue to pose a threat. Once officers are satisfied that no additional suspects are present and/or there are no injured persons to be treated, those exigent circumstances will likely no longer exist. Officers should thereafter secure the scene and conduct no further search until proper authority for the search is obtained.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000234

**Exhibit 1**
**Page 224 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Crime and Disaster Scene Integrity*

### 406.3.1   AUTHORITY TO SEARCH
In order to search, officers must have probable cause to believe that a crime has occurred and evidence of the crime will be found at the location. Absent consent, a search warrant is generally required to authorize continued search once a scene is stabilized.

### 406.3.2   CONSENT
Any person who has an expectation of privacy has standing to object to a search. That may include anyone with a property interest in the location, as well as any resident, tenant, or guest, depending on the circumstances. It may not be possible to identify everyone with standing to object, and from whom consent must be obtained, at the early stages of the investigation. Officers should obtain consent to search from authorized individuals where possible, but should also consider obtaining consent and a search warrant in the case of serious crimes or major investigations.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department



**Policy
410**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Ride-Along Policy

### 410.1  PURPOSE AND SCOPE
The Ride-Along Program provides an opportunity for persons to experience the law enforcement function first hand. This policy provides the requirements, approval process, and hours of operation for the Ride-Along Program.

This policy does not apply to full time UOPD employees who schedule or are assigned to a ride-along for on-going training purposes. The employee's supervisor, or assigned training officer, will approve and facilitate the ride-along with Patrol team supervisors and/or the Executive Coordinator. The ride-along will occur while on-duty.

This policy does not apply to on-duty Police Officers from other jurisdictions who are accompanying a UOPD officer.

### 410.1.1  ELIGIBILITY
The UOPD Ride-Along Program is offered to residents, students, applicants with UOPD, police officers of other agencies and those employed within the University. Every attempt will be made to accommodate interested persons however any applicant may be disqualified without cause.

Factors that may be considered in disqualifying an applicant include, but are not limited to, the following:

- Being under the age of 18-years, unless specifically authorized by the Chief of Police
- Prior criminal history and probation/parole status (persons on active probation or parole, or persons who have been convicted of a felony crime are not eligible for ride-along)
- Pending criminal action
- Pending lawsuit against the Department
- Denial by any supervisor
- Evidence of alcohol or drug use

### 410.1.2  AVAILABILITY
The Ride-Along Program is available on most days of the week, with certain exceptions established by Operations staff. The ride-along times are normally up to 4 hour blocks. Exceptions to this schedule may be made as approved by the Executive Coordinator.

### 410.1.3  PERSONS WITH DISABILITIES
UOPD will attempt to make reasonable accommodation for a person with a disability who is requesting to ride, taking into consideration such factors as the person's abilities, the potential impact on the safety of the officer and the person requesting to ride, and any adverse impact on the ability of the officer to perform the duties which s/he is expected to perform.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000236

**Exhibit 1
Page 226 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Ride-Along Policy*

**410.2  PROCEDURE TO REQUEST A RIDE-ALONG**
Ride-alongs will be scheduled by the Program Coordinator in cooperation with the Executive Coordinator. The Executive Coordinator has the final authority to decide whether a person will ride, and may allow short notice ride-alongs.

The Program Coordinator and Executive Coordinator will consider special requests for specific officers, specific shifts, or officer gender. Operational concerns will take precedence over requests. Absent special requests, female riders will be assigned to female officers when practical and when operational concerns allow.

The Program Coordinator will maintain all records of the program until a ride is completed. Archived files will be the responsibility of the Manager of Police Communications and Records.

- The program records contain sensitive information and therefore any paper or computer files will be maintained in a secure manner.

The participant will complete a ride-along Release and Agreement of Indemnification form.

- If the participant is under 18-years of age, a parent/guardian must authorize the participation.

- A new Indemnification form will be filled out for each ride-along.

- The form will be routed to the Records Section who will conduct the rider's criminal history and verify the date and time run.

- The form will be routed back to the Program Coordinator for determination of the rider's eligibility.

UOPD training ride-alongs will take precedence over other ride-alongs, but a previously scheduled ride-along will not be cancelled to accommodate a training request.

If the ride-along request is denied the Program Coordinator will contact the applicant and advise him/her of the denial.

410.2.1  PROGRAM LIMITATIONS AND REQUIREMENTS
Persons will be allowed to ride no more than once every 6 months. An exception would apply to the following: Cadets, Chaplains, Reserves, police applicants, and others with approval of the Executive Coordinator.

An effort will be made to ensure that no more than one person will participate in a ride-along during any given time period. Normally, no more than one participant will be allowed in the officer's vehicle at a given time.

Relatives/friends of officers may ride-along, subject to supervisory approval, no more than once every 6 months.

Applicants to UOPD may ride once during each shift per application period.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000237

**Exhibit 1**
**Page 227 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Ride-Along Policy*

### 410.2.2   SUITABLE ATTIRE
Any person approved to ride along must wear clean and neat clothing. No unsafe or inappropriate clothing will be allowed (for example, open-toed shoes, offensive logos or torn clothing).

The rider will wear an "Observer" tag on their outer clothing, in a conspicuous location.

### 410.2.3   PEACE OFFICER RIDE-ALONGS
Off-duty UOPD officers may not ride off-duty as that is considered a violation of the Fair Labor and Standards Act (FLSA).

Off-duty members of other law enforcement agency may participate in the ride-along program.

- The off-duty officer must be in good standing with their agency and may not be on discipline-related Administrative Leave.
- The off-duty officer shall not represent themselves as a peace officer or participate in any law enforcement activity, except as emergency circumstances may require.

### 410.2.4   RIDE-ALONG CRIMINAL HISTORY CHECK AND RECORDS
All Ride-along applicants are subject to a criminal history check. The criminal history check will include a local records check, and inquiries to the Oregon Law Enforcement Data System (LEDS), the National Crime Information Center (NCIC), Computerized Criminal History (CCH), and Department of Motor Vehicles (DMV). The printed inquiry responses will be attached to the form and forwarded to the Program Coordinator for approval or disapproval.

Upon completion of the ride-along, the Ride-Along Evaluation Form and the Release and Agreement of Indemnification Form will be forwarded to the Manager of Police Communications and Records for archiving. Criminal History printouts will be destroyed consistent with LEDS requirements.

### 410.3   OFFICER'S RESPONSIBILITY
The officer shall advise the dispatcher that a rider is present in the vehicle as soon as possible, and supply the dispatcher with the rider's identity, in case of emergency. The officer shall notify the dispatcher when the ride is terminated.

Officers shall consider the safety of the rider at all times.

Officers should use discretion when encountering a potentially dangerous situation, and if feasible, let the rider out of the vehicle in a well-lit and safe place. The dispatcher will be advised of the situation and as soon as practical have another police unit respond to pick up the rider at that location. The ride-along may be continued or terminated at this time.

Officers will notify their supervisor of any injury, complaint of injury or property damage to or by the rider.

Upon completion of the ride-along, the officer shall complete the Ride-Along Evaluation Form with any comments or concerns turn the form in to the Executive Coordinator. The Executive

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000238

**Exhibit 1**
**Page 228 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Ride-Along Policy*

Coordinator will review, approve and forward the form to the Manager of Police Communications and Records.

## 410.4   CONTROL OF RIDE-ALONG
The assigned employee shall maintain control over the ride-along at all times and instruct the rider in the conditions that limit participation. These instructions should include:

    (a)   The rider will follow the directions of the officer.

    (b)   The rider will not be allowed to attend briefings, unless they are an employee of UOPD or a police officer from another jurisdiction.

        1.   Riders who are not employees of UOPD or police officers are not permitted access to sensitive law enforcement records, such as LEDS/AIRS/DMV returns, so reasonable efforts will be made to prevent them from viewing such information (for example, on an MDT).

    (c)   The rider will not become involved in any enforcement activity, investigation (including accessing crime scenes of serious crimes), handling of evidence, discussions with victims or suspects, or handling any police equipment.

    (d)   The rider is prohibited from taking photographs, or recordings, at any time without permission.

    (e)   The rider may terminate the ride at any time.

    (f)   The officer may return the rider to the station if the rider interferes with the performance of the officer's duties.

    (g)   The rider may be allowed to continue riding during the transportation and booking process provided this does not jeopardize the rider's safety.

    (h)   Officers will not allow any rider to be present in any situations that would jeopardize the rider's safety or cause undue stress or embarrassment to any person.

    (i)   Under no circumstance shall a non-sworn rider be permitted to enter a private residence with an officer without the expressed consent of the resident or other authorized person.

    (j)   The rider will not be allowed to operate a patrol vehicle or any other UOPD equipment.

    (k)   The rider will not approach any vehicle on a traffic stop, or enter other property where the occupant may have a privacy interest without permission from the occupant.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000239

**Exhibit 1**
**Page 229 of 550**



**Policy**
**412**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Hazardous Material Response

## 412.1  PURPOSE AND SCOPE
Hazardous materials present a potential harm to employees resulting from their exposure. The following is to be the policy of this department.

### 412.1.1  HAZARDOUS MATERIAL DEFINED
A hazardous material is a substance which by its nature, containment and reactivity, has the capability of inflicting harm during exposure; characterized as being toxic, corrosive, flammable, reactive, an irritant or strong sensitizer and thereby posing a threat to health when improperly managed. See Oregon Revised Statutes 453.005(7) for a complete list.

## 412.2  HAZARDOUS MATERIAL RESPONSE
Initial approach to any known or suspected hazardous material incident should be done with extreme caution so that responders are not adversely affected by the hazardous material, thereby negating their effectiveness in protecting the public safety. Strict adherence to training, safety precautions and protective equipment usage is paramount.

### 412.2.1  UNIVERSITY PROPERTY
Employees may encounter situations involving suspected hazardous materials, such as containers at Campus Operations, reports of laboratory spills or materials near a garbage enclosure. When employees come into contact with a suspected hazardous material, certain steps should be taken to protect themselves and the campus community. The following steps should be considered at any scene involving suspected hazardous materials:

(a)  Attempt to identify type of hazardous substance. (Identification can be determined by looking at lab door signs, asking employees, looking at container labels).

(b)  Notify UO-EHS Duty Manager.

(c)  Provide first-aid for injured parties if it can be done safely and without contamination; contact EFD for medical response if necessary.

(d)  Begin evacuation of immediate and surrounding areas depending upon extent of hazard.

### 412.2.2  PUBLIC WAYS AND TRANSPORTATION
The following steps should be considered at any scene involving suspected hazardous materials on public ways or involving public transportation:

(a)  Attempt to identify type of hazardous substance. (Identification can be determined by placard, driver's manifest or statements from person transporting).

(b)  Notify Fire Department.

(c)  Provide first-aid for injured parties if it can be done safely and without contamination.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000240

**Exhibit 1**
**Page 230 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Hazardous Material Response*

    (d)   Begin evacuation of immediate area and surrounding areas dependent on substance.

    (e)   Notify Environmental Health and Safety Duty Manager if university property or personnel are involved.

## 412.3  REPORTING EXPOSURE(S)

Department personnel who believe that they have been exposed to a hazardous material shall immediately report the exposure to a supervisor. Each exposure shall be documented by the employee through their supervisor on a Supervisors Accident Investigation Report that shall be forwarded via chain of command to the Division Commander.

Injury or illness caused or believed to be caused from exposure to hazardous materials shall be reported the same as any other on-duty injury or illness in addition to a crime report or incident report.

### 412.3.1  SUPERVISOR RESPONSIBILITY

When a supervisor has been informed that an employee has been exposed to a hazardous material, he/she shall ensure that appropriate action is taken to lessen the exposure and, if necessary, obtain immediate medical treatment.

- In situations where exposure is minimal (for example, an employee enters a spill area and only smells the chemical at a distance) getting immediate medical treatment is unwarranted.

  o   In such situations, consult with the Environmental Health and Safety Duty Manager

  o   Always err on the side of medical treatment if there is doubt or the level of exposure is unknown

To ensure the safety of employees, safety equipment is available through supervisory personnel. Safety items not maintained by the Department will be obtained through UO-EHS.

The employee or employees supervisor if the employee is unable, will complete a Workers Compensation form if medical treatment is sought, or if work time is lost (Oregon Revised Statutes 656.265). If an injury is not apparent but exposure to a hazardous substance is possible, the employee will complete a Supervisor's Accident Investigation Report (SAIR) indicating the circumstances of the event and the potential of an exposure.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000241

**Exhibit 1**
**Page 231 of 550**



**Policy**
**414**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Hostage and Barricade Incidents

### 414.1  PURPOSE AND SCOPE
The purpose of this policy is to provide guidelines for situations where officers have legal cause to contact, detain or arrest a person, and the person refuses to submit to the lawful requests of the officers by remaining in a structure or vehicle and/or by taking a hostage.

The scope of this policy is not intended to address all variables that officers encounter during their initial response or when a hostage or barricade situation has developed. This policy does not require or purport to recommend specific strategies or tactics for resolution as each incident is a dynamic and rapidly evolving event.

#### 414.1.1  DEFINITIONS
Definitions related to this policy include:

**Barricade situation** - An incident where a person maintains a position of cover or concealment and ignores or resists law enforcement personnel, and it is reasonable to believe the subject is armed with a dangerous or deadly weapon.

**Hostage situation** - An incident where it is reasonable to believe a person is unlawfully held by a hostage-taker as security so that specified terms or conditions will be met.

### 414.2  POLICY
It is the policy of the University of Oregon Police Department to address hostage and barricade situations with due regard for the preservation of life and balancing the risk of injury, while obtaining the safe release of hostages, apprehending offenders and securing available evidence.

### 414.3  COMMUNICATION
When circumstances permit, initial responding officers should try to establish and maintain lines of communication with a barricaded person or hostage-taker. Officers should attempt to identify any additional subjects, inquire about victims and injuries, seek the release of hostages, gather intelligence information, identify time-sensitive demands or conditions and obtain the suspect's surrender.

When available, department-authorized negotiators should respond to the scene as soon as practicable and assume communication responsibilities. Negotiators are permitted to exercise flexibility in each situation based upon their training, the circumstances presented, suspect actions or demands and the available resources.

#### 414.3.1  EMERGENCY COMMUNICATIONS
A supervisor who has probable cause to believe that a hostage is being held may order a telephone company to cut, reroute or divert telephone lines to prevent a suspect from communicating with anyone other than officers or other designated individuals (ORS 165.549).

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000242

**Exhibit 1**
**Page 232 of 550**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Hostage and Barricade Incidents*

414.3.2   FIRST RESPONDER RESPONSBILITY
Until the Incident Commander has been designated, the first officer on the scene of an actual or potential hostage/barricade situation should consider addressing the following as time and resources permit:

(a) Attempt to avoid confrontation in favor of controlling and containing the situation until the arrival of trained personnel and/or trained hostage negotiation personnel

(b) Notification of tactical and hostage negotiation personnel

(c) Notification of appropriate persons within and outside the agency, such as command officers

(d) Establishment of inner and outer perimeters

(e) Evacuation of bystanders and injured persons

(f) Establishment of central command post and appropriate chain of command

(g) Request for ambulance, rescue, and fire

414.3.3   INCIDENT COMMANDER
As the Incident Commander role is filled, unfinished responsibilities of the First Responder will transfer to the Incident Commander. In addition, the following resonsibilities are added, and should not be assumed by the first responding officer(s).

    (a)    Ensure that Departmental notifications are made (see Major Incident Notifications Policy)

    (b)    Notification of tactical and hostage negotiation personnel

(b) Notification of appropriate additional resources such as K-9 units, Air units, mutual aid, or investigative agency representatives

(c) Request additional technical resources such as surveillance equipment necessary to view the scene adequately to support operations

(d) Establish surveillance and pursuit units and control travel routes

(e) Establish a media collection point, often in conjunction with the PIO, in order to avoid media tendencies to encroach on the scene

### 414.4   FIRST RESPONDER CONSIDERATIONS
First responding officers should promptly and carefully evaluate all available information to determine whether an incident involves, or may later develop into, a hostage or barricade situation.

The first responding officer should immediately request a supervisor's response as soon as it is determined that a hostage or barricade situation exists. The first responding officer shall assume the duties of the supervisor until relieved by a supervisor or a more qualified responder. The officer shall continually evaluate the situation, including the level of risk to officers, to the persons involved and to bystanders, and the resources currently available.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000243

**Exhibit 1**
**Page 233 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Hostage and Barricade Incidents*

The handling officer should brief the arriving supervisor of the incident, including information about suspects and victims, the extent of any injuries, additional resources or equipment that may be needed, and current perimeters and evacuation areas.

### 414.4.1  BARRICADE SITUATION

Unless circumstances require otherwise, officers handling a barricade situation should attempt to avoid a forceful confrontation in favor of stabilizing the incident by establishing and maintaining lines of communication while awaiting the arrival of specialized personnel and trained negotiators. During the interim the following options, while not all-inclusive or in any particular order, should be considered:

(a)   Ensure injured persons are evacuated from the immediate threat area if it is reasonably safe to do so. Request medical assistance.

(b)   Assign personnel to a contact team to control the subject should he/she attempt to exit the building, structure or vehicle, and attack, use deadly force, attempt to escape or surrender prior to additional resources arriving.

(c)   Request additional personnel, resources and equipment as needed (e.g., canine team, air support).

(d)   Provide responding emergency personnel with a safe arrival route to the location.

(e)   Evacuate non-injured persons in the immediate threat area if it is reasonably safe to do so.

(f)   Attempt or obtain a line of communication and gather as much information on the subject as possible, including weapons, other involved parties, additional hazards or injuries.

(g)   Establish an inner and outer perimeter as circumstances require and resources permit to prevent unauthorized access.

(h)   Evacuate bystanders, residents and businesses within the inner and then outer perimeter as appropriate. Check for injuries, the presence of other involved subjects, witnesses, evidence or additional information.

(i)   Determine the need for and notify the appropriate persons within and outside the Department, such as command officers and the Public Information Officer.

(j)   If necessary and available, establish a tactical or exclusive radio frequency for the incident.

(k)   Establish a command post.

### 414.4.2  HOSTAGE SITUATION

Officers presented with a hostage situation should attempt to avoid a forceful confrontation in favor of controlling the incident in anticipation of the arrival of specialized personnel and trained hostage negotiators. However, it is understood that hostage situations are dynamic and can require that

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Hostage and Barricade Incidents*

officers react quickly to developing or changing threats. The following options while not all-inclusive or in any particular order, should be considered:

    (a)    Ensure injured persons are evacuated from the immediate threat area if it is reasonably safe to do so. Request medical assistance.

    (b)    Assign personnel to a contact team to control the subject should he/she attempt to exit the building, structure or vehicle, and attack, use deadly force, attempt to escape or surrender prior to additional resources arriving.

    (c)    Establish a rapid response team in the event it becomes necessary to rapidly enter a building, structure or vehicle, such as when the suspect is using deadly force against any hostages (see the Rapid Response and Deployment Policy).

    (d)    Assist hostages or potential hostages to escape if it is reasonably safe to do so. Hostages should be kept separated if practicable pending further interview.

    (e)    Request additional personnel, resources and equipment as needed (e.g., canine team, air support).

    (f)    Provide responding emergency personnel with a safe arrival route to the location.

    (g)    Evacuate non-injured persons in the immediate threat area if it is reasonably safe to do so.

    (h)    Coordinate pursuit or surveillance vehicles and control of travel routes.

    (i)    Attempt or obtain a line of communication and gather as much information about the suspect as possible, including any weapons, victims and their injuries, additional hazards, other involved parties and any other relevant intelligence information.

    (j)    Establish an inner and outer perimeter as resources and circumstances permit to prevent unauthorized access.

    (k)    Evacuate bystanders, residents and businesses within the inner and then outer perimeter as appropriate. Check for injuries, the presence of other involved subjects, witnesses, evidence or additional information.

    (l)    Determine the need for and notify the appropriate persons within and outside the Department, such as command officers and the Public Information Officer.

    (m)    If necessary and available, establish a tactical or exclusive radio frequency for the incident.

## 414.5  SUPERVISOR RESPONSIBILITIES
Upon being notified that a hostage or barricade situation exists, the supervisor should immediately respond to the scene, assess the risk level of the situation, establish a proper chain of command and assume the role of Incident Commander until properly relieved. This includes requesting a SWAT team response if appropriate and apprising the SWAT Commander of the circumstances. In addition, the following options, listed here in no particular order, should be considered:

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000245

**Exhibit 1**
**Page 235 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Hostage and Barricade Incidents*

(a)    Ensure injured persons are evacuated and treated by medical personnel.

(b)    Ensure the completion of necessary first responder responsibilities or assignments.

(c)    Request crisis negotiators, specialized units, additional personnel, resources or equipment as appropriate.

(d)    Establish a command post location as resources and circumstances permit.

(e)    Designate assistants who can help with intelligence information and documentation of the incident.

(f)    If it is practicable to do so, arrange for video documentation of the operation.

(g)    Consider contacting utility and communication providers when restricting such services (e.g., restricting electric power, gas, telephone service).

(h)    Ensure adequate law enforcement coverage for the remainder of the University during the incident. The supervisor should direct non-essential personnel away from the scene unless they have been summoned by the supervisor or Communications and Emergency Response Center.

(i)    Identify a media staging area outside the outer perimeter and have the department Public Information Officer or a designated temporary media representative provide media access in accordance with the News Media Relations Policy.

(j)    Identify the need for mutual aid and the transition or relief of personnel for incidents of extended duration.

(k)    Debrief personnel and review documentation as appropriate.

## 414.6   CRISIS RESPONSE UNIT RESPONSIBILITIES

It will be the Chief's decision, with input from the Incident Commander and SWAT Commander, whether to deploy the SWAT during a hostage or barricade situation. Once the Chief authorizes deployment, the SWAT Commander or the authorized designee will be responsible for the tactical portion of the operation. The Incident Commander shall continue supervision of the command post operation, outer perimeter security and evacuation, media access and support for the SWAT. The Incident Commander and the SWAT Commander or the authorized designee shall maintain communications at all times.

## 414.7   REPORTING

Unless otherwise relieved by a supervisor or Incident Commander, the handling officer at the scene is responsible for completion and/or coordination of incident reports.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000246

**Exhibit 1**
**Page 236 of 550**



**Policy**
**416**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Response to Bomb Calls

### 416.1  PURPOSE AND SCOPE
These guidelines have been prepared to assist officers in their initial response to incidents involving explosives, explosive devices, or explosion/bombing incidents. Under no circumstances should these guidelines be interpreted as compromising the safety of first responders or the public. When confronted with an incident involving explosives, safety shall always be the primary consideration.

### 416.2  FOUND EXPLOSIVES/SUSPECT DEVICES
When handling an incident involving a suspected explosive device, the following guidelines should be followed:

(a) No known or suspected explosive item should be considered safe regardless of its size or apparent packaging. The EPD Explosive Disposal Unit (EDU) should be summoned for assistance. If EDU deems it necessary, they will call on a military explosive ordinance unit.

(b) A minimum perimeter of 300 feet should be established around the location of the device. An access point should be provided for support personnel.

(c) If the device is contained in a vehicle, a minimum perimeter of 1000 feet should be established around the vehicle. Modifications of this perimeter may be made based upon geography, buildings or other features. However, in these situations, the minimum of 300 feet will be maintained.

(d) As much information as is available should be promptly relayed to the Executive Coordinator including:

1. The stated threat.

2. Exact comments.

3. Time of discovery.

4. Exact location of the device.

5. Full description (e.g., size, shape, markings, construction) of the device.

(e) The device should not be touched or moved except by qualified EDU personnel.

(f) Radios (mobile or portable) should be left on for monitoring of information and instructions, however, no transmissions should be made within the safety perimeter of a suspected device or without adequate cover.

(g) In establishing the perimeter and staging of responding personnel, consider the likelihood of secondary devices.

(h) Explosive or military ordnance of any type should be handled only by the EDU or military ordnance disposal team.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000247

**Exhibit 1**
**Page 237 of 550**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Response to Bomb Calls*

**416.3  EXPLOSION/BOMBING INCIDENTS**

When an explosion has occurred, there are multitudes of considerations which may confront the responding officers. As in other catastrophic incidents, a rapid response may help to minimize injury to victims, contamination of the scene by gathering crowds or additional damage by resulting fires or unstable structures. Whether the explosion was the result of an accident or a criminal act, the responding officers should consider the following actions:

- Assess the scope of the incident, including the number of victims and extent of injuries.

- Assist with first aid (Fire Department has primary responsibility).

- Assist with evacuation of victims (Fire Department has primary responsibility).

- Identify and take appropriate actions to mitigate scene hazards such as collapsed structures, blood borne pathogens, hazardous materials and secondary explosive devices.

- Request additional resources as needed.

- Identify witnesses.

- Preserve evidence.

416.3.1  NOTIFICATIONS

When an explosion has occurred, the following people or agencies shall be notified as soon as practicable if their assistance is needed:

(a)  Fire Department

(b)  Emergency Medical assistance

(c)  Explosive Disposal Unit

(d)  Additional officers

(e)  Field supervisor

(f)  Watch Commander

(g)  Detectives

(h)  Forensic Science Services

(i)  UO-Incident Management Team (UO-IMT) via UO-Internal Incident Notification (UO-IIN) protocols

416.3.2  CROWD CONTROL

Only authorized personnel with a legitimate need shall be permitted access to the scene. Spectators and other unauthorized individuals shall be excluded to a safe distance as is reasonably practicable given the available resources and personnel.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000248

**Exhibit 1**
**Page 238 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Response to Bomb Calls*

---

### 416.3.3   SCENE OF INCIDENT

As in any other crime scene, steps should immediately be taken to preserve the scene. The scene could extend over a long distance. Evidence may be imbedded in nearby structures or hanging in trees and bushes.

### 416.4   BOMB THREATS RECEIVED AT POLICE FACILITY

This procedure shall be followed should a bomb threat call be received at the police facility.

If the bomb threat was received in another manner, attempt to obtain as much information listed below as possible from the person who talked with the threat caller.

### 416.4.1   BOMB THREATS RECEIVED BY TELEPHONE

Utilize a Bomb Threat Checklist if one is available. The following questions should be asked if a bomb threat call is received at the Police Department:

- When is the bomb going to explode?
- Where is the bomb?
- What kind of bomb is it?
- What does it look like?
- Why did you place the bomb?
- Who are you? (to avoid possible termination of the call this should be the last question asked)

Attempt to keep the caller on the line as long as possible and obtain expanded answers to these four basic questions.

During this time, document the following:

- Time of the call.
- Exact words of the person as accurately as possible.
- Estimated age and gender of the caller.
- Speech patterns and/or accents.
- Background noises.

If the incoming call is received at the police facility on a recorded line, steps shall be taken to ensure that the recording is preserved in accordance with current department evidence procedures.

### 416.4.2   RESPONSIBILITIES

1. If the threat is of an imminent nature, dispatch immediately. If the threat is of a delayed nature, do not dispatch.

2. Notify the Executive Coordinator and convey all known information.

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000249

**Exhibit 1**
**Page 239 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Response to Bomb Calls*

3. Any time a device is found, or the threat is so specific that there is a clear indication of the presence of a device, request the EDU from the Eugene Police Department.

416.4.3   RESPONDING OFFICER RESPONSIBILITIES
1. Utilize the same communication precautions as if a device has been found.

2. Identify and contact the building manager, or other responsible person. They must decide, (possibly in consultation with UOPD, VPFA or other administration representatives), whether to:

    (a)   Take no action

    (b)   Search without an evacuation

    (c)   Evacuate and then search

3. Searches should be conducted by people familiar with the location. Officers should provide search advice and accompany the responsible person to help coordinate the search.

4. If a building has public access, the public areas should be searched first (i.e. reception areas, restrooms, utility and service rooms).

5. If a suspected device is found follow the guidelines in Section 416.2 of this policy.

    (a)   Secure the scene as a crime scene

    (b)   Meet EDU personnel and convey all known information. They will assume responsibility for the scene, but UOPD will likely retain responsibility for scene security and related issues.

416.4.4   SUPERVISORS / INCIDENT COMMANDER RESPONSIBILITIES
1. EDU should be contacted immediately if a suspected device is located. If no device is found, consult with EDU regarding any concerns about perimeter size or unusual circumstances.

2. Ensure sufficient perimeters are set.

3. If the location of a suspected device is an open area with little immediate cover, perimeter distances must be increased in order to utilize existing walls, buildings and geography to shield from a possible blast.

4. Identify staging areas and response routes for additional personnel and resources.

5. Notify the UO-Incident Management Team (UO-IMT) via UO-Internal Incident Notification (UO-IIN) protocols.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000250

**Exhibit 1**
**Page 240 of 550**



**Policy**
**418**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Mental Illness Commitments

### 418.1  PURPOSE AND SCOPE
This procedure describes an officer's duties when a person is to be committed to a mental health unit pursuant to Oregon Revised Statutes 426.070 to 426.228. The commitment of a person to a treatment facility or other confinement is controlled by Oregon Revised Statutes 426.070 through 426.225. Oregon Revised Statutes 426.228 authorizes peace officers to take mentally ill persons into custody.

### 418.2  AUTHORITY
An officer may take into custody a person the officer has probable cause to believe is dangerous to him/herself or to any other person and is in need of immediate care, custody or treatment for mental illness. An officer shall also take a person into custody at the direction of the community mental health program director when the director has probable cause to believe the person is imminently dangerous to him/herself or to another person. The director is mandated to prepare a report for the officer to deliver to the treating physician (ORS 426.228).

The officer shall transport the person to the nearest facility approved by the Oregon Health Authority (OHA) or will transfer custody of the person to a mental health representative authorized under ORS 426.233(3). At the facility or upon transfer, the officer shall ensure that a report is prepared and delivered to the treating physician or the person taking custody. The report shall state (ORS 426.228):

    (a)    The reason for custody.

    (b)    The date, time and place the person was taken into custody.

    (c)    The name and phone number of the Community Mental Health Director.

If, upon delivery of the person to the facility, the attending physician finds the person is not in need of emergency care or treatment for mental illness, the person is to be released from custody. The officer or the program director shall return the person to the place where he/she was taken into custody, unless the person declines that service.

### 418.3  OFFICER CONSIDERATIONS AND RESPONSIBILITIES
Any officer responding to or handling a call involving a suspected or actual mentally disabled individual, a Police Officer Hold or other mental commitment, should consider utilizing the following as time and circumstances reasonably permit:

    (a)    Any available information which might assist in determining the cause and nature of the mental illness or developmental disabilities, including the Law Enforcement Data System (LEDS) Medical Database.

    (b)    Conflict resolution and de-escalation techniques.

    (c)    Language that is appropriate for interacting with a mentally disabled person.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000251

**Exhibit 1**
**Page 241 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Mental Illness Commitments*

    (d)   If circumstances permit, alternatives to deadly force.

    (e)   Any available community resources that can assist in dealing with a mentally disabled individual.

## 418.3.1  TRANSPORTATION
When transporting any individual for a mental illness commitment, the handling officer should have Communications and Emergency Response Center notify the receiving facility of the estimated time of arrival, the level of cooperation of the patient and whether or not any special medical care is needed.

Officers may transport patients in the patrol unit and shall secure them in accordance with the handcuffing policy. Violent patients or those that are medically unstable may be restrained and transported by ambulance and ambulance personnel.

The officer will escort the patient into the facility and place that person in a designated treatment room as directed by a staff member. As soon as a security staff member becomes available, he/she should relieve the officer and physically remain in the treatment room with the patient.

If transportation to an appropriate facility will require more than one hour to accomplish, the transporting officer must obtain, if possible, medical clearance from an attending physician who has examined the person within the last 24 hours who certifies that the person is in need of immediate care or treatment for mental illness and that travel will not be detrimental to the person's physical health (ORS 426.228(3)).

## 418.3.2  RESTRAINTS
If the patient is violent or potentially violent, the officer will notify the staff of this concern. The staff member in charge will have discretion as to whether soft-restraints will be used. If these restraints are desired, the officer will wait while they are being applied to help provide physical control of the patient, if needed.

## 418.3.3  MENTAL HEALTH DOCUMENTATION
The officer shall also provide a verbal summary to an emergency department staff member regarding the circumstances leading to the involuntary detention.

## 418.3.4  SECURING OF WEAPONS
If a receiving and secured facility prohibits weapons or if an extraordinary event occurs in the treatment facility and officers determine a need to secure their firearms, the firearm shall be secured in the appropriate gun locker at the facility or in the police unit.

## 418.4  MENTALLY ILL PERSON CHARGED WITH A CRIME
When practical, any person charged with a crime who also appears to be mentally ill shall be booked at the University of Oregon Police Department before being transported to the authorized facility. If the person has injuries or some other medical condition, he/she may be taken directly to the hospital with the approval of a supervisor.

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000252

**Exhibit 1**
**Page 242 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Mental Illness Commitments*

---

**418.5   SEIZING OF FIREARMS**

Whenever a person has been detained or apprehended for examination pursuant to ORS 426.228 and is found to have in his/her possession or under his/her direct control, any firearm, the weapon should be taken into temporary custody for safekeeping by the handling officer. Any weapons seized shall be booked into property pending disposition.

The firearm should be seized as evidence if appropriate. Officers shall document the violation in a crime report.

This policy does not provide an officer with the authority or permission to conduct a search for weapons beyond that allowed under the law.

418.5.1   RETURN OF CONFISCATED FIREARMS

Any firearm taken into custody for safekeeping under section 418.5 will be returned to the lawful owner upon request unless the owner is prohibited from possessing firearms by court order, parole or probation terms or pursuant to ORS 166.250.

Prior to releasing any weapon, property personnel shall be required to ensure that the person is lawfully eligible to possess the weapon.

A seized weapon shall be eligible for release to the lawful owner or other authorized individual unless such weapon is evidence in a criminal matter or there is other independent lawful reason to retain custody of the weapon.

**418.6   TRAINING**

As a part of advanced officer training programs, this agency will endeavor to include DPSST approved training on interaction with mentally disabled persons.

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000253

**Exhibit 1**
**Page 243 of 550**



Policy
**419**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Letters of Trespass

### 419.1  PURPOSE AND SCOPE
This policy is designed to provide general guidelines for the issuance of Letters of Trespass (LOT) by UOPD officers.

Persons who are not current faculty, staff or students are considered to be visitors to the campus. Campus environs may be used by visitors, subject to conditions. Visitors, while on campus, who violate the laws of the State of Oregon (ORS), University Policies, or Oregon Administrative Rules (OAR), are subject to prohibition for using all or some University buildings or property.

### 419.2  AUTHORITY
The public buildings and lands of the University are under the care and oversight of the State Board of Higher Education (ORS 351.060). The University of Oregon President is delegated the specific duties of maintaining these public buildings and land (ORS 352.004). The President of the University of Oregon has delegated to the Chief of Police of UOPD the responsibilities of maintaining a safe, peaceful, welcoming and crime-free campus (Policy Statement 8.00 Safety and Security). Officers of UOPD are authorized to act as "Person in Charge" of buildings or property, especially absent a more defined person designated by the University. Further, ORS statutes relating to Trespass constitute the legal criteria for determining a trespass violation.

### 419.3  GENERAL GUIDELINES FOR ISSUANCE OF LETTER OF TRESPASS
Persons who are subject to being issued a LOT are:

- Persons who commit violations of ORS, OAR or University Rules

- Persons who are using University buildings, facilities or land contrary to its normal use, or special use limitations designated by the University (for example, special events)

- Persons who have been served with a LOT and return to University property under conditions contrary to restrictions may be cited and/or arrested for the appropriate criminal trespass charge

Additional guidelines:

- Persons may be directed to leave a specific area of the campus, even though the rest of the campus remains open to them.

- Persons may be directed to leave, and not return, to any campus property.

- Persons may be banned from certain areas of the University, but have access to others to conduct lawful business if approved by the Chief of Police.

- Members of the University community who fall into the categories discussed above will be handled through the appropriate Dean, department head, or Student Affairs.

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000254

**Exhibit 1**
**Page 244 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Letters of Trespass*

However, they may be directed to leave certain areas until such time as normal action can be taken by the University.

## 419.4  APPEAL

Persons may appeal their removal from University property by mailing a written appeal to the Chief of Police within 30 days, but the notice of trespass will be in effect until that process has been complete and a decision by the Chief has been delivered to them.

The appeal should include the reason(s) why the person was on campus property at the time, the person's future need to be on University property, and any other information the person wishes to be considered.

The Chief, or designee, will review the circumstances and decide whether to support the restrictions imposed by the notice, or modify them. That decision will be delivered to the person in writing via certified mail, or hand delivered if certified mail is not practical.

The person may appeal the decision to the Vice President of Administration by submitting a written appeal within 10 days of receiving notice of the Chief's decision. The Chief's decision remains in effect during the appeal.

## 419.5  DOCUMENTATION

(a)  Upon first issuing a restriction to access University property to a person, officers will hand deliver a LOT and explain the limitations and appeal process to the person.

(b)  Officers will notify communications about the LOT and specifics regarding the recipient and/or conditions.

(c)  The LOT will be submitted to the dispatcher prior to the end of the watch so that the LOT can be scanned into the appropriate database in order to provide for immediate access to oncoming shifts. Police Records Unit will attach the LOT to the written report and they will be submitted in the same manner as an arrest report.

(d)  Police Records Unit will ensure that the required data entry is completed so that date of trespass as well as any special circumstances is available to officers.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000255

**Exhibit 1**
**Page 245 of 550**



**Policy**
**420**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Citation Releases

## 420.1   PURPOSE AND SCOPE
The purpose of this policy is to provide members of the University of Oregon Police Department with guidance on when to release adults who are suspected offenders on a citation for a criminal offense, rather than having the person held in custody for a court appearance or released on bail.

See also Policy 421-Municipal Citation Authority

## 420.2   RELEASE
A suspected offender may be released on issuance of a criminal citation if the officer has probable cause to believe that the person has committed a misdemeanor or has committed any felony that is subject to misdemeanor treatment under ORS 161.705 (reduction of certain felonies to misdemeanors) (ORS 133.055).

### 420.2.1   CITATION RELEASES ON WARRANTS
If the offense is not excluded under ORS 133.055, the court may authorize an officer to issue and serve a criminal citation in lieu of arrest (ORS 133.110).

## 420.3   PROHIBITIONS
The release of a suspected offender on a citation is not permitted when:

(a)   The officer has probable cause to believe that the person has been served a valid restraining order as described in ORS 133.310 (orders relating to stalking, elder and disability abuse, sexual abuse) and the person has violated the terms of the order (ORS 133.310).

(b)   The officer has probable cause to believe that the person has been charged with an offense under ORS 135.230 through ORS 135.290 (sexual offenses, domestic violence, methamphetamine crimes), and is presently released and has failed to comply with a no contact condition to the release agreement (ORS 133.310).

(c)   The person arrested is so intoxicated that he/she could be a danger to himself/herself or to others (release may occur as soon as this condition no longer exists).

   1.   Any officer encountering a person who is intoxicated or under the influence of controlled substances in a public place and who is incapacitated, whose health appears to be in immediate danger, or there is reasonable cause to believe the person is dangerous to him/herself or to any other person, shall transport the individual to the nearest appropriate treatment facility or sobering facility (ORS 430.399).

See the Domestic Violence Policy for release restrictions related to those investigations.

## 420.4   CONSIDERATIONS
In determining whether to cite and release a person when discretion is permitted, officers should consider:

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

## *Citation Releases*

    (a)   The type of offense committed.

    (b)   The known criminal history of the suspected offender.

    (c)   The ability to identify the suspected offender with reasonable certainty.

    (d)   Whether there is any record of the individual failing to appear in previous cases or other articulable indications that the individual may not appear in court for this offense.

    (e)   The individual's ties to the area, such as residence, employment or family.

    (f)   Whether there is reasonable likelihood that criminal conduct by the individual will continue.

## 420.5  REQUESTING CASE NUMBERS

Traffic infractions may be issued without case numbers and the necessary information can be documented on the reverse side of the Uniform Traffic Citation. For traffic crimes, local ordinance violations, state misdemeanors and qualified felonies, and all citations subsequent to the service of an arrest warrant, case numbers will be drawn. If the incident involves a citation issued subsequent to the service of a local arrest warrant where a University of Oregon Police Department case number already exists, that case number shall be used.

## 420.6  POLICY

The University of Oregon Police Department will consider its resources and its mission of protecting the community when exercising any discretion to release suspected offenders on a citation, when authorized to do so.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000257

**Exhibit 1**
**Page 247 of 550**



**Policy**
**421**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Municipal Citation Authority

### 421.1  PURPOSE AND SCOPE
The purpose of this policy is to define the authority for UOPD to issue City of Eugene municipal citations and to identify under what circumstances these citations may be issued.

### 421.2  POLICY
It is the policy of the University of Oregon Police Department (UOPD) that commissioned Public Safety Officers (PSO) and Police Officers will be authorized to issue City of Eugene municipal citations for specific violations and misdemeanors as provided in the Eugene Code, Section 4.035 (EC 4.035).

### 421.3  PROCEDURE
Officers are authorized to issue municipal citations under the following circumstances:

    (a)    The offense occurred on University of Oregon owned or controlled property; and

    (b)    The citing officer has probable cause to believe the person being cited committed the offense; and

    (c)    The officer had reasonable grounds to believe the observed conduct constituted a violation of the municipal code.

Intergovernmental Agreement 2006-03208 as amended on February 23, 2010 authorizes UOPD to issue citations for the following offenses:

4.050 Affixing Ad Material

4.060 Distribution on Private Property (of handbills on autos/property)

4.065 Method of Distribution (of handbills)

4.080 Noise Disturbance " Prohibited

4.081 Noise Disturbance " Repetition & Failure to Cease

4.110 (1&2) Sales, Etc., to Certain Persons Prohibited

(3) Minors - Allowing Unlawful Consumption on Private Premises

4.115 Minors - Purchase or Possession of Liquor Prohibited

4.190 Consumption or Possession in Unlicensed Public Places Prohibited

4.240 Possession of Less Than One Ounce of Marijuana

4.350 Animal Abandonment

4.425 Dogs at Large Prohibited

4.430 Continuous Annoyance

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000258

**Exhibit 1**
**Page 248 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

## *Municipal Citation Authority*

4.435 Potentially Dangerous Dog

4.445 Regulation of Potentially Dangerous Dogs

4.707 Pedestrians (block or interfere with public sidewalk)

4.710 Telephonic Harassment

4.725 Disorderly Conduct

4.726 Harassment

4.728 Recklessly Endangering Another Person

4.729 Assault

4.730 Menacing

4.770 Urinating/Defecating in Public

4.780 Criminal Mischief in the Third Degree

4.782 Criminal Mischief in the Second Degree

4.807 Criminal Trespass in the Second Degree

4.808 Criminal Trespass in the First Degree

4.822 Theft (1) Theft in the Third Degree (2) Theft in the Second Degree

4.825 Shoplifting (1) Shoplifting in the Third degree (2) Shoplifting in the Second Degree

4.830 Portion of Street Reserved for Vehicular Traffic

4.880 Possession of a Burglary Tool or Theft Device

4.882 Unlawful Entry Into a Motor Vehicle

4.887 Weapons - Carrying of Concealed Weapon

4.906 Giving False Information to a Peace or Enforcement Officer for a Citation

4.912 Hindering Prosecution

4.930 Theft of Services (1) Theft of Services in the Third Degree (2) Theft of Services in the Second Degree

4.943 Tampering with Physical Evidence

5.110 Unlawful Riding

5.115 Clinging to Motor Vehicles

5.120 Driving on Sidewalks and Curbs

5.130 Obstructing Streets

5.255 No Parking (Sidewalk; Intersection; Crosswalk; Opposite Side of Road-Against Traffic

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000259

**Exhibit 1**
**Page 249 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

## *Municipal Citation Authority*

5.400 Operating Rules (Bicycles)

5.425 Right Angle Provisions (Pedestrians)

5.450 Skateboards Prohibited

6.805 Littering

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000260

**Exhibit 1**
**Page 250 of 550**



**Policy**
**422**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Arrest or Detention of Foreign Nationals

### 422.1  PURPOSE AND SCOPE
Article 36 of the Vienna Convention on Consular Relations, sets forth certain rights of foreign nationals from member countries when arrested, detained or imprisoned by law enforcement officials in this country. This section provides direction to officers when considering a physical arrest or detention of a foreign national. All foreign service personnel shall be treated with respect and courtesy, regardless of the level of established immunity. As noted herein, the United States is a party to several bilateral agreements that obligate our authorities to notify the consulate upon the person's detention, regardless of whether the detained person(s) request that his or her consulate be notified. The list of specific countries that the United States is obligated to notify is listed on the US Department of State website.

#### 422.1.1  DEFINITIONS
**Foreign National** - Anyone who is not a citizen of the United States (U.S.). A person with dual-citizenship, U.S. and foreign, is <u>not</u> a foreign national.

**Immunity** - Refers to various protections and privileges extended to the employees of foreign governments who are present in the U.S. as official representatives of their home governments. These privileges are embodied in international law and are intended to ensure the efficient and effective performance of their official "missions" (i.e., embassies, consulates, etc.) in foreign countries. Proper respect for the immunity to which an individual is entitled is necessary to ensure that U.S. diplomatic relations are not jeopardized and to maintain reciprocal treatment of U.S. personnel abroad. Although immunity may preclude U.S. courts from exercising jurisdiction, it is not intended to excuse unlawful activity. It is the policy of the U.S. Department of State's Office of Foreign Missions (OFM) that illegal acts by Foreign Service personnel should always be pursued through proper channels. Additionally, the host country's right to protect its citizens supersedes immunity privileges. Peace officers may intervene to the extent necessary to prevent the endangerment of public safety or the commission of a serious crime, regardless of immunity claims.

### 422.2  ARREST OR DETENTION OF FOREIGN NATIONALS
Officers should take appropriate enforcement action for all violations observed, regardless of claims of diplomatic or consular immunity received from violators. A person shall not, however, be subjected to in-custody arrest when diplomatic or consular immunity is claimed by the individual or suspected by the officer, and the officer has verified or reasonably suspects that the claim of immunity is valid.

### 422.3  LEVELS OF IMMUNITY
The specific degree of immunity afforded to foreign service personnel within the U.S. is directly related to their function and position in this country.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000261

Exhibit 1
Page 251 of 550

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Arrest or Detention of Foreign Nationals*

### 422.3.1   DIPLOMATIC AGENTS
Diplomatic agents (e.g., ambassadors and United Nations representatives) are afforded the highest levels of immunity. They are exempt from arrest or detention and are immune from all criminal (and most civil) prosecution by the host state. The family members of diplomatic agents enjoy these same immunities.

### 422.3.2   CONSULAR OFFICERS
Consular officers are the ranking members of consular posts who perform various formal functions on behalf of their own governments. Typical titles include consul general, consul, and vice consul. These officials are immune from arrest or detention, except pursuant to a felony warrant. They are only immune from criminal and civil prosecution arising from official acts. Official acts immunity must be raised as an affirmative defense in the court jurisdiction, and its validity is determined by the court. Under this defense, the prohibited act itself must have been performed as an official function. It is not sufficient that the consular agent was on-duty or in an official capacity at the time of the violation. The family members of consular officers generally enjoy no immunity, however, any family member who enjoys a higher level of immunity is issued an identification card by Department of State (DOS) enumerating any privileges or immunities on the back of the card. Examples are consular officers and family members from Russia or China.

### 422.3.3   HONORARY CONSULS
Honorary consuls are part-time employees of the country they represent and are either permanent residents of the U.S. or U.S. nationals (unlike career consular officers, who are foreign nationals on temporary assignment to the U.S.). Honorary consuls may be arrested and detained; limited immunity for official acts may be available as a subsequent defense. Family members have no immunity.

### 422.4   IDENTIFICATION
All diplomatic and consular personnel who are entitled to immunity are registered with the Department of State and are issued distinctive identification cards by the Department of State Protocol Office. These cards are the best means of identifying Foreign Service personnel. They include a photograph, identifying information, and, on the reverse side, a brief description of the bearer's immunity status. Unfortunately, these identification cards are not always promptly issued by the Department of State. In addition to the Department of State identification card, Foreign Service personnel should also have a driver license issued by the Department of State Diplomatic Motor Vehicle Office (DMVO), which in most circumstances replaces the operator's license issued by the state.

### 422.4.1   VEHICLE REGISTRATION
Vehicles that are owned by foreign missions or Foreign Service personnel and their dependents are registered with the Department of State OFM and display distinctive red, white, and blue license plates. Vehicles assigned to diplomatic or consular officers will generally have license plates labels with the words "diplomat" or "consul." Vehicles owned by honorary consuls are not issued OFM license plates; but may have Oregon license plates with an "honorary consul"

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000262

**Exhibit 1**
**Page 252 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Arrest or Detention of Foreign Nationals*

label. Driver's identity or immunity status should not be presumed from the type of license plates displayed on the vehicle. The status of an OFM license plate should be run via the National Law Enforcement Telecommunications System (NLETS), designating "US" as the state, if the officer has reason to question the legitimate possession of the license plate.

## 422.5 ENFORCEMENT PROCEDURES
The following procedures provide a guideline for handling enforcement of foreign nationals:

### 422.5.1 CITABLE OFFENSES
An enforcement document shall be issued at the scene for all violations warranting such action, regardless of the violator's immunity status. The issuance of a citation is not considered an arrest or detention under current Department of State guidelines. Whenever the equivalent of a notice to appear is issued to an immunity claimant, the following additional procedures shall be followed by the arresting officer:

(a) Identification documents are to be requested of the claimant

(b) The title and country represented by the claimant are to be recorded on the back of the officer's copy of the Notice to Appear for later reference. Do not include on the face of the notice to appear

(c) The violator shall be provided with the appropriate copy of the notice to appear

### 422.5.2 IN-CUSTODY ARRESTS
Diplomatic agents and consular officers are immune from arrest or detention (unless they have no identification <u>and</u> the detention is to verify their diplomatic status). Proper identification of immunity claimants is imperative in potential in-custody situations. Claimants who are not entitled to immunity shall be placed in custody in accordance with the provisions outlined in <u>Policy Manual</u> § 422.6 of this policy.

A subject who is placed under arrest and claims diplomatic or consular immunity shall not be physically restrained before verification of the claim (unless restraint is necessary for the protection of the officer or others.)

A supervisor shall be promptly notified and should respond to the scene when possible.

Field verification of the claimant's identity is to be attempted as follows:

(a) Identification cards issued by the Department of State, Protocol Office, are the only valid evidence of diplomatic or consular immunity. The following types of identification cards are issued: Diplomatic (blue bordered), Consular (red bordered), and Official (green bordered), The Department of State identification cards are 3-3/4 inch by 1-1/2 inch and contain a photograph of the bearer.

(b) Initiate telephone verification with the Department of State. Newly arrived members of diplomatic or consular missions may not yet have official Department of State identity documents. Verify immunity by telephone with the Department of State any time an

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000263

**Exhibit 1**
**Page 253 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Arrest or Detention of Foreign Nationals*

individual claims immunity and cannot present satisfactory identification, the officer has reason to doubt the claim of immunity, or there is a possibility of physical arrest. Law enforcement personnel should use the following numbers in order of preference:

| | |
|---|---|
| Office of Foreign Missions | Diplomatic Security Service |
| San Francisco, CA | 915 Second Avenue, Room 3410 |
| (415) 744-2910, Ext.. 22 or 23 | Seattle, WA 98174 |
| (415) 744-2913 FAX | (206) 220-7721 |
| (0800-1700 PST) | (206) 220-7723 FAX |
| | |
| Office of Foreign Missions | Department of State |
| Diplomatic Motor Vehicle Office | Diplomatic Security Service |
| Washington D.C. | Command Center |
| (202) 895-3521 (Driver License Verification) or | Washington D.C. |
| (202) 895-3532 (Registration Verification) | (202) 647-7277 |
| (202) 895-3533 FAX | (202) 647-1512 |
| (0815-1700 EST) | (Available 24 hours) |
| | (202) 647-0122 FAX |

Members of diplomatic or consular missions also may have other forms of identification. These include identification cards issued by Office of Emergency Services, local law enforcement agencies, the foreign embassy, or consulate; driver licenses issued by Department of State; and, Department of State license indicia on the vehicle. All these items are only an indication that the bearer may have some form of immunity.

Subjects verified through the above procedures as being officials entitled to immunity (diplomatic agent, consular officers and consular staff and family members from countries with which the U.S. has special agreements) may not be arrested. The procedures below shall be followed. These procedures should also be used in the event immunity cannot be verified, but another form of identification indicates that immunity is probable.

If the release of the violator will not create an additional hazard, adequate information to properly identify the violator shall be obtained then the official shall be released. A supervisor's approval for the release shall be obtained whenever possible. The necessary release documents and/or a Certificate of Release form should only be issued under the proper conditions.

If the violator appears to have been driving while under the influence, field sobriety tests, including Preliminary Alcohol Screening (PAS) device tests and chemical tests should be offered and

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000264

**Exhibit 1**
**Page 254 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Arrest or Detention of Foreign Nationals*

obtained whenever possible, however, these tests cannot be compelled. The subject shall not be permitted to drive. A supervisor's approval for release shall be obtained whenever possible and alternative transportation should be arranged.

All facts of the incident shall be documented in accordance with this policy in a Driving Under the Influence (DUI) Arrest-Investigation Report, Arrest-Investigation Report and/or any other relevant Report form. Notwithstanding the field release of the subject, prosecution is still appropriate and should be pursued by the command concerned. The Department of State will take appropriate sanctions against errant foreign service personnel, even where prosecution is not undertaken by the agency.

## 422.6   TRAFFIC COLLISIONS
Persons involved in traffic collisions who possess a Department of State OFM Diplomatic Driver License, issued by the DMVO, shall have "D" coded in the license "class" box of the Traffic Collision Report. If subsequent prosecution of the claimant is anticipated, the claimant's title, country, and type of identification presented should be recorded for future reference. Issuance of a citation to, or arrest of, an immunity claimant at the accident scene should be handled in accordance with the procedures specified in Policy Manual § 422.5 of this chapter.

### 422.6.1   VEHICLES
Vehicles, which are owned by subjects with full immunity, may not be searched, stored, or impounded without the owner's permission. (Such permission may be assumed if the vehicle has been stolen.) These vehicles may, however, be towed the necessary distance to remove them from obstructing traffic or creating any other hazard.

### 422.6.2   REPORTS
A photocopy of each traffic collision report involving an identified diplomat and/or immunity claimant shall be forwarded to the office of the Chief of Police within 48 hours whether or not the claim is verified. The words "Immunity Claim" shall be marked on the photocopy, together with a notation of the claimant's title, country, and type of identification presented (if applicable). In addition to the report, a follow-up cover memorandum should be submitted if the violation was flagrant, if the claimant was uncooperative, or if there were any other unusual aspects of the enforcement contact that should be reported to the Department of State for further action. The Watch Commander/Supervisor apprised of the incident/accident shall also send a copy of all documents and reports submitted by the investigating officer along with any supervisor's notes, materials and/or logs to the Chief of Police's office within 48 hours of the incident. The Chief of Police's office will check to ensure that notification of Department of State and all necessary follow-up occur.

## 422.7   FOREIGN NATIONALS WHO DO NOT CLAIM IMMUNITY
Officers may only arrest foreign nationals not claiming diplomatic or consular immunity under the following circumstances:

(a)   There is a valid warrant issued for the person's arrest.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000265

**Exhibit 1**
**Page 255 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Arrest or Detention of Foreign Nationals*

    (b)    There is probable cause to believe that the foreign national has violated a federal criminal law, a state law, or a local ordinance.

    (c)    Officers shall not arrest foreign nationals solely for alleged undocumented entry into the United States.

Because undocumented presence is strictly a federal civil violation, it is only enforceable by federal officers therefore officers of this department shall not arrest foreign nationals solely for undocumented presence. Officers shall not stop or detain persons solely for determining immigration status.

### 422.7.1  ARREST PROCEDURE
Whenever an officer physically arrests or detains an individual for criminal investigation and the officer reasonably believes the person to be a foreign national, the officer shall inquire to determine the person's citizenship.

This procedure applies to detentions of more than two hours. An inquiry is not required if the individual is detained less than two hours for criminal investigation.

If the individual indicates that he/she is other than a U.S. citizen, the officer shall advise the individual that he/she has a right to have the nearest appropriate embassy or consulate notified of the arrest/detention (Vienna Convention on Consular Relations, Art. 36, (1969)).

If the individual requests such notification, the officer shall contact Communications and Emergency Response Center as soon as practical and request the appropriate embassy/consulate be notified. Officers shall provide Communications and Emergency Response Center with the following information concerning the individual:

- Country of citizenship
- Full name of individual, including paternal and maternal surname, if used
- Date of birth or age
- Current residence
- Time, date, place, location of incarceration/detention and the 24-hour telephone number of the place of detention if different from the Department itself

If the foreign national claims citizenship of one of the countries listed by the US Department of State as requiring mandatory consular notification, officers shall provide Communications and Emergency Response Center with the information above as soon as practical whether or not the individual desires the embassy/consulate to be notified. This procedure is critical because of treaty obligations with the particular countries. The list of mandatory notification countries and jurisdictions can be found on the US Department of State website.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Arrest or Detention of Foreign Nationals*

## 422.7.2  DOCUMENTATION

Officers shall document on the face page and in the narrative of the appropriate Arrest-Investigation Report the date and time Communications and Emergency Response Center was notified of the foreign national's arrest/detention and his/her claimed nationality.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000267

**Exhibit 1**
**Page 257 of 550**



**Policy**
**424**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Rapid Response And Deployment Policy

### 424.1  PURPOSE AND SCOPE
Violence in schools, workplaces and other locations by any individual or group of individuals presents a difficult situation for law enforcement. The purpose of this policy is to identify guidelines and factors that will assist responding officers as they make decisions in these rapidly unfolding and tense situations.

### 424.2  POLICY
The policy of this department in dealing with the crisis situation shall be:

(a)  To obtain and maintain complete operative control of the incident.

(b)  To explore every reasonably available source of intelligence regarding the circumstances, location, and suspect(s) in the incident.

(c)  To attempt, by every means available, to attain any tactical advantage over the responsible individual(s).

(d)  To attempt, whenever feasible, a negotiated surrender of the suspect(s) and release of the hostages through the expertise of the members of this department and others.

(e)  When an emergency situation exists, neutralize the threat as rapidly as reasonably possible to minimize injury and loss of life.

Nothing in this policy shall preclude the use of necessary force, deadly or otherwise, by members of this department in protecting themselves or others from death or serious injury.

### 424.3  PROCEDURE
If there is a reasonable belief that acts or threats by a suspect are placing lives in imminent danger, first responding officers should consider reasonable options to immediately eliminate the threat. Officers must decide, often under a multitude of difficult and rapidly evolving circumstances, whether to advance on the suspect, take other actions to deal with the threat or wait for additional resources.

When deciding on a course of action officers should consider the following:

(a)  Whether sufficient personnel are available on-scene to advance on the suspect. Any advance on a suspect should be made using teams of two or more officers whenever reasonably possible.

(b)  Whether individuals who are under imminent threat can be moved out of danger with reasonable safety.

(c)  Whether the officers have the ability to effectively communicate with others in the field.

(d)  Whether planned tactics can be effectively deployed.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000268

**Exhibit 1**
**Page 258 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Rapid Response And Deployment Policy*

(e)    The availability of rifles, shotguns, shields, control devices and any other appropriate tools, and whether the deployment of these tools will provide tactical advantage.

(f)    In a case of a barricaded suspect with no hostages and no immediate threat to others, officers should consider summoning and waiting for additional assistance (special tactics and/or hostage negotiation team response).

(g)    If a suspect is actively engaged in the infliction of serious bodily harm or other life-threatening activity toward others, the officer should take immediate action, if reasonably possible, to stop the threat presented by the suspect while calling for additional assistance.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000269

**Exhibit 1
Page 259 of 550**



Policy
**428**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Immigration Violations

### 428.1  PURPOSE AND SCOPE
The immigration status of individuals alone is generally not a matter for police action. It is incumbent upon all employees of this department to make a personal commitment to equal enforcement of the law and equal service to the public regardless of immigration status. Confidence in this commitment will increase the effectiveness of the Department in protecting and serving the entire community.

### 428.2  DEPARTMENT POLICY
The U.S. Immigration and Customs Enforcement (ICE) has primary jurisdiction for enforcement of the provisions of Title 8, United States Code dealing with illegal entry. This department does not participate in routine immigration investigation and enforcement activities (Oregon Revised Statutes 181.850).

Should activities of ICE generate circumstances that result in officer safety or community safety matters, or when suspected criminal violations are discovered beyond immigration violations, this department may assist ICE only as necessary to protect lives and property, or to enforce criminal laws other than immigration violations.

### 428.3  PROCEDURES FOR IMMIGRATION COMPLAINTS
Persons wishing to report immigration violations should be referred to the local office of the U.S. Immigration and Customs Enforcement (ICE). The Employer Sanction Unit of ICE has primary jurisdiction for enforcement of Title 8, United States Code.

#### 428.3.1  BASIS FOR CONTACT
Unless immigration status is relevant to another criminal offense or investigation (e.g., harboring, smuggling, terrorism), the fact that an individual is suspected of being an undocumented alien shall not be the sole basis for contact, detention, or arrest (Oregon Revised Statutes 181.850).

#### 428.3.2  SWEEPS
The University of Oregon Police Department does not conduct sweeps or other concentrated efforts to detain suspected undocumented aliens.

When enforcement efforts are increased in a particular area, equal consideration should be given to all suspected violations and not just those affecting a particular race, ethnicity, age, gender, sexual orientation, religion, socioeconomic status or other group.

The disposition of each contact (e.g., warning, citation, arrest), while discretionary in each case, should not be affected by such factors as race, ethnicity, age, gender, sexual orientation, religion or socioeconomic status.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000270

**Exhibit 1**
**Page 260 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Immigration Violations*

### 428.3.3   ICE REQUEST FOR ASSISTANCE

If a specific request is made by ICE, this department will provide available support services, such as traffic control or peacekeeping efforts, during the federal operation only as necessary to provide for the safety of persons and property if not adequately provided by ICE .

Members of this department should not participate in such federal operations as part of any detention team unless it is in direct response to a request for assistance on a temporary basis or for officer safety. Any detention by a member of this department should be based upon the reasonable belief that an individual is involved in criminal activity.

### 428.3.4   IDENTIFICATION

Whenever any individual is reasonably suspected of an offense (infraction, violation, misdemeanor or felony), the investigating officer should take reasonable steps to establish the person's identity by way of valid identification or other reliable sources.

If an individual would have otherwise been released on a citation for a crime, the person should be taken to the station and given a reasonable opportunity to verify his/her true identity (e.g., telephone calls). If the person's identity is thereafter reasonably established, the original citation release should be completed without consideration of immigration status.

### 428.3.5   ARREST

Pursuant to Oregon Revised Statutes 181.850, no law enforcement agency of the State of Oregon or of any political subdivision of the state shall use agency moneys, equipment, or personnel for the purpose of detecting or apprehending persons whose only violation of law is that they are persons of foreign citizenship present in the United States in violation of federal immigration laws. However, a law enforcement agency may arrest any person who:

(a) Is charged by the United States with a criminal violation of federal immigration laws under Title II of the Immigration and Nationality Act or 18 United States Code 1015, 1422 to 1429, or 1505; and,

(b) Is subject to arrest for the crime pursuant to a warrant of arrest issued by a federal magistrate

If an officer intends to take enforcement action for any other crime and the individual is unable to reasonably establish his or her true identity, the officer may take the person into custody on the suspected criminal violation (Oregon Revised Statutes 807.570, 133.235, and 133.310), if pertinent to the circumstances). A field supervisor shall approve all such arrests.

### 428.3.6   BOOKING

If the officer is unable to reasonably establish an arrestee's identity, the individual may, upon approval of a supervisor, be booked into jail for the suspected criminal violation and held for bail.

If a person is detained pursuant to the authority of Oregon Revised Statutes 807.570, that person may be detained for such time as is reasonably necessary to investigate and verify the person's identity.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000271

**Exhibit 1**
**Page 261 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Immigration Violations*

### 428.3.7  NOTIFICATION OF IMMIGRATION AND CUSTOMS ENFORCEMENT
If an officer believes that an individual taken into custody for a felony is also an undocumented alien, and the individual is not going to be booked into county jail after he/she is formally booked, the arresting officer shall cause ICE to be notified for consideration of an immigration hold.

If an officer believes that an individual taken into custody for an offense other than a felony is also an undocumented alien and there is no intention to transport the person to the county jail after he/she is formally booked, ICE may be notified for consideration of an immigration hold. In making the determination whether to notify ICE in such circumstances, the officer should, in consultation with a supervisor, consider the totality of circumstances of each case, including, but not limited to:

(a)  Seriousness of the offense

(b)  Community safety

(c)  Potential burden on ICE

(d)  Impact on the immigrant community

Generally, officers will not need to notify ICE when booking arrestees at the county jail. Immigration officials routinely interview suspected undocumented aliens who are booked into the county jail on criminal charges and notification will be handled according to jail operation procedures.

### 428.4  CONSIDERATIONS PRIOR TO REPORTING TO ICE
The University of Oregon Police Department is concerned for the safety of local citizens and thus detection of criminal behavior is of primary interest in dealing with any person. The decision to arrest shall be based upon those factors which establish probable cause and not on arbitrary aspects. Race, ethnicity, age, gender, sexual orientation, religion, and socioeconomic status alone are of no bearing on the decision to arrest.

All individuals, regardless of their immigration status, must feel secure that contacting law enforcement will not make them vulnerable to deportation. Members should not attempt to determine the immigration status of crime victims and witnesses or take enforcement action against them absent exigent circumstances or reasonable cause to believe that a crime victim or witness is involved in violating criminal laws. Generally, if an officer suspects that a victim or witness is an undocumented immigrant, the officer need not report the person to ICE unless circumstances indicate such reporting is reasonably necessary.

Nothing in this policy is intended to restrict officers from exchanging legitimate law enforcement information with any other federal, state or local government entity (Title 8 U.S.C. §1373 and U.S.C. § 1644).

### 428.4.1  U-VISA/T-VISA NONIMMIGRANT STATUS
Under certain circumstances, federal law allows temporary immigration benefits to victims and witnesses of certain qualifying crimes (8 USC § 1101(a)(15)(U and T). A declaration/certification for a U-Visa/T-Visa from the U.S. Citizenship and Immigration Services may be completed on U.S.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000272

**Exhibit 1**
**Page 262 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Immigration Violations*

DHS Form I-918 or I-914 by law enforcement and must include information on how the individual can assist in a criminal investigation or prosecution in order for a U-Visa/T-Visa to be issued.

Any request for assistance in applying for U-Visa/T-Visa status should be forwarded in a timely manner to the Investigations Sergeant assigned to supervise the handling of any related case. The Investigations Unit Sergeant should do the following:

(a) Consult with the assigned detective to determine the current status of any related case and whether further documentation is warranted.

(b) Review the instructions for completing the declaration/certification if necessary. Instructions for completing Forms I-918/I-914 can be found on the U.S. DHS website at www.uscis.gov/portal/site/uscis.

(c) Contact the appropriate prosecutor assigned to the case, if applicable, to ensure the declaration/certification has not already been completed and whether a declaration/certification is warranted.

(d) Address the request and complete the declaration/certification, if appropriate, in a timely manner.

(e) Ensure that any decision to complete or not complete the form is documented in the case file and forwarded to the appropriate prosecutor. Include a copy of any completed declaration/certification in the case file.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department
Immigration Violations - 263

UO_Alvarez000273

**Exhibit 1
Page 263 of 550**



**Policy**
**434**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Aircraft Accidents

### 434.1   PURPOSE AND SCOPE
This policy describes situations involving aircraft accidents including responsibilities of personnel, making proper notification and documentation. The nature of aircraft crashes are such that multiple jurisdictions are involved in the same incident. The UOPD will coordinate with all involved agencies by establishing an appropriate ICS/Unified Command structure via the UO-Incident Management Team (UO-IMT) as soon as it is practical.

### 434.2   RESPONSIBILITIES
In the event of an aircraft crash the employee responsibilities are as follows:

### 434.2.1   OFFICER RESPONSIBILITY
Officers should treat an aircraft crash site as a crime scene until it is determined that such is not the case. If a military aircraft is involved, additional dangers, such as live ordnance or hazardous materials, may be present. The scene may require additional security due to the potential presence of confidential equipment or information.

The duties of the field officer at the scene of an aircraft accident include the following:

(a)   Determine the nature and extent of the accident.

(b)   Request additional personnel and other resources to respond as needed.

(c)   Provide assistance for the injured parties until the arrival of fire department personnel and/or other emergency personnel.

(d)   Cordon off and contain the area to exclude unauthorized individuals as soon as practicable.

(e)   Treat all affected areas as a crime scene, taking into consideration inner and outer perimeters.

(f)   Provide crowd control and other assistance until directed otherwise by a supervisor.

(g)   Ensure that the medical examiner's office is notified if a death occurs.

(h)   If there appears to be a large number of fatalities, consider contacting the County Health Department for mass casualty assistance.

Entering an aircraft or tampering with parts or debris is only permissible for the purpose of removing injured or trapped occupants, protecting the wreckage from further damage or protecting the public from danger. If possible, the investigating authority should first be consulted before entering or moving any aircraft or any crash debris. Photographs or sketches of the original positions should be made whenever feasible.

The fire department will be responsible for operations within the accident scene until the injured parties are cared for and the accident scene has been rendered safe for containment. Police

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Aircraft Accidents*

are responsible for preserving the scene until relieved by the investigating authority. Scene and evidence security must be established in a manner that does not compromise fire, rescue or medical operations.

Once the scene is relinquished to the investigating authority, personnel from this agency may assist in containment of the scene until the investigation is completed or assistance is no longer needed.

An airport service worker or the airport manager may respond to the scene to assist the on-scene commander with technical expertise, should it be needed during the operation.

434.2.2   NATIONAL TRANSPORTATION SAFETY BOARD
The National Transportation Safety Board (NTSB) has the primary responsibility for investigating accidents involving civil aircraft. In the case of a military aircraft incident the appropriate branch of the military will be involved in the investigation. The NTSB is concerned with several aspects of a crash as described in this section.

Every effort should be made to preserve the scene to the extent possible in the condition in which it was found until such time as NTSB or other authorized personnel arrive to take charge of the scene.

Military personnel will respond to take charge of any military aircraft involved, whether or not injuries or deaths have occurred.

If the accident did not result in a death or injury and the NTSB elects not to respond, the pilot or owner may assume control of the aircraft.

Removal of the wreckage shall be done under the guidance of the NTSB or military authorities or, if the NTSB is not responding for an onsite investigation, at the discretion of the pilot or the owner.

434.2.3   COMMUNICATIONS AND EMERGENCY RESPONSE CENTER RESPONSIBILITIES
Dispatchers are responsible to make notifications as directed once an aircraft accident has been reported. The notifications will vary depending on the type of accident, extent of injuries or damage, and the type of aircraft involved. Generally, the dispatcher will need to notify the following agencies or individuals when an aircraft accident has occurred.

(a)   Fire Department

(b)   The affected airport tower

(c)   Closest military base if a military aircraft is involved

(d)   Ambulances or other assistance as required

(e)   UO-Incident Management Team (UO-IMT) via the UO-Internal Incident Notification (UO-IIN) protocols

When an aircraft accident is reported to the Police Department by the airport tower personnel the dispatcher receiving such information should verify that the tower personnel will contact

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000275

**Exhibit 1
Page 265 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Aircraft Accidents*

the Federal Aviation Administration (FAA) Flight Standards District Office and the National Transportation Safety Board (NTSB). In the event that airport personnel are not involved, the dispatcher should notify the FAA and the NTSB.

### 434.2.4  COMMUNICATIONS AND EMERGENCY RESPONSE CENTER MANAGER RESPONSIBILITIES
The Captain of Administration is responsible for the following:

- (a) Forward and maintain an approved copy of the accident report to the Oregon Department of Aviation
- (b) Forward a copy of the report to the Operations Division Commander and the manager of the affected airport

### 434.2.5  PUBLIC INFORMATION OFFICER RESPONSIBILITIES
The Department PIO is part of the UO-IMT Public Information Group that is responsible for the following:

- (a) Obtain information for a press release from the on-scene commander or his or her designee
- (b) The UO-PIO Group should coordinate with the PIO's of all involved safety agencies as well as the FAA Press Information Officer to prepare a press release for distribution to the Media

### 434.3  DOCUMENTATION
Any aircraft accident (crash) within the University, regardless of whether injuries or deaths occur, shall be documented in a police report.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000276

**Exhibit 1**
**Page 266 of 550**



**Policy**
**436**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Field Training and Evaluation Program

### 436.1  PURPOSE AND SCOPE
The Field Training and Evaluation Program (FTEP) is intended to provide a standardized program to facilitate the officer's transition from the academic setting to the actual performance of general law enforcement duties of the University of Oregon Police Department.

It is the policy of this department to assign all new police officers to a structured Field Training and Evaluation Program complies with DPSST training requirements and that is designed to prepare the new officer to perform in a patrol assignment possessing all skills needed to operate in a safe, productive and professional manner.

### 436.2  FIELD TRAINING OFFICER SELECTION AND TRAINING
The Field Training Officer (FTO) is an experienced officer trained in the art of supervising, training and evaluating entry level and lateral police officers in the application of their previously acquired knowledge and skills.

A minimum of a 3 year commitment with continuous satisfactory performance evaluations will be required of FTOs.

### 436.2.1  SELECTION PROCESS
FTO's will be selected based on the following requirements:

    (a)    Desire to be an FTO

    (b)    Minimum of 2 years of patrol experience, 1 of which shall be with this department

    (c)    Demonstrated ability as a positive role model

    (d)    Participate and pass an internal oral interview selection process

    (e)    FTEP Supervisory review of personnel files (Any derogatory information to be forwarded to the Chief and Assistant Chief)

    (f)    Satisfactory evaluation by supervisors and current FTO's

    (g)    Final approval by both the Chief and Assistant Chief

### 436.2.2  TRAINING
An officer selected as a Field Training Officer shall successfully complete an approved Field Training Officer's Course prior to being assigned as an FTO.

All FTO's must complete additional training as identified by the FTEP supervisor.

### 436.3  FIELD TRAINING AND EVALUATION PROGRAM SUPERVISOR
The supervisor will be responsible for coordinating the activities of the FTOs and trainees. For all matters related to FTEP, the FTEP supervisor will report to and receive direction from the Captain of Administration.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000277

**Exhibit 1**
**Page 267 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Field Training and Evaluation Program*

The responsibilities of the FTEP supervisor include the following:

(a)  Assignment of trainees to FTOs

(b)  Conducting FTO meetings

(c)  Maintain and ensure FTO/Trainee performance evaluations are completed

(d)  Maintain, update and issue the Field Training Manual to each trainee

(e)  Monitor individual FTO performance

(f)  Monitor overall FTEP Program

(g)  Maintain liaison with FTO Coordinators of other agencies

(h)  Maintain liaison with academy staff on recruit performance during the academy

(i)  Develop ongoing training or training requirements for FTOs

(j)  Prepare a quarterly report for the program, to include trainees' progress and FTO effectiveness

436.3.1   FTEP SUPERVISOR SELECTION PROCESS
The FTEP Supervisor will be selected based upon the following criteria:

(a)  Previous experience as a FTO for a minimum of 1 year

(b)  Successful completion of the FTEP supervisor's course or equivalent, or will have completed within 1 year

(c)  Rank of Sergeant, or above

(d)  Appointed by the Chief or his/her designee

## 436.4   TRAINEE DEFINED
Any entry level or lateral officer newly appointed to the University of Oregon Police Department.

## 436.5   REQUIRED TRAINING
Entry level officers shall be required to successfully complete the Field Training Program, consisting of a minimum of 12 weeks. However, this program will typically consist of a 20 week training period (refer to same training period in Section 436.10, Sample FTEP Program). Based on circumstances, the training period can be extended beyond 20 weeks, as approved by the Chief or designee.

The training period for lateral officers may be modified depending on the trainee's demonstrated performance and level of experience, but shall consist of a minimum of 4 weeks.

To the extent practicable, entry level and lateral officers should be assigned to a variety of Field Training Officers, shifts and geographical areas during their Field Training Program.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000278

**Exhibit 1**
**Page 268 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Field Training and Evaluation Program*

436.5.1  FIELD TRAINING MANUAL

Each new officer will be issued a Field Training Manual at the beginning of his/her Primary Training Phase. This manual is an outline of the subject matter and/or skills necessary to properly function as an officer with the University of Oregon Police Department. The officer shall become knowledgeable of the subject matter as outlined. He/she shall also become proficient with those skills as set forth in the manual.

The Field Training Manual will specifically cover those policies, procedures, rules and regulations enacted by the Department.

Additionally, the Field Training Manual will consist of a check-off style section. This portion of the manual will be completed by the FTO and trainee. Upon completion of this section of the manual it will be reviewed by the FTEP supervisor, FTEP administrator, Patrol Sergeant and Chief or his/her designee. Upon completion, this document will be maintained in the trainee's training file. A copy of the signed last page will be forwarded to DPSST for their records and retention.

## 436.6  EVALUATIONS

Evaluations are an important component of the training process and shall be completed as outlined below.

436.6.1  FIELD TRAINING OFFICER

The FTO will be responsible for the following:

(a)  Complete and submit a written evaluation (Daily Observation Report) on the performance of his/her assigned trainee to the FTEP supervisor on a daily basis. Review the Daily Observation Report (DORs) with the trainee each day.

(b)  Complete a detailed end-of-phase performance evaluation on his/her assigned trainee at the end of each phase of training. Forward this evaluation to the FTO supervisor and then to the FTEP Administrator for review and initial.

(c)  Sign off all completed topics contained in the Field Training Manual, noting the method(s) of learning and evaluating the performance of his/her assigned trainee.

436.6.2  FIELD TRAINING ADMINISTRATOR

The FTEP administrator, Captain of Administration, will review, collect, and maintain the DORs provided by the FTEP supervisor in the trainee's training file.

436.6.3  TRAINEE

At the completion of the Field Training Program, the trainee will be encouraged to submit a confidential performance evaluation on each of their FTO's and on the FTEP Program. This performance evaluation will be reviewed by the FETP Supervisor and forwarded to the FTEP Administrator. It will be the responsibility of the administrator to advise if unique training needs exist or something unusual has developed. This will be reported to the Chief or designee.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000279

**Exhibit 1**
**Page 269 of 550**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Field Training and Evaluation Program*

436.6.4   FTEP SUPERVISOR
Prepare appropriate program modifications in coordination with the FTEP Administrator to the program based upon feedback and observations.

Prepare a quarterly report outlining the status of FTOs, Trainees and the program.

**436.7   DOCUMENTATION**
All documentation of the Field Training and Evaluation Program will be retained in the officer's training files and will consist of the following:

(a)   Daily Observation Reports

(b)   End of phase evaluations

(c)   FTEP Supervisor's evaluation

(d)   The completed Field Training Manual

(e)   A Certificate of Completion certifying that the trainee has successfully completed the required number of hours of field training

**436.8   PATROL REVIEW BOARD**
Once a trainee has completed his/her shadow phase, the trainee's FTEP results and supporting documentation will be provided to the Patrol Review Board.

The Board will consist of:

(a)   One Police Officer or Public Safety Officer (the same as the trainee)

(b)   One or more of the trainee's FTOs

(c)   One Patrol Supervisor (Sergeant or Sergeant)

(d)   FTEP Supervisor

(e)   FTEP Administrator

The Patrol Review Board will not be a standing committee. Each time the FTEP Supervisor convenes the committee, it will consist of new members as described above, with the exception of the FTEP Supervisor and Administrator.

Based upon the Board's review, a final recommendation will be made to the Chief regarding the trainee. The Chief will make the final decision regarding appropriate actions. The Patrol Review Board can recommend the following actions:

(a)   Release the trainee from the FTEP program to Patrol

(b)   Retain the trainee in the FTEP program for an additional period of time to be determined by the trainee's need

(c)   Removal of the trainee from the FTEP program

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000280

**Exhibit 1**
**Page 270 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Field Training and Evaluation Program*

### 436.9  COMPENSATION
There will be no additional compensation for duties related to the FTEP program.

### 436.10  SAMPLE FTEP PROGRAM

| Phase | FTO | Shift Assignment | Duration | Notes |
|---|---|---|---|---|
| 1 | N/A | Pre-Academy | 2 weeks | |
| 2 | A | Watch 2 | 5 weeks | |
| 3 | B | Watch 3 | 5 weeks | |
| 4 | C | Watch 1 | 5 weeks | |
| 5 | A | Shadow Phase | 2 weeks | 1 week FTO in plain clothes as a rider / 1 week solo Officer, with FTO shadow on calls |

### 436.11  FTEP ADMINISTRATOR
The administrator will be responsible for oversight of the FTEP program.

#### 436.11.1  FTEP ADMINISTRATOR SELECTION PROCESS
The Captain of Administration will serve as the FTEP administrator.

#### 436.11.2  FTEP ADMINISTRATOR RESPONSIBILITIES
The responsibilities of the FTEP administrator include the following:

  (a)  Maintain regular contact with the FTEP supervisor.

  (b)  Assess the FTEP supervisor's performance and include this assessment as part of the supervisor's annual performance evaluation.

  (c)  Propose to the Chief and Assistant Chief appropriate modifications to the program based upon feedback and observations.

  (d)  Compose an annual report outlining the program's accomplishments.

### 436.12  TRAINING COSTS
Whenever statutorily required, an officer who voluntarily leaves employment with his/her original employing governmental agency and is subsequently employed by the UOPD in a position that requires the same training as required for the position with the original employing governmental agency, UOPD shall reimburse the original employing governmental agency for training costs incurred by the original employing governmental agency in accordance with the reimbursement schedule in ORS 181.695(3) if that agency requests. Additionally, when a UOPD officer leaves

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000281

**Exhibit 1**
**Page 271 of 550**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Field Training and Evaluation Program*

this department in a similar fashion and becomes employed by another governmental agency similarly situated, UOPD may seek reimbursement for its training costs.

The Chief will determine if UOPD will seek reimbursement of its training costs. The UOPD Director of Administrative Services will be responsible for arranging for reimbursement, in either case.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department



**Policy**
**440**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Detentions And Photographing Detainees

### 440.1   PURPOSE AND SCOPE
The purpose of this policy is to establish guidelines for conducting field interviews (FI), pat-down searches and the taking and retention of photographs of persons detained in the field but not arrested. Due to a variety of situations confronting the officer, the decision to FI or photograph a field detainee shall be left to the discretion of the involved officer based on the totality of the circumstances available to them at the time of the detention.

### 440.2   DEFINITIONS
**Detention** - Occurs when an officer intentionally, through words, actions or physical force causes an individual to reasonably believe he/she is being required to restrict his/her movement. Detentions also occur when an officer actually restrains a person's freedom of movement.

**Consensual Encounter** - Occurs when an officer contacts an individual but does not create a detention through words, actions or other means. In other words, a reasonable individual would believe that his/her contact with the officer is voluntary.

**Field Interview  (FI)** - The brief detainment of an individual, whether on foot or in a vehicle, based on reasonable suspicion for the purposes of determining the individual's identity and resolving the officer's suspicions.

**Field Photographs** - Field photographs are defined as posed photographs taken of a person during a contact, detention, or arrest in the field. Undercover surveillance photographs of an individual and recordings captured by the normal operation of a Mobile Audio Video (MAV) system when persons are not posed for the purpose of photographing considered field photographs.

**Frisk or Pat-Down Search** - This is the normal type of search used by officers in the field to check an individual for weapons. It involves a thorough patting down of clothing to locate any weapons or dangerous items that could pose a danger to the officer, the detainee or others (Oregon Revised Statutes 131.625).

**Reasonable Suspicion** - Occurs when, under the totality of the circumstances, an officer has articulable facts that criminal activity may be afoot and a particular person is connected with that possible criminal activity.

**Stop** - The brief detainment of an individual, whether on foot or in a vehicle, based on reasonable suspicion that the person has committed, or is about to commit a crime. (Oregon Revised Statutes 131.615).

### 440.3   FIELD INTERVIEWS
Officers may stop individuals for the purpose of conducting an FI where reasonable suspicion is present. In justifying the stop, the officer should be able to point to specific facts which, when taken together with rational inferences, reasonably warrant the stop. Such facts include, but are not limited to, the following:

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000283

**Exhibit 1**
**Page 273 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Detentions And Photographing Detainees*

    (a)    The appearance or demeanor of an individual suggests that he/she is part of a criminal enterprise or is engaged in a criminal act.

    (b)    The actions of the suspect suggest that he/she is engaged in a criminal activity.

    (c)    The hour of day or night is inappropriate for the suspect's presence in the area.

    (d)    The suspect's presence in the particular area is suspicious.

    (e)    The suspect is carrying a suspicious object.

    (f)    The suspect's clothing bulges in a manner that suggests he/she is carrying a weapon.

    (g)    The suspect is located in proximate time and place to an alleged crime.

    (h)    The officer has knowledge of the suspect's prior criminal record or involvement in criminal activity.

## 440.3.1   INITIATING A FIELD INTERVIEW
An officer may initiate the stop of a person when there is articulable, reasonable suspicion to do so. A person, however, should not be detained longer than is reasonably necessary to resolve the officer's suspicions.

Nothing in this policy is intended to discourage consensual contacts. Frequent and random casual contacts with consenting individuals are encouraged by the University of Oregon Police Department to strengthen our community involvement, community awareness and problem identification.

## 440.3.2   WITNESS IDENTIFICATION AND INTERVIEWS
Because potential witnesses to an incident may be lost or the integrity of their statements compromised with the passage of time, officers should, when warranted by the seriousness of the case, take reasonable steps to promptly coordinate with an on-scene supervisor and/or criminal investigators to utilize available personnel for the following:

    (a)    Identify all persons present at the scene and in the immediate area.

        1.    When feasible, a recorded statement should be obtained from those persons who claim not to have witnessed the incident but who were present at the time it occurred.

        2.    Any potential witness who is unwilling or unable to remain available for a formal interview should not be detained absent reasonable suspicion to detain or probable cause to arrest. Without detaining the individual for the sole purpose of identification, officers should attempt to identify the witness prior to his/her departure.

    (b)    Witnesses who are willing to provide a formal interview should be asked to meet at a suitable location where criminal investigators may obtain a recorded statement. Such witnesses, if willing, may be transported by department personnel.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000284

**Exhibit 1**
**Page 274 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Detentions And Photographing Detainees*

1. A written, verbal or recorded statement of consent should be obtained prior to transporting a witness in a department vehicle. When the witness is a minor, consent should be obtained from the parent or guardian, if available, prior to transportation.

## 440.4  FRISK OR PAT-DOWN SEARCHES
A frisk or pat-down search of a detained subject may be conducted whenever an officer reasonably believes that the person may possess a dangerous or deadly weapon and presents a danger to the officer or other persons present (ORS 131.625). Circumstances that may establish justification for performing a pat-down search include, but are not limited to the following:

(a) The type of crime suspected, particularly in crimes of violence where the use or threat of weapons is involved

(b) Prior knowledge of the suspect's use of force and/or propensity to carry deadly weapons

(c) The appearance and demeanor of the suspect

(d) Visual indications which suggest that the suspect is carrying a firearm or other weapon

(e) Statements made by the suspect, witnesses or other persons

Also, see Policy 902 (Custody Searches)

## 440.5  FIELD PHOTOGRAPHS
Before photographing any field detainee, the officer shall carefully consider, among other things, the factors listed below.

### 440.5.1  FIELD PHOTOGRAPHS TAKEN WITH CONSENT
Field photographs may be taken when the subject of the photograph knowingly and voluntarily gives consent.

### 440.5.2  FIELD PHOTOGRAPHS TAKEN WITHOUT CONSENT
Field photographs may be taken without consent only if they are taken during a detention that is based on reasonable suspicion of criminal activity, and the photograph serves a legitimate law enforcement purpose related to the detention. Mere knowledge or suspicion of gang membership or affiliation is not a sufficient justification for taking a photograph without consent. The officer must be able to articulate facts that reasonably indicate that the subject was involved in, or was about to become involved in, criminal conduct.

If, prior to taking a photograph, the officer's reasonable suspicion of criminal activity has been dispelled, the detention must cease and the photograph should not be taken.

All field photographs and related reports shall be submitted and retained in compliance with this policy.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000285

**Exhibit 1**
**Page 275 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Detentions And Photographing Detainees*

## 440.6  SUPERVISOR RESPONSIBILITY
While it is recognized that field photographs often become valuable investigative tools, supervisors should monitor such practices in view of the above listed considerations. This is not to imply that supervisor approval is required before each photograph. Access to field photographs shall be strictly limited to law enforcement purposes.

## 440.7  DISPOSITION OF PHOTOGRAPHS
All detainee photographs must be adequately labeled when they are submitted with either an associated FI card (labeled with the dispatch sequence number of the contact) or other report explaining the nature of the contact. If an individual is photographed as a suspect in a particular crime, the photograph should be submitted as an evidence item in the related case, following standard evidence procedures.

If a photograph is not associated with an investigation where a case number has been issued, the photograph will be submitted with the dispatch sequence number as an identifier. An FI card will be written and will contain the sequence number. The photograph will be purged as described in Policy § 440.7.1.

    (a)    If the photo and associated FI is relevant to criminal street gang enforcement, the officer will mark the FI appropriately, include the dispatch sequence number for the photo and a copy of the FI will be forward to the Gang Unit Supervisor (as defined in Policy 442).

When a photograph is taken in association with a particular case, the detective may use such photograph in a photo lineup. Thereafter, the individual photograph should be retained as a part of the case file.

### 440.7.1  PURGING THE FIELD PHOTO FILE
The Communications and Emergency Response Manager will be responsible for ensuring that photographs retained by the department, accompanied by an FI card, that are more than one year old and no longer serve a law enforcement purpose are periodically purged and destroyed. Photographs that continue to serve a legitimate law enforcement purpose may be retained longer than one year provided that a notation of that fact is added to the file for each additional year that they are retained. Access to the FI photo file shall be strictly limited to law enforcement purposes.

A photograph need not be purged but may be retained as an updated photograph in a prior booking file if the person depicted in the photograph has been booked by the University of Oregon Police Department and the arrest file remains in the Records Section.

## 440.8  PHOTO REVIEW POLICY
Any person who has been the subject of a field photograph or an FI by this agency during any contact other than an arrest may file a written request within 30 days of the contact requesting a review of the status of the photograph/FI. The request shall be directed to the office of the Chief of Police who will ensure that the status of the photograph or FI is properly reviewed according

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000286

**Exhibit 1**
**Page 276 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Detentions And Photographing Detainees*

to this policy. Upon a verbal request, the Department will send a request form to the requesting party along with a copy of this policy.

### 440.8.1    REVIEW PROCESS
Upon receipt of such a written request, the Chief of Police or his or her designee will permit the individual to appear in person (any minor must be accompanied by their parent or legal guardian) for a review of the status of the photograph/FI.

Such a meeting will generally be scheduled during regular business hours within 30 days of the receipt of the written request. An extension of the 30-day limit may be made either upon the mutual convenience of the parties or if, at the discretion of the Chief of Police, there appears to be an ongoing legitimate law enforcement interest which warrants a delay. If the delay could jeopardize an ongoing investigation, nothing in this policy shall require the Chief of Police to disclose the reason(s) for the delay.

A meeting for the review of the status of any non-arrest photograph/FI is not intended to be a formal hearing, but simply an informal opportunity for the individual to meet with the Chief of Police or his/her to discuss the matter.

After carefully considering the information available, the Chief of Police or his/her designee will determine, generally within 30 days of the original meeting, whether the photograph/FI was obtained in accordance with existing law and University of Oregon Police Department policy and, even if properly obtained, then whether there is any ongoing legitimate law enforcement interest in retaining the photograph/FI.

If the Chief of Police or his/her designee determines that the photograph/FI was obtained in accordance with existing law and department policy and that there is an ongoing legitimate law enforcement interest in retaining the non-arrest photograph, the photograph/FI shall be retained according to this policy and applicable law.

If the Chief of Police or his/her designee determines that the original legitimate law enforcement interest in retaining a non-arrest FI no longer exists or that the original FI was not obtained in accordance with established law or department policy, the original FI may only be destroyed upon the execution of a full and complete waiver of liability by the individual (and guardian if a minor) arising out of that field contact.

If the Chief of Police or his/her designee determines that any involved University of Oregon Police Department personnel violated existing law or department policy, the Chief of Police or designee shall initiate a separate internal investigation which may result in additional training, discipline or other appropriate action for the involved employees.

Within 30 days of the Chief of Police's determination the person photographed/FI'd will be notified in writing whether or not the photograph/FI will be retained. This does not entitle any person to any discovery or access to any law enforcement records not otherwise authorized by law.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000287

**Exhibit 1**
**Page 277 of 550**



**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Criminal Street Gangs

### 442.1  PURPOSE AND SCOPE
The University of Oregon Police Department must ensure that organized criminal activity does not victimize our community.

This policy establishes procedures to be used to identify criminal street gangs and gang members or associates, and to properly document gang related contacts and investigate gang related incidents.

### 442.1.1  POLICY
It is the express policy of the Department to actively seek out, aggressively investigate, and prosecute criminal activities that involve street gangs.

### 442.2  DEFINITIONS

### 442.2.1  CRIMINAL GANG
An ongoing organization, association, or group of three or more persons, whether formal or informal, who engage in criminal activity and who identify themselves with a color, number or other identifier.

In addition to the above definition, the members of the gang must meet one of the following sets of criteria:

(a)   The members conspire to commit, or have committed, crimes meeting at least one of the following:

   1.   As part of a pattern of street crimes which advance the suspected criminal gang's interest.

   2.   To attract attention to the suspected criminal gang or enhance its standing.

   3.   To benefit the suspected criminal gang.

   4.   To announce the existence of the suspected criminal gang, its members, or its territorial claim.

   5.   In response to the race, religion, sexual orientation, national origin, or gang association of the victim.

(b)   The members of the suspected criminal gang meet at least three of the following criteria:

   1.   Admit or assert to the police that they are affiliated with a criminal gang.

   2.   Participate in a gang initiation ritual or ceremony.

   3.   Have been identified as participating in a criminal gang by an out of state law enforcement agency.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000288

**Exhibit 1**
**Page 278 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Criminal Street Gangs*

    4.    Have announced to the police that they are willing to commit assaults, crimes, or make other sacrifices for the suspected criminal gang.

    5.    Have criminal gang tattoos.

    6.    Wear clothing or jewelry unique to the suspected criminal gang or use a hand sign or language that, due to context, clearly indicates association as a criminal gang.

## 442.2.2   GANG MEMBER OR ASSOCIATE
A gang member or associate is an individual who qualifies in one of the following four categories:

(a)    A person can be designated as a gang member if there is reasonable suspicion that the subject has conspired to commit, or has committed, a crime in accordance with any one of the following:

    1.    As a part of a pattern of street crimes facilitated by the efforts of other gang affiliates which advance their interest.

    2.    To attract the attention of, or enhance his/her standing with, the criminal gang.

    3.    To benefit the criminal gang.

    4.    To announce the existence of the suspected criminal gang, its membership or its territorial claim.

    5.    In response to the race, color, religion, sexual orientation, national origin or gang association of the victim.

(b)    Designation as a gang member requires two of the following criteria:

    1.    Subject has admitted or asserted to the police that he/she is affiliated with a criminal gang.

    2.    Subject has participated in a criminal gang initiation ritual or ceremony.

    3.    Subject has been identified as a gang member by an out of state law enforcement agency.

    4.    Subject has displayed knowledge of the gang's history, leadership, activities, or rituals in a context that clearly indicates affiliation with the criminal gang.

    5.    Subject has announced to the police that he/she is willing to commit crimes or make other sacrifices for the criminal gang.

    6.    Subject has a criminal gang tattoo.

    7.    Subject repeatedly (twice or more) associates with known gang affiliates.

    8.    Subject wears clothes or jewelry unique to a gang or uses a hand sign or language that due to content or context clearly indicates affiliation with a criminal gang.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000289

**Exhibit 1**
**Page 279 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Criminal Street Gangs*

    (c)    Designation as a gang associate requires that:

        1.    Based on the training and experience of the officer, there is documented reasonable suspicion to believe the suspect is involved in a criminal gang, however, there is not enough documentation to designate them a gang member. For example, the subject is in a photograph with other people who collectively display criminal gang signs or apparel to exhibit solidarity.

    (d)    Combined with any other element from the above categories, documented reasonable suspicion based on the training and experience of the officer can be used to designate a subject as a gang member.

## 442.2.3 GANG INFORMATION OFFICER
Person(s) responsible for gathering and compiling gang information for its submission to the the Eugene Police Department Special Investigations Unit and any statewide program that may exist for the collection and dissemination of gang related information.

## 442.2.4 GANG UNIT SUPERVISOR
The Investigations Sergeant is responsible for supervising the collection, processing, storage, and sharing of information regarding Criminal Street Gangs, Members or Associates.

## 442.3 REPORTING CRITERIA
Officers should complete a report, as indicated below, for any of the following:

    (a)    Any contact with a previously documented gang member or associate based on an Oregon DOJ hit as a gang affiliate.

    (b)    Any contact with a person who appears to meet the criteria above for documentation as a gang member or associate.

    (c)    Any criminal activity associated with persons either previously documented, or meeting the criteria for documentation, as a criminal gang member.

    (d)    Any incident of gang-related activities:

        1.    Graffiti

        2.    Fights

        3.    Thefts, robberies, drug distribution, extortion

    (e)    Contact with any vehicles believed to be related to gang activity or gang members or associates.

## 442.3.1 SPECIFIC INFORMATION TO GATHER

    (a)    Information required to determine eligibility for documentation as indicated in the definitions section, above.

    (b)    Photograph all graffiti. The photo may be imported to the crime report.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000290

**Exhibit 1**
**Page 280 of 550**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Criminal Street Gangs*

> (c)   Attempt to photograph new gang related persons contacted, including tattoos if possible.

### 442.3.2  CONTACT OR INCIDENT REPORTING

> (a)   For reportable incidents and crimes use normal department procedures utilizing Incident, Custody or other appropriate department forms.

> (b)   Person contact (no crime/incident): FI card or Information Report.

> (c)   Non-criminal gang information: FI card or Information Report.

> (d)   Crime or Information Reports will be processed through normal procedures and copies of reports will be forwarded to the Gang Unit Supervisor.

### 442.4  DOCUMENTATION PROCEDURE

UOPD participates with all local and regional gang documentation efforts and submits all gang related information to the Eugene Police Department for inclusion in that process.

Oregon Revised Statute 181.575 prohibits the retention of information except when that information directly relates to a criminal investigation and there are reasonable grounds to suspect the subject of the information is or may be involved in criminal conduct. Information that is not directly associated with the investigation of a crime will not be retained in the Gang Information Officer's files. Investigative reports may be stored in the normal department records system if the information otherwise meets normal department reporting and records retention criteria.

### 442.5  GANG INCIDENT INVESTIGATION

The Department will assign investigations in the most effective manner; utilizing the Gang Information Officer(s) and Gang Unit Supervisor where needed to quickly and efficiently investigate gang incidents. Officers who are investigating criminal activity and who have need of information regarding gang activity from other agency files may request the assistance of the Gang Information Officer or Gang Unit Supervisor in retrieving the required information.

### 442.5.1  SHARING OF INFORMATION

Officers who develop or learn information about documented criminal gangs or gang associates related to potential criminal activity should share the information with other officers through established sharing methods. Information that is shared, must also be documented as per this policy to avoid an inadvertent miscommunication or establishment of gang files/records that do not comply with the criteria of this policy.

The Gang Information Officer and Gang Unit Supervisor will participate with local and regional gang information processes and act as a conduit of information from other agencies to members of UOPD.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000291

**Exhibit 1**
**Page 281 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Criminal Street Gangs*

**442.6   CRIMINAL GANG INTELLIGENCE DATABASES**
While this policy does not establish a criminal gang intelligence database or permanent file, as described in OAR 137-090-0080, the Chief of Police may approve one or more criminal gang intelligence databases, such as a statewide repository, for use by members of the gang unit. Any such database should be compliant with 28 CFR 23.20 and OAR 137-090-0000 et seq., regulating criminal intelligence systems. Employees must obtain the requisite training before accessing any such database.

It is the gang unit supervisor's responsibility to determine whether a report or Field Interview (FI) contains information that would qualify for entry into a department approved criminal gang intelligence database in consultation with the agency in charge of the database if it is not sponsored by UOPD.

Validation and purging of the criminal gang intelligence database authorized for UOPD entry is the responsibility of the gang unit supervisor.

442.6.1   REVIEW AND PURGING OF TEMPORARY CRIMINAL GANG PARTICIPANT FILE
Temporary files shall not be retained longer than one year. At the end of one year, temporary files must be purged if the information does not qualify for entry into a department-approved criminal gang intelligence database.

The gang unit supervisor shall periodically review temporary files to verify that the information was properly obtained and meets the criteria for retention. Validation and purging of temporary criminal gang files is the responsibility of the gang unit supervisor. Retention and purging shall correspond to the department's established records retention guidelines.

The gang unit supervisor should otherwise ensure that temporary criminal gang participant files and "working files" are maintained under the model of OAR 137-090-0080.

**442.7   FIELD CONTACTS**
Officers who contact individuals who are or may be participants in criminal street gang activity should complete an FI card and document the reasonable suspicion underlying the contact and the exact circumstances leading to the suspicion that the individual is a criminal street gang participant (e.g., subject states he/she is a member of XYZ gang, has XYZ tattoo on right hand near thumb, is wearing a ball cap with the gang name printed in blue or red ink).

Photographing known or suspected criminal street gang participants shall be done in accordance with the provisions of the Detentions, Contacts and Photographing Detainees Policy.

**442.8   INQUIRY BY PARENT OR GUARDIAN**
When an inquiry is made by a parent or guardian as to whether a juvenile's name is in the temporary criminal street gang participant's file, such information shall be provided by the Gang unit supervisor unless there is good cause to believe that the release of such information may jeopardize an ongoing criminal investigation.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000292

**Exhibit 1
Page 282 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Criminal Street Gangs*

If the inquiry is made by a parent or guardian regarding a non-juvenile, the information may be provided at the discretion of the gang unit supervisor, however, if the subject is a student at the U of O, the supervisor will consult with General Counsel to avoid FERPA issues.

Employees must observe strict compliance with the rules of a department-approved gang intelligence database regarding release of information from that database.

## 442.9   DISSEMINATIONS OF THE FILE INFORMATION
Information from the temporary criminal street gang participant files may only be furnished to department personnel and other public law enforcement agencies on a need-to-know basis. This means information that may be of use in the prevention of gang-related criminal activity or information concerning the investigation of gang-related crimes shall only be released to members of this department and other law enforcement agencies.

Information from any department-approved gang intelligence file must only be released in compliance with the rules for that particular database.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000293

**Exhibit 1**
**Page 283 of 550**



**Policy**
**446**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Mobile Audio Video

### 446.1  PURPOSE AND SCOPE
The  University of Oregon Police Department has equipped patrol cars with Mobile Audio Video (MAV) recording systems to provide records of events and assist officers in the performance of their duties. This policy provides guidance on the use of these systems.

### 446.1.1  DEFINITIONS
Definitions related to this policy include:

**Activate -** Any process that causes the MAV system to transmit or store video or audio data in an active mode.

**In-car camera system and Mobile Audio Video (MAV) system -** Synonymous terms which refer to any system that captures audio and video signals, that is capable of installation in a vehicle, and that includes at minimum, a camera, microphone, recorder and monitor.

**Body Worn Camera/Portable Audio Recorders -** Any system that captures audio and/or video signals, that is capable of being worn on an officers body.

**MAV technician -** Designated personnel who are certified, trained or have a working knowledge in areas such as; operational use and repair of MAVs, Body Worn Cameras and Portable Audio Recorders, duplicating methods, storage and retrieval methods and procedures, video forensics and evidentiary procedures relating to MAV, Body Worn Camera and Portable Audio Recorder files.

**Recorded media -** Audio-video signals recorded or digitally stored on a storage device or portable media.

### 446.2  POLICY
It is the policy of the University of Oregon Police Department to use mobile audio and video technology to more effectively fulfill the department's mission and to ensure these systems are used securely and efficiently.

### 446.3  OFFICER RESPONSIBILITIES
Prior to going into service, each officer will properly equip him/herself to record audio and video in the field. System documentation is accomplished by the officer logging on to the system at the start and logging off at the end of each shift. If any of the systems are malfunctioning, the officer shall take the device or vehicle out of service. In the case of MAV, a supervisor may request the vehicle remain in service.

(a)  At the start of each shift, officers should test the system's on-off-record functions for proper operation.

(b)  At the end of the shift, each officer will upload any recordings.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000294

**Exhibit 1**
**Page 284 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Mobile Audio Video*

(c)  The MAV wireless microphone shall be worn at all times by officers assigned to a patrol function.  A body worn camera may be worn in lieu of using the MAV wireless microphone.

(d)  Uniformed officers shall carry the MAV wireless microphone or body worn camera while on duty, in a manner that allows for easy operation without impairing equipment capabilities.

(e)  At no time should an officer jeopardize his/her safety in order to activate any device.

(f)  Officers shall not use any device for personal use.

(g)  A supervisor observing or directing officers need not record the contact unless they become actively involved with the participants in the incident.

(h)  Written reports should state that a recording device was used.

(i)  Officers shall not intentionally delete any recordings. Inadvertent deletions must be reported immediately to the officers supervisor.

(j)  Officers will ensure that the MAV cameras are always pointed in a direction that best captures the intended field of view.

446.3.1  CLASSIFICATION OF UPLOADED RECORDINGS
Officers will classify uploaded recordings as an "incident" if it is anticipated the recording could be used as evidence in a future criminal or administrative proceeding.

Officers will classify uploaded recordings as a "non-incident" if it is anticipated the recording has no evidentiary value in a future criminal or administrative proceeding.

When testing the MAV system, officers will classify uploaded recordings as a "test" if it is anticipated the recording has no evidentiary value in a future criminal or administrative proceeding.

Recordings classified as "incident" will result in a high definition recording that takes up much more storage room than incidents marked "non-incident." Therefore. it is imperative that recordings are classified appropriately.

**446.4  ACTIVATION OF THE MAV**
The MAV system is designed to turn on whenever the unit's emergency lights are activated or manually activated by the officer. The system remains on until it is turned off manually. The audio portion is independently controlled and should be activated manually by the officer whenever appropriate.

When audio is being recorded, the video will also record. Whenever the audio portion is activated, officers should, whenever possible, advise all persons present that they are being recorded in accordance with ORS 165.540(5)(c). Officers are not required to place themselves, another person, or a criminal investigation in jeopardy in order to make such notification.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000295

**Exhibit 1**
**Page 285 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Mobile Audio Video*

446.4.1  REQUIRED ACTIVATION OF MAV

This policy is not intended to describe every possible situation in which the MAV system may be used, although there are many situations where its use is appropriate. An officer may activate the system any time the officer believes it would be appropriate or valuable to document an incident.

In some circumstances it is not possible to capture images of the incident due to conditions or the location of the camera. However, the audio portion can be valuable evidence and is subject to the same activation requirements as the MAV. The MAV system should be activated in any of the following situations:

(a) All field contacts involving actual or potential criminal conduct within video or audio range:

    1. Traffic stops (to include, but not limited to, traffic violations, stranded motorist assistance and all crime interdiction stops)

    2. Priority responses

    3. Vehicle pursuits

    4. Suspicious vehicles

    5. Arrests

    6. Vehicle searches

    7. Physical or verbal confrontations or use of force

    8. Pedestrian checks

    9. DWI/DUI investigations including field sobriety tests

    10. Consensual encounters

    11. Crimes in progress

    12. Responding to an in-progress call

(b) All self-initiated activity in which an officer would normally notify Communications and Emergency Response Center

(c) Any call for service involving a crime where the recorder may aid in the apprehension and/or prosecution of a suspect:

    1. Domestic violence calls

    2. Disturbance of peace calls

    3. Offenses involving violence or weapons

(d) Any other contact that becomes adversarial after the initial contact, in a situation that would not otherwise require recording

(e) Any other circumstance where the officer believes that a recording of an incident would be appropriate

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000296

**Exhibit 1**
**Page 286 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Mobile Audio Video*

## 446.4.2   CESSATION OF RECORDING
Once activated, the MAV system should remain on until the incident has concluded except as described in 446.3 and 446.4.4. For purposes of this section, conclusion of an incident has occurred when all arrests have been made, arrestees have been transported and all witnesses and victims have been interviewed. Recording may cease if an officer is simply waiting for a tow truck or a family member to arrive, or in other similar situations.

## 446.4.3   WHEN ACTIVATION IS NOT REQUIRED
Activation of the MAV system is not required when exchanging information with other officers or during breaks, lunch periods, when not in service or actively on patrol.

No member of this department may surreptitiously record a conversation of any other member of this department except with a court order or when lawfully authorized by the Chief of Police or the authorized designee for the purpose of conducting a criminal or administrative investigation. Failure to properly notify may be a violation of ORS 165.540.

## 446.4.4   PRIVACY
All recordings made by personnel acting in their official capacity as members of this department shall remain the property of the Department and should not be considered private. Personnel shall not use any recordings obtained from any recording device for any purpose other than a legitimate law enforcement purpose.

Personnel shall not use facial recognition or any other biometric matching technology to analyze recordings through any recording system.

Officers should take into consideration reasonable privacy concerns when deciding to activate any recording system.

## 446.4.5   SUPERVISOR RESPONSIBILITIES
Supervisors should determine if vehicles with non-functioning MAV systems should be placed into service. If these vehicles are placed into service, the appropriate documentation should be made, including notification of Communications and Emergency Response Center.

Once a month, supervisors shall validate that officers are in compliance with this policy.

When an incident arises that requires the immediate retrieval of the recorded media (e.g., serious crime scenes, officer-involved shootings, department-involved collisions), a supervisor shall respond to the scene and ensure that the appropriate supervisor, MAV technician or crime scene investigator properly retrieves the recorded media. The media may need to be treated as evidence and should be handled in accordance with current evidence procedures for recorded media.

## 446.4.6   INADVERTENT RECORDINGS
Whenever the audio portion of the MAV is activated, officers will advise all persons present that they are being recorded. Failure to properly advise may be a misdemeanor crime.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000297

**Exhibit 1**
**Page 287 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Mobile Audio Video*

If an officer discovers that they have inadvertently recorded conversations, they will immediately report the facts and circumstances to their immediate supervisor, and supply the recording.

The supervisor shall determine all of the facts and circumstances surrounding the recording.

If any portion of the recording has evidentiary value (for criminal or administrative purposes):

(a) (a) Identify, if possible, any and all individuals whose conversations were inadvertently recorded

(b) Ensure that each of those identified individuals is contacted, advised of the situation, and, if they request, provide an opportunity for them to review the recording.

(c) Document, in writing, the relevant facts and results of their actions to the Administrative Captain (via the chain of command).

(d) Retain the recording in the normal method and appropriately marked.

If none of the recording is evidentiary (for criminal or investigative purposes)

(a) Do not review the recording

(b) Forward the recording and the pertinent facts to the Administrative Captain or designee who will determine the appropriate actions and disposition of the recording.

## 446.5  REVIEW OF MAV RECORDINGS

All recording media, recorded images and audio recordings are the property of the Department. Dissemination outside of the agency is strictly prohibited, except to the extent permitted or required by law.

To prevent damage to, or alteration of, the original recorded media, it shall not be copied, viewed or otherwise inserted into any device not approved by the department MAV technician or forensic media staff. When reasonably possible, a copy of the original media shall be used for viewing (unless otherwise directed by the courts) to preserve the original media.

Recordings may be reviewed in any of the following situations:

(a) For use when preparing reports or statements

(b) By a supervisor investigating a specific act of conduct

(c) By a supervisor to assess performance while the officer is present

(d) To assess proper functioning of MAV systems

(e) By department investigators who are participating in an official investigation, such as a personnel complaint, administrative inquiry or a criminal investigation

(f) By department personnel who request to review recordings

(g) By an officer who is captured on or referenced in the video or audio data and reviews and uses such data for any purpose relating to his/her employment

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000298

**Exhibit 1**
**Page 288 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Mobile Audio Video*

(h)    By court personnel through proper process or with permission of the Chief of Police or the authorized designee

(i)    By the media through proper process or with permission of the Chief of Police or the authorized designee

(j)    To assess possible training value

(k)    Recordings may be shown for training purposes. If an involved officer objects to showing a recording, his/her objection will be submitted to the staff to determine if the training value outweighs the officer's objection

Members desiring to view any previously uploaded or archived MAV recording should submit a request in writing to the Watch Commander. Approved requests should be forwarded to the MAV technician for processing.

In no event shall any recording be used or shown for the purpose of ridiculing or embarrassing any member.

## 446.6  DOCUMENTING MAV USE

If any incident is recorded with either the video or audio system, the existence of that recording shall be documented in the officer's report. If a citation is issued, the officer shall make a notation on the back of the records copy of the citation indicating that the incident was recorded.

## 446.7  RECORDING MEDIA STORAGE AND INTEGRITY

Once submitted for storage, all recording media will be labeled and stored in a designated secure area. All recording media that is not booked as evidence will be retained for a minimum of 180 days and disposed of in compliance with the established records retention schedule.

### 446.7.1  COPIES OF ORIGINAL RECORDING MEDIA

Original recording media shall not be used for any purpose other than for initial review by a supervisor. Upon proper request, a copy of the original recording media will be made for use as authorized in this policy.

Original recording media may only be released in response to a court order or upon approval by the Chief of Police or the authorized designee. In the event that an original recording is released to a court, a copy shall be made and placed in storage until the original is returned.

### 446.7.2  MAV RECORDINGS AS EVIDENCE

Officers who reasonably believe that a MAV recording is likely to contain evidence relevant to a criminal offense or to a potential claim against the officer or against the University of Oregon Police Department should indicate this in an appropriate report. Officers should ensure relevant recordings are preserved.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000299

**Exhibit 1**
**Page 289 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Mobile Audio Video*

### 446.8   SYSTEM OPERATIONAL STANDARDS

(a)   MAV system vehicle installations should be based on officer safety requirements and the vehicle and device manufacturer's recommendations.

(b)   The MAV system should be configured to minimally record for 30 seconds prior to an event.

(c)   The MAV system may not be configured to record audio data occurring prior to activation.

(d)   Unless the transmitters being used are designed for synchronized use, only one transmitter, usually the primary initiating officer's transmitter, should be activated at a scene to minimize interference or noise from other MAV transmitters.

(e)   Officers using digital transmitters that are synchronized to their individual MAV shall activate both audio and video recordings when responding in a support capacity. This is to obtain additional perspectives of the incident scene.

(f)   With the exception of law enforcement radios or other emergency equipment, other electronic devices should not be used inside MAV-equipped law enforcement vehicles to minimize the possibility of causing electronic or noise interference with the MAV system.

(g)   Officers shall not erase, alter, reuse, modify or tamper with MAV recordings. Only a supervisor, MAV technician or other authorized designee may erase and reissue previous recordings and may only do so pursuant to the provisions of this policy.

(h)   To prevent damage, original recordings shall not be viewed on any equipment other than the equipment issued or authorized by the MAV technician.

### 446.9   MAV TECHNICIAN RESPONSIBILITIES

The MAV technician is responsible for:

(a)   Ordering, issuing, retrieving, storing, erasing and duplicating of all recorded media.

(b)   Collecting all completed media for oversight and verification of wireless downloaded media. Once collected, the MAV technician:

 1.   Ensures it is stored in a secure location with authorized controlled access.

 2.   Makes the appropriate entries in the chain of custody log.

(c)   Erasing of media:

 1.   Pursuant to a court order.

 2.   In accordance with established records retention policies, including reissuing all other media deemed to be of no evidentiary value.

(d)   Assigning all media an identification number prior to issuance to the field:

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000300

**Exhibit 1**
**Page 290 of 550**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Mobile Audio Video*

       1.    Maintaining a record of issued media.

(e)    Ensuring that an adequate supply of recording media is available.

(f)    Managing the long-term storage of media that has been deemed to be of evidentiary value in accordance with the department evidence storage protocols and the records retention schedule.

### 446.10  PROHIBITED USE OF MAV DEVICES
Officers are prohibited from using department MAV devices for personal use and are prohibited from making personal use of recordings. In no event shall any recording be used or shown for the purpose of ridiculing or embarassing any member.

Officers are also prohibited from retaining recordings or information obtained while on-duty. Officers shall not duplicate or distribute such recordings, except for authorized legitimate law-enforcement purposes. All such recordings shall be retained at the department.

### 446.11  TRAINING
All members who are authorized to use the MAV system shall successfully complete an approved course of instruction prior to its use.

### 446.12  RETENTION OF RECORDINGS
Any time an officer records any portion of a contact that the member reasonably believes constitutes evidence in a criminal case, the officer shall record the related case number and upload the file.

Any time an officer reasonably believes a recorded contact may be beneficial in a non-criminal matter (e.g., a hostile contact), the officer should promptly notify a supervisor of the existence of the recording.

Officers shall upload files, in accordance with the current procedure for storing digital files, a the end of their shift and any time the storage capacity is nearing its limit.

All recordings captured by Mobile Audio Video systems that are of evidentiary value, should be retained per normal procedure.

All recordings that are not related to a court proceeding or ongoing criminal investigation shall be retained for at least 180 days, but no longer than 30 months.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000301

**Exhibit 1**
**Page 291 of 550**



**Policy**
**447**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Portable Audio/Video Recorders

**447.1  PURPOSE AND SCOPE**
The University of Oregon Police Department provides each of its sworn officers with access to digital audio and/or video recorders for use while on-duty. These recorders are intended to assist officers in the performance of their duties by providing an accurate audio and/or video record of a contact. This policy does not apply to surreptitious interception of electronic communications for lawful authorized investigative purposes or to mobile audio video recordings (see the Mobile Audio Video Policy).

**447.1.1  DEFINITIONS**
Definitions related to this policy include:

**Activate -** Any process that causes the MAV system to transmit or store video or audio data in an active mode.

**Body Worn Camera(BWC)/Digital Recorder -** Any system that captures audio and/or video signals, that is capable of being worn on an officers body.

**Recorded media -** Audio-video signals recorded or digitally stored on a storage device or portable media.

**447.1.2  INADVERTENT RECORDINGS**
If an officer discovers that they inadvertently recorded conversations, they will immediately report the facts and circumstances to their immediate supervisor, and supply the recording.

The supervisor shall determine all of the facts and circumstances around the recording.

If any portion of the recording has evidentiary value (for criminal or administrative purposes):

    (a)   Identify, if possible, any and all individuals whose conversations were inadvertently

    (b)   recorded.

    (c)   Ensure that each of those identified individuals is contacted, advised of the situation,

    (d)   and, if they request, provide an opportunity for them to review the recording.

    (e)   Document, in writing, the relevant facts and results of their actions to the Police Operations Captain (forwarded through their chain of command).

    (f)   Retain the recording in the normal method and appropriately marked.

If none of the recording is evidentiary (for criminal or administrative purposes):

    (a)   Do not review the recording.

    (b)   Forward the recording and pertinent facts to the Police Operations Captain who will determine the appropriate actions and disposition of the recording.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000302

**Exhibit 1**
**Page 292 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Portable Audio/Video Recorders*

### 447.2  OFFICERS RESPONSIBILITIES

Whenever the audio is activated officers will, if possible, advise all persons present they are being recorded in accordance with ORS 165.540(5). Failure to properly advise may be a misdemeanor crime. Exceptions can be made when the announcement may impair a criminal investigation or jeopardize officer safety or the safety of any other person. Exceptions also apply to situations such as a public meeting or rally. (2015 Oregon Laws ORS 165.540(2) through (7) and ORS 133.726.

(a)  Only those digital recorders issued by the department are authorized for use by UOPD personnel.

(b)  Each officer assigned a digital recorder will maintain the equipment in working order while in their possession.

(c)  Uniformed officers shall carry the recorder while on duty, in a manner that is conspicuous and allows for easy operation without impairing equipment capabilities.

(d)  Officers wearing body worn cameras shall be worn on the torso and in a position designed to produce an effective recording. Officers may wear the department-approved alternative style body worn camera equipment above the torso or as otherwise directed.

(e)  Non-uniformed officers may carry an issued portable recorder at any time the member believes that such a device may be useful.

(f)  At no time should an officer jeopardize his/her safety in order to activate the recorder.

(g)  Officers shall not use the digital recorder for personal use.

(h)  A supervisor observing or directing officers need not record the contact unless they become actively involved with the participants in the incident.

(i)  Prior to entering service, each digital recorder user will verify the operational capability of their device.

(j)  Recordings on the digital recorder should be accompanied by a written report for any criminal investigations. Written reports should state that a recorder was used.

(k)  Officers shall not intentionally delete any recordings. Inadvertent deletions must be reported immediately to the officer's supervisor.

(l)  All officers who are authorized to use digital recorders shall successfully complete an approved course of instruction prior to use.

(m)  Officers may use a body worn camera to take still photographs for legitimate law enforcement purposes.

(n)  The body worn camera may be detached from the officer and used in similar mode that a camcorder could be used by law enforcement.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000303

**Exhibit 1**
**Page 293 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Portable Audio/Video Recorders*

**447.3  PRIVACY**

All recordings made by personnel acting in their official capacity as members of this department shall remain the property of the Department and should not be considered private.

Community members do not have a reasonable expectation of privacy when talking with a police officer during the scope of the officer's official duties, even when contact occurs in a private residence. However, members should remain sensitive to the dignity of all individuals being recorded and exercise discretion to respect privacy by discontinuing recording whenever it reasonably appears to the member that such privacy may outweigh any legitimate law enforcement interest in recording. Examples and situations include, but are not limited to:

    (a)   A witness or victim who wishes to remain anonymous or refuses to provide a statement if recorded and the encounter is non-confrontational

    (b)   Recordings that would jeopardize safety planning for victims

    (c)   Recordings that would disclose private security measures of residences or businesses

    (d)   Recordings that would interfere with the ability to conduct an investigation due to sensitive circumstances (e.g., nudity, a victim of rape, child sex abuse, presence of child pornography, incest, or other form of sexual assault)

Requests by members of the public to stop recording should be considered using this same criterion. Recording should resume when privacy is no longer an issue unless the circumstances no longer fit the criteria for recording. The request to turn the BWC off should be recorded, as well as the officer's response, and included in the report narrative.

**447.3.1  RECORDING RESTRICTIONS**

Officers should restrict recording to areas and persons necessary in order to obtain evidence and information relevant to the incident and should attempt to minimize collateral intrusion to those not involved.

Digital audio and/or video recorders should not be intentionally used in the following circumstances, unless officers are engaged in the legitimate performance of their duties and the use is documented in a police report (i.e. fresh pursuit, use of force, dangerous circumstances.) If there is a potential that a TASER CEW is in proximity to a TASER Body Worn Camera in one of these locations and officers are not intentionally activating their recorder or have the need to have the recorder in standby mode, the officers should have the recorder in the off mode:

    (a)   Restroom, break room, or fitness room.

    (b)   Recorders shall be turned off when in the department's locker rooms.

    (c)   When an officer would be recording a patient during a medical, health care provider or psychological evaluation by a clinician or similar health care professional, or during treatment. When recording in hospitals or other health care facilities, officers should be careful to avoid recording persons other than the suspect or witnesses that are deemed relevant to the matter being investigated by the officer.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000304

**Exhibit 1**
**Page 294 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Portable Audio/Video Recorders*

(d) Communications made in a psychiatric facility, unless responding to a call involving a suspect who is thought to be present in the facility.

(e) Encounters with undercover officers or confidential informants.

(f) When an officer is engaged in conversations with individuals with whom the officer is in a privileged relationship (e.g., spouse, attorney, police peer counselor, labor representative,

(g) Casual communications with other police personnel.

(h) When an officer is on break or is otherwise engaged in personal activities.

(i) Inside the police facilities, during roll calls, during briefings and/or incident debriefings, in-service training, and departmental meetings.

(j) Places of worship and/or religious ceremonies.

(k) Community policing activities

## 447.4  MEMBER RESPONSIBILITIES
Whenever the audio recording is activated, officers will, if possible advise all persons present they are being recorded in accordance with ORS 165.540(5). Failure to properly advise may be a misdemeanor crime. Exceptions can be made when the announcement may impair a criminal investigation or jeopardize officer safety, or the safety of any other persons. Exceptions also apply to situations, such as a public meeting or rally. (2015 Oregon Laws c. 550 § 1 ORS 165.540(2) through (7) and ORS 133.726.

## 447.5  ACTIVATION OF THE DIGITAL RECORDER
Officers should activate the recorder during all enforcement stops and field interview situations in conjunction with the MAV and any other time the member reasonably believes that a recording of an on-duty contact may be useful. Once started, recordings should continue without interruption until the contact ends, if feasible.

Officers are allowed to de-activate the recorder when exchanging information with other officers and supervisors. Only primary officers are required to record contacts with digital recorders. Secondary or cover officers are not required to record the contact unless they take action or have conversations independent of the primary officer, or the specific circumstances dictate.

### 447.5.1  SURREPTITIOUS USE OF THE AUDIO RECORDER
Oregon law generally prohibits any individual from surreptitiously recording any conversation, except as provided in ORS 165.540 and ORS 165.543.

Members shall not surreptitiously record another department member without a court order or unless lawfully authorized by the Chief of Police or the authorized designee.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000305

**Exhibit 1**
**Page 295 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Portable Audio/Video Recorders*

### 447.6  PROHIBITED USE OF PORTABLE RECORDERS
Officers are prohibited from using department-issued portable recorders and recording media for personal use and are prohibited from making personal copies of recordings. In no event shall any recording be used or shown for the purpose of ridiculing or embarrassing any member.

Officers are also prohibited from retaining recordings of activities or information obtained while on-duty. Officers shall not duplicate or distribute such recordings, except for authorized legitimate department business purposes. All such recordings shall be retained at the Department.

### 447.7  RETENTION OF RECORDINGS
Any time an officer records any portion of a contact that the member reasonably believes constitutes evidence in a criminal case, the officer shall record the related case number and upload the file in accordance with policy 814 - Computers and Digital Evidence and document the existence of the recording in the related case report.

Any time an officer reasonably believes a recorded contact may be beneficial in a non-criminal matter (e.g., a hostile contact), the officer should promptly notify a supervisor of the existence of the recording.

Officers should upload the file, in accordance with current procedure for storing digital files, at the end of their shift and any time the storage capacity is nearing its limit.

### 447.7.1  RETENTION REQUIREMENTS
All files from BWCs shall be securely stored in accordance with state records retention laws and will be purged after no longer useful for purposes of training, or for use in an investigation or prosecution (including appeals), or for use in resolving a claim or pending litigation, or disciplinary investigation. In capital punishment prosecutions, files shall be kept until the alleged offender is no longer under control of a criminal justice agency.

All recordings shall be retained for a period consistent with the requirements of the institution's public records retention policies, but in no event for a period less than 180 days. Recordings no longer needed for a court proceeding or an ongoing criminal investigation shall not be retained for more than 30 months (2015 Oregon Laws c. 550, § 1). (Refer to the retention schedule.)

The retention period begins from the date the BWC recording was labeled or categorized. Department administrators, in addition to the recording officer, may label or categorize recordings for retention. Officers will periodically be directed by the System Administrator(s) or designee to label or categorize any recorded media which had not previously been labeled or categorized.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000306

**Exhibit 1**
**Page 296 of 550**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Portable Audio/Video Recorders*

**447.8  ANNUAL REVIEW**
At the end of each fiscal year the Operations Captain and the Administrative Captain shall perform a review of the Portable Audio/Visual Recorder system. This review shall focus only on the merit of the recorder systems, program management, technological functionality, and policy review.

**447.9  REVIEW AND USE OF RECORDINGS**
Recordings may be reviewed consistent with UOPD Policy 446.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000307

**Exhibit 1**
**Page 297 of 550**



**Policy**
**449**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Mobile Data Terminal Use

### 449.1  PURPOSE AND SCOPE
The Mobile Data Terminal (MDT) accesses confidential records from the Oregon State Police and Department of Motor Vehicles databases. Employees using the MDT shall comply with all appropriate federal and state rules and regulations.

### 449.2  MDT USE
The MDT shall be used for official police communications only. Messages that are of a sexual, racist, or offensive nature, or otherwise critical of any member of the Department are strictly forbidden. MDT use is also subject to the Department Technology Use Policy.

Messages may be reviewed by supervisors at any time without prior notification. Employees generating or transmitting messages not in compliance with this policy are subject to discipline.

All calls dispatched to patrol units should be communicated by voice and MDT unless otherwise authorized by the Executive Coordinator.

Any agency using a terminal to access the Law Enforcement Data System (LEDS), whether directly or through another agency, is responsible for adhering to all applicable LEDS Rules & Policies and must ensure that unauthorized persons are not given access or allowed to view LEDS information.

### 449.2.1  USE WHILE DRIVING
Use of the MDT by the vehicle operator shall be limited to times when the vehicle is stopped. When the vehicle is in motion, the operator should only attempt to read messages that are likely to contain information that is required for immediate enforcement, investigative or safety needs.

### 449.2.2  DOCUMENTATION OF ACTIVITY
MDT's and voice transmissions are used to record the officer's daily activity. To ensure the most accurate recording of these activities, the following are required:

   (a)   All contacts or activity shall be documented at the time of the contact

   (b)   Whenever the activity or contact is initiated by voice, it shall be entered into the Computer Aided Dispatch (CAD) system by a dispatcher

   (c)   Whenever the activity or contact is not initiated by voice, the officer shall record it on the MDT

   1.   Non voiced activity should be a rare situation, for example logging out at a meeting. At no time should any contact for possible criminal or statute violation not be aired via radio.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000308

**Exhibit 1**
**Page 298 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Mobile Data Terminal Use*

### 449.2.3   STATUS CHANGES
All changes in status (e.g., arrival at scene, meal periods, in service) will be transmitted either verbally over the police radio or through the MDT system.

Officers responding to in-progress calls shall advise changes in status verbally over the radio to assist other officers responding to the same incident.

Other changes in status may be entered by depressing the appropriate keys on the MDT's.

### 449.2.4   EMERGENCY ACTIVATION OF MDT
If the emergency button is depressed on the MDT, the dispatcher will call the unit and ask if Code-4. If there is no emergency, then he/she should answer "Code-4" and all units will resume their normal activity. If there is no response or the officer answers in some other way, the dispatcher shall proceed as follows:

(a)    If the unit is not on a call, send available units to assist in locating the unit transmitting the emergency. Whenever a location is known, immediately dispatch the nearest available unit Code-3.

(b)    Notify the field sergeant and Watch Commander of the incident without delay.

Units not responding to the emergency shall refrain from transmitting on the radio until there is a Code-4, unless they are themselves handling an emergency.

## 449.3   MDT CONSIDERATIONS

### 449.3.1   NON-FUNCTIONING MDT
Whenever possible, officers will not use units with malfunctioning MDT's. Whenever officers must drive a unit in which the MDT is not working, they shall notify Communications and Emergency Response Center. It shall be responsibility of Communications and Emergency Response Center to record all information that will then be transmitted verbally over the police radio.

### 449.3.2   BOMB CALLS
When investigating reports of possible bombs, officers will turn off their MDT's. Operating the MDT may cause some devices to detonate.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000309

**Exhibit 1**
**Page 299 of 550**



**Policy**
**452**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Medical Marijuana

**452.1  PURPOSE AND SCOPE**
The purpose of this policy is to provide members of this department with guidelines for investigating the acquisition, possession, transportation, delivery, production or use of marijuana under Oregon's medical marijuana laws (Oregon Medical Marijuana Act, ORS 475.300 et seq.).

**452.1.1  DEFINITIONS**
Definitions related to this policy include:

**Cardholder** - Any patient or caregiver who has been issued a valid Registry Identification Card (RIC).

**Caregiver (or designated primary caregiver)** - An individual 18 years of age or older who has significant responsibility for managing the well-being of a person who has been diagnosed with a debilitating medical condition and who is designated as such on either that person's application for a RIC or in other written notification to the Oregon Health Authority. Caregiver does not include the person's attending physician (ORS 475.302).

**Grower** - A person responsible for a marijuana grow site, who has been selected to produce medical marijuana for a patient and has been registered by the Oregon Health Authority for this purpose (OAR 333-008-0010).

**Mature marijuana plant** - A marijuana plant that has flowers, is 12 or more inches tall or 12 inches or more in diameter (OAR 333-008-0010).

**Medical use of marijuana** - The production, possession, delivery or administration of marijuana, or paraphernalia used to administer marijuana, as necessary for the exclusive benefit of a person to mitigate the symptoms or effects of the person's debilitating medical condition (ORS 475.302).

**Patient** - A person who has been diagnosed with a debilitating medical condition within the previous 12 months and been advised by his/her attending physician that the medical use of marijuana may mitigate the symptoms or effects of that debilitating medical condition (ORS 475.319). This includes a person who has been issued a valid RIC for his/her medical condition (ORS 475.309).

**Registry Identification Card (RIC)** - A document issued by the Oregon Health Authority that identifies a person authorized to engage in the medical use of marijuana and the person's designated primary caregiver, if any (ORS 475.302).

**Statutory possession amounts** - Up to six mature marijuana plants and 24 ounces of usable marijuana. The amount is limited to one ounce if the person has a qualifying felony-controlled substance conviction in the past five years (ORS 475.320).

**Statutory grow site amounts** - Grow site amounts, perpatient, are generally limited to both of the following (ORS 475.320):

(a)    Up to six mature plants and up to 24 ounces of usable marijuana.

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000310

**Exhibit 1**
**Page 300 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Medical Marijuana*

(b)  Up to 18 marijuana seedlings or starts (a marijuana plant that has no flowers, is less than 12 inches in height and less than 12 inches in diameter) (OAR 333-008-0010).

**Usable marijuana** - The dried leaves and flowers of the plant Cannabis family Moraceae, and any mixture or preparation thereof, that are appropriate for medical use. Usable marijuana does not include the seeds, stalks and roots of the plant (ORS 475.302).

## 452.2  POLICY
It is the policy of the University of Oregon Police Department to prioritize resources to avoid making arrests related to marijuana that the arresting officer reasonably believes would not be prosecuted by state or federal authorities.

Oregon medical marijuana laws are intended to protect patients and their doctors from criminal and civil penalties that may deter the use of small amounts of marijuana by those suffering from debilitating medical conditions (ORS 475.300). However, Oregon's medical marijuana laws do not affect federal laws and there is no medical exception under federal law for the possession or distribution of marijuana. The University of Oregon Police Department will exercise discretion to ensure laws are appropriately enforced without unreasonably burdening both those individuals protected under Oregon law and the resources of the Department.

## 452.3  INVESTIGATION
Investigations involving the possession, delivery, production or use of marijuana generally fall into one of several categories:

(a)  Investigations when no person makes a medicinal claim.

(b)  Investigations related to patient cardholders.

(c)  Investigations related to patient non-cardholders.

### 452.3.1  INVESTIGATIONS WITH NO MEDICINAL CLAIM
In any investigation involving the possession, delivery, production or use of marijuana or drug paraphernalia where no person claims that the marijuana is used for medicinal purposes, the officer should proceed with a criminal investigation. A medicinal defense may be raised at any time, so officers should document any statements and observations that may be relevant to whether the marijuana was possessed or produced for medicinal purposes.

### 452.3.2  INVESTIGATIONS RELATED TO PATIENT CARDHOLDERS
Officers shall not arrest a cardholder for engaging in the medical use of marijuana with amounts at or below statutory possession amounts or statutory grow site amounts (ORS 475.306). Officers shall not arrest a caregiver for assisting a patient cardholder in the medical use of marijuana with amounts at or below statutory possession amounts or statutory grow site amounts (ORS 475.306).

Cardholders are required to possess a RIC when using or transporting marijuana at a location other than the cardholder's residence. However, officers should treat a person without a RIC in

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000311

**Exhibit 1**
**Page 301 of 550**

# University of Oregon Police Department
### University of Oregon Police Department Policy Manual

*Medical Marijuana*

his/her possession as if it were in his/her possession if the RIC can be verified through an Oregon State Police Law Enforcement Data Systems (LEDS) query or other sources.

## 452.3.3   INVESTIGATIONS RELATED TO PATIENT NON-CARDHOLDERS

Officers should not arrest a patient who does not have a RIC for possession or production of marijuana, or any other criminal offense in which possession or production of marijuana is an element, if the patient (ORS 475.319):

(a)   Is engaged in the medical use of marijuana.

(b)   Possesses an amount at or below statutory possession amounts or the amount cultivated is at or below statutory grow site amounts.

Officers should not arrest a person who does not meet the definition of a patient if the person is taking steps to obtain a RIC, possesses at or below statutory possession amounts or below statutory grow site amounts, and the person's medical use claim appears genuine under the circumstances (ORS 475.319).

## 452.3.4   ADDITIONAL CONSIDERATIONS

Officers should consider the following when investigating an incident involving marijuana possession, delivery, production or use:

(a)   Grow sites are regulated in the following manners (ORS 475.304):

   1.   The Oregon Health Authority must have issued a marijuana grow site registration card for a site to be valid.

   2.   The grow site registration card must be posted for each RIC holder for whom marijuana is being produced at a marijuana grow site.

(b)   Officers confiscating excess amounts of marijuana may not confiscate from a RIC holder usable marijuana or plants at or less than the statutory possession amounts that are allowed under the law (ORS 475.324).

(c)   Because enforcement of medical marijuana laws can be complex, time consuming and call for resources unavailable at the time of initial investigation, officers may consider submitting a report to the prosecutor for review, in lieu of making an arrest. This can be particularly appropriate when:

   1.   The suspect has been identified and can be easily located at another time.

   2.   The case would benefit from review by a person with expertise in medical marijuana investigations.

   3.   Sufficient evidence, such as photographs or samples, has been lawfully obtained.

   4.   Any other relevant factors, such as available department resources and time constraints.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000312

**Exhibit 1**
**Page 302 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Medical Marijuana*

(d) Before proceeding with enforcement related to grow sites, officers should consider conferring with appropriate legal counsel.

(e) Possession of a RIC pursuant to ORS 475.309 does not alone constitute probable cause to search the person or property of the cardholder or otherwise subject the person or property of the cardholder to inspection (ORS 475.323).

(f) Medicinal marijuana investigations may lead to separate issues related to industrial hemp. Persons or entities who operate under the industrial hemp laws of Oregon must have the required industrial hemp license or agricultural hemp seed production permit issued by the Oregon Department of Agriculture (ORS 571.305). Officers may contact the Department of Agriculture's Commodity Inspection Division for information about industrial hemp sites and licensing compliance.

452.3.5    EXCEPTIONS

Medical marijuana users are generally not exempt from other criminal laws and officers should enforce criminal laws not specifically covered by the Medical Marijuana Act appropriately. Officers may take enforcement action if the person (ORS 475.316):

(a) Drives under the influence of marijuana as provided in ORS 813.010.

(b) Engages in the medical use of marijuana in a place where the general public has access (ORS 161.015), in public view or in a correctional facility (ORS 162.135(2)), or in a youth correction facility (ORS 162.135(6)).

(c) Delivers marijuana to any individual who the person knows is not in possession of a RIC.

(d) Delivers marijuana for consideration to any individual, even if the individual is in possession of a RIC.

(e) Manufactures or produces marijuana at a place other than a marijuana grow site authorized under ORS 475.304.

## 452.4    FEDERAL LAW ENFORCEMENT

Officers should provide information regarding a marijuana investigation to federal law enforcement authorities when it is requested by federal law enforcement authorities or whenever the officer believes those authorities would have a particular interest in the information.

## 452.5    PROPERTY AND EVIDENCE ROOM SUPERVISOR RESPONSIBILITIES

The Property and Evidence Section Supervisor shall ensure that marijuana, drug paraphernalia or other related property seized from a person engaged or assisting in the use of medical marijuana is not destroyed, harmed, neglected or injured. The Property and Evidence Section Supervisor is not responsible for caring for live marijuana plants (ORS 475.323).

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000313

**Exhibit 1**
**Page 303 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Medical Marijuana*

Marijuana should not be returned to any person unless authorized by the Investigation Unit Supervisor and upon advice of University counsel. Any court order to return marijuana should be referred to University counsel.

The Property and Evidence Section Supervisor may release marijuana to federal law enforcement authorities upon presentation of a valid court order or by a written order of the Investigation Unit Supervisor.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000314

**Exhibit 1**
**Page 304 of 550**



**Policy**
**458**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Foot/Bicycle Pursuits

## 458.1  PURPOSE AND SCOPE
Foot and bicycle pursuits are inherently dangerous and require common sense, sound tactics and heightened officer safety awareness. This policy sets forth guidelines to assist officers in making the decision to initiate or continue the pursuit of suspects on foot or while riding a patrol bicycle by balancing the objective of apprehending the suspect with the risk of potential injury to anyone.

### 458.1.1  POLICY
Officers are expected to act reasonably, based on the totality of the circumstances. Absent exigent circumstances, the safety of department personnel and the public should be the primary consideration when determining whether a foot or bicycle pursuit should be initiated or continued. Officers must be mindful that immediate apprehension of a suspect is rarely more important than the safety of the public and department personnel.

## 458.2  DECISION TO PURSUE
Officers may be justified in initiating a foot or bicycle pursuit of any individual who the officer reasonably believes is about to engage in, is engaging in or has engaged in criminal activity. The decision to initiate or continue such a foot pursuit, however, must be continuously re-evaluated in light of the circumstances presented at the time.

Mere flight by a person who is not suspected of criminal activity shall not serve as the sole justification for engaging in an extended foot or bicycle pursuit without the development of reasonable suspicion of the individual's involvement in criminal activity.

Deciding to initiate or continue a foot or bicycle pursuit is a decision that an officer must make quickly and under unpredictable and dynamic circumstances. It is recognized that foot and bicycle pursuits potentially place department personnel and the public at significant risk. Therefore, no officer or supervisor shall be disciplined for deciding not to engage in a foot or bicycle pursuit because of the perceived risk involved.

Officers must also consider whether they are readily identifiable as a police officer by their attire (e.g. uniform) or, if not in uniform, access to a badge and identification that can be shown to the suspect and other community members that may witness the pursuit.

If circumstances permit, surveillance and containment are generally the safest tactics for apprehending fleeing persons. In deciding whether to initiate or continue a foot or bicycle pursuit, officers should continuously consider reasonable alternatives to pursuit based upon the circumstances and resources available, such as the following:

(a)  Containment of the area

(b)  Canine search

(c)  Saturation of the area with patrol personnel

(d)  Aerial support

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000315

**Exhibit 1**
**Page 305 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Foot/Bicycle Pursuits*

(e)    Apprehension at another time when the identity of the suspect is known or there is information available that would likely allow for later apprehension, and the need to immediately apprehend the suspect does not reasonably appear to outweigh the risk of continuing the pursuit.

Supervisors may authorize foot or bicycle pursuits when developing operations plans for special situations and as part of carefully considered rules of engagement. Such authorization will be documented in the operations plan, or other sufficient manner .

### 458.3  GUIDELINES FOR FOOT PURSUIT
Unless the officer reasonably believes that exigent circumstances exist (e.g., a serious threat to the safety of personnel or members of the public), Officers should consider alternatives to engaging in or continuing a foot or bicycle pursuit under the following conditions:

(a)    When directed by a supervisor to terminate the foot pursuit. Such an order shall be considered mandatory.

(b)    When the officer is acting alone.

(c)    When two or more officers become separated, lose visual contact with one another, or obstacles separate them to the degree that they cannot immediately assist each other should a confrontation take place. In such circumstances, it is generally recommended that a single officer keep the suspect in sight from a safe distance and coordinate the containment effort.

(d)    The officer is unsure of his or her location and direction of travel.

(e)    When pursuing multiple suspects and the pursuing officers do not reasonably believe that they would be able to control the suspect should a confrontation occur.

(f)    When the physical condition of the officers renders them incapable of affecting the suspect.

(g)    When the officer loses radio contact with Communications and Emergency Response Center or with backup officers.

(h)    The suspect enters a building, structure, confined space or a wooded or otherwise isolated area and there are insufficient officers to provide backup and containment. The primary officer should consider discontinuing the pursuit and coordinating containment pending the arrival of sufficient officers.

(i)    The officer becomes aware of unanticipated or unforeseen circumstances that increases the risk to the officer or the public to an unreasonable level.

(j)    The officer reasonably believes that the danger to the pursuing officer or public outweighs the objective of immediate apprehension.

(k)    The officer loses possession or function of his/her firearm or other essential equipment.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000316

**Exhibit 1**
**Page 306 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Foot/Bicycle Pursuits*

(l)   The officer or a third party is injured during the pursuit, requiring immediate assistance, and there are no other emergency personnel available to render assistance.

(m)   The suspect's location is no longer definitely known.

(n)   The identity of the suspect is established or other information exists that will allow for the suspect's apprehension at a later time, and it reasonably appears that there is no immediate threat to department personnel or the public if the suspect is not immediately apprehended.

(o)   The officer's ability to safely continue the pursuit is impaired by inclement weather, darkness or other conditions.

## 458.4   RESPONSIBILITIES IN FOOT PURSUITS

### 458.4.1   INITIATING OFFICER RESPONSIBILITIES
Unless relieved by another officers or a supervisor, the initiating officers shall be responsible for coordinating the progress of the pursuit. When acting alone and when practicable, the initiating officers should not attempt to overtake and confront the suspect but should attempt to keep the suspect in sight until sufficient officers are present to safely apprehend the suspect.

Early communication of available information from the involved officers is essential so that adequate resources can be coordinated and deployed to bring a foot pursuit to a safe conclusion. Officers initiating a foot pursuit should broadcast the following information as soon as it becomes practicable and available:

(a)   Unit identifier.

(b)   Location and direction of travel.

(c)   Reason for the pursuit.

(d)   Number of suspects and description.

(e)   Whether the suspect is known or believed to be armed.

Officers should be mindful that radio transmissions made during physical exertion may be difficult to understand and may need to be repeated.

Absent extenuating circumstances, any officers unable to promptly and effectively broadcast this information should terminate the pursuit. If the foot pursuit is discontinued for any reason, immediate efforts for containment should be established and alternatives considered based upon the circumstances and available resources.

When a foot or bicycle pursuit terminates, the officer will notify Communications and Emergency Response Center of his/her location and the status of the pursuit termination (e.g., suspect in custody, lost sight of suspect), and will direct further actions as reasonably appear necessary.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000317

**Exhibit 1
Page 307 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Foot/Bicycle Pursuits*

### 458.4.2   ASSISTING OFFICER RESPONSIBILITIES
Whenever any officer announces that he/she is engaged in a foot or bicycle pursuit, all other officers should minimize non-essential radio traffic to permit the involved officer maximum access to the radio frequency.

Any officers who are in a position to intercept a fleeing suspect, or who can assist the primary officer with the apprehension of the suspect, shall act reasonably and in accordance with department policy, based upon available information and his/her own observations.

### 458.4.3   SUPERVISOR RESPONSIBILITY
Upon becoming aware of a foot or bicycle pursuit, the supervisor shall make every reasonable effort to ascertain sufficient information necessary to direct responding resources and to take command, control and coordination of the pursuit. If the pursuit supervisor does not receive adequate information from the pursuing officer(s) to justify continuation of the pursuit, he/she will terminate the pursuit.

The supervisor should respond to the area whenever possible; the supervisor does not, however, need not be physically present to exercise control over the pursuit. The supervisor shall continuously assess the situation in order to ensure the pursuit is conducted within established department guidelines.

The supervisor shall terminate the pursuit when the danger to pursuing officers or the public unreasonably appears to outweigh the objective of immediate apprehension of the suspect.

Upon apprehension of the suspect, the supervisor shall promptly proceed to the termination point to direct the post-pursuit activity.

### 458.4.4   COMMUNICATIONS AND EMERGENCY RESPONSE CENTER RESPONSIBILITIES
Upon being notified or becoming aware that a foot or bicycle pursuit is in progress, communication personnel shall, as soon as practical, notify the field supervisor and provide available information. Communication personnel are also responsible for the following:

(a)   Clear the radio channel of non-emergency traffic.

(b)   Repeat the transmissions of the pursuing officers as needed.

(c)   Ensure that a field supervisor is notified of the pursuit.

(d)   Relay all pertinent information to responding personnel.

(e)   Contact additional resources as directed by a supervisor.

(f)   Coordinate response of additional resources to assist with the foot pursuit.

### 458.5   REPORTING
The initiating officers shall complete the appropriate crime/arrest reports documenting, at minimum, the following:

(a)   The reason for initiating the foot pursuit.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000318

**Exhibit 1**
**Page 308 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Foot/Bicycle Pursuits*

    (b)   The identity of involved personnel.

    (c)   The course and approximate distance of the pursuit.

    (d)   Whether a suspect was apprehended as well as the means and methods used.

        1.   Any use of force shall be reported and documented in compliance with the Department Use of Force Policy.

    (e)   Any injuries or property damage.

Assisting officers taking an active role in the apprehension of the suspect shall complete supplemental reports as necessary or as directed.

All reports will be routed to the Police Operations Captain for review and annual reporting purposes.

In any case in which a suspect is not apprehended and there is insufficient information to warrant further investigation, a supervisor may authorize that the initiating officers need not complete a formal report. In that case, a synopsis of the pursuit aspects of the case will be written to the Police Operations Captain for review and annual reporting purposes.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000319

**Exhibit 1**
**Page 309 of 550**



**Policy**
**460**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Bicycle Patrol

### 460.1  PURPOSE AND SCOPE
The University of Oregon Police Department has determined that bicycle patrol is an efficient and effective strategy for the purpose of enhancing patrol efforts in the community. Bicycle patrol has been shown to increase officer visibility in congested areas and their quiet operation can provide a tactical approach to crimes in progress. The purpose of this policy is to provide guidelines for the safe and effective operation of the patrol bicycle.

### 460.2  POLICY
Patrol bicycles may be used for regular patrol duty, pedestrian and bicycle enforcement, parking control, or special events. The use of the patrol bicycle will improve officer's mobility and visibility to the community.

Bicycles may be deployed to any area at all hours of the day or night, according to Department needs and as staffing levels allow.

Requests for specific deployment of bicycle patrol officers shall be coordinated through the Executive Coordinator.

### 460.3  SELECTION OF PERSONNEL
Interested sworn personnel, who are off probation, shall submit a change of assignment request to Bicycle Patrol (BP) Coordinator. Qualified applicants will then be invited to an oral interview. The oral board will consist of the BP Coordinator and second person to be selected by the BP Coordinator. Interested personnel shall be evaluated by the following criteria:

    (a)    Recognized competence and ability as evidenced by performance

    (b)    Special skills or training as it pertains to the assignment (all prospective Bicycle Patrol Officers must satisfactorily complete the Basic Bicycle Patrol Training Class and must demonstrate proficiency before their assignment is finalized)

    (c)    Good physical condition

    (d)    Willingness to perform duties using the bicycle as a mode of transportation on all shifts and during all weather conditions

Final selection will be made by the Police Operations Captain, based upon recommendations by the BP Coordinator.

### 460.3.1  BICYCLE PATROL UNIT SUPERVISOR
The Bicycle Patrol Coordinator will be selected from the rank of Sergeant by the Police Operations Captain or his/her designee.

The Bicycle Patrol Coordinator shall have responsibility for the following:

    (a)    Organizing bicycle patrol training.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000320

**Exhibit 1**
**Page 310 of 550**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Bicycle Patrol*

(b)    Inspecting and maintaining inventory of patrol bicycles and program equipment.

(c)    Scheduling maintenance and repairs.

(d)    Evaluating performance of bicycle officers.

(e)    Coordinating activities with the Executive Coordinators.

(f)    Other activities as required to maintain the efficient operation of the Bicycle Patrol program.

### 460.4   TRAINING
Participants in the program have complete an initial department-approved bicycle training course as a condition of being considered for the position. Thereafter bicycle patrol officers should receive in-service training, at least once per year, to improve skills and refresh safety, health and operational procedures. The initial training shall minimally include the following:

•    Bicycle patrol strategies

•    Bicycle safety and accident prevention

•    Operational tactics using bicycles

Bicycle patrol officers will be required to qualify with their duty firearm while wearing bicycle safety equipment including the helmet and riding gloves.

### 460.5   UNIFORMS AND EQUIPMENT
Officers shall wear the department-approved uniform and safety equipment while operating the department bicycle. Safety equipment includes department-approved helmet, riding gloves, protective eyewear and approved footwear.

The bicycle patrol unit uniform consists of the standard short-sleeve uniform shirt or other department-approved shirt with department badge and patches, and department-approved bicycle patrol pants or shorts.

Optional equipment includes a radio head set and microphone, and jackets in colder weather. Turtleneck shirts or sweaters are permitted when worn under the uniform shirt.

Bicycle patrol officers shall carry the same equipment on the bicycle patrol duty belt as they would on a regular patrol assignment.

Officers will be responsible for obtaining the necessary forms, citation books and other department equipment needed while on bicycle patrol.

### 460.6   CARE AND USE OF PATROL BICYCLES
Officers will be assigned a specially marked and equipped patrol bicycle, attached gear bag, two batteries and a charger.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000321

**Exhibit 1**
**Page 311 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Bicycle Patrol*

Bicycles utilized for uniformed bicycle patrol shall be primarily black or white in color with a Police decal affixed to each side of the crossbar or the bike's saddlebag. Every such bicycle shall be equipped with front and rear reflectors, and front lights satisfying the requirements of <u>Oregon Revised Statutes</u> § 815.280(2).

Bicycles utilized for uniformed bicycle patrol shall be equipped with a rear rack and/or saddle bag(s) sufficient to carry all necessary equipment to handle routine patrol calls including report writing and issuing citations.

Each bicycle gear bag shall include a first aid kit, repair tool, and security lock.

Each bicycle shall be equipped with a flashing blue warning light that is visible from the front, sides, or rear of the bicycle. Unless the patrol bicycle is equipped with an emergency light and siren meeting the requirements set forth in the Oregon Revised Statutes and Oregon Administrative Rules, it does not qualify as an emergency vehicle and operators are not exempt from the rules of the road.

Bicycle officers shall conduct an inspection of the bicycle and equipment prior to use to insure proper working order of the equipment. Officers are responsible for the routine care and maintenance of their assigned equipment (e.g., tire pressure, chain lubrication, overall cleaning).

If a needed repair is beyond the ability of the bicycle officer, a repair work order will be completed and forwarded to the program supervisor for repair by an approved technician.

Each bicycle will have scheduled maintenance twice yearly to be performed by a department-approved repair shop/technician.

At the end of a bicycle assignment, the bicycle shall be returned clean and ready for the next tour of duty.

Patrol bicycle batteries shall be rotated on the assigned charger at the end of each tour of duty. During prolonged periods of non-use, each officer assigned an electric bicycle shall periodically rotate the batteries on the respective charges to increase battery life.

Except in the event of an emergency officers shall not remove or add components or modify the patrol bicycle without the expressed approval of the bicycle supervisor.

Vehicle bicycle racks are available should the officer need to transport the patrol bicycle. Due to possible component damage, transportation of the patrol bicycle in a trunk or on a patrol car push-bumper is discouraged.

Except when emergency circumstances preclude doing so patrol bicycles should be properly secured when not in the officer's immediate presence.

Patrol Bicycles may not be taken home or used for personal use.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000322

**Exhibit 1**
**Page 312 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Bicycle Patrol*

### 460.7  OFFICER RESPONSIBILITY

- Officers must operate the bicycle in compliance with the Oregon Revised Statutes, University regulations and training guidelines.

- Officers should generally operate their bicycles in the street as much as possible, unless emergency situations or patrol tactical considerations indicate that it is appropriate to use sidewalks.

- Officers shall never ride anyone as a passenger on a patrol bicycle.

- Officers shall not hold onto, or allaw themselves to be towed by a motor vehicle.

- Officers shall use headlights and taillights during low-light hours, unless a tactical situation indicates that it would be reasonable not to do so.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000323

**Exhibit 1**
**Page 313 of 550**



**Policy
464**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

---

# Homeless Persons

## 464.1   PURPOSE AND SCOPE
The purpose of this policy is to ensure that personnel understand the needs and rights of the homeless and to establish procedures to guide officers during all contacts with the homeless, whether consensual or for enforcement purposes. The University of Oregon Police Department recognizes that members of the homeless community are often in need of special protection and services. The University of Oregon Police Department will address these needs in balance with the overall missions of this department. Therefore, officers will consider the following policy sections when serving the homeless community.

### 464.1.1   POLICY
It is the policy of the University of Oregon Police Department to provide law enforcement services to all members of the community while protecting the rights, dignity and private property of the homeless. Homelessness is not a crime and members of this department will not use homelessness solely as a basis for detention or law enforcement action.

## 464.2   HOMELESS COMMUNITY LIAISON
The Chief of Police will designate a member of this department to act as the Homeless Liaison Officer. The responsibilities of the Homeless Liaison Officer include the following:

(a)   Maintain and make available to all department employees a list of assistance programs and other resources that are available to the homeless.

(b)   Meet with Social Services and representatives of other organizations that render assistance to the homeless.

(c)   Maintain a list of those areas within and near this jurisdiction that are used as frequent homeless encampments.

(d)   Remain abreast of laws dealing with the removal and/or destruction of the personal property of the homeless. This will include the following:

   1.   Proper posting of notices of trespass and clean-up operations.

   2.   Proper retention of property after clean-up, to include procedures for owners to reclaim their property in accordance with Policy Section 804 and other established procedures.

(e)   Be present during any clean-up operation conducted by this department involving the removal of personal property of the homeless to ensure the rights of the homeless are not violated.

(f)   Develop training to assist officers in understanding current legal and social issues relating to the homeless.

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000324

**Exhibit 1
Page 314 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Homeless Persons*

---

## 464.3  FIELD CONTACTS

Officers are encouraged to contact the homeless for purposes of rendering aid, support and for community-oriented policing purposes. Nothing in this policy is meant to dissuade an officer from taking reasonable enforcement action when facts support a reasonable suspicion of criminal activity. However, when encountering a homeless person who has committed a non-violent misdemeanor and continued freedom is not likely to result in a continuation of the offense or a breach of the peace officers are encouraged to consider long-term solutions to problems that may relate to the homeless, such as shelter referrals and counseling in lieu of physical arrest.

Officers should provide homeless persons with resource and assistance information whenever it is reasonably apparent such services may be appropriate.

### 464.3.1  OTHER CONSIDERATIONS

Homeless members of the community will receive the same level and quality of service provided to other members of the community. The fact that a victim or witness is homeless can, however, require special considerations for a successful investigation and prosecution. Officers should consider the following when handling investigations involving homeless victims, witnesses or suspects:

(a)  Document alternate contact information. This may include obtaining addresses and phone numbers of relatives and friends.

(b)  Document places the homeless person may frequent.

(c)  Provide homeless victims with victim/witness resources when appropriate.

(d)  Obtain statements from all available witnesses in the event a homeless victim is unavailable for a court appearance.

(e)  Consider whether the person may be a dependent adult or elder and if so, proceed in accordance with the Elder Abuse Policy.

(f)  Arrange for transportation for investigation related matters, such as medical exams and court appearances.

(g)  Consider whether a crime should be reported and submitted for prosecution even when a homeless victim indicates he/she does not desire prosecution.

## 464.4  HOMELESS ENCAMPMENTS

Officers who encounter encampments, bedding or other personal property in public areas that reasonably appears to belong to a homeless person should not immediately remove or destroy such property and should inform the department Homeless Liaison Officer if such property appears to involve a trespass, blight to the community or is the subject of a complaint. When practicable, requests by the public for clean-up operations of a homeless encampment should be referred to the Homeless Liaison Officer.

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000325

**Exhibit 1**
**Page 315 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Homeless Persons*

464.4.1   HOMELESS CAMPS ON PUBLIC PROPERTY
Prior to removing homeless individuals from an established campsite on public property, officers shall:

(a)   If individuals are present, advise violators that they are camping on public property and such encampments are illegal.

(b)   Post the area with a notice in English and Spanish advising the violators to vacate within 24 hours. This same notice shall list a local agency that delivers social services to homeless individuals.

(c)   Notify the agency listed on the posting of the campsite's location.

(d)   Obtain a case number and prepare a police report documenting the incident.

The 24-hour warning notice requirement is not necessary if officers reasonably believe that illegal activity unrelated to the camping violation is occurring or in the event of an exceptional emergency such as a possible site contamination by hazardous materials, or when there is immediate danger to human life or safety (ORS 203.079).

464.4.2   CAMPING ON PRIVATE PROPERTY
Camping on private property without the owner's permission should be handled as a trespass complaint. Owners of private property may allow individuals to camp, provided they do so in a manner consistent with provisions of the City of Eugene Camping Ordinance or Oregon Administrative Rules.

**464.5   PERSONAL PROPERTY**
The personal property of homeless persons must not be treated differently than the property of other members of the public. Officers should use reasonable care when handling, collecting and retaining the personal property of homeless persons and should not destroy or discard the personal property of a homeless person.

When a homeless person is arrested, or otherwise removed from a public place, officers should make reasonable accommodations to permit the person to lawfully secure his/her personal property. Otherwise, the arrestee's personal property should be collected for safekeeping. If the arrestee has more personal property than can reasonably be collected and transported by the officer, a supervisor should be consulted. The property should be photographed and measures should be taken to remove or secure the property. It will be the supervisor's responsibility to coordinate the removal and safekeeping of the property. Items that have no apparent utility or are in an unsanitary condition may be immediately discarded upon removal of the homeless individual(s) from the camp site (ORS 203.079(d)).

All property collected for safekeeping shall be stored for a minimum of 30 days. The property and evidence technician shall ensure that reasonable efforts are made to inform the owner of status of the property and inform him/her of how and when such property may be claimed (ORS 203.079(d)).

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000326

**Exhibit 1**
**Page 316 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Homeless Persons*

Officers should not conduct or assist in clean-up operations of belongings that reasonably appear to be the property of homeless persons without the prior authorization of a supervisor or the department Homeless Liaison Officer.

## 464.6  MENTAL ILLNESSES AND MENTAL IMPAIRMENTS

Some homeless persons may have mental disabilities. Officers shall not detain a homeless person under a mental illness commitment unless facts and circumstances warrant such a detention as outlined in Policy 418.

When a mental illness hold is not warranted, the contacting officer should provide the homeless person with contact information for mental health assistance as appropriate. In these circumstances, officers may provide transportation to a mental health specialist if the person consents and approved by a supervisor.

## 464.7  ECOLOGICAL ISSUES

Sometimes homeless encampments can impact the ecology and natural resources of the community and may involve criminal offenses beyond mere littering. Officers are encouraged to notify other appropriate agencies or departments when a significant impact to the environment has or is likely to occur. Significant impacts to the environment may warrant a crime report, investigation, supporting photographs and supervisor notification.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Chapter 5 - Traffic Operations

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000328

**Exhibit 1**
**Page 318 of 550**



**Policy**
**500**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Traffic Function and Responsibility

### 500.1  PURPOSE AND SCOPE
The ultimate goal of traffic law enforcement is to reduce traffic collisions. This may be achieved through the application of such techniques as geographic/temporal assignment of personnel and equipment and the establishment of preventive patrols to deal with specific categories of unlawful driving behavior. Traffic enforcement techniques are based on accident data, enforcement activity records, traffic volume, and traffic conditions. This department provides enforcement efforts toward violations, not only in proportion to the frequency of their occurrence in accident situations, but also in terms of traffic-related needs.

### 500.2  TRAFFIC OFFICER DEPLOYMENT
Several factors are considered in the development of deployment schedules for officers of the University of Oregon Police Department. Information provided by Crime Analysis, Department of Motor Vehicles and Oregon Department of Transportation is a valuable resource for traffic accident occurrences and therefore officer deployment. Some of the factors for analysis include:

- Location
- Time
- Day
- Violation factors

All officers assigned to patrol or traffic enforcement functions will emphasize enforcement of accident causing violations during high accident hours and at locations of occurrence. All officers will take directed enforcement action on request, and random enforcement action when appropriate against violators as a matter of routine. All officers shall maintain high visibility while working general enforcement, especially at high accident locations.

Other factors to be considered for deployment are citizen requests, construction zones or special events.

### 500.3  ENFORCEMENT
Unarmed UOPD employees shall not conduct vehicle stops.

Enforcement actions are commensurate with applicable laws and take into account the degree and severity of the violation committed. This department does not establish ticket quotas and the number of arrests or citations issued by any officer shall not be used as the sole criterion for evaluating an officer's overall performance. The visibility and quality of an officer's work effort will be commensurate with the philosophy of this policy. Officers attempting to enforce traffic laws shall be in University of Oregon Police Department uniform or shall conspicuously display an official identification card showing the officer's lawful authority (ORS 810.400). Several methods are effective in the reduction of collisions:

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000329

**Exhibit 1**
**Page 319 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Traffic Function and Responsibility*

### 500.3.1  WARNINGS
Warnings or other non-punitive enforcement actions should be considered in each situation and substituted for arrests or citations when circumstances warrant, especially in the case of inadvertent violations.

### 500.3.2  CITATIONS
Citations may be issued when an officer believes it is appropriate for violations of ORS or OAR's governing traffic at the University of Oregon. It is essential that officers fully explain the rights and requirements imposed on motorists upon issuance of a citation for a traffic violation. Officers should provide the following information at a minimum:

(a)  Explanation of the violation or charge.

(b)  Court, or other, appearance procedures including the optional or mandatory appearance by the motorist.

(c)  Notice of whether the motorist can enter a plea and pay the fine by mail or at the court.

Officers at the scene of a traffic accident and, based upon the officer's personal investigation, having reasonable grounds to believe that a person involved in the accident has committed a traffic offense in connection with the accident, may issue the person a citation for that offense (ORS 810.410(4)).

### 500.3.3  PHYSICAL ARREST
Officer may arrest or issue a citation to a person for a traffic crime at any place within the state. Generally, physical arrests are limited to major traffic offenses such as:

(a)  Driving Under the Influence of Intoxicants.

(b)  Hit-and-Run.

(c)  Attempting to Elude.

(d)  Reckless Driving with extenuating circumstances.

(e)  Situations where a violator refuses or cannot satisfactorily identify him/herself and therefore cannot be issued a citation.

## 500.4  SUSPENDED OR REVOKED DRIVERS LICENSES
If an officer contacts a traffic violator for driving on a suspended or revoked license, the officer may issue a traffic citation pursuant to Oregon Revised Statutes 810.410.

Officers should attempt to interview the violator to obtain evidence that the violator knew their license was suspended. Ask if the violator is still living at the address on file with DMV and if not, how long since they moved and why they haven't notified DMV of their new address.

If a computer check of a traffic violator's license status reveals a suspended or revoked driver's license and the traffic violator still has his or her license in possession, the license shall be seized

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000330

**Exhibit 1**
**Page 320 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Traffic Function and Responsibility*

by the officer and the violator may also be cited for Failure to Return a Suspended License if evidence shows they knew they were suspended (Oregon Revised Statutes 809.500).

**500.5  HIGH-VISIBILITY VESTS**
The University of Oregon Police Department has provided ANSI Class II high-visibility vests to reduce the danger to employees who may be exposed to hazards presented by passing traffic, construction vehicles and disaster recovery equipment (23 CFR 634.3).

Although intended primarily for use while performing traffic related assignments, high-visibility vests should be worn at any time increased visibility would improve the safety or efficiency of the employee.

500.5.1   REQUIRED USE
Except when working in a potentially adversarial or confrontational role, such as during vehicle stops, high-visibility vests should be worn at any time it is anticipated that an employee will be exposed to the hazards of approaching traffic or construction and recovery equipment. Examples of when high-visibility vests should be worn include traffic control duties, accident investigations, lane closures and while at disaster scenes, or anytime high visibility is desirable. When emergency conditions preclude the immediate donning of the vest, officers should retrieve and wear the vest as soon as conditions reasonably permit. Use of the vests shall also be mandatory when directed by a supervisor.

Vests maintained in the investigation units may be used any time a plainclothes officer might benefit from being readily identified as a member of law enforcement.

500.5.2   CARE AND STORAGE OF HIGH-VISIBILITY VESTS
A high-visibility vest shall be maintained in the trunk of each patrol and investigation unit, in the side box of each police motorcycle and in the saddlebag or gear bag of each police bicycle. Each vest should be stored inside the resealable plastic bag provided to protect and maintain the vest in a serviceable condition. Before going into service each employee shall ensure a serviceable high-visibility vest is properly stored.

A supply of high-visibility vests will be maintained in the equipment room for replacement of damaged or unserviceable vests. The Quartermaster should be promptly notified whenever the supply of vests in the equipment room needs replenishing.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000331

Exhibit 1
Page 321 of 550



**Policy**
**502**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

---

# Traffic Collision Reporting

### 502.1  PURPOSE AND SCOPE
The University of Oregon Police Department prepares traffic collision reports in compliance with Oregon Revised Statutes 810.460 relating to reports of traffic accidents to the Oregon Department of Transportation and, as a public service makes traffic collision reports available to the community with some exceptions.

### 502.2  TRAFFIC COLLISION REPORTING
Traffic collision investigations will be documented using the Oregon Police Traffic Crash Report.

The Records Section will be responsible for monthly reports on traffic collision statistics to be forwarded to the Operations Captain and Oregon Traffic Safety Commission.

### 502.3  REPORTING SITUATIONS

#### 502.3.1  TRAFFIC COLLISIONS INVOLVING DEPARTMENT EMPLOYEES
When an employee of this department is involved in a traffic collision within the boundaries of the University of Oregon resulting in an injury requiring hospitalization or fatality, the Executive Coordinator may request another police agency respond for assistance with the investigation.

Enforcement action will not be taken at the time of the investigation and the reports will be forwarded to the appropriate prosecutor for determination of prosecution.

#### 502.3.2  TRAFFIC COLLISIONS ON PRIVATE PROPERTY
Traffic collision reports shall be taken for collisions occurring on property that is not a roadway or highway when there is a death or injury to any person involved, a hit-and-run offense where there is suspect information, a major traffic offense is involved. A supervisor may direct that a report be taken at any time.

#### 502.3.3  TRAFFIC COLLISIONS ON ROADWAYS OR HIGHWAYS
Traffic collision reports shall be taken when they occur on a roadway or highway within this jurisdiction in the following cases:

    (a)    There is a death, or injury to any person involved in the collision.

            1.    In the event of a serious injury or death related traffic collision, the Watch Commander may request a Major Collision Investigator, from a neighboring agency if UOPD does not have its own available to investigate the traffic collision. The OSP Crime Lab may also be requested to assist with a fatal accident.

    (b)    An officer issues a citation for a violation of the Vehicle Code.

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000332

**Exhibit 1**
**Page 322 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Traffic Collision Reporting*

(c)    The accident is initially reported by a garage operator who has received a vehicle involved in a serious accident or exhibiting evidence of having been struck by a bullet (Oregon Revised Statutes 822.600).

(d)    All hit-and-run violations as defined by Oregon Revised Statutes 811.700 and 811.705.

(e)    If a major traffic offense is involved.

(f)    The collision meets the criteria for submission to the Department of Motor Vehicles (Oregon Revised Statutes 811.720)

If none of these criteria are met, officers at the scene of a collision will assist drivers in exchanging information as required by DMV regulations.

Officers may check driving status of drivers while at the scene and take appropriate action if driving restrictions are discovered. In that instance, a collision report is not necessary if there are no other criteria present that would require one.

502.3.4  TOWING VEHICLES INVOLVED IN TRAFFIC COLLISIONS
A collision report will be required if a vehicle is damaged in a collision and a tow truck is necessary. Towing of a vehicle from a collision scene at the request of the driver when the vehicle would not otherwise be in need of towing, does not require a traffic collision report under this policy unless the incident meets the criteria in the Vehicle Towing policy.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000333

**Exhibit 1**
**Page 323 of 550**



**Policy**
**510**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Vehicle Towing

### 510.1  PURPOSE AND SCOPE
This policy provides the procedures for towing a vehicle by or at the direction of the University of Oregon Police Department.

### 510.2  RESPONSIBILITIES
The responsibilities of those officers impounding a vehicle are as follows.

### 510.2.1  VEHICLES CONSTITUTING A HAZARD OR OBSTRUCTION
Officers may take custody of and tow a vehicle that is disabled, abandoned, parked or left standing unattended when it creates a hazard or obstruction. Hazards and obstructions may include vehicles that are (ORS 819.120):

    (a)    Parked so that any part of the vehicle extends into the paved portion of the travel lane.

    (b)    Parked so that any part of the vehicle extends into the highway shoulder or bicycle lane of any freeway ORS 819.120 (2)(b).

Officers should use sound judgment in balancing the need to correct a hazardous situation with the potential hardship to a vehicle owner/operator before towing such a vehicle.

Officers impounding a vehicle shall complete a vehicle impound report. A copy is to be given to the tow truck operator and the original is to be submitted along with the incident report to the Records Section as soon as practicable after the vehicle is stored.

Records Division personnel shall promptly enter pertinent data from the completed vehicle impound report into the state's Law Enforcement Data Systems (LEDS).

Once a vehicle impound report is approved and forwarded to the Records Section, it shall be placed into the auto-file at the front desk to be immediately available for release or for information should inquiries be made.

### 510.2.2  REMOVAL OF VEHICLE DISABLED IN A TRAFFIC COLLISION
When a vehicle has been involved in a traffic collision and must be removed from the scene, the officer shall have the driver select a towing company, if possible, and shall relay the request for the specified towing company to the dispatcher. When there is no preferred company requested, a company will be selected from the no preference towing company list in Communications and Emergency Response Center.

If the owner is incapacitated, or for any reason it is necessary for the Department to assume responsibility for a vehicle involved in a collision, the officer shall request the dispatcher to call a no preference towing company. The officer will then have the vehicle towed to the tow company's storage lot for safekeeping, and complete a Vehicle Impound form.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000334

**Exhibit 1**
**Page 324 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

### 510.2.3   DRIVING A NON-UNIVERSITY VEHICLE
Vehicles which have been towed by or at the direction of the Police Department should not be driven by police personnel unless it is necessary to move the vehicle a short distance to eliminate a hazard, to prevent the obstruction of a fire hydrant, or to comply with posted signs.

### 510.2.4   DISPATCHER'S RESPONSIBILITIES
Upon receiving a request for towing, the dispatcher shall promptly telephone the specified authorized towing service. The officer shall be advised when the request has been made and the towing service has been dispatched.

If the request is for no preference towing, the dispatcher shall call the firm whose name appears next on the No Preference Towing Service log and shall make appropriate entries to ensure that the next firm is called on the next request.

### 510.2.5   NOTICE TO OWNERS
Once the vehicle is impounded, records personnel shall mail a copy of the impound report along with information describing the location of the vehicle and the procedures for its release to the legal and registered owners of the stored vehicle within 48 hours after it has been stored, not including Saturdays, Sundays or holidays, unless the vehicle has been previously released (ORS 819.180). The notice shall include:

(a)   That the vehicle has been taken into custody and towed; the identity of the appropriate towing authority and the statute, ordinance or rule under which the vehicle has been taken into custody and towed.

(b)   The location of the vehicle, or the telephone number and address of the authority that will provide that information.

(c)   That the vehicle is subject to towing and storage charges, the amount of charges that have accrued to the date of the notice and the daily storage charges.

(d)   That the vehicle and its contents are subject to a lien for payment of the towing and storage charges and that the vehicle and its contents will be sold to cover the charges if the charges are not paid by a date specified by the appropriate authority.

(e)   That the owner, possessor or person having an interest in the vehicle and its contents is entitled to a prompt hearing to contest the validity of taking the vehicle into custody and towing it, and to contest the reasonableness of the charges for towing and storage if a hearing is requested in a timely manner.

(f)   The time within which a hearing must be requested and the method for requesting a hearing.

(g)   That the vehicle and its contents may be immediately reclaimed by presentation to the appropriate authority of satisfactory proof of ownership or right to possession, and either payment of the towing and storage charges or the deposit of cash security or a bond equal to the charges with the appropriate authority.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000335

**Exhibit 1**
**Page 325 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Vehicle Towing*

**510.3  TOWING SERVICES**
The University of University of Oregon periodically selects a firm to act as the official tow service and awards a contract to that firm. This firm will be used in the following situations:

(a)  When a vehicle is being held as evidence in connection with an investigation

(b)  When it is otherwise necessary to impound a motor vehicle. This would include situations involving the recovery of stolen or abandoned vehicles, and the removal from the streets of vehicles obstructing traffic in violation of state or local regulations

Nothing in this policy shall require the Department to tow a vehicle.

510.3.1  NO PREFERENCE TOW SERVICES
Upon proper application, the University may approve qualified towing services to be called when a citizen needs towing but has no preference as to which service to call.

Any complaint alleging a violation of the agreement or other misconduct by a no preference operator shall be referred to the police department for investigation. The department may periodically review the performance of each authorized no preference operator.

The department will assist citizens by calling any towing company desired. If the citizen has no preference and requests towing service, one of the authorized firms shall be called in rotation.

All officers are specifically prohibited from directly or indirectly soliciting for or recommending any garage or tow service.

**510.4  IMPOUNDS RELATED TO CRIMINAL INVESTIGATIONS**
Officers should impound vehicles that are needed for the furtherance of an investigation or prosecution of a case or are otherwise appropriate for seizure under ORS 133.535. State law requires the impounding officer to take reasonable steps to protect against loss or damage to impounded vehicles and any contents that may have been taken as evidence (ORS 133.537). Officers should make reasonable efforts to return a recovered stolen vehicle to its owner rather than store it, so long as the vehicle is not needed for evidence.

**510.5  IMPOUND AT ARREST SCENES**
Whenever a person in charge or in control of a vehicle is arrested, it is the policy of this department to provide reasonable safekeeping by leaving the vehicle secured and lawfully parked at the scene or storing the arrestee's vehicle subject to the exceptions described below. However, the vehicle shall be stored, subject to applicable laws and warrant requirements, whenever it is needed for the furtherance of an investigation or prosecution of the case, or when the community caretaker doctrine, reasonably suggests that the vehicle should be stored (e.g., the vehicle would present a traffic hazard if not removed or, due to a high crime area, the vehicle would be in jeopardy of theft or damage if left at the scene).

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000336

**Exhibit 1**
**Page 326 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Vehicle Towing*

While the Oregon Revised Statutes may authorize the impoundment of a vehicle for issues such as driving with a suspended or revoked license (ORS 809.720), impounds are only authorized if, in such cases, leaving the vehicle would create a hazard, obstruction or a risk of loss.

The following are examples of situations where the arrestee's vehicle should not be stored, provided the vehicle can be legally parked, left in a reasonably secured and safe condition and the vehicle is not needed for the furtherance of an investigation:

- The vehicle is parked on private property on which the registered owner or operator is legally residing, or the property owner does not object to the vehicle being left parked at that location.

- When the arrestee or a passenger is the registered or legal owner of the vehicle and requests that the vehicle be released to a person who is present, willing and able to legally take control of the vehicle.

- Whenever the vehicle is legally parked and otherwise does not need to be stored and the owner requests that it be left at the scene.

In such cases, the handling employee shall inform the arrestee and note in the report that the Department will not be responsible for theft or damages.

## 510.6   VEHICLE INVENTORIES
The contents of all impounded vehicles shall be inventoried in accordance with the following procedure:

(a) An inventory of personal property and the contents of open containers will be conducted throughout the passenger and engine compartments of the vehicle including, but not limited to, the glove box, other accessible areas under or within the dashboard area, any pockets in the doors or in the back of the front seat, in any console between the seats, under any floor mats and under the seats.

(b) In addition to the passenger and engine compartments as described above, an inventory of personal property and the contents of open containers will also be conducted in the following locations:

1. Any other type of unlocked compartments that are a part of the vehicle including, but not limited to, unlocked glove compartments, unlocked vehicle trunks and unlocked car top containers; and

2. Any locked compartments including, but not limited to, locked glove compartments, locked vehicle trunks, locked hatchbacks and locked car-top containers, provided the keys are available and are to be released with the vehicle to the third-party towing company or an unlocking mechanism for such compartment is available within the vehicle.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000337
**Exhibit 1**
**Page 327 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Vehicle Towing*

(c)   Closed containers located either within the vehicle or any of the vehicle's compartments will not be opened for inventory purposes except for the following, which shall be opened for inventory: wallets, purses, coin purses, fanny packs, personal organizers, briefcases or other closed containers designed for carrying money or small valuables, or closed containers which are designed for hazardous materials.

(d)   Other closed containers shall be opened and inventoried if the owner acknowledges they contain cash in excess of $10, valuables or a hazardous material.

(e)   Any valuables, to include cash in excess of $10 or property valued at more than $200, located during the inventory process will be listed on a property receipt and stored in this agency's property/evidence room. A copy of the property receipt will either be left in the vehicle or tendered to the person in control of the vehicle if such person is present.

(f)   The inventory is not a search for evidence of a crime, however, officers shall seize evidence or contraband located during the inventory. Items should be scrutinized to the extent necessary to complete the inventory.

(g)   Tow truck operators are to receive a copy of the tow report.

These inventory procedures are for the purpose of protecting an owner's property while in police custody, to provide for the safety of officers, and to protect the Department against fraudulent claims of lost, stolen, or damaged property.

## 510.7   VEHICLE SEARCHES
Case law regarding search and seizure is ever changing and frequently subject to interpretation under the varying facts of each situation. Vehicle searches should be handled according to current training and an officer's familiarity with relevant case law. Generally, a search warrant should be sought prior to conducting a search of a vehicle.

Because circumstances under which a warrantless search of a vehicle might be permissible are very limited, and because vehicle searches are subject to many restrictions, officers should, whenever possible, seek supervisory approval and/or contact the Police Legal Advisor at the District Attorney's Office before conducting a warrantless search of a vehicle.

## 510.8   SECURITY OF VEHICLES AND PROPERTY
After a thorough inventory of the vehicle has been completed and all contraband, evidence and weapons have been removed the officer should make reasonable accommodations to permit a driver or owner to retrieve small items of value or personal need (e.g., cash, jewelry, cell phone, prescriptions).

If a search of a vehicle leaves the vehicle or any property contained therein vulnerable to unauthorized entry, theft or damage, search personnel shall take such steps as are reasonably necessary to secure and/or preserve the vehicle or property from such hazards.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000338

**Exhibit 1**
**Page 328 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Vehicle Towing*

### 510.9  RELEASE CRITERIA
A vehicle impounded under this section shall be released to a person entitled to lawful possession of the vehicle upon compliance with the following:

(a) Proof that a person with valid driving privileges will be operating the vehicle.

(b) Proof of compliance with financial responsibility requirements for the vehicle.

(c) Payment of the University of Oregon Police Department administrative fee, if any, and any towing and storage charges.

(d) A security interest holder in the vehicle is not required to comply with (a) and (b) and may obtain release by paying the administrative fee, towing and storage fees.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000339
**Exhibit 1**
**Page 329 of 550**



**Policy**
**512**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Vehicle Impound Hearings

### 512.1  PURPOSE AND SCOPE
This policy establishes a procedure for the requirement to provide vehicle storage or impound hearings.

### 512.2  IMPOUND HEARING
When a vehicle is impounded by any member of the University of Oregon Police Department, a hearing will be conducted upon the request of the registered or legal owner of the vehicle or his/her agent.

### 512.2.1  HEARING PROCEDURES
When requested, a hearing to contest the validity of the impoundment and the reasonableness of the tow will be held as follows (ORS 819.190).

Requests for a hearing on an impounded vehicle shall be submitted in writing to the person designated by the University of Oregon Police Department to receive such requests, within five days of the postmarked date on the notice of impound. The request shall state the grounds upon which the person requesting the hearing believes that the custody and towing of the vehicle was not justified.

An impound hearings officer, designated by this department, will set a time for the hearing within 72 hours of the receipt of the request, excluding Saturdays, Sundays and holidays. The hearings officer will provide notice of the hearing to the person requesting the hearing, to the impounding officer and to any owner, lessor or security interest holder shown in the Oregon Department of Transportation (ODOT) records.

An impound hearings officer, designated by this department, shall consider all information provided and shall determine the validity of the impound based on substantial evidence on the record, according to applicable law and department policy. The hearings officer shall then render a decision. The officer who caused the removal of the vehicle may submit an affidavit to the hearings officer in lieu of a personal appearance.

If the hearings officer decides that the impound was valid, he/she shall order the vehicle held in custody until the cost of the hearing and all reasonable towing and storage costs are paid by the party claiming the vehicle.

If the hearings officer decides that the impound was invalid, he/she shall order the immediate release of the vehicle to the owner or person with right of possession. Such person is not liable for towing or storage charges and shall be reimbursed for such charges if they have already been paid. New storage costs will not start to accrue until more than 24 hours after the time the vehicle is officially released (ORS 819.190).

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000340

**Exhibit 1**
**Page 330 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Vehicle Impound Hearings*

If a decision is made that the impound was invalid and the vehicle has been released with fees having been paid, the receipt for such fees will be forwarded to the appropriate Division Commander for reimbursement by this department to the appropriate party.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000341

**Exhibit 1**
**Page 331 of 550**



**Policy**
**514**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Impaired Driving

### 514.1  PURPOSE AND SCOPE
This policy provides guidance to those department members who play a role in the detection and investigation of driving under the influence (DUI).

### 514.2  POLICY
The University of Oregon Police Department is committed to the safety of the roadways and the community and will pursue fair but aggressive enforcement of Oregon's impaired driving laws.

### 514.3  FIELD TESTS
The Department will establish the primary field sobriety tests (FSTs) and any alternate tests for officers to use when investigating violations of DUI laws.

### 514.4  CHEMICAL TESTS
A person is deemed to have consented to a chemical test or tests under any of the following (ORS 813.100):

(a)  The arresting officer has reasonable grounds to believe that the person was DUI.

(b)  The person is arrested for DUI and takes a breath test that discloses a blood alcohol content of less than 0.08 percent.

(c)  The person is arrested for DUI and was involved in an accident resulting in injury or property damage.

(d)  The person is receiving medical care at a health care facility immediately after a motor vehicle accident and the arresting officer has reasonable grounds to believe that the person was DUI.

(e)  The officer has probable cause to believe that the person was DUI and that evidence of the offense will be found in the person's blood or urine and the person is unconscious or otherwise in a condition rendering the person incapable of expressly consenting to the test (ORS 813.140).

### 514.4.1  BREATH SAMPLES
Officers obtaining a breath sample should monitor the device for any sign of malfunction. Any anomalies or equipment failures should be noted in the appropriate report and promptly reported to the appropriate staff with the Oregon State Police.

### 514.4.2  BLOOD SAMPLES
Only persons authorized by law to draw blood shall collect blood samples (ORS 813.160). The blood draw should be witnessed by the assigned officer. No officer, even if properly certified, should perform this task.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000342

**Exhibit 1**
**Page 332 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Impaired Driving*

Officers should inform an arrestee that if he/she chooses to provide a blood sample, a separate sample can be collected for alternate testing. Unless medical personnel object, two samples should be collected and retained as evidence, so long as only one puncture is required.

The blood sample shall be packaged, marked, handled, stored and transported as required by the testing facility.

If an arrestee cannot submit to a blood test because he/she has a bleeding disorder or has taken medication that inhibits coagulation, he/she shall not be required to take a blood test. Such inability to take a blood test should not be considered a refusal. However, that arrestee may be required to complete another available and viable test.

### 514.4.3   URINE SAMPLES
If a urine test will be performed, the arrestee should be promptly transported to the appropriate testing site. The officer shall follow any directions accompanying the urine evidence collection kit.

The sample shall be packaged, marked, handled, stored and transported as required by the testing facility.

### 514.4.4   STATUTORY NOTIFICATIONS
Prior to administering any tests, the person shall be informed of the rights and consequences for DUI and refusals of testing (ORS 813.100; ORS 813.130; ORS 813.135).

### 514.4.5   ADDITIONAL TESTING
An officer requesting that a person submit to a chemical test shall also provide the person, upon request, with a reasonable opportunity to have a qualified medical professional of their choosing administer an additional chemical test. The test may be of the person's breath or blood if alcohol concentration is in issue or of the person's blood or urine if the presence of a controlled substance or inhalant in the person's body is in issue (ORS 813.150).

### 514.4.6   ADDITIONAL REQUIREMENTS FOR URINE SAMPLES
An officer may not request that a person submit to a urine test unless the officer is certified by the Department of Public Safety Standards and Training as having completed the required training in the recognition of drug impaired driving. The officer must also have a reasonable suspicion to believe that the person arrested has been driving under the influence of a controlled substance, an inhalant or any combination of an inhalant, a controlled substance and intoxicating liquor (ORS 813.131).

The person providing the urine sample shall be given privacy and may not be observed by the officer when providing the sample (ORS 813.131).

### 514.5   REFUSALS
When an arrestee refuses to provide a chemical sample, officers should:

    (a)    Advise the arrestee of the requirement to provide a sample (ORS 813.100; 813.130; ORS 813.131; ORS 813.135).

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000343

**Exhibit 1**
**Page 333 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Impaired Driving*

(b)    Audio- and/or video-record the admonishment and the response when it is legal and practicable.

(c)    Document the refusal in the appropriate report.

## 514.5.1    STATUTORY NOTIFICATIONS

Upon refusal to submit to a chemical test as required by law, officers shall personally serve the written notice of intent to suspend upon the person and take possession of any state-issued license to operate a motor vehicle that is held by that person (ORS 813.100). The arresting officer shall also read the person the Department of Transportation form which informs the person of the rights and consequences of a test to determine the alcohol content of the person's blood (ORS 813.130).

## 514.5.2    BLOOD SAMPLE WITHOUT CONSENT

A blood sample may be obtained from a person who refuses a chemical test when any of the following conditions exist:

(a)    A search warrant has been obtained (ORS 813.100).

(b)    The officer can articulate that exigent circumstances exist. Exigency does not exist solely because of the short time period associated with the natural dissipation of alcohol or controlled or prohibited substances in the person's bloodstream. Exigency can be established by the existence of special facts, such as a lengthy time delay in obtaining a blood sample due to an accident investigation or medical treatment of the person.

## 514.5.3    FORCED BLOOD SAMPLE

If a person indicates by word or action that he/she will physically resist a blood draw, the officer should request a supervisor to respond.

The responding supervisor should:

(a)    Evaluate whether using force to obtain a blood sample is appropriate under the circumstances.

(b)    Ensure that all attempts to obtain a blood sample through force cease if the person agrees to, and completes a viable form of testing in a timely manner.

(c)    Advise the person of his/her duty to provide a sample (even if this advisement was previously done by another officer) and attempt to persuade the person to submit to such a sample without physical resistance. This dialogue should be recorded on audio and/or video when legal and practicable.

(d)    Ensure that the withdrawal is taken in a medically approved manner.

(e)    Supervise any use of force and ensure the forced withdrawal is recorded on audio and/or video when practicable.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000344

**Exhibit 1**
**Page 334 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Impaired Driving*

    1.    Unless otherwise provided in a warrant, force should generally be limited to handcuffing or similar restraint methods. In misdemeanor cases, if the suspect becomes violent or more resistant, no additional force will be used and a refusal should be noted in the report. In felony cases, force which reasonably appears necessary to overcome the resistance to the blood being withdrawn may be permitted.

(f)    Monitor and ensure that the type and level of force applied is reasonable under the circumstances.

    1.    Unless otherwise provided in a warrant, force should generally be limited to handcuffing or similar restraint methods.

    2.    In misdemeanor cases, if the suspect becomes violent or more resistant, no additional force will be used and a refusal should be noted in the report.

    3.    In felony cases, force which reasonably appears necessary to overcome the resistance to the blood being withdrawn may be permitted.

(g)    Ensure the use of force and methods used to accomplish the blood sample draw are documented in the related report.

## 514.6  ARREST AND INVESTIGATION

### 514.6.1  REPORTING
The Watch Commander shall ensure that the Department complies with all state reporting requirements pursuant to ORS 181.550.

### 514.6.2  OFFICER RESPONSIBILITIES
If a person refuses to submit to a chemical test or if a test discloses that the person had a prohibited alcohol concentration in the person's blood, the investigating officer shall cause the following items to be forwarded to the Driver and Motor Vehicle Services Division of the Department of Transportation (DMV) within 10 days of the arrest (ORS 813.100; OAR 735-090-0040):

- The completed Implied Consent Form.

- Any confiscated license or permit belonging to the person.

- A copy of the written report that complies with ORS 813.120.

An officer confiscating a person's license pursuant to state DUI laws shall provide the person with a temporary driving permit unless (ORS 813.100; ORS 813.110):

- The driving privileges of the person were suspended, revoked or canceled at the time the person was arrested.

- The person whose license was confiscated was operating on an invalid license.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000345

Exhibit 1
Page 335 of 550

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Impaired Driving*

- The person was not entitled to driving privileges at the time of the arrest for any other reason.

- The person holds a license or permit granting driving privileges that was issued by another state or jurisdiction and that is not confiscated.

### 514.6.3  OFFENSE FOR REFUSAL
If a person refuses to submit to a breath or urine test, the arresting officer may charge the person with a separate offense (ORS 813.095).

### 514.6.4  ADDITIONAL TESTING
An officer requesting that a person submit to a chemical test shall also provide the person, upon request, with a reasonable opportunity to have a qualified medical professional of their choosing administer an additional chemical test. The test may be of the person's breath or blood if alcohol concentration is in issue or of the person's blood or urine if the presence of a controlled substance or inhalant in the person's body is in issue. The test is done at the person's own expense (ORS 813.150).

### 514.6.5  ADDITIONAL REQUIREMENTS FOR URINE SAMPLES
An officer may not request that a person submit to a urine test unless the officer is certified by the Department of Public Safety Standards and Training as having completed the required training in the recognition of drug impaired driving. The officer must also have a reasonable suspicion to believe that the person arrested has been driving under the influence of a controlled substance, an inhalant, or any combination of an inhalant, a controlled substance and intoxicating liquor (ORS 813.131).

The person providing the urine sample shall be given privacy and may not be observed by the officer when providing the sample (ORS 813.131).

## 514.7  RECORDS SECTION RESPONSIBILITIES
The Captain of Administration will ensure that all case-related records are transmitted according to current records procedures and as required by the prosecuting attorney's office.

## 514.8  ADMINISTRATIVE HEARINGS
The Captain of Administration will ensure that all appropriate reports and documents related to administrative license suspensions are reviewed and forwarded to the DMV.

Any officer who receives notice of required attendance to an administrative license suspension hearing should promptly notify the prosecuting attorney.

An officer called to testify at an administrative hearing should document the hearing date and the DMV file number in a supplemental report. Specific details of the hearing generally should not be included in the report unless errors, additional evidence or witnesses are identified.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000346

**Exhibit 1**
**Page 336 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Impaired Driving*

### 514.9  TRAINING
The Captain of Administration should ensure that officers participating in the enforcement of DUI laws receive regular training. Training should include, at minimum, current laws on impaired driving, investigative techniques and rules of evidence pertaining to DUI investigations. The Captain of Administration should confer with the prosecuting attorney's office and update training topics as needed.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000347

**Exhibit 1**
**Page 337 of 550**



**Policy**
**515**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Speeding Violations and Speed Measuring Devices

### 515.1  PURPOSE AND SCOPE
This policy establishes guidelines for enforcement activities related to speeding violations and the deployment of speed measuring devices.

Excessive speed presents a real danger to the safety of the campus community. The University of Oregon Police Department regards willful violation of ORS addressing speed regulations as a serious breach of the law warranting enforcement action. The goal of UOPD enforcement actions is the education of the campus community and to obtain voluntary compliance with speed regulations.

### 515.2  SPEED ENFORCEMENT
Enforcement in any area of the campus should be based on information obtained through reported accidents, citizen complaints, officers observations, as well as traffic volume and conditions. Based on the analysis of such information, speed enforcement may include the use of speed measuring devices.

Normally, excessive speed is defined as 10 miles per hour above the speed limit, or driving at a speed that is too fast for conditions.

### 515.3  SPEED MEASURING DEVICES
The use of speed measuring devices in traffic law enforcement has become increasingly widespread in order to ensure that traffic safety objectives are met. Effective regulation of vehicle speed requires accurate and well maintained equipment as well as knowledgeable and well trained personnel. As a result of training (both basic and equipment-specific), law enforcement personnel have an understanding of the basic principles of speed measuring devices, including factors which may limit its use; knowledge of the laws, court rulings, regulations, policies and procedures affecting speed measuring devices, and development of basic skills in testing and operating a speed measuring device as well as preparing and presenting courtroom testimony on the use of speed measuring devices.

In addition to enforcement actions, speed measuring devices may be used effectively in education and demonstration activities that UOPD performs for the campus community.

### 515.3.1  EQUIPMENT SPECIFICATIONS
All speed measuring devices used by UOPD will meet or exceed the specifications of the U.S. Department of Transportation's National Highway Traffic Safety Administration and the International Association of Chiefs of Police.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000348

**Exhibit 1**
**Page 338 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Speeding Violations and Speed Measuring Devices*

515.3.2  OPERATIONAL PROCEDURES

(a)  All speed measuring device operators must know how to set up, test, and properly operate and read the speed measuring device that is used. Officers must be able to demonstrate proper testing and operational procedures prior to the use of any speed measuring device. In order to most effectively acquire and accomplish these skills, officers shall complete a prescribed course of training established by DPSST or the UOPD in the absence of established DPSST standards.

(b)  All speed measuring devices shall be checked for accuracy at the beginning and end of each work shift. Tests to be performed prior to use shall be in accordance with operating manual for the respective device. Daily operational records shall be maintained on the back of each citation as a means of preserving evidence. All speed measuring devices shall be utilized with proper consideration given to site selection, tracking history and problem identification.

(c)  All speed measuring devices shall be maintained in good working order. Any speed measuring device found not to be functioning properly shall be removed from service immediately and submitted to the Sergeant of Operations who will arrange for repair.

(d)  The Sergeant of Operations shall maintain calibration and maintenance records for each individual unit. All records shall be kept in the speed measuring devices manual located with the traffic unit. Each unit shall be factory calibrated not less than once per year by authorized speed measuring device technicians.

(e)  All speed measuring devices will be housed in a location determined by the Sergeant of Operations, and will be checked out by officers in accordance with established practice. All units will be returned to this location at the end of each shift.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000349

**Exhibit 1**
**Page 339 of 550**



**Policy**
**516**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Traffic Citations

### 516.1  PURPOSE AND SCOPE
This policy outlines the responsibility for traffic citations, the procedure for dismissal, correction, and voiding of traffic citations.

### 516.2  RESPONSIBILITIES
The Manager of Police Communications and Records shall be responsible for the development and design of all Department traffic citations in compliance with state law and the Judicial Council.

The Records Section shall be responsible for the supply and accounting of all traffic citations issued to employees of this department.

### 516.3  DISMISSAL OF TRAFFIC CITATIONS
Employees of this department do not have the authority to dismiss a citation once it has been issued. Only the court has the authority to dismiss a citation that has been issued. Any request from a recipient to dismiss a citation shall be referred to the Operations Captain. Upon a review of the circumstances involving the issuance of the traffic citation, the Operations Captain recommend dismissal of the traffic citation to the court. The citation will be forwarded to the appropriate court with a request for dismissal. All recipients of traffic citations whose request for the dismissal of a traffic citation has been denied shall be referred to the appropriate court.

Should an officer determine during a court proceeding that a traffic citation should be dismissed in the interest of justice or where prosecution is deemed inappropriate the officer will obtain approval from his/her immediate supervisor to dismiss the citation. If approved, the officer will request the court to dismiss the citation. Upon dismissal of the traffic citation by the court, the officer shall notify his/her immediate supervisor of the court's decision and shall complete a memorandum to the Operations Captain for review. The Law Enforcement Records Unit will purge the citation from the filing and computer system.

### 516.4  VOIDING TRAFFIC CITATIONS
Voiding a traffic citation may occur when a traffic citation has not been completed or where it is completed, but not issued. All copies of the citation shall be presented to a supervisor to approve the voiding of the citation. The citation and copies shall then be forwarded to the Law Enforcement Records Unit.

### 516.5  CORRECTION OF TRAFFIC CITATIONS
When a traffic citation is issued and in need of correction, the officer issuing the citation shall submit the citation and a memorandum requesting a specific correction to his/her immediate supervisor. The citation and approved memo shall then be forwarded to the Police Communications and Records Manager who will prepare a letter to court having jurisdiction and to the recipient of the citation explaining the modifications. The letter to the recipient of the citation will be mailed via

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000350

Exhibit 1
Page 340 of 550

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Traffic Citations*

registered mail, return receipt requested. If the letter is returned as undeliverable, a copy of the letter and envelope will be forwarded to the court.

## 516.6  DISPOSITION OF TRAFFIC CITATIONS
The court and file copies of all traffic citations issued by members of this department shall be forwarded to the employee's immediate supervisor for review. The citation copies shall then be filed with the Records Section.

Upon separation from employment with the this department, all employees issued traffic citations books shall return any unused citations to the Records Section.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000351

**Exhibit 1**
**Page 341 of 550**



**Policy**
**520**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Disabled Vehicles

### 520.1  PURPOSE AND SCOPE
Public safety, and the University of Oregon Police Department's commitment to service, requires that officers place a high priority on assisting disabled motorists. This policy provides guidelines for achieving that objective.

### 520.2  OFFICER RESPONSIBILITY
When an on-duty officer observes a disabled vehicle on the roadway, the officer should make a reasonable effort to provide assistance. If that officer is assigned to a call of higher priority, the dispatcher should be advised of the location of the disabled vehicle and the need for assistance. The dispatcher should then assign another available officer to respond for assistance as soon as practical.

### 520.3  EXTENT OF ASSISTANCE
In most cases, a disabled motorist will require assistance. After arrangements for assistance are made, continued involvement by department personnel will be contingent on the time of day, the location, the availability of departmental resources, and the vulnerability of the disabled motorist.

### 520.3.1  MECHANICAL REPAIRS
Department personnel shall not make mechanical repairs to a disabled vehicle. The use of push bumpers to relocate vehicles to a position of safety is not considered a mechanical repair.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department



**Policy**
**524**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# 72-Hour Parking Violations

### 524.1  PURPOSE AND SCOPE
This policy provides procedures for the marking, recording, and storage of vehicles parked in violation of the <u>Oregon Revised Statutes</u> or Oregon Administrative Rules pertaining to the University of Oregon regulating 72-hour parking violations and abandoned vehicles under the authority of <u>Oregon Revised Statutes</u> 819.110.

### 524.2  MARKING VEHICLES
Vehicles suspected of being in violation of the Oregon Administrative Rules applying to the University of Oregon 72-Hour Parking regulation shall be marked and noted on the University of Oregon Police Department Marked Vehicle Card. No case number is required at this time.

(a)  A visible chalk mark should be placed on the left rear tire tread at the fender level unless missing tires or other vehicle conditions prevent marking. Any deviation in markings shall be noted on the Marked Vehicle Card. An abandoned Tow "Red Sticker" shall be prominently attached to a window in a manner that does not block a driver's visibility.

(b)  All Marked Vehicle Cards shall be submitted to the Traffic Division for computer data entry.

(c)  If a marked vehicle has been moved or the markings have been removed during a 72-hour investigation period, the vehicle shall be marked again for the 72-hour parking violation and a Marked Vehicle Card completed and forwarded to the Traffic Division.

(d)  Parking citations for the 72-hour parking ordinance shall not be issued when the vehicle is stored for the 72-hour parking violation.

The investigating employee should make a good faith effort to notify the owner of any vehicle subject to towing prior to having the vehicle removed. This may be accomplished by personal contact, telephone or by leaving notice attached to the vehicle at least 24 hours prior to removal.

### 524.2.1  MARKED VEHICLE FILE
The Traffic Division shall be responsible for maintaining a file for all Marked Vehicle Cards.

Parking control officers assigned to the Traffic Division shall be responsible for the follow up investigation of all 72-hour parking violations noted on the Marked Vehicle Cards.

### 524.2.2  VEHICLE IMPOUND
Any vehicle in violation shall be impounded by the authorized towing service and an Impounded Vehicle Report shall be completed by the officer authorizing the towing of the vehicle.

The Impounded Vehicle Report form shall be submitted to the Records Section immediately following the towing of the vehicle. It shall be the responsibility of the Records Section to enter the vehicle into LEDS.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000353

**Exhibit 1**
**Page 343 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## 72-Hour Parking Violations

Within 48 hours of the storage of any such vehicle, excluding weekends and holidays, it shall be the responsibility of the Records Section to determine the names and addresses of any individuals having an interest in the vehicle through DMV. Records personnel shall mail a copy of the approved Vehicle Impound Report form along with information describing the location of the vehicle, the procedures for its release, and the owner's right to a hearing, to the legal and registered owners of the stored vehicle within 48 hours after it has been impounded, unless the vehicle has been previously released (Oregon Revised Statutes 819.180(1)).

Vehicles Impounded under this section may be subject to hearing procedures outlined in Policy Manual § 512.

### 524.3   VEHICLE DISPOSAL
If, after 30 days from the custody, the vehicle remains unclaimed and the towing and storage fees have not been paid, and if no request for a vehicle impound hearing has been made, the Department may provide the lien holder storing the vehicle with authorization to dispose of any vehicle which has been appraised at a value of $500 or less.

If the vehicle is appraised at more than $500, the vehicle and contents shall be sold at public auction (Oregon Revised Statutes 819.210).

### 524.3.1   APPRAISAL
Vehicles disposed of under Policy Manual § 524.3 must be appraised by an appraiser certified by the Department of Transportation (Oregon Revised Statutes 819.215).

### 524.4   IMPOUND HEARING
When a vehicle is stored under this section by any member of the University of Oregon Police Department, a hearing will be conducted upon the timely request of any person who reasonably appears to have an interest in the vehicle.

### 524.4.1   HEARING PRIOR TO IMPOUNDMENT
If an interested person requests a hearing prior to the impoundment of the vehicle, the vehicle will not be towed until the hearing is held, unless it constitutes a hazard.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000354

**Exhibit 1**
**Page 344 of 550**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Chapter 6 - Investigation Operations

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000355
**Exhibit 1**
**Page 345 of 550**



**Policy**
**600**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Investigation and Prosecution

### 600.1  PURPOSE AND SCOPE
When assigned to a case for initial or follow-up investigation, detectives shall proceed with due diligence in evaluating and preparing the case for appropriate clearance or presentation to a prosecutor for filing of criminal charges.

One or more detectives shall be available 24 hours a day for criminal investigations and the processing of crime scenes. The Oregon State Police crime lab is an additional resource for processing of serious and involved crime scenes.

### 600.2  MODIFICATION OF CHARGES FILED
Employees are not authorized to recommend to the District Attorney, General Counsel, or to any other official of the court that charges on a pending case be altered or the case dismissed. In all cases resulting in court prosecution, any request to modify the charges filed or to recommend dismissal of charges in a pending case shall be made to the District Attorney's Office or General Counsel's Office only as authorized by Operations Captain or the Chief of Police.

### 600.3  POLYGRAPH EXAMINATION OF VICTIMS
Victims and any complaining witness in a case involving the use of force, violence, duress, menace or threat of physical injury in the commission of any sex crime under ORS 163.305 to 163.575, may not be required, by a district attorney or other law enforcement officer or investigator involved in the investigation or prosecution of crimes, or any employee thereof, to submit to a polygraph examination as a prerequisite to filing an accusatory pleading (ORS 163.705).

### 600.4  COLLECTION OR MAINTENANCE OF SPECIFIC INFORMATION
The collection or maintenance of information about the political, religious or social views, associations or activities of any individual, group, association, organization, corporation, business or partnership shall occur only when the information directly relates to a criminal investigation and there are reasonable grounds to suspect the subject of the information is or may be involved in criminal conduct (ORS 181.575).

### 600.5  CUSTODIAL INTERVIEWS
Generally, except where circumstances make it impracticable, custodial interviews regarding felony offenses should be electronically recorded. When such custodial interviews are conducted in a law enforcement facility and in connection with an investigation into aggravated murder, as defined in ORS 163.095, or a crime listed in ORS 137.700 or 137.707, electronic recording of the interview is mandatory absent good cause not to record (ORS 133.400).

If an interviewee expresses an unwillingness to have the custodial interview electronically recorded but agrees to speak to investigators without such recording, the interviewing officer or detective should:

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000356

**Exhibit 1**
**Page 346 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Investigation and Prosecution*

    (a)   Document the refusal in his/her report.

    (b)   Request that the interviewee sign a written statement or provide a recorded statement of his/her refusal to have the interview recorded.

All electronic recordings of custodial interviews shall follow the requirements set forth in ORS 165.540.

No recording of an interrogation should be destroyed or altered without written authorization from the District Attorney and the Investigations Sergeant. Copies of recorded interrogations or interviews may be made in the same or different format, provided they are true, accurate and complete copies and are made only for authorized and legitimate law enforcement purposes.

Officers should continue to prepare written summaries of custodial questioning and investigative interviews and continue to obtain written statements from suspects when applicable.

## 600.6  CONFIDENTIAL OR SENSITIVE INVESTIGATIONS
In the event a University Employee or Official as defined in Policy 806.5.1, are the subject of an investigation, the Chief may request another agency conduct the investigation to address issues of impropriety or conflict of interest.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000357

**Exhibit 1**
**Page 347 of 550**



| Policy **608** | **University of Oregon Police Department** |
| | University of Oregon Police Department Policy Manual |

# Confidential Informants

## 608.1  PURPOSE AND SCOPE
In many instances, a successful investigation cannot be conducted without the use of confidential informants. To protect the integrity of the University of Oregon Police Department and the officers using informants, it is the policy of this department to take appropriate precautions by developing sound informant policies.

## 608.2  INFORMANT FILE SYSTEM
The Investigations Unit Supervisor or his/her designee shall be responsible for maintaining informant files. A separate file shall be maintained on each confidential informant.

### 608.2.1  FILE SYSTEM PROCEDURE
Each file shall be coded with an assigned informant control number. An informant history shall be prepared to correspond to each informant file and include the following information:

    (a)   An informant checklist ensuring that all the required documentation is present.

    (b)   Informant's confidential number, full name and any aliases.

    (c)   Date of birth, height, weight, hair color, eye color, race, sex, scars, tattoos or other distinguishing features.

    (d)   Current home address and telephone numbers.

    (e)   Current employer(s), position, address(es) and telephone numbers.

    (f)   Vehicles owned and registration information.

    (g)   Places frequented.

    (h)   Informant's photograph, fingerprints and criminal history.

    (i)   Briefs of information provided by the informant and his or her subsequent reliability. If an informant is determined to be unreliable, the informant's file is marked as "Unreliable".

    (j)   Name of officer initiating use of the informant.

    (k)   Signed informant agreement, initialed by the Detective Supervisor indicating approval of individual for use as an informant.

    (l)   Initialed copy of Oregon Revised Statutes 161.275 (Entrapment) indicating the informant has read and understood the statute.

    (m)   Signature of the informant's true name and any assumed name.

    (n)   Written authorization required as a result of the informant being a corrections client, juvenile or defendant.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Confidential Informants*

    (o)    A log of all activity and the expenditure of all confidential funds associated with the informant.

    (p)    Update on active or inactive status of informant.

The informant files shall be maintained in a secure area within the Investigations Unit. These files shall be used to provide a source of background information about the informant, enable review and evaluation of information given by the informant, and minimize incidents that could be used to question the integrity of detectives or the reliability of the confidential informant.

Access to the informant files shall be restricted to the Chief of Police, a Division Commander, the Investigations Unit Supervisor, or their designees.

## 608.3   USE OF INFORMANTS
Before using an individual as a confidential informant, an officer must receive approval from the Investigations Unit Supervisor. The officer shall compile sufficient information through a background investigation in order to determine the reliability, credibility and suitability, of the individual, including age, maturity and risk of physical harm.

### 608.3.1   JUVENILE INFORMANTS
The use of juvenile confidential informants is discouraged due to a number of risks. They will only be used when the investigation is of such a nature as to justify the risks. The district attorney should be consulted and a parent or legal guardian's written consent shall be secured. Final approval to use a juvenile confidential informant must be obtained from the Chief of Police.

## 608.4   GUIDELINES FOR HANDLING CONFIDENTIAL INFORMANTS
All confidential informants are required to sign and abide by the provisions of the departmental Informant Agreement. The officer using the confidential informant shall discuss each of the provisions of the agreement with the confidential informant.

Details of the agreement are to be approved in writing by the unit supervisor before being finalized with the confidential informant.

### 608.4.1   RELATIONSHIPS WITH CONFIDENTIAL INFORMANTS
No member of the Department shall knowingly maintain a social relationship with a confidential informant while off duty, or otherwise become intimately involved with a confidential informant. Members of the Department shall neither solicit nor accept gratuities nor engage in any private business transaction with a confidential informant.

To maintain officer/informant integrity, the following must be adhered to:

    (a)    Officers shall not withhold the identity of an informant from their superiors.

    (b)    Identities of informants shall otherwise be kept confidential.

    (c)    Criminal activity by informants shall not be condoned.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Confidential Informants*

(d)    Informants shall be told they are not acting as police officers, employees or agents of the Department, and that they shall not represent themselves as such.

(e)    The relationship between officers and informants shall always be ethical and professional.

(f)    Social contact shall be avoided unless necessary to conduct an official investigation, and only with prior approval of the Investigations Unit Supervisor.

(g)    Officers shall not meet with informants unless accompanied by at least one additional officer unless a request to meet alone has been approved by the Investigations Sergeant.

(h)    All exchanges of confidential funds between officers and informants must be witnessed by at least one other officer.

(i)    In all instances when Department funds are paid to informants, a voucher shall be completed in advance, itemizing the expenses.

   1.    The voucher shall be signed by the informant using either their pseudonym or Informant Number registered with a signature in the informant packet.

   2.    The voucher will also include the case number associated with the expenditure.

(j)    A description of the benefit obtained (search warrant, arrest, recovered property, etc.) will be entered into the informant's file.

## 608.5  NARCOTICS INFORMANT PAYMENT PROCEDURES
The potential payment of large sums of money to any confidential informant must be done in a manner respecting public opinion and scrutiny. Additionally, to maintain a good accounting of such funds requires a strict procedure for disbursements.

### 608.5.1  PAYMENT PROCEDURE
The amount of funds to be paid to any confidential informant will be evaluated against the following criteria:

•    The extent of the informant's personal involvement in the case.

•    The significance, value or effect on crime.

•    The amount of assets seized.

•    The quantity of the drugs seized.

•    The informant's previous criminal activity.

•    The level of risk taken by the informant.

The Investigations Unit Supervisor will discuss the above factors with the Operations Division Commander and arrive at a recommended level of payment that will be subject to the approval of the Chief of Police. For the purchase of drugs or property, the amount of payment will generally

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Confidential Informants*

be based on a percentage of the current market price for the drugs or other contraband being sought, not to exceed 15%.

### 608.5.2  CASH DISBURSEMENT POLICY
The following establishes a cash disbursement policy for confidential informants. No informant will be told in advance or given an exact amount or percentage for services rendered.

    (a)   When both assets and drugs have been seized, the confidential informant shall receive payment based upon overall value and the purchase price of the drugs seized.

    (b)   A confidential informant may receive a cash amount for each quantity of drugs seized whether or not assets are also seized.

### 608.5.3  PAYMENT PROCESS
A check shall be requested, payable to the case agent. The case number shall be recorded justifying the payment. The Chief of Police and the Associate Vice President for Safety and Risk Services's signatures are required for disbursements over $500. Payments $500 and under may be paid in cash out of the Investigations Unit Buy/Expense Fund. The Investigations Unit Supervisor will be required to sign the cash transfer form for amounts under $200. The Chief of Police must sign transfer amounts over $200.

To complete the transaction with the confidential informant the case agent shall have the confidential informant initial the cash transfer form. The confidential informant will sign the form indicating the amount received, the date, and that the confidential informant is receiving funds in payment for information voluntarily rendered in the case. The University of Oregon Police Department case number shall be recorded on the cash transfer form. A copy of the form will be kept in the confidential informant's file.

If the payment amount exceeds $500, a complete written statement of the confidential informant's involvement in the case shall be placed in the confidential informant's file. This statement shall be signed by the confidential informant verifying the statement as a true summary of his/her actions in the case(s).

Each confidential informant receiving a cash payment shall be informed of his or her responsibility to report the cash to the Internal Revenue Service (IRS) as income.

### 608.5.4  REPORTING OF PAYMENTS
Each confidential informant receiving a cash payment shall be informed of his/her responsibility to report the cash to the Internal Revenue Service (IRS) as income. If funds distributed exceed $600 in any reporting year, the confidential informant should be provided IRS Form 1099 (26 CFR 1.6041-1). If such documentation or reporting may reveal the identity of the confidential informant and by doing so jeopardize any investigation, the safety of peace officers or the safety of the confidential informant (26 CFR 1.6041-3), then IRS Form 1099 should not be issued.

In such cases, the confidential informant shall be provided a letter identifying the amount he/she must report on a tax return as "other income" and shall be required to provide a signed

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000361

**Exhibit 1**
**Page 351 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Confidential Informants*

acknowledgement of receipt of the letter. The completed acknowledgement form and a copy of the letter shall be retained in the confidential informant's file.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department



**Policy**
**610**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Eyewitness Identification

## 610.1  PURPOSE AND SCOPE
This policy sets forth guidelines to be used when members of this department employ eyewitness identification techniques.

### 610.1.1  DEFINITIONS
Definitions related to the policy include:

**Eyewitness identification process** -Any field identification, live lineup or photographic identification.

**Field identification** -A live presentation of a single individual to a witness following the commission of a criminal offense for the purpose of identifying or eliminating the person as the suspect.

**Live lineup** -A live presentation of individuals to a witness for the purpose of identifying or eliminating an individual as the suspect.

**Photographic lineup** - Presentation of photographs to a witness for the purpose of identifying or eliminating an individual as the suspect.

## 610.2  POLICY
This department will strive to use eyewitness identification techniques, when appropriate, to enhance the investigative process and will emphasize identifying persons responsible for crime and exonerating the innocent.

## 610.3  INTERPRETIVE SERVICES
Officers should make a reasonable effort to arrange for an interpreter before proceeding with eyewitness identification if communication with a witness is impeded due to language or hearing barriers.

Before the interpreter is permitted to discuss any matter with the witness, the investigating officer should explain the identification process to the interpreter. Once it is determined that the interpreter comprehends the process and can explain it to the witness, the eyewitness identification may proceed as provided for within this policy.

## 610.4  EYEWITNESS IDENTIFICATION FORM
The Investigations Supervisor shall be responsible for the development and maintenance of an eyewitness identification process for use by members when they are conducting eyewitness identifications.

The process and any related forms or reports should provide:

    (a)    The date, time and location of the eyewitness identification procedure.

    (b)    The name and identifying information of the witness.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000363

**Exhibit 1**
**Page 353 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Eyewitness Identification*

(c)    The name of the person administering the identification procedure.

(d)    If applicable, the names of all of the individuals present during the identification procedure.

(e)    An admonishment that the suspect's photograph may or may not be among those presented and that the witness is not obligated to make an identification.

(f)    An admonishment to the witness that the investigation will continue regardless of whether an identification is made by the witness.

(g)    A signature line where the witness acknowledges that he/she understands the identification procedures and instructions.

## 610.5  EYEWITNESS IDENTIFICATION
Officers are cautioned not to, in any way, influence a witness as to whether any subject or photo presented in a lineup is in any way connected to the case. Officers should avoid mentioning that:

•    The individual was apprehended near the crime scene.

•    The evidence points to the individual as the suspect.

•    Other witnesses have identified, or failed to identify, the individual as the suspect.

In order to avoid undue influence, witnesses should view suspects or a lineup individually and outside the presence of other witnesses. Witnesses should be instructed to avoid discussing details of the incident or of the identification process with other witnesses.

Whenever feasible, the eyewitness identification procedure should be audio and/or video recorded and the recording should be retained according to current evidence procedures.

### 610.5.1  PHOTOGRAPHIC LINEUP AND LIVE LINEUP CONSIDERATIONS
When practicable, the person composing the lineup and the person presenting the lineup should not be directly involved in the investigation of the case. When this is not possible, the member presenting the lineup must take the utmost care not to communicate the identity of the suspect in any way.

When practicable, the employee presenting a lineup to a witness should not know which photograph or person is the suspect.

Other persons or photos used in any lineup should bear similar characteristics to the suspect to avoid causing him/her to unreasonably stand out. In cases involving multiple suspects, a separate lineup should be conducted for each suspect. The suspects should be placed in a different order within each lineup.

The employee presenting the lineup to a witness should do so sequentially and not simultaneously (i.e., show the witness one person at a time). The witness should view all persons in the lineup.

The order of the suspect or the photos and the fillers should be randomized before being presented to each witness.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000364

**Exhibit 1**
**Page 354 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Eyewitness Identification*

A live lineup should only be used before criminal proceedings have been initiated against the suspect. If there is any question as to whether any criminal proceedings have begun, the investigating officer should contact the appropriate prosecuting attorney before proceeding.

### 610.5.2  FIELD IDENTIFICATION CONSIDERATIONS
Field identifications, also known as field elimination show-ups or one-on-one identifications, may be helpful in certain cases, where exigent circumstances make it impracticable to conduct a photo or live lineup identifications. A field elimination or show-up identification should not be used when independent probable cause exists to arrest a suspect. In such cases a live or photo lineup is the preferred course of action if eyewitness identification is contemplated.

When initiating a field identification, the officer should observe the following guidelines:

(a)  Obtain a complete description of the suspect from the witness.

(b)  Assess whether a witness should be included in a field identification process by considering:

    1.  The length of time the witness observed the suspect.

    2.  The distance between the witness and the suspect.

    3.  Whether the witness could view the suspect's face.

    4.  The quality of the lighting when the suspect was observed by the witness.

    5.  Whether there were distracting noises or activity during the observation.

    6.  Any other circumstances affecting the witness's opportunity to observe the suspect.

    7.  The length of time that has elapsed since the witness observed the suspect.

(c)  If safe and practicable, the person who is the subject of the show-up should not be handcuffed or in a patrol vehicle.

(d)  When feasible, officers should bring the witness to the location of the suspect, rather than bring the suspect to the witness.

(e)  A person should not be shown to the same witness more than once.

(f)  In cases involving multiple suspects, witnesses should only be permitted to view the suspects one at a time.

(g)  A person in a field identification should not be required to put on clothing worn by the suspect, to speak words uttered by the suspect or to perform other actions mimicking those of the suspect.

(h)  If a witness positively identifies an individual as the perpetrator, officers should not conduct any further field identifications with other witnesses for that suspect. In

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000365

**Exhibit 1**
**Page 355 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Eyewitness Identification*

such instances officers should document the contact information for any additional witnesses for follow up, if necessary.

### 610.6  DOCUMENTATION

A thorough description of the eyewitness process and the results of any eyewitness identification should be documented in the case report. Witness comments of how certain he/she is of the identification or non-identification should be quoted in the report.

If a photographic lineup is utilized, a copy of the photographic lineup presented to the witness should be included in the case report. In addition, the order in which the photographs were presented to the witness should be documented in the case report.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000366

**Exhibit 1**
**Page 356 of 550**



**Policy**
**612**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Brady Material Disclosure

### 612.1  PURPOSE AND SCOPE
This policy establishes guidelines for identifying and releasing potentially exculpatory or impeachment information (so-called "*Brady* information") to a prosecuting attorney.

### 612.1.1  DEFINITIONS
Definitions related to this policy include:

***Brady*  information** -Information known or possessed by the University of Oregon Police Department that is both favorable and material to the current prosecution or defense of a criminal defendant.

### 612.2  POLICY
The University of Oregon Police Department will conduct fair and impartial criminal investigations and will provide the prosecution with both incriminating and exculpatory evidence, as well as information that may adversely affect the credibility of a witness. In addition to reporting all evidence of guilt, the University of Oregon Police Department will assist the prosecution by complying with its obligation to disclose information that is both favorable and material to the defense. The Department will identify and disclose to the prosecution potentially exculpatory information, as provided in this policy.

### 612.3  DISCLOSURE OF INVESTIGATIVE INFORMATION
Officers must include in their investigative reports adequate investigative information and reference to all material evidence and facts that are reasonably believed to be either incriminating or exculpatory to any individual in the case. If an officer learns of potentially incriminating or exculpatory information any time after submission of a case, the officer or the handling investigator must prepare and submit a supplemental report documenting such information as soon as practicable. Supplemental reports shall be promptly processed and transmitted to the prosecutor's office.

If information is believed to be privileged or confidential (e.g., confidential informant or protected personnel files); the officer should discuss the matter with a supervisor and/or prosecutor to determine the appropriate manner in which to proceed.

Evidence or facts are considered material if there is a reasonable probability that they would affect the outcome of a criminal proceeding or trial. Determining whether evidence or facts are material often requires legal or even judicial review. If an officer is unsure whether evidence or facts are material, the officer should address the issue with a supervisor.

Supervisors who are uncertain about whether evidence or facts are material should discuss the issue with the appropriate prosecutor.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000367

**Exhibit 1**
**Page 357 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Brady Material Disclosure*

## 612.4   DISCLOSURE OF PERSONAL INFORMATION

The Lieutenant-Professional Standards and Training should periodically examine the personnel files and/or internal affairs files of all officers who may be material witnesses in criminal cases to determine whether they contain information that is potentially Brady information. The obligation to provide Brady information is ongoing. If any Brady information is identified, the District Attorney, the Eugene City Attorney and General Counsel should be notified. The officer will also be notified. Appropriate administrative action should be initiated if the prosecuting attorneys conclude that the information is, indeed, Brady information.

The Lieutenant-Professional Standards and Training may discuss with the District Attorney any administrative cases involving potential Brady information prior to the conclusion of the investigation .

If another member of this department is a material witness in a criminal case, the Lieutenant - Professional Standards and Training shall examine the personnel file and/or internal affairs file of the member to determine whether they contain *Brady* information. If *Brady* information is located, the following procedure shall apply:

(a)   In the event that a motion has not already been filed by the criminal defendant or other party, the prosecuting attorney and department member shall be notified of the potential presence of *Brady* material in the member's personnel file.

(b)   The prosecuting attorney or department counsel should be requested to file a motion in order to initiate an in camera review by the court.

   1.   If no motion is filed, the supervisor should work with counsel to determine whether the records should be disclosed to the prosecutor.

(c)   The Custodian of Records shall accompany all relevant personnel files during any in camera inspection to address any issues or questions raised by the court.

(d)   If the court determines that there is relevant *Brady* material contained in the files, only that material ordered released will be copied and released to the parties filing the motion.

   1.   Prior to the release of any materials pursuant to this process, the Custodian of Records should request a protective order from the court limiting the use of such materials to the involved case and requiring the return of all copies upon completion of the case.

(e)   If a court has determined that relevant *Brady* information is contained in the member's file in any case, the prosecutor should be notified of that fact in all future cases involving that member.

## 612.5   INVESTIGATING BRADY ISSUES

If the Department receives information from any source that a member may have issues of credibility, dishonesty or has been engaged in an act of moral turpitude or criminal conduct, the

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000368

**Exhibit 1**
**Page 358 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## Brady Material Disclosure

information shall be investigated and processed in accordance with the Personnel Complaints Policy.

**612.6  TRAINING**
Department personnel should receive periodic training on the requirements of this policy.

UO_Alvarez000369

**Exhibit 1**
**Page 359 of 550**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Chapter 7 - Equipment and Facilities

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000370
**Exhibit 1**
**Page 360 of 550**



**Policy**
**700**

### University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Department Owned and Personal Property

**700.1  PURPOSE AND SCOPE**
Department employees are expected to utilize only department issued equipment and properly care for department property assigned or entrusted to them. This policy establishes guidelines for requesting alternative or special equipment. Additionally, employees may also suffer occasional loss or damage to personal or department property while performing their assigned duty. Certain procedures are required depending on the loss and ownership of the item.

700.1.1  PERSONAL, SPECIAL OR ALTERNATIVE EQUIPMENT APPROVAL
The use of any non-issued equipment used in the course of an employee's duties must be approved, in advance, by the Chief of Police, or designee. The authorization form will be submitted to the Chief of Police through the employee's chain of command. This process also allows the authorization of equipment that the department wishes to test for general issuance.

Equipment includes, but is not limited to, audio or video recorders, knives, flashlights, handcuffs, batons, and other equipment specifically designed to facilitate the employee's work.

Property, which does not require prior approval, includes, but is not limited to, watches, eye glasses, etc.

**700.2  CARE OF DEPARTMENTAL PROPERTY**
Employees shall be responsible for the safekeeping, serviceable condition, proper care, use and replacement of department property assigned or entrusted to them. An employee's intentional or negligent abuse or misuse of department property may lead to discipline including, but not limited to the cost of repair or replacement.

    (a)    Employees shall promptly report through their chain of command, any loss, damage to, or unserviceable condition of any department issued property or equipment assigned for their use.

    (b)    Employees shall return any keys checked out through the department key watcher system at the end of their shift.

    (c)    The use of damaged or unserviceable department property should be discontinued as soon as practical and replaced with comparable Department property as soon as available and following notice to a supervisor.

    (d)    Except when otherwise approved by a supervisor or required by exigent circumstances, department property shall only be used by those to whom it was assigned. Use should be limited to official purposes and in the capacity for which it was designed.

    (e)    Department property shall not be thrown away, sold, traded, donated, destroyed, or otherwise disposed of without proper authority.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000371

**Exhibit 1**
**Page 361 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Department Owned and Personal Property*

    (f)    In the event that any Department property becomes damaged or unserviceable, no employee shall attempt to repair the property without prior approval of a supervisor.

## 700.3  FILING CLAIMS FOR PERSONAL PROPERTY
Claims for reimbursement for damage or loss of personal property must be made on the proper form. This form is submitted to the employee's immediate supervisor. The supervisor may require a separate written report of the loss or damage.

The supervisor shall direct a memo to the appropriate Division Commander, which shall include the results of his/her investigation and whether the employee followed proper procedures. The supervisor's report shall address whether reasonable care was taken to prevent the loss or damage.

Upon review by staff and a finding that no misconduct or negligence was involved, repair or replacement may be recommended by the Chief of Police who will then forward the claim to the UOPD Administrative Services Division.

The Department will not replace or repair luxurious or overly expensive items (jewelry, exotic equipment, etc.) that are not reasonably required as a part of work.

### 700.3.1  REPORTING REQUIREMENT
A verbal report shall be made to the employee's immediate supervisor as soon as circumstances permit.

A written report shall be submitted before the employee goes off duty or within the time frame directed by the supervisor to whom the verbal report is made.

## 700.4  LOSS OR DAMAGE OF PROPERTY OF ANOTHER
Officers and other employees intentionally or unintentionally may cause damage to the real or personal property of another while performing their duties. Any employee who damages or causes to be damaged any real or personal property of another while performing any law enforcement functions, regardless of jurisdiction, shall report it as provided below.

    (a)    A verbal report shall be made to the employee's immediate supervisor as soon as circumstances permit.

    (b)    A written report shall be submitted before the employee goes off duty or within the time frame directed by the supervisor to whom the verbal report is made.

### 700.4.1  DAMAGE BY PERSON OF ANOTHER AGENCY
If employees of another jurisdiction cause damage to real or personal property belonging to the University, it shall be the responsibility of the employee present or the employee responsible for the property to make a verbal report to his/her immediate supervisor as soon as circumstances permit. The employee shall submit a written report before going off duty or as otherwise directed by the supervisor.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000372

**Exhibit 1**
**Page 362 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Department Owned and Personal Property*

These written reports, accompanied by the supervisor's written report, shall promptly be forwarded to the appropriate Division Commander.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000373

**Exhibit 1**
**Page 363 of 550**



Policy
**701**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Facilities, Security and Access

### 701.1  PURPOSE AND SCOPE
The purpose of this policy is to establish security philosophy and general guidelines on the restrictions to access to UOPD facilities. Police records, documents, communications and routine business is generally confidential and must be secured from unauthorized viewing or access. Controlling access to the facilities is paramount to ensuring the confidentiality of documents, complying with Criminal Justice Information System (CJIS) regulations, communications and personal safety of the employees and public who access those facilities.

### 701.1.1  FACILITY SECURITY PROGRAM RESPONSIBILITY
The Communications Emergency Response Center Manager will have overall program responsibilities for security and access control to UOPD facilities (Program Manager). For purposes of this program, the Access Coordinator will report to the CERC Manager.

The Access Coordinator will be responsible for:

- Inventory control of all access control visitor lanyards
  - Audits will be performed periodically, but no less frequently than bi-weekly
- Review and storage of access logs and other program documents
- Investigation and resolution of issues relating to security and access control
- Reporting of significant issues involving facility security or access control to Command staff

### 701.2  RESTRICTIONS TO ACCESS
Each faciilty of UOPD has a combination of public access and limited access areas. A barrier (door, gate, etc.) will be located at each entry point where access is limited and clearly marked by signage indicating that access is limited (for example, "Access by Authorized Persons Only").

Any person inside a secure area of a UOPD facility will wear the appropriate ID card, according to their status described below.

- Types of access control cards
  - UOPD ID (as limited by UO access restrictions)
  - V-LE (visiting Law Enforcement personnel)
  - V-SE (visiting Security personnel)
  - V-DI (Visiting professionals, dignitaries or UO personnel with frequent need for access) UNESCORTED ACCESS REQUIRES STATE AND NATIONAL FINGERPRINT BACKGROUND CHECK
  - V-CT (Contractors and workers who need access to facilities for frequent and extended periods of time who have passed a background check )

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000374

**Exhibit 1**
**Page 364 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Facilities, Security and Access*

UNESCORTED ACCESS REQUIRES STATE AND NATIONAL FINGERPRINT BACKGROUND CHECK

- ○ V-ES (Members of the public who will be escorted at all times within the UOPD facility)

### 701.2.1   UOPD PERSONNEL
UOPD employees will display their Department ID on a lanyard or clip so that it is visible at or above the waist at all times while in a UOPD facility. For convenience, the Department ID card may be included in the same holder as the employee's prox card.

- Uniformed personnel are not required to display ID cards while in uniform.

### 701.2.2   VISITING LAW ENFORCEMENT OR SECURITY PERSONNEL
Visiting Law Enforcement or Security personnel are not required to be escorted while in the building, but will display:

- Their department ID card, affixed to their outer clothing and visible above the waist, or

- A V-LE lanyard that is issued by front counter/greeter personnel

### 701.2.3   VISITING UNIVERSITY DIGNITARIES OR OTHER PROFESSIONALS
Visiting University of Oregon (for example University Administrators, facilities employees) or other Professional people who have a need for frequent visitation and are authorized by the Chief of Police, or designee for un-escorted access:

- Will display a V-DI card that is issued directly to them in a manner visible above the waist

- They will be allowed to log in and out on their own (front counter or greeter personnel will assist with this process, if necessary)

### 701.2.4   CONTRACTORS
Contractors (for example, building contractors, IT contractors) will be processed by Police Records staff in the following manner:

- They will fill out a Contractors Access Agreement prior to their first access

- Police Records staff will run their local record, LEDS and NCIC inquiries and bring any concerns to the attention of the Program Manager who will make a recommendation to the Chief of Police, or designee, whether to allow contractor access to the facility

- Upon approval for access, will be issued a V-CT card that will have an expiration date label attached. The expiration date will be determined by the anticipated length of their needed access, and may be extended as necessary to facilitate their work

- At the end of the access period, the contractor will return the card to Police Records Staff

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000375

**Exhibit 1**
**Page 365 of 550**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Facilities, Security and Access*

701.2.5   GENERAL PUBLIC
General public is not afforded un-escorted access to any secure portion of UOPD facilities. Ride-along participants will have been issued an "Observer" tag which will qualify as a V-ES card.

- If a member of the public has an appointment with, or otherwise has a business need to access secure areas, front desk or greeter personnel will:
  - Obtain government issued identification and visually verify that the individual pictured is the one presenting the identification
  - Have the person print and sign the entry log
  - Date and time the log under "entry"
  - Issue them a V-ES (Visitor - Escort) card
  - Call the employee who is meeting with the person and they will respond to the barrier for escort
  - While the person is in a facility, UOPD escorting personnel will be vigilant in ensuring the individual cannot physically, or visually, access CJIS information (for example, computer screens showing NCIC, LEDS or RMS applications)
- When the person with the V-ES card is ready to leave, escorts/front desk/greeter personnel will:
  - Date and time the log under "exit"
  - Obtain the V-ES card and replace it in its normal storage location

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department



### Policy
### 702

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Personal Communication Devices

### 702.1  PURPOSE AND SCOPE
The purpose of this policy is to establish guidelines for the use of mobile telephones and communication devices, whether issued by the Department or personally owned, while on-duty or when used for authorized work-related purposes.

This policy generically refers to all such devices as Personal Communication Devices (PCD) but is intended to include all mobile telephones, personal digital assistants (PDA) and similar wireless two-way communications and/or portable Internet access devices. PCD use includes, but is not limited to, placing and receiving calls, text messaging, blogging and microblogging, e-mailing, using video or camera features, playing games and accessing sites or services on the Internet.

Pursuant to the University of Oregon Acceptable Use of Computing Resources and the corresponding Addendum(s), all PCDs supplied by the UOPD are for administrative and law enforcement purposes only, and their use is strictly limited to the conduct of Department business.

### 702.2  POLICY
The University of Oregon Police Department allows employees to utilize department-issued PCDs and to possess personally owned PCDs in the workplace, subject to certain limitations.

Any PCD used on or off-duty in any manner reasonably related to the business of the Department, will be subject to monitoring and inspection consistent with the standards set forth in this policy. Personally owned PCD's used for Department business related purposes may subject the employee's PCD records to civil or criminal discovery or disclosure under applicable public records laws.

The inappropriate use of a PCD while on-duty may impair officer safety. Employees who have questions regarding the application of this policy or the guidelines contained herein are encouraged to seek clarification from supervisory personnel.

### 702.3  PRIVACY POLICY
Employees shall have no expectation of privacy with regard to any communication made with or stored in or through PCDs issued by the Department and shall have no expectation of privacy in their location should the device be equipped with location detection capabilities. The use of any department-provided or -funded PCD, computer, Internet service, telephone service or other wireless service while on-duty is without any expectation of privacy that the employee might otherwise have in any communication, including the content of any such communication. Communications or data reception on personal, password-protected, web-based e-mail accounts and any other services are subject to monitoring if department equipment is used.

In accordance with this policy, supervisors are authorized to conduct a limited administrative search of electronic files without prior notice, consent or a search warrant, on department-issued or personally owned PCDs that have been used to conduct department-related business.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000377

Exhibit 1
Page 367 of 550

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Personal Communication Devices*

Administrative searches can take place for work-related purposes that may be unrelated to investigations of employee misconduct and, as practicable, will be done upon request and in the presence of the affected employee. Prior to conducting any search of personally owned devices, supervisors shall consult with the Chief of Police. All such searches shall be fully documented in a written report.

### 702.4   DEPARTMENT-ISSUED PCD
Depending on an employee's assignment and the needs of the position, the Department may, at its discretion, issue a PCD. Department-issued PCDs are provided as a convenience to facilitate on-duty performance only. Such devices and the associated telephone number shall remain the sole property of the Department and shall be subject to inspection or monitoring (including all related records and content) at any time without notice and without cause.

Unless an employee is expressly authorized by the Chief of Police, or designee, for off-duty use of the PCD, the PCD will either be secured in the workplace at the completion of the tour of duty or will be turned off when leaving the workplace.

### 702.5   PERSONALLY OWNED PCD
Employees may carry a personally owned PCD while on-duty, subject to the following conditions and limitations:

(a)   The Department accepts no responsibility for loss of or damage to a personally owned PCD.

(b)   The PCD and any associated services shall be purchased, used and maintained solely at the employee's expense.

(c)   The device should not be used for work-related purposes except in exigent circumstances (e.g., unavailability of radio communications and no department issued PCD is available). Employees will have no expectation of privacy with regard to any department business-related communication.

(d)   The device shall not be utilized to record or disclose any business-related information, including photographs, video or the recording or transmittal of any information or material obtained or made accessible as a result of employment with the Department, without the express authorization of the Chief of Police or the authorized designee.

(e)   Use of a personally owned PCD for Department business constitutes consent for the Department to access the PCD to inspect and copy data to meet the needs of the Department, which may include litigation, public records retention and release obligations and internal investigations.

(f)   If the Department determines that the use of a personally owned PCD on-duty for personal business violates the provisions of 702.6 (c) the privilege of carrying or using the PCD on-duty may be revoked.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000378

**Exhibit 1**
**Page 368 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Personal Communication Devices*

Except with prior express authorization from their supervisor, employees are not obligated or required to carry, access, monitor or respond to electronic communications using a personally owned PCD while off-duty. If an employee is in an authorized status that allows for appropriate compensation consistent with policy or existing collective bargaining agreements, or if the employee has prior express authorization from his/her supervisor, the employee may engage in business-related communications. Should employees engage in such approved off-duty communications or work, employees entitled to compensation shall promptly document the time worked and communicate the information to their supervisors to ensure appropriate compensation. Employees who independently document off-duty department-related business activities in any manner may be asked to provide the Department with a copy of such records to ensure accurate record keeping.

## 702.6   USE OF PERSONAL COMMUNICATION DEVICES
The following protocols shall apply to all PCDs that are carried while on-duty or used to conduct department business:

(a)    A PCD shall not be carried in a manner that allows it to be visible while in uniform, unless it is in an approved carrier.

(b)    All PCDs in the workplace should be set to silent or vibrate mode.

(c)    PCD's will not be used to conduct personal business on duty, with the limited exception of brief personal use during authorized work breaks, or minimal personal business that contributes to the efficiency and effectiveness of the employee (for example, making child-care arrangements). Personal use shall not interfere with the employee's ability to accomplish their assigned responsibilities.

(d)    Employees may use a PCD to communicate with other personnel in situations where the use of the radio is either impracticable or not feasible. PCDs should not be used as a substitute for, as a way to avoid or in lieu of regular radio communications.

(e)    Officers are prohibited from taking pictures, video or making audio recordings or making copies of any such picture or recording media unless it is directly related to official department business. Disclosure of any such information to any third party through any means, without the express authorization of the or the authorized designee, may result in discipline.

(f)    Employees will not access social networking sites for any purpose that is not official department business.

(g)    Using PCDs to harass, threaten, coerce or otherwise engage in inappropriate conduct with any third party is prohibited. Any employee having knowledge of such conduct shall promptly notify a supervisor.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000379

**Exhibit 1**
**Page 369 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Personal Communication Devices*

---

### 702.7   USE WHILE DRIVING

The use of a PCD while driving can adversely affect safety, cause unnecessary distractions and present a negative image to the public. Officers operating emergency vehicles should restrict the use of these devices to matters of an urgent nature and should, where practicable, stop the vehicle at an appropriate location to use the PCD.

Except in an emergency, employees who are operating non-emergency vehicles shall not use a PCD while driving unless the device is specifically designed and configured to allow hands-free use (ORS 811.507). Hands-free use should be restricted to business-related calls or calls of an urgent nature.

### 702.8   OFFICIAL USE

Employees are reminded that PCDs are not secure devices and conversations may be intercepted or overheard. Caution should be exercised while utilizing PCDs to ensure that sensitive information is not inadvertently transmitted. As soon as reasonably possible, employees shall conduct sensitive or private communications on a land-based or other department communications network.

Officers should be aware that the police radio is the primary communication tool, and PCD's should not supplant radio traffic.

The following situations are examples of when the use of a PCD may be appropriate:

    (a)    Barricaded suspects

    (b)    Hostage situations

    (c)    Mobile Command Post

    (d)    Catastrophic disasters, such as plane crashes, earthquakes, floods, etc.

    (e)    Major political or community events

    (f)    Investigative stakeouts

    (g)    Emergency contact with an allied agency or allied agency field unit

    (h)    When immediate communication is needed and the use of the radio is not available or appropriate and other means are not readily available

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000380

**Exhibit 1**
**Page 370 of 550**



**Policy**
**703**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Department Assigned Lockers

### 703.1  PURPOSE AND SCOPE
The purpose of this policy is to define the standards all employees assigned lockers are expected to follow.

### 703.2  GENERALLY

(a)  Assignment to a locker will be determined by rank and seniority within the department.

(b)  Locks for the lockers will be provided by the department. No privately owned locks will be permitted for use on department assigned lockers. Unauthorized locks will be removed without the consent of the employee assigned to the locker.

(c)  No perishables will be stored in lockers. All food items will be kept in the designated kitchen/break areas. Lockers will be maintained by the assigned employee to a reasonable standard of cleanness to ensure contents are not offensive in any manner to the surrounding area and the appearance is orderly.

(d)  Only name plates approved and provided by the department will be posted to the outside of the lockers. The last name of the employee, and the first initial of the first name when the last name is identical to that of another employee, will be listed on the name plate.

(e)  No objects, to include posters, photographs or other material will be affixed to the outside of the lockers. No objects, photographs, drawings or other materials will be affixed inside lockers and visible to others that are offensive in nature.

(f)  Only boots or other footwear may be stored above the lockers.

(g)  Employees will ensure their personal belongings and department issued equipment are properly stored in their assigned lockers. No personal items or clothing (to include department issued uniforms) shall remain outside the employees' assigned locker. No hazardous materials shall be stored in any locker. No department equipment for general use will be stored in an employee's locker (i.e. department radios). No prohibited items (e.g. alcohol, tobacco) shall be stored in assigned lockers.

(h)  Lockers will only be accessed by assigned personnel or with the employee's consent or at the direction of a supervisor. Unsecured lockers will be reported to the on-duty Executive Coordinator at the time of the discovery. Any found locker keys are to be immediately secured and delivered to the on-duty Executive Coordinator.

(i)  All lockers are subject to inspection at any time and without advance notice. There is no expectation of privacy with any department issued equipment, to include lockers. (see also Policy section 1020.6.1)

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000381

**Exhibit 1**
**Page 371 of 550**



**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

**Policy**
**704**

# Vehicle Maintenance

**704.1  PURPOSE AND SCOPE**
Employees are responsible for assisting in maintaining Department vehicles so that they are properly equipped, properly maintained, properly refueled and present a clean appearance.

**704.2  DEFECTIVE VEHICLES**
When a department vehicle becomes inoperative or in need of repair that affects the safety of the vehicle, that vehicle shall be removed from service for repair. Proper documentation shall be promptly completed by the employee who first becomes aware of the defective condition, describing the correction needed. The paperwork shall be promptly forwarded to vehicle maintenance for repair.

**704.3  VEHICLE EQUIPMENT**
Certain items shall be maintained in all department vehicles for emergency purposes and to perform routine duties.

704.3.1  PATROL VEHICLES
Officers shall inspect the patrol vehicle at the beginning of the shift and ensure that the following equipment, at a minimum, is present in the vehicle:

- 10 Emergency road flares
- 2 Sticks yellow traffic chalk
- 1 Roll Crime Scene Barricade Tape, red
- 1 Roll Police Line Tape, yellow
- 1 First aid kit, 24 unit modular
- 1 First Aid Kit, blue canvas bag
- 1 AED, CPR mask
- 1 Blanket
- 1 Fire extinguisher, 5#
- 1 Blood-borne pathogen kit, Incl. protective gloves andbiohazard waste disposal bags
- 1 Sharps container
- 1 Traffic Safety Vest
- 1 Hazardous Materials Emergency Response Handbook
- 1 Evidence collection supplies

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000382

**Exhibit 1**
**Page 372 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Vehicle Maintenance*

- 1 Fingerprint kit
- 1 Digital Camer

## 704.4  VEHICLE REFUELING
Absent emergency conditions or supervisor approval, officers driving patrol vehicles shall not place a vehicle in service that has less than one-quarter tank of fuel. Vehicles shall only be refueled at the authorized location. Vehicles should be fueled at the end of each shift.

## 704.5  WASHING OF VEHICLES
All units shall be kept clean at all times and weather conditions permitting, shall be washed as necessary to enhance their appearance.

Officers in patrol shall obtain clearance from the dispatcher before responding to the car wash. Only one marked unit should be at the car wash at the same time unless otherwise approved by a supervisor.

Employees using a vehicle shall remove any trash or debris at the end of their shift. Confidential material should be placed in a designated receptacle provided for the shredding of this matter.

### 704.5.1  CONTAMINATED VEHICLES
(a)  Substantial Contamination from blood or other body fluids

    1.  Place bio-hazard stickers on the windows, clearly visible to anyone approaching vehicle

    2.  Take vehicle out of service

    3.  Notify dispatch for appropriate computer logging

    4.  On-duty supervisor is responsible for contacting EH&S for assistance in the decontamination process

(b)  Minor Contamination from blood or other body fluids

    1.  This applies only if the decontamination can be done without risk of personal contamination

    2.  Wear protective gloves and eye protection

    3.  Clean with the blood borne pathogen kit contained in the vehicle.

    4.  Allow to air dry before using the vehicle again.

## 704.6  NON-SWORN EMPLOYEE USE
Non-sworn employees using marked vehicles shall ensure all weapons are removed from vehicles before going into service. Non-sworn employees shall also prominently display the "out of service" placards or light bar covers at all times. Non-sworn employees shall not operate the emergency lights or siren of any vehicle unless expressly authorized by a supervisor.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000383

**Exhibit 1**
**Page 373 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Vehicle Maintenance*

PSO's driving a marked vehicle will remove all firearms from the vehicle before going into service.

Marked vehicles released to non-members for service or any other reason shall have all weapons removed and "out of service" placards or light bar covers in place.

## 704.7   VEHICLE INSPECTION

Unless delayed by an emergency call, employees shall inspect department vehicles at the beginning of each shift for any damage, and to ensure that all systems, lights and emergency equipment are in good working order. The interiors should be examined to confirm no property or contraband is present. The interior inspection should be repeated at the conclusion of any prisoner transport.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000384

**Exhibit 1**
**Page 374 of 550**



**Policy**
**706**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Vehicle Use

### 706.1  PURPOSE AND SCOPE
This policy establishes a system of accountability to ensure University-owned vehicles are used appropriately. For the purposes of this policy, "University-owned" includes any vehicle owned, leased or rented by the University.

### 706.2  POLICY
The Department provides vehicles for official business use and may assign take-home vehicles based on its determination of operational efficiency, economic impact to the Department, tactical deployments and other considerations.

### 706.3  USE OF VEHICLES
University-owned vehicles shall only be used for official business and, when approved, for commuting to allow members to respond to department-related business outside their regular work hours.

Members shall not operate a University-owned vehicle at any time when impaired by drugs and/ or alcohol.

Any member operating a vehicle equipped with a two-way communications radio, MDT and/or a GPS device shall ensure the devices are on and set to an audible volume whenever the vehicle is in operation.

### 706.3.1  SHIFT ASSIGNED VEHICLES
Members who use a fleet vehicle as part of their work assignment shall ensure that the vehicle is properly checked out and logged with CERC, prior to taking it into service. If for any reason during the shift the vehicle is exchanged, the member shall ensure that the exchanged vehicle is likewise properly noted.

Members shall be responsible for inspecting the interior and exterior of any assigned vehicle before taking the vehicle into service and at the conclusion of the shift. Any previously unreported damage, mechanical problems, unauthorized contents or other problems with the vehicle shall be promptly reported to a supervisor and documented as appropriate.

All vehicles used in patrol operations are equipped with a police radio and emergency equipment as defined by ORS 816.250 and OAR 735-110-0010 through OAR 735-110-0050. Vehicles with defective emergency equipment should be promptly reported to a supervisor and not used for patrol duties.

### 706.3.2  UNSCHEDULED USE OF VEHICLES
Members utilizing a University-owned vehicle for any purpose other than their regularly assigned duties shall first notify the Watch Commander of the reason for use and will follow established check-out procedures. This section does not apply to members permanently assigned an

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000385

**Exhibit 1**
**Page 375 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

individual vehicle (e.g., command staff, detectives), who regularly use the vehicle on an unscheduled basis as part of their normal assignment.

### 706.3.3   UNMARKED VEHICLES
Except for use by the assigned member, unmarked units shall not be used without first obtaining approval from the supervisor of the unit to which the vehicle is assigned.

### 706.3.4   INVESTIGATIONS UNIT VEHICLES
Investigations Unit vehicle use is restricted to investigative personnel during their assigned work hours unless approved by an Investigations Sergeant. Investigations Unit members shall record vehicle usage via the key check-out system.

### 706.3.5   AUTHORIZED PASSENGERS
Members operating University-owned vehicles shall not permit persons other than University members or persons required to be conveyed in the performance of duty, or as otherwise authorized, to ride as a passenger in their vehicle.

### 706.3.6   PARKING
Except when responding to an emergency or other urgent official business requires otherwise, members driving University-owned vehicles should obey all parking regulations at all times.

University owned vehicles should be parked in their assigned stalls. Employees shall park privately owned vehicles in accordance with University parking regulations.

### 706.3.7   INSPECTIONS
The interior of any vehicle that has been used to transport any person other than a member should be inspected prior to placing another person in the vehicle and again after the person is removed. This is to ensure that unauthorized or personal items have not been left in the vehicle.

When transporting any suspect, prisoner or arrestee, the transporting officer shall search all areas of the vehicle that are accessible by the person before and after the person is transported.

### 706.3.8   PRIVACY
All University-owned vehicles are subject to inspection and/or search at any time by a supervisor without notice and without cause. No member assigned to or operating such vehicle shall be entitled to any expectation of privacy with respect to the vehicle or its contents.

## 706.4   ASSIGNED VEHICLE AGREEMENT
Members who have been assigned a take-home vehicle may use the vehicle to commute to the workplace and for department-related business. The member must be approved for an assigned vehicle by his/her Division Commander and shall sign an agreement that includes the following criteria:

(a)   The member must live within a 15-minute commute of his/her regularly assigned work location (based on average traffic flow). A longer response time may be permitted subject to Division Commander approval. Members who reside outside the permissible

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000386

**Exhibit 1**
**Page 376 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Vehicle Use*

response time may be required to secure or garage the vehicle at a designated location or the central office at the discretion of the Division Commander.

(b)     Except as may be provided by a collective bargaining agreement time spent during normal commuting is not compensable.

(c)     University-owned vehicles shall not be used for personal errands or other personal business unless approved by a supervisor for exceptional circumstances. The member may be required to maintain insurance covering any commuting or personal use.

(d)     The member may be responsible for the care and maintenance of the vehicle. The Department should provide necessary care and maintenance supplies.

(e)     The vehicle shall be parked in secure off-street parking when parked at the member's residence.

(f)     Vehicles shall be locked when not attended.

(g)     If the vehicle is not secured inside a locked garage, all firearms and kinetic impact weapons shall be removed from the interior of the vehicle and properly secured in the residence (see the Firearms and Qualification Policy regarding safe storage of firearms at home).

(h)     When the member will be away (e.g., on vacation) for periods exceeding one week the vehicle shall be stored in a secure garage at the member's residence or at the appropriate department facility.

(i)     All department identification, portable radios and equipment should be secured.

Members are cautioned that under federal and local tax rules, personal use of a University-owned vehicle may create an income tax liability to the member. Members should address questions regarding tax consequences to their tax adviser.

The assignment of vehicles is at the discretion of the Chief of Police. Assigned vehicles may be changed at any time and/or permission to take home a vehicle may be withdrawn at any time.

## 706.5   KEYS AND SECURITY
All vehicle keys will be checked out using the established procedure from the key locker. At the end of shift, or when a vehicle will not be driven for an extended period of time, they keys will be checked in to the locker. Keys will not be stored in any other place without authorization from a Supervisor.

The loss of any key shall be promptly reported in writing through the member's chain of command.

## 706.6   ENFORCEMENT ACTIONS
When driving an assigned vehicle to and from work outside of the jurisdiction of the University of Oregon Police Department, an officer should avoid becoming directly involved in enforcement actions except in those circumstances where a potential threat to life or serious property damage

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000387

Exhibit 1
Page 377 of 550

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Vehicle Use*

exists (see the Off-Duty Law Enforcement Actions Policy and the Law Enforcement Authority Policy).

Officers may render public assistance (e.g., to a stranded motorist) when deemed prudent.

Officers shall, at all times while driving a marked University-owned vehicle, be armed, appropriately attired and carry their department-issued identification. Officers should also ensure that department radio communication capabilities are maintained to the extent feasible.

## 706.7  MAINTENANCE
Members are responsible for the cleanliness (exterior and interior) and overall maintenance of their assigned vehicles.

Members shall make daily inspections of their assigned vehicles for service/maintenance requirements and damage. It is the assigned member's responsibility to ensure that his/her assigned vehicle is maintained according to the established service and maintenance schedule.

Supervisors shall make, at the minimum, monthly inspections of vehicles assigned to members under their command to ensure the vehicles are being maintained in accordance with policy.

### 706.7.1  ACCESSORIES AND/OR MODIFICATIONS
No modifications, additions or removal of any equipment or accessories shall be made to the vehicle without written permission from the Division Commander.

## 706.8  VEHICLE DAMAGE, ABUSE AND MISUSE
When a University-owned vehicle is involved in a traffic collision, or otherwise incurs damage, the involved employee shall promptly notify a supervisor. A traffic collision report shall be filed with the agency having jurisdiction. If mandatory DMV reporting regulations for the collision do not apply, ensure that the report is marked "Do Not Send to DMV."

When a collision involves a department vehicle or when a member of this department is an involved driver in a collision that occurs in this jurisdiction, and the collision results in serious injury or death, the supervisor should request that an outside law enforcement agency should be summoned to investigate the collision.

The employee involved in the collision shall complete the University's vehicle accident form. If the employee is incapable, the supervisor shall complete the form.

Any damage to a vehicle that was not caused by a traffic collision shall be immediately reported during the shift in which the damage was discovered, documented in a memorandum and forwarded to the watch commander.

An administrative investigation will be conducted to determine indications of vehicle abuse, misuse, or "at-fault" driving. If it is determined that misuse, abuse or "at-fault" driving was a factor appropriate disciplinary action may result.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000388

**Exhibit 1**
**Page 378 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Vehicle Use*

No person will be initially cited if the collision was the result of a violation of Oregon Motor Vehicle Code. In that case, the collision report(s) will be forwarded to the appropriate prosecutor's office for determination of whether citations should be issued in this particular case.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department



**Policy**
**707**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Operation of Off-Highway Vehicles (OHV)

### 707.1  PURPOSE AND SCOPE
The purpose of this policy is to define the standards of operation for all OHVs and the maintenance and care of these vehicles. OHVs are classified as vehicles not licensed for use on public highways to include all-terrain vehicles (ATV) and utility vehicles (UV).

### 707.2  POLICY
It is the policy of the University of Oregon Police Department that department owned or controlled Off-Highway Vehicles (OHVs) will be operated in accordance with state and local laws and shall always be operated in a safe and lawful manner as dictated by the circumstances.

### 707.3  PROCEDURE
A. It is the responsibility of all employees to always operate any department vehicle in a safe and lawful manner.

B. A valid Oregon Driver's License shall be required of all personnel operating OHVs.

C. OHV operators must maintain a current University driver's certification card.

D. OHV operators will have successfully completed all the state required safety course(s) and obtained any state issued operator permits (I.E. Oregon's OHV Safety Education Card) prior to the operation of department OHVs.

E. OHV operators will have successfully completed the UOPD safety operations course. The FTO administrator, or his/her designee, will be responsible for the development and delivery of the OHV safety operations course.

F. OHV operators will properly use all authorized safety equipment while utilizing the OHVs.

a. ATV Safety Equipment: Helmet, protective eyewear and gloves.

b. UV Safety Equipment: Safety belt.

c. ATV and UV Safety Equipment: Headlights will be used at all times and emergency lights and sirens when appropriate.

G. Employees will wear a department uniform while operating an OHV.

H. Employees shall not operate department OHVs unless they are authorized to do so.

I. Employees shall not allow unauthorized persons to operate and/or ride on department OHVs.

J. Employees will adhere to safe driving techniques and obey all traffic laws when operating an OHV.

K. Ignition keys shall be removed from all OHVs when the employee leaves

the immediate vicinity of the vehicle.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000390

**Exhibit 1**
**Page 380 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

## *Operation of Off-Highway Vehicles (OHV)*

L. The posting of unauthorized signs, decals, insignias, stickers, or any other items to OHVs is prohibited.

M. Employees utilizing the OHVs shall be responsible for the care and maintenance of the vehicle while they are using it and for the condition of the vehicle at the termination of its use. All OHVs will be fueled at the end of use or at any time the supply is one-quarter of capacity or less. At every refueling the engine oil level will be checked and necessary additions made.

N. OHVs will be kept clean at all times. The storage compartments of every vehicle shall be kept clear of unnecessary or foreign items.

O. OHV operators will inspect their assigned unit prior to use. The operator shall note any of the following conditions:

1. Vehicle damage observed.

2. Missing equipment.

3. Unsafe equipment (such as worn tires).

4. Malfunctioning equipment.

5. Poor running performance (this may become evident after driving the vehicle).

Any damage or missing equipment shall be noted and the on-duty Executive Coordinator immediately notified. It is the responsibility of the Executive Coordinator to ensure the appropriate internal advisements are made.

P. All OHV repair requests will be forwarded to the designated internal contact.

This individual shall be responsible to assure that repair requests are handled in a timely manner. This person will schedule needed maintenance and service.

Q. OHV operators may be held accountable for conditions and/or damages that he/she failed to report while he/she was in control of the OHV.

R. OHV operators will drive the OHV in a safe and lawful manner during emergency responses, not exceeding the capabilities of the vehicle or his/her driving skills.

S. Traffic stops will not be made using OHVs. OHVs will not be involved in pursuits.

T. Transport of subjects in custody is prohibited, unless authorized by a department supervisor.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

## University of Oregon Police Department

University of Oregon Police Department Policy Manual

# Chapter 8 - Support Services

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000392

**Exhibit 1**
**Page 382 of 550**

# Crime Analysis

## 800.1 PURPOSE AND SCOPE

Crime analysis should provide currently useful information to aid operational personnel in meeting their tactical crime control and prevention objectives by identifying and analyzing methods of operation of individual criminals, providing crime pattern recognition, and providing analysis of data from field interviews and arrests. Crime analysis can be useful to the Department's long range planning efforts by providing estimates of future crime trends and assisting in the identification of enforcement priorities.

## 800.2 DATA SOURCES

Crime analysis data is extracted from many sources including, but not limited to:

- Crime reports
- Field Interview cards
- Parole and Probation records
- Computer Aided Dispatch data
- Oregon Department of Transportation
- Oregon Traffic Safety Commission
- Information obtained from participation in local and regional crime sharing meetings

## 800.3 CRIME ANALYSIS FACTORS

The following minimum criteria should be used in collecting data for Crime Analysis:

- Frequency by type of crime
- Geographic factors
- Temporal factors
- Victim and target descriptors
- Suspect descriptors
- Suspect vehicle descriptors
- Modus operandi factors
- Physical evidence information

## 800.4 CRIME ANALYSIS DISSEMINATION

For a crime analysis system to function effectively, information should be disseminated to the appropriate units or persons on a timely basis. Information that is relevant to the operational and tactical plans of specific line units should be sent directly to them. Information relevant to the

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

## *Crime Analysis*

development of the Department's strategic plans should be provided to the appropriate staff units. When information pertains to tactical and strategic plans, it should be provided to all affected units.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department



Policy
**802**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Communications and Emergency Response Center (CERC)

### 802.1  PURPOSE AND SCOPE
The basic function of the communications system is to satisfy the immediate information needs of the law enforcement agency in the course of its normal daily activities and during emergencies. The latter situation places the greatest demands upon the communications system and tests the capability of the system to fulfill its functions. Measures and standards of performance are necessary to assess the effectiveness with which any department, large or small, uses available information technology in fulfillment of its missions.

#### 802.1.1  FCC COMPLIANCE
University of Oregon Police Department radio operations shall be conducted in accordance with Federal Communications Commission (FCC) procedures and guidelines.

#### 802.1.2  CODE OF ETHICS
All communication personnel at the University of Oregon Police Department shall conduct themselves in accordance with the tenets of the Public Safety Telecommunicator's Code of Ethics.

The Communications and Emergency Response Manager shall ensure that newly hired Communications Officers working under their supervision read and sign a copy of the Code of Ethics during their initial training and orientation period. The signed copy shall be retained in the employee's personnel record.

### 802.2  COMMUNICATIONS GUIDELINES
This department provides 24-hour telephone service to the public for information or assistance that may be needed in emergencies. The ability of citizens to telephone quickly and easily for emergency service is critical. This department maintains direct contact with Central Lane Communications and promotes the use of the 9-1-1 system for a single emergency telephone number. This department has two-way radio capability providing continuous communication between the Communications and Emergency Response Center and officers.

#### 802.2.1  STRUCTURE
**Director** - The Division Commander is responsible for directing the overall operations of the Communications and Emergency Response Center including establishing policies and procedures, budgeting and fiscal planning, managing human resources, evaluating programs and services, and the overall maintenance of all Center equipment.

**Supervisors** - All Communications and Emergency Response Managers are responsible for the operations of their particular shift and, in coordination with other supervisors, the efficient and effective operation of the Center on a day-to-day basis. Each Communications and Emergency Response Manager is also responsible for the supervision, training and evaluation of personnel assigned to their shift; scheduling; compliance to established policies; reviewing requests for

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000395

**Exhibit 1**
**Page 385 of 550**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Communications and Emergency Response Center (CERC)*

copies of information for release; maintaining time records; and maintenance of CAD and Master Street Address Guide files. All Communications and Emergency Response Managers report to the Division Commander.

**Communication Officers** - Communications Officers are responsible for the receipt and handling of all incoming and transmitted communications, including but not limited to emergency lines; normal business phone lines; TTY devices, and radio communications with fire, EMS, and law enforcement units. Communications Officers are also responsible for entering of CAD data for all field activities of fire, EMS, and law enforcement units and making inquiries through outside data bases (i.e. LEDS, NCIC, DMV, etc.) in support of those field units. Communications Specialists report to their respective Communications and Emergency Response Manager.

### 802.2.2 SCHEDULING
Scheduling in Communications and Emergency Response Center shall consist of at least three shifts. The Communications and Emergency Response Manager in charge of each shift shall report to the Division Commander. Minimum staffing levels requires that there will always be at least two personnel on duty at any given time, one of which may be a Communications and Emergency Response Manager. It is the responsibility of the Communications and Emergency Response Managers to establish a balanced work schedule for their respective shifts to ensure adequate coverage based upon anticipated activity levels and a balance of experience and specialization available. The Communications and Emergency Response Managers will post a copy of the work schedule for employee's reference and coordinate requested time off and provide for unexpected absences such as sick time.

### 802.2.3 CONFIDENTIALITY
Information that becomes available through Communications and Emergency Response Center may be confidential or sensitive in nature. All communications personnel are to treat information that becomes known to them as confidential and release that information only to duly authorized personnel.

Automated data, such as Department of Motor Vehicle records, warrants, criminal history information, records of internal police files, or medical information such as a data reference to "Use Universal Precautions" shall only be communicated to authorized criminal justice personnel and, when transmitting via the radio, an admonishment that confidential information is about to be transmitted. Whenever possible, confidential information will be transmitted via a secure encrypted radio channel.

When a citizen calls Central Lane Communications using an enhanced 9-1-1 line, the ANI/ALI will display the subscriber's name, address and telephone number. All identifications received from E9-1-1 are confidential and shall not be subject to public disclosure by Communications and Emergency Response Center per ORS 403.135(2).

When a caller calls E9-1-1 from a non-published or non-listed telephone number, ANI/ALI will display "(NP)" in front of the subscriber's name. Absent the permission of the subscriber this information shall not be reproduced from CAD or included in any official report except as necessary

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Communications and Emergency Response Center (CERC)*

to respond to a 9-1-1 call or notify the public of an emergency via an automated system (ORS 403.135(3)).

## 802.2.4   RECORDINGS
Each console is equipped with an instant playback recording system. This system provides the capability of instant replay of all recent radio communications.

System-wide recording devices are also installed to record all radio and telephone conversations coming into Communications and Emergency Response Center. The recordings are stored and retained by an assigned Communications and Emergency Response Manager for a minimum of six months.

## 802.2.5   SECURITY
The communications function is vital and central to all emergency service operations. The safety and security of Communications and Emergency Response Center, its personnel, and equipment must be a high priority.

Access to Communications facilities may be restricted by the Department, as necessary.

## 802.2.6   CALLS FOR SERVICE
Emergency calls for service may be received directly by the Communications and Emergency Response Center. Calls for service may also be transferred from Central Lane Communications. The Center will also have business lines available for non-emergency calls for service and information. The non-emergency phone number will be listed in a public telephone directory and all published material will encourage callers to utilize 9-1-1 for emergencies.

    (a)    **Emergency Calls** - An emergency call is considered as any call received via telephone or radio where there is an immediate or potential threat to life or serious property damage, and time of arrival is of the utmost importance. All incoming calls on an emergency line will be answered with "University Police. Do you have an emergency?"

        1.    Some incoming calls will display caller ID of the account holder.

        2.    Verify the phone number and address; never assume the caller ID information is correct.

        3.    Verify where units should respond. It may be a different location than the call is being made from.

        4.    Bring information into CAD and complete the CAD entry.

        5.    Emergency calls will be dispatched immediately.

        6.    A citizen reporting an emergency will never be placed on hold until the dispatcher has obtained all necessary information to ensure the safety of the responding units and the public.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000397

**Exhibit 1**
**Page 387 of 550**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Communications and Emergency Response Center (CERC)*

(b) **Non-Emergency Calls** - Non-emergency calls are considered as any call received via telephone or radio where there is no immediate or potential threat to life or property. Incoming calls received on the business line will be answered using the agency name and, if appropriate, unit or division

1. Enter information into the CAD system and dispatch or transfer to the appropriate dispatcher.

2. Calls for other university departments may be transferred or information taken for after-hours notifications, as appropriate.

3. Citizens reporting non-emergencies may be put on hold if necessary to take higher priority calls.

4. Advise the citizen if there will be a delay in the dispatcher coming back onto the line or if the field unit advises there will be a delay in his response.

802.2.7 TELEPHONE REPORTS
Certain non-emergency complaints may be handled by the field unit by phone provided that:

(a) There is no physical evidence to be collected such as latent fingerprints

(b) The suspect is no longer at the scene

(c) No on-scene investigation is needed

(d) The caller agrees to telephone contact from the field unit

(e) When taking a call for service that may be handled by telephone contact, ask the caller if the call can be handled by this method. If the caller agrees, advise the field unit. The field unit receiving the dispatch has the ultimate decision whether to handle the call by phone or in person

802.2.8 EMERGENCY MESSAGES
When a call is received requesting an emergency message be delivered, take the information on the call entry screen as with any other call for service. Attempt to dispatch the appropriate field unit by telephone, MDT (when available), or in person. Radio dispatch may be used if other means are not possible.

Communications Officers will not deliver emergency messages to the ultimate recipient by any means.

802.2.9 COLLECT CALLS
Collect calls will not be accepted by Communications and Emergency Response Center unless the dispatcher believes the call would be justified in serving the university community or public.

**802.3 RADIO COMMUNICATIONS**
Communications radios are for official use only, to be used by personnel of Communications and Emergency Response Center to communicate with the user agencies.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000398

Exhibit 1
Page 388 of 550

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

## Communications and Emergency Response Center (CERC)

Employees of Communications and Emergency Response Center shall identify themselves on the radio with the appropriate station identifier, and identify the field unit with the officer identification number as assigned by their department. All transmissions shall be in accordance with Federal Communications Commission (FCC) procedures and requirements. All transmissions shall be professional and made in a calm, business-like manner. Slang terms and personal acronyms shall not be used.

### 802.3.1  AUTHORIZED CODES

Radio Codes employed by Communications and Emergency Response Center and all users will operate a plain language radio system except for the following authorized codes:

(a)   Code 0 - Officer needs immediate assistance highest priority call

(b)   Code 1 - Non-emergency cover requested

(c)   Code 2 - Rapid cover requested (silent approach)

(d)   Code 3 - Response is with emergency lights and siren

(e)   Code 4 - Situation is under control

(f)   Code 5 - Wanted subject

(g)   Code 5 Information - Confidential or Officer Safety information

(h)   Code 6 - Conducting an investigation

(i)   Code 7 / Code 7-15 - Meal/Coffee break

(j)   Code 8 - Communicable disease (do not broadcast specifics)

(k)   Code 9 - Clear the channel for emergency or priority, call-specific, transmissions (see Policy section 802.3.2)

(l)   Code 10 - Bomb threat or suspicious device

(m)   Code 11- Public relations contact

### 802.3.2  RESTRICTED CHANNEL

When requested by an officer Communications and Emergency Response Center will clear the channel and restrict all other radio traffic to another channel when:

(a)   A Code 9 is called

(b)   The dispatcher believes a situation is a threat to the physical safety of a field unit

(c)   The field unit is involved in a situation that demands a dedicated channel, i.e.; a pursuit

(d)   Any field unit requests a channel cleared

To clear the channel announce on the channel to be cleared "Code 9 (channel #) for (unit #) or incident."

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000399

**Exhibit 1**
**Page 389 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Communications and Emergency Response Center (CERC)*

Normal traffic may be assigned to another channel depending on the circumstances. Regardless of who initiated the clear channel, Communications and Emergency Response Center will not release the channel to normal traffic without the authorization of the field unit in charge of the situation. To resume normal traffic on the cleared channel, announce on the cleared channel and the alternate channel "Code 9 is cleared on (channel)".

## 802.4   EQUIPMENT FAILURES
At least two operational console positions, including emergency phone lines, business phone lines, radios for all operational frequencies and CAD and computer systems should remain operational for use by Communications and Emergency Response Center personnel. If a malfunction occurs during regular business hours, a call will be placed immediately to the Division Commander who will arrange to correct the malfunction. If it occurs during non-business hours, the Division Commander will be notified by phone and the Communications and Emergency Response Manager will be directed to the appropriate person, department or agency. If necessary, one or more console positions may be relocated to an approved alternate location as long as on-duty dispatchers are capable of maintaining communications via phone or radio.

### 802.4.1   9-1-1 EQUIPMENT OR CIRCUIT PROBLEMS
When the emergency telephone lines malfunction, the Communications and Emergency Response Manager or on-duty Communications Officer will:

(a)   Contact the University Telecom Services at their repair line.

(b)   Give them the customer number.

(c)   University Telecom Services will resolve the problem or contact the necessary telephone service providers and vendors to correct the problem.

(d)   Create a CAD information incident. and leave it open until the problem is resolved.

(e)   Notify Central Lane Communications and the on-duty Executive Coordinator.

### 802.4.2   TELEPHONE PROBLEMS OTHER THAN 9-1-1
When a telephone problem is noted, including business lines or extensions, report the problem to the Communications and Emergency Response Center Manager, on-duty Executive Coordinator and University Telecom Services. Any problems with department cell phones should be reported directly to the UOPD IT staff.

### 802.4.3   RADIO MALFUNCTIONS
In the event Communications and Emergency Response Center has a radio malfunction that cannot be corrected by the Communications Officer or Communications and Emergency Response Manager on duty, a radio technician will be called or paged immediately. The RF Engineer with University Network and Telecom Services will be notified of problems with university-owned radio equipment at the numbers posted on consoles. Problems related to the Lane Regional Interoperable Group (LRIG) trunked system will be reported to on-duty Communications Supervisor with Central Lane Communications at (541) 682-2791.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000400

**Exhibit 1**
**Page 390 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Communications and Emergency Response Center (CERC)*

802.4.4   CONSOLE COMPUTER MALFUNCTIONS

In the event Communications and Emergency Response Center has a computer malfunction that cannot be corrected by the Communications Officer or Communications and Emergency Response Manager on duty, the RF Engineer with University Network and Telecom Services will be notified at the numbers posted on consoles to assess or correct the problem.

802.4.5   POWER FAILURES/EMERGENCY GENERATOR

In the event the Communications and Emergency Response Center loses main power, an emergency switch will transfer to the back-up power feeder. When this occurs, there will be a momentary loss of power. The Uninterrupted Power Source (UPS) will momentarily support Communications and Emergency Response Center's electrical needs during this period.

## 802.5   COMPUTER AIDED DISPATCH

The Computer Aided Dispatch (CAD) system is designed to help public safety agencies in responding to requests for service. The CAD system improves productivity and effectiveness in Communications and Emergency Response Center by automating many time consuming call taking, dispatching, communication, deployment and unit status recording activities.

Any status change made from any terminal in the CAD system will have an immediate impact on all other terminals in the system. A terminal will always monitor several activities even while the user is entering call data or status changes. The training manual and the CAD system manual for Communications and Emergency Response Center provide detailed information on the operation of the CAD System.

802.5.1   STATUS MONITOR

The status monitor shall monitor status conditions such as:

- Out of Service
- Available for service
- Assigned
- Dispatched
- Enroute
- Arrived on scene
- Checking vicinity
- Available on radio
- Returning to station
- Cleared

802.5.2   AVAILABLE UNITS/UNIT HISTORY

User agencies are responsible for providing the Communications and Emergency Response Center with a current list of on-duty or on-call units, each unit's area of responsibility and the on-

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000401

Exhibit 1
Page 391 of 550

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## Communications and Emergency Response Center (CERC)

duty supervisor for each agency. This is usually done at the beginning of each user agency's shift. It can be done by telephone, radio or in person.

The on-duty Communications Officer receiving unit information from a user agency shall update the CAD listing of on-duty and on-call units.

CAD maintains a "Unit History" for all units entered. The accuracy of the unit history depends on the unit keeping Communications and Emergency Response Center advised of status changes and the Communications Officer making the proper entry on the CAD system.

Whenever a unit checks in or out, or changes status, the Communications and Emergency Response Center shall make an entry on the Call Entry screen on the CAD system. . The dispatcher shall use the CAD command or entry that most closely describes the unit's activity.

### 802.5.3   INCIDENT/DR NUMBERS
Whenever a call is taken from a citizen or unit and entered on the "Call Entry" monitor, CAD automatically designates a CAD Incident Number.

When a unit requests a case number the Communications Officer shall locate or create an appropriate CAD detail and assign the next sequential case number. Case numbers will begin on January 1st of each calendar year with the two digit year designator followed by the sequential number starting with "0001".

### 802.5.4   CALL ENTRY AND DISPATCH
The Call Entry screen will automatically enter the call date, time and incident number. The Communications Officer taking the call must enter the appropriate call type.

    (a)    The location of the incident and the name and address of the caller must be entered by the Communications Officer.

    (b)    CAD will record the time the call is dispatched, time of officer arrival and time of officer return to service if this information has been provided to the dispatcher. When the call is complete, a disposition code must be entered.

### 802.5.5   OFFICER IDENTIFICATION
Identification systems may be based on factors such as rank, beat assignment and officer identification numbers. The entire call sign should always be used when initiating communication with the dispatcher. The use of the call sign allows for a brief pause so that the dispatcher can acknowledge the appropriate unit. Personnel initiating communication with other agencies shall use their agency name and entire call sign. This requirement does not apply to continuing conversation once the units have been properly identified

### 802.6   COMPUTER DOWN TIME
CAD may be down periodically for a scheduled back-up or systems maintenance. When this occurs, Communications Officers are expected to utilize available printed copies of CAD resources.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000402

**Exhibit 1**
**Page 392 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Communications and Emergency Response Center (CERC)*

802.6.1  POLICE CALLS

    (a)   Complete a Call Entry form

    (b)   Dispatch the appropriate unit

## 802.7  POLICE DISPATCH

802.7.1  GENERAL
When a call for police services is received, determine if it is an emergency or non-emergency. Determine the call type, location and priority by asking the four key questions where, what, when and who. Emergency calls will be dispatched immediately.

A citizen reporting an emergency will never be placed on hold until the dispatcher has obtained all necessary information to ensure the safety of the responding units and the public.

Alert tones should be used whenever dispatching an emergency call. When using alert tones, send three-one second tones with a one second interval between tones.

802.7.2  EMERGENCY CALLS
An emergency call is considered as any call received via telephone or radio where there is an immediate or potential threat to life, or serious property damage, and time of arrival is of the utmost importance.

On an "in-progress" or "just occurred" crime where the suspect is still at the scene or is likely still in the area:

    (a)   Clear the channel for responding units

    (b)   Determine if weapons are/were involved

    (c)   Determine if there are injuries and stage medical units if appropriate

    (d)   If it is safe to do so, keep the caller on the line to receive updates

    (e)   Advise the caller when police units arrive

802.7.3  VEHICLE PURSUITS
When an officer is in pursuit of a suspect, either on foot, bicycle or in a vehicle, the dispatcher shall give the situation undivided attention until it is under control; Communications and Emergency Response Center shall:

    (a)   Clear the pursuit channel, via Code 9

    (b)   Acknowledge and repeat relevant transmissions related to the pursuit

    (c)   Notify jurisdictions into which the pursuit may be headed

802.7.4  MOTOR VEHICLE ACCIDENTS
Motor vehicle accidents need a police response if:

    (a)   There are injuries reported

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000403

**Exhibit 1**
**Page 393 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Communications and Emergency Response Center (CERC)*

     (b)    It is blocking traffic

     (c)    A traffic crime is reported (Reckless driving, DUI)

     (d)    One of the involved parties requests an officer

A non-injury, non-blocking traffic accident can be handled by the citizens exchanging driver, vehicle and insurance information.

### 802.7.5   NON-EMERGENCY CALLS
Non-emergency calls are any call received where there is no immediate threat to life or property. Citizens reporting non-emergency calls may be put on hold to take a higher priority call. Advise the citizen if there will be a delay in the response.

### 802.7.6   ALARMS
The Communications and Emergency Response Center serves as the primary monitoring site for all university fire, intrusion and panic alarms. Some campus environmental signals (freezer and server room sensors, etc.) are also received in the Center. When an alarm or signal is received, create a corresponding CAD detail, dispatch the appropriate units immediately and/or make appropriate notifications.

### 802.7.7   FIRE/EMS DISPATCH
Receiving and dispatching Fire/EMS calls within its jurisdiction are responsibilities of Communications and Emergency Response Center.

When the Communications and Emergency Response Center receives a fire or EMS call for service, the Communications Officer shall coordinate a response directly with Central Lane Communications.

### 802.8   EMS CALLS FOR SERVICE
When an EMS call for service is received, the Communications and Emergency Response Center will follow the procedures set forth in policy regarding Emergency Medical Dispatch.

### 802.8.1   EMERGENCY MEDICAL DISPATCH
The following procedures apply to all medical calls received directly by the Communications and Emergency Response Center.

     (a)    On all medical calls, determine:

          1.    The exact location

          2.    A telephone callback number

          3.    The primary (medical) complaint

          4.    The number of people injured (sick)

          5.    The patient's age

          6.    The status of consciousness

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000404

**Exhibit 1**
**Page 394 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Communications and Emergency Response Center (CERC)*

       7.    The status of breathing

(b)    Complete the call entry screen as the information is obtained.

(c)    If the medical call relates to an emergency or life threatening situation, the Communications Officer will follow the procedures set forth in policy regarding Life Threatening Calls.

(d)    Dispatch the appropriate unit(s) as soon as possible. The dispatch sequence shall be:

       1.    Department

       2.    Response level

       3.    Location

       4.    Primary complaint

## 802.8.2  LIFE THREATENING CALLS
On emergency life threatening calls attempt to keep the caller on the line and implement lifesaving instructions from the Advanced Medical Priority Dispatch System.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000405

**Exhibit 1**
**Page 395 of 550**



**Policy**
**804**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Property Control

## 804.1  PURPOSE AND SCOPE
This policy provides for the proper collection, storage, and security of property that is not evidence. Additionally, this policy provides for the protection and security of the property as well as those persons authorized to remove and/or disposition property.

See Policy 805 - Evidence Control for management of firearms, explosives, narcotics and other contraband regardless whether they are considered evidence in a particular situation.

## 804.2  DEFINITIONS
**Property** - Includes all items taken for safekeeping.

**Safekeeping** - Includes the following types of property, where the owner is generally known:

• Property obtained by the Department for safekeeping

• Personal property of an arrestee not taken as evidence

• Property taken for safekeeping under authority of a law

**Found Property** - Includes property found by an employee or citizen that has no apparent evidentiary value and where the owner cannot be readily identified or contacted.

## 804.3  PROPERTY HANDLING
Any employee who first comes into possession of any property, shall retain such property in his/ her possession until it is properly tagged and placed in the designated property locker or storage room along with the property form. When not specifically addressed by this manual, collection and handling of all property should follow the guidelines established by the State of Oregon Physical Evidence Manual.

Employees will provide a receipt for all items of property that are received or taken from any person. If no person is present, and the property is removed from private property or a vehicle, the employee will leave a receipt prominently placed on the private property or the vehicle.

Where ownership can be readily established within a short time frame (for example, within a shift) such property may be released to the owner without the need for booking. The property form must be completed to document the release of property not booked and the owner shall sign the form acknowledging receipt of the item(s).

Alternative processes may be developed by UOPD to facilitate the efficient handling and release of property not needed for evidence (for example Bicycles). These processes may include alternate storage, public outreach to identify potential owners and releasing criteria. The processes developed will include documentation of possession of the property by UOPD, tracking number assignment, access control and release documentation.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Property Control*

804.3.1  PROPERTY BOOKING PROCEDURE

All property must be booked prior to the employee going off-duty unless otherwise approved by a supervisor. Employees booking property shall observe the following guidelines:

(a)  Property and Evidence must be documented on separate report forms.

(b)  Complete the property form describing each item of property separately (each with its own number), owner's name, finder's name, serial numbers, and other identifying information or markings.

(c)  Procedures for marking items or containers are established by the department and should be followed, whenever possible. If a Property Tag or stamp cannot be used, each bag or envelope should contain the information about the items and case that are on the property tag or stamp. This information should be placed as close to the upper right hand corner of the package or envelope as possible. If the envelope contains more than one numbered item, write the item numbers that are inside.

(d)  A Property Tag should be attached to an item of property if it is not packaged in an envelope or bag.

(e)  The "Report" copy of the property form shall be submitted with the case report. The original shall be placed with the property (not inside a container or envelope) in the temporary property locker.

(f)  When the property is too large to be placed in a locker or requires special storage, the item may be stored in an approved alternate location. Submit the original property form into the designated place inside the property room and indicate the location where the property is stored.

(g)  Money will be placed in a currency envelope and stored in the designated lock-box in the storage room (see also 804.3.2.c).

804.3.2  EXCEPTIONAL HANDLING

Certain property items require a separate process. The following items shall be processed in the described manner:

(a)  License plates, driver's licenses and other government property that are not connected with a known crime, should be placed in the designated container for return to the owner, if appropriate, the Department of Motor Vehicles, or other government entity by the Law Enforcement Records personnel. No formal property booking process is required

(b)  All bicycles and bicycle frames require a Property Report. Property tags will be securely attached to each bicycle or bicycle frame. The bicycle should be placed in the bicycle storage area until a property and evidence technician, or designee, can log the property

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000407

**Exhibit 1**
**Page 397 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Property Control*

---

        1.    Police Communications and Records will ensure that the proper CAD entries and logging into the Records Management System are done to provide the appropriate tracking documentation

    (c)    All cash shall be counted in the presence of a supervisor, placed in a Currency Envelope and the envelope initialed by the booking officer and the supervisor. When dealing with cash in excess of $500, the money will be placed in the drop-safe and an email sent to the UOPD-Director of Administrative Services so that it can be processed appropriately.

In cases where no responsible person can be located, the property should be booked for safekeeping in the normal manner.

804.3.3  FOUND PROPERTY
Any person who brings found property to a UOPD Officer or facility will be referred to the UO Department of Parking and Transportation, who manages the found property process.

## 804.4  PACKAGING OF PROPERTY
Certain items require special consideration and shall be booked separately as follows:

    (a)    Property with more than one known owner

    (b)    Paraphernalia as described in Oregon Revised Statutes 475.525(2)

804.4.1  PACKAGING CONTAINER
Employees shall package all property in a suitable container available for its size. Specific containers may be provided and should be used, for example knife boxes should be used to package fixed-blade knives.

Needles or syringes will normally be disposed of in a sharps container and will not be submitted to the Property Room. See Policy 805 - Evidence when sharps are required for evidence in a serious crime or in a major investigation

A property tag shall be securely attached to the outside of all items or group of items packaged together. An alternative to the Property Tag is to label the package/item with indelible pen with all of the information contained on a Property Tag.

## 804.5  RECORDING OF PROPERTY
The property and evidence technician receiving custody of property shall record his/her signature, the date and time the property was received and where the property will be stored on the Property report.

Any changes in the location of property held by the University of Oregon Police Department shall be noted in the Property report.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000408

**Exhibit 1**
**Page 398 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Property Control*

---

**804.6  PROPERTY ROOM SECURITY**
Access to the Property Room is limited to authorized personnel unless visitors are logged in and out, including the time, date and purpose of entry. All personnel entering the Property Room must be accompanied at all times by a property and evidence technician.

The Lieutenant in charge of the property room function will conduct an annual audit of the Property Room function with a report to the Chief of Police.

804.6.1  RESPONSIBILITY OF OTHER PERSONNEL
Every time property is released or received, an appropriate entry on the chain of custody section on the back of the Property Report shall be completed to maintain the chain of custody.

Any time property is discovered to be missing from the property room, the employee shall immediately notify the Lieutenant assigned to the Property Control Function. This notification may be made in person, by telephone or by email. The Lieutenant will determine what follow-up steps are necessary.

804.6.2  STATUS OF PROPERTY
Each person receiving property will make the appropriate entry to document the custody. The submitting officer need only sign the front of the Property Report and subsequent employees receiving the property will utilize the custody tracking section on the back of the report.

Authorized personnel involved in property release shall obtain the signature of the person to whom property is released, and the reason for release. Any employee receiving property shall be responsible for such property until it is properly returned to property or properly released to another authorized person or entity.

The return of the property should be recorded on the property report, indicating date, time, and the person who returned the property.

804.6.3  RELEASE OF PROPERTY
Property (not needed for evidence in a criminal case) may be released to a verified owner at the discretion of authorized personnel without further authorization. The property may be released upon proper identification being presented by the owner. A signature of the person receiving the property shall be recorded on the original property report. After release of all property entered on the property report, the report shall be forwarded to the Records Section for filing with the case. If some items of property have not been released the property report will remain in the property room file. Upon release, the proper entry shall be documented in the Property report. All reasonable attempts shall be made to identify the rightful owner of property not needed for an investigation.

UOPD will publish a notice of intent to dispose of any unclaimed property described in an inventory of unclaimed property. The notice shall be posted in 3 public places in the jurisdiction of UOPD and shall also be published in a newspaper of general circulation. The notice shall include a description of the unclaimed property as provided in the inventory, the address, telephone number of UOPD, and any case numbers related to the property.

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000409

**Exhibit 1**
**Page 399 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

## Property Control

A statement in the following form will be included in the postings and publishing, but also sent to any person or entity that UOPD has reason to believe has an ownership or security interest in the unclaimed property. Such notice shall be sent by certified mail "Return Receipt Requested" to the last known address. The statement will read:

*The University of Oregon Police Department has in its physical possession the unclaimed personal property described below. If you have any ownership interest in any of that unclaimed property, you must file a claim with the Police Department within 30 days from the date of publication of this notice, or you will lose your interest in that property. The Police Department is located at 2141 E. 15th Ave., Eugene, 97403-1230. You may be able to contact the department during business hours at (541) 346-5444.*

Any person who files a claim for any property must present satisfactory proof of lawful ownership or some type of security interest in the property prior to the release of the property. If this has been met, the property may be released to the owner.

Property not claimed within 60 days after notification of owner of its availability for release will be transferred to the surplus property per BAO, University and OUS policy regarding the disposal of surplus property (OAR 580-040-0300) (http://baowww.uoregon.edu/PropertyControl/disposingofsurplusproperty). If the owner is known, reasonable efforts will be made to notify the owner that UOPD has the property. If unclaimed, property will be held for safekeeping will be held for at least 90 days before being considered surplus property. UOPD will work with Business Affairs and Facility Services for proper transfer or disposal of unreturned items.

### 804.6.4   DISPUTED CLAIMS TO PROPERTY
Occasionally more than one party may claim an interest in property being held by the University of Oregon Police Department, and the legal rights of the parties cannot be clearly established. Such property shall not be released until one party has obtained a valid court order or other undisputed right to the involved property.

All parties should be advised that their claims are civil and in extreme situations, legal counsel for the University of Oregon Police Department may wish to file an interpleader to resolve the disputed claim (Oregon Rules of Civil Procedure § 31) .

### 804.7   DISPOSITION OF PROPERTY
All property not held for evidence in a pending criminal investigation or proceeding, and held for 90 days or longer (60 days or more, plus 30 days after notice), where the owner has not been located or fails to claim the property, may be disposed of in compliance with existing laws upon receipt of proper authorization for disposal. The property and evidence technician shall request approval from the Sergeant in charge of Property Control, who will insure that all legal and policy obligations have been met prior to disposal of property. Oregon Revised Statutes 98.245 and 98.336 govern the disposition of property held by law enforcement agencies. Oregon Administrative Rules (580-040-0300) govern the disposition of property obtained by any entity in the Oregon University System. UO-Business Affairs and Facility Services rules and regulations

Copyright Lexipol, LLC 2018/04/27. All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000410
**Exhibit 1**
**Page 400 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Property Control*

govern, more specifically, the disposition options and processes for property in the possession of the Department.

## 804.7.1   DEFINITIONS

As set out in Oregon Revised Statutes 98.245, the following definition applies to the disposition of property by law enforcement agencies:

**Unclaimed Property:** personal property that was seized by the University of Oregon Police Department as evidence, abandoned property or stolen property, and that has remained in the physical possession of the Department for a period of more than 60 days following conclusion of all criminal actions related to the seizure of the evidence, abandoned property or stolen property, or conclusion of the investigation if no criminal action is filed.

The University of Oregon (UO) is required to follow Oregon Administrative Rule (OAR) 580-040-0300 when disposing of surplus property.

**UO Surplus property:** is defined as all university property, including lost, mislaid or abandoned property, vehicles and titled equipment that is worn-out, obsolete or excess to the institution's needs, or otherwise unsuitable for intended use. UO departments are not authorized to sell or give away UO surplus property. Property purchased with funds that flow through the university (with the exception of agency funds) that is donated to the university is considered UO property.

## 804.7.2   DISPOSITION

Unclaimed property will be disposed of in accordance with University of Oregon policy. Disposition will be coordinated with University of Oregon Business Affairs and Facility Services.

## 804.8   INSPECTIONS OF THE EVIDENCE ROOM

(a)    On a quarterly basis, the Sergeant assigned to manage the property control function shall make an inspection of the property storage facilities and practices to ensure adherence to appropriate policies and procedures.

(b)    At the discretion of the Sergeant assigned to manage the property control function, whenever a change is made in personnel who have access to the evidence room, an inventory of all property shall be made by an individual(s) not associated to the property room or function to ensure that records are correct and all property is accounted for.

(c)    If the assignment to manage the property control function is changed, an inventory of all property shall be made by an individual(s) not associated with the property room or function. If possible, this inventory will be completed prior to the newly appointed manager is officially assigned.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000411

**Exhibit 1**
**Page 401 of 550**



**Policy**
**805**

### University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Evidence Control

## 805.1  PURPOSE AND SCOPE
This policy provides for the proper collection, storage, and security of evidence. Additionally, this policy provides for the protection of the chain of evidence and those persons authorized to remove and/or destroy evidence.

This policy covers items taken or recovered in the course of an investigation that may be used in the prosecution of a case. This includes photographs and latent fingerprints.

In addition, this policy covers all narcotics or dangerous drugs (including drug paraphernalia), explosives, hazardous substances whether they are retained as evidence or retained as property.

## 805.2  EVIDENCE HANDLING
Any employee who first comes into possession of any property, shall retain such property in his/her possession until it is properly tagged and placed in the designated property locker or storage room along with the property form. Care shall be taken to maintain the chain of custody for all evidence. When not specifically addressed by this manual, collection and handling of all evidence and property should follow the guidelines established by the State of Oregon Physical Evidence Manual.

Employees will provide a receipt for all items of evidence that are received or taken from any person. If no person is present, and the evidence is removed from private property or a vehicle, the employee will leave a receipt prominently placed on the private property or the vehicle.

### 805.2.1  EVIDENCE BOOKING PROCEDURE
All evidence must be booked prior to the employee going off-duty. Employees booking evidence shall observe the following guidelines:

(a)    Complete the evidence form describing each item separately (each with its own number), listing all serial numbers, associated names, and other identifying information or markings.

(b)    Evidence and other property must be documented on separate forms.

(c)    Mark each item of evidence with the booking employee's initials and the date booked using the appropriate method so as not to deface or damage the value of the property or evidentiary value. Certain items cannot be reasonably marked, in which case the container must be adequately sealed, marked and contents described.

(d)    Packages and containers must have an evidence tag attached or marked with the same information contained on a tag. If the envelope contains more than one numbered item, the tag or container will reflect which items are in the envelope.

(e)    The "Report" copy of the evidence form shall be submitted with the case report. The original shall be placed with the property (not inside a container or envelope) in the

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000412

**Exhibit 1**
**Page 402 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Evidence Control*

temporary evidence locker or with the evidence if it is stored somewhere other than an evidence locker.

(f)   Generally, evidence will not be stored anywhere except for the temporary property locker. Supervisory approval must be obtained to store evidence elsewhere when the size or nature of the evidence precludes using the evidence locker.

### 805.2.2   NARCOTICS AND DANGEROUS DRUGS
All narcotics and dangerous drugs (including paraphernalia as defined by ORS 475.525(2)) shall be booked separately using a separate Property Report.

The officer seizing the narcotics and dangerous drugs shall place them in the designated locker accompanied by the original Property Report. The "Report" copy will be detached and submitted with the case report.

### 805.2.3   EXPLOSIVES/HAZARDOUS SUBSTANCES
Officers who encounter a suspected explosive device shall promptly notify their immediate supervisor or the Executive Coordinator. The Explosives Disposal Unit at Eugene PD will be called to handle explosive-related incidents and will be responsible for the handling, storage, sampling and disposal of all suspected explosives, including making arrangements for military ordinance.

Explosives will not be retained in the UOPD facility.

Only fireworks that are considered stable and safe and road flares or similar signaling devices may be booked into evidence. All such items shall be stored in proper containers and in an area designated for the storage of flammable materials. The property and evidence technician is responsible for coordinating the disposal of these items with the Explosives Disposal Unit, Eugene Police Department, on a regular basis once they are not needed as evidence.

### 805.2.4   EXCEPTIONAL HANDLING
Certain property items require a separate process. The following items shall be processed in the described manner:

(a)   Bodily fluids such as blood or semen stains shall be air dried prior to booking and packages should be labeled with a biohazard sticker.

(b)   All bicycles and bicycle frames that are evidence require a Property report. Evidence tags will be securely attached to each bicycle or bicycle frame. The evidence may be released directly to the property and evidence technician, or, with supervisory approval, placed in the bicycle storage area until a property and evidence technician can log the evidence

(c)   All cash shall be counted in the presence of a supervisor and the envelope initialed by the booking officer and the supervisor.

1.   Cash will be stored in the designated lock box unless the value exceeds $500. In that case, the cash will be deposited in the drop safe and an email will be

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000413

**Exhibit 1**
**Page 403 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

sent to the Director of UOPD Administrative Services so that the money can be deposited in an appropriate account.

State property, unless connected to a known criminal case, should be released directly to the appropriate University department. No formal booking is required. In cases where no responsible person can be located, the property should be booked for safekeeping in the normal manner.

### 805.2.5  COLLECTION AND PRESERVATION OF DNA EVIDENCE

Because DNA evidence can play a key role in establishing guilt or innocence it is important that such evidence be collected, handled and preserved in a manner that will maintain its integrity for future testing. Unless impracticable to do so, officers should collect samples of all biological evidence that may reasonably be used to incriminate or exculpate any person as part of any criminal death investigation or a sex crime listed in ORS 181.594. The property and evidence technician will be responsible to ensure that biological evidence is preserved in an amount and manner that is sufficient to develop a DNA profile.

Collection and preservation should follow established protocols as outlined in the Oregon Physical Evidence Manual (http://www.oregon.gov/OSP/FORENSICS/docs/ Phys_Evid_Manual_013108.pdf).

### 805.2.6  COLLECTION AND PRESERVATION OF SAFE KITS

Under current law, victims of sexual assault may seek medical assessment and choose not to make a report to law enforcement, yet still have evidence collected and preserved. The University of Oregon Police Department will collect and maintain the chain of evidence for all State of Oregon Police Sexual Assault Forensic Evidence Kits (SAFE Kits) and any associated evidence collected by medical facilities in this jurisdiction for victims of sexual assault, regardless of where the assault may have occurred. Victims who choose to remain anonymous and not make a report shall not be required to do so (ORS 147.397).

The collection and preservation of SAFE Kits from anonymous victims may be handled by any officer. When a medical facility notifies this department that evidence of a sexual assault has been collected and a SAFE Kit is available, an officer shall be responsible for the following:

(a)  Respond promptly to the medical facility to retrieve the evidence.

(b)  Provide a unique case number to a responsible representative of the medical facility, which will be provided to the victim. The case number will be used to identify all associated evidence so that a chain of evidence can be maintained in the event the victim later decides to report the assault.

(c)  Ensure that no identifying information regarding the victim, other than the case number, is visible on the evidence packaging.

(d)  Prepare and submit an evidence report and book the evidence in accordance with current evidence procedures.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000414
**Exhibit 1**
**Page 404 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Evidence Control*

SAFE Kits collected for victims whose identity is not disclosed should be maintained in the same manner as other SAFE Kits, but should not be opened until or unless the victim reports the assault. Opening SAFE Kits may compromise the admissibility of evidence in the event of a prosecution.

Where the identity of the sexual assault victim is not disclosed, a SAFE Kit and related evidence should be retained for 25 years, unless directed otherwise by an Investigations Sergeant. However, in all cases such evidence shall be retained for a minimum of 180 days (ORS 147.397).

## 805.3 PACKAGING OF EVIDENCE
Certain items require special consideration and shall be booked separately as follows:

   (a)   Narcotics and dangerous drugs

   (b)   Firearms (ensure they are unloaded and booked separately from ammunition). A flex cuff or similar device should be inserted through the chamber, barrel, or cylinder whenever possible. If forensics examination of the weapon barrel, chamber or firing pin are anticipated, care should be taken not to disturb or alter those characteristics when rendering a firearm safe for storage.

   (c)   Property with more than one known owner

   (d)   Paraphernalia as described in Oregon Revised Statutes 475.525(2)

   (e)   Fireworks and other hazardous materials

   (f)   Contraband

### 805.3.1   PACKAGING CONTAINER
Employees shall package all evidence in a suitable container available for its size. Knife boxes should be used to package knives. All packages containing evidence must be sealed with evidence tape, initialed, and dated across the seal.

Needles or syringes will normally be disposed of in a sharps container and will not be submitted to the Evidence Room. However, when required for evidence in a serious crime or in a major investigation, a syringe tube should be used for packaging.

An evidence tag shall be securely attached to the outside of all items or group of items packaged together.

### 805.3.2   PACKAGING NARCOTICS
The officer seizing narcotics and dangerous drugs shall retain such property in their possession until it is properly weighed, packaged, tagged, and placed in the designated narcotics locker. Prior to packaging and if the quantity allows, a presumptive test should be made on all suspected narcotics. If conducted, the results of this test shall be included in the officer's report.

Narcotics and dangerous drugs shall be packaged in an envelope of appropriate size available in the report room. The booking officer shall initial the sealed envelope and the initials covered with cellophane tape. Narcotics and dangerous drugs shall not be packaged with other property.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Evidence Control*

A completed property tag shall be attached to the outside of the container or the information must be written on the container.

805.3.3   COLLECTION AND PRESERVATION OF DNA EVIDENCE
Because DNA evidence can play a key role in establishing guilt or innocence it is important that such evidence be collected, handled and preserved in a manner that will maintain its integrity for future testing. Unless impracticable to do so, officers should collect samples of all biological evidence that may reasonably be used to incriminate or exculpate any person as part of any criminal death investigation or a sex crime listed in ORS 181.594. The property officer will be responsible to ensure that biological evidence is preserved in an amount and manner that is sufficient to develop a DNA profile.

Collection and preservation should follow established protocols as outlined in the Oregon Physical Evidence Manual.

## 805.4   RECORDING OF EVIDENCE
The property and evidence technician receiving custody of evidence shall record his/her signature, the date and time the evidence was received and where the evidence will be stored on the Evidence report.

A property number shall be assigned to each item or group of items. This number shall be recorded on the evidence tag, package and the Evidence report.

Any changes in the location of property held by the Department shall be noted in the appropriate location on the Evidence report.

## 805.5   EVIDENCE ROOM SECURITY
Access to the Evidence Room is limited to property and evidence technicians unless visitors are logged in and out, including the time, date and purpose of entry. All personnel entering the Evidence Room must be accompanied at all times by a property and evidence technician.

Annual independent audits will be completed of the Evidence Room function with an audit report to the Chief of Police.

805.5.1   RESPONSIBILITY OF PERSONNEL
Every time evidence is released or received, an appropriate entry on the evidence chain of custody report shall be completed to maintain the chain of possession. No evidence is to be released without first receiving written authorization from the assigned investigator or his/her supervisor.

Request for analysis for items other than narcotics or drugs shall be completed on the appropriate forms and submitted to the property and evidence technician. This request may be filled out any time after the booking of evidence.

Any time property is discovered to be missing from the property room, the employee shall immediately notify the Lieutenant assigned to the Property Control Function. This notification may

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000416

**Exhibit 1**
**Page 406 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Evidence Control*

be made in person, by telephone or by email. The Lieutenant will determine what follow-up steps are necessary.

## 805.5.2   TRANSFER OF EVIDENCE TO CRIME LABORATORY
The transporting employee will check the evidence out before removing it, indicating the date and time on the Evidence report and the request for laboratory analysis.

The property and evidence technician releasing the evidence must complete the required information on the Evidence report and the evidence. The lab forms will be transported with the evidence the examining laboratory. Upon delivering the item(s) involved, the officer will record the delivery time on both copies, and indicate the locker in which the item was placed or the employee to whom it was delivered. If the items are delivered to an employee of the lab, they will sign the form. The original copy of the lab form will remain with the evidence and the copy will be returned to the property control file to act as a "tickler" to facilitate the return of the evidence to the UOPD facility. Once the property is returned to UOPD, the copy of the form will be forwarded to the Records Section for filing with the case.

## 805.5.3   STATUS OF EVIDENCE
Each person receiving evidence will make the appropriate entry to document the chain of evidence. Temporary release of evidence to officers for investigative purposes, or for court, shall be noted on the Evidence report, stating the date, time and to whom released.

The property and evidence technician shall obtain the signature of the person to whom evidence is released, and the reason for release. Any employee receiving evidence shall be responsible for such evidence until it is properly returned to property or properly released to another authorized person or entity.

The return of the evidence should be recorded on the Evidence report, indicating date, time, and the person who returned the evidence.

## 805.5.4   RELEASE OF EVIDENCE
Evidence may only be released with the authorization of the DA's office and the officer or detective assigned to the case.

Once a case has been adjudicated or passed the statute of limitations for prosecution, a property and evidence technician will request a disposition authorization from the DA's office and the assigned officer or detective. Care should be taken to ensure there are no outstanding warrants for suspects or additional defendants for the same case prior to authorizing release.

Release of evidence shall be made upon receipt of an authorized release form, listing the name and address of the person to whom the property is to be released. The release authorization shall be signed by the assigned officer or detective and must conform to the items listed on the property form or must specify the specific item(s) to be released. Once evidence has been authorized for release and is no longer needed for any pending criminal cases, it shall be considered property and released or disposed of in accordance with those procedures and Policy 804.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000417

**Exhibit 1**
**Page 407 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Evidence Control*

805.5.5  CONTROL OF NARCOTICS AND DANGEROUS DRUGS
The Lieutenant in charge of Property Control will be responsible for overall control and the destruction of all narcotics and dangerous drugs coming into the custody of this department.

**805.6  RETENTION OF BIOLOGICAL EVIDENCE**
The Lieutenant in charge of the Property Room shall ensure that no biological evidence held by the Department is destroyed without adequate notification to the following persons, when applicable:

    (a)   The defendant

    (b)   The defendant's attorney

    (c)   The appropriate prosecutor

    (d)   Any sexual assault victim

    (e)   The Investigations Sergeant

Biological evidence shall be retained for a minimum period established by law (Ch. 275, Oregon Laws 2011), the Property and Evidence Section Lieutenant or the expiration of any sentence imposed related to the evidence, whichever time period is greater. Following the retention period, notifications should be made by certified mail and should inform the recipient that the evidence will be destroyed after a date specified in the notice unless a motion seeking an order to retain the sample is filed and served on the Department within 90 days of the date of the notification. A record of all certified mail receipts shall be retained in the appropriate file. Any objection to, or motion regarding, the destruction of the biological evidence should be retained in the appropriate file and a copy forwarded to the Investigations Sergeant.

Biological evidence related to a homicide shall be retained indefinitely and may only be destroyed with the written approval of the Chief of Police and the head of the applicable prosecutor's office.

**805.7  INSPECTIONS OF THE EVIDENCE ROOM**

    (a)   On a monthly basis, the Lieutenant assigned to Property Control shall make an inspection of the evidence storage facilities and practices to ensure adherence to appropriate policies and procedures.

    (b)   Unannounced inspections of evidence storage areas may be conducted annually as directed by the Chief of Police.

    (c)   An annual audit of evidence held by the department shall be conducted by a Division Commander appointed by the Chief of Police who is not routinely or directly connected with evidence control.

    (d)   If the assignment to manage the evidence control function is changed, an inventory of all property and evidence shall be made by an individual(s) not associated with the property room or function. If possible, this inventory will be completed prior to the newly appointed manager is officially assigned. At the discretion of the Lieutenant assigned

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000418

**Exhibit 1**
**Page 408 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Evidence Control*

to manage the evidence control function, whenever a change is made in personnel who have access to the evidence room, an inventory of all evidence and property shall be made by an individual(s) not associated to the property room or function to ensure that records are correct and all property is accounted for.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000419

**Exhibit 1**
**Page 409 of 550**



**Policy**
**806**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Law Enforcement Records Unit

### 806.1  PURPOSE AND SCOPE
The Captain of Administration shall maintain the Department Records Section Procedures Manual on a current basis to reflect the procedures being followed within the Records Section. Policies and procedures that apply to all employees of this department are contained in this chapter.

### 806.1.1  NUMERICAL FILING SYSTEM
Case reports are filed numerically within the Records Section by Records Section personnel.

Reports are numbered commencing with the last two digits of the current year followed by a sequential number beginning with 00001 starting at midnight on the first day of January of each year. As an example, case number 09-00001 would be the first new case beginning January 1, 2009.

Case number assignment will be tracked by the Records Section to ensure that all reports assigned a number are turned in to the unit for filing and processing.

Other Law Enforcement Records (for example, FI Cards) may be filed by date of incident, CAD sequency number, or other criteria.

The Records Section personnel will route reports and citations to others based upon established protocol or routing directions on the reports.

### 806.1.2  RECORDS RETENTION
All Department records shall be retained and purged in a manner consistent with applicable provisions of the Oregon Revised Statutes and Oregon Administrative Rules.

### 806.2  FILE ACCESS AND SECURITY
All reports including, but not limited to, initial, supplemental, follow-up, evidence, and all reports critical to a case shall be maintained in a secure area within the Records Section accessible only to authorized Records Section personnel. Access to report files after hours or when Records Section personnel are otherwise not available may be obtained through the Executive Coordinator. Employees accessing these files will strictly adhere to check-out/check-in procedures.

University of Oregon Police Department employees shall not access, view or distribute, or allow anyone else to access, view or distribute any record, file or report, whether hard copy or electronic file format, except in accordance with department policy and with a legitimate law enforcement or business purpose or as otherwise permissible by law.

Access to computerized files will be strictly controlled under relevant Criminal Justice Information System (CJIS) and LEDS regulations.

### 806.2.1  REQUESTING ORIGINAL REPORTS
Generally, original reports shall not be removed from the Records Section. Should an original report be needed for any reason the requesting employee shall first obtain authorization from

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000420

**Exhibit 1**
**Page 410 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Law Enforcement Records Unit*

the Communications and Emergency Response Manager. All original reports removed from the Records Section shall be recorded on the Report Check-Out Log which shall constitute the only authorized manner by which an original report may be removed from the Records Section. If a report is removed from the unit, a copy will be filed in its place and a copy of the Check-out Log attached.

## 806.3  REQUISITION OF SUPPLIES
Investigative reports involving anyone in the following categories shall normally be classified as a "Sensitive" report. Special processes are outlined in this section.

806.3.1  DEFINITIONS FOR SENSITIVE POLICE REPORTS
**University employee -** full-time or part-time employee of the University of Oregon

**University Official -** a publicly identifiable individual affiliated, but not employed by, the University of Oregon

**Family member -** the spouse, domestic partner, child (including step-child, foster child or child-in-law), parent (including step-parent and parent-in-law), or sibling (including step-sibling) of a University employee, law enforcement agency employee, University official, or public official

**Law Enforcement agency -** Any federal, state, county, or local criminal justice agency employing persons who have the power to make arrests and who are authorized to carry firearms in the performance of duty

**Public Official -** an elected official of a government entity, a magistrate as defined in ORS 133.030, prosecuting attorney

806.3.2  RESPONSIBILITIES

    (a)   **Officers and other members**

        1.   Officers conducting investigations, or other members who become aware of investigations involving individuals in the above list, or other situations that in the judgment of the officer/member should result in a report being classified as "Sensitive" shall bring the situation to the attention of their supervisor or Watch Commander.

    (b)   **Supervisors/Watch Commander**

        1.   Approved reports designated as "Sensitive" will be delivered to the Manager of Communications and Records, or Records Supervisor if the Manager is unavailable.

    (c)   **Records Supervisor, or Communications and Records Manager**

        1.   Will ensure that any data entry that is immediately necessary, route copies in secure envelopes to those that need immediate copies, and file in secure filing.

           (a)   Secure filing is separate from regular report files

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000421

**Exhibit 1**
**Page 411 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Law Enforcement Records Unit*

    (b)    Secure filing is accessible by keys issued to the Communications and Records Manager and the Records Supervisor ONLY.

    (c)    Access to Sensitive reports will be limited to those with a strict business need-to-know, and only available through the Communications and Records Manager or Records Supervisor.

## 806.4  EXPUNCTION
If the Department receives a court order directing that records relating to a particular person's conviction for any offense be expunged, the order shall be complied with as soon as possible, but no longer than 21 days. Arrest records and associated follow-up reports that relate solely to the person described in the order shall be removed from the file and destroyed in their entirety. If the reports also relate to the investigation or arrest of other persons not described in the court order, the reports any mention of the subject of the court order will be completely removed from the report and replaced with "expunged". Other information such as relatives names, addresses or license numbers, that could be used to identify the subject of the order, shall also be removed. The order applies to all hard copies of the report as well as any electronic versions that may exist on any computer system under the control of the Department.

## 806.5  ORDERS TO SEAL OR SET ASIDE REPORTS
Court orders to seal or "set aside" reports are to be complied with as soon as possible.

Upon receiving such an order, the hard copy of the report shall be placed in a tamper evident envelope and sealed. Sealed reports are to be kept in a separate secure location within the records storage room.

Electronic reports subject to the order to seal shall be electronically moved to a separate secure electronic file that is accessible only by the system administrator.

Sealed reports are not to be unsealed unless, and until, the University of Oregon Police Department receives a subsequent court order that supersedes the original.

## 806.6  REPORTING CRIME STATISTICS
Uniform Crime Reporting (UCR) codes shall be assigned to all crime reports in accordance with the Federal Bureau of Investigation's Uniform Crime Reporting Program. It is the responsibility of Records Section personnel to enter such information into the University of Oregon Police Department data system and ensure that such information is transmitted on a monthly basis to the Oregon State Police Law Enforcement Data System (LEDS) (Oregon Revised Statutes 181.550).

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000422

**Exhibit 1**
**Page 412 of 550**



**Policy 808**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Restoration of Firearm Serial Numbers

## 808.1  PURPOSE AND SCOPE
The primary purpose for restoring firearm serial numbers is to determine the prior owners or origin of the item from which the number has been recovered. Thus, property can be returned to rightful owners or investigations can be initiated to curb illegal trade of contraband firearms. The purpose of this plan is to develop standards, methodologies, and safety protocols for the recovery of obliterated serial numbers from firearms and other objects using procedures that are accepted as industry standards in the forensic community. All personnel who are involved in the restoration of serial numbers will observe the following guidelines.

## 808.2  PROCEDURE
Any firearm coming into the possession of the University of Oregon Police Department as evidence, where the serial numbers have been removed or obliterated will be processed in the following manner:

### 808.2.1  PRELIMINARY FIREARM EXAMINATION
(a)  Always keep the muzzle pointed in a safe direction. Be sure the firearm is in an unloaded condition. This includes removal of the ammunition source (e.g., the detachable magazine, contents of the tubular magazine) as well as the chamber contents.

(b)  If the firearm is corroded shut or in a condition that would preclude inspection of the chamber contents, treat the firearm as if it is loaded. Make immediate arrangements for a firearms examiner or other qualified examiner to render the firearm safe.

(c)  Accurately record/document the condition of the gun when received. Note the positions of the various components such as the safeties, cylinder, magazine, slide, hammer, etc. Accurately record/document cylinder chamber and magazine contents. Package the ammunition separately.

(d)  If the firearm is to be processed for fingerprints or trace evidence, process <u>before</u> the serial number restoration is attempted. First record/document important aspects such as halos on the revolver cylinder face or other relevant evidence that might be obscured by the fingerprinting chemicals.

### 808.2.2  PROPERTY BOOKING PROCEDURE
Any employee taking possession of a firearm with removed/obliterated serial numbers shall book the firearm into property following standard procedures. The employee booking the firearm shall indicate on the property form that serial numbers have been removed or obliterated.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Restoration of Firearm Serial Numbers*

### 808.2.3  OFFICER RESPONSIBILITY

The property and evidence technician receiving a firearm when the serial numbers have been removed or obliterated shall arrange for the firearm to be transported to the crime lab for restoration and maintain the chain of evidence.

### 808.2.4  DOCUMENTATION

Case reports are prepared in order to document the chain of custody and the initial examination and handling of evidence from the time it is received/collected until it is released.

This report must include a record of the manner in which and/or from whom the firearm was received. This may appear on the request form or property form depending on the type of evidence.

### 808.2.5  FIREARM TRACE

After the serial number has been restored or partially restored by the criminalistics laboratory, the property and evidence technician will complete a Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) National Tracing Center (NTC) Obliterated Serial Number Trace Request Form (ATF 3312.1-OBL) and forward the form to the NTC in Falling Waters, West Virginia or the data may be entered into the ATF eTrace system.

## 808.3  BULLET AND CASING IDENTIFICATION

Exemplar bullets and cartridge cases from the firearm, depending upon acceptance criteria and protocol, may be submitted to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) National Integrated Ballistic Information Network (NIBIN) which uses the Integrated Ballistic Identification System (IBIS) technology to digitize and compare unique markings made by a firearm on bullets and cartridge casings recovered from crime scenes.

Copyright Lexipol, LLC 2018/04/27. All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000424

**Exhibit 1**
**Page 414 of 550**



**Policy**
**809**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Access to Law Enforcement Databases

### 809.1  PURPOSE AND SCOPE
The purpose of this policy is to establish procedures for compliance with the rules and procedures regarding the use of law enforcement databases and related information. This policy applies to all of the records files maintained within LEDS and NCIC, to include the following, but not limited to: Driver's License; Vehicle Registration; Vehicle/License; Vehicle/Boat Parts; Articles; Gun; Boat; Securities; Wanted Persons; Missing Persons; Corrections Offenders; Officer Safety; Unidentified Persons; Identification Theft Victim; Protection Orders; Criminal History; Environmental Safety; ORI; and LEDS Agency File.

It is the policy of the University of Oregon Police Department for the strict adherence to all applicable Department, Local, University, State and Federal rules and procedures by all UOPD employees involved in the search of, entry to, modification of, or dissemination of, information associated with law enforcement databases (i.e. LEDS, AIRS,NCIC).

### 809.2  GENERALLY
All UOPD employees involved in the search of, or entry to, any Local, University, State or Federal law enforcement databases (i.e., AIRS, LEDS, NCIC) must be in compliance with all related certification requirements before being allowed access to those systems.

These databases must only be used for legitimate law enforcement purposes.

Any UOPD employee who enters information into LEDS or NCIC files is responsible for the accuracy, timeliness and completeness of that information.

### 809.3  LAW ENFORCEMENT DATA SYSTEM (LEDS)
All UOPD employees who operates a terminal to access the LEDS network must complete a LEDS System Training Guide at a level consistent with the employee's duties.

    (a)    The UOPD' LEDS Representative will issue a Training Guide to employees and it must be completed within 60 calendar days from the date of issue.

    (b)    Each employee cleared to use LEDS must be re-certified every two years per schedules and procedures as prescribed by LEDS.

### 809.3.1  PERSONAL IDENTIFYING INFORMATION
Employees shall not access, use or disclose personal identifying information, including an individual's photograph, Social Security number, driver identification number, name, address, telephone number and the individual's medical or disability information, which is contained in any driver license record, motor vehicle record or any department record except as authorized by the Department and only when such use or disclosure is permitted or required by law to carry out a legitimate law enforcement purpose (ORS 802.181 and 18 USC § 2721).

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000425

**Exhibit 1**
**Page 415 of 550**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Access to Law Enforcement Databases*

**809.4   FBI - NCIC**
Access to the FBI-NCIC system requires a background screening of all terminal operators. Minimal background screening of the terminal operators will include the following queries:

(a)   Queries of LEDS and NCIC fugitive warrant files, the Oregon Computerized Criminal History (CCH) system, and the FBI Interstate Identification Index (III), must be conducted on all terminal operators with LEDS access.

(b)   To assure positive identification, submission of a completed applicant fingerprint card to the FBI Identification Division through the Oregon University Police Identification Services Section is also required.

**809.5   RECORDS AND COMMUNICATIONS PERSONNEL**
All UOPD Communications and Records personnel will be familiar with and adhere to the administrative rules set forth in the LEDS Manual, Sections 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 through 257-15-100. The LEDS Manual can be accessed through the following website: www.oregon.gov/OSP/CJIS/adminrules.

The UOPD has established specific procedures and protocols for the operations of the data terminal system outlined in the UOPD Dispatch Procedures Manual. These protocols are intended to assist both the field users and Communications and Records personnel in the safe, legal, and orderly operation of these Federally controlled database systems.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000426

**Exhibit 1**
**Page 416 of 550**



## University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Records Release

### 810.1  PURPOSE AND SCOPE
The purpose of this section is to provice guidance for the release of University of Oregon Police Department reports and records in accordance with applicable law.

### 810.2  PUBLIC REQUESTS FOR RECORDS
The Oregon Public Records Act (ORS Chapter 192) provides that records created by a public agency shall be subject to inspection and release unless exceptions are established by statute. Certain public records relating to law enforcement are exempted as indicated in this policy. The Department will work through the University of Oregon Office of Public Records to respond to any public records request for police reports or other records held by the Department. Persons making public records requests shall be referred directly to the UO Office of Public Records. The Department and the UO Office of Public Records will work closely with General Counsel regarding records release issues.

### 810.3  CRIMINAL INVESTIGATIONS AND POLICE REPORTS

#### 810.3.1  ARREST AND CRIME REPORTS
The record of an arrest or the report of a crime shall be disclosed unless, and only for so long as, there is a clear need to delay disclosure in the course of a specific investigation, including the need to protect the complaining party or the victim. For purposes of this subsection, the record of an arrest or the report of a crime includes, but is not limited to:

(a)  The arrested person's name, age, residence, employment, marital status and similar biographical information.

(b)  The offense with which the arrested person is charged.

(c)  The conditions of release pursuant to Oregon Revised Statutes 135.230 to 135.290.

(d)  The identity of and biographical information concerning both complaining party and victim.

(e)  The identity of the investigating and arresting agency and the length of the investigation.

(f)  The circumstances of arrest, including time, place, resistance, pursuit and weapons used.

(g)  Such information as may be necessary to enlist public assistance in apprehending fugitives from justice.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Records Release*

---

810.3.2   INVESTIGATORY INFORMATION
Generally, investigatory information compiled for criminal law purposes is exempt from disclosure. The contents of police reports or any other investigatory information shall not be released without consultation with the Investigations Sergeant.

810.3.3   JUVENILE RECORDS
Juvenile records are treated differently from records of adults.

Except as defined in this section, reports involving juveniles are generally confidential and may not be released. Any requests for reports or records involving juveniles not specifically authorized by this policy should be referred to the County Juvenile Department (ORS 419A.255(2); ORS 419A.255(8)). Generally, the following records are releasable:

(a)   If a youth is taken into custody under circumstances where he/she could be arrested without a warrant if an adult, or pursuant to an order of the Juvenile Court, the following information shall be disclosed unless, and only for so long as, there is a clear need to delay disclosure in the course of a specific investigation, including the need to protect the complaining party or the victim (ORS 419A.255(6)):

1.   The youth's name and age and whether the youth is employed or in school.

2.   The youth offense for which the youth was taken into custody.

3.   The name and age of the adult complaining party and the adult victim, unless the disclosure of such information is otherwise prohibited or restricted.

4.   The identity of the investigating and arresting agency.

5.   The time and place that the youth was taken into custody and whether there was resistance, pursuit or a weapon used in taking the youth into custody.

(b)   ORS 419A.255 and ORS 419A.257 specify that other information is releasable to:

1.   Other public agencies for use in investigating or prosecuting cases in which the juvenile in question is somehow involved.

2.   Department of Human Services, Child Welfare Division, Oregon Youth Authority or the local Juvenile Department.

(c)   Child abuse cases may only be made available to a law enforcement agency, local or state prosecutors, a child welfare agency or other entities as designated by law (ORS 419B.035).

(d)   Court appointed special advocates (i.e., CASA volunteer or employee) will be permitted to inspect and copy any records held by this department relating to the child or ward involved in a case and members of this department may consult with the court appointed special advocate regarding the case. Consent of the child, ward or parents to the sharing of such information is not required (2012 Oregon Laws c107, §105).

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000428

**Exhibit 1**
**Page 418 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Records Release*

**810.4  OTHER DEPARTMENT RECORDS**
The following sections describe what the status of the public records, and related, laws. These sections are not intended to inform the decisions made by the Department, UO Office of Public Records and General Counsel. They are included here to inform the members of the Department about the nature of those decisions.

810.4.1  CONDITIONALLY EXEMPT PUBLIC RECORDS
Generally, the following public records will not be released unless the public interest requires disclosure (Oregon Revised Statutes 192.501):

(a)    Records pertaining to any litigation to which the Department is, or is likely to be a party except where litigation which has been concluded.

(b)    Any record pertaining to department operations or the use and deployment of personnel and equipment, if disclosure would endanger public safety or jeopardize a law enforcement activity.

(c)    Records or information that would disclose or jeopardize security measures taken by the Department to protect department members, property or operations.

810.4.2  OTHER PUBLIC RECORDS EXEMPT FROM DISCLOSURE
The following public records are generally exempt from disclosure and, absent a court order or other legal process, shall not be released:

(a)    Specific records containing the home address, personal telephone number, or e-mail address of any individual who has previously submitted a written request of non-disclosure in accordance with rules established by the Attorney General.

(b)    Information of a personal nature such as but not limited to that kept in a personal, medical or similar file, if public disclosure would constitute an unreasonable invasion of privacy.

(c)    Personal information of any member of or volunteer of this department including addresses, Social Security numbers, dates of birth and telephone numbers.

(d)    Any public record or information the disclosure of which is prohibited or restricted or otherwise made confidential or privileged under Oregon or Federal law.

810.4.3  PERSONNEL RECORDS
Certain information contained in personnel records is confidential and is also exempt from public disclosure. The following information shall not be released unless the public interest requires disclosure in the particular instance as determined by a court or other legal process (ORS 181.854; ORS 192.501(12); ORS 192.502(2)):

(a)    Records containing medical information and similar uniquely personal information which, if released, would constitute an unreasonable invasion of privacy.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000429

**Exhibit 1**
**Page 419 of 550**

# University of Oregon Police Department
### University of Oregon Police Department Policy Manual

*Records Release*

---

    (b)    Records, materials, or documents supporting a personnel investigation that is pending or ongoing or has resulted in discipline of the involved employee.

    (c)    Photographs that identify an employee, unless the employee consents in writing.

    (d)    Audio or video records of internal investigation interviews (Ch. 485 Oregon Laws 2011).

Any request for the release of such information must be reviewed by General Counsel.

### 810.5   SUBPOENA DUCES TECUM
Any Subpoena Duces Tecum (SDT) should be promptly provided to a supervisor for forwarding to the Captain in the chain of command. UO Office of General Counsel will be notified upon receipt of a SDT.

---

UO_Alvarez000430

**Exhibit 1**
**Page 420 of 550**



**Policy**
**812**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Computerized Criminal Offender Information/ Computerized Criminal History (CCH)

### 812.1  PURPOSE AND SCOPE
This policy provides guidelines for the release of criminal offender information, security of that information and persons authorized to release that information.

### 812.2  AUTHORITY
Authority for the release or obtaining of Criminal History information is established in ORS 181.533 through ORS 181.560.

### 812.3  DEFINITIONS
Definitions related to this policy include (ORS 181.010; OAR 257-010-0015):

**Computerized Criminal History (CCH )** - Includes records and related data as to physical description and vital statistics, fingerprints received and compiled by the Oregon State Police (OSP), Identification Services Section for purposes of identifying criminal offenders and alleged offenders, records of arrests and the nature and disposition of criminal charges, including sentencing, confinement, parole and release.

**Criminal Justice Agency** - Includes the following:

(a)  The Governor

(b)  Courts of criminal jurisdiction

(c)  The Attorney General

(d)  District attorneys, city attorneys with criminal prosecutorial functions, attorney employees of the Office of Public Defense Services and non-profit public defender organizations established under contract with the Public Defense Services Commission

(e)  Law enforcement agencies

(f)  The Department of Corrections

(g)  The State Board of Parole and Post-Prison Supervision

(h)  The Department of Public Safety Standards and Training

(i)  The Oregon Liquor Control Commission

(j)  Any other state or local agency with law enforcement authority designated by order of the Governor

**Designated Agency** - Any state, county or municipal government agency where Oregon criminal offender information is required to implement a federal or state statute, executive order

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000431

**Exhibit 1**
**Page 421 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Computerized Criminal Offender Information/Computerized Criminal History (CCH)*

or administrative rule that expressly refers to criminal conduct and contains requirements or exclusions expressly based on such conduct or for agency employment purposes, or licensing purposes, or other demonstrated and legitimate needs when designated by order of the Governor.

### 812.4  ACCESS TO CCH
CCH may be released only to authorized recipients who have both a right to know and a need to know. All law enforcement personnel with proper identification are authorized recipients, if they have an official need to know.

### 812.4.1  ACCESS BY CRIMINAL JUSTICE AGENCIES
Access to OSP criminal offender information may be granted to Criminal Justice Agencies, where the information is to be used for the administration of criminal justice, Criminal Justice Agency employment, or the information is required to implement a federal or state statute, local ordinance, Executive Order, or administrative rule that expressly refers to criminal conduct and contains requirements or exclusions expressly based on such conduct, or other demonstrated and legitimate needs.

### 812.4.2  CRIMINAL RECORD SECURITY OFFICER
The Captain of Administration is the designated Criminal Record Security Officer for the University of Oregon Police Department. This supervisor is responsible for ensuring compliance with this procedure and with applicable records security regulations and requirements imposed by federal and state law. The Criminal Record Security Officer will resolve specific questions that arise regarding authorized recipients of criminal history.

### 812.4.3  RELEASE OF CRIMINAL OFFENDER INFORMATION
Criminal offender information shall only be released in the following circumstances, as set out by OAR 257-010-0025:

(a) **Release to Criminal Justice and Designated Agencies:** Oregon criminal offender information may be shared between authorized Criminal Justice and Designated Agencies only as specified in the Oregon Administrative Rules (OAR) and the Law Enforcement Data System (LEDS) Manual.

(b) **Release of FBI criminal offender information:** Dissemination of FBI criminal offender information to public or private agencies by Criminal Justice or Designated Agencies is prohibited by 28 USC § 534 and 28 CFR 20.33(b). Inquiries for non-official purposes or the checking of records for unauthorized persons or agencies is prohibited. A person wishing to review his/her criminal history record maintained by the FBI should write to: Federal Bureau of Investigation, CJIS Division, Attn: SCU, Module D2, 1000 Custer Hollow Road, Clarksburg, West Virginia, 26306. The FBI will inform the person how to obtain a copy of his/her record and, if necessary, how to challenge the accuracy or completeness of that record.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Computerized Criminal Offender Information/Computerized Criminal History (CCH)*

(c) **Release of criminal offender information to field personnel:** University of Oregon Police Department personnel shall not have access to criminal offender information until a fingerprint based background investigation has been completed and approved. Any radio transmission of criminal offender information should only occur when officer or citizen safety is in jeopardy. Cell phones should be used if possible. The transmission should be limited to essential details only, with maximized use of law enforcement codes (10 or 12 code), concealing information identifying individuals and offenses as much as possible. Plain text transmission of an entire record (summary or full) is prohibited.

Requests for criminal offender information other than as authorized in this policy should be referred to the nearest Oregon State Police, Identification Services Section located at 3772 Portland Rd. N.E., Salem, OR 97303. Inquiries may also be made through the OSP webpage at www.osp.state.or.us.

### 812.5  JUVENILE RECORDS
Nothing in this procedure is intended to alter existing statutes, case law, or the policies and orders of the Juvenile Court regarding the release of juvenile offender records. Refer to the Temporary Custody of Juveniles Policy for more specific information regarding cases involving juveniles.

### 812.6  REVIEW OF CRIMINAL OFFENDER RECORD
An individual may review his/her own Oregon criminal offender information by contacting the Oregon State Police, Identification Services Section located at 3772 Portland Rd. N.E., Salem, OR 97303 (OAR 257-010-0035).

An individual may review his/her local record on file with the Department under the provisions of ORS 192.501(3), and after complying with all legal requirements. This department will not release information originated by any other agency (ORS 192.410 to ORS 192.505).

### 812.7  PROTECTION OF CRIMINAL OFFENDER INFORMATION
Any Criminal Justice or Designated Agency or private entity obtaining or receiving criminal offender information shall maintain those records in secure files, available only to authorized agency employees, until they are destroyed by burning, shredding or secure and confidential recycling and shall treat those records in such a manner that the record does not become public information in any later proceeding, except through court order or as otherwise provided by law.

#### 812.7.1  COMPUTER TERMINAL SECURITY
Any computer terminal with CCH accessing capability must be physically secure and placed in a location not available to unauthorized persons. Computer terminals must be so placed that unauthorized persons may not observe the content of messages transmitted or received on such computer terminal.

Copyright Lexipol, LLC 2018/04/27. All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000433
**Exhibit 1**
**Page 423 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Computerized Criminal Offender Information/Computerized Criminal History (CCH)*

### 812.7.2  DESTRUCTION OF CRIMINAL OFFENDER INFORMATION
When any document providing criminal offender information has served the purpose for which it was obtained, it shall be destroyed by burning, shredding, or secure and confidential recycling.

Each employee shall be responsible for destroying the criminal offender information they receive.

### 812.8  TRAINING PROGRAM
All personnel authorized to process or release criminal offender information shall be required to complete a training program as prescribed by LEDS (OAR 257-015-0050).

The Training Division shall coordinate the course to provide training in the proper use, control, and dissemination of criminal offender information.

### 812.9  PENALTIES FOR MISUSE OF RECORDS
Violation of federal and state regulations governing access to criminal offender information can result in the department's access to that information being terminated. Violation of these procedures can be cause for discipline up to and including termination.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department



**Policy**
**814**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Computers and Digital Evidence

### 814.1  PURPOSE AND SCOPE
This policy establishes procedures for the seizure and storage of computers, personal communications devices (PCDs) digital cameras, digital recorders and other electronic devices that are capable of storing digital information; and for the preservation and storage of digital evidence. All evidence seized and/or processed pursuant to this policy shall be done so in compliance with clearly established state law and Fourth Amendment search and seizure provisions.

### 814.2  SEIZING COMPUTERS AND RELATED EVIDENCE
Computer equipment requires specialized training and handling to preserve its value as evidence. Officers should be aware of the potential to destroy information through careless or improper handling, and utilize the most knowledgeable available resources. When seizing a computer and accessories the following steps should be taken:

(a)  Photograph each item, front and back, specifically including cable connections to other items. Look for a phone line or cable to a modem for Internet access.

(b)  Do not overlook the possibility of the presence of physical evidence on and around the hardware relevant to the particular investigation such as fingerprints, biological or trace evidence, and/or documents.

(c)  If the computer is off, do not turn it on.

(d)  If the computer is on, do not shut it down normally and do not click on anything or examine any files.

    1.  Photograph the screen, if possible, and note any programs or windows that appear to be open and running.

    2.  Disconnect the power cable from the back of the computer box (For laptops, disconnect any power cable from the case and remove the battery).

(e)  Label each item with case number, evidence sheet number and item number.

(f)  Handle and transport the computer and storage media (e.g., tape, discs, memory cards, flash memory, external drives) with care so that potential evidence is not lost.

(g)  Lodge all computer items in the Property and Evidence Section. Do not store computers where normal room temperature and humidity is not maintained.

(h)  At minimum, officers should document the following in related reports:

    1.  Where the computer was located and whether or not it was in operation.

    2.  Who was using it at the time.

    3.  Who claimed ownership.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000435

**Exhibit 1**
**Page 425 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Computers and Digital Evidence*

4.    If it can be determined, how it was being used.

(i)    In most cases when a computer is involved in criminal acts and is in the possession of the suspect, the computer itself and all storage devices (hard drives, tape drives and disk drives) should be seized along with all media. Accessories (printers, monitors, mouse, scanner, keyboard, cables, software and manuals) should not be seized unless as a precursor to forfeiture.

## 814.2.1   BUSINESS OR NETWORK COMPUTERS
If the computer belongs to a business or is part of a network, it may not be feasible to seize the entire computer. Cases involving networks require specialized handling. Officers should contact a certified forensic computer examiner for instructions or a response to the scene. It may be possible to perform an on-site inspection, or to image the hard drive only of the involved computer. This should only be done by someone specifically trained in processing computers for evidence. Cases involving networks require specialized training which is available through the Northwest Regional Computer Forensics Lab, the Oregon State Police or another agency having certified examiners.

## 814.2.2   FORENSIC EXAMINATION OF COMPUTERS
If an examination of the contents of the computer's hard drive, or floppy disks, compact discs, or any other storage media is required, forward the following items to the Computer Forensic Examiner:

(a)    Copy of report(s) involving the computer, including the Evidence/Property sheet.

(b)    Copy of a consent to search form signed by the computer owner or the person in possession of the computer, or a copy of a search warrant authorizing the search of the computer hard drive for evidence relating to investigation.

(c)    A listing of the items to search for (e.g., photographs, financial records, e-mail, documents).

(d)    An exact duplicate of the hard drive or disk will be made using a forensic computer and a forensic software program by someone trained in the examination of computer storage devices for evidence.

## 814.3   SEIZING DIGITAL STORAGE MEDIA
Digital storage media, to include hard discs, floppy discs, CDs, DVDs, tapes, memory cards, or flash memory devices should be seized and stored in a manner that will protect them from damage.

(a)    If the media has a write-protection tab or switch, it should be activated.

(b)    Do not review, access or open digital files prior to submission. If the information is needed for immediate investigation request Property Control to copy the contents to an appropriate form of storage media.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000436

**Exhibit 1**
**Page 426 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Computers and Digital Evidence*

(c)  Many kinds of storage media can be erased or damaged by magnetic fields. Keep all media away from magnetic devices, electric motors, radio transmitters or other sources of magnetic fields.

(d)  Do not leave storage media where they would be subject to excessive heat such as in a parked vehicle on a hot day.

(e)  Use plastic cases designed to protect the media, or other protective packaging, to prevent damage.

## 814.4  SEIZING PERSONAL COMMUNICATION DEVICES
Personal communication devices such as cell phones, PDAs or other hand-held devices connected to any communication network must be handled with care to preserve evidence that may be on the device including messages, stored data and/or images.

(a)  Officers should not attempt to access, review or search the contents of such devices prior to examination by a forensic expert. Unsent messages can be lost, data can be inadvertently deleted and incoming messages can override stored messages.

(b)  Do not turn the device on or off. The device should be placed in a solid metal container such as a paint can or in a faraday bag, to prevent the device from sending or receiving information from its host network.

(c)  When seizing the devices, also seize the charging units and keep them plugged in to the chargers until they can be examined. If the batteries go dead all the data may be lost.

## 814.5  DIGITAL EVIDENCE RECORDED BY OFFICERS
Officers handling and submitting evidence recorded by officers and stored digitally using digital cameras, audio or video recorders will comply with these procedures to ensure the integrity and admissibility of such evidence.

### 814.5.1  COLLECTION OF DIGITAL EVIDENCE
Once evidence is recorded it shall not be erased, deleted or altered in any way prior to submission. All photographs taken will be preserved regardless of quality, composition or relevance. Video and audio files will not be altered in any way.

### 814.5.2  SUBMISSION OF DIGITAL MEDIA
The following are required procedures for the submission of digital media used by cameras or other recorders:

(a)  The recording media (smart card, compact flash card or any other media) shall be brought to the Property and Evidence Section as soon as possible for submission into evidence.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000437

**Exhibit 1**
**Page 427 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Computers and Digital Evidence*

   (b)   Officers are not authorized to review or copy memory cards. The property and evidence technicians are the only employees authorized to copy and/or distribute digital media made from the memory cards.

   (c)   As soon as possible following the collection of evidence, the officer should remove the memory card from their digital camera and place the card into a plastic carrier. The card and carrier should be placed into a zip-lock bag. Officers shall write their name and the related case number on the outside of the bag before placing in the film drop box along with the evidence form.

   (d)   The property and evidence technician will make a copy of the memory card using appropriate storage media. Once it is verified that the images are properly transferred to the storage media, the property and evidence technician will erase the memory card for re-use. The storage media will be marked as the original.

   (e)   Officers requiring a copy of the digital files must request a copy on the evidence form when submitted to evidence.

## 814.5.3   DOWNLOADING OF DIGITAL FILES
Digital information such as video or audio files recorded on devices using internal memory must be downloaded to storage media. The following procedures are to be followed:

   (a)   Files should not be opened or reviewed prior to downloading and storage.

   (b)   Where possible, the device should be connected to a computer and the files accessed directly from the computer directory or downloaded to a folder on the host computer for copying to the storage media.

## 814.5.4   PRESERVATION OF DIGITAL EVIDENCE

   (a)   Only evidence technicians are authorized to copy original digital media that is held as evidence. The original digital media shall remain in evidence and shall remain unaltered.

   (b)   Digital images that are enhanced to provide a better quality photograph for identification and investigative purposes must only be made from a copy of the original media.

   (c)   If any enhancement is done to the copy of the original, it shall be noted in the corresponding incident report.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000438

**Exhibit 1**
**Page 428 of 550**



**Policy**
**820**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Animal Control

## 820.1  PURPOSE AND SCOPE
The purpose of this policy is to establish guidelines for University of Oregon Police Department personnel in dealing with animal control related calls for service and to set forth procedures regarding animal control services, the handling of injured animals, and the abatement of animal nuisances.

## 820.2  OFFICER RESPONSIBILITY
During hours when an animal control officer is unavailable, the following animal-related calls for service will be handled by the appropriate on-duty officer.

An officer may be dispatched to animal related calls and should take appropriate actions to control the situation until the arrival of an animal control officer. Due to the hazards of handling animals without proper equipment, a responding officer generally should not attempt to capture and pick up any animal, but should keep the animal under observation until the arrival of an animal control officer. The following are examples of when an officer may consider acting before the arrival of an animal control officer:

(a)   When there is a threat to the public safety.

(b)   When an animal has bitten someone, officers should take measures to confine the animal and prevent further injury.

(c)   When an animal is creating a traffic hazard.

(d)   When the owner/handler has been arrested and there is no other alternative placement for the animal .

(e)   When the animal is gravely injured.

### 820.2.1  ANIMAL CRUELTY COMPLAINTS
An ACO who becomes aware of an animal cruelty complaint will request an officer to respond and assume the investigation. When probable cause exists, an officer shall arrest persons who violate certain cruelty to animal statutes (ORS 133.379). An ACO may be requested to assist with the investigation when appropriate for the purpose of handling the disposition of any animals associated with the case.

### 820.2.2  STRAY DOGS
Attempts should be made to contact the owner of the stray dog. If the owner is contacted, the dog should be released to the owner and a citation may be issued if appropriate. If the animal is not released, it shall be transported to the Animal Shelter. The transporting employee shall ensure the animal has sufficient food, water, and bedding.

Once a dog has been taken into custody, all releases will be handled by the Animal Shelter.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000439

**Exhibit 1**
**Page 429 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Animal Control*

820.2.3  ANIMAL BITE REPORTS
Officers shall obtain as much information as possible for forwarding to Lane County Animal Control agency for follow-up. An Animal Bite Report Form must be completely filled out and attached to the incident report, with a copy forwarded to the County Health Department.

Officers shall instruct the owner of a biting animal, if contacted, to keep the animal confined on the property until contacted by the ACO. If the animal is a stray, then every effort shall be made to capture and impound the animal immediately.

820.2.4  PUBLIC NUISANCE CALLS RELATING TO ANIMALS
Officers shall obtain and forward to the Lane County Animal authority as much information as possible regarding the nature of the complaint including identity of the complaining person, owner information (if possible) and location of the problem. Officers will also document any actions taken and citation(s) issued in any related report.

In the event responding officers cannot fulfill urgent requests for service because the animal is difficult or dangerous to handle, an animal control officer may be called to handle. All requests to call in the animal control officer must be approved by a field supervisor or the Executive Coordinator.

**820.3  DECEASED ANIMALS**
Deceased animals on public property will be removed and properly disposed of by the Facilities department. Field officers will remove deceased animals when Facilities personnel are not on duty.

(a)  For health and sanitary reasons, deceased animals should be placed in a sealed plastic bag prior to placing in a temporary storage location until Facilities can retrieve the animal.

(b)  Officers will not be required to climb onto or under any privately owned structure for the purpose of removing a deceased animal.

Large animals such as deer, elk, coyotes, etc., should be moved to the side of the roadway, if possible, for later removal by the Road Department.

**820.4  INJURED ANIMALS**
When any injured domesticated animal is brought to the attention of a member of the Department, all reasonable attempts shall be made to contact the owner or responsible handler. When the owner or responsible handler cannot be located and the animal is not an immediate danger to the community, it shall be taken to a doctor of veterinary medicine as described below.

(a)  During normal business hours, the animal should be taken to an authorized veterinary care clinic

(b)  If after normal business hours, the animal should be taken to the authorized Veterinary Emergency & Critical Care Services Clinic.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Animal Control*

    (c)   The only exception to the above is when the animal is an immediate danger to the community or the owner of the animal is identified and takes responsibility for the injured animal.

          1.   When the need to euthanize a seriously injured or dangerous animal exists, the department Shooting Policy shall be followed. The decision to euthanize a seriously injured animal will rest with the supervisor.

    (d)   Injured wildlife should be referred to the Marine Mammal Center, Oregon Department of Fish and Wildlife or the Oregon State Police, as applicable.

    (e)   When handling dead or injured animals police department employees shall attempt to identify and notify the owner of the final disposition of the animal.

    (f)   Each incident shall be documented to include, at minimum, the name of the reporting party and veterinary hospital and/or person to whom the animal is released.

## 820.5  CITATIONS
It should be at the discretion of the officer or the field supervisor as to the need for, or advisability of, the issuance of a citation for a violation.

## 820.6  POST-ARREST PROCEDURES
The arresting officer should make a reasonable effort to ensure that animals or pets under a person's care will be provided with adequate care when that person is arrested. This is only required when there is no person to provide care and the arrestee is expected to be in custody for a time period longer than would reasonably allow him/her to properly care for the animals.

Relatives or neighbors may be contacted, with the owner's consent, to care for the animals. If no persons can be found or the owner does not consent, the appropriate animal control authority should be notified.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000441

**Exhibit 1**
**Page 431 of 550**



**Policy**
**822**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Jeanne Clery Campus Security Act

## 822.1  PURPOSE AND SCOPE
The purpose of this policy is to establish guidelines to ensure this department fulfills its obligation in complying with the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act (Clery Act).

## 822.2  POLICY
The University of Oregon Police Department encourages accurate and prompt reporting of all crimes and takes all such reports seriously (20 USC § 1092 (f)(1)(C)(iii)). Reports will be accepted in any manner, including in person or in writing, at any Department facility. Reports will be accepted anonymously, by phone or via e-mail or on the institution's website.

It is the policy of the Department to comply with the Clery Act. Compliance with the Clery Act requires a joint effort between the Department, other departments and faculty of the institution.

Supervisors assigned areas of responsibility in the following policy sections are expected to be familiar with the subsections of 20 USC § 1092(f) and 34 CFR 668.46 that are relevant to their responsibilities.

## 822.3  POLICY, PROCEDURE AND PROGRAM DEVELOPMENT
The Chief of Police will:

(a) Ensure that the University of Oregon Police Department establishes procedures for immediate emergency response and evacuation, including the use of electronic and cellular communication and testing of these procedures (20 USC § 1092 (f)(1)(J)(i) and (iii)).

(b) Enter into agreements as appropriate with local law enforcement agencies to:

1. Identify roles in the investigation of alleged criminal offenses on campus (20 USC § 1092 (f)(1)(C)(ii)),

2. Assist in the monitoring and reporting of criminal activity at off-campus student organizations that are recognized by the institution and engaged in by students attending the institution, including student organizations with off-campus housing facilities (20 USC § 1092 (f)(1)(G)),

3. Ensure coordination of emergency response and evacuation procedures, including procedures to immediately notify the campus community upon the confirmation of a significant emergency or dangerous situation (20 USC § 1092 (f)(1)(J)).

4. Notify the University of Oregon Police Department of criminal offenses reported to local law enforcement agencies to assist the institution in meeting its reporting requirements under the Clery Act (20 USC § 1092 (f)(1)(F)).

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Jeanne Clery Campus Security Act*

5.    Notify the University of Oregon Police Department of criminal offenses reported to local law enforcement agencies to assist in making information available to the campus community in a timely manner and to aid in the prevention of similar crimes (20 USC § 1092 (f)(3)).

(c)    Appoint a designee to develop programs that are designed to inform students and employees about campus security procedures and practices, and to encourage students and employees to be responsible for their own security and the security of others (20 USC § 1092 (f)(1)(D)).

(d)    Appoint a designee to develop programs to inform students and employees about the prevention of crime (20 USC § 1092 (f)(1)(E)).

(e)    Appoint a designee to develop educational programs to promote the awareness of rape, acquaintance rape, domestic violence, dating violence, sexual assault and stalking, and what to do if a sex offense occurs, including who should be contacted, the importance of preserving evidence and to whom the alleged offense should be reported (20 USC § 1092 (f)(8)(B)).

(f)    Appoint a designee to make the appropriate notifications to staff at the institution regarding missing person investigations, in order to ensure that the institution complies with the requirements of 34 CFR 668.46(h).

## 822.4  RECORDS COLLECTION AND RETENTION

The Clery Act Coordinator is responsible for maintaining Department statistics and making reasonable good-faith efforts to obtain statistics from other law enforcement agencies as necessary to allow the institution to comply with its reporting requirements under the Clery Act (20 USC § 1092 (f)(1)(F)). The statistics shall be compiled as follows:

(a)    Statistics concerning the occurrence of the following criminal offenses reported to this department or to local police agencies that occurred on campus, in or on non-campus buildings or property, and on public property including streets, sidewalks and parking facilities within the campus or immediately adjacent to and accessible from the campus (20 USC § 1092 (f)(1)(F)(i)):

1.    Murder

2.    Sex offenses, forcible or non-forcible

3.    Robbery

4.    Aggravated assault

5.    Burglary

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Jeanne Clery Campus Security Act*

6.   Motor vehicle theft

7.   Manslaughter

8.   Arson

9.   Domestic Violence

10.  Dating Violence

11.  Stalking

12.  Arrests or persons referred for campus disciplinary action for liquor law violations, drug-related violations and weapons possession (UOPD will include any weapons violation)

(b)   Statistics concerning the crimes described in the section above, theft, simple assault, intimidation, destruction, damage or vandalism of property, and other crimes involving bodily injury to any person where the victim was intentionally selected because of his/her actual or perceived race, sex, religion, sexual orientation, ethnicity or disability (also known as Hate or Bias crimes). These statistics should be collected and reported according to the category of prejudice (20 USC § 1092 (f)(1)(F)(ii)).

(c)   The statistics shall be compiled using the definitions in the FBI's Uniform Crime Reporting (UCR) system and modifications made pursuant to the Hate Crime Statistics Act (20 USC § 1092 (f)(7) and 34 CFR 668.46 (c)(7)). The statistics will be categorized separately as offenses that occur (20 USC § 1092 (f)(12) and 34 CFR 668.46 (c)(4)):

1.   On campus.

2.   In or on a non-campus building or property.

3.   On public property.

4.   In dormitories or other on-campus, residential, student facilities.

(d)   Statistics will be included by the calendar year in which the crime was reported to the Department (34 CFR 668.46(c)(2)).

(e)   Statistics will include the three most recent calendar years (20 USC § 1092 (f)(1)(F); 34 CFR 668.46(c)).

(f)   The statistics shall not identify victims of crimes or persons accused of crimes (20 USC § 1092 (f)(7)).

## 822.4.1   CRIME LOG
The Clery Act Coordinator is responsible for ensuring a daily crime log is created and maintained as follows (20 USC § 1092 (f)(4) and 34 CFR 668.46(f)):

UO_Alvarez000444

**Exhibit 1**
**Page 434 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Jeanne Clery Campus Security Act*

(a)   The daily crime log will record all crimes reported to the University of Oregon Police Department, including the nature, date, time and general location of each crime, and the disposition, if known.

(b)   All log entries shall be made within two business days of the initial report being made to the Department.

(c)   If new information about an entry becomes available, then the new information shall be recorded in the log not later than two business days after the information becomes available to the policedepartment.

(d)   The daily crime log for the most recent 60-day period shall be open to the public for inspection at all times during normal business hours. Any portion of the log that is older than 60 days must be made available within two business days of a request for public inspection. Information in the log is not required to be disclosed when:

    1.   Disclosure of the information is prohibited by law.

    2.   Disclosure would jeopardize the confidentiality of the victim.

    3.   There is clear and convincing evidence that the release of such information would jeopardize an ongoing criminal investigation or the safety of an individual, that may cause a suspect to flee or evade detection, or that could result in the destruction of evidence. In any of these cases, the information may be withheld until that damage is no longer likely to occur from the release of such information.

## 822.5  INFORMATION DISSEMINATION
It is the responsibility of the Clery Act Coordinator to ensure that the required Clery Act disclosures are properly forwarded to campus administration and community members in accordance with institution procedures. This includes:

(a)   Procedures for providing emergency notification of crimes or other incidents and evacuations that might represent an imminent threat to the safety of students or employees (20 USC § 1092 (f)(3) and 34 CFR 668.46(e) and (g)).

(b)   Procedures for notifying the campus community about crimes considered to be a threat to other students and employees in order to aid in the prevention of similar crimes. Such disseminated information shall withold the names of victims as confidential (20 USC § 1092(f)(3)).

(c)   Information necessary for the institution to prepare its annual security report (20 USC § 1092 (f)(1); 34 CFR 668.46 (b)). This report will include, but is not limited to, the following:

    1.   Crime statistics

    2.   Crime and emergency reporting procedures

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000445

**Exhibit 1**
**Page 435 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Jeanne Clery Campus Security Act*

3.  Policies concerning security of and access to campus facilities

4.  Crime, sexual assault domestic violence, dating violence and stalking prevention programs

5.  Enforcement policies related to alcohol and illegal drugs

6.  Locations where the campus community can obtain information about registered sex offenders

7.  Emergency response and evacuation procedures

8.  Missing student notification procedures

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000446

**Exhibit 1**
**Page 436 of 550**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Chapter 9 - Custody

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000447
**Exhibit 1**
**Page 437 of 550**



Policy
**900**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Custody Searches

### 900.1 PURPOSE AND SCOPE
This policy provides guidance regarding searches of individuals in custody. Such searches are necessary to eliminate the introduction of contraband, intoxicants or weapons into the University of Oregon Police Department facility. Such items can pose a serious risk to the safety and security of department members, individuals in custody, contractors and the public.

Nothing in this policy is intended to prohibit the otherwise lawful collection of evidence from an individual in custody.

### 900.1.1 DEFINITIONS
Definitions related to this policy include:

**Custody Search** - An in-custody search of an individual and of his/her property, shoes and clothing, including pockets, cuffs and folds on the clothing, to remove all weapons, dangerous items and contraband.

**Physical body cavity search** - A search that includes a visual inspection and may include a physical intrusion into a body cavity. Body cavity means the stomach or rectal cavity of an individual, and the vagina of a female person.

**Strip search** - A search that requires an individual to remove or rearrange some or all of his/her clothing to permit a visual inspection of the underclothing, breasts, buttocks, anus or outer genitalia. This includes monitoring an individual who is changing clothes, where his/her underclothing, buttocks, genitalia or female breasts are visible.

### 900.2 POLICY
All searches shall be conducted with concern for safety, dignity, courtesy, respect for privacy and hygiene, and in compliance with policy and law to protect the rights of those who are subject to any search.

Searches shall not be used for intimidation, harassment, punishment or retaliation.

### 900.3 FIELD AND TRANSPORTATION SEARCHES
An officer should conduct a custody search of an individual immediately after his/her arrest, when receiving an individual from the custody of another, and before transporting a person who is in custody in any department vehicle.

Whenever practicable, a custody search should be conducted by an officer of the same sex as the person being searched. If an officer of the same sex is not reasonably available, a witnessing officer should be present during the search.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000448

Exhibit 1
Page 438 of 550

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Custody Searches*

### 900.4   ARRESTEE PROPERTY INVENTORIES
This policy provides for the proper and safe storage of custody property which has not been seized as evidence or contraband during a criminal investigation. Custodial property is inventoried to:

(1) protect the arrestee's property while it is in police custody;

(2) reduce or eliminate false claims against the police for lost property; and

(3) protect against possible injury from impounded but non-inventoried property.

Officers shall be responsible for strictly following this inventory policy. An inventory is a non-investigatory procedure.

#### 900.4.1   DEFINITIONS
Property – Includes all items that an individual has in their possession when arrested, items taken for safekeeping, and found property.

Inventorying – The systematic and focused inspection of an arrestee's property for the purpose of itemization, documentation, storage, and disposition of items as required by this policy. An inventory includes the opening of closed containers that are uniquely designed or objectively likely to contain anything that the applicable policy requires the officer to inventory.

#### 900.4.2   ARRESTEE'S PERSONAL PROPERTY
Any personal property that will accompany the arrestee to the Lane County Jail will be inventoried per University of Oregon Police policy. In situations where the personal property is not accepted by the Lane County Jail (e.g., oversized items, excess of items or items prohibited from storage within the jail, such as knives); the property will be placed in the UOPD Safekeeping Area.

During the course of inventorying personal belongings, if an UOPD Officer encounters evidence of a crime in plain view, it may be seized and lodged as evidence per department policy.

If however, probable cause to believe that evidence of a crime will be found within a closed container that is not open, and not subject to opening because it is not uniquely designed or objectively likely to contain any of the prohibited items listed in 900.4.2.1   , it will be necessary to seize the closed container and seek a search warrant prior to opening the container.

Any property too large to fit in the property bag provided by the correctional facility shall be stored in the designated area at UOPD Safekeeping Area.

Per O.R.S. 133.455 personal property will be stored in the UOPD Safekeeping Area will be inventoried and a receipt will be provided to the arrestee.

#### 900.4.3   ARRESTEE'S PROPERTY PROHIBITED ITEMS
The following items are not acceptable for storage at the UOPD Safekeeping Area, for safety and security reasons:

Dangerous weapons including explosive devices, fireworks, and firearms: The UOPD Safekeeping Area is not designed for storage of any type of combustible or explosive material as required by

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000449

**Exhibit 1**
**Page 439 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Custody Searches*

Bureau of Alcohol Tobacco and Firearms (BATF) construction guidelines found in 27 C.F.R. § 555 (K).

Ammunition: Ammunition as defined by 18 U.S.C. § 921(A)(17)(A) contains two types of explosives, a primer and propellant powder . Storage areas within UOPD Safekeeping Area are meant for personal property and are not designed for storage of any type of combustible or explosive material as required by BATF construction guidelines found in 27 CFR, Part 555(K). In an effort to protect staff and property, ammunition may not be stored in at the UOPD Safekeeping Area.

Matches or lighters: These items are specifically listed because they are frequently found. These items have characteristics of ignitability as defined by 40 CFR § 261.21 and are therefore a danger to staff should any reaction take place that would ignite these devices and other combustible material.

All food items and perishable, biodegradable or vegetative substances including medical and recreational marijuana: The United States Food and Drug Administration guidelines for food storage found in 21 U.S.C. § 110 set forth a requirement that storage of food shall be under conditions that will protect against physical, chemical, and microbial contamination as well as deterioration. If food is improperly stored, mold will develop and it may cause a health hazard. The UOPD Safekeeping Area is for the storage of personal property and is not equipped to properly store any of these items. In an effort to protect staff, inmates and property from contamination by mold or other foodborne illness, food or other perishable items may not be stored in the UOPD Safekeeping Area. Additionally storing food that is later consumed when released to an arrestee may result in serious foodborne illness. No food or perishable items may be stored in the UOPD Safekeeping Area   Perishable, biodegradable, and vegetative substances, including but not limited to medical and recreational marijuana, have the potential to grow bacteria and expose staff to foodborne illnesses. Accordingly, all food items and perishable, biodegradable or vegetative substances, including but not limited to medical and recreational marijuana, will be disposed of in appropriate trash receptacles or pursuant to other applicable departmental procedures.

Beverage containers, alcohol containers, containers under pressure and their contents: The property storage areas are both inside and outside the correctional facility are subject to rapid daily temperature changes depending on the time of year and the weather conditions. Rapid changes in temperature may cause carbonated beverage containers and other pressurized containers to explode. Because it is hard to discern carbonated from non-carbonated beverages, all liquids will be treated as if they are carbonated. In an effort to protect an arrestee's property, as well as other adjacent property, beverages or any other pressurized containers may not be lodged in the UOPD Safekeeping Area.

Propellants: Due to their unstable or perishable characteristics, propellants, including but not limited to e-cigarettes, are not approved for storage in the UOPD Safekeeping Area and should be disposed of in a safe and responsible manner.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000450

**Exhibit 1**
**Page 440 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Custody Searches*

Hazardous Materials, chemicals, or clothing or property that has been contaminated by dangerous chemicals, or other hazardous bio-contaminant: The United States Environmental Protection Agency classifies hazardous waste under 40 C.F.R. § 261. Materials classified as "potentially harmful" due to having characteristics of ignitability corrosively, reactivity or toxicity are dangerous. No material that has any of these characteristics may be stored within any correctional facility. In an effort to protect staff, inmates and property, any substance with properties that make it dangerous or potentially harmful to human health or the environment may not be lodged within the UOPD Safekeeping Area. Officers should contact UO Environmental Health and Safety for assistance in disposal.

Live animals, plants or other organisms: the UOPD Safekeeping Area is for personal property and is not equipped to properly store any live animals, plants, or other organisms. Such items cannot be cared for and are dangerous or potentially harmful to human health. UOPD Officers will attempt to place any live animals in the care of animal shelter for their safekeeping.

If property cannot be stored at UOPD Safekeeping Areas or at the correctional facility due to content, quantity of items exceeding storage space, or if doing so would place an unreasonable burden upon the storage facility, UOPD officers will dispose of the items in a safe and responsible manner. If possible, prior to any items disposal, officers will notify the arrestee of the pending disposal of their property.

Any items stored in safekeeping that display obvious evidence of spoilage or molding after the initial intake will be inspected and a secondary inventory completed by the evidence technician. If it is determined that there is facility safety danger consisting of explosive devices, bomb paraphernalia, gas canisters, blood or other bio hazards, medical sharps, food or other organic material that will spoil, the evidence technician will dispose of the items in a safe and responsible manner. If possible, prior to any items disposal, the evidence technician will notify the arrestee of the pending disposal of their property.

### 900.4.4   RECEIPT FOR PROPERTY OR MONEY
The officer or other member charged with such inventories shall ensure that the individual receives a receipt for any money or other property received and should have the individual countersign both the original and duplicate receipt. Members will otherwise comply with ORS 133.455 if the individual is unable to sign.

### 900.4.5   VERIFICATION OF MONEY
All money shall be counted in front of the individual from whom it was received. When possible, the individual shall initial the dollar amount on the inventory. Additionally, all money should be placed in a separate envelope and sealed. Negotiable checks or other instruments and foreign currency should also be sealed in an envelope with the amount indicated but not added to the cash total. All envelopes should clearly indicate the contents on the front. The department member sealing it should place his/her initials across the sealed flap. Should any money be withdrawn or added, the member making such change shall enter the amount below the original entry and initial

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000451

**Exhibit 1**
**Page 441 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Custody Searches*

it. The amount of money in the envelope should always be totaled and written on the outside of the envelope.

**900.4.6  CONCEALED HANDGUN LICENSE SEIZURE**
When an arrestee is cited in lieu of custody or taken into custody on any charge, the Oregon Concealed Handgun License (CHL) should be seized by the arresting officer and returned to the CHL desk at the Lane County Sheriff's Office.

Out of state CHL's should not be seized. Correctional facility deputies/officers can photocopy the CHL and send it to the CHL desk at the Lane County Sheriff's Office, which will notify the appropriate authorities.

**900.5  STRIP SEARCHES**
No individual in temporary custody at any University of Oregon Police Department facility shall be subjected to a strip search unless there is reasonable suspicion based upon specific and articulable facts to believe the individual has a health condition requiring immediate medical attention or is concealing a weapon or contraband. Factors to be considered in determining reasonable suspicion include, but are not limited to:

(a)   The detection of an object during a custody search that may be a weapon or contraband and cannot be safely retrieved without a strip search.

(b)   Circumstances of a current arrest that specifically indicate the individual may be concealing a weapon or contraband.

1.   A felony arrest charge or being under the influence of a controlled substance should not suffice as reasonable suspicion absent other facts.

(c)   Custody history (e.g., past possession of contraband while in custody, assaults on department members, escape attempts).

(d)   The individual's actions or demeanor.

(e)   Criminal history (i.e., level of experience in a custody setting).

No transgender or intersex individual shall be searched or examined for the sole purpose of determining the individual's genital status. If the individual's genital status is unknown, it may be determined during conversations with the person, by reviewing medical records, or as a result of a broader medical examination conducted in private by a medical practitioner (28 CFR 115.115).

**900.5.1  STRIP SEARCH PROCEDURES**
Strip searches at University of Oregon Police Department facilities shall be conducted as follows (28 CFR 115.115):

(a)   Written authorization from the Watch Commander shall be obtained prior to the strip search.

(b)   All members involved with the strip search shall be of the same sex as the individual being searched, unless the search is conducted by a medical practitioner.

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000452

**Exhibit 1**
**Page 442 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Custody Searches*

(c) All strip searches shall be conducted in a professional manner under sanitary conditions and in a secure area of privacy so that it cannot be observed by those not participating in the search. The search shall not be reproduced through a visual or sound recording.

(d) Whenever possible, a second member of the same sex should also be present during the search, for security and as a witness to the finding of evidence.

(e) Members conducting a strip search shall not touch the breasts, buttocks or genitalia of the individual being searched.

(f) The primary member conducting the search shall prepare a written report to include:

1. The facts that led to the decision to perform a strip search.

2. The reasons less intrusive methods of searching were not used or were insufficient.

3. The written authorization for the search, obtained from the Watch Commander.

4. The name of the individual who was searched.

5. The name and sex of the members who conducted the search.

6. The name, sex and role of any person present during the search.

7. The time and date of the search.

8. The place at which the search was conducted.

9. A list of the items, if any, that were recovered.

10. The facts upon which the member based his/her belief that the individual was concealing a weapon or contraband.

(g) No member should view an individual's private underclothing, buttocks, genitalia or female breasts while that individual is showering, performing bodily functions or changing clothes, unless he/she otherwise qualifies for a strip search. However, if serious hygiene or health issues make it reasonably necessary to assist the individual with a shower or a change of clothes, a supervisor should be contacted to ensure reasonable steps are taken to obtain the individual's consent and/or otherwise protect his/her privacy and dignity.

## 900.6  TRAINING
The Captain of Administration shall ensure members have training that includes (28 CFR 115.115):

(a) Conducting searches of cross-gender individuals.

(b) Conducting searches of transgender and intersex individuals.

(c) Conducting searches in a professional and respectful manner, and in the least intrusive manner possible, consistent with security needs.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000453

**Exhibit 1
Page 443 of 550**

## University of Oregon Police Department

University of Oregon Police Department Policy Manual

# Chapter 10 - Personnel

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

Personnel - 444

UO_Alvarez000454
**Exhibit 1**
**Page 444 of 550**



**Policy
1002**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Evaluation of Employees

### 1002.1  PURPOSE AND SCOPE
The Department's employee performance evaluation system is designed to record work performance for both the Department and the employee, providing recognition for good work and developing a guide for improvement. Where collective bargaining agreements conflict with this policy, they will prevail .

### 1002.2  POLICY
The University of Oregon Police Department utilizes a performance evaluation report to measure performance and to use as a factor in making personnel decisions that relate to merit increases, promotion, reassignment, discipline, demotion and termination. The evaluation report is intended to serve as a guide for work planning and review by the supervisor and employee. It gives supervisors a way to create an objective history of work performance based on job standards.

The Department evaluates employees in a non-discriminatory manner based upon job-related factors specific to the employee's position, without regard to sex, race, color, national origin, religion, age, disability or other protected classes.

### 1002.3  EVALUATION PROCESS
Evaluation reports will cover a specific period of time and should be based on documented performance during that period. Evaluation reports will be completed by each employee's immediate supervisor. Other supervisors directly familiar with the employee's performance during the rating period should be consulted by the immediate supervisor for their input.

All sworn and non-sworn supervisory personnel shall attend an approved supervisory course that includes training on the completion of performance evaluations within one year of the supervisory appointment.

Each supervisor should discuss the tasks of the position, standards of performance expected and the evaluation criteria with each employee at the beginning of the rating period. Supervisors should document this discussion in the prescribed manner.

Assessment of an employee's job performance is an ongoing process. Continued coaching and feedback provides supervisors and employees with opportunities to correct performance issues as they arise.

Non-trial service employees demonstrating substandard performance shall be notified in writing of such performance as soon as possible in order to have an opportunity to remediate the issues. Such notification should occur at the earliest opportunity, with the goal being a minimum of 90 days written notice prior to the end of the evaluation period.

Employees who disagree with their evaluation and who desire to provide a formal response or a rebuttal may do so in writing in the prescribed format and time period.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000455

**Exhibit 1
Page 445 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Evaluation of Employees*

1002.3.1  RESERVE OFFICER EVALUATIONS
Reserve officer evaluations are covered in the Reserve Officers Policy.

**1002.4  FULL TIME TRIAL SERVICE PERSONNEL**
Non-sworn personnel are on trial service for six months before being eligible for appointment as permanent employees. An evaluation should be completed mid-term for all full-time non-sworn personnel during the trial service period.

Police Officers are on trial service for 18 months, and Public Safety Officers are on trial service for 12 months, before being eligible to be regular status employees. Trial service officers are evaluated daily, weekly and monthly during the FTEP process in the trial service period.

**1002.5  FULL-TIME PERMANENT STATUS PERSONNEL**
Permanent employees are subject to three types of performance evaluations:

**Regular** - For police officers assigned to patrol and those assignments/positions that have scheduled shift changes, an evaluation "Employee Performance Summary" shall be completed in conjunction with shift changes. These "Employee Performance Summary" forms will be combined at the end of each year to make up one formal evaluation. For those assignments that do not require a shift change and/or change in direct supervision, the evaluations shall be completed each January, or anniversary date (see applicable bargaining agreement).

**Transfer** - If an employee is transferred from one assignment to another in the middle of an evaluation period and more than 90 days have transpired since the last evaluation, then an evaluation shall be completed by the immediate supervisor before the transfer is made. No additional evaluation will be required at the end of that six-month rating period.

**Special** - A special evaluation may be completed any time the rater and the rater's supervisor feel one is necessary due to employee performance that is deemed less than standard. Generally, the special evaluation will be the tool used to demonstrate those areas of performance deemed less than standard when follow-up action is planned (work plan, remedial training, retraining, etc.). The evaluation form and the attached documentation shall be submitted as one package.

1002.5.1  RATING DEFINITIONS
The rater will use the ratings that are formally adopted by the University for Classified Employees.

**1002.6  EVALUATION INTERVIEW**
When the supervisor has completed the preliminary evaluation, arrangements shall be made for a private discussion of the evaluation with the employee. The supervisor should discuss the results of the just completed rating period and clarify any questions the employee may have. If the employee has valid and reasonable protests of any of the ratings, the supervisor may make appropriate changes to the evaluation. Areas needing improvement and goals for reaching the expected level of performance should be identified and discussed. The supervisor should also provide relevant counseling regarding advancement, specialty positions and training opportunities. The supervisor and employee will sign and date the evaluation. Permanent

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000456

**Exhibit 1**
**Page 446 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Evaluation of Employees*

employees may also write comments in the employee comments section of the performance evaluation report.

## 1002.7  EVALUATION REVIEW
After the supervisor finishes the discussion with the employee, the signed performance evaluation is forwarded through the chain of command to the rater's Division Commander or Captain. The Division Commander/Captain shall review the evaluation for fairness, impartiality, uniformity, and consistency. The Division Commander shall evaluate the supervisor on the quality of ratings given.

## 1002.8  EVALUATION DISTRIBUTION
For Officer of Administration job classifications, the original performance evaluation shall be maintained in the employee's personnel file in the office of the Chief of Police for the 3 years past the tenure of the employee's employment. A copy will be given to the employee and a copy will be forwarded to UO Office of Human Resources.

For Classified employees (represented), the original performance evaluation shall be sent to the UO Office of Human Resources.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department



**Policy**
**1004**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Promotional and Transfer Policy

## 1004.1  PURPOSE AND SCOPE
The purpose of this policy is to establish required and desirable qualifications for promotion or transfer within the ranks of the University of Oregon Police Department and the processes to be followed.

### 1004.1.1  DEFINITIONS
**Promotion** '" Advancement as a result of selection, based on a competitive process, for a permanent position identified by a separate job description and a separate and higher pay range than the position previously held.

**Transfer** '" Assignment to a different shift, work assignment or duty station. Although the duration of the assignment may vary, it generally considered to be temporary and subject to change at the discretion of the Chief of Police, or designee. The applicability of premium pay to a particular assignment based on special skills or hazardous duty does not alter the temporary nature of the assignment and does not constitute a promotion.

### 1004.1.2  SWORN NON-SUPERVISORY ASSIGNMENTS
The following positions are examples of transfers and are not considered promotions:

    (a)   Detective

    (b)   Field Training Officer

    (c)   Court Liaison Officer

Other assignments may be considered transfers and the position announcement should specify whether it is a transfer or a promotion.

## 1004.2  GENERAL REQUIREMENTS
The following considerations will be used in evaluating employees for promotion or transfer to a specialty assignment:

    (a)   Present a professional, neat appearance.

    (b)   Maintain a physical condition which aids in their performance.

    (c)   Demonstrate the following traits:

        1.   Emotional stability and maturity.

        2.   Stress tolerance

        3.   Sound judgment and decision-making.

        4.   Personal integrity and ethical conduct.

        5.   Leadership

        6.   Initiative

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000458

**Exhibit 1**
**Page 448 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Promotional and Transfer Policy*

---

7.    Adaptability and flexibility.

8.    Ability to conform to organizational goals and objectives in a positive manner.

## 1004.2.1   DESIRABLE QUALIFICATIONS
The following qualifications apply to consideration for transfer:

(a)    Years of experience

(b)    Off probation

(c)    Has shown an expressed interest in the position applied for

(d)    Education, training and demonstrated abilities in related areas; such as, enforcement activities, investigative techniques, report writing, public relations, etc.

(e)    Complete any training required by the Department of Public Safety Standards and Training or law

## 1004.3   SELECTION PROCESS FOR TRANSFERS
The following criteria will be used, however, the Chief of Police may add other criteria (for example, reviewing actual written reports) at his/her discretion:

(a)    Administrative evaluation as determined by the Chief of Police. This shall include a review of supervisor recommendations. Each supervisor who has supervised or otherwise been involved with the candidate will submit these recommendations.

(b)    The supervisor recommendations will be submitted to the Division Commander for whom the candidate will work. The Division Commander will schedule interviews with each candidate.

(c)    Based on supervisor recommendations and those of the Division Commander after the interview as well as any other criteria used, the Division Commander will submit his/her recommendation(s) to the Chief of Police.

(d)    Appointment by the Chief of Police

The policy and procedures for all positions may be waived for temporary assignments, emergency situations or for training.

## 1004.4   PROMOTIONAL SELECTION PROCESS
Specifications for promotional opportunities are on file with the UO Office of Human Resources. Promotions will be determined in accordance with the following procedures:

(a)    Administrative evaluation as determined by the Chief of Police. This shall include a review of supervisor recommendations. Each supervisor who has supervised or otherwise been involved with the candidate within the past 12 months will submit these recommendations.

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000459

**Exhibit 1**
**Page 449 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Promotional and Transfer Policy*

    (b)    The selection process may include any of the following components depending on the position being filled, the job requirements and the skills needing to be evaluated:

        1.    Written exam

        2.    Oral Board

        3.    Specific skill testing

        4.    Assessment Center

        5.    Interview with the Chief of Police

The Chief of Police will make the final selection.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department



**Policy**
**1010**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Reporting of Employee Convictions

### 1010.1  PURPOSE AND SCOPE
Convictions of certain offenses may restrict or prohibit an employee's ability to properly perform official duties; therefore, all employees shall be required to promptly notify the Department of any past and current criminal convictions.

### 1010.2  DOMESTIC VIOLENCE CONVICTIONS AND RESTRAINING ORDERS
Oregon and federal law prohibit individuals convicted of certain offenses and individuals subject to certain court orders from lawfully possessing a firearm. Such convictions and court orders often involve allegations of the use or attempted use of force or threatened use of a weapon on any individual in a domestic relationship (e.g., spouse, cohabitant, parent, child) (18 USC § 922; ORS 107.095(5); ORS 166.270).

All members are responsible for ensuring that they have not been disqualified from possessing a firearm by any such conviction or court order and shall promptly report any such conviction or court order to a supervisor, as provided in this policy.

ORS 166.270 carries specific prohibitions on the carrying of firearms or other weapons upon a felony conviction in the State of Oregon, any other state or under federal law.

ORS 107.095(5) addresses when a restraining order can lead to a violation of the firearms prohibitions of 18 USC § 922. Employees that are or have become subject to such an order shall promptly report that information to a supervisor.

### 1010.3  OTHER CRIMINAL CONVICTIONS
Oregon Administrative Rules  259-008-0010(4) prohibits any person convicted of a felony from being a peace officer in the State of Oregon. This prohibition applies regardless of whether the guilt was established by way of a verdict, guilty or nolo contendre plea.

Convictions of certain violations of the Vehicle Code and other provisions of law may also place restrictions on an employee's ability to fully perform the duties of the job.

Moreover, while legal restrictions may or may not be imposed by statute or by the courts upon conviction of any criminal offense, criminal conduct by members of this department may be inherently in conflict with law enforcement duties and the public trust.

### 1010.4  REPORTING PROCEDURE
All members of this department and all retired officers with an identification card issued by the Department shall promptly notify their immediate supervisor (or the Chief of Police in the case of retired officers) in writing of any past or current criminal arrest or conviction regardless of whether or not the matter is currently on appeal and regardless of the penalty or sentence, if any.

All members and all retired officers with an identification card issued by the Department shall further promptly notify their immediate supervisor (or the Chief of Police in the case of retired

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000461

**Exhibit 1**
**Page 451 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Reporting of Employee Convictions*

officers) in writing if the member or retiree becomes the subject of a domestic violence restraining order or similar court order.

Any member whose criminal conviction unduly restricts or prohibits that member from fully and properly performing his/her duties may be disciplined including, but not limited to being placed on administrative leave, reassignment and/or termination.

Any member failing to provide prompt written notice pursuant to this policy shall be subject to discipline.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000462

**Exhibit 1**
**Page 452 of 550**



**Policy**
**1011**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Conduct

### 1011.1  PURPOSE AND SCOPE

This policy establishes standards of conduct that are consistent with the values and mission of this department and are expected of its members. The standards contained in this policy are not intended to be an exhaustive list of requirements and prohibitions but they do identify many of the important matters concerning member conduct. Members are also subject to provisions contained throughout this manual as well as any additional guidance on conduct that may be disseminated by the Department or the member's supervisors. This policy applies to all employees (full- and part-time), reserve officers and volunteers.

An employee's off-duty conduct shall be governed by this policy to the extent that it is related to act(s) that may materially affect or arise from the employee's ability to perform official duties or to the extent that it may be indicative of unfitness for his/her position.

All employees will strive to find ways in every contact with the public to promote values as expressed in departmental standards (such as the department mission, code of ethics, stated goals and objectives, policies, directives and training).

All employees are expected to seek ways to cooperate and work with other employees, other public officials, and employees of other organizations with whom there needs to be a good working relationship in order to achieve Departmental mission, goals or objectives.

<u>**THE FOLLOWING SECTIONS CONTAIN EXAMPLES OF BEHAVIORS THAT MAY RESULT IN DISCIPLINARY ACTION.**</u>

### 1011.2  PERFORMANCE

Fail to come to the aid of another employee when a legitimate request or need is made known or should have been known.

Disparaging remarks or conduct concerning duly constituted authority to the extent that such conduct disrupts the efficiency of the Department or subverts the good order, efficiency and discipline of the Department or which would tend to discredit any member thereof. (See also Policy 1060)

Sleeping during on-duty time or assignments.

Careless workmanship resulting in spoilage or waste of materials or work of an unacceptable nature

Refusal, failure, incompetence, inefficiency or delay in performing and/or carrying out proper orders, work assignments or instructions of supervisors without a reasonable and bona fide excuse.

Concealing or attempting to conceal defective work, removing or destroying it without permission.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000463

**Exhibit 1**
**Page 453 of 550**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Conduct*

Failure to take reasonable action while on-duty and when required by law, statute, resolution or approved department practices or procedures.

Any failure or refusal of an employee to properly perform the function and duties of an assigned position.

Failure to maintain required and current licenses (e.g. driver's license) and certifications (e.g. first aid)

Establish a pattern of non-productive work time

As a police officer, solicitations, speeches or distribution of campaign literature for or against any political candidate or position while on-duty, on department property or while in any way representing him/herself as an officer of this agency, except as expressly authorized by the Chief of Police

Engaging in political activities during assigned working hours except (see UO policy regarding political activities)

Failure to check voice mail and e-mail, generally at a minimum of once/work day, and respond in a reasonable amount of time to phone messages/voice mail/e-mail (within the limits imposed by work schedule) or making other accommodations

### 1011.3  ATTENDANCE
Unnecessary or excessive absence or unavailability for work

Establishing a pattern of absenteeism

Leaving any job to which assigned during duty hours without reasonable excuse and proper permission and approval.

Unexcused or unauthorized absence or tardiness on scheduled day(s) of work.

Failure to report to work or to place of assignment at time specified and fully prepared to perform duties without reasonable excuse.

### 1011.4  DISCRIMINATION AND HARASSMENT
Discriminate against or harass (in conduct, behavior, words, gestures or decisions) any person because of age, race, color, creed, religion, sex, gender identity or gender expression (as outlined by the University of Oregon), sexual orientation, national origin, ancestry, marital status, physical or mental disability or medical condition

See also Policy 328 (Discriminatory Harassment) and Policy 402 (Bias Based Policing)

### 1011.5  UNSAFE ACTS
Commit acts or behave in such a manner that has the potential for endangering or injuring themselves, property, or another person

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000464

**Exhibit 1**
**Page 454 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Conduct*

Unauthorized or unlawful fighting, threatening or attempting to inflict unlawful bodily injury on another

Engaging in horseplay resulting in injury or property damage or the reasonable possibility thereof

## 1011.6  CONFLICT OF INTEREST

Creating conflict of interest or potential conflict of interest with the duties and obligations of their positions

Initiating any civil action for recovery of any damages or injuries incurred in the course and scope of employment without first notifying the Chief of Police of such action

## 1011.7  COURTESY

Discourteous or disrespectful treatment (in words, deeds, gestures or actions) of any member of the public or any member of this department or any other law enforcement agency

## 1011.8  HONESTY AND TRUTHFULNESS

Knowingly making false, misleading or malicious statements that harm or destroy the reputation, authority or official standing of the Department or employees

Falsifying records, making misleading entries or statements, or willful and unauthorized destruction and/or mutilation of any department record, book, paper or document

Work related dishonesty, including attempted or actual theft of department property, services or the property of others

Failure to disclose material facts or the making of any false or misleading statement on any application, examination form or other official document, report or form

False or misleading statements to a supervisor

## 1011.9  READINESS TO PERFORM DUTIES

Reporting to work, or remaining at work, when not medically, psychologically, and physically ready to assume and competently perform all assigned or assumed responsibilities, duties and tasks, and essential functions

See also Policy 1012 - Alcohol and Drug Use

## 1011.10  CONFORMANCE TO POLICIES, PROCEDURES AND RULES

Any knowing or negligent violation of the provisions of the department manual, operating procedures or other written directive

Failure of any employee to promptly and fully report activities on their own part or the part of any other employee where such activities may result in discipline under this policy

Failure to notify the Department within 24-hours of any change in residence address, home/contact phone number (may be a cell phone that is carried by the employee)

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000465

**Exhibit 1**
**Page 455 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

---

*Conduct*

---

### 1011.11   CONFORMANCE TO LAW
Violating any law of the United States, civil or criminal, including any state and local laws imposed on them as an employee, and as a citizen of this state and country

Failure of any employee to promptly and fully report activities on their own part or the part of any other employee where such activities are a violation of any criminal statute

Failure of any employee to promptly and fully report activities that have resulted in official contact by any other law enforcement agency

### 1011.12   INSUBORDINATION
Disobedience or insubordination to constituted authorities or deliberate refusal to carry out any lawful order from any supervisor or employee

Failure of any employee to communicate their belief that an order is "unlawful"

### 1011.13   UNBECOMING CONDUCT
Disparaging remarks or conduct concerning duly constituted authority to the extent that such conduct disrupts the efficiency of the Department or subverts the good order, efficiency and discipline of the Department or which would tend to discredit any member thereof (See also Policy 1060)

Engaging in on-duty sexual relations including, but not limited to sexual intercourse, excessive displays of public affection or other sexual contact

Any other on-duty or off-duty conduct which any employee knows or reasonably should know is unbecoming a member of the Department or which is contrary to good order, efficiency or morale, or which tends to reflect unfavorably upon the Department or its members

### 1011.14   ABUSE OF POSITION
Using or disclosing one's status as an employee with the Department in any way that could reasonably be perceived as an attempt to gain influence or authority for non-department business or activity

The use of any information, photograph, video or other recording obtained or accessed as a result of employment with the Department for personal or financial gain or without the expressed authorization of the Chief of Police or a designee

The capture of any photograph using a personal camera while at a crime scene or incident scene

Seeking restraining orders against individuals encountered in the line of duty without the express permission of the Chief of Police

Unwelcome solicitation of a personal or sexual relationship while on-duty or through the use of one's official capacity

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000466

**Exhibit 1**
**Page 456 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Conduct*

The wrongful or unlawful exercise of authority on the part of any employee for malicious purpose, personal gain, willful deceit or any other improper purpose

The unauthorized use of any badge, uniform, identification card or other department equipment or property for personal gain or any other improper purpose

The receipt or acceptance of a reward, fee or gift from any person for service incident to the performance of the employee's duties (lawful subpoena fees and authorized work permits excepted)

Offer or acceptance of a bribe or gratuity

Exceeding lawful peace officer powers by unreasonable, unlawful or excessive conduct

### 1011.15  ASSOCIATION
Associating with or joining a criminal gang, organized crime and/or criminal syndicate when a department member knew or reasonably should have known of the criminal nature of the organization. This includes any organization involved in a definable criminal activity or enterprise, except as specifically directed and authorized by the Department

Substantiated, active, continuing association on a personal rather than official basis with a person or persons who engage in or are continuing to engage in serious violations of state or federal laws, where the employee has or should have knowlege of such criminal activities, except where specifically directed and authorized by the Department

Except as required in the performance of official duties, or immediate relatives, develop or maintain personal or financial relationships with any individual(s) who are known or reasonably should be known are under criminal investigation, convicted felons, parolees, fugitives, or registered sex offenders.

Developing or maintaining personal or financial relationships with victims, witnesses who are known as a direct result of any official contact.

### 1011.16  USE AND CARE OF PROPERTY AND EQUIPMENT
Unauthorized possession of, loss of or damage to department property or the property of others, or endangering it through unreasonable carelessness or maliciousness

Improper use and care of any property or equipment assigned to them, used by them, or under their direct or constructive care

Loaning, selling, giving away or appropriating any department property for the personal use of the employee or any unauthorized person

Misappropriation or misuse of public funds

Using department resources in association with any portion of an independent civil action. These resources include, but are not limited to, personnel, vehicles, equipment and non-subpoenaed records

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000467

**Exhibit 1**
**Page 457 of 550**



**Policy**
**1012**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

---

# Drug- and Alcohol-Free Workplace

### 1012.1  PURPOSE AND SCOPE
The purpose of this policy is to establish clear and uniform guidelines regarding drugs and alcohol in the workplace.

### 1012.2  POLICY
It is the policy of this department to provide a drug- and alcohol-free workplace for all members.

### 1012.3  GENERAL GUIDELINES
Alcohol and drug use in the workplace or on department time can endanger the health and safety of department members and the public. Such use shall not be tolerated (41 USC § 8103).

Members who have consumed an amount of an alcoholic beverage or taken any medication, or combination thereof, that would tend to adversely affect their mental or physical abilities shall not report for duty. Affected members shall notify the Watch Commander or appropriate supervisor as soon as the member is aware that he/she will not be able to report to work. If the member is unable to make the notification, every effort should be made to have a representative contact the supervisor in a timely manner. If the member is adversely affected while on-duty, he/she shall be immediately removed and released from work (see Work Restrictions in this policy).

#### 1012.3.1  USE OF MEDICATIONS
Members should avoid taking any medications that will impair their ability to safely and completely perform their duties. Any member who is medically required or has a need to take any such medication shall report that need to his/her immediate supervisor prior to commencing any on-duty status.

No member shall be permitted to work or drive a vehicle owned or leased by the Department while taking any medication that has the potential to impair his/her abilities, without a written release from his/her physician.

Possession of medical marijuana or being under the influence of marijuana on- or off-duty is prohibited and may lead to disciplinary action.

### 1012.4  MEMBER RESPONSIBILITIES
Members shall report for work in an appropriate mental and physical condition. Members are prohibited from purchasing, manufacturing, distributing, dispensing, possessing or using controlled substances or alcohol on department premises or on department time (41 USC § 8103). The lawful possession or use of prescribed medications or over-the-counter remedies is excluded from this prohibition.

Members who are authorized to consume alcohol as part of a special assignment shall not do so to the extent of impairing on-duty performance.

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000468

**Exhibit 1**
**Page 458 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Drug- and Alcohol-Free Workplace*

Members shall notify a supervisor immediately if they observe behavior or other evidence that they believe demonstrates that a fellow member poses a risk to the health and safety of the member or others due to drug or alcohol use.

Members are required to notify their immediate supervisors of any criminal drug statute conviction for a violation occurring in the workplace no later than five days after such conviction (41 USC § 8103).

## 1012.5  EMPLOYEE ASSISTANCE PROGRAM
The University provides an employee assistance program to assist employees who wish to seek help for alcohol and drug problems. There is also available a variety of insurance coverage which provide treatment for drug and alcohol abuse. Employees may contact the UO Department of Human Resources, their insurance provider, or the Employee Assistance Program for additional information.

## 1012.6  WORK RESTRICTIONS
If a member informs a supervisor that he/she has consumed any alcohol, drug or medication that could interfere with a safe and efficient job performance, the member may be required to obtain clearance from his/her physician before continuing to work.

If the supervisor reasonably believes, based on objective facts, that a member is impaired by the consumption of alcohol or other drugs, the supervisor shall prevent the member from continuing work and shall ensure that he/she is safely transported away from the Department.

## 1012.7  REQUESTING SCREENING TESTS
A supervisor may request an employee to submit to a screening test under the following circumstances:

(a)  The supervisor reasonably believes, based upon objective facts, that the employee is under the influence of alcohol or drugs that are impairing his/her ability to perform duties safely and efficiently.

(b)  The employee discharges a firearm, other than by accident, in the performance of his/her duties.

(c)  During the performance of his/her duties, the employee drives a motor vehicle and becomes involved in an incident that results in bodily injury to him/herself or another person or substantial damage to property.

## 1012.7.1  SUPERVISOR RESPONSIBILITY
The supervisor shall prepare a written record documenting the specific facts that led to the decision to request the test, and shall inform the employee in writing of the following:

(a)  The test will be given to detect either alcohol or drugs, or both.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000469

**Exhibit 1**
**Page 459 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Drug- and Alcohol-Free Workplace*

    (b)    The result of the test is not admissible in any criminal proceeding against the employee.

    (c)    The employee may refuse the test, but refusal may result in dismissal or other disciplinary action.

1012.7.2  SCREENING TEST REFUSAL
An employee may be subject to disciplinary action if he/she:

    (a)    Fails or refuses to submit to a screening test as requested.

    (b)    After taking a screening test that indicates the presence of a controlled substance, fails to provide proof, within 72 hours after being requested, that he/she took the controlled substance as directed, pursuant to a current and lawful prescription issued in his/her name.

    (c)    Violates any provisions of this policy.

## 1012.8  COMPLIANCE WITH THE DRUG-FREE WORKPLACE ACT
No later than 30 days following notice of any drug statute conviction for a violation occurring in the workplace involving a member, the Department will take appropriate disciplinary action, up to and including dismissal, and/or requiring the member to satisfactorily participate in a drug abuse assistance or rehabilitation program (41 USC § 8104).

## 1012.9  CONFIDENTIALITY
The Department recognizes the confidentiality and privacy due to its members. Disclosure of any information relating to substance abuse treatment, except on a need-to-know basis, shall only be with the express written consent of the member involved or pursuant to lawful process.

The written results of any screening tests and all documents generated by the employee assistance program are considered confidential medical records and shall be maintained separately from the employee's other personnel files.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department



**Policy**
**1014**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Sick Leave Reporting

### 1014.1 PURPOSE AND SCOPE
Employees of this department are provided with a sick leave benefit that provides continued compensation during times of personal or family illness. The specified number of hours are detailed in each employee's bargaining unit's Collective Bargaining Agreement. Sick time may only be used when an employee is unable to work due to personal illness or a member of the employee's immediate family is ill and the employee must care for that individual.

Sick leave is not considered vacation and abuse of sick leave may result in discipline.

Family Medical Leave Act (FMLA) and Oregon Family Leave Act (OFLA) protections may apply in certain circumstances and are managed by the Office of Human Resources

### 1014.2 EMPLOYEE RESPONSIBILITIES
Sick leave may be used for absences caused by illness, injury, temporary disability (including pregnancy/maternity), or for medical, dental or vision exams or medical treatment of the employee or the employee's immediate family when it is not possible to schedule such appointments during non-working hours.

Sick leave is not considered vacation, and abuse of sick leave may result in discipline and/or denial of sick-leave benefits. Employees on sick leave shall not engage in other employment or self-employment, or participate in any sport, hobby, recreational or other activity which may impede recovery from the injury or illness.

Upon return to work, employees shall complete and submit a leave request describing the type of leave used and the specific amount of time taken.

#### 1014.2.1 NOTIFICATION
Employees are encouraged to notify the Watch Commander or appropriate supervisor as soon as they are aware that they will not be able to report to work. At a minimum, employees shall make such notification no less than one hour before the start of their scheduled shift. If an employee is unable to contact the supervisor in the case of an emergency, every effort should be made to have a representative contact the supervisor.

When the necessity for leave is foreseeable, such as an expected birth or planned medical treatment, the employee shall, whenever possible, provide the Department with no less than 30-days notice of the intent to take leave.

### 1014.3 EXTENDED ILLNESS
Employees on extended absences shall, if possible, contact their supervisor at agreed-upon intervals to provide an update on their absence and expected date of return. Employees absent from duty due to personal illness in excess of three consecutive days may be required to furnish a statement from their health care provider supporting the use of sick leave and/or the ability to return to work.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Sick Leave Reporting*

Nothing in this section precludes a supervisor, with cause, from requiring a physician's statement if three or fewer sick days are taken.

## 1014.4  SUPERVISOR RESPONSIBILITY
Supervisors should monitor sick leave usage and regularly review the attendance of employees under their command to ensure that the use of sick leave is consistent with this policy. When appropriate, supervisors should counsel employees regarding the excessive use of sick leave and should consider referring the employee to the Employee Assistance Program.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department



**Policy**
**1016**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Communicable Diseases

### 1016.1  PURPOSE AND SCOPE
This policy is intended to provide guidelines for department personnel to assist in minimizing the risk of contracting and/or spreading communicable diseases and to minimize the incidence of illness and injury. The policy will offer direction in achieving the following goals:

- To reduce exposures to blood borne pathogens (BBP) and other potentially infectious body fluids.

- To assist Department personnel in making decisions concerning the selection, use, maintenance, limitations, storage and disposal of personal protective equipment (PPE).

- To protect the privacy rights of all Department personnel who may be exposed to or contract a communicable disease during the course of their duties.

- To provide appropriate treatment and counseling should an employee be exposed to a communicable disease.

### 1016.2  PROCEDURES FOR CONTACT WITH BLOOD OR BODY FLUIDS
All department personnel who may be involved in providing emergency medical care, or who come in contact with another person's blood or body fluids (e.g., during an altercation or while attending to any injured person), shall follow these procedures and guidelines.

### 1016.2.1  EXPOSURE CONTROL OFFICER
The UOPD Exposure Control Program (ECP) is managed by UO Environmental Health and Safety (UO EH&S). The program's basic components include:

(a) The overall management of the blood borne pathogen ECP to include the applicable duties, responsibilities and/or safeguards required by 29 CFR 1910.1030 and OAR 437-002-0360.

(b) Establish written procedures and developing a training program related to aerosol-transmissible diseases.

(c) Working with management to develop and administer any additional related policies and practices necessary to support the effective implementation of this plan and remain current on all legal requirements concerning blood borne pathogens and other communicable diseases.

(d) Acting as a liaison during OSHA inspections and conducting program audits to maintain a current ECP.

(e) Work with the Lieutenant of Professional Standards and Training to maintain an up-to-date list of police personnel requiring training, developing and implementing a training

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Communicable Diseases*

program, maintaining class rosters and quizzes, and periodically reviewing the training program.

(f)    Reviewing and updating the ECP.

Department supervisors are responsible for exposure control in their respective areas. They shall work directly with the UO EH&S and the affected employees to ensure that the proper exposure control procedures are followed.

## 1016.2.2   UNIVERSAL PRECAUTIONS
All human blood and body fluids such as saliva, urine, semen, and vaginal secretions are to be treated as if they are known to be infectious. Where it is not possible to distinguish between body fluid types, all body fluids are to be assumed potentially infectious.

## 1016.2.3   PERSONAL PROTECTIVE EQUIPMENT
Personal protective equipment is the last line of defense against communicable disease. Therefore, the following equipment is provided for all personnel to assist in the protection against such exposures:

• Not less than two pair disposable latex gloves (Keeping a box in the car recommended)

• Safety glasses or goggles.

• Rescue mask with a one-way valve.

• Alcohol (or similar substance) to flush skin at emergency site. (Keeping several alcohol hand wipes in the car recommend).

The protective equipment is to be kept in each police vehicle; inspected at the start of each shift and replaced immediately upon returning to the station if used or damaged during the shift, or as otherwise needed.

## 1016.2.4   IMMUNIZATIONS
All department personnel who, in the line of duty, may be exposed to or have contact with a communicable disease shall be offered immunization, if a vaccine for the specific disease exposure is available and medically appropriate. Such preventive immunization shall be offered at no cost to the employee (ORS 433.407 and ORS 433.416).

Coordination and approval of immunizations under this policy shall be the responsibility of the UO EH&S.

## 1016.2.5   WORK PRACTICES
All personnel shall use the appropriate barrier precautions to prevent skin and mucous membrane exposure whenever contact with blood or body fluid is anticipated.

Disposable gloves shall be worn on all medical emergency responses. Disposable gloves shall be worn before making physical contact with any patient and/or when handling items (e.g., evidence, transportation vehicle) soiled with blood or other body fluids. Should one's disposable

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000474

Exhibit 1
Page 464 of 550

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Communicable Diseases*

gloves become contaminated with blood or other body fluids, the gloves shall be disposed of as contaminated waste. Care should be taken to avoid touching other items (e.g., pens, books, and personal items in general) while wearing the disposable gloves in a potentially contaminated environment.

All procedures involving blood or other potentially infectious materials shall be done in a way to minimize splashing, spraying, or otherwise generating droplets of those materials.

Eating, drinking, smoking, applying lip balm, and handling contact lenses shall be prohibited in areas where a potential for an exposure exists.

## 1016.3 DISPOSAL AND DECONTAMINATION
The following procedures will apply to the disposal and decontamination after responding to an event that involved contact with a person's blood or body fluids:

### 1016.3.1 USE OF WASTE CONTAINERS
Officers shall dispose of biohazard with the on-scene fire response vehicle, or at the attending clinic/hospital with their approval, or in an appropriately marked biohazard waste container at the station immediately upon arrival.

The biohazard waste container located at the station shall be collapsible, leak-proof, red in color or appropriately labeled with a biohazard warning and routinely emptied.

### 1016.3.2 DECONTAMINATION OF SKIN AND MUCOUS MEMBRANES
Personnel shall wash their hands immediately (on-scene if possible), or as soon as possible following the removal of potentially contaminated gloves. Antibacterial soap and warm water or an approved disinfectant shall be used to wash one's hands, paying particular attention to the fingernails.

If an employee's intact skin contacts someone else's blood or bodily fluids or other potentially infectious materials, the employee shall immediately wash the exposed part of his/her body with soap and warm water and/or an approved disinfectant, as soon as possible. If the skin becomes grossly contaminated, body washing shall be followed by an approved hospital strength disinfectant. If large areas of the employee's skin are contaminated, the employee shall shower as soon as possible, using warm water and soap and/or an approved disinfectant. Medical treatment should be obtained.

Contaminated non-intact skin (e.g., injured skin, open wound) shall be cleaned using an approved disinfectant and then dressed or bandaged as required. Medical treatment is required.

All hand, skin, and mucous membrane washing that takes place in the station shall be done in the designated cleaning or decontamination area. Cleaning shall not be done in the kitchen, bathrooms, or other locations not designated as the cleaning or decontamination area.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000475

**Exhibit 1**
**Page 465 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Communicable Diseases*

### 1016.3.3  SHARPS AND ITEMS THAT CUT OR PUNCTURE
All personnel shall avoid using or holding sharps (needles) unless needed to do so while assisting a paramedic, or collecting them for evidence. Unless required for evidentiary reasons related to evidence preservation, employees are not to recap sharps. If recapping is necessary, a one-handed method shall be employed to avoid a finger prick. Disposal, when practicable, shall be into a puncture proof biohazard container.

All sharps and items that cut or puncture (e.g., broken glass, razors, and knives) shall be treated cautiously to avoid cutting, stabbing, or puncturing one's self or any other person. In addition, if a sharp object contains known or suspected blood or other bodily fluids, that item is to be treated as a contaminated item. If the item is not evidence, touching it with the hands shall be avoided. Rather, use a device such as tongs, or a broom and a dustpan to cleanup debris. If the material must be hand held, protective gloves must be worn.

### 1016.3.4  DISPOSABLE PROTECTIVE EQUIPMENT
Contaminated disposable supplies (gloves, dressings, CPR mask) shall be transported with the patient or suspect in the ambulance or police vehicle. The waste material shall then be disposed of in a biohazard waste container at the hospital or police station. Disposable gloves are to be worn while placing the waste into the waste biohazard container, placing the gloves in with the waste when through.

### 1016.3.5  DECONTAMINATION OF PERSONAL PROTECTIVE EQUIPMENT
After using any reusable personal protective equipment, it shall be washed or disinfected and stored appropriately. If the personal protective equipment is non-reusable (e.g., disposable gloves), it shall be discarded in a biohazard waste container as described in Policy Manual § 1016.3.4.

Any personal protective equipment that becomes punctured, torn, or loses its integrity, shall be removed as soon as feasible. The employee shall wash up and replace the personal protective equipment if the job has not been terminated. If this situation resulted in a contaminated nonintact skin event, Policy Manual § 1016.3.2 shall be implemented.

Contaminated reusable personal protective equipment that must be transported prior to cleaning it shall be placed into a biohazard waste bag and transported in the ambulance, paramedic truck or police vehicle. Gloves shall be worn while handling the biohazard waste bag and during placement into the biohazard waste container, and then included in with the waste.

### 1016.3.6  DECONTAMINATION OF NON-DISPOSABLE EQUIPMENT
Contaminated non-disposable equipment (e.g., flashlight, gun, baton, clothing, portable radio) shall be decontaminated as soon as reasonably practicable. If it is to be transported, it shall be done by first placing it into a biohazard waste bag.

Grossly contaminated non-disposable equipment items shall be transported to a hospital, fire station, or police station for proper cleaning and disinfecting. Porous surfaces such as nylon bags and straps shall be brushed and scrubbed with a detergent and hot water, laundered and allowed

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000476

**Exhibit 1**
**Page 466 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Communicable Diseases*

to dry. Non-porous surfaces (e.g., plastic or metal) shall be brushed and scrubbed with detergent and hot water, sprayed with a bleach solution, rinsed, and allowed to dry. Delicate equipment (e.g., radios) should be brushed and scrubbed very carefully using a minimal amount of a type of germicide that is approved by Environmental Protection Agency (EPA) .

While cleaning equipment, pay close attention to handles, controls, portable radios, and corners (tight spots). Equipment cleaning shall not be done in the kitchen, bathrooms, or other areas not designated as the cleaning/decontamination area.

Contaminated equipment should be cleaned using an approved EPA germicide or a 1:100 solution of chlorine bleach (one-quarter-cup of bleach per one gallon of water) while wearing disposable gloves and goggles. Large particles of contaminants such as, vomit, feces, blood clots, etc. should first be removed (using a disposable towel or other means to prevent direct contact) and properly disposed of.

1016.3.7   DECONTAMINATION OF CLOTHING
Contaminated clothing such as uniforms and undergarments shall be removed as soon as feasible and rinsed in cold water to prevent the setting of bloodstains. If the clothing may be washed in soap and hot water, do so as soon as possible. If the clothing must be dry cleaned, place it into a biohazard waste bag and give it to the UO EH&S for laundering.

Contaminated leather boots shall be brushed and scrubbed with detergent and hot water. If the contaminant soaked through the boot, the boot shall be discarded.

1016.3.8   DECONTAMINATION OF VEHICLES
Contaminated vehicles and components such as the seats, radios, and doors shall be washed with soap and warm water and disinfected with an approved germicide as soon as feasible.

1016.3.9   DECONTAMINATION OF STATION AND CLEANING AREA
The UO EH&S shall designate a location at the station that will serve as the area for cleaning/ decontamination. This area is to be used to keep equipment clean and sanitary and for the employees to wash any potential contamination from their bodies. This area is to be thoroughly cleaned after each use and to be maintained in a clean and sanitary order at all times between each use. The application of cosmetics, smoking cigarettes and consuming food and drink are prohibited in this designated area at all times.

**1016.4   POST-EXPOSURE REPORTING AND FOLLOW-UP REQUIREMENTS**
In actual or suspected exposure incidents, proper documentation and follow-up action must occur to limit potential liabilities and ensure the best protection and care for the employee(s).

1016.4.1   EMPLOYEE RESPONSIBILITY TO REPORT EXPOSURE
In order to provide appropriate and timely treatment should exposure occur, all employees should verbally report the exposure to their immediate supervisor and complete a written exposure report as soon as possible following the exposure or suspected exposure. That report shall be submitted to the employee's immediate supervisor. Additionally, employees should document in

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000477

**Exhibit 1**
**Page 467 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Communicable Diseases*

the exposure report whether they would like the person who was the source of the exposure to be tested for communicable diseases.

### 1016.4.2  SUPERVISOR REQUIREMENTS
The supervisor shall investigate every exposure that occurs as soon as reasonably practicable following the incident. A determination must be made whether there is an actual exposure. If unsure, the supervisor should consult with Environmental Health and Safety (EHS) staff. If still, unclear, handle the incident as an exposure.

(a) Obtain the Boodborne Pathogens Post Exposure Packet and complete the forms within.

(b) Follow the guidelines in the "Instructions for Supervisors in Bloodborne Pathogen Exposure" provided by UO EH&S.

(c) The supervisor shall use the above information to prepare a written summary of the incident, its causes and recommendations for avoiding similar events. This report, in addition to any workers' compensation report or reports required by the University, will be provided to the UO EH&S, the consulting physician and to the UO Office of Risk Management.

The supervisor should advise the employee of the laws and regulations concerning disclosure of the identity and the infectious status of a source.

### 1016.4.3  MEDICAL CONSULTATION, EVALUATION AND TREATMENT
Any employee who received exposure or suspected exposure should be seen by a physician (or qualified health care provider) as soon as possible. The doctor (or qualified health care provider) should review the supervisor's report, the Communicable Disease Notification Report and the employee's medical records relevant to the visit and examination.

When an officer in the performance of his/her official duties sustains a substantial BBP exposure, the UO EH&S will seek to have the source person tested for HIV and Hepatitis B or C by causing the circuit court to be petitioned for an order compelling the testing. The petition must set forth the facts and circumstances of the contact and the reasons the officer and a medically trained person representing the officer, if available, believe the exposure was substantial and the testing would be appropriate. The officer should provide information sufficient to identify and locate, if possible, the alleged source (ORS 433.085(1)(2)).

If the UO EH&S is unavailable to assist the officer with the completion of the petition and with follow-up attempts to seek testing of the person who was the source of the exposure, it is the responsibility of the exposed employee's supervisor to provide such assistance.

If the testing is ordered by the court, the results shall be made available to those persons authorized under ORS 433.045(4) and to the officer, the physician designated by the officer to receive the results, the Oregon Health Authority (OHA), the subject person and any physician designated by the subject person to receive the results (ORS 433.085(4)).

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000478

**Exhibit 1**
**Page 468 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Communicable Diseases*

The health care professional should provide the ECO and/or the University's Risk Manager with a written opinion/evaluation of the exposed employee's situation. This opinion should only contain the following information:

- If an HBV is indicated for the employee.

- If the employee received an HBV.

- Confirmation that the employee received the evaluation results.

- Confirmation that the employee was informed of any medical condition resulting from the exposure incident that will require further treatment or evaluation.

- Whether communicable disease testing of the person who was the source of the exposure is warranted, and, if so, what diseases should be included in testing.

All other findings or diagnosis shall remain confidential and are not to be included in the written report.

## 1016.4.4  COUNSELING
The Department will make counseling and consultation available to the exposed employee (and his/her family if necessary).

## 1016.4.5  CONFIDENTIALITY OF REPORTS
Most of the information involved in the process must remain confidential. The UO EH&S shall ensure that all records and reports are kept in the strictest confidence.

The UO EH&S shall be responsible for maintaining records containing the employee's HBV status and the results of examinations, medical testing and follow-up procedures that took place as a result of an exposure.

The Risk Manager shall be responsible for maintaining the name and social security number of the employee and copies of any information provided to the consulting health care professional as a result of an exposure.

This information is confidential and shall not be disclosed to anyone without the employee's written consent (except as required by law). Test results from persons who may have been the source of an exposure are to be kept confidential as well.

## 1016.5  POST-EXPOSURE CONFIRMATION PROCEDURES
Members who have been exposed to or contract a disease as a result of a duty-related event shall be treated according to existing health benefits, insurance coverage, and collective bargaining provisions. (OAR 839-006-0200 and ORS 659A.112).

Members who test positive for HIV or HBV may continue working as long as they maintain acceptable performance and do not pose a safety and health threat to themselves, the public or other members of the Department.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000479

**Exhibit 1**
**Page 469 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Communicable Diseases*

    (a)   The University of Oregon Police Department shall make all decisions concerning the member's work status solely on the medical opinions and advice of the agency's health care officials.

    (b)   The University of Oregon Police Department may require a member to be examined by the department health care officials to determine if he/she is able to perform his/her duties without hazard to him/herself or others.

    (c)   All members of the University of Oregon Police Department agency shall treat employees who have contracted a communicable disease fairly, courteously and with dignity.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000480

**Exhibit 1**
**Page 470 of 550**



**Policy**
**1018**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Smoking and Tobacco Use

### 1018.1  PURPOSE AND SCOPE
This policy establishes limitations on the use of tobacco products by employees and others while on-duty or while in University of Oregon Police Department facilities or vehicles.

### 1018.2  POLICY
Department employees will adhere to the University of Oregon policy regarding tobacco use.

### 1018.3  EMPLOYEE USE
Tobacco use by employees is prohibited anytime employees are on duty.

Officers in uniform who chose to use tobacco while on their breaks from work, may not do so in public view.

Smoking and the use of other tobacco products is not permitted inside any University facility, office or vehicle.

It shall be the responsibility of each employee to ensure that no person under his/her supervision smokes or uses any tobacco product inside University facilities and vehicles or while on duty.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000481

**Exhibit 1**
**Page 471 of 550**



**Policy**
**1020**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Personnel Complaints

### 1020.1  PURPOSE AND SCOPE
The purpose of this procedure is to provide guidelines for reporting, investigation and disposition of complaints regarding the conduct of members and employees of this department.

This policy describes the safeguards that apply when an employee is under investigation concerning a matter that may lead to economic sanctions or dismissal from employment, and when that employee will be interviewed regarding the matter. The policy is meant to ensure that any disciplinary action taken against an employee only occurs with just cause.

This policy does not apply when a supervisor questions an employee in the normal course of an informal verbal admonishment or when the supervisor has other routine or unplanned contact with an employee. Nor does this policy apply to an investigation concerned solely with alleged criminal activities.

### 1020.1.1  DEFINITIONS
**Disciplinary action** - An action taken against an employee by the University of Oregon Police Department to sanction the employee, including dismissal, demotion, suspension without pay, reduction in salary, written reprimand and transfer (ORS 236.350 (1)).

**Employee** - Any paid member of the University of Oregon Police Department.

**Just cause** - A cause reasonably related to the employee's ability to perform required work. The term includes a willful violation of reasonable work rules, regulations or written policies (ORS 236.350 (2)).

**Personnel complaint** - Any allegation of misconduct or improper job performance against any department employee that, if true, would constitute a violation of department policy, federal, state or local law.

**Service complaint -** Any complaint about employee conduct which, even if true, would not qualify as a personnel complaint

### 1020.2  AVAILABILITY OF COMPLAINT FORMS AND ACCEPTANCE OF COMPLAINTS

### 1020.2.1  AVAILABILITY OF COMPLAINT FORMS
Personnel complaint forms will be maintained in a clearly visible location in the Department's public lobby. Forms may also be available at other campus sites. Electronic forms are available on line at the Department's web site.

### 1020.2.2  SOURCE OF COMPLAINTS

    (a)    A department employee who becomes aware of alleged misconduct shall immediately notify a supervisor.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000482

**Exhibit 1**
**Page 472 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Personnel Complaints*

(b)   A supervisor receiving a complaint from any source alleging misconduct of an employee should immediately document that complaint, submit it to Sergeant of Professional Standards and Training, and notify his/her immediate supervisor.

(c)   Anonymous complaints and third-party complaints should be accepted and forwarded to the Sergeant of Professional Standards and Training for investigation (to the extent that sufficient information is provided).

## 1020.2.3   ACCEPTANCE OF COMPLAINTS
A complaint may be filed in person, in writing, or by telephoning the Department. Although it is not required, every effort should be made to have the complainant appear in person. The following should be considered before taking a complaint:

(a)   Complaints shall be documented and forwarded to the Sergeant of Professional Standards and Training for classification, evaluation and assignment.

(b)   Supervisors are encouraged to try to resolve Service Complaints at the time of intake. Document the contact, explain whether the complainant is satisfied with the explanation, and forward to the Sergeant of Professional Standards and Training for evaluation and filing.

(c)   When the complainant is intoxicated or impaired to the point where his/her ability to recall and communicate facts, or understand questions, is compromised; employees shall obtain identifying information, provide the complainant with a personnel complaint form and forward documentation of the contact to the Sergeant for Professional Standards and Training.

## 1020.3   SUPERVISOR RESPONSIBILITY
In general, the primary responsibility for the investigation of a personnel complaint shall rest with the office of Professional Standards and Training and the investigation of Service Complaints will rest with the employee's immediate supervisor. The Chief of Police or authorized designee may, however, direct that another supervisor investigate. Supervisors shall be responsible for the following:

(a)   A supervisor receiving a formal complaint involving allegations of a potentially serious nature shall ensure that the Chain of Command is notified as soon as practicable via email or phone message. In cases of extreme severity of complaint, the Executive Coordinator will determine if other Command officers need to be immediately notified by phone.

(b)   A supervisor receiving or initiating any complaint shall ensure that written documentation has been completed as fully as possible, and directed to the Sergeant of Professional Standards and Training. During the intake of any complaint, the supervisor should make every reasonable effort to obtain names, addresses and telephone numbers of additional witnesses.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000483

**Exhibit 1**
**Page 473 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Personnel Complaints*

1. Photographs of any injuries alleged by the complainant, as well as visible areas of non-injury, should be taken once immediate medical attention has been provided.

(c) A supervisor dealing with an accused employee shall ensure that the procedural rights of the employee are followed.

(d) When the nature of a personnel complaint relates to sexual, racial, ethnic, or other forms of prohibited harassment or discrimination, the supervisor receiving the complaint shall promptly contact the Sergeant - Professional Standards and Training for direction regarding the investigation and/or addressing the complaint, to include contacting the Office of Affirmative Action and Equal Employment Opportunity. If the Sergeant - Professional Standards and Training is unavailable, the matter will be forwarded to the Assistant Chief or Chief, in that order.

## 1020.4 ASSIGNMENT TO ADMINISTRATIVE LEAVE
When a complaint of misconduct is of a serious nature or when the circumstances reasonably dictate an undue risk for the Department, the employee, other employees or the public, the accused employee may be reassigned or placed on administrative leave.

### 1020.4.1 ADMINISTRATIVE LEAVE
An employee placed on administrative leave may be subject to the following guidelines:

(a) The employee shall continue to receive regular pay and benefits, pending the imposition of any discipline.

(b) An employee may be required by a supervisor to relinquish any badge, department identification, assigned weapon(s) and any other department equipment.

(c) An employee may be ordered to refrain from taking any action as a department employee or in an official capacity. The employee shall be required to continue to comply with all policies and lawful orders of a supervisor.

(d) An employee may be temporarily reassigned to a different shift during the investigation. The employee may be required to remain available for contact at all times during such shift and report as ordered.

(e) Reinstated employees shall have all badges, identification cards and equipment reiussued.

## 1020.5 ALLEGATIONS OF CRIMINAL CONDUCT
When an employee of this department is accused of potential criminal conduct, a criminal investigation will be initiated apart from the administrative investigation(s). Any administrative investigation(s) will be separate from, but may parallel a criminal investigation.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000484

**Exhibit 1**
**Page 474 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Personnel Complaints*

The criminal investigation will have priority over the administrative investigation(s). It is common to delay an administrative investigation so as not to interfere with the criminal investigation. However, certain administrative actions may be taken while the administrative investigation is delayed, in order to protect the involved employee, Department, University or University community.

The Chief of Police shall be notified as soon as practical when an employee is accused of criminal conduct regardless of the form of the complaint.

In the event of serious criminal allegations, the Chief of Police may request a criminal investigation by an outside law enforcement agency.

An employee accused of criminal conduct shall retain all of the rights and privileges afforded a non-sworn. The employee may not be administratively ordered to provide any information to a criminal detective.

1020.5.1  NOTIFICATIONS
The Vice President Finance and Administration and the UO Office of the General Counsel will be notified as soon as practical when an allegation of criminal conduct is lodged against a UOPD employee.

## 1020.6  ADMINISTRATIVE INVESTIGATION OF COMPLAINT
Except as necessary to gain a general overview and sufficient facts of an incident to assess the necessity of an inquiry, or in order to obtain pertinent public safety information, an officer shall not be required to answer questions until he/she has been told of the facts and the nature of the investigation in a manner that is reasonably sufficient to inform the officer of the circumstances surrounding the allegations.

Whether conducted by a supervisor or an assigned member of the Professional Standards Unit, the following procedures and those set forth in ORS 236.360 shall be followed with regard to the accused employee(s):

(a) Unless the seriousness of an investigation requires otherwise, interviews of accused employees shall be conducted when the employee is on-duty or during the employee's normal waking hours. If the interview is conducted while the employee is off-duty, the employee shall be appropriately compensated (ORS 236.360(2)(a)).

(b) No more than two interviewers at a time may ask questions of an accused employee (ORS 236.360(2)(c)).

(c) Interviews may not last an unreasonable amount of time, taking into consideration the gravity and complexity of the matter under investigation.

(d) The employee's physical needs shall be reasonably accommodated (ORS 236.360(2)(f)).

(e) The interviewers shall inform the employee of their authority to compel a statement and of the identity of the investigators and all persons present during the interview (ORS 236.360 (2)(d)).

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Personnel Complaints*

(f)   No employee shall be subjected to offensive or threatening language, nor shall any promises, rewards or other inducements be used to obtain answers. An employee being interviewed may not be threatened with punitive action. However, during a compelled interview solely for non-criminal purposes, an employee who refuses to respond to questions or refuses to be interviewed must be informed that refusal may lead to disciplinary action (ORS 236.360 (2)(h)). Nothing administratively ordered may be provided to a criminal investigator.

(g)   When practicable, the interviewer should record all interviews of employees and witnesses. An employee may record his/her own interview. If the employee has been previously interviewed, a copy of that recorded interview, written statement or transcript (if prepared) shall be provided to the employee prior to any subsequent interview (ORS 236.360 (2)(h)).

(h)   If the allegations involve potential criminal conduct, the employee shall be advised of his/her constitutional rights. This admonishment shall be given administratively even if the employee was advised of these rights during any separate criminal investigation. Specifically, the employee must be informed of the right to consult with criminal defense counsel with respect to the criminal charge (ORS 236.360 (2)(j)).

(i)   All employees subjected to interviews that could result in punitive action may have a representative of the employee's choosing present at the interview (ORS 236.360 (2)(b)). However, in order to maintain the integrity of each individual employee's statement, involved employees shall not consult or meet with a representative or attorney collectively or in groups prior to being interviewed.

(j)   In a disciplinary or administrative investigation, the employee's chosen representative cannot be required to disclose, or be subject to disciplinary action for refusing to disclose, statements made by the employee to the representative for purposes of the representation (ORS 236.360 (2)(k)).

(k)   All employees shall provide complete and truthful responses to questions posed during interviews.

(l)   No employee may be compelled to submit to a polygraph examination nor shall any refusal to submit to such examination be mentioned in any investigation.

## 1020.6.1   ADMINISTRATIVE SEARCHES

Any employee may be compelled to disclose personal financial information pursuant to proper legal process, if such information tends to indicate a conflict of interest with official duties or if the employee is assigned to, or being considered for, a special assignment with a potential for bribes.

Employees shall have no expectation of privacy in or when using offices, desks, lockers, vehicles, telephones, computers, radios or other communications provided by the Department.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000486

**Exhibit 1**
**Page 476 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Personnel Complaints*

Assigned lockers, offices, desks, vehicles and storage spaces are the property of the employer and may be administratively searched by a supervisor for work-related purposes (e.g. obtaining a needed report or radio).

All other non-assigned areas (shared desks, common office space, shared vehicles) may be administratively searched by a supervisor for non-investigative purposes.

An investigative search of such areas shall only be conducted with the approval of the Chief of Police or authorized designee upon a reasonable suspicion that official misconduct is involved.

## 1020.6.2   STEPS PRIOR TO DISCIPLINARY ACTION
If an investigation discloses misconduct or improper job performance that was not alleged in the original complaint, the investigator shall take appropriate action with regard to any additional allegations. The employee will be notified of the additional allegations.

Disciplinary action may not be taken against any employee without just cause (ORS 236.360 (4)). The Chief of Police shall ensure the following before any disciplinary action against an employee is taken:

(a)   Notification is made to the employee in writing of the charges against the employee and the proposed disciplinary action (ORS 236.360 (5)(a)).

(b)   The employee is given an opportunity to respond to the charges at an informal hearing, which may be recorded, that is attended by the person or persons having authority to impose the proposed disciplinary action (ORS 236.360 (5)(b)).

## 1020.6.3   REOPENING AN INVESTIGATION
An investigation may be reopened if significant new evidence is discovered that is likely to affect the outcome of the investigation, provided the evidence resulted from the employee's pre-disciplinary response and could not have been discovered without resorting to extraordinary measures (ORS 236.360 (7)).

## 1020.6.4   INAPPLICABILITY OF CERTAIN SAFEGUARDS
The safeguards of an administrative investigation listed in Policy Manual § 1020.6 do not apply in the following instances (ORS 236.370):

(a)   Investigations related to acts or omissions made during a probationary period.

(b)   Where the terms of a collective bargaining agreement provide for the safeguards.

(c)   Where there are conflicting county civil service system rules.

(d)   Where there exists a county or municipal civil service system that provides certain employees with disciplinary action protections at least equivalent to those provided in this policy.

(e)   Where the investigation is of the:

1.   Chief executive officer of a law enforcement unit, as defined in ORS 181.610.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000487

**Exhibit 1**
**Page 477 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Personnel Complaints*

2. Supervisory employees, as defined under ORS 243.650, where a collective bargaining agreement is in effect.

(f) Where the employee is represented by a collective bargaining unit if the collective bargaining agreement provides for procedures and safeguards of the sort provided for in ORS 236.350 to 236.370.

## 1020.7  DISPOSITION OF PERSONNEL COMPLAINTS
Each allegation shall be adjudicated with one of the following:

**Unfounded** - When the investigation discloses that the alleged act(s) did not occur or did not involve department personnel. Complaints that are determined to be frivolous will fall within the adjudication of unfounded.

**Exonerated** - When the investigation discloses that the alleged act occurred but that the act was justified, lawful and/or proper.

**Not sustained** - When the investigation discloses that there is insufficient evidence to sustain the complaint or exonerate the employee.

**Sustained** - When the investigation discloses sufficient evidence to establish that the act occurred and that it constituted misconduct.

**Administratively Closed** - The investigation was closed prior to reaching an informed conclusion (e.g., complainant did not provide information needed, or refused to cooperate with the investigation). The investigation may be reactivated upon discovery of new, substantive information or evidence.

**Policy issue** - When everything in the complaint is determined to be accurate, including the officer's actions, but the issue appears to require a modification of policy the adjudication for the officer should be exonerated. The need for potential policy modification shall be immediately directed to the Chief of Police for action.

## 1020.8  COMPLETION OF INVESTIGATIONS
The Office of Professional Standards and Training shall ensure that investigations are completed and employees are provided notification of intended discipline no later than 6 months from the date of the first interview. The Chief of Police, or designee, may extend the investigation to a maximum of 18 months from the date of the first interview, provided that, before the extended period begins, the employer gives written notice explaining the reason for the extension to the employee and the employee's chosen representative and union representative, if any (ORS 236.360 (6)(a)).

The above time limits do not apply when (ORS 236.360 (6)(b)):

(a) The investigation involves an officer who is incapacitated or unavailable.

(b) The investigation involves an allegation of workers' compensation or disability fraud by the officer.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000488

**Exhibit 1**
**Page 478 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Personnel Complaints*

    (c)   The officer, in writing, waives the limit.

    (d)   The investigation requires a reasonable extension of time for coordination with one or more other jurisdictions.

    (e)   The investigation involves more than one officer and requires a reasonable extension of time.

    (f)   The alleged misconduct is also the subject of a criminal investigation or criminal prosecution. Time does not run for the period during which the criminal investigation or criminal prosecution is pending.

    (g)   The investigation involves a matter in civil litigation in which the officer is a named defendant or the officer's actions are alleged to be a basis for liability. Time does not run for the period during which the civil action is pending.

    (h)   The investigation is the result of a complaint by a person charged with a crime. Time does not run for the period during which the criminal matter is pending.

Upon completion of an investigation, the report should be forwarded to the involved employee's supervisor.

    (a)   The supervisor will prepare a memo to the Chief recommending adjudication of each allegation. This memo will contain a sufficient review of the facts and analysis to support the recommendation.

    (b)   The investigative file and supervisor's adjudication recommendation will be forwarded through the supervisor's Chain of Command to the Chief.

        1.   Each command officer in the chain will review the supervisor's recommendation for adjudication. If necessary or appropriate, they will prepare their own recommended adjudication of each allegation, and provide additional analysis supporting their recommendation.

Once received, the Chief of Police will formally adjudicate the allegations and prepare documentation of the decisions for the investigative file. The Chief, or designee, will notify the employee and complaining party, in writing, of the adjudication decision.

Any complaining party who is not satisfied with the findings of the Department may contact the Chief of Police to discuss the matter further.

Disciplinary action taken as a result of the investigation will be handled separately from the investigation and adjudication processes pursuant to applicable Department and University policy, and collective bargaining agreements.

## 1020.8.1  CONFIDENTIALITY OF PERSONNEL FILES
All investigations of personnel complaints shall be considered confidential peace officer personnel files, and not subject to public disclosure (ORS 192.501). The contents of such files shall not be

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

Personnel Complaints - 479

UO_Alvarez000489

**Exhibit 1
Page 479 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

## *Personnel Complaints*

revealed to other than the involved employee (redacted version) or authorized personnel, except pursuant to lawful process.

In the event that an accused employee (or the representative of such employee) knowingly makes false representations regarding any internal investigation, and such false representations are communicated to any media source, the Department may disclose sufficient information from the investigation to refute such false representations.

Disciplinary action resulting from sustained complaints shall be maintained in the employee's personnel file. Complaints, and any investigative reports shall be maintained by the Professional Standards Unit apart from the employee's personnel file.

### 1020.8.2   ANNUAL REVIEW OF PERSONNEL COMPLAINTS

During January of each year, the Captain of Administration or his/her designee shall provide to the Chief of Police an annual report of personnel complaints from the prior calendar year. The report may include complaint trends, training needs and recommended policy changes. Specific detail, including items such as officer names, case numbers and location of occurrence, is not needed for this purpose and therefore will not be part of this process. This document shall be provided to the Associate Vice President for Safety and Risk Services.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000490

**Exhibit 1**
**Page 480 of 550**



**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Seat Belts

### 1022.1  PURPOSE AND SCOPE
The use of seat belts and other safety restraints significantly reduces the chance of death or injury in case of a traffic collision. This policy establishes guidelines for seat belt and child safety seat use to assure maximum operator and passenger safety, thus minimizing the possibility of death or injury as the result of a motor vehicle crash. This policy will apply to all employees operating or riding in department vehicles.

### 1022.2  WEARING OF SAFETY RESTRAINTS
All members shall wear properly adjusted safety restraints when operating or riding in a seat equipped with restraints, in any vehicle owned, leased or rented by this department, while on- or off-duty, or in any privately owned vehicle while on-duty. The member driving such a vehicle shall ensure that all other occupants, including non-members, are also properly restrained.

Exceptions to the requirement to wear safety restraints may be made only in exceptional situations where, due to unusual circumstances, wearing a seat belt would endanger the member or the public. Members must be prepared to justify any deviation from this requirement.

#### 1022.2.1  TRANSPORTING CHILDREN
A properly installed, approved child restraint system should be used for all children of an age, height or weight for which such restraints are required by law (ORS 811.210).

Children under the age of 13 should be transported in the rear seat. In the event that the appropriate restraints are unavailable, officers should arrange for alternate transportation.

### 1022.3  TRANSPORTING PRISONERS
Whenever possible, prisoners should be secured in the prisoner restraint system in the rear seat of the patrol vehicle or, when a prisoner restraint system is not available, by seat belts. The prisoner should be in a seating position for which seat belts have been provided by the vehicle manufacturer. In unusual circumstances where it is unsafe or impractical to do so, prisoners may be transported without the use of seat belts (ORS 811.215 (6)). The prisoner restraint system is not intended to be a substitute for handcuffs or other appendage restraints.

### 1022.4  INOPERABLE SEAT BELTS
No person shall operate a department vehicle in which the seat belt in the driver's position is inoperable. No person shall be transported in a seating position in which the seat belt is inoperable.

No person shall modify, remove, deactivate or otherwise tamper with the vehicle safety belts, except for vehicle maintenance and repair staff, who shall do so only with the express authorization of the Chief of Police.

Employees who discover an inoperable restraint system shall report the defect to the appropriate supervisor. Prompt action will be taken to replace or repair the system.

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000491

**Exhibit 1**
**Page 481 of 550**



**Policy**
**1024**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Body Armor

## 1024.1  PURPOSE AND SCOPE
The purpose of this policy is to provide law enforcement officers with guidelines for the proper use of body armor.

## 1024.2  POLICY
It is the policy of the University of Oregon Police to maximize officer safety through the mandatory wearing of body armor while in patrol uniform. In addition, when in uniform performing administrative functions, all officers are required to wear body armor. While body armor provides a significant level of protection, it is not a substitute for the observance and adherence to officer safety procedures.

## 1024.3  ISSUANCE OF BODY ARMOR
The department's designated representative shall ensure that body armor is issued to all officers. Upon issue, the body armor shall meet or exceed the current safety standards established by the National Institute of Justice for ballistic vests. Body armor shall be issued when an officer begins service at the UOPD. New officers are prohibited from being in uniform until body armor is issued. Body armor will be replaced at the end of the warranty period or if it becomes compromised in any way

### 1024.3.1  USE OF SOFT BODY ARMOR
Specific details on the use of Body Armor are:

(a)  Officers shall only wear department approved and issued body armor.

(b)  Body armor shall be worn when an officer is working in uniform.

(c)  Officers working a plain clothes assignment in which they could reasonably be expected to take enforcement action are required to wear body armor.

(d)  Officers working an undercover assignment are not required to wear body armor.

(e)  Officers involved in training shall adhere to the instructors' directions regarding the use of body armor.

(f)  Any exception to this policy must be approved by the Chief.

### 1024.3.2  INSPECTIONS OF BODY ARMOR
Supervisors should ensure that body armor is worn and maintained as required by this policy through routine observation and periodic documented inspections. Annual inspections of body armor coordinated by the Quartermaster should be conducted for fit, cleanliness, signs of damage, abuse and wear.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Body Armor*

---

1024.3.3  CARE AND MAINTENANCE OF SOFT BODY ARMOR

Officers should routinely inspect their department issued body armor for signs of damage and for general cleanliness. Any observed deficiencies shall be reported to the officer's immediate supervisor. The supervisor will then notify the Executive Coordinator or immediate supervisor who will then coordinate with the manufacturer's representative for an appropriate and timely remedy. Because dirt and perspiration may erode ballistic panels, each officer shall be responsible for cleaning personal body armor in accordance with the manufacturer's instructions. Officers are responsible for the proper storage, maintenance and care of body armor in accordance with manufacturer's instructions. The standard replacement cycle for body armor will be determined by the individual manufacturer's warranty.

### 1024.4  RANGEMASTER RESPONSIBILITIES
The Executive Coordinator or his/her designee should:

(a)   Inspect officers' body armor on an annual basis for signs of damage or excessive wear. Any body armor determined to be insufficient to meet the standards of the National Institute of Justice shall be replaced in a timely manner as circumstances allow.

(b)   Provide periodic training that educates officers about the safety benefits of wearing body armor.

(c)   Annual inspections will take place in June of every year. Results to be maintained in the LEA equipment software program or its equivalent data system.

(d)   Any officer reporting outside of the watch structure will have body armor inspected by the Executive Coordinator for 2nd Watch.

### 1024.5  EXTERNAL BODY ARMOR/VESTS
Specific details on the use of external body armor/vests are:

(a)  Officers shall wear only department issued and/or authorized external body armor/vests.

(b)  Body armor panels shall always be worn while working in uniform either inside an authorized external vest or inside the standard issued soft body armor compartments.

(c)  Officers involved in training shall adhere to the instructor's directions regarding the use of body armor.

(d)  Officers shall not alter authorized/issued external vests in any way without the express written authorization of the Chief of Police.

(e)  Supervisors shall adhere to section 1024.3.2 of this policy regarding external body armor/vest inspections.

(f)  Officers shall adhere to section 1024.3.3 of this policy regarding external body armor/vest care and maintenance.

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000493

**Exhibit 1**
**Page 483 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Body Armor*

(g)  The department rangemaster or his/her designee shall ensure compliance with section 10.24 of this policy regarding external body armor/vests.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000494

**Exhibit 1**
**Page 484 of 550**



**Policy**
**1026**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Personnel Files

## 1026.1  PURPOSE AND SCOPE
This section governs the maintenance, retention and access to personnel files in accordance with established law. It is the policy of this department to maintain the confidentiality of personnel records pursuant to <u>Oregon Revised Statutes</u> 192.502 and Oregon Administrative Rules pertaining to Classified and Unclassified employees. .

## 1026.2  PERSONNEL FILES DEFINED
Personnel files shall include any file maintained under an individual officer's name relating to:

(a)   Personal data, including marital status, family members, educational and employment history, or similar information.

(b)   Medical history, including medical leave of absence forms, fitness for duty examinations, workers compensation records, medical releases and all other records which reveal an employee's past, current or anticipated future medical conditions.

(c)   Employee advancement, appraisal, or discipline.

(d)   Complaints, or investigations of complaints, concerning an event or transaction in which the officer participated, or which the officer perceived, and pertaining to the manner in which the officer performed official duties.

(e)   Any other information the disclosure of which would constitute an unwarranted invasion of personal privacy.

## 1026.3  EMPLOYEE RECORD LOCATIONS
Employee records will generally be maintained in any of the following:

**Department File** - That file which is maintained in the office of the Chief of Police as a permanent record of an employee's employment with this department.

**Division File** - Any file which is separately maintained internally by an employee's supervisor(s) within an assigned division for the purpose of completing timely performance evaluations.

**Supervisor Log Entries** - Any written comment, excluding actual performance evaluations, made by a supervisor concerning the conduct of an employee of this department.

**Training File** - Any file which documents the training records of an employee.

**Internal Affairs Files** - Those files that contain complaints of employee misconduct and all materials relating to the investigation into such allegations, regardless of disposition.

**Medical File** - That file which is maintained separately and confidentially that exclusively contains material relating to an employee's medical history.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000495

**Exhibit 1**
**Page 485 of 550**

# University of Oregon Police Department
### University of Oregon Police Department Policy Manual

*Personnel Files*

---

**1026.4  CONFIDENTIALITY OF ALL PERSONNEL FILES**
Certain information contained in personnel records is confidential and shall not be subject to disclosure except as provided by Policy Manual § 810, the provisions of the Oregon Public Records Law, or pursuant to lawful process (Oregon Revised Statutes 181.854).

**1026.5  REQUESTS FOR DISCLOSURE**
No requests for the disclosure of any information contained in any personnel record shall be considered received unless it is in written form. Since the format of such requests may be strictly governed by law with specific responses required, all such requests shall be promptly brought to the attention of the chain of command as well as the UOPD Office of Administrative Services and the UO Office of Human Resources.

Upon receipt of any such request, the responsible person shall notify the affected employee(s) as soon as practicable that such a request has been made (Oregon Revised Statutes 181.854).

The responsible person shall further ensure that an appropriate response to the request is made in a timely manner and consistent with applicable law. In many cases, this will require assistance of approved and available legal counsel.

All requests for disclosure, which result in access to an employee's personnel file(s), shall be logged in the corresponding file.

1026.5.1  RELEASE OF CONFIDENTIAL INFORMATION
Except as provided by Policy Manual 810 or pursuant to lawful process, no information contained in any peace officer personnel file shall be disclosed to any unauthorized employee or other person(s) without the expressed prior written consent of the involved officer (Oregon Revised Statutes 181.854(4)).

If an investigation of a public safety employee of this department results from a complaint, the Department may disclose to the complainant the disposition of the complaint and if necessary provide a written summary of the information obtained in the investigation (Oregon Revised Statutes 181.854(5)).

**1026.6  EMPLOYEE ACCESS TO OWN FILE**
An employee or former employee may request to review his/her personnel file. The request should be made to the Administration Supervisor. The Administration Supervisor should ensure that the employee is provided a reasonable opportunity to review their personnel file or, if requested, receive a certified copy of the records per ORS 652.750.

If an employee believes that any portion of the material is mistakenly or unlawfully placed in the employee's personnel record, the employee may submit a written request to the Chief of Police that the mistaken or unlawful material be corrected or deleted. The request must describe the corrections or deletions requested and the reasons supporting the request and provide any documentation that supports the request. The Chief of Police must respond within 30 days from the date the request is received. If the Chief of Police chooses not to make any changes, the

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000496

**Exhibit 1**
**Page 486 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Personnel Files*

Chief of Police shall ensure that a written response to the request is made. The Chief of Police shall ensure that the request and response is placed in the employee's personnel record (ORS 652.750 (7)).

## 1026.7  TYPES OF PERSONNEL FILES
Personnel files can be located in any of the following places:

### 1026.7.1  DEPARTMENT FILE
The Department file should contain, but is not limited to, the following:

(a) Performance evaluation reports regularly completed by appropriate supervisor(s) and signed by the affected employee shall be permanently maintained.

(b) Documents related to disciplinary action:

1. Disciplinary action resulting from sustained complaints or observation of misconduct shall be maintained in the individual employee's Department file at least three (3) years. If the disciplinary action results in an employee's termination from this agency, the record of that action will be maintained for ten years after the separation in accordance with Oregon Administrative Rules 166-200-0090(6) and OAR 166-150-0160(6).

2. Investigative files relating to complaints or discipline shall not be placed in the employee's Department file, but will be separately maintained for the appropriate retention period in the Internal Affairs File.

(c) All documents related to employee performance, once the employee has had the opportunity to read and initial the document.

1. No employee may place an adverse comment in the personnel records of an employee unless the employee has first read and signed the document containing the adverse comment. If an employee refuses to sign a document containing an adverse comment, the employer may place the document in the employee's personnel records with a notation that the document was presented to the employee and the employee refused to sign it ORS 652.750 (6).

2. An employee may write a response within 30 days of being presented with a document containing an adverse comment. If an employee writes a response to a document containing an adverse comment, the Administration Supervisor must ensure that the response is attached to the original document and placed in the employee's personnel records (ORS 652.750 (6)).

(d) Employee Personnel Records not related to discipline shall be retained for six years after separation (Oregon Administrative Rules 166-150-0160(7)).

(e) Commendations shall be retained in the employee's department file, with a copy provided to the involved employee(s).

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000497

**Exhibit 1**
**Page 487 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Personnel Files*

    (f)    Personnel Action Reports reflecting assignments, promotions and other changes in the employee's employment status.

    (g)    A photograph of the employee.

### 1026.7.2   DIVISION FILE
The Division File should contain, but is not limited to, the following:

    (a)    Supervisor log entries, notices to correct and other materials intended to serve as a foundation for the completion of timely Performance Evaluations.

        1.    All materials intended for this interim file shall be provided to the employee prior to being placed in the file.

        2.    Once the permanent performance evaluation form has been made final, the underlying foundational material(s) and/or duplicate copies may be purged in accordance with this policy.

    (b)    Duplicate copies of items that will also be included in the employee's department file may be placed in this interim file in anticipation of completing any upcoming performance evaluation.

All rules of confidentiality and disclosure shall apply equally to the division file.

### 1026.7.3   INTERNAL AFFAIRS FILE
The internal affairs file shall be maintained under the exclusive control of the Professional Standards Unit in conjunction with the office of the Chief of Police. Access to these files may only be approved by the Chief of Police or the supervisor of the Professional Standards Unit. These files shall contain:

    (a)    The complete investigation of all formal complaints of employee misconduct regardless of disposition

        1.    Each investigation file arising out of a formal citizen's complaint shall be maintained according to the current retention schedule requirements in OAR 166-150-0160 (6).

    (b)    Investigations which result in other than a "sustained" finding shall be maintained for the minimum statutory period, but may not be used by the Department to adversely affect an employee's career.

### 1026.7.4   TRAINING FILES
An individual training file shall be maintained by the training office or supervisor for each employee. Training files will contain records of all training and education mandated by law or the Department, including firearms qualifications and mandated annual proficiency requalification.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000498

**Exhibit 1**
**Page 488 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Personnel Files*

---

    (a)    It shall be the responsibility of the involved employee to provide the training officer or immediate supervisor with evidence of completed training/education in a timely manner.

    (b)    The training officer or supervisor shall ensure that copies of such training records are placed in the employee's training file.

## 1026.8  PURGING OF FILES

Generally, personnel files must be maintained by the Department according to corresponding state Archives Division law. Investigations resulting in disciplinary action or exoneration must be retained for two years after resolution (OAR 166-150-0135).

Unfounded investigation records and all related files not resulting in disciplinary action and having no pending litigation or other ongoing legal proceedings may be purged after being held for one year (OAR 166-150-0135).

If the investigation resulted in termination, all related files must be retained for 10 years after separation (OAR 166-150-0135).

    (a)    Each supervisor responsible for completing the employee's performance evaluation shall also determine whether any prior sustained disciplinary file should be retained beyond the required retention period for reasons other than pending litigation or other ongoing legal proceedings.

    (b)    If a supervisor determines that records of prior discipline should be retained beyond the applicable required retention period, approval for such retention shall be obtained through the chain of command from the Chief of Police.

    (c)    During the preparation of each employee's performance evaluation, all complaints and discipline should be reviewed to determine the relevancy, if any, to progressive discipline, training and career development. If, in the opinion of the Chief of Police, a complaint or disciplinary action beyond the required retention period is no longer relevant, all records of such matter may be destroyed pursuant to resolution.

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000499

**Exhibit 1**
**Page 489 of 550**



**Policy 1028**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Request for Change of Assignment

### 1028.1  PURPOSE AND SCOPE
It is the intent of the Department that all requests for change of assignment are considered equally. To facilitate the selection process, the following procedure is established whereby all such requests will be reviewed on an equal basis as assignments are made.

### 1028.2  REQUEST FOR CHANGE OF ASSIGNMENT
Personnel wishing a change of assignment are to complete a Request for Change of Assignment form. The form should then be forwarded through the chain of command to their Division Commander.

#### 1028.2.1  PURPOSE OF FORM
The form is designed to aid employees in listing their qualifications for specific assignments. All relevant experience, education and training should be included when completing this form.

All assignments an employee is interested in should be listed on the form.

The Request for Change of Assignment form will remain in effect until the end of the calendar year in which it was submitted. Effective January 1st of each year, employees still interested in new positions will need to complete and submit a new Change of Assignment Request form.

### 1028.3  SUPERVISOR'S COMMENTARY
The officer's immediate supervisor shall make appropriate comments in the space provided on the form before forwarding it to the Division Commander of the employee involved. In the case of patrol officers, the Watch Commander must comment on the request with his/her recommendation before forwarding the request to the Division Commander. If the Watch Commander does not receive the Change of Assignment Request Form, the Division Commander will initial the form and return it to the employee without consideration.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department



**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

Policy
**1029**

# Request for Outside Training

### 1029.1  PURPOSE AND SCOPE
This policy establishes guidelines for processing requests to attend training offered outside the Department's in-service training program.

### 1029.2  REQUEST TO ATTEND OUTSIDE TRAINING
Employees who wish to attend training that is offered outside the Department's in-service training program will complete a Request to Attend Training form. The form is designed to gather all of the particulars of the training (course content, instructors, certifications, pre-requisites, etc.) and costs involved (registration, travel, etc.).

Once the form is completed by the employee, it will be submitted to their Supervisor who will forward the request to the Sergeant of Professional Standards and Training along with their recommendation. The Department recognizes that there may be times where special circumstances require a more streamlined or specialized approval process. In those circumstances, supervisors are expected to confer with the Sergeant of Professional Standards and Training regarding special processing.

Training requests will be assessed based on the department's need for the training, the staffing levels during the training dates, available funding for the training, the amount of training the requesting employee(s) already had the previous year, and the applicability of the training to the employee's assigned duties.

### 1029.3  APPROVAL PROCESS
    (a)   Employees

        1.   Complete the request form and forward it to their supervisor with all pertinent information

        2.   Immediately notify their supervisor and the Sergeant of Professional Standards and Training if:

            (a)   Training is cancelled

            (b)   They are unable to attend

            (c)   Other changes that impact the department

    (b)   Supervisors

        (a)   Review and discuss the request with the employee, if necessary.

        (b)   Forward the request and attached material, along with their recommendation, to the Sergeant of Professional Standards and Training

    (c)   Lieutenant of Professional Standards and Training

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000501

**Exhibit 1**
**Page 491 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Request for Outside Training*

        (a)    Review and forward, with recommendation, to the Executive Staff and identify funding available and value to the department

        (b)    Upon approval by Executive Staff the Sergeant of Professional Standards and Training may inquire of management staff for attendance by other personnel

        (c)    Register the selected employee(s) in the class

        (d)    Advise employee(s) and their supervisor(s) of the approval and any special instructions

  (d)    Director of Administrative Services, or designee

        (a)    Confirm costs and encumber funding

        (b)    Assist with travel arrangements

        (c)    Process payment(s)

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000502

**Exhibit 1**
**Page 492 of 550**



**Policy**
**1030**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Employee Commendations

## 1030.1  PURPOSE AND SCOPE
Special recognition may be in order whenever an employee performs his/her duties in an exemplary manner. This procedure provides general guidelines for the commending of exceptional employee performance.

## 1030.2  WHO MAY MAKE COMMENDATIONS
A written commendation may be made by any supervisor regarding any other employee of the Department, provided the reporting person is superior in rank or is the person-in-charge of the individual being commended. Additionally, investigating officers may commend uniformed officers for exceptional assistance in investigative functions, with approval from the investigator's supervisor. Any employee may recommend a commendation to the supervisor of the employee subject to commendation.

## 1030.3  COMMENDABLE ACTIONS
A meritorious or commendable act by an employee of this department may include, but is not limited to, the following:

- • Superior handling of a difficult situation by an employee
- • Conspicuous bravery or outstanding performance by any employee of the Department
- • Any action or performance that is above and beyond the typical duties of an employee

### 1030.3.1  COMMENDATION INCIDENT REPORT
The Commendation Incident Report shall be used to document the commendation of the employee and shall contain the following:

(a) Employee name, division, and assignment at the date and time of the commendation

(b) A brief account of the commendable action shall be documented on the form with report numbers, as appropriate

(c) Signature of the commending supervisor

Completed reports shall be forwarded to the appropriate Division Commander for his/her review. The Division Commander shall sign and forward the report to the Chief of Police for his/her review.

The Chief of Police will return the commendation to the employee for his/her signature. The report will then be returned to the Administrative Secretary for entry into the employee's personnel file.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department



**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

Policy
**1032**

# Fitness for Duty

### 1032.1  PURPOSE AND SCOPE
The safety and well-being of employees and the citizens we serve, requires that all officers be free from any physical, emotional or mental condition which might adversely affect the exercise of peace officer powers. The purpose of this policy is to ensure that all officers of this department remain fit for duty and able to perform their job functions.

### 1032.2  EMPLOYEE RESPONSIBILITIES

(a)  It shall be the responsibility of each member of this department to maintain good physical condition sufficient to safely and properly perform the duties of their job function.

(b)  Each member of this department shall perform his/her respective duties without physical, emotional, and/or mental constraints.

(c)  During working hours, all employees are required to be alert, attentive, and capable of performing their assigned responsibilities.

(d)  Any employee who feels unable to perform his/her duties shall promptly notify a supervisor. In the event that an employee believes that another employee is unable to perform his/her duties, such observations and/or belief shall be promptly reported to a supervisor.

(e)  A certificate from a doctor or health care professional verifying that the employee is able to perform his/her essential duties in a manner that does not threaten his/her safety or the safety of others may be required, whenever the University has a good faith concern regarding an employee's ability to do so. The University also reserves the right to require employees to submit verification of the precise nature of any limitations of an employee's ability to safely perform his/her job duties, as a condition of returning the employee to work, whenever there are good faith concerns regarding an employee's limitations, consistent with applicable law.

(f)  All medical expenses incurred by the employee in complying with verification requests that are not covered by insurance will be reimbursed by the University.

### 1032.3  SUPERVISOR RESPONSIBILITIES

(a)  A supervisor observing an employee or receiving a report of an employee who is perceived to be unable to perform his/her duties shall take prompt and appropriate action in an effort to resolve the situation.

(b)  Whenever feasible, the supervisor should attempt to ascertain the reason or source of the problem and in all cases a preliminary evaluation should be made in an effort to determine the level of inability of the employee to perform his/her duties.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000504

**Exhibit 1**
**Page 494 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Fitness for Duty*

(c)    In the event the employee appears to be in need of immediate medical or psychiatric treatment, all reasonable efforts should be made to provide such care.

(d)    In conjunction with the Watch Commander or employee's available Division Commander, a determination should be made whether or not the employee should be temporarily relieved from their duties.

(e)    The Chief of Police shall be promptly notified in the event that any employee is relieved from duty.

## 1032.4  NON-WORK RELATED CONDITIONS
Any employee suffering from a non-work related condition which warrants a temporary relief from duty may be required to use sick leave or other paid time off (PTO) in order to obtain medical treatment or other reasonable rest period.

## 1032.5  WORK RELATED CONDITIONS
Any employee suffering from a work related condition which warrants a temporary relief from duty shall be required to comply with University personnel rules and guidelines for processing such claims.

Upon the recommendation of the employee's chain of command and concurrence of the Chief, any employee whose actions in an official capacity result in death or serious injury may be temporarily removed from regularly assigned duties and/or placed on paid administrative leave pending:

(a)    A preliminary determination that the employee's conduct appears to be in compliance with policy and, if appropriate,

(b)    The employee has had the opportunity to receive necessary counseling and/or psychological clearance to return to full duty.

## 1032.6  PHYSICAL AND PSYCHOLOGICAL EXAMINATIONS

(a)    Whenever circumstances reasonably indicate that an employee is unfit for duty (relative to job performance), the Chief of Police, in cooperation with appropriate University departments) may serve that employee with a written order to undergo a physical and/or psychological examination to determine the level of the employee's fitness for duty. The order shall indicate the date, time and place for the examination.

(b)    The examining physician or therapist will provide the Department with a report indicating that the employee is either fit for duty or, if not, listing any functional limitations which limit the employee's ability to perform job duties.

(c)    In order to facilitate the examination of any employee, the Department will provide all appropriate documents and available information to assist in the evaluation and/ or treatment.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Fitness for Duty*

(d)    All reports and evaluations submitted by the treating physician or therapist shall be part of the employee's confidential personnel file.

(e)    Any employee ordered to receive a fitness for duty examination shall comply with the terms of the order and cooperate fully with the examining physician or therapist regarding any clinical interview, tests administered or other procedures as directed. Any failure to comply with such an order and any failure to cooperate with the examining physician or therapist may be deemed insubordination and shall be subject to discipline up to and including termination.

(f)    Once an employee has been deemed fit for duty by the examining physician or therapist, the employee will be notified to resume his/her duties.

## 1032.7  LIMITATION ON HOURS WORKED
Absent emergency operations members should not work more than:

•    16 hours in one day (24 hour) period or

•    30 hours in any 2 day (48 hour) period or

•    84 hours in any 7 day (168 hour) period

Except in very limited circumstances members should have a minimum of 8 hours off between shifts. Supervisors should give consideration to reasonable rest periods and are authorized to deny overtime or relieve to off-duty status any member who has exceeded the above guidelines.

Limitations on the number of hours worked apply to shift changes, shift trades, rotation, holdover, training, general overtime and any other work assignments.

## 1032.8  APPEALS
An employee who is separated from paid employment or receives a reduction in salary resulting from a fitness for duty exam may be entitled to an administrative appeal governed by relevant Collective Bargaining Agreements or University personnel policies.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000506

**Exhibit 1**
**Page 496 of 550**



**Policy**
**1034**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Meal Periods and Breaks

## 1034.1  PURPOSE AND SCOPE
This policy regarding meals and breaks, insofar as possible shall conform to the policy governing all University employees that has been established by the Associate Vice President for Safety and Risk Services.

### 1034.1.1  MEAL PERIODS
Sworn employees and dispatchers shall remain on duty subject to call during meal breaks. All other employees are not on call during meal breaks unless directed otherwise by a supervisor.

Uniformed patrol and shall request clearance from Communications and Emergency Response Center prior to taking a meal period. Uniformed officers shall take their breaks on or within a 2 block radius of campus unless prior approval is obtained from the Executive Coordinator.

The time spent for the meal period shall not exceed the authorized time allowed.

### 1034.1.2  15 MINUTE BREAKS
Each employee is entitled to a 15 minute break, near the midpoint, for each four-hour work period. Only one 15 minute break shall be taken during each four hours of duty. No breaks shall be taken during the first or last hour of an employee's shift unless approved by a supervisor.

Field officers will take their breaks on campus or within a short driving distance from the campus, and will check out on the radio upon their arrival at the break location.

Officers are subject to call and shall monitor their radios.

When officers take their breaks away from their vehicles, they shall do so only with the knowledge and clearance of Communications and Emergency Response Center.

No more than two units shall be at the same location during the same time for breaks. A supervisor may be the third unit at a location.

## 1034.2  MEALS PROVIDED BY THE DEPARTMENT
Meals may be provided to officers at Department expense when:

- employees are called in for unscheduled overtime without adequate notice, or held-over

- after 3 1/2 hours of continuous assignment, and employees cannot be released from duty to obtain meals on their own within the next hour

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000507

**Exhibit 1**
**Page 497 of 550**



**Policy 1035**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Lactation Break Policy

## 1035.1  PURPOSE AND SCOPE
The purpose of this policy is to provide reasonable accommodations to employees desiring to express breast milk for the employee's infant child.

## 1035.2  POLICY
It is the policy of this department to provide reasonable break time and appropriate facilities to accommodate any employee desiring to express breast milk for her nursing child 18 months or younger in compliance with state law and the Fair Labor Standards Act (29 USC § 207 and ORS 653.077).

## 1035.3  LACTATION BREAK TIME
A rest period should be permitted each time the employee has the need to express breast milk (29 USC § 207). In general, lactation breaks that cumulatively total 30 minutes or less during any four-hour work period or major portion of a four-hour work period would be considered reasonable. However, individual circumstances may require more or less time.

Lactation breaks, if feasible, should be taken at the same time as the employee's regularly scheduled rest or meal periods.

Employees desiring to take a lactation break shall notify communications or a supervisor prior to taking such a break and such breaks may be reasonably delayed if they would seriously disrupt department operations.

Once a lactation break has been approved, the break should not be interrupted except in emergency or exigent circumstances.

## 1035.4  PRIVATE LOCATION
The Department will make reasonable efforts to provide lactating employees with the use of an appropriate room or other location to express milk in private. Such room or place should be in close proximity to the employee's work area and shall be other than a bathroom or toilet stall. The location must be shielded from view and free from intrusion from co-workers and the public (29 USC § 207).

Employees occupying such private areas shall either secure the door or otherwise make it clear that the area is occupied with a need for privacy. All other employees should avoid interrupting a lactating employee during an authorized break, except to announce an emergency or other urgent circumstance.

Authorized lactation breaks for employees assigned to the field may be taken at the nearest appropriate private area.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000508

Exhibit 1
Page 498 of 550

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Lactation Break Policy*

### 1035.5  STORAGE OF EXPRESSED MILK
Any employee storing expressed milk in any authorized refrigerated area within the department shall clearly label it as such and shall remove it when the employee ends her shift. Alternatively the Department will make reasonable provisions to provide a place for the employee to store her own cooler for the purpose of storing expressed milk.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000509

**Exhibit 1**
**Page 499 of 550**



**Policy**
**1036**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Payroll Record Procedures

### 1036.1  PURPOSE AND SCOPE
Payroll records are submitted to Administration on a monthly basis for the payment of wages.

### 1036.1.1  RESPONSIBILITY FOR COMPLETION OF PAYROLL RECORDS
Employees are responsible for the accurate and timely submission of payroll records for the payment of wages.

### 1036.1.2  TIME REQUIREMENTS
All employees are paid on a monthly basis usually on the last Friday of the month with certain exceptions such as holidays. Payroll records, along with supporting documentation, shall be completed and submitted to Administration no later than 8:00 a.m. on the established deadline published by the UOPD Office of Administration Services.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department



**Policy**
**1038**

### University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Overtime Payment Requests

### 1038.1  PURPOSE AND SCOPE
It is the policy of the Department to compensate non-exempt salaried and hourly employees who work authorized overtime either by payment of wages as agreed and in effect through the Collective Bargaining Agreement (CBA), or by the allowance of accrual of compensatory time off. In order to qualify for either, the employee must complete and submit a Request for Overtime Payment as soon as practical after overtime is worked.

### 1038.1.1  DEPARTMENT POLICY
Because of the nature of police work, and the specific needs of the Department, a degree of flexibility concerning overtime policies must be maintained.

Non-exempt employees are not authorized to volunteer work time for the Department. All requests to work overtime shall be approved in advance by a supervisor. If circumstances do not permit prior approval, then approval shall be sought as soon as practical during the overtime shift and in no case later than the end of shift in which the overtime is worked.

Short periods of work at the end of the normal duty day (e.g., less than one hour in duration) may be handled unofficially between the supervisor and the employee, at the employees request, by flexing a subsequent shift schedule to compensate for the time worked rather than by submitting requests for overtime payments. If the supervisor authorizes or directs the employee to complete a form for such a period, the employee shall comply. Overtime approval will be based upon the necessity to complete the work and availability of on-duty employees to complete the work.

Student and temporary employees are eligible for overtime only after having worked 40 hours in that calendar week .

The individual employee may request compensatory time in lieu of receiving overtime payment, however, the employee may not exceed 120 hours of compensatory time.

### 1038.2  REQUEST FOR OVERTIME COMPENSATION
Employees shall submit all overtime compensation requests to their immediate supervisors as soon as practicable for verification and forwarding to the Administration Division. Failure to submit a request for overtime compensation in a timely manner may result in discipline.

### 1038.2.1  EMPLOYEES RESPONSIBILITY
Employees shall complete the requests immediately after working the overtime and turn them in to their immediate supervisor or the Watch Commander. Call-back, time off between shifts and changes to shift hours are covered by existing Collective Bargaining Agreements.

### 1038.2.2  SUPERVISORS RESPONSIBILITY
The supervisor who verifies the overtime earned shall verify that the overtime was worked before approving the request.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000511

**Exhibit 1**
**Page 501 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Overtime Payment Requests*

After the entry has been made on the employee's time card, the overtime payment request form is forwarded to the next step in the chain of command for final approval.

**1038.3  ACCOUNTING FOR OVERTIME WORKED**

Employees are to record the actual time worked in an overtime status. In some cases, the Collective Bargaining Agreement provides that a minimum number of hours will be paid, (e.g., two hours for Court). In that case, the employee will record the actual time worked and the minimum hours to be paid. The supervisor will ensure that the record and overtime paid is accurate.

1038.3.1  ACCOUNTING FOR PORTIONS OF AN HOUR

When accounting for less than a full hour, time worked shall be reported as indicated by the following chart:

| Time Worked | Percentage Reported |
|:---:|:---:|
| 1 to 7 minutes | 0.00 hours |
| 8 to 22 minutes | 0.25 hours |
| 23 to 37 minutes | 0.50 hours |
| 38 to 52 minutes | 0.75 hours |
| 53 to 60 minutes | 1.00 hour |

1038.3.2  VARIATION IN TIME REPORTED

Where two or more employees are assigned to the same activity, case, or court trial and the amount of time for which payment is requested varies from that reported by the other officer, the Watch Commander or other approving supervisor may require each employee to include the reason for the variation as part of the overtime payment request.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

Overtime Payment Requests - 502

UO_Alvarez000512
**Exhibit 1**
**Page 502 of 550**



**Policy**
**1040**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Outside Employment

### 1040.1  PURPOSE AND SCOPE
In order to avoid actual or perceived conflicts of interest for departmental employees engaging in outside employment, all employees shall obtain written approval from the Chief of Police prior to engaging in any outside employment. Approval of outside employment shall be at the discretion of the Chief of Police in accordance with the provisions of this policy.

### 1040.1.1  DEFINITIONS
**Outside Employment** - Any member of this department who receives wages, compensation or other consideration of value from another employer, organization or individual not affiliated directly with this department for services, product(s) or benefits rendered.

- Outside Employment also includes volunteer positions with other law enforcement agencies, for example a Reserve Police Officer or Special Deputy.

- Outside Employment also includes self-employment where services, product(s) or benefits are rendered.

- Outside Employment does NOT include volunteer obligations for charities, church, service organizations, social clubs, etc., UNLESS there exists a conflict of interest.

**Outside Overtime** - duties or services on behalf of an outside organization, company, or individual within this jurisdiction that are scheduled and paid through this department as overtime so that the Department may be reimbursed for the cost of wages and benefits.

### 1040.2  OBTAINING APPROVAL
No member of this department may engage in any outside employment without first obtaining prior written approval of the Chief of Police. Failure to obtain prior written approval for outside employment or engaging in outside employment prohibited by this policy may lead to disciplinary action.

In order to obtain approval for outside employment, the employee must complete an Outside Employment Application which shall be submitted to the employee's immediate supervisor who will ensure that all of the relevant information is provided. The application will then be forwarded through the chain of command to the Chief of Police for consideration.

If approved, the employee will be notified in writing, or via email, with copies to the Chain of Command. Unless otherwise indicated, permission will be valid through the end of the calendar year in which the request is approved. Any employee seeking to renew permission shall submit a new Outside Employment Application in a timely manner.

Any employee seeking approval of outside employment, whose request has been denied, shall be provided with a written reason for the denial of the application at the time of the denial.

The documentation will be stored in the employee's personnel file.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000513

**Exhibit 1**
**Page 503 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Outside Employment*

**1040.2.1  APPEAL OF DENIAL OF OUTSIDE EMPLOYMENT**
If an employee's Outside Employment Application is denied or withdrawn by the Department, the employee may file a written notice of appeal to the Chief of Police within ten days of the date of denial.

If the employee's appeal is denied, the employee may consult with their labor representative and/or the current Collective Bargaining Agreement (CBA) regarding the filing of a grievance.

**1040.3  PROHIBITED OUTSIDE EMPLOYMENT**
The Department reserves the right to deny any request for outside employment. There are generally two categories of conflict that would be examined in order to determine whether to approve an outside employment request. They are:

- Actual or potential conflict of interest
- Actual or potential conflict of commitment

General guidelines for denial will be based on criteria similar to, but not limited to, the following:

(a)  The outside employment involves the use of the Department badge, uniform, identity, resources, prestige or influence. Employees are prohibited from using any department equipment or resources in the course of or for the benefit of any outside employment. This shall include the prohibition of access to official records or databases of this department or other agencies through the use of the employee's position with this department (for example, loss prevention at a retail outlet requires the employee to wear their UOPD uniform while working for them, or access police records)

(b)  The outside employment requires the employee to perform similar acts to their regularly assigned position with the Department (for example, a private security position would require an employee to arrest trespassers and use force under their authority which is essentially the same requirements of a UOPD officer)

(c)  The outside employment involves actions that would be in conflict with their regular duties (for example, a bouncer at a club would be expected to simply trespass a patron involved in criminal activity where the employee would be expected to make an arrest if on-duty with the Department)

(d)  The outside employment involves acts that are inconsistent with the canons of the Criminal Justice Code of Ethics, conflict with provisions of department policy, have a negative impact on the employee's reputation, or have a negative impact on the employee's credibiilty as a witness in court (for example, endorsing products that demonstrate bias or glorify violence)

(e)  The outside employment interferes with the employee's current work schedule, the Department's ability to schedule or assign work or the employee's availability for work (for example, the employment precludes the employee from being assigned to work swing shift)

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000514

**Exhibit 1**
**Page 504 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Outside Employment*

      1.    For comparison purposes, the University of Oregon standard for faculty outside work-hours commitment is one-day-in-seven, and averaging over longer time period's is allowed.

(f)    The outside employment negatively impacts the employee's job performance at the Department (for example, the employment requires so many hours per week that the employee cannot get enough rest and their performance suffers for that reason)

(g)    The employee's performance at this department is documented to be below expectations as reflected on performance evaluations.

(h)    Denial, suspension or revocation may be included as a term or condition of sustained discipline.

(i)    The outside employment requires work that the employee is unable to perform for the Department due to an injury or other condition, or interferes with the employee's ability to return to full duty (for example, an injury prevents the employee from driving a vehicle for UOPD and the outside employment requires the employee to drive a vehicle)

## 1040.4  MATERIAL CHANGES TO OUTSIDE EMPLOYMENT

If an employee terminates his or her outside employment during the period covered by permission, the employee shall promptly submit written notification of such termination to the Chief of Police through the chain of command. Any subsequent request for renewal or continued outside employment will be considered a new request and submitted as outlined in this policy.

Employees shall also promptly submit in writing to the Chief of Police any material changes in outside employment including any change in the number of hours, type of duties, or demands of any approved outside employment. Employees who are uncertain whether a change in outside employment is material should report the change.

## 1040.5  OUTSIDE EMPLOYMENT WHILE ON DISABILITY

Department members engaged in outside employment who are placed on disability leave or modified/light-duty shall inform their immediate supervisor in writing within four days whether or not they intend to continue to engage in such outside employment while on such leave or light-duty status. The Chief of Police will decide whether such outside employment should continue.

In the event the Chief of Police determines that the outside employment should be discontinued or if the employee fails to promptly notify his/her supervisor of his/her intentions regarding their outside employment, a notice of revocation of the member's permission will be forwarded to the involved employee, and a copy attached to the original permission document.

Criteria for revoking permission for outside employment include, but are not limited to, the following:

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000515

**Exhibit 1**
**Page 505 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Outside Employment*

    (a)    The outside employment is medically detrimental to the total recovery of the disabled member, as indicated by the University's professional medical advisors.

    (b)    The outside employment performed requires the same or similar physical ability, as would be required of an on-duty member.

    (c)    The employee's failure to make timely notice of their intentions to their supervisor.

When the disabled member returns to full duty with the University of Oregon Police Department, a request (in writing) may be made to the Chief of Police to restore permission for outside employment.

## 1040.6  OUTSIDE OVERTIME

Any private organization, entity or individual seeking special services for security or traffic control from members of this department must submit a written request to the Chief of Police in advance of the desired service. Such outside overtime will be assigned, monitored and paid through the Department.

    (a)    The applicant will be required to enter into an indemnification agreement prior to approval.

    (b)    The applicant will further be required to provide for the compensation and full benefits of all employees requested for such outside security services.

    (c)    Should such a request be approved, any employee working outside overtime shall be subject to the following conditions:

        1.    The officer(s) shall wear the departmental uniform/identification.

        2.    The officer(s) shall be subject to the rules and regulations of this department.

        3.    No officer may engage in such outside employment during or at the site of a strike, lockout, picket, or other physical demonstration of a labor dispute.

        4.    Compensation for such approved outside security services shall be pursuant to normal overtime procedures.

        5.    No officer may engage in outside employment as a peace officer for any other public agency without prior written authorization of the Chief of Police.

Any employee making an arrest or taking other official police action while working in an approved outside overtime assignment shall be required to complete all related reports in a timely manner pursuant to department policy. Time spent on the completion of such reports shall be considered part of the outside overtime assignment.

## 1040.6.1  SPECIAL RESTRICTIONS

Except for emergency situations or with prior authorization from the Division Commander, undercover officers or officers assigned to covert operations shall not be eligible to work overtime

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

## *Outside Employment*

or other assignments in a uniformed or other capacity which reasonably might disclose the officer's law enforcement status.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000517

**Exhibit 1**
**Page 507 of 550**



**Policy**
**1042**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# On Duty Injuries

### 1042.1  PURPOSE AND SCOPE
The purpose of this policy is to provide for the reporting the occurrence of on-duty injuries, occupational illnesses, or deaths to Risk Management, to ensure proper medical attention is received, and to ensure documentation of the circumstances of the incident.

### 1042.2  WORKER'S COMPENSATION FUND REPORTS

#### 1042.2.1  REPORTING OF INJURIES
All injuries and exposures to hazardous materials must be reported to a supervisor as soon as possible, but no later than 24 hours from the time the employee becomes aware of the injury, not including days off.

If an injury or exposure does not require treatment by a doctor or medical facility, and does not result in time loss, it shall be recorded on the "Supervisor's Report of Injury Form" at the earliest opportunity.

Injuries requiring medical treatment or resulting in time off, shall be reported to a supervisor as soon as the employee becomes aware of the injury. Supervisors will ensure a state "Report of Job Injury or Illness" form 801 is completed and signed by the employee.

Injuries requiring overnight or longer hospitalization must be reported to the UO Office of Risk Management for handling of subsequent reporting requirements (Oregon Occupational Safety and Health Administration (OR-OSHA) within 24 hours by calling 1-800-922-2689. Fatalities must be reported within eight hours (Oregon Administrative Rules 437-001-0700(21))).

#### 1042.2.2  ACCIDENT DEFINED
**Accident** - is defined as any occurrence from which bodily injury or property damage may result, regardless of whether any injury or damage actually does occur (e.g., exposure where no immediate injury is apparent).

#### 1042.2.3  EMPLOYEE'S RESPONSIBILITY
Any employee sustaining any work-related injury or illness, as well as any employee who is involved in any accident while on duty shall report such injury, illness or accident as soon as practical to his/her supervisor.

Any employee observing or learning of a potentially hazardous condition is to promptly report the condition to his/her immediate supervisor.

Any employee sustaining a work-related injury or illness that requires relief from duty is required to be examined/treated by a doctor.

Any employee sustaining a work-related injury or illness that requires relief from duty is also required to communicate with their supervisor regarding absences, as well as notify their Supervisor of any change in condition or anticipated duration of the absence.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000518

**Exhibit 1**
**Page 508 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*On Duty Injuries*

When appropriate, an employee being treated for an on-duty injury should inform the attending physician that a modified duty assignment may be available at the Department. Limited-service duty may be available for the employees whose injuries prevent resumption of regular duties.

An injured employee or employee who has suffered a work-related injury or illness shall report as soon as practical to his/her immediate supervisor the medical findings concerning the injury and the extent and duration of any work restrictions if they are known. In addition, such employees are required to promptly submit all medical releases, whether partial or full releases, to their supervisor.

## 1042.2.4  SUPERVISOR'S RESPONSIBILITY

A supervisor learning of any work-related injury, illness or accident shall promptly prepare the appropriate forms as outlined under Policy Manual § 1042.2. Updated copies of forms with instructions for completion provided by UO Office of Risk Management are kept in the Sergeant's office.

For work-related accidents, illness or injuries not requiring professional medical care, a Supervisor's Report of Injury form shall be completed in triplicate. All copies of the completed form shall be forwarded to the supervisor's Division Commander, through the chain of command.

When an accident, illness or injury is reported initially on the "Supervisor's Report of Injury" form and the employee subsequently requires professional medical care, the State of Oregon report of job injury or illness form 801 shall then be completed. The injured employee shall also sign the form in the appropriate location.

Every injured employee must be provided with a "report of job illness or injury" form 801, immediately upon request of the worker (OAR 436-060-0010 (1)).

Copies of any reports documenting the accident or injury should be forwarded to the Captain/ Director as soon as they are completed.

## 1042.2.5  DIRECTOR RESPONSIBILITY

The Captain or Division Commander receiving a report of a work-related accident or injury or injury should review the report for accuracy and determine what additional action should be taken. The report shall then be forwarded to the Chief of Police.

## 1042.2.6  CHIEF OF POLICE RESPONSIBILITY

The Chief of Police shall review and forward copies of the report to the UO Office of Human Resources. Any copies of the report and any related documents shall be filed at the UO Office of Human Resources in the employee's confidential medical file and not in the employee's personnel file (see Policy Manual 1026).

## 1042.3  INJURY OR ILLNESS NOT REQUIRING MEDICAL ATTENTION

Those injuries and illnesses not requiring medical attention shall be recorded on a Supervisor's Report of Injury form. This form shall be completed and signed by a supervisor.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000519

**Exhibit 1**
**Page 509 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*On Duty Injuries*

This form shall be signed by the affected employee, indicating that he/she desired no medical attention at the time of the report. By signing this form, the employee will not preclude his/her ability to seek medical attention later.

## 1042.4  SETTLEMENT OF INJURY CLAIMS

Occasionally, an employee's work-related injury results from the negligent or wrongful acts of another, for which the employee, the University, and/or other insurers are entitled to recover civilly. To ensure that the University's interests are protected and that the employee has the benefit of the University's experience in these matters, the following procedure is to be followed:

### 1042.4.1  EMPLOYEE TO REPORT INITIAL CONTACTS

When an employee sustains work-related injuries caused by another person and is then approached by such person or an agent, insurance company, or attorney and offered a settlement of claims, that employee shall take no action other than to make a written report of this contact to his/her supervisor as soon as possible. The supervisor will forward the written notice through the Chain of Command, as well as the UOPD Office of Administrative Services who will notify the UO Office of Risk Management.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000520

**Exhibit 1**
**Page 510 of 550**



**Policy**
**1044**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Personal Appearance Standards

### 1044.1  PURPOSE AND SCOPE
In order to project uniformity and neutrality toward the public and other members of the department, employees of this department shall maintain their personal hygiene and appearance to project a professional image appropriate for this department and for their assignment.

### 1044.2  GROOMING STANDARDS
Unless otherwise stated and because deviations from these standards could present officer safety issues, the following appearance standards shall apply to all employees, except those whose current assignment would deem them not appropriate, and where the Chief of Police has granted exception.

#### 1044.2.1  HAIR
Hairstyles of all members shall be neat in appearance.

    (a)   For uniformed male members:

        1.   Hair must not extend below the top edge of the uniform collar while assuming a normal stance.

        2.   Unconventional hairstyles such as tracks, designs, braids or dreadlocks are not permitted

    (b)   For uniformed female members:

        1.   Hair must be worn in a professional style and in a manner that does not fall below the bottom of the shirt collar

        2.   Officers who wear longer hair styles shall secure their hair in a conservative manner

        3.   No ribbons or ornaments will be worn in the hair except for neat and inconspicuous bobby pins, bands, and barrettes necessary to secure hair.

#### 1044.2.2  MUSTACHES
A short and neatly trimmed mustache may be worn. Mustaches shall not extend below the corners of the mouth or beyond the natural hairline of the upper lip.

#### 1044.2.3  SIDEBURNS
Sideburns shall not extend below the bottom of the outer ear opening (the top of the earlobes) and shall be trimmed and neat.

#### 1044.2.4  FACIAL HAIR
Facial hair other than sideburns, mustaches and eyebrows shall not be worn, unless authorized by the Chief of Police or his or her designee.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000521

**Exhibit 1**
**Page 511 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Personal Appearance Standards*

1044.2.5  FINGERNAILS
Fingernails:

(a)  Fingernails shall be clean and neatly cut at all times and not extend more than one-quarter inch beyond the fingertip.

(b)  Visible nail polish shall be clear or otherwise conservative

1044.2.6  JEWELRY AND ACCESSORIES
Eyewear:

(a)  Conservative design eyeglasses and sunglasses may be worn

(b)  Mirrored sunglasses are prohibited

Jewelry:

(a)  Uniformed Officers may wear no more than two rings per hand (wedding and engagement rings worn together are considered as one). Rings, especially those on the trigger finger(s), must not interfere with safe and proficient operation of weapons.

(b)  Uniformed Officers may wear one bracelet per arm (with the exclusion of memorial bands and medical alert bracelets) that is of conservative design and appearance, does not include charms and would not interfere with duty requirements and would create a safety risk.

(c)  Necklaces and neck chains of small diameter are permitted if they do not hold multiple or lengthy attachments, can be worn under the officers uniform and would not create a safety risk.

(d)  Female uniformed officers may wear conservative, small, matching earrings that do not extend below the earlobe. Earrings are prohibited for male officers while on duty or in uniform.

## 1044.3  TATTOOS
While on-duty or representing the Department in any official capacity, every reasonable effort should be made to conceal tattoos or other body art. At no time while on-duty or representing the Department in any official capacity, shall any offensive tattoo or body art be visible. Examples of offensive tattoos would include, but not be limited to, those which depict racial, sexual, discriminatory, gang related or obscene language.

## 1044.4  BODY PIERCING OR ALTERATION
Body piercing or alteration to any area of the body visible in any authorized uniform or attire that is a deviation from normal anatomical features and which is not medically required is prohibited except with prior authorization of the Chief of Police. Such body alteration includes, but is not limited to:

(a)  Tongue splitting or piercing.

(b)  Intentional, non-medical body modification that cannot be concealed or eliminated.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Personal Appearance Standards*

---

(c)    Any additional priecings that cannot be concealed by clothing, such as those in the tongue, lip, etc., must be removed while on duty or in uniform.

(d)    Abnormal shaping of the ears, eyes, nose or teeth.

(e)    Branding or scarification.

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000523

**Exhibit 1**
**Page 513 of 550**



**Policy**
**1046**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Uniform Regulations

## 1046.1  PURPOSE AND SCOPE
The uniform policy of the University of Oregon Police Department is established to ensure that uniformed officers will be readily identifiable to the public through the proper use and wearing of department uniforms. Employees should also refer to the following associated Policy Manual sections:

Section 700 - Department Owned and Personal Property

Section 1024 - Body Armor

Section 1044 - Grooming Standards

The Uniform and Equipment Specifications manual is maintained and periodically updated by the Chief of Police or his/her designee. That manual should be consulted regarding authorized equipment and uniform specifications.

The University of Oregon Police Department will provide uniforms for all employees required to wear them in the manner, quantity and frequency agreed upon in the respective employee group's collective bargaining agreement.

## 1046.2  WEARING AND CONDITION OF UNIFORM AND EQUIPMENT
Police employees wear the uniform to be identified as the law enforcement authority in society. The uniform also serves an equally important purpose to identify the wearer as a source of assistance in an emergency, crisis or other time of need.

(a)  Uniform and equipment shall be maintained in a serviceable condition and shall be ready at all times for immediate use. Uniforms shall be neat, clean, and appear professionally pressed.

(b)  All officers of this department shall possess and maintain at all times, a serviceable uniform and the necessary equipment to perform uniformed field duty.

(c)  Personnel shall wear only the uniform specified for their rank and assignment.

(d)  The uniform is to be worn in compliance with the specifications set forth in the department's uniform specifications that are maintained separately from this policy.

(e)  All supervisors will perform periodic inspections of their personnel to ensure conformance to these regulations.

(f)  Civilian attire shall not be worn in combination with any distinguishable part of the uniform except when the uniform is worn while in transit, an outer garment shall be worn over the uniform shirt so as not to bring attention to the employee while he/she is off duty.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000524

**Exhibit 1**
**Page 514 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

## Uniform Regulations

(g)   Uniforms are only to be worn while on duty, while in transit to or from work, for court, or at other official department functions or events.

(h)   Employees are not to purchase or drink alcoholic beverages while wearing any part of the department uniform, including the uniform pants.

(i)   Mirrored sunglasses will not be worn with any Department uniform

(j)   Visible jewelry, other than those items listed below, shall not be worn with the uniform- unless specifically authorized by the Chief of Police or his designee.

1.   Wrist watch

2.   No more than two rings per hand (wedding and engagement rings worn together are considered as one). Rings, especially those on the trigger finger(s), must not interfere with safe and proficient operation of weapons.

3.   One bracelet per arm (with the exclusion of memorial bands and medical alert bracelets) that is of conservative design and appearance, does not include charms and would not interfere with duty requirements and woudl create a safety risk.

4.   Necklaces and neckchains of small diameter are permitted if they do not hold multiple or lengthy attachments, can be worn under the officers uniform and would not create a safety risk.

5.   Female officers may wear conservative, small matching earrings that do not extend below the earlobe. Earrings are prohibited for male officers while on duty or in uniform.

### 1046.2.1   DEPARTMENT ISSUED IDENTIFICATION

The Department issues each employee an official department identification card bearing the employee's name, identifying information and photo likeness. All employees shall be in possession of their department issued identification card at all times while on duty.

(a)   Whenever on duty or acting in an official capacity representing the department, employees shall display their department issued identification in a courteous manner to any person upon request and as soon as practical.

(b)   Officers working specialized assignments may be excused from the possession and display requirements when directed by their Division Commander.

### 1046.3   UNIFORM CLASSES

See attachment: Uniform and Equipment Inventory at time of hire.pdf

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000525

Exhibit 1
Page 515 of 550

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Uniform Regulations*

1046.3.1   CLASS A UNIFORM
The Class A uniform is to be worn on special occasions such as funerals, graduations, ceremonies, or as directed. The Class A uniform is required for all sworn personnel. The Class A uniform includes the standard issue uniform with:

    (a)   Long sleeve shirt with tie

    (b)   Polished shoes

Boots with pointed toes are not permitted.

1046.3.2   CLASS B UNIFORM
All officers will possess and maintain a serviceable Class B uniform at all times.

The Class B uniform will consist of the same garments and equipment as the Class A uniform with the following exceptions:

    (a)   The long or short sleeve shirt may be worn with the collar open. No tie is required

    (b)   A black crew neck t-shirt must be worn with the uniform

    (c)   All shirt buttons must remain buttoned except for the last button at the neck

    (d)   Shoes for the Class B uniform may be as described in the Class A uniform

    (e)   Approved all black unpolished shoes may be worn

    (f)   Boots with pointed toes are not permitted

1046.3.3   CLASS C UNIFORM
The Class C uniform may be established to allow field personnel cooler clothing during the summer months or special duty. The Chief of Police will establish the regulations and conditions for wearing the Class C Uniform and the specifications for the Class C Uniform.

1046.3.4   SPECIALIZED UNIT UNIFORMS
The Chief of Police may authorize special uniforms to be worn by officers in specialized units such as Bicycle Patrol, and other specialized assignments.

1046.3.5   FOUL WEATHER GEAR
The Uniform and Equipment Specifications lists the authorized uniform jacket and rain gear.

1046.3.6   RESERVE OFFICER UNIFORM
The reserve officer's uniform will be the same as for the regular officer with the exception of the badge. All uniform policies, regulations and specifications apply equally to reserve officers.

**1046.4   INSIGNIA AND PATCHES**

    (a)   Shoulder Patches - The authorized shoulder patch supplied by the Department shall be machine stitched to the sleeves of all uniform shirts and jackets, three-quarters of

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000526

**Exhibit 1**
**Page 516 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Uniform Regulations*

        an inch below the shoulder seam of the shirt and be bisected by the crease in the sleeve.

(b)    Service stripes, stars, etc. - Service stripes and other indicators for length of service may be worn on long sleeved shirts and jackets. They are to be machine stitched onto the uniform. The bottom of the service stripe shall be sewn the width of one and one-half inches above the cuff seam with the rear of the service stripes sewn on the dress of the sleeve. The stripes are to be worn on the left sleeve only.

(c)    The regulation nameplate, or an authorized sewn on cloth nameplate, shall be worn at all times while in uniform. The nameplate shall display the employee's first and last name. If an employee's first and last names are too long to fit on the nameplate, then the initial of the first name will accompany the last name. If the employee desires other than the legal first name, the employee must receive approval from the Chief of Police. The nameplate shall be worn and placed above the right pocket located in the middle, bisected by the pressed shirt seam, with equal distance from both sides of the nameplate to the outer edge of the pocket.

(d)    When a jacket is worn, the nameplate or an authorized sewn on cloth nameplate shall be affixed to the jacket in the same manner as the uniform.

(e)    Assignment Insignias - Assignment insignias, (FTO, etc.) may be worn as designated by the Chief of Police.

(f)    Flag Pin - A flag pin may be worn, centered above the nameplate.

(g)    Badge - The department issued badge, or an authorized sewn on cloth replica, must be worn and visible at all times while in uniform.

(h)    Rank Insignia - The designated insignia indicating the employee's rank must be worn at all times while in uniform. The Chief of Police may authorize exceptions.

## 1046.4.1  MOURNING BADGE

Uniformed employees should wear a black mourning band across the uniform badge whenever a law enforcement officer is killed in the line of duty. The following mourning periods will be observed:

(a)    An officer of this department - From the time of death until midnight on the 14th day after the death.

(b)    An officer from this or an adjacent county - From the time of death until midnight on the day of the funeral.

(c)    Funeral attendee - While attending the funeral of an out of region fallen officer.

(d)    National Peace Officers Memorial Day (May 15th) - From 0001 hours until 2359 hours.

(e)    As directed by the Chief of Police.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000527

**Exhibit 1**
**Page 517 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Uniform Regulations*

### 1046.5  CIVILIAN ATTIRE
There are assignments within the Department that do not require the wearing of a uniform because recognition and authority are not essential to their function. There are also assignments in which the wearing of civilian attire is necessary.

(a)  All employees shall wear clothing that fits properly, is clean and free of stains, and not damaged or excessively worn.

(b)  All male administrative, investigative and support personnel who elect to wear civilian clothing to work shall wear button style shirts with a collar, slacks or suits that are moderate in style.

(c)  All female administrative, investigative, and support personnel who elect to wear civilian clothes to work shall wear dresses, slacks, shirts, blouses, or suits which are moderate in style.

(d)  The following items shall not be worn on duty:

1.  T-shirt alone

2.  Open toed sandals or thongs

3.  Swimsuit, tube tops, or halter-tops

4.  Spandex type pants or see-through clothing

5.  Printed slogans (except small brand named icons or names)

6.  Buttons or pins, except for those that indicate membership in job-related professional organizations or service organizations

(e)  Variations from this order are allowed at the discretion of the Chief of Police or designee when the employee's assignment or current task is not conducive to the wearing of such clothing.

(f)  No item of civilian attire may be worn on duty that would adversely affect the reputation of the University of Oregon Police Department or the morale of the employees (for example, clothing associated with illegal bias or illegal behavior).

### 1046.6  POLITICAL ACTIVITIES, ENDORSEMENTS, AND ADVERTISEMENTS
Unless specifically authorized by the Chief of Police, University of Oregon Police Department employees may not wear any part of the uniform, be photographed wearing any part of the uniform, utilize a department badge, patch or other official insignia, or cause to be posted, published, or displayed, the image of another employee, or identify himself/herself as an employee of the University of Oregon Police Department to do any of the following:

(a)  Endorse, support, oppose, or contradict any political campaign or initiative.

(b)  Endorse, support, oppose, or contradict any social issue, cause, or religion.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000528

**Exhibit 1**
**Page 518 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Uniform Regulations*

    (c)    Endorse, support, or oppose, any product, service, company or other commercial entity.

    (d)    Appear in any commercial, social, or non-profit publication; or any motion picture, film, video, public broadcast, or any website.

## 1046.7  OPTIONAL EQUIPMENT - MAINTENANCE, AND REPLACEMENT

    (a)    Any of the items listed in the Uniform and Equipment Specifications as optional shall be purchased totally at the expense of the employee. No part of the purchase cost shall be offset by the Department for the cost of providing the Department issued item.

    (b)    Maintenance of optional items shall be the financial responsibility of the purchasing employee. For example, repairs due to normal wear and tear.

    (c)    Replacement of items listed in this order as optional shall be done as follows:

        1.    When the item is no longer functional because of normal wear and tear, the employee bears the full cost of replacement.

        2.    When the item is no longer functional because of damage in the course of the employee's duties, it shall be replaced following the procedures for the replacement of damaged personal property. (Policy Manual § 700)

## 1046.8  UNAUTHORIZED UNIFORMS, EQUIPMENT AND ACCESSORIES

University of Oregon Police Department employees may not wear any uniform item, accessory or attachment unless specifically authorized in the Uniform and Equipment Specifications or by the Chief of Police or designee.

University of Oregon Police Department employees may not use or carry any safety item, tool or other piece of equipment unless specifically authorized in the Uniform and Equipment Specifications or by the Chief of Police or designee.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000529

**Exhibit 1**
**Page 519 of 550**



**Policy
1050**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Nepotism and Conflicting Relationships

## 1050.1  PURPOSE AND SCOPE
The purpose of this policy is to ensure equal opportunity and effective employment practices by avoiding actual or perceived favoritism, discrimination, or actual or potential conflicts of interest by or between members of this department. These employment practices include: recruiting, testing, hiring, compensation, assignment, promotion, use of facilities, access to training opportunities, supervision, performance appraisal, purchasing and contracting, discipline and workplace safety and security.

### 1050.1.1  DEFINITIONS
Definitions related to this policy include:

**Business Relationship** - Serving as an employee, independent contractor, compensated consultant, owner, board member, shareholder or investor in an outside business, company, partnership, corporation, venture or other transaction where the Department employee's annual interest, compensation, investment or obligation is greater than $250.

**Conflict of Interest** - Any actual, perceived or potential conflict of interest in which it reasonably appears that a department employee's action, inaction, or decisions are or could be influenced by the employee's personal or business relationship (ORS 244.020).

**Nepotism -** The practice of showing favoritism to relatives in appointment, employment, promotion or advancement by any public official in a position to influence these personnel decisions.

**Personal Relationship** €" Includes marriage, cohabitation, dating or any other intimate relationship beyond mere friendship.

**Public Official** - Any person who is serving the State of Oregon, any of its political subdivisions or any other public body as defined in ORS 174.109 as an elected official, appointed official, employee or agent, irrespective of whether the person is compensated for the services (ORS 244.020).

**Relative** - The spouse of the member, any children of the member or of the member's spouse, and brothers, sisters, half-brothers, half-sisters, brothers-in-law, sisters-in-law, sons-in-law, daughters-in-law, mothers-in-law, fathers-in-law, aunts, uncles, nieces, nephews, stepparents, stepchildren or parents of the member or of the member's spouse (ORS 244.175).

**Subordinate** - An employee who is subject to the temporary or ongoing direct or indirect authority of a supervisor.

**Supervisor** - An employee who has temporary or ongoing direct or indirect authority over the actions, decisions, evaluation and/or performance of a subordinate employee.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Nepotism and Conflicting Relationships*

## 1050.2  RESTRICTED DUTIES AND ASSIGNMENTS
The Department will not prohibit all personal or business relationships between employees. However, in order to avoid nepotism or other inappropriate conflicts, the following reasonable restrictions shall apply:

(a)  Employees are prohibited from directly supervising, occupying a position in the line of supervision or being directly supervised by any other employee who is a relative, who resides with the member or with whom they are involved in a personal or business relationship (ORS 244.179).

  1.  If circumstances require that such a supervisor/subordinate relationship exist temporarily, the supervisor shall make every reasonable effort to defer matters pertaining to the involved employee to an uninvolved supervisor.

  2.  When personnel and circumstances permit, the Department will attempt to make every reasonable effort to avoid placing employees in such supervisor/subordinate situations. The Department reserves the right to transfer or reassign any employee to another position within the same classification in order to avoid conflicts with any provision of this policy.

(b)  Employees are prohibited from participating in, contributing to, or recommending promotions, assignments, performance evaluations, transfers or other personnel decisions affecting an employee who is a relative or who resides with the member or with whom they are involved in a personal or business relationship (ORS 244.177).

(c)  Whenever possible, FTOs and other trainers will not be assigned to train relatives. FTOs and other trainers are prohibited from entering into or maintaining personal or business relationships with any employee they are assigned to train until such time as the training has been successfully completed and the employee is off probation.

(d)  To avoid actual or perceived conflicts of interest, members of this department shall refrain from developing or maintaining personal or financial relationships with victims, witnesses or other individuals during the course of, or as a direct result of, any official contact.

(e)  Except as required in the performance of official duties or, in the case of immediate relatives, employees shall not develop or maintain personal or financial relationships with any individuals they know or reasonably should know are under criminal investigation, are convicted felons, parolees, fugitives, registered sex offenders or who engage in serious violations of state or federal laws.

## 1050.2.1  EMPLOYEE RESPONSIBILITY
Prior to entering into any personal or business relationship or other circumstance which the employee knows or reasonably should know could create a conflict of interest or other violation of this policy, the employee shall promptly notify his/her uninvolved, next highest level of supervisor.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000531

Exhibit 1
Page 521 of 550

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Nepotism and Conflicting Relationships*

Whenever any employee is placed in circumstances that would require the employee to take enforcement action or provide official information or services to any relative, individual who resides with the member or individual with whom the employee is involved in a personal or business relationship, the employee shall promptly notify his/her uninvolved, immediate supervisor.

In the event that no uninvolved supervisor is immediately available, the employee shall promptly notify dispatch to have another uninvolved employee either relieve the involved employee or minimally remain present to witness the action.

### 1050.2.2  SUPERVISOR'S RESPONSIBILITY
Upon being notified of, or otherwise becoming aware of any circumstance that could result in or constitute an actual or potential violation of this policy, a supervisor shall take all reasonable steps to promptly mitigate or avoid such violations whenever possible. Supervisors shall also promptly notify the Chief of Police of such actual or potential violations, through the chain of command.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000532

**Exhibit 1**
**Page 522 of 550**



**Policy**
**1052**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Employee Involved Domestic Violence

### 1052.1  PURPOSE AND SCOPE
The purpose of this policy is to establish procedures for handling matters of domestic violence and abuse involving law enforcement employees. This policy applies to incidents involving any law enforcement employee regardless of his/her employing agency or jurisdiction.

#### 1052.1.1  POLICY
The University of Oregon Police Department has a zero tolerance policy for domestic violence whether committed by a citizen or an employee. Where incidents of domestic violence occur, the Department will act quickly to protect the victim, arrest the perpetrator and conduct appropriate criminal and/or administrative investigations.

#### 1052.1.2  DEFINITIONS
**Domestic Violence, Abuse and Family Members** - are as defined in Policy Manual § 320.11.

**Employee** - means any person employed on a full-time or part-time basis by a law enforcement agency. It also includes any unpaid volunteer with enforcement authority, such as a reserve officer.

**Law Enforcement Agency** - means any federal, state, county, or local criminal justice agency employing persons having peace officer powers granted under authority of the Oregon Revised Statutes.

**Restraining Order** - Any court order restricting or prohibiting a person's contact with another person or persons, and/or restricting where and when a person may be at a location or time. Such an order may also result in restricting possession of firearms and ammunition. This includes, but is not limited to, restraining orders and protective orders.

### 1052.2  STATUTORY REQUIREMENTS
Pursuant to the Federal Domestic Violence Gun Control Act (18 USC §§921(a) and 922(d)), any person who has been convicted of a misdemeanor domestic violence offense is prohibited from possessing any firearm or ammunition. Additionally, any person convicted of a felony is prohibited from possessing a firearm (Oregon Revised Statutes 166.270).

Oregon and Federal law also prohibit firearm possession by any individual who is the subject of a domestic violence restraining order (this federal restriction does not apply to temporary restraining orders) (18 USC § 922(d)(8)) and Oregon Revised Statutes 107.718).

#### 1052.2.1  REPORTING
Employees who are arrested for, or convicted of, any crime involving domestic violence, or who become the subject of a criminal investigation, or criminal or civil protective or restraining order related to domestic violence, regardless of jurisdiction, shall report that fact to their supervisor as required in Policy Manual §1010 at the earliest opportunity and provide notice of any scheduled court dates, times, appearances and proceedings.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000533

**Exhibit 1**
**Page 523 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Employee Involved Domestic Violence*

**1052.3  INCIDENT RESPONSE**

All department personnel shall accept, document in writing, and preserve all calls, reports, telephone and radio tapes, including those made anonymously, involving possible employee domestic violence as "on-the-record" information. The information shall be forwarded to the Watch Commander and respective employee's supervisor for appropriate investigative action.

Upon arrival at the scene of a domestic violence incident involving any department employee as the suspect or victim, the handling officer shall immediately notify Communications and Emergency Response Center and request a supervisor be sent to the scene. If there is a question about whether an incident falls under this policy a supervisor shall be requested.

1052.3.1  ON-SCENE SUPERVISOR RESPONSE

A supervisor shall, whenever possible, report to the scene of all domestic violence incidents that occur within this jurisdiction where a University of Oregon Police Department employee, or any other law enforcement agency employee, is identified as a suspect or victim, regardless of the involved individual's agency jurisdiction. All the provisions of the department Domestic Violence policy shall be followed (Policy Manual § 320).

(a)  The supervisor will ensure that a thorough investigation is conducted and all appropriate reports are forwarded to the District Attorney's Office.

(b)  Whenever a law enforcement employee domestic violence call does not result in an arrest, the on-scene supervisor shall submit a written report explaining any and all reasons why an arrest was not made or a warrant was not sought. When feasible, a sworn supervisor from this department will respond to the location of any domestic violence incident involving an employee of the University of Oregon Police Department which occurs in another jurisdiction to assist the responding agency and to take custody of any department weapon(s) or other department equipment removed from the employee's possession.

1052.3.2  ARREST OF A LAW ENFORCEMENT OFFICER

(a)  Whenever a sworn employee of the University of Oregon Police Department is arrested, the supervisor shall relieve the accused of any department issued duty weapon(s).

(b)  The investigating officer or supervisor shall also request permission to take any other firearms on scene for safekeeping.

(c)  If the arrested employee is in uniform, he/she should be allowed to change to civilian clothes prior to transport to the jail, if feasible.

(d)  The transporting officer shall ensure that corrections personnel are notified of the person's employee status to ensure the safety of the employee while he/she is in custody.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Employee Involved Domestic Violence*

    (e)    Employees who are arrested shall be placed on administrative leave pending the disposition of criminal and administrative investigations.

## 1052.3.3 FIREARMS RESTRICTIONS
Any officer who is arrested, becomes a defendant, or is the respondent of a restraining or protective order that restricts or prevents the officer from possessing firearms, will not be allowed to possess firearms on or off-duty as directed by the order. Officers will immediately ensure that all firearms are removed from their residences, department lockers and all other locations where they would have actual or constructive possession of such items.

Officers who are prohibited from possessing firearms may be placed on administrative leave or assigned to a position involving no contact with the public or access to firearms.

## 1052.4 EMPLOYEE RESPONSIBILITY

    (a)    Employees are encouraged to seek confidential assistance from department or city resources (e.g., Employee Assistance Program), or other qualified individuals or entities, to prevent a problem from escalating to the level of criminal conduct against a family or household member.

    (b)    Employees with definitive knowledge of abuse and/or violence involving fellow employees must report such information in a timely manner to their supervisor.

    (c)    If an employee becomes aware of possible witness or victim intimidation/coercion, he/she shall prepare a written report and immediately deliver it to the investigator handling the case through the proper chain of command.

    (d)    Employees may not engage in threatening, harassing, stalking, surveillance or other such behavior designed to interfere with cases against fellow employees or intimidate witnesses.

    (e)    No employee shall solicit or be afforded any privileges or special considerations.

    (f)    Employees who fail to cooperate with the investigation of a law enforcement employee domestic violence case will be subject to investigation and applicable administrative sanction and/or criminal charges.

    (g)    An employee who falsely reports that a victim of law enforcement involved domestic violence has committed a crime (such as child abuse or neglect) will be subject to applicable administrative sanction and/or criminal charges.

    (h)    An employee who becomes aware of another employee having difficulties which might lead to domestic violence should encourage him/her to get assistance.

## 1052.5 DEPARTMENT RESPONSIBILITIES

    (a)    Supervisors should be aware of on or off-duty behaviors that may be warning signs of domestic violence which may include, but are not limited to:

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Employee Involved Domestic Violence*

1. Stalking and inappropriate surveillance activities.

2. Unusually high incidences of physical altercations, injuries, or verbal disputes.

3. Alcohol and/or drug abuse.

4. Increase in controlling behaviors.

5. Citizen or fellow employee complaints of aggression.

6. Inappropriate aggression toward animals.

(b) The Department, either in response to observed warning signs or at the request of an employee and/or their family or household member, shall provide non-punitive avenues of assistance to department members, their partners, and other family members as long as there is no probable cause to believe a crime has been committed.

(c) Confidential referrals to counseling services in collaboration with existing community services that have specific expertise in domestic violence, including the department chaplain, will be made available to employees.

(d) Employees who disclose to any member of the department that they have personally engaged in domestic violence are not entitled to confidentiality within the department. The report of such criminal conduct will be treated as an admission of a crime and shall be investigated both criminally and administratively.

(e) The Lieutenant of Professional Standards and Training will make annual checks of every member's criminal history records, including but not limited to CCH, to determine if there are any entries for domestic violence arrests, convictions or restraining orders. Any such records found will be forwarded to the Chief of Police.

(f) Any Department employee convicted of a domestic violence crime or found to have committed an act of domestic violence through an internal investigation may be subject to referrals, change in assignment and/or discipline up to and including termination.

## 1052.6  TRAINING
The Department will provide training to employees regarding domestic violence and this policy and will collaborate with local and state agencies dealing with domestic violence in designing curriculum and providing training.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000536

**Exhibit 1**
**Page 526 of 550**



**Policy**
**1054**

**University of Oregon Police Department**
University of Oregon Police Department Policy Manual

# Department Badges

### 1054.1  PURPOSE AND SCOPE
The University of Oregon Police Department badge and uniform patch as well as the likeness of these items and the name of the University of Oregon Police Department are property of the Department and their use shall be restricted as set forth in this policy.

### 1054.2  POLICY
The uniform badge shall be issued to department members as a symbol of authority and the use and display of departmental badges shall be in strict compliance with this policy. Only authorized badges issued by this department shall be displayed, carried or worn by members while on duty or otherwise acting in an official or authorized capacity.

#### 1054.2.1  FLAT BADGE
Sworn supervisors and above will be issued a flat badge and case. At the discretion of the Chief of Police, officers may be issued a flat badge and case. The use of the flat badge is subject to all the same provisions of departmental policy as the uniform badge.

(a)    Should the flat badge become lost, damaged, or otherwise removed from the officer's control, he/she shall make the proper notifications as outlined in the Policy Manual 700.

(b)    An honorably retired member may keep his/her issued flat badge upon retirement.

(c)    The purchase, carrying or display of a flat badge is not authorized for non-sworn personnel.

#### 1054.2.2  NON-SWORN PERSONNEL
Badges and departmental identification cards issued to non-sworn personnel shall be clearly marked to reflect the position of the assigned employee (e.g. Parking Control, Dispatcher).

(a)    Non-sworn personnel shall not display any department badge except as a part of his/her uniform and while on duty, or otherwise acting in an official and authorized capacity.

(b)    Non-sworn personnel shall not display any department badge or represent him/herself, on or off duty, in such a manner which would cause a reasonable person to believe that he/she is a sworn peace officer.

#### 1054.2.3  RETIREE UNIFORM BADGE
Upon honorable retirement employees may purchase his/her assigned duty badge for display purposes. It is intended that the duty badge be used only as private memorabilia as other uses of the badge may be unlawful or in violation of this policy.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000537

**Exhibit 1**
**Page 527 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Department Badges*

### 1054.3   UNAUTHORIZED USE

Except as required for on-duty use by current employees, no badge designed for carry or display in a wallet, badge case or similar holder shall be issued to anyone other than a current or honorably retired peace officer.

Department badges are issued to all sworn employees and non-sworn uniformed employees for official use only. The department badge, shoulder patch or the likeness thereof, or the department name shall not be used for personal or private reasons including, but not limited to, letters, memoranda, and electronic communications such as electronic mail or web sites and web pages.

The use of the badge, uniform patch and department name for all material (printed matter, products or other items) developed for department use shall be subject to approval by the Chief of Police.

Employees shall not loan his/her department badge or identification card to others and shall not permit the badge or identification card to be reproduced or duplicated.

### 1054.4   PERMITTED USE BY EMPLOYEE GROUPS

The likeness of the department badge shall not be used without the expressed authorization of the UO Office of Brand Management.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000538

**Exhibit 1**
**Page 528 of 550**



**Policy**
**1056**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Modified Duty Assignments

### 1056.1  PURPOSE AND SCOPE
The purpose of this policy is to establish procedures for assigning employees to modified duty. Temporary modified-duty assignments may be available to employees who have incurred a duty-related illness or injury and, due to restrictions or limitations, are unable to perform their regular assigned duties. Non-duty related illnesses or injuries may also be considered for eligibility in accordance with this policy. Eligibility for modified-duty assignment is subject to the approval of the Chief of Police or his/her designee, in consultation with the UO Office of Affirmative Action and Equal Opportunity and the UO Office of Human Resources.

Modified-duty assignments are intended to provide an employee with the ability to continue working within the limits of his/her restrictions and limitations on a temporary basis while providing the Department with a productive employee during the interim period.

The Department will engage in a good faith interactive process to consider reasonable accommodations for any employee with a temporary or permanent disability.

### 1056.2  DEFINITIONS
**Modified Duty** - Means a temporary, limited-term assignment not requiring performance of the full range of duties associated with the regular job classification. Modified duty also may be termed as light-duty assignments.

### 1056.3  LIMITATIONS
Modified-duty assignments are a management prerogative and not an employee right. Modified-duty assignments shall be subject to continuous re-assessment dependent upon Department need and the employee's ability to perform in a modified-duty capacity.

An injured employee may be assigned to a modified-duty position outside of his/her normal assignment or duties if it becomes available. If the injury or illness is non-duty related the employee shall be given the option to either accept the position or continue to draw on applicable sick leave or other leave accounts as applicable.

    (a)    If an employee cannot adequately perform in a modified-duty assignment, such assignment may be modified or terminated.

    (b)    The lack of Department need or a change in priorities may result in the employee's removal from or modification of a modified-duty assignment.

    (c)    The Department may place conditions as deemed appropriate upon any modified-duty assignment.

### 1056.4  PROCEDURE
Employees may request assignment to modified duty by providing a signed statement from their health care provider describing their restrictions, limitations and expected duration to their

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000539

**Exhibit 1**
**Page 529 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Modified Duty Assignments*

Captain/Director or their designee. The statement must also indicate if the employee requires any workplace accommodations, mobility aids or medical devices.

The Captain/Director will determine what modified-duty assignments may be available based on the needs of the Department, limitations of the employee and suitability of the employee to work a particular assignment. All requests are subject to approval of the Chief of Police, in consultation with the UO Office of Affirmative Action and Equal Opportunity and the UO Office of Human Resources.

## 1056.4.1   MODIFIED-DUTY SCHEDULES
The schedules of employees assigned to modified duty may be adjusted to suit medical appointments or Department needs at the discretion of the Captain/Director.

The employee and his/her supervisors should be informed in writing of the schedule, assignment and limitations and restrictions as determined by the employee's health care provider.

## 1056.4.2   ACCOUNTABILITY
The employee's supervisors shall coordinate efforts to ensure proper time accountability and shall complete and process a change of shift/assignment form.

(a)   Employees on modified duty are responsible for coordinating required doctor visits and physical therapy appointments in advance with their supervisor to appropriately account for any duty time taken. Doctor visits and appointments for treatment of injuries or illnesses that are not work related shall be arranged during off-duty time or otherwise charged to the employee's sick leave.

(b)   Employees shall promptly notify their supervisor of any change in restrictions or limitations as determined by their health care provider. An employee assigned to a modified-duty assignment shall provide a duty status report to their supervisor no less than once every 30 days while the employee is on modified duty.

(c)   Supervisors shall keep the Captain/Director apprised of the employee's status and ability to perform the modified-duty assignment. Modified-duty assignments that extend beyond 60 days will require a written status report and a request for an extension to the Captain/Director with an update of the employee's current status and anticipated date of return to regular duty. Extensions require approval of the Captain/Director.

(d)   When it is determined that an employee on modified duty will return to regular duty, the supervisor shall notify the Captain/Director and complete and process a change of shift/assignment form. All training and certification necessary for return to duty shall be reviewed and updated as necessary.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000540

**Exhibit 1**
**Page 530 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Modified Duty Assignments*

1056.4.3  MEDICAL EXAMINATIONS
The Department reserves the right to require, prior to returning to full-duty status, a fitness-for-duty examination of any employee assigned to a modified-duty assignment or of any employee having been on such assignment. Such examinations shall be at the expense of the Department.

Prior to returning to full-duty status, employees shall be required to provide a statement signed by their health care provider indicating that they are medically cleared to perform the basic and essential job functions of their assignment without restriction or limitation.

**1056.5  PREGNANCY**
It is the policy of the Department to reassign employees who are pregnant upon request by the employee or when deemed necessary by the Department to temporary assignments that will not routinely expose the employee to potentially hazardous environments or activities.

1056.5.1  EMPLOYEE NOTIFICATION
An employee who learns of her pregnancy should notify her immediate supervisor or a designated acting supervisor of the pregnancy as soon as practicable. The employee must inform the Department of her intent regarding reassignment, job accommodations and anticipated leave for the pregnancy or prenatal care. The employee shall also submit a statement from her health care provider of any job restrictions or limitations she may have.

1056.5.2  SUPERVISOR'S RESPONSIBILITY
Upon receiving the medical verification of the pregnancy and a request for job accommodation, reassignment or leave, the supervisor shall notify the Captain/Director, who will consider assigning the employee to an available temporary modified-duty assignment if it is deemed appropriate by the Department or medically necessary by the employee's health care provider.

If at any point during the pregnancy it becomes necessary for the employee to take a leave of absence, such leave shall be granted consistent with the University's Personnel Rules and Regulations regarding Family and Medical Care Leave.

**1056.6  PROBATIONARY EMPLOYEES**
Trial Service employees who are assigned to a temporary modified-duty assignment shall have their trial service extended by a period of time equal to the employee's assignment to modified duty.

**1056.7  MAINTENANCE OF CERTIFICATION AND TRAINING**
Employees assigned to modified duty shall maintain all certification, training and qualifications appropriate to both their regular and temporary duties, provided the certification, training or qualifications are not in conflict with any limitations or restrictions. Employees who are assigned to modified duty shall inform their supervisor of any inability to maintain any certification, training or qualifications.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000541

**Exhibit 1**
**Page 531 of 550**



**Policy**
**1058**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Performance History Audits

### 1058.1  PURPOSE AND SCOPE
Performance History Audits are collections of data designed to assist supervisors evaluating the performance of their employees. Performance History Audits can help identify commendable performance as well as early recognition of training needs and other potential issues. While it is understood that the statistical compilation of data may be helpful to supervisors, it cannot account for, and must be carefully balanced with the many variables in law enforcement such as:

- An officer's ability to detect crime.

- An officer's work ethic.

- An officer's work assignment and shift.

- An officer's physical abilities, stature, etc.

- Randomness of events.

### 1058.2  RESPONSIBILITIES
Under the authority of the Chief of Police, the Professional Standards Unit is responsible for collecting performance indicators and other relevant data to generate and provide a quarterly Performance History Audit Report for each officer to the appropriate Division Commander. Though generated quarterly, each Performance History Audit will contain data from a one-year time period.

The Division Commander will also forward a copy of each Performance History Audit Report to the Office of the General Counsel for review and retention as attorney work product and confidential personnel information.

### 1058.3  COMPONENTS OF PERFORMANCE HISTORY AUDITS
Performance History Audits will include the following components:

- Performance indicators

- Data analysis

- Employee review

- Follow-up monitoring

### 1058.4  PERFORMANCE INDICATORS
Performance indicators represent the categories of employee performance activity that the Chief of Police has determined may be relevant data for the generation and analysis of Performance History Audits. Performance indicators may include but are not limited to:

(a)  The frequency and findings of use of force incidents.

(b)  Frequency of involvement and conduct during vehicle pursuits.

---

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000542

**Exhibit 1**
**Page 532 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Performance History Audits*

    (c)    Frequency and findings of citizen complaints.

    (d)    Number of commendations, compliments and awards (citizen and Department).

    (e)    Claims and civil suits related to the employee's actions or alleged actions.

    (f)    Canine bite incidents.

    (g)    Internal Affairs investigations.

    (h)    Frequency and reasons for District Attorney case rejections.

    (i)    Intentional or accidental firearm discharges (regardless of injury).

    (j)    Vehicle collisions.

    (k)    Missed court appearances.

    (l)    Documented counseling memos.

## 1058.5 COMPILATION OF DATA
The Professional Standards Unit will utilize secure systems and other confidential methods to compile and track information regarding performance indicators for each officer during each quarter in order to prepare Performance History Audit Reports.

## 1058.6 EMPLOYEE NOTIFICATION AND RESPONSE
The Professional Standards Unit will notify each officer prior to retaining any performance indicator for entry into a Performance History Audit Report. The affected officer may submit a written comment within 10 days regarding each performance indicator. Any such written comment will be attached to the related performance indicator in such a way as to be readily noticed by supervisors reviewing a Performance History Audit Report.

## 1058.7 DATA ANALYSIS AND ACTION
Upon receipt, the Division Commander will review each Performance History Audit Report and determine whether it should be provided to an officer's immediate supervisor for further consideration. The officer's immediate supervisor will carefully review the Performance History Audit Report with the officer to assess any potential trends or other issues which may warrant informal counseling, additional training or a recommendation for other action, including discipline. The officer shall date and sign the Performance History Audit Report and may be provided a copy of the report upon request.

If a supervisor determines that an officer's performance warrants action beyond informal counseling, the supervisor shall advise the Division Commander of such recommendation. If the Division Commander concurs with the recommendation of the supervisor, he/she shall take steps to initiate the appropriate action.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000543

**Exhibit 1**
**Page 533 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

*Performance History Audits*

If discipline or other adverse action is initiated against an officer as a result of a Performance History Audit, the officer shall be entitled to all rights and processes set forth in the Conduct Policy and Personnel Complaint Procedure Policy.

## 1058.8  CONFIDENTIALITY OF DATA

Information, data and copies of material compiled to develop Performance History Audit Reports shall be considered confidential as part of the employee's personnel file and will not be subject to discovery or release except as provided by law. Access to the data in the system will be governed under the same process as access to an officer's personnel file as outlined in the Department Peace Officer Personnel Files Policy 1026.

## 1058.9  RETENTION AND PURGING

Performance History Audit Reports will be retained by supervisors only so long as to include the information in the employee's evaluation. Once the report is used for the evaluation, it will be destroyed as the source material for the report is contained in the records repositiories from which it is derived .

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department



**Policy**
**1060**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

# Employee Speech, Expression and Social Networking

## 1060.1  PURPOSE AND SCOPE
This policy is intended to address issues associated with employee use of social networking sites and to provide guidelines for the regulation and balancing of employee speech and expression with the needs of the Department.

Nothing in this policy is intended to prohibit or infringe upon any communication, speech or expression that is protected or privileged under law. This includes speech and expression protected under state or federal constitutions as well as labor or other applicable laws. For example, this policy does not limit an employee from speaking as a private citizen, including acting as an authorized member of a recognized bargaining unit or officer associations, about matters of public concern, such as misconduct or corruption.

Employees are encouraged to consult with their supervisor regarding any questions arising from the application or potential application of this policy.

### 1060.1.1  APPLICABILITY
This policy applies to all forms of communication including, but not limited to, film, video, print media, public or private speech, use of all Internet services, including the World Wide Web, e-mail, file transfer, remote computer access, news services, social networking, social media, instant messaging, blogs, forums, video and other file-sharing sites.

## 1060.2  POLICY
Public employees occupy a trusted position in the community, and thus, their statements have the potential to contravene the policies and performance of this department. Due to the nature of the work and influence associated with the law enforcement profession, it is necessary that employees of this department be subject to certain reasonable limitations on their speech and expression. To achieve its mission and efficiently provide service to the public, the University of Oregon Police Department will carefully balance the individual employee's rights against the Department's needs and interests when exercising a reasonable degree of control over its employees' speech and expression.

## 1060.3  SAFETY
Employees should consider carefully the implications of their speech or any other form of expression when using the Internet. Speech and expression may negatively affect the safety of the University of Oregon Police Department employees. Posting personal information in a public forum, can result in compromising an employee's home address or family ties. Employees should therefore not disseminate or post any information on any forum or medium that could reasonably be anticipated to compromise the safety of any employee, an employee's family or associates.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000545

**Exhibit 1**
**Page 535 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Employee Speech, Expression and Social Networking*

Examples of the type of information that could reasonably be expected to compromise safety include:

- Disclosing a photograph and name or address of an officer who is working undercover.

- Disclosing the address of a fellow officer.

- Otherwise disclosing where another officer can be located off-duty.

## 1060.4  PROHIBITED SPEECH, EXPRESSION AND CONDUCT
To meet the department's safety, performance and public-trust needs, the following are prohibited unless the speech is otherwise protected (for example, an employee speaking as a private citizen, including acting as an authorized member of a recognized bargaining unit or officer associations, on a matter of public concern):

(a) Speech or expression made pursuant to an official duty that tends to compromise or damage the mission, function, reputation or professionalism of the University of Oregon Police Department or its employees.

(b) Speech or expression that, while not made pursuant to an official duty, is significantly linked to, or related to, the University of Oregon Police Department and tends to compromise or damage the mission, function, reputation or professionalism of the University of Oregon Police Department or its employees. Examples may include:

   1. Statements that indicate disregard for the law or the state or U.S. Constitution.

   2. Expression that demonstrates support for criminal activity.

   3. Participating in sexually explicit photographs or videos for compensation or distribution.

(c) Speech or expression that could reasonably be foreseen as having a negative impact on the credibility of the employee as a witness. For example, posting statements or expressions to a website that glorify or endorse dishonesty, unlawful discrimination or illegal behavior.

(d) Speech or expression of any form that could reasonably be foreseen as having a negative impact on the safety of the employees of the Department. For example, a statement on a blog that provides specific details as to how and when prisoner transportations are made could reasonably be foreseen as potentially jeopardizing employees by informing criminals of details that could facilitate an escape or attempted escape.

(e) Speech or expression that is contrary to the canons of the Law Enforcement Code of Ethics as adopted by the University of Oregon Police Department.

(f) Use or disclosure, through whatever means, of any information, photograph, video or other recording obtained or accessible as a result of employment with the Department for financial or personal gain, or any disclosure of such materials without the express

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000546

Exhibit 1
Page 536 of 550

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

## *Employee Speech, Expression and Social Networking*

authorization of the Chief of Police or the authorized designee (or any other act that would constitute a misuse of public information in violation of ORS 162.425).

(g) Posting, transmitting or disseminating any photographs, video or audio recordings, likenesses or images of department logos, emblems, uniforms, badges, patches, marked vehicles, equipment or other material that specifically identifies the University of Oregon Police Department on any personal or social networking or other website or web page, without the express authorization of the Chief of Police.

(h) Accessing websites for non-authorized purposes, or use of any personal communication device, game device or media device, whether personally or department-owned, for personal purposes while on-duty, except in the following circumstances:

1. When brief personal communications may be warranted by the circumstances (e.g., inform family of extended hours).

2. During authorized breaks; such usage should be limited as much as practicable to areas out of sight and sound of the public and shall not be disruptive to the work environment.

Employees must take reasonable and prompt action to remove any content, including content posted by others, that is in violation of this policy from any web page or website maintained by the employee (e.g., social or personal website).

## 1060.4.1  UNAUTHORIZED ENDORSEMENTS AND ADVERTISEMENTS
While employees are not restricted from engaging in the following activities as private citizens or as authorized members of a recognized bargaining unit or officer associations, employees may not represent the University of Oregon Police Department or identify themselves in any way that could be reasonably perceived as representing the University of Oregon Police Department in order to do any of the following, unless specifically authorized by the Chief of Police, in coordination withe the UO Office of Public Relations:

(a) Endorse, support, oppose or contradict any political campaign or initiative.

(b) Endorse, support, oppose or contradict any social issue, cause or religion.

(c) Endorse, support or oppose any product, service, company or other commercial entity.

(d) Appear in any commercial, social or nonprofit publication or any motion picture, film, video, public broadcast or on any website.

Additionally, when it can reasonably be construed that an employee, acting in his/her individual capacity or through an outside group or organization (e.g. bargaining group), is affiliated with this department, the employee shall give a specific disclaiming statement that any such speech or expression is not representative of the University of Oregon Police Department.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000547

**Exhibit 1**
**Page 537 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Employee Speech, Expression and Social Networking*

A notice of restrictions on political activities by employees will be posted and maintained by the Department in a place that is conspicuous to all employees as required by law (ORS 260.432).

Employees retain their right to vote as they choose, to support candidates of their choice and to express their opinions as private citizens, including as authorized members of a recognized bargaining unit or officer associations, on political subjects and candidates at all times while off-duty. However, employees may not use their official authority or influence to interfere with or affect the result of an election or a nomination for office. Employees are also prohibited from directly or indirectly using their official authority to coerce, command or advise another employee to pay, lend or contribute anything of value to a party, committee, organization, agency or person for political purposes (5 USC § 1502).

## 1060.5  PRIVACY EXPECTATION
Employees forfeit any expectation of privacy with regard to e-mails, texts or anything published or maintained through file-sharing software or any Internet site (e.g., Facebook, MySpace) that is accessed, transmitted, received or reviewed on any department technology system.

The Department reserves the right to access, audit and disclose for whatever reason any message, including attachments, and any information accessed, transmitted, received or reviewed over any technology that is issued or maintained by the Department, including the department e-mail system, computer network or any information placed into storage on any department system or device.

This includes records of all key strokes or web-browsing history made at any department computer or over any department network. The fact that access to a database, service or website requires a user name or password will not create an expectation of privacy if it is accessed through department computers or networks.

## 1060.6  CONSIDERATIONS
In determining whether to grant authorization of any speech or conduct that is prohibited under this policy, the factors that the Chief of Police or authorized designee should consider include:

    (a)    Whether the speech or conduct would negatively affect the efficiency of delivering public services.

    (b)    Whether the speech or conduct would be contrary to the good order of the Department or the efficiency or morale of its members.

    (c)    Whether the speech or conduct would reflect unfavorably upon the Department.

    (d)    Whether the speech or conduct would negatively affect the member's appearance of impartiality in the performance of his/her duties.

    (e)    Whether similar speech or conduct has been previously authorized.

    (f)    Whether the speech or conduct may be protected and outweighs any interest of the Department.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000548

**Exhibit 1**
**Page 538 of 550**

## University of Oregon Police Department
University of Oregon Police Department Policy Manual

*Employee Speech, Expression and Social Networking*

**1060.7  TRAINING**
Subject to available resources, the Department should provide training regarding employee speech and the use of social networking to all members of the Department.

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

UO_Alvarez000549

**Exhibit 1**
**Page 539 of 550**

# University of Oregon Police Department Policy Manual

University of Oregon Police Department Policy Manual

# Attachments

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

**Attachment**

## University of Oregon Police Department Policy Manual

University of Oregon Police Department Policy Manual

# Uniform and Equipment Inventory at time of hire.pdf

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police Department

## **Police Officer Uniform and Equipment Inventory at time of hire.**

1 – Bulletproof vest with 2nd carrier, Level IIIA

1 – Trauma plate for vest

1 – Glock 21 Service weapon, 45 cal.

1 – Pistol light w/laser

1 – Flashlight, Streamlight Stinger DS LED HL

3 – L/S Uniform Shirt, Police

3 – S/S Uniform Shirt, Police

3 – Uniform Pants, Police

1 – Patrol Jacket, Watershed

1 – Rain Pant

1 – Safety Vest, Police (for traffic control)

1 – Notebook Cover, Leather

1 – Duty Belt, Inner

1 – Duty Belt, Outer

1 – Magazine Holder, Double, Closed Top

1 – Holster, duty

1 – Holster, Plain clothes

1 – Handcuff/Magazine holder (plain clothes)

1 – Badge Holder, Leather

1 – Radio Holder, Leather

2 – Handcuffs

UO_Alvarez000552

**Exhibit 1**
**Page 542 of 550**

1 – Handcuff case, Dbl, leather

1 – Expandable Baton

1 –Baton Holder

1 – Glove Pouch, leather

1 – Flashlight holder, leather

2 – Key Keepers, leather

4 – Belt Keepers, leather

1 – OC/Pepper Spray holder, 1.8 oz.

1 – Pepper Spray, 1.8 oz

1 – Patrol Gloves

1 – Badge, Uniform, Police

1 – Portable Audio Recorder

1 – Portable Audio Recorder holder

UO_Alvarez000553

**Exhibit 1**
**Page 543 of 550**

## Security Officer Uniform and Equipment Inventory at time of hire. (Full Time)

1 – Bulletproof vest with 2nd carrier, Level IIIA

1 – Trauma plate for vest

1 – Flashlight

3 – L/S Uniform Shirt, Security

3 – S/S Uniform Shirt, Security

3 – Uniform Pants, Security

1 – Patrol Jacket, Security (with fleece liner)

1 – Rain Pant

1 – Notebook Cover, Leather

1 – Duty Belt, Inner, leather

1 – Duty Belt, Outer, leather

1 – Radio Holder, Leather

1 – OC/Pepper Spray holder. 3.0 oz.

1 – Pepper Spray, 3.0 oz.

1 – Patrol Gloves

2 – Key Keepers, leather

1 – Flashlight holder, leather

4 – Belt keepers, leather

UO_Alvarez000554

**Exhibit 1**
**Page 544 of 550**

# University of Oregon Police
# Department Policy Manual
University of Oregon Police Department Policy Manual

# INDEX / TOPICS

. . . . . . . . . . . . . . . .   24

## A

ABUSE OF POSITION . . . . . . . . .   456
ACCOUNTABILITY
   Supervisors. . . . . . . . . . .   20
ACKNOWLEDGEMENTS
   Departmental directives. . . . . . . .   21
   Discriminatory harassment. . . . . . .   121
   Vehicle pursuit policy. . . . . . . .   88
ADMINISTRATIVE HEARINGS . . . . .   336
ADMINISTRATIVE INVESTIGATIONS
   OIS. . . . . . . . . . . . . .   61
   Use of force. . . . . . . . . . .   35
ADMINISTRATIVE LEAVE
   OIS. . . . . . . . . . . . . .   58
ADULT ABUSE . . . . . . . . . . .   112
AIRCRAFT
   Flying while armed. . . . . . . . .   73
   Pursuits. . . . . . . . . . . .   87
ALCOHOL . . . . . . . . . . . .   458
ALCOHOL USE . . . . . . . . . . .   458
AMMUNITION . . . . . . . . . . .   70
ANIMALS
   Service. . . . . . . . . . . .   197
APPOINTMENTS
   Crime victim liaison. . . . . . . .   141
ARRESTS
   Authority. . . . . . . . . . . .   9
   Child and dependent adult safety. . . .   202
   Citations. . . . . . . . . . . .   246
   Disabled persons. . . . . . . . .   198
   Handcuffs and restraints. . . . . . .   41
   Juveniles. . . . . . . . . . . .   105
   Private persons. . . . . . . . . .   190
ASSIGNED VEHICLES . . . . . . . .   375
ASSOCIATION . . . . . . . . . . .   457
ATTENDANCE . . . . . . . . . . .   454
AUDIO/VIDEO RECORDING
   Child abuse. . . . . . . . . . .   127
   OIS. . . . . . . . . . . . . .   62
AUDITS
   Conducted Energy device training. . . .   53
   Information technology. . . . . . . .   151
AUTHORITY . . . . . . . . . . . .   9
   Command. . . . . . . . . . . .   19
   Use of force. . . . . . . . . . .   30
AUXILIARY RESTRAINTS . . . . . . .   42

## B

BADGE
   Mourning Badge. . . . . . . . . .   517
BADGES . . . . . . . . . . . . .   527
BARRICADE INCIDENTS . . . . . . .   232
BATON . . . . . . . . . . . . .   45
BIAS-BASED PROFILING . . . . . . .   221
BICYCLE PATROL . . . . . . . . . .   310
BICYCLE PURSUITS . . . . . . . . .   305
BLOOD TESTS . . . . . . . . . . .   332
BODY ARMOR . . . . . . . . . . .   482
BOMB CALLS . . . . . . . . . . .   237
BOMB THREATS . . . . . . . . . .   239
BULLET
   Casings. . . . . . . . . . . .   414
   Identification. . . . . . . . . . .   414

## C

CCH . . . . . . . . . . . . . .   421
CHANGE OF ASSIGNMENT . . . . . .   490
CHIEF EXECUTIVE OFFICER . . . . . .   17
CHILD ABUSE . . . . . . . . . . .   123
CHILD AND DEPENDENT ADULT SAFETY   202
CHILDREN
   Child abuse. . . . . . . . . . .   126
   Child safety. . . . . . . . . . .   202
   Domestic violence. . . . . . . . .   94
   Drug-endangered. . . . . . . . .   128
   Fatality review team. . . . . . . .   124
   Missing persons. . . . . . . . . .   130
CITATIONS . . . . . . . . . . . .   246
CIVIL
   Subpoena. . . . . . . . . . . .   165
CLERY ACT
   Timely Warnings. . . . . . . . . .   184
CODE-3 . . . . . . . . . . . . .   89
COMMAND STAFF
   Conducted energy device. . . . . . .   53
   Discriminatory harassment. . . . . . .   119
   Policy reviews. . . . . . . . . .   21
   Protocol. . . . . . . . . . . .   19
COMMUNICABLE DISEASES
   Confidentiality. . . . . . . . . .   469
   Counseling. . . . . . . . . . .   469
COMMUNICATION OPERATIONS . . . .   385
COMMUNICATIONS CENTER
   Domestic violence. . . . . . . . .   97
   Mandatory sharing. . . . . . . . .   174
   Vehicle pursuits. . . . . . . . . .   81

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000555

**Exhibit 1**
**Page 545 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

COMMUNICATIONS WITH PERSONS WITH
DISABILITIES . . . . . . . . . . . . .    192
COMPUTERIZED CRIMINAL HISTORY .    421
COMPUTERS
    DTBs. . . . . . . . . . . . . . . .    27
CONDUCT
    Discriminatory harassment. . . . . . .    118
CONDUCT . . . . . . . . . . . . . . .    453
CONFIDENTIAL INFORMANTS
    Payment Procedure. . . . . . . . . .    350
CONFIDENTIAL OR SENSITIVE
INVESTIGATIONS
    University Employees or Officials. . . .    347
CONFIDENTIALITY
    Child abuse reports. . . . . . . . . .    129
    Discriminatory harassment. . . . . . .    119
    Technology use. . . . . . . . . . . .    153
CONFLICT OF INTEREST . . . . . . . .    455
CONFORMANCE TO LAW . . . . . . . .    456
CONFORMANCE TO POLICIES, PROCEDURES
AND RULES . . . . . . . . . . . . . .    455
CONSTITUTIONAL REQUIREMENTS . . .    9
CONSULAR OFFICERS . . . . . . . . .    252
CONTROL DEVICES
    Pain compliance. . . . . . . . . . . .    32
CONTROL DEVICES . . . . . . . . . .    44
CONTROL DEVICES . . . . . . . . . . .    44
CORRESPONDENCE . . . . . . . . . .    24
COURT APPEARANCES . . . . . . . . .    164
COURT ORDERS
    Adult abuse. . . . . . . . . . . . . .    114
    Child abuse. . . . . . . . . . . . . .    126
    Child custody . . . . . . . . . .    131, 203
    Citation releases. . . . . . . . . . . .    246
    Domestic violence . . . . . . . .    94, 97
    Status offenders. . . . . . . . . . . .    103
    Subpoenas. . . . . . . . . . . . . .    164
    Victim and witness assistance. . . . .    142
COURTESY . . . . . . . . . . . . . . .    455
CRIME SCENE . . . . . . . . . . . . .    224
    Media Access. . . . . . . . . . . . .    224
CRIMINAL ACTIVITY REPORTING . . .    155
CRIMINAL STREET GANGS . . . . . . .    278
CRISIS RESPONSE UNIT
    Hostage and barricade incidents. . . .    234
CUSTODIAL INTERROGATIONS
    Communications for persons with
    disabilities. . . . . . . . . . . . . .    197
CUSTODIAL SEARCHES . . . . . . . . .    438

## D

DAILY TRAINING BULLETINS (DTB) . .    27
DAMAGE BY UNIVERSITY PERSONNEL    157
DATABASE - ACCESS TO . . . . . . . .    415
DEADLY FORCE APPLICATIONS . . . .    32
DEADLY FORCE REVIEW . . . . . . . .    37
DEADLY FORCE REVIEW . . . . . . . .    37
DEATH
    Custody - juveniles. . . . . . . . . .    110
DEATH INVESTIGATION . . . . . . . .    186
DEATH NOTIFICATION . . . . . . . . .    187
DEBRIEFING
    OIS. . . . . . . . . . . . . . . . .    63
DECONTAMINATION . . . . . . . . . .    465
DEFECTIVE VEHICLES . . . . . . . . .    372
DEFINITIONS OF TERMS IN MANUAL . .    14
DEPARTMENT OWNED PROPERTY . . .    361
DEPARTMENT PROPERTY
    Loss Or Damage. . . . . . . . . . .    362
DEPARTMENT VEHICLES . . . . . . . .    375
DEPARTMENTAL DIRECTIVES . . . . .    21
DEPENDENT ADULTS
    Safety. . . . . . . . . . . . . . . .    202
DEPLOYMENT . . . . . . . . . . . . .    258
DETENTION SEARCH . . . . . . . . . .    275
DIGITAL EVIDENCE . . . . . . . . . .    425
DIPLOMATIC AGENTS . . . . . . . . .    252
DIPLOMATIC IMMUNITY . . . . . . . .    251
DISABLED
    Communicating with the. . . . . . . .    192
DISASTER SCENE . . . . . . . . . . . .    224
DISCIPLINE
    Custody - juvenile. . . . . . . . . .    107
DISCLAIMER OF POLICIES . . . . . . .    13
DISCRIMINATION
    Defined. . . . . . . . . . . . . . . .    118
DISCRIMINATION . . . . . . . . . . .    454
DISCRIMINATORY HARASSMENT . . .    118
DISPOSITION OF FIELD PHOTOGRAPHS    276
DISPUTED CLAIMS . . . . . . . . . . .    400
DISTRIBUTION . . . . . . . . . . . . .    14
DOMESTIC VIOLENCE . . . . . . . . .    94
DOMESTIC VIOLENCE
    Definition Of Terms. . . . . . . . . .    523
    Involving Employees. . . . . . . . . .    523
DRIVING
    Pursuit tactics. . . . . . . . . . . . .    86
DRUG USE . . . . . . . . . . . . . . .    458
DUI ENFORCEMENT . . . . . . . . . .    332
DUTY TO INTERCEDE . . . . . . . . .    31

## E

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000556

**Exhibit 1**
**Page 546 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

ELECTRO-MUSCULAR DISRUPTION
TECHNOLOGY DEVICE . . . . . . . .    47
ELECTRONIC MAIL . . . . . . . . .    23
   Privacy expectation. . . . . . . . .    151
EMERGENCY OPERATIONS PLAN . . . .    22
EMPLOYEE ASSISTANCE . . . . . .    459
EMPLOYEE COMMENDATIONS . . . .    493
EMPLOYEE CONVICTIONS . . . . . .    451
ENFORCEMENT . . . . . . . . . .    319
EQUIPMENT AUTHORIZATION (PERSONAL,
ALTERNATIVE, SPECIAL) . . . . . . .    361
ETRACE . . . . . . . . . . . . .    414
EUGENE MUNICIPAL CODE . . . . . .    248
EVALUATION . . . . . . . . . . .    445
EVIDENCE . . . . . . . . . . . .    396
EVIDENCE CONTROL . . . . . . . .    402
   DNA Evidence. . . . . . . . . .    404
   Evidence Booking. . . . . . . . .    402
   Exceptional Handling. . . . . . . .    403
   Explosives and Hazardous Substances. .    403
   Narcotics and Dangerous Drugs. . . .    403
   Packaging. . . . . . . . . . . .    405
   Release of Evidence. . . . . . . .    407
   SAFE Kits. . . . . . . . . . . .    404
EXPLOSIVES . . . . . . . . . . .    237
EXPOSURE CONTROL PROGRAM . . . .    463
EXPOSURE(S) . . . . . . . . . . .    231
EXTENDED ILLNESS . . . . . . . .    461
EYEWITNESS IDENTIFICATION
   Safety. . . . . . . . . . . . .    143

## F

FACILITY SECURITY AND ACCESS CONTROL
. . . . . . . . . . . . . . . .    364
FIELD IDENTIFICATION . . . . . . .    353
FIELD INTERVIEWS . . . . . . . .    273
FIELD PHOTOGRAPHS . . . . . . .    275
FIELD SOBRIETY TESTS . . . . . . .    332
FIELD TRAINING OFFICER . . . . . .    267
FIREARM SERIAL NUMBERS . . . . .    413
FIREARMS . . . . . . . . . . . .    64
   Pursuits. . . . . . . . . . . .    83
FITNESS FOR DUTY
   OIS. . . . . . . . . . . . . .    58
FITNESS FOR DUTY . . . . . . . .    494
FLAT BADGE . . . . . . . . . . .    527
FLYING WHILE ARMED . . . . . . .    73
FOOT PURSUITS . . . . . . . . . .    305
FORCE . . . . . . . . . . . . .    30
FOREIGN
   Court orders. . . . . . . . . . .    97

FOREIGN NATIONALS . . . . . . . .    251
   Arrest or Detention. . . . . . . . .    251
   Arrest Procedure. . . . . . . . .    256
   In-Custody Arrests. . . . . . . . .    253
   Traffic Collisions. . . . . . . . .    255
   Vehicle Registration. . . . . . . .    252
FORMS
   Adult abuse. . . . . . . . . . .    116
   Child abuse and narcotics. . . . . .    128
   Communications with persons with
   disabilities. . . . . . . . . . .    199
   Discrimination complaint. . . . . . .    121
   Private persons arrest. . . . . . . .    191
   Suspected child abuse. . . . . . . .    128
   Use of force report. . . . . . . . .    33

## G

GANGS . . . . . . . . . . . . .    278
GROOMING STANDARDS . . . . . . .    511

## H

HANDCUFFING AND RESTRAINTS . . .    40
   Persons with disabilities. . . . . . .    194
HARASSMENT . . . . . . . . . . .    454
HATE CRIMES . . . . . . . . . .    144
HAZARDOUS MATERIAL . . . . . . .    230
HONESTY . . . . . . . . . . . .    455
HONORARY CONSULS . . . . . . . .    252
HOSTAGE AND BARRICADE INCIDENTS    232
HOSTAGE SITUATIONS . . . . . . . .    234

## I

IDENTITY THEFT
   Victim resources. . . . . . . . .    142
IDENTITY THEFT . . . . . . . . . .    189
IMMIGRATION VIOLATIONS . . . . .    260
IMMUNITY . . . . . . . . . . . .    251
IMPAIRED DRIVING . . . . . . . .    332
INJURY CLAIMS . . . . . . . . . .    510
INSPECTIONS
   Technology use. . . . . . . . . .    153
INSPECTIONS
   Evidence Storage Facility. . . . . .    401
INSUBORDINATION . . . . . . . . .    456
INVESTIGATION & PROSECUTION . . .    346

## J

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000557

**Exhibit 1
Page 547 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

JURISDICTION
    Foreign court orders. . . . . . . . .  97
    Missing persons. . . . . . . . . .  131
    OIS. . . . . . . . . . . . . .  55
    Pursuits. . . . . . . . . . . .  81
    Registered offenders. . . . . . . .  175
JUVENILE INFORMANTS . . . . . . .  349
JUVENILES
    Use as Informants. . . . . . . . .  349

# L

LAW ENFORCEMENT AUTHORITY . . . .  9
LAW ENFORCEMENT RECORDS UNIT .  410
LEG IRONS . . . . . . . . . . .  42
LIGHT DUTY . . . . . . . . . . .  529
LIVE LINEUP . . . . . . . . . . .  353
LOCKERS . . . . . . . . . . . .  371

# M

MDT
    Emergency Activation. . . . . . . .  299
MEAL PERIODS AND BREAKS . . . . .  497
MEDIA RELATIONS . . . . . . . .  57
MEDIA REQUEST . . . . . . . . . .  159
MEDICAL
    Adult involuntary detention. . . . . .  115
    Barricade situation. . . . . . . . .  234
    Child involuntary detention. . . . . .  127
    Examinations - adult abuse. . . . . .  116
    Examinations - child abuse. . . . . .  127
    Jail notification. . . . . . . . . .  41
    Releases. . . . . . . . . . . .  34
    Screening custody-juveniles. . . . . .  104
MEDICAL
    Examinations - sexual assault. . . . .  142
MEDICAL TRANSPORTS . . . . . . .  92
MENTAL ILLNESS
    Restraints. . . . . . . . . . . .  242
MINIMUM STAFFING . . . . . . . .  25
MISSING PERSON . . . . . . . . .  130
MOBILE AUDIO/VIDEO (MAV)
    OIS. . . . . . . . . . . . . .  62
MOBILE DATA TERMINAL . . . . . .  298
MODIFIED DUTY ASSIGNMENTS . . . .  529
MUTUAL AID . . . . . . . . . . .  173

# N

NEWS MEDIA RELATIONS . . . . . .  159

NOTIFICATIONS
    Adult abuse. . . . . . . . . . .  112
    Child abuse . . . . . . . . . 123,  123
    Complainant - discriminatory harassment.  119
    Custody suicide attempt, death or serious
    injury. . . . . . . . . . . . .  110
    Domestic violence. . . . . . . . .  99
    Jail. . . . . . . . . . . . . .  41
    Restraints. . . . . . . . . . . .  41
NOTIFICATIONS . . . . . . . . . .  56
NOTIFY DEPARTMENT OF ADDRESS AND
PHONE NUMBER . . . . . . . . . .  455
NUMERICAL FILING . . . . . . . . .  410

# O

OATH OF OFFICE . . . . . . . . . .  12
OC SPRAY . . . . . . . . . . . .  45
OFF-HIGHWAY VEHICLE OPERATION .  380
OFFICER IDENTIFICATION . . . . . .  392
OFFICER INVOLVED SHOOTING
    Investigation Responsibility Matrix. . . .  55
OFFICER SAFETY
    Domestic violence. . . . . . . . .  94
    Handcuffing and restraints. . . . . .  41
    Vehicle pursuits. . . . . . . . . .  76
OFFICER-INVOLVED SHOOTING . . . .  55
ON DUTY INJURIES . . . . . . . . .  508
ORGANIZATIONAL STRUCTURE AND
RESPONSIBILITY . . . . . . . . . .  19
OUTSIDE AGENCY ASSISTANCE . . . .  173
OUTSIDE EMPLOYMENT . . . . . . .  503
    Denial or Revocation Criteria. . . . . .  504
    Obtaining Approval. . . . . . . . .  503
OUTSIDE OVERTIME
    Restrictions Working Undercover. . . .  506
OVERTIME
    Court. . . . . . . . . . . . .  166
OVERTIME PAYMENT . . . . . . . .  501

# P

PATROL BICYCLE . . . . . . . . .  310
PATROL FUNCTION . . . . . . . . .  218
PEPPER SPRAY . . . . . . . . . .  45
PERFORMANCE . . . . . . . . . .  453
PERFORMANCE HISTORY AUDITS . . .  532
PERSONAL APPEARANCE . . . . . . .  511
PERSONAL PROPERTY . . . . . . . .  361
    Loss Or Damage. . . . . . . . . .  362
PERSONNEL COMPLAINTS

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000558

**Exhibit 1**
**Page 548 of 550**

# University of Oregon Police Department

University of Oregon Police Department Policy Manual

Acceptance. . . . . . . . . . . 473
Administrative Searches. . . . . . . . 476
Disposition. . . . . . . . . . . 478
PERSONNEL FILES
Defined. . . . . . . . . . . 485
Purging Of Files. . . . . . . . . 489
Requests For Disclosure. . . . . . . 486
Types Of Personnel Files. . . . . . . 487
PHOTO REVIEW OF FI PHOTOS . . . . 276
PHOTOGRAPHIC LINEUP . . . . . . . 353
PHOTOGRAPHS
Prohibited use of personal camera. . . . . 456
PHOTOGRAPHS AND OTHER INFORMATION
Prohibited use. . . . . . . . . . 456
PHYSICAL AND MENTAL EXAMINATIONS
. . . . . . . . . . . . . . . 495
POLICY MANUAL . . . . . . . . . 13
PREGNANCY
Use of restraints. . . . . . . . . . 40
PREGNANCY . . . . . . . . . . 531
PRIVACY EXPECTATIONS
Email. . . . . . . . . . . . 23
Technology use. . . . . . . . . . 151
PRIVATE PERSONS ARRESTS . . . . . 190
PROMOTIONAL PROCESS . . . . . . 448
PROPERTY AND EQUIPMENT, CARE OF . 457
PROPERTY CONTROL . . . . . . . . 396
Property Booking. . . . . . . . . 397
Property Release. . . . . . . . . . 399
PROPERTY PROCEDURES
Disputed Claims. . . . . . . . . 400
Packaging Of Property. . . . . . . . 398
Property Handling. . . . . . . . . 396
PROTECTIVE CUSTODY
Children. . . . . . . . . . . 126
Dependent adults. . . . . . . . . 114
PUBLIC INFORMATION OFFICER . . . . 266
PURSUITS
Vehicle. . . . . . . . . . . . 76

## R

RACIAL PROFILING . . . . . . . . 221
RACIAL-BASED PROFILING . . . . . . 221
RAD - RAPE AGGRESSION DEFENSE SYSTEM
. . . . . . . . . . . . . . . 214
RADIO COMMUNICATIONS . . . . . . 388
RAPID DEPLOYMENT TEAM . . . . . . 258
READINESS TO PERFORM DUTIES . . . 455
RECORDS BUREAU
Administrative hearings. . . . . . . . 336
Impaired driving. . . . . . . . . 336

RECORDS RELEASE
Adult abuse. . . . . . . . . . . 117
RECORDS RETENTION
Oath of office. . . . . . . . . . 12
REFLECTORIZED VESTS . . . . . . . 321
REGISTRANTS . . . . . . . . . . 175
RELEASE OF INFORMATION FROM LEDS 415
RELIEF FROM DUTY . . . . . . . . 495
REPORT CORRECTIONS . . . . . . . 158
REPORT PREPARATION . . . . . . . 155
REPORTING CONVICTIONS . . . . . . 451
Domestic Violence . . . . . . 451, 451
RESERVE OFFICERS . . . . . . . . 167
Coordinator. . . . . . . . . . 168
Duties. . . . . . . . . . . . 167
Firearms Requirements. . . . . . . . 171
Training. . . . . . . . . . . 169
RESPONSE TO CALLS . . . . . . . . 89
RESTRAINTS . . . . . . . . . . 40
RESTRICTED INFORMATION . . . . . 162
RETALIATION . . . . . . . . . . 119
REVIEWS
Departmental directives. . . . . . . . 21
Information technology. . . . . . . . 153
Registrant compliance - annual. . . . . . 175
Training plan. . . . . . . . . . 26
Use of force . . . . . . . . . 35, 36
Vehicle pursuit - annual. . . . . . . . 88
RIDE-ALONG
Eligibility. . . . . . . . . . . 226
ROLL CALL TRAINING . . . . . . . 223

## S

SAFE HAVEN PROVISION . . . . . . 127
SAFETY
Temporary custody of juveniles. . . . . 107
SEARCH & SEIZURE . . . . . . . . 100
SEARCH AND SEIZURE . . . . . . . 100
SEARCHES
Custodial. . . . . . . . . . . 438
SEARCHES . . . . . . . . . . . 376
SEARCHING
Dead Bodies. . . . . . . . . . 187
SEAT BELT PROCEDURE . . . . . . 481
SENSITIVE POLICE REPORTS . . . . . 411
SENSITIVE POLICE REPORTS - DEFINITIONS
. . . . . . . . . . . . . . . 411
SENSITIVE POLICE REPORTS -
RESPONSIBILITIES . . . . . . . . 411
SERVICE ANIMALS BELONGING TO
ARRESTEE . . . . . . . . . . 207

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000559

**Exhibit 1**
**Page 549 of 550**

# University of Oregon Police Department
University of Oregon Police Department Policy Manual

SEXUAL HARASSMENT . . . . . . . . 118
SICK LEAVE . . . . . . . . . . . . 461
SPEED ENFORCEMENT . . . . . . . . 338
STAFFING LEVELS . . . . . . . . . 25
STRIP SEARCHES . . . . . . . . . . 442
SUBPOENA DUCES TECUM . . . . . . 420
SUBPOENAS . . . . . . . . . . . 164
SWEEPS . . . . . . . . . . . . 260

## T

TASER . . . . . . . . . . . . . 47
TATTOOS . . . . . . . . . . . . 512
TEMPORARY CUSTODY OF JUVENILES . 103
TEMPORARY RELIEF FROM DUTY . . . 495
TIME CARD . . . . . . . . . . . 500
TIME CARDS . . . . . . . . . . . 500
TRAFFIC FUNCTION . . . . . . . . 319
TRAFFIC OFFICER . . . . . . . . . 319
TRAINING . . . . . . . . . . . . 26
    Adult abuse. . . . . . . . . . 117
    Child abuse. . . . . . . . . . 129
    Child and dependent adult safety. . . 205
    Costs. . . . . . . . . . . . . 27
    Discriminatory harassment. . . . . . 121
    Firearms. . . . . . . . . . . 71
    Missing persons. . . . . . . . . 137
    Persons with disabilities. . . . . . . 199
    Use of force. . . . . . . . . . 36
    Vehicle pursuits. . . . . . . . . . 88
TRAINING
    Domestic Violence. . . . . . . . . 526
    Request for Outside Training. . . . . . 491
    Searches. . . . . . . . . . . . 443
TRAINING COST REIMBURSEMENT . . 271
TRANSFER PROCESS . . . . . . . . 448
TRANSPORT BELTS . . . . . . . . . 42
TRESPASS LETTERS . . . . . . . . 244
TRUTHFULNESS . . . . . . . . . . 455

## U

UNBECOMING CONDUCT . . . . . . . 456
UNIFORM PATCH . . . . . . . . . 527
UNIFORM REGULATIONS . . . . . . . 514
UNIFORMS
    Courtroom attire. . . . . . . . . 165
UNSAFE ACTS . . . . . . . . . . . 454
URINE TESTS . . . . . . . . . . . 333
USE OF FORCE
    Vehicle force. . . . . . . . . . 83

USE OF FORCE . . . . . . . . . . . 30
USE OF FORCE . . . . . . . . . . . 30
    Demonstrations and Public Gatherings. . 180

## V

VEHICLE MAINTENANCE . . . . . . . 372
VEHICLES
    Pursuits. . . . . . . . . . . . 76
VICTIMS
    Compensation and rights. . . . . . . 141

## W

WASHING OF VEHICLES . . . . . . . 373
WORKERS COMPENSATION . . . . . . 508

Copyright Lexipol, LLC 2018/04/27, All Rights Reserved.
Published with permission by University of Oregon Police
Department

UO_Alvarez000560
**Exhibit 1**
**Page 550 of 550**