# INCIDENT/INVESTIGATION REPORT

**Agency Name:** University Of Oregon Police Department
**ORI:** OR0201300
**Case#:** 19-00059
**Date / Time Reported:** 01/15/2019 12:01 Tue
**Last Known Secure:** 01/15/2019 12:01 Tue
**At Found:** 01/15/2019 12:01 Tue

**Location of Incident:** 948 E 11th Ave/old Campus Ln, Eugene OR 97403-
**Premise Type:** Street/ Alley/ Sidewalk
**Beat/GeoPrx:** EPUO

## INCIDENT DATA

**Crime Incident #1 (Com):** Assault Public Safety Officer - Simple Aslt - 163.208  F
- Weapon / Tools: Personal Weapons
- Activity: N

**Crime Incident #2 (Com):** Flr Carry/present Op License 807.570  M
- Activity: N

**Crime Incident #3:** (blank)

## VICTIM

**# of Victims:** 2   **Type:** SOCIETY/PUBLIC   **Injury:**

| Code | Name | Victim of Crime # | DOB/Age | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|------|------|-------------------|---------|------|-----|--------------------------|-----------------|------------------------|
| V1 | State Of Oregon | 2 | | | | | | |

## OTHERS INVOLVED

CODES: V- Victim (Denote V2, V3)   O = Owner (if other than victim)   R = Reporting Person (if other than victim)

**Type:** INDIVIDUAL/ NOT LAW ENFORCEMENT   **Injury:** Apparent Minor Injury

| Code | Name (Last, First, Middle) | Victim of Crime # | DOB/Age | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|------|---------------------------|-------------------|---------|------|-----|--------------------------|-----------------|------------------------|
| V2 | GEETING, SCOTT CHRISTOPHER | 1 | Age 35 | W | M | 1RU | | |

**Type:** INDIVIDUAL/ NOT LAW ENFORCEMENT   **Injury:**

| Code | Name (Last, First, Middle) | Victim of Crime # | DOB/Age | Race | Sex | Relationship To Offender | Resident Status | Military Branch/Status |
|------|---------------------------|-------------------|---------|------|-----|--------------------------|-----------------|------------------------|
| IO | ALVAREZ, JAMES BRENT | | Age 40 | W | M | | Resident | |

Business Phone: 541-465-4766

## PROPERTY

1 = None   2 = Burned   3 = Counterfeit / Forged   4 = Damaged / Vandalized   5 = Recovered   6 = Seized   7 = Stolen   8 = Unknown
("OJ" = Recovered for Other Jurisdiction)

| VI# | Code | Status Frm/To | Value | OJ | QTY | Property Description | Make/Model | Serial Number |
|-----|------|---------------|-------|-----|-----|---------------------|------------|---------------|
| | | | | | | | | |

**Officer/ID#:** SITTS, L. (UPAT) (UO329)
**Invest ID#:** (0)
**Supervisor:** CLARK, S. (UPAT) (UO111)

**Status** — Complainant Signature | **Case Status:** Cleared By Arrest  01/15/2019 | **Case Disposition:** | Page 1

R_CS1IBR   Printed By: RAY.FINNEN, UOPZSGB2   Sys#: 625102   02/27/2020 08:51

Exhibit 2
Page 1 of 20

# INCIDENT/INVESTIGATION REPORT

*University Of Oregon Police Department*

Case # *19-00059*

Status Codes   1 = None   2 = Burned   3 = Counterfeit / Forged   4 = Damaged / Vandalized   5 = Recovered   6 = Seized   7 = Stolen   8 = Unknown

| | IBR | Status | Quantity | Type Measure | Suspected Type | |
|---|---|---|---|---|---|---|
| D R U G S | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Assisting Officers
  *BARRETT, S. (UO311),  BROOKS, G. (UO315),  MORRIS, D. (DXM118),  GEETING, S. (UO114)*

Suspect Hate / Bias Motivated:   *NO BIAS*

## INCIDENT/INVESTIGATION REPORT

Narr. (cont.) OCA: 19-00059        *University Of Oregon Police Department*

N A R R A T I V E

*R_CS2IBR*        By: RAY.FINNEN, UOPZSGB2  02/27/2020 08:51        Page 2

**Exhibit 2**
**Page 2 of 20**

# REPORTING OFFICER NARRATIVE

| University Of Oregon Police Department | | OCA<br>*19-00059* |
|---|---|---|
| Victim<br>*Society* | Offense<br>*ASSAULT PUBLIC SAFETY OFFICER -* | Date / Time Reported<br>*Tue 01/15/2019 12:01* |

**THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY**

ASSISTING OFFICERS:
Sgt S. GEETING          University of Oregon Police Department - Patrol Sergeant
Corporal S. BARRETT     University of Oregon Police Department - Patrol Corporal
Officer G. BROOKS       University of Oregon Police Department - Patrol Officer

DIGITAL EVIDENCE:
ICV -  17-16
Bodycam - Sitts
Bodycam - S. GEETING
Bodycam - S. BARRETT
Bodycam - G. BROOKS

DOCUMENTS:
-Oregon Uniform Citation and Complaints
    UOP114083 - VOID
    UOP114081 - VOID
    UOP114082
    UOP116188
    UOP116189
-PC Affidavit
-LCSO Booking Form
-UOPD Vehicle Impound Form
-LCSO Property Form

CHARGES
807.570 - Fail To Carry and Present - License
162.247 - Interfering with a Police Officer
163.208 - Assault Public Safety Officer
162.315 - Resisting Arrest

SOURCE OF ACTIVITY:
On 01/15/2019 at approximately 1201 Hrs I was on patrol in the area of 13th Ave/ Alder St in the city of Eugene, county of Lane, and state of Oregon. I was in full department issue uniform with my badge prominently displayed driving a marked patrol vehicle. I observed a vehicle traveling eastbound on 13th near Kincaid St with no rear license plate visible.

