IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

JAMES-BRENT: ALVAREZ,

      Plaintiff,

    vs.

UNIVERSITY OF OREGON, et al.,

      Defendants.

Case No. 6:19-cv-01071-AA
**OPINION AND ORDER**

AIKEN, District Judge:

      Plaintiff James-Brent: Alvarez, proceeding pro se, alleges that Defendants, various University of Oregon employees and officials, violated his rights under federal law. Plaintiff's claims arise from a traffic stop by University of Oregon Police Department ("UOPD") officers, which culminated with UOPD officers tasing and arresting Plaintiff. Before the Court is Defendants' Motion for Summary Judgment, ECF No. 85, along with the Parties' responsive motions, and Plaintiff's other motions, which the Court construes as a Motion for Declaratory Judgment, ECF No. 106, and Motions for Leave to Amend, ECF Nos. 109, 112, 113, 114, and 115. Having

Page 1 – OPINION AND ORDER

considered the parties' briefs, declarations, and exhibits, and for reasons next explained, Defendants' Motion for Summary Judgment, ECF No. 85, is GRANTED, and Plaintiff's motions, ECF Nos. 106, 109, 112, 113, 114, and 115 are DENIED.

## SUMMARY JUDGMENT STANDARD

At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c). *Scott v. Harris*, 550 U.S. 372, 380 (2007). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–587 (1986) (quotations and footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott*, 550 U.S. at 380 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248 (1986) (emphasis in *Scott*).

## BACKGROUND

The procedural history pertaining to Plaintiff's "other motions" is discussed in greater detail below.

## I.    Procedural History Relevant to Summary Judgment

In January 2020, the Court issued an Opinion and Order, ECF No. 37, dismissing all Plaintiff's claims against the University of Oregon and UOPD with

prejudice, and all claims against the individual defendants except for Plaintiff's claim under 42 U.S.C. § 1983 for excessive force in violation of the Fourth Amendment. The Court granted Plaintiff leave to amend claims asserted under § 1985 and § 1986.

Plaintiff filed a Second Amended Complaint ("SAC"), ECF No. 38, adding UOPD Command Officer Don Morris as a defendant and providing supplemental facts for his claims. Defendants filed a Motion to Dismiss, ECF No. 41. Plaintiff did not respond to Defendants, but rather requested Leave to File a Third Amended Complaint, ECF No. 45, to which Plaintiff attached his "proposed complaint."

On August 25, 2020, the Court considered those motions together, concluding that the "proposed complaint" added "new claims and theories of liability," but did not "correct any of the deficiencies" the Court had identified within Plaintiff's previously filed complaints. Op. Order ("Order") at 32, Aug. 25, 2020, ECF No. 64. The Court determined that Plaintiff's "proposed amendments would be futile" given that Plaintiff had been granted an opportunity to allege facts sufficient to show entitlement to relief but had not done so. Order at 32. Accordingly, the Court granted Defendants' Motion to Dismiss, and denied Plaintiff's Motion for Leave to File a Third Amended Complaint. The Court ordered the case to proceed on one claim: Plaintiff's § 1983 claim for excessive force against the named UOPD officers. Order at 32.

Following the Court's Order, Plaintiff filed several motions, including what the Court construed as a motion for reconsideration of its August 25, 2020 Order and renewed request to file a third amended complaint. The Court denied Plaintiff's motions by Minute Order, ECF No. 81, restating that the case would proceed on a

single claim under § 1983 for excessive force under the Fourth Amendment against UOPD Officers Sitts, Barrett, Geeting, Brooks, and Morris.

Defendants filed a Motion for Summary Judgment ("MSJ"), ECF No. 85. Plaintiff filed another motion requesting leave to file a third amended complaint and the Court denied Plaintiff's request by Minute Order, ECF No 97. After Plaintiff filed a responsive and supplemental motion in opposition to Defendant's Motion for Summary Judgment, Plaintiff filed six additional motions, each primarily aimed at amending the underlying claims in this case.