OBSERVATIONS/TRAFFIC STOP
I followed the vehicle noting that it had extremely dark tint obscuring the interior of the vehicle, the vehicle turned northbound on Kincaid St. I activated my emergency lights as the vehicle approached 12th Ave traveling north. The vehicle continued north on Kincaid passing several safe and appropriate spots to pull over, I activated my emergency siren as the vehicle signaled and turned into the right turn lane at 11th Ave. The vehicle stopped at the light at 11th Ave and then turned East onto 11th Ave, I activated my emergency siren again and the vehicle pulled into the fire lane/turn out at 11th ave and Old Campus Ln and stopped.

As I approached the vehicle I was able to see there was no temporary tag in the rear window, I was not able to verify this prior to approachign the vehicle on foot due to the level of tint. When I was approaoching the drivers side window it opened and then shut. The driver, identified as James Brent ALVAREZ, opened the window approximately 2 inches once I got to it and did not lower the window further at any point during the stop.

| Reporting Officer: *SITTS, L.*<br>R_CS3NC | Printed By: RAY.FINNEN, UOPZSGB2   02/27/2020 08:51 | Page 3 |
|---|---|---|

Exhibit 2<br>Page 3 of 20

## REPORTING OFFICER NARRATIVE

| University Of Oregon Police Department | | OCA<br>*19-00059* |
|---|---|---|
| Victim<br>*Society* | Offense<br>*ASSAULT PUBLIC SAFETY OFFICER -* | Date / Time Reported<br>*Tue 01/15/2019 12:01* |

**THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY**

I attempted to inform ALVAREZ that I was a police officer and the reason for the stop and he stated " I don`t answer questions without an attorney." I could not see into the rear of the vehicle at all and asked ALVARES to crack the rear window so I could see if there were any passengers and he complied. ALVAREZ repeatedly asked me for my name, badge number, and reason I stopped him. As I attempted to provide ALVAREZ with the info he requested he began talking over me asking if I had a warrant for his arrest, to search the vehicle, and several other demands about what court orders I had to stop or detain him or his vehicle. At this point I requested a supervisor respond to the stop. Each time I approached the window ALVAREZ asked if he was free to go and I told him multiple times that he was being detained during the traffic stop and he was not free to go. As I attempted to complete the traffic stop ALVAREZ began reading off of a prepared list that he was not operating his vehicle in a commercial manner. As I approached the vehicle the second time I observed ALVAREZ reaching across the front of his vehicle but I could not see what he was doing or what was in his hands due to the window tint.

As I waited for Sgt GEETING to respond Ofcr G. BROOKS arrived on scene and I attempted to get ALVAREZ`s license, proof of insurance, and proof of registration for the vehicle. ALVAREZ repeatedly stated he did not answer questions and refused to produce the required documents. ALVAREZ provided several multi page documents indicating he was a sovereign citizen who had filed an affidavit with Lane County Circuit Court stating he had not registered his vehicle for commercial use. On the document was ALVAREZ`s name which matched an entry in LEDS. ALVAREZ provided his birthdate and home address which confirmed his identity and that he had an ID card and no valid drivers license.

Dispatch related that ALVAREZ has a caution code his LEDS return as being an Expert martial artist. During my interactions with ALVAREZ he was constantly making furtive movements towards the center console, door pockets, and dash area of his vehicle. Ofcr BROOKS observed from the passenger side that ALVAREZ repeatedly reached under his drivers seat, out of sight of officers. I recognize from my training and experience that the area under the drivers seat and in the door pockets can easily conceal weapons and ALVAREZ was behaving in a concerning manner and would not allow a clear view into his vehicle.

Sgt GEETING attempted to persuade ALVREZ to provide the needed documents and ALVAREZ continued to refuse to comply with requests. I determined that the vehicle with no proof of insurance, registration, or a valid operator to drive it was creating a traffic hazard by being stopped in a red curb fire lane in the lane of travel.

At this point I decided to remove ALVAREZ from his vehicle to conduct a pat down for weapons that could be used against me and other officers present and to facilitate the vehicle being towed for the above traffic violations.

DRIVER IDENTIFIED
ALVAREZ was identified verbally and via his DMV photograph;

       ALVAREZ, James Brent
       DOB: ▮▮▮▮▮
       SOC: ▮▮▮▮▮▮▮▮▮
       Address: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
       ID Number: ▮▮▮▮▮▮ - OR

DRIVER REMOVED FROM VEHICLE
After consulting with Sgt GEETING and officers present I approached the vehicle with Sgt GEETING behind me and Cpl BARRETT in front of the vehicle A pillar on the drivers side, Ofcr BROOKS was providing cover on the passenger side. I informed ALVAREZ that his vehicle was being towed for the above offenses and ordered him to step out of the vehicle, and that he was not free to go. ALVAREZ stated for his recording that he did not consent and was being kidnapped, he then said he would comply and exit his vehicle. ALVAREZ rolled his window back up and

# REPORTING OFFICER NARRATIVE

| University Of Oregon Police Department | | OCA<br>*19-00059* |
|---|---|---|
| Victim<br>*Society* | Offense<br>ASSAULT PUBLIC SAFETY OFFICER - | Date / Time Reported<br>*Tue 01/15/2019 12:01* |

**THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY**

began making more gestures and reaching around the interior of his vehicle, as ALVAREZ opened the door and stepped out I grabbed his left arm and told him to put his hands behind his back and that he was being detained. As Sgt GEETING and myself attempted to control his arms ALVAREZ began yelling and violently pulled away from me towards Sgt GEETING. ALVAREZ somehow grabbed Sgt GEETING`s face and cut the gum on the lower left side of Sgt GEETING`s jaw with a fingernail. I attempted to regain control of ALVAREZ`s arm and saw Cpl BARRETT draw his TASER, I then stepped back and BARRETT deployed his TASER causing ALVAREZ to fall to the ground. I then secured ALVAREZ by applying handcuffs, checking them for proper fit, and double locking them.