## II.    Factual Background

The following facts are undisputed or readily apparent from UOPD's bodycam footage. *See Scott*, 550 U.S. at 380 (2007) (stating that, when parties tell two different stories, one of which is contradicted by the video footage, the court should view the facts in the light depicted by the videotape.).

In mid-January 2019, while on duty and in a full department-issued uniform with a prominently displaced badge, Officer Sitts was driving a marked patrol vehicle equipped with an in-car camera and mobile audio video system in the area near 13th Avenue and Alder Street in Eugene, Oregon. Around noon, Officer Sitts observed a black BMW M3—a "street legal" enhanced-performance race vehicle—traveling on 13th Avenue near Kincaid Street with no rear license plate. SAC ¶¶ 11, 20-21; Sitts Decl. ¶2. Officer Sitts followed the vehicle, noting that it had extremely dark tint obscuring the interior of the vehicle. Sitts Decl. ¶ 2. Officer Sitts pulled the vehicle over. Plaintiff was the driver. As Officer Sitts approached the vehicle, he observed

that there was no temporary registration tag in the rear window.  Officer Sitts was not able to verify this before approaching the vehicle on foot because of the vehicle's dark window tint.  Wade Decl. ¶ 7 Ex. 6 at 0:01-1:05; Sitts Decl. ¶2.  When Officer Sitts arrived at the driver's side window, Plaintiff opened it about one to two inches and did not lower it further at any point during the traffic stop.  Wade Decl. ¶¶ 3, 7, 8C, Exs. 2, 6, 7C; Sitts Decl. ¶2.

Plaintiff asked Officer Sitts for his name, badge number, and reason for the traffic stop.  Sitts Decl. ¶ 2.  After answering Plaintiff's questions, Officer Sitts informed Plaintiff that he had pulled him over "for not having a rear plate on the automobile."  SAC ¶¶ 18-19, 21, 24; Wade Decl. ¶ 7, Ex. 6 at 0:01-1:05.  Sitts then asked Plaintiff for his driver's license, proof of registration, and proof of insurance.  Plaintiff invoked his *Miranda* rights and refused to answer questions or provide a copy of the requested documents.  Officer Sitts repeated his request, but Plaintiff continued to remain silent, except to repeatedly ask Officer Sitts for his name, badge number, and the reason for stopping him.  SAC ¶¶ 23, 27-28; Wade Decl. ¶ 7, Ex. 6; Sitts Decl. ¶ 2.

Plaintiff then began reading from a prepared list, stating that he was not operating his vehicle in a "commercial manner" and thus was "not under the jurisdiction of the State laws."  Pls. Resp Opp'n 3, ECF No. 100; Wade Decl. ¶ 7, Ex. 6; Sitts Decl. ¶ 2.  Officer Sitts observed Plaintiff reaching across the front of his vehicle, but Officer Sitts could not see what exactly plaintiff was doing or what was in Plaintiff's hands due to the dark window tint and the two-inch window opening.

Sitts Decl. ¶ 2.

During Officer Sitts's interactions with Plaintiff, he observed Plaintiff making furtive movements towards the center console, door pockets, and dash area of his vehicle. Officer Sitts determined that Plaintiff was behaving in a concerning manner. Wade Decl. ¶ 3, Ex. 2; Sitts Decl. ¶ 2. Officer Sitts requested back up from other police. Officer Brooks arrived, and, from the passenger side of the vehicle, Officer Brooks also observed Plaintiff repeatedly reaching under his driver's seat and in the glovebox. Brooks Decl. ¶ 2. Officer Brooks was unable to see what exactly Plaintiff was doing due to the dark window tint and "was greatly concerned for the safety of the Officers on the stop the longer the stop continued." Wade Decl. ¶¶ 3, 9A-9C.

Eventually, Plaintiff provided a multi-page document through the crack in the car window, which led Officer Sitts to suppose that Plaintiff harbored "sovereign citizen" beliefs. SAC ¶ 34; Wade Decl. ¶ 7, Ex. 6. One of the documents contained Plaintiff's name. Plaintiff also provided his birthdate and home address, which confirmed his identity and that he had an identification card, but no driver's license. Based on that information, dispatch relayed that Plaintiff had a Law Enforcement Data System ("LEDS") caution code as being an "expert martial artist." Wade Decl. ¶ 3, Ex. 2; Barrett Decl. ¶ 2; Geeting Decl. ¶ 2; SAC ¶ 2.