ARREST
ALVAREZ was placed under arrest and I informed him of his Miranda rights by reading verbatim from a department provided pre-prepared form. I asked ALVAREZ if he understood his rights and he said "I do, understand My rights."

VEHICLE TOWED
The vehicle ALVAREZ was driving was inventoried by myself and Ofcr BROOKS and no items over $200 in value were observed in the vehicle. The vehicle was towed as a traffic hazard from the scene by Webfoots towing company. See the vehicle impound form for more information.

OFFICER INJURIES
Sgt GEETING received a cut/laceration to his lower left gum area and received treatment at Sacred Heart - University District ER.

Ofcr Sitts received a small cut to his lower lip and no treatment was sought.

Ofcr BROOKS received a small abrasion to her hand, no treatment was sought.

See Case Photographs for more information.

SUSPECT INJURIES
ALVAREZ received a puncture wound to his left upper thigh from a TASER barb. Cpl BARRETT removed the barb and treated the puncture. ALVAREZ also began complaining of leg pain and feeling unwell in general.

See Case Photographs for more information.

MEDICAL EVALUATION
Eugene Springfield Fire Department medics were called to the scene to evaluate ALVAREZ. ALVAREZ refused all services from the medics.

MEDICAL CLEARANCE/BLOOD DRAW
Due to the potential for Bloodborne Pathogen Exposure to Sgt Geeting from the injury caused by ALVAREZ I requested ALVAREZ voluntarily allow a blood draw to check for communicable diseases. ALVAREZ verbally consented to the blood draw and I transported him to the Sacred Heart - University District ER. While at the ER I requested medical staff clear ALVAREZ for lodging and he was discharged after the blood draw and evaluation by ER staff. At the ER ALVAREZ was not comfortable signing a UOPD medical release form and had invoked his right to remain silent so I did not discuss to form with him.

TRANSPORT
I transported ALVAREZ to LCAC.

BOOKING

# REPORTING OFFICER NARRATIVE

| University Of Oregon Police Department | | OCA<br>*19-00059* |
|---|---|---|
| Victim<br>*Society* | Offense<br>*ASSAULT PUBLIC SAFETY OFFICER -* | Date / Time Reported<br>*Tue 01/15/2019 12:01* |

**THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY**

ELLIS was booked and lodged at LCAC for charges of

Fail To Carry and Present - License
Interfering with a Police Officer
Assault Public Safety Officer
Resisting Arrest

CITATIONS
ALVAREZ was cited for;

807.010 - Veh Oper No Privilege
803.540 - Fail to Display License Plates
815.222 - Illigal Window Tint - Tint measured at 22%
806.012 - Fail to carry proof of financial responsibility

Citations UOP114081 and UOP114083 were voided due to an improper court selection and I re-submitted the citations through Lane County Circuit Court on UOP116188 and UOP116189. Officer A. BUTTON delivered the copies of the new citations to ALVAREZ at LCAC

ROUTING
Lane County Circuit Court - Prosecuting Attorney`s Office

Reporting Officer: *SITTS, L.*
R_CS3NC

Printed By: RAY.FINNEN, UOPZSGB2   02/27/2020 08:51

Page 6

Exhibit 2
Page 6 of 20

## Incident Report Suspect List

University Of Oregon Police Department

OCA: *19-00059*

| 1 | Name (Last, First, Middle) ALVAREZ, JAMES BRENT | Also Known As ALVAREZ, JAMES BRENT JASON; ALVAREZ, JAMES | Home Address [redacted] |
|---|---|---|---|
| | Business Address | | |

| DOB | Age | Race | Sex | Eth | Hgt | Wgt | Hair | Eye | Skin | Driver's License / State. |
|---|---|---|---|---|---|---|---|---|---|---|
| [redacted] | 40 | W | M | U | 510 | 155 | BRO | BRO | | [redacted] OR |

Scars, Marks, Tattoos, or other distinguishing features

| *Reported Suspect Detail* | Suspect Age | Race | Sex | Eth | Height | Weight | SSN |
|---|---|---|---|---|---|---|---|
| Weapon, Type | Feature | Make | Model | | Color | Caliber | Dir of Travel |
| | | | | | | | Mode of Travel |
| VehYr/Make/Model | | Drs | Style | Color | Lic/St | | VIN |
| Notes | | | | Physical Char | | | |

## CASE SUPPLEMENTAL REPORT

Printed: 02/27/2020 08:51

*University Of Oregon Police Department*

OCA: **1900059**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** CLEARED BY ARREST   **Case Mng Status:** NA   **Occurred:** 01/15/2019
**Offense:** ASSAULT PUBLIC SAFETY OFFICER - SIMPLE ASLT

**Investigator:** BROOKS, G. (UO315)   **Date / Time:** 01/15/2019 16:59:00, Tuesday
**Supervisor:** BARRETT, S. (UO311)   **Supervisor Review Date / Time:** 01/15/2019 19:28:30, Tuesday
**Contact:**   **Reference:** Supplemental

Documents & Evidence

ICV: 17-18
Assigned body camera - Brooks

Source of Activity:

On 01/15/19, I was on duty, wearing a department issued uniform, prominently displaying a badge and wearing a body camera. I was operating a marked patrol vehicle and assigned to the Patrol Division for the University of Oregon Police Department. At approximately 1200 hours I overheard Officer Sitts request assistance on his traffic stop at Old Campus Lane and 11th Avenue, Eugene OR, within the boundaries of Lane County.