Sergeant Geeting and Corporal Barrett arrived on the scene to assist Officers Sitts and Brooks. SAC ¶ 31; Barrett Decl. ¶ 2; Geeting Decl. ¶ 2. As Corporal Barrett approached the vehicle, he observed the vehicle's heavily tinted windows. Based on his training and experience, Corporal Barrett determined that the windows were

tinted illegally.  Barrett Decl. ¶ 2.  Officer Sitts then repeated his request for the standard driving documentation a third time, but Plaintiff refused. (SAC ¶ 32.

After some time, Plaintiff the officers with a document entitled "Affidavit of Truth," which Plaintiff alleges constitutes a contract, and a seventeen-page document of "U.S.-Supreme-Court-Case-Law for the traveling without the license-plates." SAC ¶ 34; Wade Decl. ¶ 3, Ex. 2.  The so-called Affidavit of Truth alerted the UOPD Officers of Plaintiff's willingness to defend himself:

> ". . . I will, under protest, be compliant and not resist any command you may issue *unless I find it necessary to act in defense* of my health and safety or the health and safety of others present as is allowed by law. *I am competent to determine when acts of self-defense are, and are not necessary and justified.* Unless you unjustly and/or unlawfully assault or commit battery upon me I pose no threat or danger to you or your associates."

SAC ¶ 36 (emphasis added).

After reviewing the document, Sergeant Geeting saw Plaintiff making furtive movements in the vehicle, but the rear and floorboards of his vehicle were hard to see due to the dark tint. Based on Plaintiff's shifty movements and odd behavior, Sergeant Geeting became concerned that Plaintiff could be concealing a weapon. Wade Decl. ¶ 3, Ex. 2; Geeting Decl. ¶ 2.

Corporal Barrett then asked Plaintiff if there were any weapons in the vehicle. Plaintiff refused to answer him.  After a few minutes, Corporal Barrett moved in front of the vehicle and aimed a flashlight through the front window, so he could see Plaintiff through the tinting.  As he was watching Plaintiff through the front window, Corporal Barrett observed that the vehicle's Vehicle Identification Number was

covered with a piece of paper.  Wade Decl. ¶¶ 3, 6, Exs. 2, 5A; Barrett Decl. ¶ 2.  After Plaintiff's failure to comply with multiple requests to provide the necessary documents, Officer Sitts determined that a vehicle operated with no driver's license, no proof of insurance, no registration, and parked in a "No Parking" fire lane in the lane of travel was creating a traffic hazard.

Officer Sitts decided that it was best to remove Plaintiff from the vehicle, conduct a "pat down" for any weapons that could be used against the UOPD Officers, and facilitate the vehicle being towed for the above-referenced traffic violations. Wade Decl. ¶ 3, Ex. 2; Sitts Decl. ¶ 2.

After consulting with Sergeant Geeting and the other officers, Officer Sitts approached Plaintiff's vehicle with Sergeant Geeting.  Corporal Barrett stood in front of the vehicle, and Officer Brooks provided cover from the passenger side.  Officer Sitts informed plaintiff that his vehicle was being towed for several traffic infractions, ordered plaintiff to step out of the vehicle, and told Plaintiff that he was not free to go.  Plaintiff stated for his recording that he did not consent and was being "kidnapped," and then said he would comply with the order to exit the vehicle. Plaintiff rolled his window back up and reached around the interior of his vehicle. SAC ¶ 44; Wade Decl., ¶¶ 3, 7, Exs. 2, 6A; Sitts Decl. ¶ 2.