Incident:

I arrived at the stop and responded the passenger side of the vehicle. I could hear Sitts speaking with the operator, later identified as James Alvarez (DOB 08/20/78) at the drivers side window. I observed that the drivers side window was only down approximately 2 inches. As I was walking up to the passenger side of the vehicle I observed the windows were tinted to the point where I was unable to see inside the vehicle. As I stood at the passenger window upright, I could only see light color items like the operators hands and the papers he was shuffling through. I was unable to make out darker items such as his cell phone unless I bent down and put my face up against the window. Many times during the stop I felt uncomfortable by Alvarez movements based on the inability for me to see clearly into the car.

I could hear Officer Sitts asking Alvarez for a license, vehicle registration and proof of insurance. At no point could I hear what Alvarez was saying. I heard Officer Sitts tell Alvarez that he was being lawfully detained and wasn`t free to leave.

Sergeant Geeting arrived at the stop and talked with Alvarez at the passenger side window but again only rolled the window down approximately 2 inches.

After Sergeant Geeting was finished at the window I returned back to the passenger window.

During the whole stop, where Alvarez was in the vehicle, I observed that Alvarez was using his cell phone to record the interaction. I could see Alvarez making jerky quick movements with his hands. I repeatedly observed Alvarez reach down between his legs but was unable to see what he was doing due to the dark window tint. At one point I observed Alvarez open the glovebox and shuffle through items inside of the glove box. I was unable to see what type of items were inside the glovebox. I was greatly concerned for the safety of the Officers on the stop the

Investigator Signature                Supervisor Signature

## CASE SUPPLEMENTAL REPORT

Printed: 02/27/2020 08:51

*University Of Oregon Police Department*

OCA: **1900059**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | |
|---|---|---|
| **Case Status:** CLEARED BY ARREST | **Case Mng Status:** NA | **Occurred:** 01/15/2019 |
| **Offense:** ASSAULT PUBLIC SAFETY OFFICER - SIMPLE ASLT | | |

| | | |
|---|---|---|
| **Investigator:** BROOKS, G. (UO315) | **Date / Time:** 01/15/2019 16:59:00, Tuesday | |
| **Supervisor:** BARRETT, S. (UO311) | **Supervisor Review Date / Time:** 01/15/2019 19:28:30, Tuesday | |
| **Contact:** | **Reference:** Supplemental | |

longer the stop continued. Alvarezs` movements and impatience appeared to escalate as the stop continued as well as his movements within the vehicle.

At one point Corporal Barrett arrived on scene and I heard him tell Alvarez that he was concerned about the situation due to not being able to see inside the vehicle. I heard Corporal Barrett tell Alvarez to put his hands on the steering wheel.

I observed Alvarez making the movements to exit the vehicle when I could still see furtive, jerky movements by Alvarez reaching down on the floor board and towards the door panel. I began to walk around the vehicle to the drivers side where Alvarez had exited the vehicle and began to struggle with the Officers after being told he was being detained. I could see Alvarez had a hold of Sergeant Geeting and they were struggling. I heard Corporal Barrett say stop or you`re going to be tased. Moments later I heard the taser deploy and was ineffective on subduing Alvarez. I then heard the second deployment at which point Alvarez went down to the ground. Myself, Sergeant Geeting and Officer Sitts struggled with Alvarez to obtain control of Alvarez`s left arm which was underneath of his body. I was still unsure if Alvarez had any weapons so I maintained control of Alvarez by placing my knee on the upper left shoulder of Alvarez while attempting to pull his arm out from underneath of his body. Alvarez stated that he would pull his arm out from underneath of his body if he could roll off of it at which point we were able to pull his arm out and apply handcuff`s to his wrists.

I sustained a minor injury to my left ring finger knuckle. The skin was peeled back on the knuckle with minor bleeding. It is unknown how the finger was injured.

I stayed on scene with the vehicle which was towed by Webfoot towing company to their yard for safekeeping.

_____  _____
Investigator Signature            Supervisor Signature

## CASE SUPPLEMENTAL REPORT

Printed: 02/27/2020  08:51

*University Of Oregon Police Department*

OCA : **1900059**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** CLEARED BY ARREST        **Case Mng Status:** NA        **Occurred:** 01/15/2019

**Offense:** ASSAULT PUBLIC SAFETY OFFICER - SIMPLE ASLT

**Investigator:** BARRETT, S.  (UO311)         **Date / Time:** 01/15/2019 20:31:41, Tuesday
**Supervisor:** MORRIS, D.  (UO118)         **Supervisor Review Date / Time:** 01/16/2019 08:22:34, Wednesday
**Contact:**                                 **Reference:** Supplemental

ICV/ 17-15 Barrett ICV

BWC/ Barrett Body Camera

Documents/ Barrett Taser Logs (3 Pages)

Digital Photos/ Uploaded to UOPD Server

Property Evidence/ I lodged two taser cartridges, wires, probes, and AFIDS into UOPD property evidence.