When Plaintiff opened the driver's side door and stepped out, he reached his right hand into the front pocket on his sweatshirt.  Wade Decl. ¶ 7, Ex. 6A.  Officer Sitts grabbed Plaintiff's right arm as Plaintiff reached into his front pocket.  SAC ¶ 50; Wade Decl. ¶¶ 6, 7, Exs. 5B, 6A.  Plaintiff shouted, "Get your fucking hands off

me." Wade Decl. ¶¶ 3, 7, Exs. 2, 6A.  Sitts told Plaintiff to put his hands behind his back and that he was being detained.  SAC ¶¶ 48-50; Wade Decl. ¶¶ 3, 6, 7, Exs. 2, 5B, 6A.  As Sergeant Geeting and Officer Sitts attempted to control Plaintiff's arms to place him under arrest, Plaintiff lurched away from Officer Sitts towards Officer Geeting, apparently to defend himself as he deemed "necessary and justified."  SAC ¶ 36(9); Wade Decl. ¶¶ 3, 6, 8, Exs. 2, 5B, 7D.  Plaintiff "instinctively resisted" Officer Sitts.  Pls. Resp. Opp'n at 5.  Plaintiff grabbed Sergeant Geeting by the arm, swinging him around to "use officer Geeting as a shield."  Pls. Resp. Opp'n at 5; Wade Decl. ¶ 9a, Ex. 8 33:00-10.  Plaintiff then shoved his hand into Sergeant Geeting's face, plunging his fingers into Sergeant Geeting's mouth, grabbing him by the cheek, and cutting the gum on the lower left side of Sergeant Geeting's jaw.  Wade Decl. ¶ 9a, Ex. 8 33:00-10.  Plaintiff pulled Sergeant Geeting towards a street with busy traffic. Wade Decl. ¶¶ 8, 9, Ex. 7D, 8D.

At that point, Corporal Barrett drew his Taser and advised Plaintiff "stop or you're going to be tased."  Wade Decl. ¶¶ 3, 7, Exs. 2, 6A.  Corporal Barrett then deployed his Taser in probe mode.  SAC ¶¶ 49-54; Wade Decl. ¶ 7, Ex. 6B.  Plaintiff fell to the ground.  Wade Decl. ¶¶ 7, 9a, Exs. 6B, 8 33:00-15.  About ten seconds passed from when Plaintiff exited his car until the moment he was tased.  The Pulse Log Graph shows that the Taser was deployed for about 5 seconds.  Wade Decl. ¶ 5, Ex. 4; Barrett Decl. ¶ 2.

Sergeant Geeting, Officer Sitts, and Officer Brooks placed Plaintiff in handcuffs and took him into custody.  Wade Decl. ¶¶ 3, 6, 9, Exs. 2, 5C, 8E.  The

UOPD officers then told Plaintiff that he was under arrest and read him his *Miranda* rights. SAC ¶¶ 56, 58; Wade Decl. ¶ 9a, Ex. 8 33:00-15. While lying on the grass, Plaintiff stated to the officers "I do appreciate you doing your job." Wade Decl. ¶ 9, Exs. 8 34:58-35:09. The UOPD officers discovered that only one of the four Taser darts was attached to Plaintiff, who laughed and agreed that it felt like one dart hit his leg. Wade Decl. ¶ 9a, Ex. 8 35:30-36:30. With Plaintiff's permission, Corporal Barrett removed the dart from Plaintiff's left leg. Plaintiff denied having any other injuries. Wade Decl. ¶¶ 3, 6, Exs. 2, 5D; Barrett Decl. ¶ 2. The time between Officer Sitts pulling Plaintiff over and the UOPD Officers being taken into custody was approximately 30 minutes. Wade Decl., ¶ 7, Ex. 6; Sitts Decl. ¶ 2.

Plaintiff was cited for failure to display registration plates in violation of ORS 803.540; failure to carry a license or to present a license to a police officer in violation of ORS 807.570; and operating a vehicle without driving privileges in violation of ORS 807.010. Plaintiff was also charged with three criminal offenses—interference with a peace officer, resisting arrest, and assault of police officers. SAC ¶¶ 65, 68; Wade Decl. ¶ 3, Ex. 2.

## DISCUSSION

Plaintiff contends that UOPD officers used excessive force when UOPD officers committed a "battery" against him for "Plaintiff-resisting the assault."[1] Plaintiff also contends that the officers used excessive force when they shot him using "deadly-

---

[1] Plaintiff insists on using his own form of syntax for writing that is unusual. The Court liberally construes Plaintiff's chosen syntax style as best as it can, reprinting it in quotes as needed.

weapons-tasers" and caused "puncturing of the flesh and the electrocution of the Plaintiff, . . . a weapon-less-citizen[.]" SAC ¶ 51.