On 1/15/19, at approximately 1220 hours, I was on duty, in uniform, displaying a badge, and driving a marked patrol vehicle. I responded to 11th and Old Campus Lane to assist Officer Sitts with an uncooperative subject on a traffic stop. I arrived and contacted Sergeant Geeting regarding the incident. Sergeant Geeting filled me in on the situation of the traffic stop. The subject, later being identified as James Alvarez, was being uncooperative claiming to be a sovereign citizen and refusing to comply with Officer Sitts. Sergeant Geeting advised that if the situation escalated that Officer Brooks would be lethal cover and I would deploy the Taser as less lethal cover. Prior to my arrival on scene I heard dispatch advised officer safety information that Alvarez was a trained marshal art expert.

After talking with Sergeant Geeting I approached Officer Sitts near Alvarez`s vehicle. As I approached the vehicle I observed that the windows were tinted very dark. Based upon my training and experience the windows were tinted illegally. I was unable to see in the vehicle because of the tinting on the windows. This was concerning to me for officer safety. I placed my flashlight on the rear window and looked very closely through the tint. I could vaguely see that the back seat of the vehicle was not occupied. I talked with Officer Sitts briefly and then stood by at the driver window to watch Alvarez while Sitts went to his vehicle.

I requested that Alvarez open his window so that I could see inside his vehicle for safety reasons. I was concerned based upon Alvarez`s furtive movements and dark window tinting that if he reached for a weapon I would not be able to see it. Alvarez opened his window about and inch or two and refused to roll it down farther. I asked Alvarez if there were any weapons in the vehicle. He refused to answer me. Alvarez asked me if he was free to go. I advised him that he was detained and not free to leave. Alvarez told me that he was invoking his rights. I explained to Alvarez my concern about weapons, safety, his hands, and the window tinting preventing me from being able to safely see in his vehicle. Alvarez continued to be uncooperative. At one point I told Alvarez to put his hand on the steering wheel. Alvarez briefly put his hands on the steering wheel, but then continued to lower his hands under the dash area and in his lap waist area.

Investigator Signature                                 Supervisor Signature

Page 10

Exhibit 2
Page 10 of 20

## CASE SUPPLEMENTAL REPORT

Printed: 02/27/2020  08:51

*University Of Oregon Police Department*

OCA: **1900059**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** CLEARED BY ARREST  **Case Mng Status:** NA  **Occurred:** 01/15/2019
**Offense:** ASSAULT PUBLIC SAFETY OFFICER - SIMPLE ASLT

**Investigator:** BARRETT, S. (UO311)  **Date / Time:** 01/15/2019 20:31:41, Tuesday
**Supervisor:** MORRIS, D. (UO118)  **Supervisor Review Date / Time:** 01/16/2019 08:22:34, Wednesday
**Contact:**  **Reference:** Supplemental

Based upon Alvarez`s furtive movements, refusal to comply, and overall odd behavior I was very concerned about weapons and officer safety. After a few minutes I moved in front of the A pillar of his vehicle so that I could see him through the front window. As I was watching Alvarez through the front window I observed that the VIN number of the vehicle was covered with paper.

Officer Sitts approached the drivers window and asked, told, and ordered Alvarez to exit the vehicle several times. After several orders Alvarez finally exited the vehicle. As Alvarez exited the vehicle Sitts told him to get out, turn around, and face the vehicle. Alvarez continued to be uncooperative. Sitts advised him that he was being detained. As Sitts advised Alvarez that he was being detained he also went hand on to attempt to control Alvarez`s hands and arms. Alvarez immediately began resisting, fighting, and assaulting Officer Sitts and Sergeant Geeting.

Officer Sitts told Alvarez to stop resisting and Alvarez continued to fight and yelled, "Get your fucking hands off me". I observed Alvarez grab onto Sergeant Geeting and swing him around violently. I drew my Taser and advised Alvarez that he was going to be tased. I deployed my taser. I observed one dart hit Alvarez`s left leg, but it appeared that the second dart did not have a good contact. Alvarez reached down with his hand, appearing to attempt to pull the dart out of his leg. I quickly deployed the second taser cartridge, as I did not observe the taser functioning as intended with the first cartridge deployment. When the second cartridge was deployed I observed Alvarez fall to the ground.

Sergeant Geeting, Officer Sitts, and Officer Brooks quickly took physical control of Alvarez while he was under the power of the taser. Alvarez was placed in handcuffs and taken into custody within a few seconds of being tased. Alvarez`s resistive and assaultive behavior ceased as soon as he fell to the ground under the power of the Taser.

After Alvarez was searched for weapons the taser cartridges, wires, probes, and AFIDS were collected for evidence. After the altercation only one of the four taser probes was attached to Alvarez. The other probes were located in the area around Alvarez. I removed the remaining probe from Alvarez`a left quadricep per my training. I used an alcohol swab and bandaid to provide care for the taser dart wound. I asked Alvarez if he had any other injuries. Alvarez did not advise me of any other injuries.

Medics were requested and responded to the scene to medically evaluate Alvarez. After I removed the taser probe the medics assessed Alvarez. Alvarez did not have any medical complaints. The medics advised that Alvarez was medically cleared.

Later while Alvarez was in the back of the patrol vehicle I again asked him if he had any injuries. He said the only thing was that the handcuffs were uncomfortable. I advised Officer Sitts about the handcuffs. Officer Sitts adjusted the handcuffs and confirmed that they were on properly.