Defendants argue that no reasonable factfinder could conclude that the UOPD Officers used excessive force in apprehending plaintiff. MSJ at 15. Defendants maintain that UOPD Officers used "reasonable and appropriate force to gain compliance from a combative expert mixed-martial artist." Defendants also contend that Plaintiff's § 1983 claim is barred by the Eleventh Amendment, and, alternatively, that UOPD Officers are entitled to qualified immunity from suit because Plaintiff has neither demonstrated that (1) a genuine issue of material fact exists regarding whether use of a taser under the circumstances here violated Plaintiff's Fourth Amendment rights nor that (2) the right was clearly established.

Plaintiff responded that Corporal Barrett deprived him of his right to be informed about the nature of Officer Sitts' request to turn around and face his vehicle. Pls. Reply in Opp'n. at 5. He contends he "had a right to know what the armed officers intended to do to him before he turned his back to them." *Id*. Plaintiff maintains that he "instinctively resisted" Corporal Barrett, Sitts, and Geeting when they attempted to restrain him. *Id*. In Plaintiff's view, Corporal Barrett escalated the assault when he deployed his taser "after [Plaintiff] escaped the officer's assault[.]" Plaintiff also argues that "the State laws are not applicable to Plaintiff." *Id*. at 7. Plaintiff did not address Defendants' arguments concerning the Eleventh Amendment or qualified immunity.

Defendants reply that Plaintiff ultimately concedes that he believes the laws

do not apply to him; that he "resisted" arrest; that he actively defended himself by using Officer Geeting as a "shield"; and that he attempted to "escape" the arresting officers. In light of Plaintiff's own arguments, Defendants restate that UOPD Officers "[u]sed a reasonable amount of force to gain compliance" from Plaintiff, who "engaged in an actual physical struggle and threatening behavior[.]" Reply to MSJ 7, ECF No. 105.

Plaintiff filed a Supplemental Response adding that "the traffic stop was excessive because there was [sic] 5 armed police officers and against the plaintiff." Supp. Resp. 9, ECF No. 108. Otherwise, Plaintiff does not address the legal arguments Defendants raise, but rather contends, among other things, that the state laws do not apply to Plaintiff and that UOPD Officers "never read Plaintiff's document," presumably the so-called Affidavit of Truth. *Id*. at 7-9.

## I.    Excessive Force under § 1983

Section 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). To maintain a claim under Section 1983, "a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

Here, the parties do not dispute that the individual Defendants were acting under color of state law. Accordingly, the Court proceeds to analyze Plaintiff's claim of excessive force under the Fourth Amendment.

In evaluating a Fourth Amendment claim of excessive force, we ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (citations omitted). In assessing the objective reasonableness of a particular use of force, the Court considers: (1) the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted, (2) the government's interest in the use of force, and (3) the balance between the gravity of the intrusion on the individual and the government's need for that intrusion. *Id*. at 396; *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017) (en banc).

The objective reasonableness test is necessarily fact-dependent. The relevant factors "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," because "police officers are often forced to make split second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. The Court notes that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," and thus "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id*. at 396 (internal quotation marks and citations omitted). If there are "no genuine issues of material fact and 'the relevant set of facts' has been determined, the reasonableness of the use of force is 'a pure question of law.'" *Lowry*, 858 F.3d at 1256.

### A.    *Type and Amount of Force Used*

Applying the factors above, the Court first considers the nature and quality of the force used against Plaintiff.  Here, the undisputed evidence is that, in period lasting about ten seconds, UOPD Officers unsuccessfully attempted to restrain Plaintiff by taking hold of his arm, and when Plaintiff grabbed at Officer Geeting, swung him around and, by Plaintiff's own admission, resisted arrest, Officer Barret deployed a taser resulting in a single dart making contact with Plaintiff's leg for approximately five seconds, ending when Plaintiff fell to the ground. Video footage from multiple perspectives show when UOPD officers told Plaintiff that medical staff would arrive to remove the dart, Plaintiff asked why UOPD Officers could not take it out themselves.  During the conversation about the dart, Plaintiff laughed.  Plaintiff also told the officers that he appreciated them doing their job.  Medical staff arrived and noted Plaintiff was clear of injuries.