Investigator Signature                                          Supervisor Signature

## CASE SUPPLEMENTAL REPORT

Printed: 02/27/2020 08:51

*University Of Oregon Police Department*

OCA: **1900059**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** CLEARED BY ARREST  **Case Mng Status:** NA  **Occurred:** 01/15/2019
**Offense:** ASSAULT PUBLIC SAFETY OFFICER - SIMPLE ASLT

**Investigator:** BARRETT, S. (UO311)  **Date / Time:** 01/15/2019 20:31:41, Tuesday
**Supervisor:** MORRIS, D. (UO118)  **Supervisor Review Date / Time:** 01/16/2019 08:22:34, Wednesday
**Contact:**  **Reference:** Supplemental

I assisted Sitts by watching Alvarez, in Sitts patrol vehicle, while Sitts finished his investigation of the vehicle that Alvarez was driving.

I tested Alvarez`s vehicle for window tinting violations with Tint Enforcment Meter #3. I noted that the front and rear windows had window tinting at 22% to 23%. The legal limit is 35%. I advised Sitts of the window tinting results for his investigation.

I lodged the collected taser cartridge evidence at UOPD.

I uploaded the taser logs and attached them to this report.

Investigator Signature    Supervisor Signature

**CASE SUPPLEMENTAL REPORT**   Printed: 02/27/2020 08:51

*University Of Oregon Police Department*   OCA: **1900059**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** CLEARED BY ARREST   **Case Mng Status:** NA   **Occurred:** 01/15/2019
**Offense:** ASSAULT PUBLIC SAFETY OFFICER - SIMPLE ASLT

**Investigator:** GEETING, S. (UO114)   **Date / Time:** 01/15/2019 23:10:52, Tuesday
**Supervisor:** BARRETT, S. (UO311)   **Supervisor Review Date / Time:** 01/16/2019 08:40:04, Wednesday
**Contact:**   **Reference:** Supplemental

On 1/15/19 I was on police patrol of the University of Oregon campus. I was in full uniform and displaying a badge. At approximately 12:41 hours that same date UOPD Officer SITTS advised via radio he had initiated a traffic stop of a vehicle with no plate. SITTS later requesting a supervisor. The request was due to the operator, later identified as ALVAREZ, making statements similar to a "sovereign citizen". I know from training and experience this to mean someone making spurious legal claims to avoid compliance with ordinance or law.

I responded to SITTS location and was told ALVAREZ refused to provide any proof of insurance, registration or a valid license. The vehicle lacked any registration of temporary tags and it was later discovered the VIN had been covered up. I attempted to speak with ALVAREZ through his passenger side door window. I told ALVAREZ I was a sergeant with the University of Oregon Police Department. I admonished ALVAREZ that I was recording our contact and he asked for my name and badge number, which I provided. ALVAREZ started talking about traveling in his personal property without commercial purposes and would not provide me with proof of insurance or registration. ALVAREZ handed me documents similar to PC affidavits with what was determined to be his name on them. I passed them to SITTS who utilized the name for a records check of ALVAREZ. I could see ALVAREZ making furtive movements in the vehicle but the rear and floorboards of his vehicle were hard to see due to heavy tinting. The movements and odd behavior made me concerned ALVAREZ could be concealing a weapon

With the records check ALVAREZ was found to not possess a valid driver`s license and [Redacted] [Redacted]. The vehicle was illegally parked in a marked red zone fire lane next to a busy EMX station adjacent to an intersection. I asked for my Captain and an additional officer to assist at the scene. There was a caution indicator aired to officers that ALVAREZ is a trained martial artist and I did not want to risk injury to any officers or ALVAREZ if he had to be removed from the vehicle. See Officer SITTS` and BARRETT`S reports for additional details regarding the behavior of ALVAREZ during this contact. SITTS indicated he wanted to issue ALVAREZ citations for the vehicle violations and the vehicle would need to be towed from the redzone. If ALVAREZ refused the lawful order to exit the vehicle he would be arrested for interfering.

After I conferred with Captain MORRIS and officers were in place around the vehicle, SITTS attempted to order ALVAREZ out of the vehicle. ALVAREZ was given several opportunities to comply and SITTS admonished him of the reason to exit the vehicle. ALVAREZ exited the vehicle and began fighting with SITTS after SITTS told him to turn around towards the vehicle. ALVAREZ yelled at SITTS and began grappling with him. I tried to take control of the left arm of ALVAREZ. ALVAREZ was very strong and I had difficulty holding his arm despite my own regular routine of weight lifting. I could hear SITTS yelling at ALVAREZ to stop resisting. While trying to maintain my hold with ALVAREZ, I felt myself struck in the face by his hand and something entered my mouth. I could see BARRETT raising his taser in my peripheral vision and hear him yelling. ALVAREZ and I had began spinning and he was trying to take control of my arm instead. This concerned me greatly since ALVAREZ had initially felt as if he was trying to pull away from me and now he was actively attacking me to pull me into a vulnerable position. Worried ALVAREZ would overpower and hurt me or BARRETT might strike me with the taser, I tried to push

Investigator Signature   Supervisor Signature

## CASE SUPPLEMENTAL REPORT

Printed: 02/27/2020 08:51

*University Of Oregon Police Department*

OCA: **1900059**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *CLEARED BY ARREST*  **Case Mng Status:** *NA*  **Occurred:** *01/15/2019*
**Offense:** *ASSAULT PUBLIC SAFETY OFFICER - SIMPLE ASLT*

**Investigator:** *GEETING, S. (UO114)*  **Date / Time:** *01/15/2019 23:10:52, Tuesday*
**Supervisor:** *BARRETT, S. (UO311)*  **Supervisor Review Date / Time:** *01/16/2019 08:40:04, Wednesday*
**Contact:**  **Reference:** *Supplemental*

away from ALVAREZ. ALVAREZ and I were being pulled by his momentum towards the busy street and potentially into traffic. I was able to break free as we reached the curb along the south median and BARRETT deployed his taser. I immediately went to secure ALVAREZ while the taser was under power, which I could hear cycling. After I grabbed one of his hands SITTS began handcuffing ALVAREZ. I could taste blood in my mouth and the left side of my jaw hurt. I got up from the side of ALVAREZ and spoke to MORRIS and turned off my body camera. I could feel a throbbing pain in my jaw and there was a cut through my gums on the lower left side. I could see some small partially healed cuts on the hands of ALVAREZ and realized the object I had felt in my mouth had been consistent with one of his fingers and I may have been exposed to his blood.