Based on undisputed evidence, the Court determines the degree of intrusion was necessary under the totality of the circumstances in this case, where police dispatch warned about Plaintiff's martial arts experience, UOPD officers' acknowledged Plaintiff's documentation concerning Plaintiff's willingness to defend himself as necessary, and observed that Plaintiff had been reaching around in his car before he exited his vehicle and reached into his pocket when he stepped out.  Use of a taser is not an insignificant force, but the Court concludes on the evidence such use was objectively reasonable' in light of the facts and circumstances confronting UOPD officers.

**B.    *Government Interest in Use of Force***

Next, this court considers the governmental interests at stake.  Under this factor, the Supreme Court has identified three additional elements for consideration. *Graham*, 490 U.S. at 396.  First, the Court considers the severity of Plaintiff's crimes. *Id*.  Here, Plaintiff was operating a heavily tinted vehicle with no license plates, and upon further inspection, he had concealed Vehicle Identification Number, and refused to provide a driver's license or proof of registration.  The vehicle infractions may have constituted the initial crime at issue, but the "severity of the crime" escalated when Plaintiff stepped out of his vehicle and grabbed Officer Geeting by the arm and face. Officer Barret did not tase Plaintiff based on his vehicle infractions, but because Plaintiff assaulted Officer Geeting.  Accordingly, the severity of Plaintiff's crimes factor favors the government.

Second, the Court considers whether Plaintiff posed an immediate threat to the safety of the officers or others, which the Ninth Circuit recognizes as the most important of the three *Graham* factors.  *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir.2005) (en banc).  Here, as discussed above, the circumstances at the time involved OUPD officers viewing information identifying Plaintiff as a potential hazard.  Plaintiff does not dispute that fact, but rather, emphasizes his own expertise in martial arts and self-defense and claims that his violent reaction was instinctive. Further, UOPD officers expressed concern that Plaintiff was concealing weapons and when Plaintiff reached his hand into his pocket, it was unknown whether he was withdrawing a weapon.  This evidence suggests that UOPD officers could reasonably

believe that officer safety was at risk.

Third, the Court considers whether Plaintiff was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396.  In this case, the undisputed material facts indicate that Plaintiff lurched away when OUPD officers attempted to restrain him, then grabbed Officer Geeting and swung him around as a shield, eventually hooking Officer Geeting by the mouth and pulling him towards traffic.  Plaintiff admits that he actively resisted arrest and that he tried to escape the officers' attempt to restrain him.  Accordingly, this factor tips heavily in favor of Defendants.

After balancing the factors concerning the government's interest in use of force, the Court concludes that UOPD held a reasonable interest in deploying a taser for five seconds until Plaintiff stopped grabbing and swinging at Officer Geeting.

### C.   *Balance Between the Gravity of the Intrusion and Need for the Intrusion*

Finally, the Court must consider whether the force that was applied was reasonably necessary under the circumstances after balancing the gravity and the need for the intrusion on Plaintiff's Fourth Amendment rights. *Graham*, 490 U.S. at 397.  Even when viewed in the light most favorable to Plaintiff, all of the factors suggest the use of the taser was objectively reasonable:  UOPD's taser deployment was brief, appropriately commensurate with Plaintiff's conduct, and reasonably proportionate and necessary to gain compliance from an uncooperative, self-proclaimed expert mixed-martial artist engaged in actual physical struggle and threatening behavior towards the UOPD Officers and unresponsive to clear,

reasonable commands before Corporal Barrett deployed his taser. Plaintiff's Fourth Amendment rights were not violated by defendant Barrett, or any other UOPD officer. Corporal Barrett's use of the taser was not constitutionally excessive.