After ALVAREZ was treated and the medics were on scene I attempted to ask ALVAREZ if he had any additional injury and he refused to speak with me. Officer BROOKS was found to have sustained a laceration to her left ring finger knuckle. Officer SITTS had a split on his lower left lip. I went to the University District Hospital to be evaluated for the injury to my mouth. The cut was deep enough to require medication and a doctors prohibition on certain foods from being consumed until healed. See SITTS` and BARRETT`S reports for disposition and additional information.

Investigator Signature                    Supervisor Signature

## CASE SUPPLEMENTAL REPORT

Printed: 02/27/2020 08:51

*University Of Oregon Police Department*

OCA: **1900059**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** CLEARED BY ARREST  **Case Mng Status:** NA  **Occurred:** 01/15/2019
**Offense:** ASSAULT PUBLIC SAFETY OFFICER - SIMPLE ASLT

**Investigator:** SITTS, L. (UO329)  **Date / Time:** 02/10/2019 08:59:12, Sunday
**Supervisor:** BARRETT, S. (UO311)  **Supervisor Review Date / Time:** 02/10/2019 12:19:00, Sunday
**Contact:**  **Reference:** Evidence / Property

DOCUMENT RECEIVED
On 02/05/2019 a document was delivered to me at the U of O Police Department marked Private and Confidential.

The envelope was addressed from James Brent ALVAREZ and contained a document that was 34 pages long and spiral bound containing ALVAREZ`s name on each page and a thumb print.

The document was titled:    "In My Private Capacity
             Notice of Liability - Non negotiable
                Bills of the Lading"

Inside the document was a written statement that requested additional clarification regarding the traffic citations issued under this case number, a request for payment of $4000 for ALVAREZ`s time spent completing the packet, and several pages of copied citations containing marginal notes contesting the validity of the citation format and language.

The original copy of the document was submitted to evidence under this case number and a copy of the document was scanned into Case Photos under this report number.

DISPOSITION
I recommend this investigation remain CLEARED with an Arrest

ROUTING
Lane County District Attorney`s Office - Attn prosecutor for case 19-00059

Investigator Signature    Supervisor Signature

## CASE SUPPLEMENTAL REPORT

Printed: 02/27/2020 08:51

*University Of Oregon Police Department*

OCA: **1900059**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *CLEARED BY ARREST*  **Case Mng Status:** *NA*  **Occurred:** *01/15/2019*
**Offense:** *ASSAULT PUBLIC SAFETY OFFICER - SIMPLE ASLT*

**Investigator:** *SITTS, L. (UO329)*  **Date / Time:** *03/10/2019 10:17:27, Sunday*
**Supervisor:** *GEETING, S. (UO114)*  **Supervisor Review Date / Time:** *03/11/2019 06:59:32, Monday*
**Contact:**  **Reference:** *Evidence / Property*

SOURCE OF ACTIVITY
On 03/10/2019 at approximately 0700 hrs as I began my patrol shift I noted a brown envelope in my department mailbox with a return address of:



EVIDENCE IMPOUNDED
I opened the envelope and inside was a spiral bound document that included a photocopy of the document previously sent to me by ALVAREZ on 02/05/2019 with two new pages asserting a "notice of default" added to the front of the document. The two new pages have been photocopied and saved in case photos under this report number. I advised Sgt S. GEETING of the document and my intention to impound it as evidence in this incident.

The document was impounded as evidence using Evidence Property Reciept 03046.

DISPOSITION
I recommend this investigation remain CLEARED with an arrest

ROUTING
Lane County District Attorney

Investigator Signature                                         Supervisor Signature

## CASE SUPPLEMENTAL REPORT

Printed: 02/27/2020 08:51

University Of Oregon Police Department

OCA: **1900059**

**THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY**

**Case Status:** CLEARED BY ARREST  **Case Mng Status:** NA  **Occurred:** 01/15/2019
**Offense:** ASSAULT PUBLIC SAFETY OFFICER - SIMPLE ASLT

**Investigator:** SITTS, L. (UO329)  **Date / Time:** 04/08/2019 08:02:32, Monday
**Supervisor:** GEETING, S. (UO114)  **Supervisor Review Date / Time:** 04/08/2019 12:49:23, Monday
**Contact:**  **Reference:** Evidence / Property

EVIDENCE IMPOUNDED
On 03/21/2019 and 04/01/2019 I received more of the brown manila mailing envelopes. Both documents had a return address of:



The envelope sent 03/21/2019 contained a document titled "Second Notice of Default". See the scanned photograph in Case Photos for more information.

The envelope sent 04/01/2019 contained a document titled "Final Notice of Default". See the scanned photograph in Case Photos for more information.

Both documents were booked into UOPD evidence as they were received.