## II.    Summary of Excessive Force Findings

The Court recognizes that the Ninth Circuit has "held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005). That is because the excessive force inquiry "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom." *Id.* Here, however, the evidence, reviewed in the light most favorable to Plaintiff, cannot support a finding of excessive force.

The evidence is that Corporal Barrett used nonlethal force in the context of an incident involving Plaintiff who (1) had a caution flag based on his expert martial-arts experience; (2) made movements to reach around in an obscured vehicle; (3) had not been searched for weapons; (4) had been uncooperative with the UOPD Officers for almost half an hour; (5) had expressed that he—in his sole discretion—would decide when he would use force in self-defense; (6) refused to surrender or obey the police officers' reasonable (and the Court observes, polite) instructions; and (7) actively resisted arrest.

Those undisputed facts, even viewed in the light most favorable to Plaintiff, show a routine traffic stop that escalated solely because of Plaintiff's resistance and physical aggression. The Court has read every declaration and viewed all Plaintiff's

and Defendants' exhibit and takes particular note of the video evidence.  The record taken as a whole "could not lead a rational trier of fact to find for the nonmoving party," where Defendants have properly supported their argument that UOPD officers' actions were "objectively reasonable" in light of the facts and circumstances confronting them.  *Matsushita Elec. Industrial Co.,* 475 U.S. at 586–587; *Graham* 490 U.S. at 397.  Accordingly, Defendants are entitled to summary judgement.

Because the Court has determined that Plaintiff's rights were not violated, it is not necessary to reach the issue of whether Plaintiff's claim is barred by the Eleventh Amendment or the issue of qualified immunity.

## PLAINTIFF'S OTHER MOTIONS.

### I.    Procedural History

The Court has given Plaintiff considerable leeway to file numerous amended pleadings.  After Plaintiff initiated suit and Defendants filed a Motion to Dismiss, Plaintiff filed several Amended Complaints (or Motions to Amend the Complaint which included his proposed amendments).  ECF Nos. 19, 29, 36.  As discussed earlier, the Court considered each of those filings and issued an Opinion and Order granting Plaintiff leave to amend his § 1983, § 1985, and § 1986 claims against the individual defendants.  Op. & Order, ECF No. 37 (Jan. 6, 2020).

Plaintiff then filed the titled "Second Amended Complaint."  ECF No. 38. Defendants responded with a second Motion to Dismiss.  ECF No. 41.  Plaintiff did not directly respond to Defendant's Motion to Dismiss.  Instead, he filed another "Motion for Leave to File Amended Complaint."  ECF No. 45.  By Minute Order, the

Court directed Plaintiff "to file a brief responding to the arguments made in defendants' motion to dismiss," and ordered Defendants to respond to Plaintiff's request for Leave to File Amended Complaint.   Order, ECF No. 46 (Apr. 1, 2020). The parties filed responsive briefings.

Plaintiff then filed a Motion for Leave to Amend his response to Defendant's Motion to Dismiss.  ECF No. 56.  The Court granted it.  Order, ECF No. 59 (May 19, 2020).  Plaintiff also filed a motion raising a claim for "Performance of a Contract," ECF No. 58, to which Defendants responded and Plaintiff replied—all while the Court had yet to rule on Defendant's Motion to Dismiss.  The Court denied Plaintiff's Motion for Performance of Contract, ultimately declining to consider it.  Order, ECF No. 63 (Jun. 11, 2020).

The Court then issued an Opinion and Order granting in part Defendants' Motion to Dismiss, ECF. No 41, and denying Plaintiff's Motion(s) to File a Third Amended Complaint.  Op. & Order, ECF No. 64 (Aug. 25, 2021).  In denying Plaintiff's Motion to File a Third Amended Complaint, the Court explained that it had provided notice to Plaintiff about the deficiencies in his proposed complaints, and that, after giving Plaintiff opportunity to amend, it was clear that no amendment could cure the defects.  Op. & Order at 32 (Aug. 25, 2021).  The Court thoroughly discussed its reasoning for each of Plaintiff's claims and proposed amendments, concluding that each were "futile."  Op. & Order at 5, 24, 25, 27, 29-32 (Aug. 25, 2021); *see Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (futility of amendment "can, by itself, justify the denial of a motion for leave to amend."); *Moore v. Kayport Package Exp.,*

*Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) ("Leave to amend need not be given if a complaint, as amended, is subject to dismissal."). As explained above, the Court ordered the case to proceed on a single claim under § 1983 for excessive force.