DISPOSITION
I recommend this investigation remain CLEARED with an arrest

ROUTING
Lane County District Attorney

Investigator Signature  Supervisor Signature

## CASE SUPPLEMENTAL REPORT

Printed: 02/27/2020  08:51

*University Of Oregon Police Department*

OCA: **1900059**

**THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY**

**Case Status:** *CLEARED BY ARREST*  **Case Mng Status:** *NA*  **Occurred:** *01/15/2019*
**Offense:** *ASSAULT PUBLIC SAFETY OFFICER - SIMPLE ASLT*

**Investigator:** *SITTS, L. (UO329)*  **Date / Time:** *04/21/2019 09:53:43, Sunday*
**Supervisor:** *BARRETT, S. (UO311)*  **Supervisor Review Date / Time:** *04/21/2019 10:03:20, Sunday*
**Contact:**  **Reference:** *Supplemental*

EVIDENCE
Photocopies of document sent by ALVARES
Physical Document - Evidence sheet 02597
UOP Court Summons 114081, 114082, 114083, 116188, 116189

INVESTIGATION
On 04/21/2019 at approximately 0700hrs I received a document via registered mail from James Brent ALVARES.

Inside the mailing envelope was another spiral bound document containing 6 pages titled "NOTICE OF ESTOPPEL" in which ALVAREZ demands $250,010,000.00 and states his intent to sue within 10 days to receive the above amount.

The rest of the document appears to be copies of the other documents mailed to UOPD over the last several months.

See the document saved in Case Photos under this report number and in UOPD physical evidence for more information.

ROUTING
-Lane County District Attorney
-U of O General Counsel

Investigator Signature  Supervisor Signature

## CASE SUPPLEMENTAL REPORT

Printed: 02/27/2020 08:51

*University Of Oregon Police Department*  OCA: **1900059**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** CLEARED BY ARREST   **Case Mng Status:** NA   **Occurred:** 01/15/2019
**Offense:** ASSAULT PUBLIC SAFETY OFFICER - SIMPLE ASLT

**Investigator:** GEETING, S. (UO114)   **Date / Time:** 07/15/2019 16:37:48, Monday
**Supervisor:** LILLENGREEN, A. (UO314)   **Supervisor Review Date / Time:** 07/16/2019 19:30:55, Tuesday
**Contact:**   **Reference:** Supplemental

SEIZED DOCUMENTS:  5 Civil Summons addressed to Scott Geeting, Geri Brooks, Luke Sitts, Steven Barrett and the University of Oregon Police Department

SOURCE OF ACTIVITY:

On 7/15/19 at around 12:22 hours ALVAREZ came into the UOPD police station in an attempt to deliver purported legal documents.

INVESTIGATION / OBSERVATIONS:

At approximately 12:45 hours on 7/15/19 I was meeting with UOPD Security Director James Stegall in his office on the south side of the UOPD station. I noticed Executive Coordinator Rachel Dale showing someone out of the building. I knew she had been speaking with someone in the interview room but did not know whom.  As the subject passed the building going west on the East 15th Avenue sidewalk I could see him through the windows of the office. The subject looked familiar but I could not immediately place him. He was wearing a dark suit, carrying a briefcase and wore some sort of name small clip on name badge.

I asked Dale who she had been speaking with. She handed 5 partially typed and handwritten civil summons naming the department,  three officers and myself as defendants in a civil case. The person she spoke to identified himself as ALVAREZ. I confirmed with Dale that ALVAREZ had not identified himself as a law enforcment officer, but had been allowed access to the facility to serve what she believed to be court documents. Dale stated ALVAREZ was going to the UO General Counsels office next to serve additional documents. The GC office is located inside Johnson Hall, 1098 East 13th Avenue.

I knew ALVAREZ had been sending spurious legal documents demanding compensation to the department since his arrest by UOPD.  ALVAREZ was arrested by UOPD on 1/15/19 after injuring me during the course of a traffic stop initiated by SITTS.  The language and behavior of ALVAREZ during his arrest was consistent with the "sovereign citizen" movement. Individuals associated with this movement see themselves as answerable only to their own interpretation of common law.

I thought ALVAREZ may have a letter of trespass from the UO campus. A records check showed ALVAREZ did not have a current letter of trespass but caution indicators showed him to be a trained martial artist and he had already managed to convince staff to let him into a restricted portion of our facility. I had UOPD Communications and Emergency Response Center notify the UO General Counsels office to expect the arrival of ALVAREZ. I was diverted to another call and arrived at the UO General Counsels office after ALVAREZ had left. I saw him briefly walking east on East 13th Avenue near Agate Street.

Investigator Signature   Supervisor Signature

**CASE SUPPLEMENTAL REPORT**   Printed: 02/27/2020  08:51

*University Of Oregon Police Department*   OCA: **1900059**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *CLEARED BY ARREST*   **Case Mng Status:** *NA*   **Occurred:** *01/15/2019*
**Offense:** *ASSAULT PUBLIC SAFETY OFFICER - SIMPLE ASLT*

**Investigator:** *GEETING, S.  (UO114)*   **Date / Time:** *07/15/2019 16:37:48, Monday*
**Supervisor:** *LILLENGREEN, A.  (UO314)*   **Supervisor Review Date / Time:** *07/16/2019 19:30:55, Tuesday*
**Contact:**   **Reference:** *Supplemental*

Copies of the documents dropped off by ALVAREZ were provided to their office and the originals will be filed with UOPD records. I generated and IT request that copies of the station surveillance footage from this incident be saved under this case number

DISPOSITION:

The original incident was cleared by arrest and this supplemental serves to document continued contact by ALVAREZ regarding his initial arrest.

Investigator Signature                                                                 Supervisor Signature

Page 20

**Exhibit 2**
**Page 20 of 20**