Despite the court's repeated denial of Plaintiff's requests to file an amended complaint, Plaintiff filed a Motion for Reconsideration which included a request "for leave to file a Third Amended Complaint," ECF No. 71. The Court granted the Motion for Reconsideration to clarify a clerical detail but denied Plaintiff's request for leave to file a Third Amended Complaint, emphasizing that the case would proceed on a single claim under § 1983 for excessive force. Order, ECF 81 (Dec. 11, 2020).

Nevertheless, after Defendants filed their MSJ, Plaintiff filed motions to "File an Amended Complaint", ECF No. 109; "Amend the Pleadings", ECF No. 113; and "Supplement the Complaint", ECF No 114. Plaintiff also filed an "Original Action for Declaratory Judgment", ECF No. 106, and an "Amended Action for Declaratory Judgment", ECF No 112.

## II. Discussion

### A. *Leave to Amend*

The district court has particularly broad discretion in deciding whether to grant leave to amend when a plaintiff has previously been permitted leave to amend. *Chodos v. West Publishing Co.*, 292 F.3d 992, 1003 (9th Cir. 2002). In determining whether to grant leave to amend, the district court considers the presence of any of the following four factors: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, and (4) futility. *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708,

712 (9th Cir. 2001).  As discussed, futility of amendment, however, "can, by itself, justify the denial of a motion for leave to amend."  *Bonin*, 59 F.3d at 845

The Court has reviewed Plaintiff's motions to "File an Amended Complaint", ECF No. 109; "Amend the Pleadings", ECF No. 113; and "Supplement the Complaint", ECF No 114.  Those motions are denied for the reasons stated in the Court's August 25, 2021 Order, in addition to the finding that the motions are filed in bad faith and will cause undue delay, where Plaintiff has disregarded the Court's three orders denying Plaintiff's prior requests to amend his pleadings.

### B.    New Theories of Liability

The Court has also considered Plaintiff's "Original Action for Declaratory Judgment", ECF No. 106, and his "Amended Action for Declaratory Judgment", ECF No. 112, both of which Plaintiff filed four months after Defendants filed their Motion for Summary Judgment.

Among other things, Plaintiff challenges the constitutionality of ORS 807.010 and ORS 807.570—the statues under which he was cited for his traffic infractions. That is a new theory of liability that Plaintiff did not raise in the operative complaint according to which Defendants filed their MSJ.

The Ninth Circuit has explained that new theories may not be raised to defeat summary judgment.  "[A]dding a new theory of liability at the summary judgment stage would prejudice the defendant who faces different burdens and defenses under the second theory of liability."  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir.2000).  "The issues on summary judgment are framed by the complaint," and "the

issues in the complaint guide the parties during discovery and put the defendant on notice of what evidence is necessary to defend against the allegations." *Ortiz v. Lopez*, 688 F. Supp.2d 1072, 1082 (E.D. Cal. 2010). "For these reasons, a plaintiff cannot oppose summary judgment based on a new theory of liability because it would essentially blind side the defendant with new legal issues after the bulk of discovery has likely been completed." *Id*.

Accordingly, the Court concludes that allowing Plaintiff to raise new theories of liability at this late stage of litigation would prejudice Defendants and motions attempting to do so are denied.

## CONCLUSION

For the reasons stated, Plaintiff's Motions, ECF Nos. 106, 109, 112, 113, 114, and 115 are DENIED. Further, Defendants have carried their burden to show that, as a matter of law, Plaintiff cannot prevail on his § 1983 claim of excessive force in violation of the Fourth Amendment. Therefore, Defendants' Motion for Summary Judgment, ECF No. 85, is GRANTED and this case is DISMISSED. Final judgment shall be entered accordingly.

IT IS SO ORDERED.

Dated this  29th  day of March 2022.


           /s/Ann Aiken
            Ann Aiken
      United States District Judge